**FOLEY & LARDNER LLP**
Eileen R. Ridley (CA Bar No. 151735)
Tel: (415) 438-6469; eridley@foley.com
Ann Marie Uetz (admitted *pro hac vice*)
Tel: (313) 234-7114; auetz@foley.com
Matthew D. Lee (admitted *pro hac vice*)
Tel: (608) 258-4203; mdlee@foley.com
Thomas F. Carlucci (CA Bar No. 135767)
Tel: (415) 984-9824; tcarlucci@foley.com
Jeffrey R. Blease (CA Bar. No. 134933)
Tel: (617) 226-3155; jblease@foley.com
555 California Street, Suite 1700
San Francisco, CA 94104-1520

*Counsel for the Debtor / Plaintiff
and Debtor in Possession*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND INSURANCE ADVERSARY PROCEEDING LITIGATION | Case No.: 3:24-cv-00709-JSC<br><br>Bankruptcy Case No. 23-40523 WJL<br><br>Hon. Jacqueline Scott Corley<br><br><br>**RULE 26 JOINT CASE MANAGEMENT STATEMENT FOR JULY 11, 2024 CASE MANAGEMENT CONFERENCE** |

Plaintiff The Roman Catholic Bishop of Oakland ("RCBO"), the debtor and debtor in possession in the underlying chapter 11 case (the "Debtor"), along with Defendants (sometimes referred to herein as the "Insurers," but including the California Insurance Guarantee Association) and Intervenor the Official Committee of Unsecured Creditors ("Intervenor" or "Committee") hereby submit this updated Joint Case Management Statement under Federal Rule of Civil Procedure Rule 26, the Standing Order for All Judges of the Northern District of California, Local Civil Rule 16-9, and the Court's April 19, 2024 Orders [Dkt. No. 55 (Case No 3:24-cv-00709-JSC); Dkt. No. 62 (Case No. 3:24-cv-00711-JSC)], in advance of the July 11, 2024 Case Management Conference. Pursuant to Section E of the Court's Civil Standing Order (Rev.

June 12, 2024), the parties address herein only those issues where information has changed from the April 11, 2024 Joint Case Management Statement (Dkt. No. 53).

1.      **FACTS**

RCBO's Statement: RCBO is the debtor and debtor in possession in the chapter 11 case underlying this proceeding.  On May 8, 2023, RCBO caused its attorneys to file a voluntary petition for chapter 11 bankruptcy relief under the Bankruptcy Code. RCBO continues to operate its ministry and manage its properties as a debtor in possession under section 1107(a) and 1108 of the Bankruptcy Code.   The Defendants in this proceeding are various insurance companies and related entities with which RCBO maintained primary, excess layer, and umbrella policies over various periods from the early 1960s continuously through the present.  Defendant California Insurance Guarantee Association ("CIGA") is a statutory entity, created and existing pursuant to Article 14.2 of the California Insurance Code, that is obligated to pay certain statutorily defined "covered claims" within the coverage of certain liability policies issued by insolvent and liquidated insurers.

RCBO has been named in approximately 350 complaints primarily filed in the Superior Court of Alameda County, California, seeking recovery for alleged negligent supervision and hiring of certain clerical and ministerial personnel over a period of decades (the "Underlying Lawsuits"). These suits have been filed as a result of California's passage of AB 218, which re-opened the statute of limitations for the filing of similar civil suits. RCBO has tendered through its broker and continues to tender through its broker both RCBO's defense and indemnity of these suits under all applicable insurance policies, where the insurance company that issued those policies was not insolvent. The Insurers have denied or failed to confirm coverage and/or provide defense and/or indemnity to RCBO with respect to the above-described lawsuits RCBO faces. Continental Casualty Company ("CNA") recently agreed by letter dated May 24, 2024 to defend RCBO with respect to certain of the Underlying Lawsuits. It continues to reserve rights with respect to its indemnity obligation to RCBO.

RCBO disagrees with much of what Defendants state below and believes this Case Management Report is an inappropriate forum to argue the pending motions to dismiss. RCBO notes that the Bankruptcy Court disagreed that its claims should be dismissed when presented with Defendants' motions

in the Adversary Proceeding. RCBO maintains that Defendants' statements below contain numerous inaccuracies, which it will address with the Court during the July 11, 2024 oral argument on the motions to dismiss.

Intervenor's Statement: Intervenors are charged with protecting the interests of the unsecured creditors in the underlying Chapter 11 bankruptcy of the RCBO. Those creditors primarily consist of the plaintiffs in the Underlying Lawsuits and other childhood Sexual Abuse Survivors (collectively, "the Childhood Sexual Abuse Survivors"). Prosecution of the Underlying Lawsuits has been stayed by virtue of the automatic stay in the underlying Chapter 11 bankruptcy. RCBO, Insurers, and Intervenors are engaged in mediation in connection with the underlying Chapter 11 bankruptcy in an effort to reach consensus concerning the rights of Childhood Sexual Abuse Survivors with respect to the liabilities and assets of the RCBO, including the insurance policies sold to RCBO by the Insurers. There are a number of recent bankruptcies of Catholic dioceses like the RCBO (the most recent include six in New York, one in New Jersey, one in Maryland, and now five in California) and, in most of those cases, the debtor, the insurers, and the representatives of childhood sexual abuse survivors also have engaged in mediation. Differences between the debtors, insurers, and childhood sexual abuse survivors on the value of the underlying sexual abuse lawsuits and the terms, conditions, exclusions, and value of the insurance have hampered fully consensual resolution in these cases. This situation has been exacerbated by the fact that the automatic bankruptcy stay prevents the normal pressures of the approach of trials from moderating positions. This adversary proceeding, if litigated vigorously, offers at least some hope of helping to achieve consensual resolution of the underlying Chapter 11 bankruptcy.

Defendants' Statement:  As explained in the prior Rule 26 Joint Case Management Statement ("Joint Statement") and the pending motions to dismiss, RCBO has failed to plead a single viable cause of action and the Bankruptcy Court previously dismissed its claims, with leave to amend.  *See* Dkt. No. 53, Joint Statement, at 2-3; Dkt. No. 58, CIGA MTD; Dkt. No. 60, Pacific Insurers MTD; Dkt. 68, Continental MTD; Dkt. No. 76, American Home MTD; Case No. 23-40528 (Bankr. N.D. Cal.), Dkt. No. 158, Nov. 14, 2023 Hr'g Tr. at 60:4-64:22.  There has been no breach of contract.  The solvent primary insurers all have agreed to defend the Underlying Lawsuits—subject to a reservation of rights, where it is alleged that

abuse occurred within their policy period—satisfying their duty to defend.  There has been no breach of the duty to indemnify.  *None* of the Underlying Lawsuits has gone to trial.  *No* judgments have been entered, and *no* settlements have been reached.  Nor could they; immediately upon RCBO's commencement of its bankruptcy case, the automatic stay of 11 U.S.C. § 362 went effect, meaning the Underlying Lawsuits no longer needed to be defended—because they were all stayed as against RCBO— and no settlements can be entered to resolve individual Underlying Lawsuits.  RCBO's breach of claims against the excess and umbrella insurers must also fail, because the liability limits of the primary insurers' policies have not been exhausted, as required under California law to trigger any obligation by the umbrella and excess insurers to defend or indemnify any such claims.  Nor has RCBO provided sufficient evidence to support the existence of certain of the alleged excess policies.  RCBO's declaratory relief cause of action, which arises from the same alleged failures to provide coverage, must fail for the same reasons. At the end of the day, this lawsuit is an unnecessary exercise and a burden on RCBO's bankruptcy estate, because the bankruptcy can be resolved without resolving coverage.  There simply is no actual dispute here that could not be resolved in due course via the bankruptcy.

