**FOLEY & LARDNER LLP**
Eileen R. Ridley (CA Bar No. 151735)
Tel: (415) 438-6469; eridley@foley.com
Ann Marie Uetz (admitted *pro hac vice*)
Tel: (313) 234-7114; auetz@foley.com
Matthew D. Lee (admitted *pro hac vice*)
Tel: (608) 258-4203; mdlee@foley.com
Thomas F. Carlucci (CA Bar No. 135767)
Tel: (415) 984-9824; tcarlucci@foley.com
Jeffrey R. Blease (CA Bar. No. 134933)
Tel: (617) 226-3155; jblease@foley.com
555 California Street, Suite 1700
San Francisco, CA 94104-1520

*Counsel for the Debtor / Plaintiff and Debtor in Possession*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND INSURANCE ADVERSARY PROCEEDING LITIGATION | Case No.: 3:24-cv-00709-JSC<br><br>Bankruptcy Case No. 23-40523 WJL<br><br>Hon. Jacqueline Scott Corley<br><br>**JOINT STATUS UPDATE** |

Plaintiff The Roman Catholic Bishop of Oakland ("RCBO"), the debtor and debtor in possession in the underlying chapter 11 case (the "Debtor"), the Official Committee of Unsecured Creditors (the "Committee"), and Defendants (sometimes referred to herein as the "Insurers," but including the California Insurance Guarantee Association) (together, the "Parties") hereby submit this Joint Status Update to the Court pursuant to the Court's July 2, 2025 Order For Further Status Update (the "Order," Dkt. No. 177.) In the Order, the Court requested that the parties "jointly provide the Court with a written and thorough update on the status of discovery in this action, and also on the status of the bankruptcy

proceedings and confirmation of the Plan of Reorganization." (*Id.*) The Parties hereby provide a status update on each of the requested topics below.

# I. BANKRUPTCY PROCEEDINGS

## A. Plan Confirmation

RCBO's pending Plan of Reorganization (the "Plan"), would create a Survivor's Trust funded with $115 million from RCBO, and up to $28.5 million from the Roman Catholic Welfare Corporation of Oakland. Under the Plan, each abuse claimant has three choices for recovery. They may: (1) elect to receive an Immediate Payment of $50,000; (2) accept the Distribution Option and elect to receive distributions from the Trust based on the "score" the claim receives from the Abuse Claims Reviewer; or (3) choose the Litigation Option, return to the tort system to try to establish Debtor's liability, and, if a judgment is obtained, pursue monetary recovery from any allegedly applicable insurance policy. Thus, the Plan not only provides abuse claimants with the ability to choose their preferred path to recovery, it provides the most expeditious route for them to receive recovery. The filed Plan (Bk. Dkt. No. 1830) has the support of the Insurers.[1]

On April 4, 2025, the Bankruptcy Court approved the Third Amended Disclosure Statement and solicitation procedures (Bk. Dkt. No. 1877.) Votes were solicited from certain classes of creditors. Although holders of Abuse Claims (as defined in the Plan) voted to reject the Plan, the Debtor asserts that two classes of creditors voted to accept the Plan, providing RCBO with an ability to seek confirmation of the Plan on a "cramdown" basis under 11 U.S.C. § 1129(b). RCBO and the Committee subsequently engaged in extensive fact discovery concerning the plan of reorganization including extensive document production and nearly a dozen fact witness depositions, including 30(b)(6) depositions of RCBO and the Committee. RCBO and the Committee also exchanged nine expert reports regarding the fairness of the plan, its reasonableness, the scope of RCBO's real estate assets, and civil/canon law on restricted assets.

On July 16, 2025, RCBO moved to continue the Confirmation Hearing to November 2025 to afford time for RCBO to sell real property to raise cash and to continue negotiating with the Committee and

[1] A similar plan with many of the same core aspects was recently proposed by the debtor, with the support of the committee and insurers, in *In re Roman Cath. Church of Archdiocese of New Orleans*, Case No. 20-10846 (Bankr. E.D. La. 2021) (Dkt. 4150).