## 2.   **MOTIONS**

 RCBO's Statement:  The Defendants filed three separate motions to dismiss RCBO's claims, all filed on January 26, 2024: (1) one by CIGA; (2) one by Pacific Indemnity Company, Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, Pacific Employers Insurance Company, and Westchester Fire Insurance Company (collectively, "Moving Insurers"); and (3) one by Continental Casualty Company, United States Fire Insurance Company, and Certain Underwriters at Lloyd's, London subscribing severally and not jointly to Slip Nos. CU 1001, K 66034, K 78138, and CU 3061 (collectively, "Excess Insurers").  RCBO filed its opposition to CIGA's motion on March 5, 2024, and its oppositions to the Moving Insurers' motion and the Excess Insurers' motion on March 13, 2024.  CIGA filed its reply brief on March 12, 2024, and the Moving Insurers and Excess Insurers filed their reply briefs on March 20, 2024. These motions are set for hearing on July 11, 2024.

 RCBO intends to file a motion for summary judgment following the completion of certain

discovery, with respect to the lack of preclusive effect of a settlement agreement executed in or around 2005 involving some of the Insurers in a set of claims referred to as "Clergy III". Plaintiff believes such a motion will significantly narrow the scope of disputed issues in this Adversary Proceeding. Plaintiff anticipates that additional motions for summary judgment may be warranted in the action at a later time in the litigation. Similarly to the lines of argument set forth by Defendants in the "Facts" section above, RCBO maintains that Defendants' attempt to pre-litigate the "Clergy III" summary judgment motion below is inappropriate for this Joint Case Management Statement. RCBO will present its arguments to the Court on this issue at the appropriate time.

Further, any such motion at this state would not be premature. The Court stated during the April 18, 2024 case management conference that RCBO should proceed with the discovery it needed on the Clergy III issue, file a motion once it has engaged in that discovery, and then the Court would evaluate any discovery Defendants needed to respond to such a motion. RCBO has done just this and followed the Court's direction by serving Requests for Production on May 24, 2024 that seek, among other things, documents relating to the Clergy III issue. That being said, Defendants reference in this statement discovery they supposedly need to defend against the contemplated Clergy III motion including alleged "secret" files and/or information regarding the purported knowledge of RCBO. However, Defendants conflate discovery they would like as to other coverage arguments they have made in an attempt to avoid a straightforward motion addressing a separate coverage defense Defendants have asserted that somehow a settlement made in 2005 constitutes a release of the present claims. As previously represented to the Court, the Clergy III motion contemplated by RCBO addresses Defendants' incorrect contention that the settlement of separate and independent claims in 2005 somehow releases the Defendants from the underlying claims in this matter. RCBO's motion will seek a determination that the 2005 release provides no coverage defense for Defendants in this action as it dealt with separate underlying claims and did not constitute a policy release. The purported discovery referenced by Defendants in this statement does not address the motion in question. The Court has previously dealt with this issue noting that it will determine the appropriate discovery needed once the motion is filed. There is no basis to change the Court's previously stated position.

1    In the event the Court denies the pending motions to dismiss, RCBO will ask the Court to enter

2 the discovery schedule below, which allows discovery to proceed while dispositive motions are briefed

3 or remain pending. RCBO has already issued document requests, as has one Defendant, as detailed below.

4 RCBO's proposed schedule calls for completing written discovery and document production before the

5 dispositive motion deadline on the Clergy III settlement.  It does not, however, foreclose depositions or

6 third-party discovery taking place after dispositive motions are filed, nor does it preclude filing

7 dispositive motions before the close of written or document discovery.

8    Intervenor's Statement: After an appropriate period of discovery, the following types of issues can

9 be decided by motion for partial summary judgment: (1) the meaning of various material terms of the

10 insurance policies, (2) the impact of public policy on coverage for the Underlying Lawsuits, and (3) to the

11 extent that no material facts remain in dispute after discovery, the contents of missing or incomplete

12 insurance policies. Intervenors take no position on the timing of any summary judgment of the Clergy III

13 settlement issue, other than to state that the prosecution of such a motion should not be allowed to interfere

14 with the schedule of discovery in and resolution of this action as a whole.

15    Defendants' Statement:  Defendants renew their objections to RCBO's proposed premature motion

16 for partial summary judgment regarding the 2005 "Clergy III" settlement (the "2005 Settlement").  *See*

17 Dkt. No. 53, Joint Statement, at 8.  During the April 18 Case Management Conference, the Court indicated

18 that it might be willing to entertain RCBO's proposal based on its representation that such a motion would

19 expedite and simplify the litigation.  *See* April 18 Hr'g Tr. at 13:16-18; *accord id.* at 20:12-14.  In fact,

20 adopting RCBO's proposal will not expedite and simplify the litigation; rather, it will slow and complicate

21 it.

22    The proposed early summary judgment will create far more problems than it solves and will require

23 a massive, complicated amount of discovery.  While identifying claims subject to the 2005 Settlement

24 may sound like a straightforward exercise, doing so reaches key merits issues in this case and requires

25 discovery into: *what* RCBO knew about abuse involving current claimants and the alleged Diocese-

26 affiliated perpetrators; *when* RCBO knew about that abuse; and *who* specifically in the Diocese knew

27 about that abuse.  Indeed, the nature of this inquiry likely precludes summary judgment for RCBO as a

28

1   jury will have to resolve these factual issues.[1]

2   These issues arise because of the release language used in the 2005 Settlement. That settlement

3   released the participating Insurers from all past, present, and future actions, known or unknown, foreseen

4   or unforeseen, that "arise from the Abuse Claims." The term "Abuse Claims" was not defined by reference

5   to a fixed list of claims. Instead, it encompasses "all claims by all persons that the Diocese reasonably

6   should have concluded were seeking monetary compensation that were filed and served prior to the

7   Effective Date *or that were known of prior to the Effective Date by … representatives of the Diocese*

8   who are responsible for resolving or investigating such claims or providing notice of such claims under

9   the Settling Policies . . . ." In other words, the 2005 Settlement's release extends beyond claims that had

10  already been asserted to also include claims asserted or filed after the 2005 Settlement, if responsible

11  RCBO representatives reasonably should have concluded at the time of the settlement that the claims

12  might be asserted or filed in the future. And RCBO also agreed that it would not tender any claims to

13  insurers for payment by persons that had communicated alleged injury caused by sexual abuse or other

14  misconduct of a sexual nature by priests or representatives of RCBO that sought counseling or therapy for

15  that person.

16  To apply the 2005 Settlement's release, Defendants need—among other things—production of

17  RCBO's personnel and "secret" priest files, as well as other RCBO files likely to contain information

18  related to its knowledge of potential claims in 2005. Discovery will have to be taken from RCBO's

---

[1] RCBO's proposal will not significantly narrow any issues in this case or expedite its resolution. It is also wholly unnecessary. None of the Underlying Lawsuits have gone to trial. Thus, there are no judgments to be indemnified, nor have there been any settlements of Underlying Lawsuits that could be the subject of indemnification. No judgments or settlements are in the offing, given the automatic stay. Indeed, even if RCBO were incurring defense costs related to the underlying claims—an impossibility so long as the automatic stay remains in place—the primary insurers agreed, subject to a reservation of rights, to defend the Underlying Lawsuits that fall within their respective coverage periods. RCBO's Third Amended Complaint does not identify a single tendered claim that has gone unpaid.