Insurers. (Bk. Dkt. No. 2147.) Following hearings on July 16 and 18, 2025, the Bankruptcy Court granted RCBO's motion, adjourned the start of the Confirmation Hearing, and set a further status conference for August 4 and another on November 12, 2025, to discuss the resetting of dates for the Confirmation Hearing. (Bk. Dkt. No. 2162.)

On July 25, 2025, in response to the renewed motion of the Committee, the Bankruptcy Court entered an order lifting the automatic stay to permit six state court abuse cases to proceed but not to collection. (Bk. Dkt. No. 2168.) Selection of the six cases is underway.

**B. The Parties' Continued Mediation Efforts**

The parties participated in mediation sessions occurring on various dates over the past few months, which mediators Tim Gallagher and Judge Randall Newsome facilitated. While the parties have not yet reached any settlements, these mediations continue to seek a resolution between RCBO and certain of the Insurers.

**C. The Adversary Proceedings**

On December 11, 2024, the Committee filed Adversary Proceeding Case No. 24-04053 seeking declaratory relief that the assets of certain Non-Debtor Affiliated Entities were under the control of RCBO and available to fund the Plan. On July 16, the Bankruptcy Court granted RCBO's motion to dismiss that action with prejudice.

On June 17, 2025, the Bankruptcy Court denied RCBO's motion to dismiss the amended complaint in a second adversary action filed by the Committee, Adversary Proceeding Case No. 24-04051, seeking declaratory relief regarding certain real estate and donated assets which RCBO maintains are restricted. This case is scheduled for a further status conference on August 4, 2025.

**II. COVERAGE ACTION DISCOVERY**

RCBO and the Insurers continue to work cooperatively on document discovery in this action. Discovery requires review and production of documents from the late 1950s through the present concerning, *inter alia*, the claims of nearly 400 claimants, the actions of over 100 alleged perpetrators,

the Clergy III cases and settlement, and dozens of insurance policies.

**A. Status of RCBO Document Productions**

Since the parties' March 3, 2025 Joint Status Update, RCBO has continued to make significant document productions to the Insurers. To date, RCBO has produced at least 53,000 documents to the Insurers, approximately 40,000 of which it produced since the March 3, 2025 Joint Status Update. These document productions include, *inter alia*, clergy abuse-related documents produced in the Bankruptcy, additional documents responsive to the Insurer's RPFs, as well as documents produced pursuant to additional informal document requests certain Insurers have made to RCBO.

RCBO identified in its Responses to the Insurers' RFPs the documents and, where feasible, specific Bates numbers of documents already produced to the Insurers in the bankruptcy case that are responsive to the RFPs. RCBO does not intend to re-produce but rather intends to treat those documents as produced within this action.

On February 4, 2025, RCBO sent the Insurers an email alerting them to RCBO's forthcoming production of discovery documents from the underlying JCCP 5108 proceedings. Westport, LMI, and the Pacific Insurers returned the requisite confidentiality agreement for the production of these documents. [2]

On March 3, 2025, RCBO served two productions of documents that included, among other things, policies and procedures related to clergy sexual abuse. On May 30, 2025, RCBO served another production of documents. On July 23, 2025, RCBO produced a collection of documents it had recently produced to the Committee in the bankruptcy. This included a mix of documents potentially relevant to insurance coverage and documents not relevant to insurance coverage, such as documents related to RCBO's financials, leases, executory contracts, and/or back-up for monthly operating reports. RCBO has given notice to the Insurers of an additional forthcoming production of documents that it will produce in the near term. RCBO anticipates that production volume will be in the realm of 5,000 documents. Following that production, RCBO expects its document productions to be substantially complete subject

[2] Certain insurers have raised concerns regarding the proposed requirement that, in order to receive production of confidential documents from the JCCP5108 proceedings, they must execute the operative Protective Order in those proceedings, which governs disclosure of JCCP5108 documents containing confidential information, due to certain of its terms relating to the conclusion of litigation. The parties are in discussions to resolve those issues.

to the outcome of continuing meet and confer discussions with the Insurers regarding disputed document categories as referenced below.