In any event, the scope of releases given in connection with the "Clergy III" settlement is hardly the only coverage issue that must be adjudicated before a declaration could be entered finding that RCBO is entitled to coverage under some or all of its insurance policies or alleged insurance policies. In other words, even a ruling that the Clergy III settlement has only a limited scope would not unlock coverage in RCBO's favor; all of Defendants' other coverage defenses also need to be adjudicated before Defendants could be found to have any obligation to provide coverage. The answers filed by Travelers and Westport provide examples of defenses that other Defendants might assert, depending on the facts and the terms of their respective policies.

representatives, agents, and legal counsel and other individuals and entities RCBO charged with investigating sexual abuse claims before entering the Settlement.[2]  Discovery from certain alleged perpetrators may also be necessary to determine the nature of their disclosures to RCBO.[3]  Once document production is complete, current and former RCBO officials and personnel responsible for resolving or investigating sexual abuse claims will have to be deposed, in addition to the select claimants, perpetrators, and other witnesses familiar with RCBO's knowledge of potential claims prior to consummation of the 2005 Settlement.

Conducting this discovery will be time consuming, and therefore will not result in early resolution of RCBO's proposed motion.  At the outset, Defendants will have to propound discovery to identify the individuals and entities who conducted RCBO's sexual abuse investigations, resolved the claims, and provided notice of their existence.  Once the identification process is completed, further follow-up discovery will likely be necessary.  The process for identifying claimants relevant to the scope of the 2005 Settlement will be equally complicated.  There are approximately 400 claimants and the vast majority of their claims arose before 2005.  Thus, there is no practical way to isolate a subset based on the dates of the alleged abuse.  The same is true of the alleged perpetrators and further compounded by the fact that many are not identified with specificity in the complaints and proofs of claim.[4]

The same questions regarding *what* RCBO knew, *when* it knew it, and *who* in the Diocese was privy to that knowledge—which will be at issue in any summary adjudication regarding the effects of the 2005 Settlement—are equally relevant to determining other defenses.  There will be significant overlap in discovery sought and (likely) the witnesses deposed in connection with these related issues.  It will simply be more efficient to address them at the same time.

---

[2]  The 2005 Settlement Agreement expressly identifies RCBO's "legal counsel" as among the persons "who are responsible for resolving or investigating [abuse] claims or providing notice of such claims . . . ."

[3]  Given the thread-bare nature of the allegations in most of the underlying complaints and proofs of claim, Defendants may also have to take discovery from the claimants to assess if they informed RCBO (or any of its agents) about their alleged sexual abuse before the effective date of the 2005 Settlement.

[4]  Even if the Court were to limit discovery to only the claimants and perpetrators at issue before the 2005 Settlement—which it should not—nearly a quarter of all the current claims would be included.

Section 533 of the California Insurance Code mandates that an insurer is not liable for losses caused by willful acts of the insured or by injury that is expected or intended. This section precludes coverage where an insured "allow[ed], condon[ed], and ratif[ied] such intentional conduct as a matter of corporate policy." *See, e.g.*, *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal. App. 4th 1595, 1613 (1993). Courts in sexual abuse coverage cases have ruled under this section and similar statutes that an insured is not entitled to coverage as a matter of law where it had knowledge of an employee's previous acts of sexual abuse. *See, e.g.*, *id.* at 1609 (upholding directed verdict for the insurer where sexual abuse by an insured's employee was "so widespread, well-known, and so ratified by the corporation as to constitute [an] intentional corporate policy" that the insured was not entitled to coverage as a matter of law).

Intervenors assert above that "an insurance coverage action should not decide factual matters that are inevitably intertwined with issues to be decided in the Underlying Lawsuits such as whether the injuries to the Childhood Sexual Abuse Survivors were expected or intended by RCBO."[5] But, Intervenors never address how the Court could possibly enter a declaration finding that RCBO is entitled to coverage without also adjudicating all defenses. And here, the underlying complaints contain numerous allegations indicating that the claimants' injuries were not just foreseeable; they were ratified, if not authorized, by RCBO because it knew about and perpetrated a cover-up of child sexual abuse committed by (at least) its clergy and employees. *See, e.g.*, Case No. 24-711, Dkt. No. 1-1, MPA ISO Mot. to Withdraw the Reference at 5-7 (quoting certain underlying complaints). Similar allegations against RCBO have been widely reported in the press. *Id.* at 13, fn. 29 (collecting sources); *see also* Case No. 24-711, Dkt. No. 1-2, Daniels

---

[5] Intervenors' position is a bit ironic, given that claimants' counsel have widely publicized allegations that RCBO not only knew about the sexual abuse, it ratified and/or authorized it, refused to dismiss clergy who were known to be perpetrators, and shielded them from responsibility. *See, e.g.*, Case No. 24-711, Dkt. No. 1-2, Daniels Decl., Ex. 3, Anderson Report, Sexual Abuse in Bay Area Archdiocese at 13 ("The data collected suggests the patterns and practices of Church officials, including the orchestration of an institutional cover-up of an enormous magnitude. Perhaps most shocking among the discoveries is that some perpetrators were intentionally transferred and retained in trusted positions with direct access to children even when they were known to be abusers."), Ex. 4, The Zalkin Law Firm, Priests Accused of Abuse in Diocese of Oakland.

Decl., Exs. 3-10 (attaching same).  Such allegations support Defendants' defenses.[6]

Under Rule 56(d), RCBO's proposed motion for summary judgment is premature at this time absent discovery that is intertwined with the more general issues going to whether the abuse was expected and intended.  Separating out this issue now will not expedite the resolution of the case.  If and to the extent the Court is inclined to consider entertaining RCBO's partial summary judgment proposal, defendants request that the Court first entertain a motion by Defendants pursuant to Rule 56(d).  *See generally Jacobsen v. U.S. Dep't of Homeland Sec.*, 882 F.3d 878, 883 (9th Cir. 2018) (citations omitted) (when a summary judgment motion is "filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case," a 56(d) motion should be granted "fairly freely").

**3.    EVIDENCE PRESENTATION**

All parties have reviewed the Guidelines Relating to Discovery of Electronically Stored Information, and each party has taken reasonable and proportionate steps to preserve such evidence.  The parties completed their Rule 26(f) conference on April 24, 2024 regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action, and regarding the content and timing for initial disclosures.  Parties who had not previously served their initial disclosures, while the case was pending before the Bankruptcy Court, did so on May 15, 2024.

**4.    DISCLOSURES**

RCBO's Statement: Certain defendants served their initial disclosures in the Adversary Proceeding before the Bankruptcy Court, including Continental Casualty (October 6, 2023); Pacific Indemnity Company, Insurance Company of North America, Pacific Employers Insurance Company, Westchester Fire Insurance Company (October 18, 2023); and Travelers Casualty & Surety Company (October 18, 2023). The remaining parties served their initial disclosures in this proceeding on May 15, 2024.