**B. Status of RCBO's RFPs to Insurers and the Insurers' Document Productions**

The Parties have held a series of productive, individualized meet and confer discussions regarding RCBO's RFPs to the Insurers. RCBO and the Insurers continue to meet and confer regarding what RCBO contends are deficiencies in the insurers' document productions, as well as categories of documents to which RCBO contends the insurers have improperly objected. The status of RCBO's RFPs and the Insurers' responses is set forth in further detail below:

**U.S. Fire:** On June 28, 2024 U.S. Fire served its objections and responses to RCBO's RFPs. RCBO and U.S. Fire met and conferred by teleconference on February 14, 2025. During the meet and confer, U.S. Fire explained that it has not located any evidence to support the existence of the alleged policy at issue, nor was U.S. Fire ever provided with notice of the underlying claims prior to be named as a defendant in this lawsuit. Nonetheless, U.S. Fire stated it will make a small document production in the near future, and otherwise stands on its objections or its statements that no responsive documents exist. That limited production is being finalized and will be produced shortly. U.S. Fire has not produced any documents to date. RCBO disagrees that U.S. Fire did not receive notice of the underlying claims and contends there is clear evidence that U.S. Fire issued a policy to RCBO covering certain of the abuse claims, which RCBO has provided to U.S. Fire.

**CNA:** On July 8, 2024, CNA served objections and responses to RCBO's RFPs. On September 30, 2024, CNA sent a letter responding to RCBO's September 9, 2024 letter regarding RCBO's RFPs. RCBO and CNA met and conferred by videoconference on February 18, 2025, and discussed the issues raised in their respective letters. The parties plan to continue corresponding in an attempt to clarify and further narrow these issues. CNA made an initial production of 935 documents on February 28, 2025.

**Lloyd's:** On June 21, 2024, Lloyd's served objections and responses to RCBO's RFPs. Lloyd's has made two document productions in response to RCBO's RFPs totaling 151 documents. RCBO and Lloyd's met and conferred by videoconference on February 18, 2025. Lloyd's subsequently confirmed by email (1) its position that it had produced all documents in its possession for RFPs where it had agreed to

produce documents, and (2) that it stood on its remaining objections discussed during the meet and confer call.

**Travelers:** On June 24, 2024, Travelers served objections and responses to RCBO's RFPs. RCBO and Travelers met and conferred by teleconference on February 20, 2025. The parties agreed to continue corresponding in an attempt to clarify and further narrow the issues discussed. Travelers has produced 5,196 responsive documents to date as agreed in its responses to the RFP. Travelers remains available to further meet and confer on those responses and objections as requested by RCBO.

**Westport:** On June 24, 2024, Westport served objections and responses to RCBO's RFPs. On February 17, 2025, Westport served its document production of 342 documents in response to RCBO's RFPs, along with its privilege log. Thereafter, RCBO met and conferred with Westport by videoconference on February 21, 2025 to discuss and seek clarification regarding Westport's responses, its objections and its production. The parties are continuing to communicate about Westport's responses and production to further clarify and/or narrow the issues raised by RCBO. By letter dated July 25, 2025, RCBO followed up with a further meet and confer request, which Westport is considering.

**Pacific Insurers:** In the bankruptcy, the Pacific Insurers produced 24,211 pages on March 4, 2024, and its privilege logs on March 9 and 13, 2024. In this action, on July 8, 2024, the Pacific Insurers served objections and responses to RCBO's RFPs and produced 3,415 documents on May 29, 2025, consisting of the documents produced in the bankruptcy and some additional documents. RCBO and the Pacific Insurers are meeting and conferring regarding the Pacific Insurers' responses to RCBO's RFPs.