Defendants' Statement:  All Defendants timely served their initial disclosures.

---

[6] Defendants understand that RCBO has raised, or may raise, meritorious defenses against such claims.  Defendants do not concede, and have not concluded, that the Diocese is liable for any of the conduct alleged in any particular underlying complaint.

5. **DISCOVERY**

RCBO's Statement:  Prior to the last Case Management Conference the parties engaged in certain informal exchanges of documents and information, including the applicable insurance policies and evidence of insurance coverage from the Insurers' providing coverage to RCBO, which RCBO produced to the Insurers. RCBO also produced thousands of documents to the Defendants pursuant to an order granting a motion filed by certain of the Defendants under Fed. R. Bankr. P. 2004 ("Rule 2004") [Docket No. 511].  Certain of the Defendants also produced documents pursuant to an order granting a Rule 2004 motion filed by the Intervenor.  [Docket No. 796.]

On January 31, 2024, Judge Lafferty entered a revised Confidentiality and Protective Order. [Dkt. No. 832 (Case No. 23-40523)].  The terms of that Order explicitly apply to the Adversary Proceeding and this proceeding. (*Id.* at 1-2) ("This Confidentiality and Protective Order ("Protective Order") shall govern the production, review, disclosure, and handling of any Disclosure or Discovery Material (as defined herein) by any person or entity in connection with the above-captioned Chapter 11 . . . as well as Adversary Proceeding No. 23-04028 and Adversary Proceeding No. 23-04037[.]" Pursuant to the Court's Pretrial Order No. 1, RCBO filed a copy of the Confidentiality and Protective order in this proceeding on April 25, 2024. [Dkt. 62].  Defendants also received from RCBO a significant number of the documents outline in their statement below after they had executed the Protective Order, including all relevant insurance policies in RCBO's possession, the complaints in the underlying abuse claims, tender documents, and the proofs of claim relating to those same underlying actions.

On May 24, 2024 RCBO served Defendants with document requests pursuant to Rule 34. Certain of Defendants responded timely on June 24, 2024. Others requested extensions of time to respond for various reasons, to which RCBO agreed. Other Defendants have not yet responded to RCBO's document requests. Westport Insurance Company served Rule 34 requests for production on RCBO on June 24, 2024. RCBO's proposed schedule for the remainder of discovery is listed below.

Defendants' Statement:

The documents produced in the bankruptcy case were produced pursuant to Rule 2004 in connection with the formulation of a Chapter 11 Reorganization Plan, and largely consist of financial

information about RCBO and its assets.  Defendant Insurers were not permitted to serve document requests directed at this coverage action.  And none of the documents produced in the bankruptcy case have been reproduced in this action.

Documents relating to the underlying claimants, their claims, the alleged perpetrators, and RCBO's handling of sexual abuse claims—beyond coverage communications, the underlying complaints, and the proofs of claim—are noticeably lacking.  With respect to the information about the claims that was produced, RCBO and Intervenors insisted that the Defendants be barred from sharing the claimants' personal identifiable information—including "claimant's name, address, email address, telephone number(s), Social Security Number, jail or prison number (if applicable), and month of birth"—with their experts.  *See* Case No. 23-40523, Dkt. No. 817 ¶ 2.  This information is essential to the Insurers' claims and defenses in the coverage action.

If the motions to dismiss are not granted, the Defendants will promptly serve discovery requests on RCBO, Intervenors, and relevant third parties.  By way of example, Defendants may seek discovery, including deposition testimony, related to the following areas and issues:

- RCBO's insurance policies
    - All insurance policies, which RCBO contends provide coverage for any of the underlying claims
    - Documents demonstrating or supporting the existence of alleged "missing" insurance policies
    - Any other agreements or contracts between RCBO and its respective Insurers related to the underlying claims, including any fee caps, billing, or defense guidelines
    - Documents sufficient to identify all available coverage for the underlying claims, the nature of that coverage, policy limits, and the policy periods
    - Documents and communications related to Defendants' purported failure to confirm coverage, improper denial of coverage, failure to pay defense costs and fees, failure to indemnify, and any alleged breaches, including declination letters, reservations of rights letters, copies of unpaid invoices for defense of the underlying claims, unreimbursed payments by RCBO, demands for payments from RCBO, garnishments, levies, etc.
    - Documents and communications related to RCBO's compliance with its obligations under the insurance policies, including its duty to cooperate with Insurers in defending the underlying claims
    - Documents and communications related to the pending claims and lawsuits alleging sexual abuse involving RCBO

- o   Any judgments entered in the Underlying Lawsuits

- o   Any settlements entered in connection with the Underlying Lawsuits or claims

- o   Any settlement demands made in connection with the Underlying Lawsuits or claims

- o   Documents related to RCBO's purported damages (if any)

- • RCBO's knowledge and handling of allegations of sexual abuse from 1959[7] to the present

  - o   RCBO's policies, procedures, and guidelines regarding the treatment of allegations of sexual abuse and/or perpetrators of sexual abuse, including any revisions, amendments, or changes to the same

  - o   RCBO's policies, procedures, and guidelines regarding the treatment of alleged or confirmed perpetrators of sexual abuse, including any revisions, amendments, or changes to the same

  - o   RCBO's record retention policies relating to documents concerning sexual abuse, including Canon 489 of the Code of Canon Law ("Canon 489")

  - o   RCBO's organizational structure for addressing, investigation, documenting, or resolving allegations and/or claims of sexual abuse, including identification of the persons, entities, committees, or organizations charged with addressing the said allegations and claims

  - o   RCBO's organizational structure for investigating, documenting, disciplining, or reporting allegations of sexual abuse committed by its clergy, employees, or volunteers, including identification of the persons, entities, committees, or organizations charged with addressing the said allegations and claims

  - o   The minutes of meetings (including any agendas and materials distributed at meetings) of RCBO's College of Consultors related allegations of sexual abuse

  - o   Files of the Minor Diocesan Review Board, the Chancellor Victims Assistance Coordinator of the Diocese of Oakland, and the Ministry for Survivors of Clergy Sexual Abuse concerning any underlying claim or alleged perpetrators implicated those claims

  - o   Documents produced by RCBO in response to criminal investigations and government subpoenas or requests concerning sexual abuse

  - o   Personnel files for any alleged perpetrator implicated in any underlying claim

  - o   Confidential files maintained pursuant to Canon 489 for any priest implicated in any underlying claim

  - o   Documents related to any allegation of sexual abuse committed by any individual identified as a perpetrator in any underlying claim

  - o   Any reports or investigations by any police or sheriff department, District Attorney's office, or the Attorney General of California

---

[7] The earliest instance of sexual abuse alleged in the underlying claims purportedly occurred in 1959.