**Excess Insurance, World Auxiliary, River Thames, Dominion, and Anglo French (the "New London Entities"):** On February 4, 2025, RCBO served RFPs on the New London Entities, which RCBO named for the first time in its Fourth and Fifth Amended Complaints. Counsel for Lloyd's, who also represent the New London Entities, have indicated the London Entities will not separately respond to or produce any documents pursuant to these RFPs, and instead refer to and incorporate Lloyd's previous responses and document productions (the New London Entities received identical RFPs to those served on Lloyd's).

**Fidelidade[3]:** On February 4, 2025, RCBO served RFPs on Fidelidade, which RCBO likewise named for the first time in the Fourth and Fifth Amended Complaints. Fidelidade responded to the RFPs and produced 4 documents on May 7, 2025.

**CIGA:** On February 5, 2025, RCBO served a set of 10 RFPs on CIGA. CIGA served its responses to those RFPs on April 4, 2025. CIGA has not produced any documents to date.

**C. Meet and Confers Regarding Insurers' Requests for Production to RCBO**

Insurers continue to meet and confer with RCBO regarding their outstanding RFPs to RCBO, to review RCBO's productions for both substance and deficiencies, and to analyze the need for additional document requests to RCBO. The status of the parties' meet and confers regarding the Insurers' respective RFPs to RCBO is detailed below:

**Westport:** On June 24, 2024, Westport served a first set of document requests to RCBO, containing over 50 document requests. Although RCBO has made general productions of documents to all insurers, it has not identified which of Westport's document requests correspond to the documents it has produced, making it difficult to determine whether RCBO has complied with Westport's document requests. Moreover, to date, RCBO has produced no privilege log.

Westport, by letter dated February 7, 2025, videoconference dated February 21, 2025, a further letter dated March 31, 2025 and by email dated July 14, 2025, met and conferred with RCBO regarding RCBO's responses, objections and production. By letter dated July 25, 2025, RCBO responded to Westport's concerns and raised its concerns regarding Westport's document requests and responses, and stated a further willingness to meet and confer cooperatively in order to further narrow areas of disagreement. Westport is currently reviewing RCBO's detailed response to Westport's prior communications and will continue to meet and confer with RCBO.

**Pacific Insurers, Certain Underwriters at Lloyd's and CIGA[4]:** On March 3, 2025, the Pacific Insurers sent RCBO a deficiency letter concerning documents related, but not limited, to twenty priority

---

[3] Counsel for Lloyd's and the New London Entities now also represent Fidelidade.

[4] Pacific Indemnity Company; Insurance Company of North America; Pacific Employers Insurance Company; Westchester Fire Insurance Company (collectively, the "Pacific Insurers"); Travelers Casualty & Surety Company; Certain Underwriters at Lloyd's London; California Insurance Guarantee Association. Continental Casualty Company later served RFPs requesting

categories of documents, asked that various objections be withdrawn and requested a privilege log. The Pacific Insurers and RCBO met and conferred on May 19. RCBO indicated a willingness to consider the issues raised, asked that the Pacific Insurers identify the RFPs to which the categories were responsive and indicated that it was agreeable to producing the Clergy III transcripts in its possession, custody, and control. On May 21, the Pacific Insurers sent a follow-up letter identifying the implicated RFPs and reiterating their requests. On July 23, the Pacific Insurers sent another letter following up on the deficiencies identified in their May 21 letter, after reviewing the supplemental production made by RCBO identifying categories of documents they had not been able to locate in its review of RCBO's document productions. The letter also followed up on their request that various objections be withdrawn and a privilege log produced. On July 25, 2025, RCBO responded disputing that its document production contained deficiencies and raising deficiencies in the Pacific Insurers' RFP responses and document production to RCBO. The parties will meet and confer regarding these disagreements. The parties remain hopeful that differences can be narrowed in further discussions.