- o   Communications between RCBO and any other diocese regarding the inter-diocese transfer of any individual who is identified as a perpetrator in any underlying claim

- o   Communications between RCBO, the Vatican, any episcopal conference, or any other diocese regarding the treatment of allegations of sexual abuse and/or perpetrators of sexual abuse, in general

- o   Communications between RCBO, the Vatican, any episcopal conference, or any other diocese regarding the underlying claims, claimants, and/or alleged perpetrators

- o   Materials relied on, consulted, or considered in the preparation of or in response to published reports alleging that RCBO knew of, sanctioned, authorized, ratified, concealed, and/or covered up sexual abuse by its clergy, employees, and volunteers

- • The application of the release in the 2005 Settlement

- o   Documents and communications related to the negotiation and implementation of the 2005 Settlement, including all drafts of the settlement agreement

- o   Documents sufficient to identify all alleged sexual abuse perpetrators that RCBO and its representatives responsible for resolving or investigating claims of sexual abuse or providing notice of such claims—including its legal counsel—knew of before November 9, 2005

- o   Documents sufficient to identify all alleged sexual abuse survivors and/or claimants that RCBO and its representatives responsible for resolving or investigating claims of sexual abuse or providing notice of such claims—including its legal counsel—knew of before November 9, 2005

- o   Documents related to any settlements entered into by RCBO in connection with Clergy III

- • The underlying claimants' claims

- o   Documents sufficient to identify all alleged perpetrators in the underlying claims, who are not otherwise named in the claimant's complaints or proofs of claim

- o   Documents sufficient to identify all co-defendants, persons, or entities alleged to have participated in, sanctioned, authorized, ratified, concealed, covered up, or in any way caused or contributed any claimant's sexual abuse, who are not otherwise named in the claimant's complaints or proofs of claim

- o   Communications between RCBO, its clergy, employees, volunteers, representatives, agents, and counsel, and any underlying claimant and his/her/their representatives, agents, and counsel regarding sexual abuse claims

- o   All Discovery—including initial disclosures, documents, responses to written discovery, deposition transcripts and videos, expert reports, independent medical examination records, etc.—produced in any claimant's Underlying Lawsuit

- o   Communications between RCBO and Intervenors related to the underlying claims, claimants, and/or alleged perpetrators

- o   Mediation statements, settlement demands, and any settlement communications exchanged in connection with the Underlying Lawsuits and claims, for claims that arose in policy period(s) of any of the propounding Insurers

-13-

o Valuations, analyses of liability, evaluations, assessments, or appraisals of and/or prepared in relation to the underlying claims and claimants, including all materials relied on, consulted, or considered in the preparation of the same

o Valuations, analyses of liability, evaluations, assessments, or appraisals prepared in relation to the allocation of liability between RCBO and any co-defendants, persons, or entities alleged to have participated in, sanctioned, authorized, ratified, concealed, covered up, or in any way caused or contributed any claimant's alleged sexual abuse, including all materials relied on, consulted, or considered in the preparation of the same

The foregoing is just a sampling of the discovery Defendants require in this action.  Defendants reserve all rights to seek additional areas of discovery.

**6.    RELATED CASES:**

This proceeding is related to the ongoing chapter 11 case in the United States Bankruptcy Court for the Northern District of California, Case No. 23-40523 WJL.  This proceeding is also related to the adversary proceeding before the United States Bankruptcy Court for the Northern District of California, Case No. 23-ap-04037 WJL, which was withdrawn to the district court on March 26, 2024, as Case No. 3:24-cv-01848-RFL, before the Honorable Judge Rita F. Lin.  That case was consolidated with this action before Judge Corley on May 3, 2024.

**7.    SETTLEMENT AND ADR**

RCBO's Statement:  On January 22, 2024, Judge Lafferty entered an order appointing the Hon. Randall Newsome (Ret.) and Timothy Gallagher as mediators for the purpose of mediation insurance matters.  [Dkt. No. 810 (Case No. 23-40523), at 2].  The parties conducted an initial mediation session before Judge Newcome and Mr. Gallagher in San Francisco on June 18, 2024. The parties set deadlines for initial deliverables, including a July 16, 2024 deadline to submit brief statements of the issues in mediation to the mediators. There are no further mediation sessions currently scheduled. Based on the foregoing, RCBO disagrees that Defendants have been improperly excluded from any mediation proceedings. The Bankruptcy Court contemplated—and specifically ordered—that separate mediations take place with respect to the bankruptcy proceeding and the insurance coverage dispute underlying this action.

Intervenor's Statement: Intervenors disagree with Defendants' statement that they have been excluded from any aspect of the mediation. The Bankruptcy Court approved the mediation in the present

-14-

form understanding that efficiency dictated some separate sessions with different mediators, a procedure that makes much sense given the Defendants' apparent reluctance to move forward expeditiously with mediation and the fact that RCBO has both insured and uninsured exposures.

<u>Defendants' Statement</u>:  RCBO and Intervenor have been meeting regularly with each other and Judge Christopher S. Sontchi (Ret.), another mediator appointed by the bankruptcy court, since at least March 2024, and they have had at least four mediation sessions, which appear to occur on a monthly basis and last two days each.[8]  Defendants have not been invited to attend or participate in those sessions, notwithstanding their objections to being excluded.  Defendants maintain that they are proper parties to any bankruptcy-focused mediation sessions because the Bankruptcy Court's mediation order expressly authorizes the inclusion of all "Mediation Parties"—including Defendants—to take part in mediation of any issue.  *See* Case No. 23-40523, Dkt. No. 810, Mediation Order ¶¶ 5, 8-9.[9]

The June 18 mediation session was the first joint mediation session involving the Defendants to this action. RCBO and the Intervenors met for about an hour with the Defendants at RCBO counsel's office and via Zoom.  The session was moderated by Judge Newsome and Mr. Gallagher, two of the mediators.  Judge Newsome and Mr. Gallagher made several discretionary requests for information, and the parties are following up.  No further mediations with Defendants have been scheduled.

The categorical exclusion of the Defendants from all the "bankruptcy mediation sessions" and any discussion of the plan remains a significant impediment to the potential resolution of this lawsuit and the bankruptcy case overall.  As the Supreme Court affirmed mere weeks ago, "[b]road participation promotes a fair and equitable reorganization process." *Kaiser Gypsum*, 144 S. Ct. at 1425.

---

[8] *See* Case No. 23-40523, Dkt. No. 1104, Tenth Monthly Fee Statement of Foley & Lardner LLP, at 57; Dkt. No. 1158, Eleventh Monthly Fee Statement of Foley & Lardner LLP, at 60-61; Dkt. No. 1222, Twelfth Monthly Fee Statement of Foley & Lardner LLP, at 47; Dkt. No. 1188, Third Interim Fee Application of Foley & Lardner LLP, at 14.

[9] The Supreme Court recently held that insurers—like Defendants—are parties in interest under the Bankruptcy Code, entitled to be heard in bankruptcy proceedings.  *See Truck Ins. Exch. v. Kaiser Gypsum Co.*, 144 S. Ct. 1414, 1428 (2024) ("Section 1109(b) provides parties in interest a voice in bankruptcy proceedings.  An insurer with financial responsibility for bankruptcy claims is a 'party in interest' that may object to a Chapter 11 plan of reorganization."); *see also id.* at 1426 ("An insurer with financial responsibility for bankruptcy claims can be directly and adversely affected by the reorganization proceedings in . . . many . . . ways, making it a 'party in interest' in those proceedings.").