**CNA:** CNA served RFPs requesting production of, *inter alia*, all documents requested by the Pacific Insurers and all documents produced to the Pacific Insurers, as well as several additional categories of documents. RCBO and CNA continue to meet and confer regarding RCBO's responses and objections to CNA's discovery requests as well as RCBO's document productions.

* * *

As RCBO recently made substantial productions of clergy abuse-related documents on May 30, 2025 and July 24, 2025 and is proposing to make another production in the coming weeks, the Insurers and RCBO have agreed to continue the meet and confer process. The Pacific Insurers are preparing to file a motion to intervene in the state court proceedings (JCCP 5108) for the limited purpose of seeking production of plaintiff "mini fact sheets" and additional deposition transcripts that RCBO has represented are not in its possession, custody, or control. The Pacific Insurers are also preparing to serve subpoenas on certain third-parties likely to have relevant information.

---

production of, *inter alia*, all documents requested by the Pacific Insurers and all documents produced to the Pacific Insurers, as well as several additional categories of documents.

**Committee's Statement:**

On November 19, 2024, shortly after filing the first version of its Plan of Reorganization (the "Plan"), the Debtor filed a Motion to Hold Cases in Abeyance, Dkt. 146 (the "Abeyance Motion"), urging this Court to stay this Action "at least until the Bankruptcy Court has ruled on approval of RCBO's disclosure statement . . . and confirmation of RCBO's plan of reorganization." Dkt. 161 at 1.

At a January 16, 2025 hearing on the Abeyance Motion, the Court recognized that: "If the plan is not approved, then this action will continue . . . ." Hearing Tr. at 5:7–8 (Jan. 16, 2025). Accordingly, although the Court granted the Abeyance Motion, it did so only in part, requiring the Debtor and Insurers to continue discovery while the rest of the Action was stayed. Dkt. 166 at 1.

At the hearing, the Court expressed concern about "delay, further delay, in resolution of [survivors'] claims." *Id.* at 8:13–14. The Court stated further:

> Because what I don't want is when it's not confirmed, if it's not confirmed, then you both all come to me and say, "Oh, we need another year." I don't want that, especially because you initially came to me and said, "Oh, we can get this adjudicated, you know, this defense of -- this particular defense in six months or something." Right? I don't want that.

*Id.* at 13:4–11. The Committee shares the Court's concern.

This is particularly the case now, after the abuse survivors overwhelming rejected the Debtor's Plan, with 341 of the 343 voting abuse survivors voting against the Plan. *See Declaration of Andres A. Estrada with Respect to Solicitation and the Tabulation of Votes on the Debtor's Third Amended Plan of Reorganization*, Dkt. No. 2040, Ex. A (filed June 6, 2025). The Committee does not believe that the Debtor's Plan will be confirmed over the objection of the abuse survivors. To the Committee's knowledge, no court has ever "crammed-down" a Plan over the objection of survivors.

Further, at the Debtor's request (and over the Committee's objection) the confirmation hearing on the Debtor's Plan has now been postponed indefinitely, with only status conferences scheduled through November. In light of the delay and uncertainty surrounding the Debtor's Plan, the Committee respectfully submits that the stay should be lifted in this Action to avoid any further delay with adjudicating Debtor insurance issues.

**RCBO's Response to Committee's Statement:**

RCBO's disagrees with the Committee's position as to the stay in this case. As an initial matter, RCBO and the Insurers have been diligently working together to progress and complete discovery in this case and have made substantial progress. For this reason, among others, RCBO disagrees that in practice the stay has caused any delay in the "resolution of the survivors' claims," as the Committee contends. RCBO notes that the Plan provides every class 4 claimant the opportunity to pursue insurance coverage if they so choose. Thus, the stay in this case does not deprive survivors of access to RCBO's insurance assets.