-15-

8.    **SCHEDULING**

RCBO's Statement: In the event the Court denies the pending motions to dismiss, RCBO proposes that the Court enter the following schedule, through the filing of a partial motion for summary judgment at the end of this calendar year:

- **July 19, 2024**: Parties may begin serving notices for oral discovery.
- **August 14, 2024**: Deadline to produce documents in response to requests for production related to Clergy III coverage issue.
- **August 28, 2024:** Deadline for Plaintiff to submit any expert disclosures and reports.
- **September 11, 2024**: Deadline for filing of partial motion for summary judgment with respect to non-preclusive effect of prior-executed settlements in the Clergy III action.
- **October 11, 2024**: Deadline for Insurers to submit any expert disclosures and reports.
- **November 8, 2024:**  Deadline to complete all lay discovery.
- **November 11, 2024**: Deadline for Plaintiff to submit and rebuttal expert disclosures and reports.
- **December 11, 2024:**  Deadline to complete all expert discovery.
- **January 10, 2025**: Deadline for filing motions for summary judgment.
- **February 7, 2025**: Deadline for responses to motions for summary judgment.
- **February 21, 2025**: Deadline for replies in support of motions for summary judgment.
- **April 28-May 2, 2025**: Trial.

RCBO believes this schedule reflects an appropriate timeline for litigating this case, and comports with the Court's statement during the April 18, 2024 case management conference that discovery should proceed expeditiously. The Court has already rejected the "phased" approach to discovery that Defendants once again propose below in their continuing effort to delay litigation of this matter.

Intervenor's Statement: Intervenor is in basic agreement with RCBO on scheduling, except Intervenor would not want to see conclusion of discovery or trial delayed by efforts aimed at early resolution of the Clergy III settlement issue.

Moreover, Intervenor notes that in other diocesan bankruptcies, where the debtor and committee have reached resolution but certain insurers failed to reach agreement, those insurers were quick to seek

relief to lift the stay of the coverage action in order to adjudicate insurance issues.[10] Intervenor respectfully submits that allowing the coverage litigation to move forward now presents the best opportunity for all parties to see if a global resolution of this dispute is possible.

Defendants' Statement:  Defendants maintain that it is premature to set a schedule for this action before the case is at issue.  It is not possible to know how much time is needed for discovery, motion practice, and other pretrial activities, or for trial, before it is determined which claims and causes of action (if any) will be going forward in the case.  Defendants therefore urge that any consideration of scheduling be deferred until after the case is at issue.  Even if the Court were inclined to enter a schedule for the entire case now—and it previously indicated it was not[11]—RCBO's proposal is untenable and should not be adopted for a number of reasons.

First, RCBO's proposal provides for barely four months—from the July 11 hearing through early November—for fact discovery.  The nature and amount of discovery necessary to evaluate the claims and defense in this action is vast, covering over *six decades* worth of contracts and allegations, documents alleged to have existed that may no longer be accessible, and a wide of variety of custodians with potentially relevant information: *dozens* of insurers (some of whom are not parties to this action and/or may no longer be in business); currently *unknown* investigators, agents, and representatives of RCBO; *over 100* perpetrators named in the underlying complaints and proofs of claim and an unknown number of perpetrators yet to be identified; *over 400* claimants, many of whom provided vague or incomplete information about their claims; and third parties.  Four months is simply not enough time, realistically, to

---

[10] *See, e.g.*, Travelers Insurance Company Limited, Travelers Casualty and Surety Company, Travelers Indemnity Company and Arrowood's Motion to Terminate the Mediation Stay, *The Roman Catholic Diocese of Syracuse, New York v. Arrowpoint Capital, et al,* Adv. Pro. 21-50002, Dkt. 141 at 6 (Bankr N.D.N.Y, Oct. 20, 2023) ("With efforts to settle the insurance coverage matters prior to confirmation essentially terminated at least as to the Moving Insurers, the Moving Insurers respectfully submit that the time to move forward with litigation of the Adversary Proceeding is now."); Interstate Fire & Casualty Company and National Surety Corporation's Motion to Terminate the Judicial Stay and Resume Litigation in the Adversary Proceeding, *The Diocese of Rochester v. The Continental Insurance Company, et al.*, Adv. Pro. 19-AP-02021, Dkt. No 216 at 2 (Bankr. W.D.N.Y Mar. 27, 2023) ("[M]aintenance of the stay exposes Interstate to significant harm . . . Coverage matters should, and likely must, take place in an adversary proceeding (or other suit) – not through the confirmation process.").

[11] *See* April 18 Hr'g Tr. at 20:1-20 ("Ms. Ridley: …The second [question] is will the Court be thinking about the overall schedule for the case now or are you going to wait until then?  The Court: I think we should wait on that….And, so, in light of that, I think we shouldn't set the whole schedule yet.")

conduct and complete fact discovery.  The impossibility of complying with RCBO's proposed schedule is further compounded by the fact that RCBO's proposal requires the parties to conduct expert discovery at the same time as they are engaged in fact discovery, while *also* briefing/preparing to oppose partial summary judgment.

*Second,* RCBO's proposed schedule fails to account for potential discovery disputes.  Such disputes are a routine part of litigation and are particularly likely here due to the sensitive nature of the underlying claims and the fact that decades separate this case from the underlying events.  For example, RCBO is subject to Canon Law, including Canon 489, which provides that "[e]ach year **documents of criminal cases in matters of morals**, in which the **accused parties have died or ten years have elapsed from the condemnatory sentence**, **are to be destroyed**."  Canon 489 § 2.  This raises serious concerns regarding whether necessary evidence from RCBO is still available.  Moreover, given the Catholic Church's long and pervasive history of dealing with claims of sexual abuse, it raises disturbing questions about  whether rendering probative evidence unavailable was the very purpose of Canon 489.  In addition, significant privilege issues will almost certainly arise with regard to the 2005 Settlement, which lists Diocese counsel among those "responsible for resolving or investigating claims" and therefore positions them as potential fact witnesses to aspects of claims.

*Third*, RCBO's proposed schedule makes no logical sense.  For example:  it contains no deadline for the completion of depositions related to the 2005 Settlement; and the proposed deadline for submission of Defendants' expert reports (October 11) is a full month *before* the deadline for completion of fact discovery (November 8), thereby precluding Defendants' expert witnesses from taking into consideration any deposition testimony given after their reports are due.  And while RCBO's proposed schedule says when its proposed "Clergy III" motion would be filed, it is silent as to when that motion will be heard or when oppositions would be due—pursuant to Rule 56(d), it would be inappropriate for any such motion to be heard before the close of all discovery.

*Finally,* Defendants reiterate their objection to bifurcating discovery between issues related to the 2005 Settlement and all other issues.  As discussed above, discovery of the 2005 Settlement issues will overlap significantly—if not entirely—with discovery of the "expected or intended" issues and will

-18-

require significant documentary discovery and depositions. *See, supra*, Sec. 2, Defendants' Statement. It is therefore not reasonable to expect that discovery related to the 2005 Settlement can be completed months before other discovery, and it would not be efficient to separate out discovery regarding the 2005 Settlement from other necessary, overlapping discovery.