RCBO likewise disagrees with the Committee's description of the status and prospects of Plan confirmation. There is no "indefinite[]" delay. Rather, there are status conferences set on August 4, 2025 and November 12, 2025 to set a new Plan confirmation schedule. Finally, RCBO disagrees that the vote the Committee references has any impact on Judge Lafferty's ability or inclination to confirm the Plan, or that the Plan cannot be "crammed down" over the objection of class 4 claimants.

Should the Court be inclined to entertain the idea of lifting the stay in this case, RCBO respectfully requests that the parties be given the opportunity to brief the question and more fully address the issues at stake, including a discussion of how the case should proceed in that instance (including a case schedule).

//

//

//

DATED: July 29, 2025

**FOLEY & LARDNER LLP**
Eileen R. Ridley (CA Bar No. 151735)
Ann Marie Uetz (admitted *pro hac vice*)
Matthew D. Lee (admitted *pro hac vice*)
Thomas F. Carlucci (CA Bar No. 135767)
Jeffrey R. Blease (CA Bar. No. 134933)

By: */s/ Eileen R. Ridley*
Eileen R. Ridley

*Attorneys for Plaintiff The Roman Catholic Bishop of Oakland*

**O'MELVENY & MYERS LLP**

By: */s/ Justine M. Daniels*

STEPHEN H. WARREN (S.B. #136895)
JUSTINE M. DANIELS (S.B. #241180)
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: swarren@omm.com, jdaniels@omm.com

TANCRED V. SCHIAVONI (admitted *pro hac vice*)
1301 Avenue of the Americas New York, NY 10019
Telephone: (212) 326-2000
Email: tschiavoni@omm.com

**CLYDE & CO US LLP**
ALEXANDER E. POTENTE (S.B. #208240)
JASON J. CHORLEY (S.B. #263225)
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
Email: alex.potente@clydeco.us
jason.chorley@clydeco.us

*Attorneys for Defendants Insurance Company of North America, Pacific Indemnity Company, and Pacific Employers Insurance Company*

**PLEVIN & TURNER LLP**

By: */s/ Mark D. Plevin*
Mark D. Plevin (State Bar No. 146278)
Plevin & Turner LLP
580 California Street, Suite 1200
San Francisco, California 94104
Tel: 202-580-6640
mplevin@plevinturner.com

Miranda H. Turner (admitted *pro hac vice*)
Jordan A. Hess (admitted *pro hac vice*)
Plevin & Turner LLP
1701 Pennsylvania Ave., N.W., Suite 200
Washington, DC 20006
Tel: 202-580-6640
mturner@plevinturner.com

*Attorneys for Defendant Continental Casualty Company*

**KENNEDYS CMK LLP**

By: */s/ Travis Wall*
Travis Wall
Jillian G. Dennehy (*pro hac vice*)
455 Market Street, Suite 1900
San Francisco, California 94105
(415)-323-4460 (telephone)
travis.wall@kennedyslaw.com
Jillian.dennehy@kennedyslaw.com

**IFRAH LAW**
George R. Calhoun (*pro hac vice*)
1717 Pennsylvania Avenue, N.W., Suite 650
Washington, D.C. 20006
(202) 524-4147 (telephone)
george@ifrahlaw.com

*Attorneys for Defendant United States Fire Insurance Company*

**CLYDE & CO US LLP**

By: /s/ Catalina J. Sugayan
Catalina J. Sugayan
Clinton E. Cameron (admitted *pro hac vice*)
Yongli Yang (admitted *pro hac vice*)
30 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606
(312) 635-7000 (telephone)
Catalina.Sugayan@clydeco.us
Clinton.Cameron@clydeco.us
Yongli.Yang@clydeco.us