Although RCBO's phased summary judgment proposal will complicate matters, should the Court be looking to adopt a phased approach, Defendants propose a logical sequencing of disputed issues to prioritize resolution of the true threshold issue—*missing* policies, i.e., what they are and say, not what they mean—while allowing discovery to commence on the other jury trial issues as soon as the case is at issue.[12] *See generally* 1 California Deskbook on Complex Civil Litigation § 5.44, "Phasing the Insurance Coverage Trial" (identifying specific sequencing applicable to insurance litigation). Under this plan, the proposed phases would proceed as follows:

- **Phase I: Establishing Policies and Policy Terms.** The Court cannot adjudicate whether any Defendants breached their contracts, or declare the parties' respective contractual rights, without first determining whether RCBO has met its burden to show policies were issued and the terms of any policies found to have been issued. A related issue concerns the terms of umbrella or excess policies that "follow form," in whole or in part, to underlying policies (i.e., the extent to which umbrella or excess policies incorporate the terms of underlying policies). It is possible that, following discovery, the parties can reach agreement on these issues. If not, the issues must be resolved by a jury.[13]

- **Phase II: Occurrence, Notice, Number of Occurrences, Scope of Clergy III settlement.** The plaintiff firms bringing the Underlying Lawsuits generally allege that RCBO knew about the abuse, ratified it, and covered it up, refused to dismiss clergy who were known to be abusing children, and shielded clergy from responsibility for their sexual abuse. The underlying plaintiffs further allege that the RCBO refused to report the sexual abuse to civil or criminal authorities. This background is relevant because an insurer is not liable for losses caused by willful

---

[12] Contrary to RCBO's assertion above, Defendants' three phased approach for litigating this action was not even discussed, let alone rejected, during the April 18 Case Management Conference.

[13] *See, e.g.*, *Cal. v. Continental Ins. Co.*, 169 Cal. App.4th 1114, 1160-66 (2009) (discussing the admissibility of evidence proffered to the jury to prove the existence and terms of a lost policy as well as the adequacy of the jury instructions related thereto); *Boston Gas Co. v. Century Indem. Co.*, 529 F.3d 8, 22-23 (1st Cir. 2008) (discussing the evidence considered by a jury at trial used to determine the terms of a lost insurance policy).

acts of the insured or by injury that is expected or intended. RCBO bears the burden of proving an occurrence and that it did not expect or intend the conduct giving rise to the harm alleged in the underlying actions. As noted, the discovery and evidence relevant to this issue overlaps with the discovery and evidence relevant to the Clergy III settlement. Another key issue, given that policy limits are generally stated as being capped on a "per occurrence" basis, is whether the claims generally, or those by a given alleged perpetrator, were caused by one occurrence or multiple occurrences. These are intensely factual issues that have been the subject of extensive discovery in other California cases.

- **Phase III: Allocation and Contribution.** After resolving which policies impose an obligation on the Defendants to indemnify RCBO's liabilities, those liabilities can then be allocated among the implicated policies. This issue arises when, as is sometimes the case, a particular perpetrator abused a child over multiple policy periods. Issues that may be relevant to allocation may include the impact of so-called "non-cumulation" provisions contained in certain policies, the effect of insolvencies or settlements on allocation, RCBO's potential election of particular policies for indemnification, and proof of exhaustion of underlying coverage. If RCBO elects to receive any indemnification to which it is entitled from the Defendants who provided coverage in a single policy period, those Defendants may have equitable contribution claims against other Defendants that would have to be determined.

The breakneck schedule RCBO proposes for this lawsuit is a nonstarter, with unworkable overlap that leaves inadequate time for the discovery Defendants require.

Defendants are well aware of RCBO's desire to expeditiously resolve its bankruptcy case and its aspirations to confirm a plan of reorganization. But, that is *no* excuse for flouting Defendants' right to due process by unreasonably accelerating this coverage litigation. Nor is there any reason to do so. This is not the first mass tort bankruptcy case, nor is it the first sex abuse bankruptcy case. They are legion. Plans are routinely confirmed in such cases without resolving disputed insurance coverage rights. In some of these cases, certain insurers consensually resolved coverage issues with the estate. Others did not. Defendants are not aware of any case where the confirmation of a plan in a mass tort case awaited resolution of litigation of unsettled coverage disputes.[14]   RCBO's bankruptcy case is unusual in even

---

[14] *See, e.g.*, *In re Diocese of Camden, N.J.*, Case No. 20-21257, Dkt. No. 3684 (Bankr. D.N.J. Mar. 15, 2024) (order confirming the third modified eighth amended plan of reorganization was entered while the insurance coverage adversary proceeding remained stayed pursuant to the Order Staying Adversary Case, *Diocese of Camden, N.J. v.*

-20-

attempting to litigate coverage issues to final judgment as part of its bankruptcy case.[15]  There is a reason why this tortured path was not selected in other mass tort cases: the coverage disputes are simply too difficult and complex to be resolved on an expedited timeline, prior to plan confirmation.  There is no legal or practical requirement that all disputes concerning a debtor's insurance coverage be resolved before confirming a plan.  They are entirely separate paths.

### 9.    TRIAL

Plaintiff's Statement: Defendant Travelers Casualty & Surety Company has included a jury demand in its Answer and Affirmative Defenses, filed September 1, 2023.  RCBO estimates the length of trial will be approximately 7-10 court days.  RCBO recommends trial in the Spring of 2025.

Defendants' Statement:  As noted above, Defendants contend that it is premature to set a trial date for this action.  All Defendants have made jury demands or reserved their rights to do so.  Defendants estimate the length of trial could be approximately 1-20 court days, depending upon which, if any, claims go forward in this action.

---

*Ins. Co. of N. Am.*, Adv. Case No. 20-01573, Adv. Dkt. No. 121 (Bankr. D.N.J. Jan. 5, 2022) (staying the coverage adversary proceeding which was still in effect as of the date the plan was confirmed)); *In re Archbishop of Agana*, Case no. 19-00010, Dkt. No. 1093 (Bankr. D. Guam Oct. 20, 2022) (order confirming the fifth amended plan of reorganization was entered before coverage litigation was completed); *In re USA Gymnastics*, Case No. 18-09108, Dkt. No. 1776 (Bankr. S.D. Ind. Dec. 16, 2021) (order confirming the modified third amended plan of reorganization was entered while the insurance adversary proceeding was pending; the coverage lawsuit was litigated for nearly a year post-confirmation until a notice of settlement was filed on September 14, 2022), *USA Gymnastics v. Ace Am. Ins. Co., et al.*, Adv. Case No. 19-50012, Adv. Dkt. No. 684 (Bankr. S.D. Ind. Sept. 14, 2022) (noticing that a settlement in principle had been reached between the plaintiff, USA Gymnastics, and the defendant insurers)).

[15] In nearly all of these bankruptcy cases, any insurance coverage litigation was stayed, referred to mediation, and then either settled prior to confirmation or "passed through" the bankruptcy to be determined post-confirmation; none was litigated to a final judgment prior to confirmation.  *See, e.g.*, *In re Diocese of Winona-Rochester*, Case No. 18-33707, Dkt. No. 339 (Bankr. D. Minn. Aug. 17, 2021) (motion for approval of a settlement agreement regarding coverage between the debtor and its insurers that was reached through post-confirmation mediation); *In re Diocese of Camden, N.J.*, Case No. 20-21257, Dkt. No. 640, at 3 (Bankr. D.N.J. May 20, 2021) (order appointing a mediator and referring all matters to mediation, including "all issues arising in the bankruptcy case and associated adversary proceedings", which resulted in a settlement between the insurers and the diocese and a stay of the insurance coverage adversary proceeding (*Diocese of Camden, N.J. v. Ins. Co. of N. Am.*, Adv. Case No. 20-01573, Adv. Dkt. No. 121 (Bankr. D.N.J. Jan. 5, 2022)); *The Roman Catholic Diocese of Ogdensburg, N.Y., et al., v. Certain Underwriters at Lloyd's, London, et al.*, Adv. Case No. 23-80013, Adv. Dkt. No. 39, at 5 (Bankr. N.D.N.Y. Oct. 18, 2023) (staying the insurance coverage adversary proceeding at the request of the diocese and referring all matters to mediation).