**SKARZYNSKI MARICH & BLACK LLP**
Russell W. Roten
Jeff D. Kahane
Nathan Reinhardt
Timothy Evanston
Ashley I. Storey
865 S. Figueroa Street, Suite 3100
Los Angeles, California 90017
(213) 689-7400 (telephone)
rroten@skarzysnki.com
jkahane@skarzynski.com
nreinhardt@skarzynski.com
tevanston@skarzynski.com
astorey@skarzynski.com

*Attorneys for Defendants Certain Underwriters at Lloyd's, London subscribing severally and not jointly to Slip Nos. CU 1001, K 66034, K 78138, and CU 3061, Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Co. Ltd.); the Ocean Marine Insurance Company Limited (as Part VII transferee of the World Auxiliary Insurance Corporation Limited); River Thames Insurance Company Limited; Dominion Insurance Company Limited; Companhia de Seguros Fidelidade-Mundial f/k/a Fidelidade Insurance Company of Lisbon; and R&Q Gamma Company Limited (as Part VII transferee of Anglo French Ltd.)*

**PARKER HUDSON RAINER & DOBBS LLP**

By: */s/ Todd Jacobs*
Todd Jacobs (admitted *pro hac vice*)
John E. Bucheit (admitted *pro hac vice*)
Two N. Riverside Plaza
Suite 1850
Chicago, IL 60606
(312) 477-3306 (telephone)
tjacobs@phrd.com
jbucheit@phrd.com

Harris B. Winsberg (admitted *pro hac vice*)
Matthew M. Weiss (admitted *pro hac vice*)
Matthew G. Roberts (admitted *pro hac vice*)
303 Peachtree Street NE, Suite 3600
Atlanta, GA 30308
(404) 523-5300 (telephone)
hwinsberg@phrd.com
mweiss@phrd.com
mroberts@phrd.com

**SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC**
Blaise S. Curet
2000 Powell Street, Suite 830
Emeryville, CA 94608
(415) 352-6200 (telephone)
bcuret@spcclaw.com

**LAW OFFICE OF ROBIN CRAIG**
Robin D. Craig
6114 La Salle No. 517
Oakland, CA 94611
(510) 549-3310 (telephone)
rdc@rcraiglaw.com

*Attorneys for Defendant Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation*

**DENTONS US LLP**

By: */s/ Josh Haevernick*
Josh Haevernick (SBN 308380)
1999 Harrison St., Suite 1300
Oakland, CA 94612-4709
Tel: (415) 882-5000
Joshua.haevernick@dentons.com

Patrick J. Maxcy
John Grossbart
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Tel: (312) 876-8000
Patrick.maxcy@dentons.com
John.grossbart@dentons.com

Lauren Macksoud
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 768-5347
Lauren.macksoud@dentons.com

*Attorneys for Defendant Travelers Casualty & Surety Company*

**BLACK, COMPEAN & HALL, L.L.P.**

By: */s/ Frederick G. Hall*
Michael D. Compean (SBN 125106)
Frederick G. Hall (SBN 130465)
275 Hillcrest Drive, Ste 160-1021
Thousand Oaks, California 91360
Telephone: (818) 883-9500
Facsimile: (888) 704.6023
Email: fhall@blackcompeanhall.com
mcompean@blackcompeanhall.com

*Attorneys for Defendant California Insurance Guarantee Association*

**LOWENSTEIN SANDLER LLP**

By: */s/ Jeffrey D. Prol*
JEFFREY D. PROL (Admitted *Pro Hac Vice*)
jprol@lowenstein.com
BRENT WEISENBERG (Admitted *Pro Hac Vice*)
bweisenberg@lowenstein.com
COLLEEN M. RESTEL (Admitted *Pro Hac Vice*)
crestel@lowenstein.com
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
tkeller@kbkllp.com
JANE KIM (Cal. Bar No. 298192)
jkim@kbkllp.com
GABRIELLE L. ALBERT (Cal. Bar No. 190895)

galbert@kbkllp.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 496-6723

*Counsel for the Official Committee of Unsecured Creditors*