DATED:  July 3, 2024

**FOLEY & LARDNER LLP**
Eileen R. Ridley (CA Bar No. 151735)
Ann Marie Uetz (admitted *pro hac vice*)
Matthew D. Lee (admitted *pro hac vice*)
Thomas F. Carlucci (CA Bar No. 135767)
Jeffrey R. Blease (CA Bar. No. 134933)


By: */s/ Eileen R. Ridley*
Eileen R. Ridley

*Attorneys for Plaintiff The Roman Catholic
Bishop of Oakland*


**O'MELVENY & MYERS LLP**

By: */s/ Justine M. Daniels*

STEPHEN H. WARREN (S.B. #136895)
JUSTINE M. DANIELS (S.B. #241180)
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: swarren@omm.com,  jdaniels@omm.com

TANCRED V. SCHIAVONI (admitted *pro hac vice*)
1301 Avenue of the Americas New York, NY 10019
Telephone: (212) 326-2000
Email: tschiavoni@omm.com

**CLYDE & CO US LLP**
ALEXANDER E. POTENTE (S.B. #208240)
JASON J. CHORLEY (S.B. #263225)
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone:   (415) 365-9800
Facsimile:   (415) 365-9801
Email:       alex.potente@clydeco.us
             jason.chorley@clydeco.us

*Attorneys for Defendants Insurance Company of North
America, Pacific Indemnity Company, and Pacific
Employers Insurance Company*

**PLEVIN & TURNER LLP**

By: */s/ Mark D. Plevin*
Mark D. Plevin
Plevin & Turner LLP
580 California Street, 12th Floor
San Francisco, California 94104
Tel: 202-580-6640
mplevin@plevinturner.com

Miranda H. Turner (admitted *pro hac vice*)
Plevin & Turner LLP
1701 Pennsylvania Ave., N.W., Suite 200
Washington, DC 20006
Tel: 202-580-6640
mturner@plevinturner.com

*Attorneys for Defendant Continental Casualty
Company*


**KENNEDYS CMK LLP**

By: */s/ Travis Wall*
Travis Wall
Jillian G. Dennehy (*pro hac vice*)
455 Market Street, Suite 1900
San Francisco, California  94105
(415)-323-4460 (telephone)
travis.wall@kennedyslaw.com
Jillian.dennehy@kennedyslaw.com

**IFRAH LAW**
George R. Calhoun (*pro hac vice*)
1717 Pennsylvania Avenue, N.W., Suite 650
Washington, D.C.  20006
(202) 524-4147 (telephone)
george@ifrahlaw.com

*Attorneys for Defendant United States Fire Insurance
Company*

**CLYDE & CO US LLP**

By:  */s/ Catalina J. Sugayan*
Catalina J. Sugayan
Clinton E. Cameron (admitted *pro hac vice*)
Yongli Yang (admitted *pro hac vice*)
30 S. Wacker Drive, Suite 2600
Chicago, Illinois  60606
(312) 635-7000 (telephone)
Catalina.Sugayan@clydeco.us
Clinton.Cameron@clydeco.us
Yongli.Yang@clydeco.us


**DUANE MORRIS LLP**
Russell W. Roten
Jeff D. Kahane
Nathan Reinhardt
Andrew Mina
865 S. Figueroa Street, Suite 3100
Los Angeles, California  90017
(213) 689-7400 (telephone)
RWRoten@duanemorris.com
JKahane@duanemorris.com
NReinhardt@duanemorris.com
AMina@duanemorris.com

*Attorneys for Defendants Certain Underwriters at
Lloyd's, London subscribing severally and not jointly
to Slip Nos. CU 1001, K 66034, K 78138, and CU 3061*


**PARKER HUDSON RAINER & DOBBS LLP**

By:  */s/ Harris B. Winsberg*
Harris B. Winsberg (admitted *pro hac vice*)
Matthew M. Weiss (admitted *pro hac vice*)
Matthew G. Roberts (admitted *pro hac vice*)
303 Peachtree Street NE, Suite 3600
Atlanta, GA 30308
(404) 523-5300 (telephone)
hwinsberg@phrd.com
mweiss@phrd.com
mroberts@phrd.com

Todd Jacobs (admitted *pro hac vice*)
John E. Bucheit (admitted *pro hac vice*)

-24-

Two N. Riverside Plaza
Suite 1850
Chicago, IL 60606
(312) 477-3306 (telephone)
tjacobs@phrd.com
jbucheit@phrd.com

**SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC**
Blaise S. Curet
2000 Powell Street, Suite 830
Emeryville, CA 94608
(415) 352-6200 (telephone)
bcuret@spcclaw.com

**LAW OFFICE OF ROBIN CRAIG**
Robin D. Craig
6114 La Salle No. 517
Oakland, CA 94611
(510) 549-3310 (telephone)
rdc@rcraiglaw.com

*Attorneys for Defendant Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation*


**DENTONS US LLP**

By:  */s/ Josh Haevernick*
Josh Haevernick (SBN 308380)
1999 Harrison St., Suite 1300
Oakland, CA 94612-4709
Tel: (415) 882-5000
Joshua.haevernick@dentons.com

Patrick J. Maxcy
John Grossbart
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Tel: (312) 876-8000
Patrick.maxcy@dentons.com
John.grossbart@dentons.com

Lauren Macksoud
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 768-5347
Lauren.macksoud@dentons.com

*Attorneys for Defendant Travelers Casualty & Surety*

-25-

*Company*

**BLACK, COMPEAN & HALL, L.L.P.**

By: */s/ Michael D. Compean*
Michael D. Compean (SBN 125106)
Frederick G. Hall (SBN 130465)
275 Hillcrest Drive, Ste 160-1021
Thousand Oaks, California  91360
Telephone:  (818) 883-9500
Facsimile:  (888) 704.6023
Email:  fhall@blackcompeanhall.com
            mcompean@blackcompeanhall.com

*Attorneys for Defendant California*
*Insurance Guarantee Association*

**BURNS BAIR LLP**

By: */s/ Timothy W. Burns*
TIMOTHY W. BURNS (Admitted Pro Hac Vice)
tburns@burnsbair.com
JESSE J. BAIR (Admitted Pro Hac Vice)
jbair@burnsbair.com
10 East Doty Street, Suite 600
Madison, Wisconsin 53703-3392
Telephone: (608) 286-2808

*Special Insurance Counsel for the*
*Official Committee of Unsecured Creditors*

**LOWENSTEIN SANDLER LLP**

By: */s/ Jeffrey D. Prol*
JEFFREY D. PROL (Admitted Pro Hac Vice)
jprol@lowenstein.com
BRENT WEISENBERG (Admitted Pro Hac Vice)
bweisenberg@lowenstein.com
COLLEEN M. RESTEL (Admitted Pro Hac Vice)
crestel@lowenstein.com
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone:  (973) 597-2500

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
tkeller@kbkllp.com
JANE KIM (Cal. Bar No. 298192)

jkim@kbkllp.com
GABRIELLE L. ALBERT (Cal. Bar No. 190895)
galbert@kbkllp.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 496-6723

*Counsel for the Official Committee of
Unsecured Creditors*