DAVID B. GOODWIN (CA Bar No. 104469)
CHRISTINE S. HASKETT (CA Bar No. 188053)
HARPER A. JOHNSON (CA Bar No. 364768)
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: dgoodwin@cov.com; chaskett@cov.com;
hajohnson@cov.com

EILEEN R. RIDLEY (CA Bar No. 151735)
ANN MARIE UETZ (admitted *pro hac vice*)
MATTHEW D. LEE (admitted *pro hac vice*)
THOMAS F. CARLUCCI (CA Bar No. 135767)
JEFFREY R. BLEASE (CA Bar No. 134933)
FOLEY & LARDNER LLP
One Market Plaza, 55 Spear Street Tower, Suite 1900
San Francisco, California 94105
Telephone: (415) 434-4507
Facsimile: (415) 434-4484
Email: eridley@foley.com; auetz@foley.com;
mdlee@foley.com; tcarlucci@foley.com;
jblease@foley.com

Attorneys for Plaintiff
THE ROMAN CATHOLIC BISHOP OF OAKLAND

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND INSURANCE ADVERSARY PROCEEDING LITIGATION | Case Nos.: 3:24-cv-00709-JSC<br>3:24-cv-00711-JSC<br><br>Hon. Jacqueline Scott Corley<br><br>**SIXTH AMENDED COMPLAINT FOR DECLARATORY JUDGMENT RELIEF, BREACH OF STATUTORY DUTY, AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; JURY TRIAL DEMANDED** |

THE ROMAN CATHOLIC BISHOP OF OAKLAND,

Plaintiff,

v.

PACIFIC INDEMNITY COMPANY, a Delaware corporation; TRAVELERS CASUALTY & SURETY COMPANY F/K/A AETNA CASUALTY & SURETY COMPANY, a Connecticut corporation; INSURANCE COMPANY OF NORTH AMERICA, a Delaware corporation; UNITED STATES FIRE INSURANCE, a Delaware corporation; WESTPORT INSURANCE CORPORATION, a Delaware corporation; CONTINENTAL CASUALTY COMPANY, a Delaware corporation; PACIFIC EMPLOYERS INSURANCE, a Delaware corporation; WESTCHESTER FIRE INSURANCE COMPANY, a Pennsylvania corporation; the CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, a state entity, and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING SEVERALLY AND NOT JOINTLY TO SLIP NOS. CU 1001 AND K 66034 ISSUED TO THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, AND NOS. K 78138 AND CU 3061 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND; COMPANHIA DE SEGUROS FIDELIDADE SA F/K/A FIDELIDADE INSURANCE COMPANY OF LISBON, SUBSCRIBING TO SLIP NO. K 78138 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND; CATALINA WORTHING INSURANCE LTD F/K/A HFPI (AS PART VII TRANSFEREE OF EXCESS INSURANCE CO. LTD.); DOMINION INSURANCE COMPANY LIMITED; OCEAN MARINE INSURANCE COMPANY LIMITED (AS PART VII TRANSFEREE OF THE WORLD AUXILIARY INSURANCE CORPORATION LIMITED); ENGLISH & AMERICAN INSURANCE COMPANY LIMITED, RIVER THAMES INSURANCE COMPANY LIMITED, R&Q GAMMA COMPANY LIMITED (AS PART VII TRANSFEREE OF ANGLO FRENCH LTD.); LONDON AND OVERSEAS INSURANCE COMPANY LIMITED; and ORION INDEMNITY COMPANY,

Defendants.

| |
|---|
| THE ROMAN CATHOLIC BISHOP OF OAKLAND,<br>Plaintiff,<br>v.<br>AMERICAN HOME ASSURANCE CO., a New York corporation,<br>Defendant. |

Plaintiff THE ROMAN CATHOLIC BISHOP OF OAKLAND, plaintiff in the above-captioned action, for its Sixth Amended Complaint for Declaratory Judgment Relief, Breach of Statutory Duty, and Breach of the Implied Covenant of Good Faith and Fair Dealing (the "Sixth Amended Complaint") against Defendants PACIFIC INDEMNITY, a Delaware corporation; TRAVELERS CASUALTY & SURETY COMPANY F/K/A AETNA CASUALTY & SURETY COMPANY, a Connecticut corporation; INSURANCE COMPANY OF NORTH AMERICA, a Delaware corporation; UNITED STATES FIRE INSURANCE, a Delaware corporation; WESTPORT INSURANCE CORPORATION, a Delaware corporation; CONTINENTAL CASUALTY COMPANY, a Delaware corporation; PACIFIC EMPLOYERS INSURANCE, a Delaware corporation; WESTCHESTER FIRE INSURANCE COMPANY, a Pennsylvania corporation; the CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, a state entity; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING SEVERALLY AND NOT JOINTLY TO SLIP NOS. CU 1001 AND K 66034 ISSUED TO THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, AND NOS. K 78138 AND CU 3061 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND; COMPANHIA DE SEGUROS FIDELIDADE SA F/K/A FIDELIDADE INSURANCE COMPANY OF LISBON, SUBSCRIBING TO SLIP NO. K 78138 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND; CATALINA WORTHING INSURANCE LTD F/K/A HFPI (AS PART VII TRANSFEREE OF EXCESS INSURANCE CO. LTD.); DOMINION INSURANCE COMPANY LIMITED, OCEAN MARINE INSURANCE COMPANY LIMITED (AS PART VII TRANSFEREE OF THE WORLD AUXILIARY INSURANCE CORPORATION LIMITED); ENGLISH & AMERICAN INSURANCE COMPANY LIMITED, RIVER THAMES INSURANCE COMPANY LIMITED; R&Q GAMMA COMPANY LIMITED (AS PART VII TRANSFEREE OF ANGLO FRENCH LTD.); LONDON AND OVERSEAS INSURANCE COMPANY LIMITED; ORION INDEMNITY COMPANY; and AMERICAN HOME ASSURANCE COMPANY, a New York corporation[1]; (collectively, "Defendants" and collectively without the California Insurance Guarantee Association, "Insurer Defendants"), alleges as follows:

[1] This amended complaint also serves as an amendment to the Second Amended Complaint that was filed against American Home Assurance Company only.

Attached hereto is Exhibit A, which lays out the specific claims that are the subject of the relief sought herein as of the date of this filing. The rows detail claim numbers designated by RCBO, case numbers assigned to the case by the court below, insurance carrier names for the years in which the alleged abuse took place, the years of the alleged abuse, the date RCBO (either itself or through its broker) tendered the claim to its respective insurers, the date of the insurer's response, and the insurer's response. Exhibit A may be the subject of further updating and disclosure as the matter progresses. RCBO prepared Exhibit A at the Court's request but reserves all rights as to the applicable trigger of coverage for the claims listed therein.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to sections 157 and 1334 of title 28 of the United States Code ("Title 28").

2. Venue in this Court is proper pursuant to sections 1408 and 1409 of Title 28.

## NATURE OF THE ACTION

3. This is an action for declaratory judgment, breach of statutory duty, and breach of the implied covenant of good faith and fair dealing.

## THE PARTIES

4. Plaintiff THE ROMAN CATHOLIC BISHOP OF OAKLAND (herein "Plaintiff" or "RCBO") is a California corporation sole with its principal place of business in Oakland, California.

5. Defendant PACIFIC INDEMNITY COMPANY ("Pacific Indemnity") is, on information and belief, a Delaware corporation that conducted business in this District and issued written primary policies of insurance to RCBO under Policy No. LAC127792 for the period March 12, 1962 to October 25, 1963 and Policy No. LAC 155598 for the period October 25, 1963 to October 25, 1966 (the "Pacific Indemnity Policies"). Specifically, the Pacific Indemnity Policies are responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 15, 42, 45, 53, 57, 65, 70, 74, 75, 79, 98, 107, 109, 114, 119, 120, 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 234, 239, 245, 252, 257, 285, 292, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part

during one or more of the policy periods of the Pacific Indemnity Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Pacific Indemnity Policies.

6. Defendant TRAVELERS CASUALTY & SURETY COMPANY F/K/A AETNA CASUALTY & SURETY COMPANY is, on information and belief, a Connecticut corporation that conducted business in this District (herein "Travelers"). Travelers issued written primary policies of insurance to RCBO under Policy No. 05 AL 802025 CMA for the period December 1, 1975 to December 1, 1978; Policy No. 05 SM90296 FCA for the period December 1, 1978 to December 1, 1979; Policy No. 05 SM 99094 FCA for the period December 1, 1979 to December 1, 1980; and Policy No. 05 SM 107459 FCA for the period December 1, 1980 to December 1, 1981 (the "Travelers Primary Policies"). Specifically, the Travelers Primary Policies are responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 2, 7, 10, 13, 16, 17, 19, 20, 21, 22, 25, 26, 28, 29, 31, 33, 35, 40, 41, 42, 43, 45, 54, 56, 58, 59, 61, 63, 64, 71, 80, 82, 83, 86, 88, 92, 95, 96, 97, 99, 101, 102, 103, 104, 105, 106, 110, 115, 117, 121, 126, 128, 131, 132, 133, 140, 144, 149, 152, 154, 157, 158, 163, 166, 168, 172, 174, 180, 181, 182, 189, 190, 191, 192, 193, 194, 198, 200, 203, 206, 208, 209, 210, 211, 212, 213, 215, 216, 223, 224, 225, 227, 229, 230, 243, 244, 247, 249, 250, 251, 256, 258, 259, 266, 267, 272, 273, 274, 295, 296, 297, 298, 304, 306, 310, 317, 318, 319, 321, 323, 324, 329, 333, 335, 343, 344, 345, 347, 349, 352, 353, 354, 359, 367, 368, 370, 373, 374, 376, 377, 379, 380, 382, 384, 386, 388, 392, 393, 399, 402, 403; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Travelers Primary Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Travelers Primary Policies.

7. Defendant INSURANCE COMPANY OF NORTH AMERICA (herein "INA") is, on information and belief, a Delaware corporation that conducted business in this District. INA issued written primary policies of insurance to RCBO for the policy periods October 25, 1966 to October 25,

1969, and October 25, 1969 to October 25, 1970. Upon information and belief, the policy numbers are Policy No. CP 25231 and Policy No. CP 267867, respectively (the "INA Primary Policies"). Specifically, the INA Primary Policies are responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 15, 19, 23, 32, 39, 42, 43, 46, 48, 50, 52, 53, 57, 66, 68, 70, 74, 75, 77, 81, 83, 86, 87, 88, 90, 91, 98, 101, 102, 103, 105, 106, 107, 109, 129, 139, 142, 145, 147, 150, 159, 160, 175, 179, 185, 186, 187, 188, 190, 195, 196, 202, 205, 206, 207, 211, 214, 215, 218, 220, 232, 234, 235, 238, 239, 245, 251, 252, 253, 257, 264, 265, 268, 270, 279, 282, 285, 293, 303, 308, 325, 328, 336, 342, 348, 358, 360, 369, 378, 381, 385; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the INA Primary Policies, regardless of whether the alleged initial injury began during or before the policy periods of the INA Primary Policies.

8. On information and belief, Commercial Union/Armour Insurance Company ("Commercial Union") issued written primary policies of insurance to RCBO under Policy No. EF 9334-001 for the policy period October 25, 1970 to October 26, 1972; Policy No. EF 9334-003 for the policy period October 26, 1972 to October 26, 1973; and Policy No. EF 9334-008 for the policy period October 26, 1973 to December 1, 1975 (the "Commercial Union Policies"). Commercial Union accepted the defense of some of the underlying cases but then reported that it had been declared insolvent. RCBO is informed and believes and thereon alleges that all layers of insurance issued to RCBO by Commercial Union are insolvent and/or exhausted. RCBO is informed and believes and thereon alleges that defendant, the CALIFORNIA INSURANCE GUARANTEE ASSOCIATION ("CIGA"), assumed the responsibilities of Commercial Union regarding the Commercial Union Policies. CIGA, while not an insurer, is a statutory entity, created and existing pursuant to Article 14.2 of the California Insurance Code. The Commercial Union Policies are responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 22, 23, 25, 26, 27, 29; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Commercial Union Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Commercial Union Policies.

9. INA issued a written excess policy of insurance to RCBO under Policy No. XBC 24312 for the period October 25, 1966 to October 25, 1970 (the "INA Excess Policy"). Specifically, the INA Excess Policy is responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 15, 19, 23, 32, 39, 42, 43, 46, 48, 50, 52, 53, 57, 66, 68, 70, 74, 75, 77, 81, 83, 86, 87, 88, 90, 91, 98, 101, 102, 103, 105, 106, 107, 109, 129, 139, 142, 145, 147, 150, 159, 160, 175, 179, 185, 186, 187, 188, 190, 195, 196, 202, 205, 206, 207, 211, 214, 215, 218, 220, 232, 234, 235, 238, 239, 245, 251, 252, 253, 257, 264, 265, 268, 270, 279, 282, 285, 293, 303, 308, 325, 328, 336, 342, 348, 358, 360, 369, 378, 381, 385; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the INA Excess Policy, regardless of whether the alleged initial injury began during or before the policy periods of the INA Excess Policy.

10. Defendant UNITED STATES FIRE INSURANCE is, on information and belief, a Delaware corporation which conducted business in this District (herein "U.S. Fire"). On information and belief, RCBO alleges that U.S. Fire issued a written policy of excess insurance to RCBO under Policy No. DCL 53 9820 for the period October 25, 1970 to October 25, 1971 (the "U.S. Fire Policy"). Specifically, the U.S. Fire Policy is responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 14, 15, 23, 27, 39, 42, 43, 66, 77, 81, 87, 99, 100, 101, 102, 103, 104, 105, 106, 110, 112, 123, 129, 145, 146, 153, 159, 175, 184, 185, 186, 187, 188, 190, 195, 196, 206, 207, 211, 213, 214, 215, 217, 218, 220, 221, 234, 235, 236, 246, 251, 265, 270, 271, 279, 293, 303, 304, 315, 326, 334, 342, 348, 365, 369, 374, 378, 385; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the U.S. Fire Policy, regardless of whether the alleged initial injury began during or before the policy periods of the U.S. Fire Policy.

11. Defendant WESTPORT INSURANCE CORPORATION is, on information and belief, a Delaware corporation which conducted business in this District (herein "Westport"). On information and belief, RCBO alleges that Westport issued a written policy of excess insurance to RCBO under Policy No. U10255 for the period October 26, 1971 to October 26, 1974 (the "Westport Excess Policy"). Specifically, the Westport Excess Policy is responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 16, 17, 22, 23, 25, 26, 28, 30, 31, 33, 35, 36, 37, 40, 41, 42, 43, 44, 47, 49, 54, 58, 59, 60, 66, 67, 72, 76, 77, 80, 81, 82, 85, 87, 94, 95, 96, 97, 101, 102, 105, 106, 112, 113, 115, 117, 123, 126, 129, 131, 135, 136, 143, 145, 146, 151, 153, 158, 159, 160, 162, 163, 164, 165, 167, 173, 175, 178, 180, 181, 182, 184, 185, 186, 187, 188, 190, 192, 196, 199, 200, 201, 205, 206, 207, 209, 211, 213, 215, 217, 218, 219, 221, 222, 223, 229, 235, 236, 243, 246, 251, 259, 260, 262, 269, 270, 271, 273, 294, 296, 297, 298, 302, 303, 304, 305, 315, 318, 320, 321, 233, 324, 325, 326, 327, 329, 330, 332, 333, 334, 343, 344, 346, 347, 348, 351, 353, 356, 361, 362, 367, 368, 369, 374, 375, 377, 382, 384, 385, 392, 394, 399, 401; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Westport Excess Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Westport Excess Policy.

12. Defendant CONTINENTAL CASUALTY COMPANY is, on information and belief, a Delaware corporation which conducted business in this District (herein "CNA"). On information and belief, RCBO alleges that CNA issued written policies of excess insurance to RCBO under Policy No. RDU 146 74 50 for the period October 26, 1974 to December 1, 1977 and Policy No. UMB 006 46 71 53 for the period December 1, 1977 to December 1, 1980 (the "CNA Policies"). Specifically, the CNA

Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 15, 16, 17, 19, 20, 21, 22, 25, 26, 29, 30, 31, 33, 34, 35, 37, 40, 41, 44, 47, 54, 56, 59, 63, 76, 80, 82, 83, 85, 86, 88, 92, 95, 96, 97, 99, 101, 102, 103, 105, 106, 110, 113, 115, 117, 121, 124, 126, 128, 131, 132, 140, 143, 144, 149, 151, 152, 154, 157, 158, 160, 163, 164, 165, 166, 168, 172, 173, 174, 178, 180, 181, 182, 183, 189, 190, 191, 192, 194, 198, 199, 200, 201, 203, 206, 207, 208, 209, 210, 211, 212, 213, 215, 216, 217, 224, 225, 229, 230, 244, 247, 249, 250, 251, 256, 258, 259, 266, 267, 272, 273, 274, 275, 278, 280, 284, 286, 287, 288, 294, 295, 296, 297, 298, 302, 304, 305, 306, 310, 317, 318, 321, 323, 324, 325, 327, 329, 332, 333, 335, 344, 345, 347, 349, 352, 353, 354, 356, 359, 361, 362, 367, 368, 370, 373, 374, 376, 377, 379, 380, 382, 384, 386, 388, 392, 393, 399, 402, 403; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the CNA Policies, regardless of whether the alleged initial injury began during or before the policy periods of the CNA Policies.

13. On information and belief, Industrial Indemnity issued a written policy of excess insurance to RCBO under Policy No. JU 8312510 for the period December 1, 1980 to December 1, 1981, and WESTCHESTER FIRE INSURANCE COMPANY ("Westchester") assumed all the obligations under said policy (the "Westchester Policy"). Specifically, the Westchester Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 10, 19, 28, 33, 35, 61, 64, 104, 133, 140, 154, 157, 166, 180, 189, 191, 193, 194, 208, 212, 224, 225, 227, 244, 250, 251, 261, 267, 296, 317, 319, 352, 354, 367, 370, 373, 376; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Westchester Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Westchester Policy.

14. On information and belief, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

SUBSCRIBING SEVERALLY AND NOT JOINTLY TO SLIP NO. CU 1001 ISSUED TO THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, AND NO. K 78138 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND ("Lloyd's Excess") issued written policies of excess insurance to RCBO under Policies No. CU 1001 for the period March 12, 1962 to October 25, 1963, and K 78131 for the period October 25, 1963 to October 25, 1966 (the "Lloyd's Excess Policies"). Specifically, the Lloyd's Excess Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Lloyd's Excess Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Lloyd's Excess Policies.

15. On information and belief, CATALINA WORTHING INSURANCE LTD F/K/A HFPI (AS PART VII TRANSFEREE OF EXCESS INSURANCE CO. LTD.) ("Excess Insurance Co.") issued written policies of excess insurance to RCBO under Policies No. CU 1001 for the period March 12, 1962 to October 25, 1963, and K 78131 for the period October 25, 1963 to October 25, 1966 (the "Excess Insurance Co. Policies"). Specifically, the Excess Insurance Co. Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Excess Insurance Co. Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Excess Insurance Co. Policies.

16. On information and belief, DOMINION INSURANCE COMPANY LIMITED

("Dominion") issued written policies of excess insurance to RCBO under Policies No. CU 1001 for the period March 12, 1962 to October 25, 1963, and K 78131 for the period October 25, 1963 to October 25, 1966 (the "Dominion Policies"). Specifically, the Dominion Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Dominion Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Dominion Policies.

17. On information and belief, the OCEAN MARINE INSURANCE COMPANY LIMITED (AS PART VII TRANSFEREE OF THE WORLD AUXILIARY INSURANCE CORPORATION LIMITED) ("World Auxiliary") issued a written policy of excess insurance to RCBO under Policy No. CU 1001 for the period March 12, 1962 to October 25, 1963 (the "World Auxiliary Policy"). Specifically, the World Auxiliary Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 45, 57, 65, 79, 119, 120, 155, 176, 177, 187, 204, 299, 307, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the World Auxiliary Policy, regardless of whether the alleged initial injury began during or before the policy periods of the World Auxiliary Policy.

18. On information and belief, the ENGLISH & AMERICAN INSURANCE COMPANY LIMITED ("English & American") issued a written policy of excess insurance to RCBO under Policy No. CU 1001 for the period March 12, 1962 to October 25, 1963 (the "English & American Policy"). Specifically, the English & American Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 45, 57, 65, 79, 119, 120, 155, 176, 177, 187, 204, 299, 307, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the English & American Policy, regardless of whether the alleged initial injury began during or before the policy periods of the English & American Policy.

19. On information and belief, the RIVER THAMES INSURANCE COMPANY LIMITED ("River Thames") issued a written policy of excess insurance to RCBO under Policy No. CU 1001 for the period March 12, 1962 to October 25, 1963 (the "River Thames Policy"). Specifically, the River Thames Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 45, 57, 65, 79, 119, 120, 155, 176, 177, 187, 204, 299, 307, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the River Thames Policy, regardless of whether the alleged initial injury began during or before the policy periods of the River Thames Policy.

20. On information and belief, COMPANHIA DE SEGUROS FIDELIDADE SA F/K/A FIDELIDADE INSURANCE COMPANY OF LISBON, SUBSCRIBING TO SLIP NO. K 78138 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND ("Fidelidade") subscribed for a percentage participation of a written policy of excess insurance to RCBO under Policy Slip No. K 78131 for the period October 25, 1963 to October 25, 1966 (the "Fidelidade Excess Policy"). Specifically, the Fidelidade Excess Policy is responsive to certain claims, including but not limited to the following:

i. Nos. 15, 42, 45, 48, 65, 74, 75, 79, 98, 114, 120, 137, 142, 147, 150, 155, 176, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Fidelidade Excess Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Fidelidade Excess Policy.

21. Defendant Westport is, on information and belief, a Delaware corporation which conducted business in this District. On information and belief RCBO alleges that Westport issued a written umbrella policy of insurance to RCBO under Policy No. PLE20430 for the period October 16, 1974 to October 16, 1977 (the "Westport Umbrella Policy"). Specifically, the Westport Umbrella Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 20, 28, 83, 88, 140, 144, 174, 189, 249, 267, 295, 310, 323, 373, 388; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Westport Umbrella Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Westport Umbrella Policy.

22. Defendant Travelers is, on information and belief, a Connecticut corporation which conducted business in this District. On information and belief RCBO alleges that Travelers issued written umbrella polices of insurance to RCBO under Policy No. 05 XN 55 WCA for the period December 1, 1977 to February 1, 1979; Policy No. 05 XN 75 WCA for the period February 1, 1979 to December 1, 1979 and Policy No. 05 XN 87 WCA for the period December 1, 1979 to December 1, 1981 (the "Travelers Umbrella Policies"). Specifically, the Travelers Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 10, 21, 29, 33, 35, 56, 61, 64, 71, 82, 83, 86, 92, 95, 96, 97, 99, 101, 102, 103, 104, 105, 106, 110, 115, 117, 121, 124, 126, 128, 131, 132, 133, 140, 149, 152, 154, 157, 158, 163, 166, 168, 174, 180, 181, 183, 189, 191, 192, 193, 194, 198, 203, 206, 208, 210, 212, 216, 224, 225, 227, 230, 243, 244, 247, 250, 251, 256, 258, 261, 266, 267, 272, 273, 274, 296, 297, 298, 310, 317, 318, 319, 321, 323, 345, 349, 352, 354, 359, 367, 370, 373, 374, 376, 379; 380, 384, 386, 402, 403; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Travelers Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Travelers Umbrella Policies.

23. Defendant PACIFIC EMPLOYERS INSURANCE ("Pacific Employers") is, on

information and belief, a Delaware corporation which conducted business in this District. On information and belief RCBO alleges that Pacific Employers issued a written umbrella policy of insurance to RCBO under Policy No. XCC 01 2405 for the period March 13, 1985 to December 1, 1985 (the "Pacific Employers Policy"). Specifically, the Pacific Employers Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 12, 51, 73, 80, 118, 127, 130, 141, 171, 225, 228, 254, 314, 338, 339, 350, 363, 407; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Pacific Employers Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Pacific Employers Policy.

24. On information and belief, R&Q GAMMA COMPANY LIMITED (AS PART VII TRANSFEREE OF ANGLO FRENCH LTD.) ("Anglo French Umbrella") issued written policies of umbrella insurance to RCBO under Slip No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "Anglo French Umbrella Policies"). Specifically, the Anglo French Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Anglo French Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Anglo French Umbrella Policies.

25. On information and belief, Excess Insurance Co. ("Excess Insurance Co. Umbrella") issued written policies of umbrella insurance to RCBO under Slip No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "Excess Insurance Co. Umbrella Policies"). Specifically, the Excess Insurance Co. Umbrella Policies are

responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Excess Insurance Co. Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Excess Insurance Co. Umbrella Policies.

26. On information and belief, English & American ("English & American Umbrella") issued written policies of umbrella insurance to RCBO under Slip No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "English & American Umbrella Policies"). Specifically, the English & American Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the English & American Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the English & American Umbrella Policies.

27. On information and belief, the LONDON AND OVERSEAS INSURANCE COMPANY LIMITED ("London & Overseas Umbrella") issued written policies of umbrella insurance to RCBO under Slips No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "London & Overseas Umbrella Policies"). Specifically, the London & Overseas Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360,

381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the London & Overseas Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the London & Overseas Umbrella Policies.

28. On information and belief, the ORION INDEMNITY COMPANY ("Orion Umbrella") issued written policies of umbrella insurance to RCBO under Slip No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "Orion Indemnity Umbrella Policies"). Specifically, the Orion Indemnity Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Orion Indemnity Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Orion Indemnity Umbrella Policies.

29. On information and belief, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING SEVERALLY AND NOT JOINTLY TO SLIP NO. K 66034 ISSUED TO THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, AND NO. CU 3061 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND ("Lloyd's Umbrella") issued written policies of umbrella insurance to RCBO under Policies No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "Lloyd's Umbrella Policies"). Specifically, the Lloyd's Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Lloyd's Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Lloyd's Umbrella Policies.

30. Defendant AMERICAN HOME ASSURANCE COMPANY ("AHAC") is, on information and belief, a New York corporation which conducted business in this District. On information and belief, RCBO alleges that AHAC issued a written excess policy of insurance to RCBO under Policy No. CE 35-60-94 for the period November 15, 1971, to October 26, 1974 (the "AHAC Policy"). Specifically, the AHAC Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 16, 17, 22, 23, 25, 26, 28, 30, 31, 33, 35, 36, 37, 40, 41, 42, 43, 44, 47, 49, 54, 58, 59, 60, 66, 67, 72, 76, 77, 80, 81, 82, 85, 87, 94, 95, 96, 97, 101, 102, 105, 106, 112, 113, 115, 117, 123, 126, 129, 131, 135, 136, 143, 145, 146, 151, 153, 158, 159, 160, 162, 163, 164, 165, 167, 173, 175, 178, 180, 181, 182, 184, 185, 186, 187, 188, 190, 192, 196, 199, 200, 201, 205, 206, 207, 209, 211, 213, 215, 217, 218, 219, 221, 222, 223, 229, 235, 236, 243, 246, 251, 259, 260, 262, 269, 270, 271, 273, 294, 296, 297, 298, 302, 303, 304, 305, 315, 318, 320, 321, 233, 324, 325, 326, 327, 329, 330, 332, 333, 334, 343, 344, 346, 347, 348, 351, 353, 356, 361, 362, 367, 368, 369, 374, 375, 377, 382, 384, 385, 392, 394, 399, 401; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the AHAC Policy, regardless of whether the alleged initial injury began during or before the policy period(s) of the AHAC Policy.

## FACTUAL BACKGROUND COMMON TO ALL DEFENDANTS

31. On June 22, 2023, the Plaintiff filed the First Amended Complaint for declaratory relief and breach of contract, seeking to litigate the Plaintiff's claims against numerous of its historical insurance carriers. [Docket No. 2 with attached Exhibit and Attachment (collectively, the "First Amended Complaint")]. On December 18, 2023, the Plaintiff filed the Second Amended Complaint for

declaratory relief, breach of contract, and breach of statutory duty to address issues raised in various motions to dismiss, per the Court's order. On January 12, 2024, the Plaintiff filed the Third Amended Complaint for declaratory relief, breach of contract, and breach of statutory duty to include additional insurers that it alleges are liable to provide indemnity and/or defense of the underlying complaints.

32. The Plaintiff filed a Fifth Amended Complaint to, among other things, include additional factual detail as the Court ordered on July 11, 2024.

33. The Plaintiff files this Sixth Amended Complaint for two purposes. First, the Sixth Amended Complaint clarifies expressly that each of the Plaintiff's policies are triggered not only by claims alleging abuse during the applicable policy period and by claims alleging injury during the policy period, but also by claims alleging an initial injury beginning prior to the applicable policy period, if the plaintiff alleges continuous or progressive injury thereafter. Under California's "continuous injury" trigger of coverage, "'[t]here is no requirement that . . . the conditions giving rise to the damage or injury . . . themselves occur within the policy period in order for potential liability coverage to arise.' . . . '[B]odily injury and property damage which is continuous or progressively deteriorating throughout several policy periods is potentially covered by all policies in effect during those periods.'" *Montrose Chem. Corp. v. Superior Court*, 9 Cal. 5th 215, 227 (2020).

34. Second, the Sixth Amended Complaint includes additional causes of action for breach of the implied duty of good faith and fair dealing against Insurer Defendants. These claims are based on Insurer Defendants' failure to accept and participate in reasonable opportunities to resolve covered claims within applicable policy limits. Against Pacific Indemnity, INA, Westchester and Pacific Employers (collectively, "Chubb"), an additional claim is based on its participation in an online campaign which directly contradicts its duty of loyalty to its insured, the Plaintiff. The Sixth Amended Complaint also incorporates RCBO's causes of action against American Home Assurance Company, which previously were proceeding under a separate complaint.

35. RCBO has been named in more than 350 complaints primarily filed in the Alameda Superior Court as well as proofs of claim filed in the Bankruptcy Court seeking recovery for alleged negligent supervision and hiring of certain clerical and ministerial personnel over a period of decades. These suits and proofs of claim (collectively referred to as the "Suits") have been filed as a

result of California's passing of AB 218, which extended the statute of limitations for the filing of similar civil actions.

36. The underlying plaintiffs allege abuse by certain clerical or ministerial personnel many years ago, including improper physical contact and bodily injury, and further allege, or could allege, continuous or progressive injury thereafter. Each insurance policy in effect when initial physical contact with a claimant occurred, and each insurance policy in effect thereafter, owes a duty to defend and/or indemnify RCBO against the claimant's Suit.

37. Although section 362 of the Bankruptcy Code provides for an automatic stay of the Suits and of additional lawsuits against the Plaintiff, RCBO is informed, and believes, that additional suits may be filed and/or served after the filing of this proceeding and RCBO will update the list as reflected in Exhibit A to reflect all such cases as appropriate.

38. RCBO has maintained insurance coverage through a series of primary, excess, and umbrella insurers from the early 1960s through the present time as alleged above.

39. RCBO has tendered through its broker (*i.e.*, "AJG" as designated in Exhibit A) both RCBO's defense and indemnity of the Suits under all applicable insurance policies to the associated Defendants that issued those policies and were not insolvent.

## <u>FIRST CAUSE OF ACTION</u>

### (Declaratory Relief Against Pacific Indemnity - Primary)

40. RCBO realleges and incorporates herein Paragraphs 1 through 39 of this Complaint as if said Paragraphs were set forth in full.

41. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

42. An actual and justiciable controversy exists between RCBO and Pacific Indemnity with respect to whether Pacific Indemnity is obligated to provide RCBO with indemnity under the Pacific Indemnity Policies regarding the subset of the Suits for which RCBO alleges Pacific Indemnity is obligated to provide RCBO with indemnity, as set forth in Paragraph 5 (the "Pacific Indemnity Covered Claims").

43. Pursuant to the terms of the Pacific Indemnity Policies, Pacific Indemnity is obligated to,

among other things, indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Pacific Indemnity Covered Claims.

44. RCBO has fully satisfied all conditions required under the Pacific Indemnity Policies, or is otherwise excused from doing so.

45. RCBO's broker and/or RCBO tendered the Pacific Indemnity Covered Claims to Pacific Indemnity on RCBO's behalf as set forth in Exhibit A.

46. Pacific Indemnity has agreed to provide a defense to RCBO for the Pacific Indemnity Covered Claims under a reservation of rights.

47. Pacific Indemnity's reservation of rights includes Pacific Indemnity's position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the [Pacific Indemnity Policies]."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. For certain claims, Pacific Indemnity contends it "has not located any evidence of the existence of any policies issued to [RCBO] during the period when the plaintiffs or claimants allege they were abused."

iv. The Pacific Indemnity Policies "may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

v. "To the extent emotional distress is alleged without any physical injury, there is no coverage."

vi. "To the extent [RCBO] is liable for damages not resulting from 'bodily injury,' there would be no coverage."

vii. "To the extent the evidence demonstrates that [RCBO] 'expected or intended' injury to the subject claimant, coverage will be barred."

viii. The alleged conduct may also be "excluded as uninsurable willful conduct pursuant to California Insurance Code § 533."

ix. "To the extent [RCBO] breached any notice provision contained in the 1963-1966

Pacific Indemnity Primary Policies, there is no coverage."

x. The Pacific Indemnity Primary Policies "may also contain additional exclusions that exclude coverage for damages arising out of sexual abuse."

48. In addition, Pacific Indemnity reserved further rights to deny coverage as follows:

i. Pacific Indemnity "reserves rights to the extent the [Pacific Indemnity Policies are] exhausted and [it has] no further defense or indemnity obligations under the [Policies]."

ii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iii. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, Pacific Indemnity reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

iv. "The right to assert the [] limit of liability" based on damages "as the result of any one occurrence."

v. The right "to determine the number of claim(s) and/or occurrence(s) that exist in this matter, if any."

vi. The right "to deny coverage under the 1963-55 Pacific Indemnity Primary Policy for any amounts that are uninsurable pursuant to applicable law."

49. It is RCBO's position that the above reservations of rights are without both factual and legal merit.

50. For example, Pacific Indemnity has reserved its right to deny its indemnity obligation under the Pacific Indemnity Policies on the grounds that the Pacific Indemnity Covered Claims allege injuries that were "'expected' or 'intended' from the standpoint of the RCBO" or that do not constitute covered "'bodily injury.'" Such defenses to indemnity do not apply because the Pacific Indemnity Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Pacific Indemnity Policies define that term, within the Pacific Indemnity Policy's coverage period (*see* Exhibit A). RCBO sets forth below

examples of negligence and bodily injury allegations from the Pacific Indemnity Covered Claims.

i. Claim 74 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and "failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83), and that such negligence caused the plaintiff bodily injury, including "severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 75).

ii. Claim 142 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 197 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

iv. Claim 245 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take

any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

v. Claim 360 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 99).

51. The remaining Pacific Indemnity Covered Claims not listed in Paragraph 50 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Pacific Indemnity Policies define that term.

52. The asserted reservations of rights set forth in Paragraphs 47 and 48 do not provide Pacific Indemnity valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Pacific Indemnity Covered Claims under the Pacific Indemnity Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Pacific Indemnity Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Pacific Indemnity Policies have been exhausted or that limits have been reduced.

53. Pacific Indemnity has improperly denied and/or failed to provide indemnity for the

Pacific Indemnity Covered Claims, as required under the Pacific Indemnity Policies. *See* Exhibit A. RCBO continues to seek indemnity from Pacific Indemnity under the Pacific Indemnity Policies.

54. The Pacific Indemnity Policies provide coverage for, and do not exclude, the Pacific Indemnity Covered Claims, and Pacific Indemnity is obligated to defend and indemnify RCBO against any settlement or judgment resolving, the Pacific Indemnity Covered Claims.

55. The Pacific Indemnity Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

56. RCBO sent Pacific Indemnity a letter on May 30, 2024, demanding Pacific Indemnity indemnify RCBO for the Pacific Indemnity Covered Claims up to the policy limits under the Pacific Indemnity Policies (the "Pacific Indemnity Policy Limits Letter").

57. Pacific Indemnity failed to respond to the Pacific Indemnity Policy Limits Letter confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the Pacific Indemnity Policies to RCBO.

58. The Official Committee of Unsecured Creditors ("UCC") sent Chubb a letter on July 3, 2024, demanding they pay a sum of $219.2 million, which is within the policy limits of the Chubb policies, including the Pacific Indemnity Policies, to resolve the Pacific Indemnity Covered Claims alleged against RCBO (the "UCC Chubb Demand Letter").

59. On August 6, 2024, Pacific Indemnity responded to the UCC Chubb Demand Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the Pacific Indemnity Policy to RCBO.

60. An actual controversy of a justiciable nature presently exists between RCBO and Pacific Indemnity concerning the proper construction of the Pacific Indemnity Policies, whether Pacific Indemnity's cited grounds for reservation of rights to deny coverage under the Pacific Indemnity Policies are valid, whether there is any coverage for the Pacific Indemnity Covered Claims under the Pacific Indemnity Policies, Pacific Indemnity's and RCBO's respective rights and obligations under the Pacific Indemnity Policies with respect to the Pacific Indemnity Covered Claims, and whether Pacific Indemnity should participate in settlement and/or indemnity regarding the Pacific Indemnity Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a

declaratory judgment.

61. RCBO is entitled to a declaratory judgment stating Pacific Indemnity has issued the Pacific Indemnity Policies to RCBO, the Pacific Indemnity Policies cover the Pacific Indemnity Covered Claims, and RCBO is entitled to indemnity regarding the Pacific Indemnity Covered Claims under the Pacific Indemnity Policies.

## SECOND CAUSE OF ACTION

### (Declaratory Relief Against Travelers - Primary)

62. RCBO realleges and incorporates herein Paragraphs 1 through 61 of this Complaint as if said Paragraphs were set forth in full.

63. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

64. An actual and justiciable controversy exists between RCBO and Travelers with respect to whether Travelers is obligated to provide RCBO with indemnity under the Travelers Primary Policies regarding the subset of the Suits for which RCBO alleges Travelers is obligated to provide RCBO with indemnity, as set forth in Paragraph 6 (the "Travelers Covered Claims").

65. Pursuant to the terms of the Travelers Primary Policies, Travelers is obligated to, among other things, indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Travelers Covered Claims.

66. RCBO has fully satisfied all conditions required under the Travelers Primary Policies, or is otherwise excused from doing so.

67. RCBO's broker and/or RCBO tendered the Travelers Covered Claims to Travelers on RCBO's behalf as set forth in Exhibit A.

68. Travelers has agreed to provide a defense to RCBO for the Travelers Covered Claims under a reservation of rights. Travelers has denied and/or failed to provide indemnity for the Travelers Covered Claims, as required under the Travelers Primary Policies. *See* Exhibit A. RCBO continues to seek indemnity from Travelers under the Travelers Primary Policies.

69. Travelers' reservation of rights includes Travelers' position that it may deny coverage on the following bases:

i. Travelers "never issued the Alleged Primary Policies and/or that those Primary Policies are lost,"

ii. Travelers "has no duty to defend or indemnify the RCBO in connection with matter because the alleged injuries at issue involve emotional or psychological injury as opposed to physical injury to the body and, therefore, do not constitute covered 'bodily injury,'"

iii. The alleged injuries "occurred outside the effective period of the Primary Policy,"

iv. "[T]he alleged injuries were 'expected' or 'intended' from the standpoint of the RCBO,"

v. "Applicable law does not permit the recovery of insurance proceeds for losses known by the insured to be substantially certain to occur or losses that are otherwise not fortuitous,"

vi. "The Claimants allege generally that the RCBO is liable for willful and intentional acts" and California law "bar[s] coverage for the claims asserted,"

vii. California law "bar[s] indemnification for punitive damages,"

viii. "[R]egardless of the number of sexual abuse claims that are made or suits brought pertaining to alleged sexual abuse, the limit of liability of Travelers applicable to all judgments in or settlements of such matters is the 'each occurrence' limit. Travelers reserves the right to assert that the 'each occurrence' limit of a Primary Policy is impaired or exhausted as a result of prior payments made by Travelers in connection with injuries of the type alleged in the matter,"

ix. "[T]here is no coverage in connection with the matter because the RCBO did not comply with the notice conditions of a Policy,"

x. Travelers is not obligated to defend or indemnify RCBO "in the event this condition [requiring cooperation with Travelers] has been violated or is violated in the future,"

xi. Travelers has no obligation to defend or indemnify RCBO "in the event this condition [prohibiting RCBO from making a voluntary payment at the time of the accident] has been violated or is violated in the future," and

xii. Travelers may "limit any obligation it might have under a Policy and [] seek contribution toward any sums expended from any other insurer whose coverage may apply to a matter."

70. It is RCBO's position that the above reservations of rights are without both factual and legal merit.

71. For example, Travelers has reserved its right to deny its indemnity obligation under the Travelers Primary Policies on the grounds that the Travelers Covered Claims allege injuries that were "'expected' or 'intended' from the standpoint of the RCBO" or are "willful" or do not constitute covered 'bodily injury.'" Such defenses to indemnity do not apply because the Travelers Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Travelers Primary Policies define that term, within the Travelers Primary Policies' coverage periods (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Travelers Covered Claims.

i. Claim 20 includes negligence allegations that RCBO "failed to take reasonable steps or implement reasonable safeguards for Plaintiffs protection" (¶ 121) and "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRATOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent the childhood sexual assault, abuse, and harassment of minor children, including Plaintiff" (¶ 125), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical, psychological, emotional, and economic harm" (¶ 129).

ii. Claim 21 includes negligence allegations that RCBO "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 51) and "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRTOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent the childhood sexual assault, abuse, and

harassment of minor children, including Plaintiff" (¶ 54), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical, psychological, emotional, and economic harm" (¶ 52).

iii. Claim 22 includes negligence allegations that RCBO "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER, including but not limited to preventing or avoiding placement of ABUSER in a function or environment in which contact with children is an inherent aspect of the function or environment" (¶ 35) and "failed to supervise Plaintiff JOHN DOE PD, a minor, and failed to use reasonable care in protecting Plaintiff JOHN DOE PD, a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse, while Plaintiff JOHN DOE PD, a minor, was involved in activities sponsored, supervised, organized or directed by [RCBO] or their agents and employees" (¶ 44), and that as a result of such negligence the plaintiff "suffered economic, physical, psychological and emotional harm" (¶ 38).

iv. Claim 29 includes negligence allegations that RCBO "[was] at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 9) and "[was] further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 9), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 10).

v. Claim 132 includes negligence allegations that RCBO "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 47) and "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRATOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent the childhood sexual assault,

molestation and harassment of minors, including Plaintiff" (¶ 50), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical, psychological, emotional and economic harm" (¶ 48).

72. The remaining Travelers Covered Claims not listed in Paragraph 71 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Travelers Primary Policies define that term.

73. The asserted reservations of rights set forth in Paragraph 69 do not provide Travelers valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Travelers Covered Claims under the Travelers Primary Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Travelers Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Travelers Policies have been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Travelers as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

74. RCBO sent Travelers a letter on May 30, 2024, demanding Travelers indemnify RCBO for the Travelers Covered Claims up to the policy limits under the Travelers Primary Policies (the "Travelers Primary Policy Limits Letter").

75. Travelers failed to respond to the Travelers Primary Policy Limits Letter confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the Travelers Primary Policies to RCBO.

76. The UCC sent Travelers a letter on July 3, 2024, demanding Travelers pay a sum within the policy limits of the Travelers Primary Policies to resolve the Travelers Covered Claims (the "UCC Travelers Demand Letter").

77. On August 6, 2024, Travelers responded to the UCC Travelers Demand Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the Travelers Primary Policies to RCBO.

78. The Travelers Primary Policies provide coverage for, and do not exclude, the Travelers Covered Claims, and Travelers is obligated to defend and indemnify RCBO against any settlement or judgment resolving, the Travelers Covered Claims.

79. The Travelers Primary Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

80. An actual controversy of a justiciable nature presently exists between RCBO and Travelers concerning the proper construction of the Travelers Primary Policies, whether Travelers' cited grounds for reservation of rights to deny coverage under the Travelers Primary Policies are valid, whether there is any coverage for the Travelers Covered Claims under the Travelers Primary Policies, Travelers' and RCBO's respective rights and obligations under the Travelers Primary Policies with respect to the Travelers Covered Claims, and whether Travelers should participate in settlement regarding the Travelers Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

81. RCBO is entitled to a declaratory judgment stating Travelers has issued the Travelers Primary Policies to RCBO, the Travelers Primary Policies cover the Travelers Covered Claims, and that RCBO is entitled to indemnity regarding the Travelers Covered Claims under the Travelers Primary Policies.

**THIRD CAUSE OF ACTION**

**(Declaratory Relief Against INA - Primary)**

82. RCBO realleges and incorporates herein Paragraphs 1 through 81 of this Complaint as if said Paragraphs were set forth in full.

83. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

84. An actual and justiciable controversy exists between RCBO and INA with respect to whether INA is obligated to provide RCBO with indemnity under the INA Primary Policies regarding the subset of the Suits for which RCBO alleges INA is obligated to provide RCBO with indemnity, as set forth in Paragraph 7 (the "INA Primary Covered Claims").

85. Pursuant to the terms of the INA Primary Policies, INA is obligated to, among other

things, indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the INA Primary Covered Claims.

86. RCBO has fully satisfied all conditions required under the INA Primary Policies, or is otherwise excused from doing so.

87. RCBO's broker and/or RCBO tendered the INA Primary Covered Claims to INA on RCBO's behalf as set forth in Exhibit A.

88. INA has agreed to provide a defense to RCBO for the INA Primary Covered Claims under a reservation of rights. INA has denied and/or failed to provide indemnity for the INA Primary Covered Claims, as required under the INA Primary Policies. *See* Exhibit A. RCBO continues to seek indemnity from INA under the INA Primary Policies.

89. INA's reservation of rights includes INA's position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the Policies."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. For certain claims, INA "has not located any evidence of the existence of any policies issued to [RCBO] during the period when the plaintiffs or claimants allege they were abused."

iv. "[The INA Primary] Policies may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

v. "To the extent emotional distress is alleged without any physical injury, there is no coverage."

vi. "To the extent [RCBO] is liable for damages not resulting from 'bodily injury' as defined by the INA Primary Policies, there would be no coverage."

vii. "To the extent the evidence demonstrates that [RCBO] 'expected or intended' injury to the subject claimant, coverage will be barred."

viii. The alleged conduct may also be "excluded as uninsurable willful conduct pursuant to

California Insurance Code § 533."

ix. "To the extent [RCBO] breached any notice provision contained in the INA Primary Policies, there is no coverage."

x. The INA Primary Policies "may also contain additional exclusions that exclude coverage for damages arising out of sexual abuse."

90. In addition, INA reserved further rights to deny coverage as follows:

i. INA "reserves rights to the extent the Policies are exhausted and [it has] no further defense or indemnity obligations under the Policies."

ii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iii. "An accident is not present when the insured performs a deliberate act and INA reserves its rights accordingly to deny coverage."

iv. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, INA reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

v. "The right to assert the [] limit of liability" based on damages "as the result of any one occurrence or accident."

vi. The right "to determine the number of claim(s) and/or occurrence(s) that exist in this matter, if any."

vii. INA "reserves its rights under the premises clause of the insuring agreement."

viii. The right "to deny coverage under the INA Primary Policies for any amounts that are uninsurable pursuant to applicable law."

91. It is RCBO's position that the above reservations of rights are without both factual and legal merit.

92. For example, INA has reserved its right to deny its indemnity obligation under the INA Primary Policies on the grounds that the INA Primary Covered Claims allege injuries that were "expected" or "intended" from the standpoint of the RCBO or that do not constitute covered "bodily

injury." Such defenses to indemnity do not apply because the INA Primary Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the INA Primary Policies define that term, within the INA Primary Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the INA Primary Covered Claims.

i. Claim 81 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 64) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 46), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 69).

ii. Claim 129 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

iii. Claim 303 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence

caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iv. Claim 348 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 75).

v. Claim 361 includes negligence allegations that RCBO "negligently failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse" (¶ 38) and "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER" (¶ 29), and that such negligence caused the plaintiff bodily injury, including "physical, psychological and emotional harm" (¶ 32).

93. The remaining INA Primary Covered Claims not listed in Paragraph 92 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the INA Primary Policies define that term.

94. The asserted reservations of rights set forth in Paragraphs 89 and 90 do not provide INA valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the INA Primary Covered Claims under the INA Primary Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the INA Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the INA

Policies have been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with INA as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

95. RCBO sent INA a letter on May 30, 2024, demanding INA indemnify RCBO for the INA Covered Claims up to the policy limits under the INA Primary Policies (the "INA Policy Limits Letter").

96. INA failed to respond to the INA Policy Limits Letter confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the INA Primary Policies to RCBO.

97. The UCC sent Chubb the UCC Chubb Demand Letter on July 3, 2024, demanding they pay a sum of $219.2 million, which is within the policy limits of the Chubb Policies, including the INA Primary Policy, to resolve the INA Primary Covered Claims alleged against RCBO.

98. On August 6, 2024, INA responded to the UCC Chubb Demand Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the INA Primary Policies to RCBO.

99. The INA Primary Policies provide coverage for, and do not exclude, the INA Primary Covered Claims, and INA is obligated to defend and indemnify RCBO against any settlement or judgment resolving the INA Primary Covered Claims.

100. The INA Primary Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

101. An actual controversy of a justiciable nature presently exists between RCBO and INA concerning the proper construction of the INA Primary Policies, whether INA's cited grounds for reservation of rights to deny coverage under the INA Primary Policies are valid, whether there is any coverage for the INA Primary Covered Claims under the INA Primary Policies, INA's and RCBO's respective rights and obligations under the INA Primary Policies with respect to the INA Primary Covered Claims, and whether INA should participate in settlement regarding the INA Primary Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

102. RCBO is entitled to a declaratory judgment stating INA has issued the INA Primary

Policies to RCBO, the INA Primary Policies cover the INA Primary Covered Claims, and that RCBO is entitled to indemnity regarding the INA Primary Covered Claims under the INA Primary Policies.

**FOURTH CAUSE OF ACTION**

**(Declaratory Relief Against CIGA)**

103. RCBO realleges and incorporates herein Paragraphs 1 through 102 of this Complaint as if said Paragraphs were set forth in full.

104. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

105. An actual and justiciable controversy exists between RCBO and CIGA with respect to whether CIGA is obligated to indemnify RCBO pursuant to its statutory obligations, in relation to the Commercial Union Policies regarding the subset of the Suits for which RCBO alleges CIGA is obligated to provide RCBO with indemnity, as set forth in Paragraph 8 (the "Commercial Union Covered Claims").

106. "CIGA's authority and liability are limited to paying 'covered claims.'" *Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 128 Cal. App. 4th 307, 313 (2005).

107. A covered claims means "(1) … the obligations of an insolvent insurer, including the obligation … (i) imposed by law and within the coverage of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; … (iv) which were incurred prior to the date coverage under the policy terminated …" *Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 153 Cal. App. 4th 524, 532-33 (2007) (citing Cal. Ins. Code § 1063.1(c)(1)).

108. Commercial Union has become insolvent but had acknowledged potential coverage for the Suits tendered to it by RCBO.

109. RCBO timely presented the claims to the liquidator prior to the date coverage under the policy terminated. Therefore, the claims qualify as covered claims under the statute.

110. There is no, or there is a substantial likelihood that there will not be any, other insurance available for the Commercial Union Covered Claims because Commercial Union is insolvent, and the Commercial Union Covered Claims are likely to exhaust other applicable insurance policies.

111. Specifically, there is a substantial likelihood the Commercial Union Covered Claims will

exhaust the following insurance policies: United States Fire Insurance policy no. DCL 53 98 20, for the policy period of October 25, 1970 – October 26, 1971 ($5,000,000 limit); Westport policy no. U10255, for the policy period of November 16, 1971 – October 26, 1974 ($5,000,000 limit); American Home policy no. CE-60-94, for the policy period of November 16, 1971 – October 26, 1974 ($2,000,000 limit); CNA policy no. RDU 146 74 50, for the policy period of October 26, 1974 – December 1, 1975 ($1,000,000 limit); and Westport policy no. PLE 20430, for the policy period of October 26, 1974 – December 1, 1975 ($5,000,000 limit) (together, the "Other Insurers" and the "Other Insurance Policies"). There are 22 Commercial Union Covered Claims.

112. Data from past clergy sexual abuse cases indicate the Commercial Union Covered Claims will far exceed the limits of the Other Insurance Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent each of the Other Insurers a letter on July 3, 2024, demanding they pay $56.7 million (United States Fire), $308.9 million (Westport), $11.9 million (American Home), and $162.6 million (CNA), respectively—all amounts within limits of each of the Other Insurance Policies—to resolve the Commercial Union Covered Claims alleged against RCBO. The UCC based the amounts demanded on its reasonable estimate of the value of the claims covered by the Other Insurance Policies, including the Commercial Union Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Commercial Union Covered Claims will exhaust the Other Insurance Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

113. CIGA has expressed the position that it does not have any obligation to indemnify RCBO in relation to the Commercial Union Policies and the Commercial Union Covered Claims.

114. CIGA's position is without both factual and legal merit. The Commercial Union Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's

alleged negligence caused "bodily injury" as the Commercial Union Policies define that term, within the Commercial Union Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Commercial Union Covered Claims.

i. Claim 6 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 13) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 14).

ii. Claim 99 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [RCBO] failed to provide reasonable supervision of the DOE PERPETRATOR. [RCBO] further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff" (¶ 83), and that as a result of such negligence the plaintiff "suffered and will continue to suffer the physical injury of sexual assault" (¶ 99).

iii. Claim 235 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR 1's and PERPETRATOR 2's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 49).

iv. Claim 348 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 75).

v. Claim 361 includes negligence allegations that RCBO "negligently failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse" (¶ 38) and "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER" (¶ 29), and that such negligence caused the plaintiff bodily injury, including "physical, psychological and emotional harm" (¶ 32).

115. As the successor-in-interest to Commercial Union, which accepted defense of and acknowledged its potential coverage obligations with respect to the Commercial Union Covered Claims, CIGA is obligated to defend and indemnify RCBO against the Commercial Union Covered Claims, subject only to the statutory limitations on CIGA's payment obligations.

116. An actual controversy of a justiciable nature presently exists between RCBO and CIGA concerning CIGA's obligation to indemnify RCBO for the Commercial Union Covered Claims.

117. RCBO is entitled to a declaratory judgment stating the Commercial Union Covered Claims are "covered claims" triggering CIGA's statutory coverage and indemnification obligations and that RCBO is entitled to indemnity regarding the Commercial Union Covered Claims.

**<u>FIFTH CAUSE OF ACTION</u>**

**(Declaratory Relief Against INA - Excess)**

118. RCBO realleges and incorporates herein Paragraphs 1 through 117 of this Complaint as if

said Paragraphs were set forth in full.

119. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

120. An actual and justiciable controversy exists between RCBO and INA with respect to whether INA is obligated to provide RCBO with defense and indemnity under the INA Excess Policy regarding the subset of the Suits for which RCBO alleges INA is obligated to provide RCBO with indemnity, as set forth in Paragraph 9 (the "INA Excess Covered Claims").

121. Pursuant to the terms of the INA Excess Policy, INA is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the INA Excess Covered Claims.

122. RCBO has fully satisfied all conditions required under the INA Excess Policy, or is otherwise excused from doing so.

123. RCBO's broker and/or RCBO tendered the INA Excess Covered Claims to INA on RCBO's behalf as set forth in Exhibit A.

124. INA agreed to provide defense to RCBO for certain of the INA Excess Covered Claims. However, INA denied and/or failed to confirm it will indemnify RCBO for the INA Excess Covered Claims.

125. INA has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the INA Excess Policy that, in turn, will exhaust those policies and trigger INA's obligation to provide the benefits of the INA Excess Policy to RCBO. Rather, INA reserved its right to deny coverage on a number of bases.

126. INA's reservation of rights includes INA's position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the [INA Excess Policy]."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. For certain claims, INA "has not located any evidence of the existence of any policies

issued to [RCBO] during the period when the plaintiffs or claimants allege they were abused."

iv. "[The INA Excess Policy] may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

v. "To the extent emotional distress is alleged without any physical injury, there is no coverage."

vi. "To the extent [RCBO] is liable for damages not resulting from 'bodily injury' as defined by the INA Primary [and/or Excess] Policies, there would be no coverage."

vii. "To the extent the evidence demonstrates that [RCBO] 'expected or intended' injury to the subject claimant, coverage will be barred."

viii. The alleged conduct may also be "excluded as uninsurable willful conduct pursuant to California Insurance Code § 533."

ix. "To the extent [RCBO] breached any notice provision contained in the INA Primary [and/or Excess] Policies, there is no coverage."

x. The INA Excess Policy "may also contain additional exclusions that exclude coverage for damages arising out of sexual abuse."

xi. The "INA Excess Policy would only provide coverage if the limits of the respective year's underlying policies are exhausted."

127. In addition, INA reserved further rights to deny coverage as follows:

i. INA "reserves rights to the extent the Policies are exhausted and [it has] no further defense or indemnity obligations under the Policies."

ii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iii. "An accident is not present when the insured performs a deliberate act and INA reserves its rights accordingly to deny coverage."

iv. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, INA reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior]

settlement."

v. "The right to assert the [] limit of liability" based on damages "as the result of any one occurrence or accident."

vi. The right "to determine the number of claim(s) and/or occurrence(s) that exist in this matter, if any."

vii. INA "reserves its rights under the premises clause of the insuring agreement."

viii. The right "to deny coverage under the [INA Excess Policy] for any amounts that are uninsurable pursuant to applicable law."

128. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, INA has reserved its right to deny its defense and indemnity obligation under the INA Excess Policy on the grounds that the INA Excess Covered Claims allege injuries where "[RCBO] 'expected or intended' injury to the subject claimant that were "expected or intended from the standpoint of [RCBO]" or where "[RCBO] is liable for damages not resulting from 'bodily injury'." Such reservations of rights as to defense and/or indemnity do not apply because the INA Excess Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the INA Excess Policy defines that term, within the INA Excess Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the INA Excess Covered Claims.

i. Claim 81 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 64) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 46), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 69).

ii. Claim 129 includes negligence allegations that RCBO "negligently failed to supervise

the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

iii. Claim 303 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iv. Claim 348 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 75).

v. Claim 361 includes negligence allegations that RCBO "negligently failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse" (¶ 38) and "failed to take reasonable steps and failed to implement reasonable

safeguards to avoid acts of childhood sexual abuse in the future by ABUSER" (¶ 29), and that such negligence caused the plaintiff bodily injury, including "physical, psychological and emotional harm" (¶ 32).

129. The remaining INA Excess Covered Claims not listed in Paragraph 128 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the INA Excess Policy defines that term.

130. As a further example, INA reserved its right to deny coverage under the INA Excess Policy to the extent the applicable underlying insurance has not been exhausted. This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 131-132.

131. There is a substantial likelihood that the INA Excess Covered Claims will exhaust the primary insurance underlying the INA Excess Policy. The underlying INA primary policies, whose policy numbers are, upon information and belief, CP 25231 and CP 267867, each have limits of $100,000 per occurrence and $300,000 in the aggregate (the "10/25/66-10/25/70 INA Primary Policies"). There are at least 91 INA Excess Covered Claims that trigger the coverage periods for the 10/25/66-10/25/70 INA Primary Policies and the INA Excess Policy.

132. Data from past clergy sexual abuse cases indicate the INA Excess Covered Claims will far exceed the per occurrence and aggregate limits of the 10/25/66-10/25/70 INA Primary Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Chubb the UCC Chubb Demand Letter on July 3, 2024, demanding they pay a sum of $219.2 million (the "UCC Chubb Demand Amount"), which is within the policy limits of the Chubb Policies, including the INA Excess Policy, to resolve the INA Excess Covered Claims alleged against RCBO. The UCC based the UCC Chubb Demand Amount on its reasonable estimate of the value of the claims covered by the Chubb policies, including the INA Excess Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in

related cases further confirm the INA Excess Covered Claims will exhaust the 10/25/66-10/25/70 INA Primary Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

133. The asserted reservations of rights set forth in Paragraphs 126 and 127 do not provide INA valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the INA Excess Covered Claims under the INA Excess Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the INA Excess Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the INA Excess Policies have been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with INA Excess as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

134. RCBO sent INA the INA Policy Limits Letter on May 30, 2024, demanding INA indemnify RCBO for the INA Excess Covered Claims up to the policy limits under the INA Excess Policy.

135. INA failed to respond to the INA Policy Limits Letter confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the INA Excess Policy to RCBO.

136. On August 6, 2024, INA responded to the UCC Chubb Demand Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the INA Excess Policy to RCBO.

137. The INA Excess Policy provides coverage for, and does not exclude, the INA Excess Covered Claims, and INA is obligated to defend and indemnify RCBO against any settlement or judgment resolving, the INA Excess Covered Claims.

138. The INA Excess Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

139. An actual controversy of a justiciable nature presently exists between RCBO and INA

concerning the proper construction of the INA Excess Policy, whether INA's cited grounds for reservation of rights to deny indemnity under the INA Excess Policy are valid, whether there is any coverage for the INA Excess Covered Claims under the INA Excess Policy, whether INA is obligated to drop down to provide first-dollar coverage for the INA Excess Covered Claims because the underlying primary insurance is exhausted as alleged by RCBO, INA's and RCBO's respective rights and obligations under the INA Excess Policy with respect to INA Excess Covered Claims, and whether INA should participate in settlement regarding the INA Excess Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

140. RCBO is entitled to a declaratory judgment stating INA has issued the INA Excess Policy to RCBO, the INA Excess Policy covers the INA Excess Covered Claims, and RCBO is entitled to both full defense and indemnity regarding the INA Excess Covered Claims under the INA Excess Policy, including, without limitation, a declaration that the primary policies underlying the INA Excess Policy are or are likely to be exhausted as alleged in Paragraphs 131-132 and that INA must drop down to provide defense and indemnity to RCBO regarding the INA Excess Covered Claims.

**<u>SIXTH CAUSE OF ACTION</u>**

**(Declaratory Relief Against U.S. Fire - Excess)**

141. RCBO realleges and incorporates herein Paragraphs 1 through 140 of this Complaint as if said Paragraphs were set forth in full.

142. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

143. An actual and justiciable controversy exists between RCBO and U.S. Fire with respect to whether U.S. Fire is obligated to provide RCBO with defense and indemnity under the U.S. Fire Policy regarding the subset of the Suits for which RCBO alleges U.S. Fire is obligated to provide RCBO with indemnity, as set forth in Paragraph 10 (the "U.S. Fire Covered Claims").

144. Pursuant to the terms of the U.S. Fire Policy, U.S. Fire is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the U.S. Fire Covered Claims.

145. RCBO has fully satisfied all conditions required under the U.S. Fire Policy, or is

otherwise excused from doing so.

146. RCBO's broker and/or RCBO tendered the U.S. Fire Covered Claims to U.S. Fire on RCBO's behalf as set forth in Exhibit A.

147. U.S. Fire denied and/or failed to confirm it will defend or indemnify RCBO for the U.S. Fire Covered Claims.

148. U.S. Fire has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the U.S. Fire Policy that, in turn, will exhaust those policies and trigger U.S. Fire's obligation to provide the benefits of the U.S. Fire Policy to RCBO. Rather, U.S. Fire denies the existence of the U.S. Fire Policy, and otherwise reserved its right to deny defense and coverage, stating "RCBO has not established that U.S. Fire has any obligation to pay defense costs on its behalf, and, even further, it has not provided any information to show the actual exhaustion of any alleged underlying limits."

149. It is RCBO's position U.S. Fire's bases for denying defense and indemnity are without both factual and legal merit. The U.S. Fire Policy covers the U.S. Fire Covered Claims because they allege RCBO was negligent (i.e., did not expect or intend the alleged injuries) and that RCBO's alleged negligence caused "bodily injury" within the U.S. Fire Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the U.S. Fire Covered Claims.

i. Claim 23 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 71) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 55), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 74).

ii. Claim 27 includes negligence allegations that RCBO "negligently failed to supervise [PRIEST] in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 74) and "failed to supervise WILCOX in his

positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 56), and that such negligence caused the plaintiff bodily injury, including "personal physical injury as well as great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life." (¶ 79).

iii. Claim 81 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 64) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 46), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 69).

iv. Claim 235 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR 1's and PERPETRATOR 2's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 49).

v. Claim 175 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [Defendants] failed to provide reasonable supervision of the DOE PERPETRATOR. [Defendants] further failed to take reasonable measures to prevent sexual harassment,

molestation and assault of minors, including the Plaintiff" (¶ 73), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 78).

150. The remaining U.S. Fire Covered Claims not listed in Paragraph 149 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the U.S. Fire Policy defines that term.

151. As a further example, U.S. Fire denies its defense and indemnity obligations because it claims "[RCBO] has not provided any information to show the actual exhaustion of any alleged underlying limits." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 152-153.

152. There is a substantial likelihood that the U.S. Fire Covered Claims will exhaust the primary insurance underlying the U.S. Fire Policy. The underlying Commercial Union primary policy no. EF 9334-001 has limits of $100,000 per occurrence and $300,000 in aggregate (the "10/26/70-10/26/71 Commercial Union Policy"). There are at least 68 U.S. Fire Covered Claims that trigger the coverage periods for the 10/26/70-10/26/71 Commercial Union Policy and the U.S. Fire Policy.

153. Data from past clergy sexual abuse cases indicate the U.S. Fire Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/70-10/26/71 Commercial Union Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent U.S. Fire a letter on July 3, 2024, demanding U.S. Fire pay a sum of $56.7 million (the "UCC U.S. Fire Demand Amount"), which is within the policy limits of the U.S. Fire Policy, to resolve the U.S. Fire Covered Claims alleged against RCBO. The UCC based the UCC U.S. Fire Demand Amount on its reasonable estimate of the value of

the U.S. Fire Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the U.S. Fire Covered Claims will exhaust the 10/26/70-10/26/71 Commercial Union Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

154. Moreover, U.S. Fire must drop down and provide first-dollar coverage of the U.S. Fire Covered Claims under the U.S. Fire Policy because the underlying primary insurer Commercial Union is insolvent.

155. The asserted bases for U.S. Fire's failure to defend or indemnify RCBO as set forth in Paragraph 148 are not valid or meritorious. The claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the U.S. Fire Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the U.S. Fire Policy has either been exhausted or that limits have been reduced. In addition, U.S. Fire's contention that it did not issue a policy to RCBO is contrary to documentary evidence including letters from the broker of record confirming the issuance of the specific policy of insurance identified herein. Finally, RCBO has fully cooperated with US Fire as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

156. RCBO sent U.S. Fire a letter on May 30, 2024, demanding U.S. Fire indemnify RCBO for the U.S. Fire Covered Claims up to the policy limits under the U.S. Fire Policy (the "U.S. Fire Policy Limits Letter").

157. On June 28, 2024, U.S. Fire responded to the U.S. Fire Policy Limits Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the U.S. Fire Policy to RCBO.

158. The UCC sent U.S. Fire a letter on July 3, 2024, demanding Travelers pay a sum within the policy limits of the U.S. Fire Policy to resolve the U.S. Fire Covered Claims (the "UCC U.S. Fire Demand Letter"). On August 6, 2024, U.S. Fire responded to the UCC U.S. Fire Demand Letter and

denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the U.S. Fire Policy to RCBO.

159. The U.S. Fire Policy provides coverage for, and does not exclude, the U.S. Fire Covered Claims, and U.S. Fire is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the U.S. Fire Covered Claims.

160. The U.S. Fire Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

161. An actual controversy of a justiciable nature presently exists between RCBO and U.S. Fire concerning the proper construction of the U.S. Fire Policy, the existence of a policy of insurance issued by U.S. Fire to RCBO, whether U.S. Fire's cited grounds for reservation of rights to deny defense and/or indemnity under the U.S. Fire Policy are valid, whether there is any coverage for the U.S. Fire Covered Claims under the U.S. Fire Policy, whether U.S. Fire is obligated to drop down to provide first-dollar coverage for the U.S. Fire Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, U.S. Fire's and RCBO's respective rights and obligations under the U.S. Fire Policy with respect to the U.S. Fire Covered Claims, and whether U.S. Fire should participate in settlement regarding the U.S. Fire Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

162. RCBO is entitled to a declaratory judgment stating U.S. Fire has issued the U.S. Fire Policies to RCBO, the U.S. Fire Policy covers the U.S. Fire Covered Claims, and RCBO is entitled to both defense and indemnity regarding the U.S. Fire Covered Claims under the U.S. Fire Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the U.S. Fire Policy as alleged in Paragraphs 152-153, and the requirement that U.S. Fire drop down to provide defense and indemnity to RCBO regarding the U.S. Fire Covered Claims.

## **SEVENTH CAUSE OF ACTION**

### **(Declaratory Relief Against Westport - Excess)**

163. RCBO realleges and incorporates herein Paragraphs 1 through 162 of this Complaint as if said Paragraphs were set forth in full.

164. To state a claim for a declaratory judgment, a party needs to plead an actual controversy.

28 U.S.C. § 2201.

165. An actual and justiciable controversy exists between RCBO and Westport with respect to whether Westport is obligated to provide RCBO with defense and indemnity under the Westport Excess Policy regarding the subset of the Suits for which RCBO alleges Westport is obligated to provide RCBO with indemnity, as set forth in Paragraph 11 (the "Westport Excess Covered Claims").

166. Pursuant to the terms of the Westport Excess Policy, Westport is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Westport Excess Covered Claims.

167. RCBO has fully satisfied all conditions required under the Westport Excess Policy, or is otherwise excused from doing so.

168. RCBO's broker and/or RCBO tendered the Westport Excess Covered Claims to Westport on RCBO's behalf as set forth in Exhibit A.

169. Westport denied and/or failed to confirm it will defend or indemnify RCBO for the Westport Excess Covered Claims.

170. Westport has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Westport Excess Policy that, in turn, will exhaust those policies and trigger Westport's obligation to provide the benefits of the Westport Excess Policy to RCBO. Rather, Westport reserved its right to deny coverage on a number of bases.

171. Westport's reservation of rights includes Westport's position that it may deny coverage based on:

i. Westport's contention that "there is no indication that the limits underlying the [Westport Excess Policy] have been exhausted in accordance with the terms of the policies, Westport would have no immediate potential coverage obligations,"

ii. "Whether the claim referenced above falls within the policy period, limits, and scope of insurance afforded under the referenced [Westport Excess Policy] and/or policy(ies) to which the [Westport Excess Policy] may follow form, in whole or in

part,"

iii. "Whether the applicable limits of all applicable underlying policies of insurance have in fact been exhausted in accordance with the [Westport Excess Policy's] terms,"

iv. "Whether any applicable policy exclusions limit or preclude coverage for the claim at issue, in whole or in part,"

v. "Whether the insured has complied with its duties under the [Westport Excess Policy], including but not limited to 'notice' and 'cooperation' obligations, and, if not, whether any such failure limits or precludes coverage for the claim at issue, in whole or in part,"

vi. "Whether any applicable policy conditions limit or preclude coverage for the claims at issue, in whole or in part,"

vii. "Whether Westport's obligations, if any, are limited or precluded due to prior impairment or exhaustion of limits, settlements, releases or other agreements, or are prohibited by law, statute and/or public policy,"

viii. Westport's purported "right to assert any additional defenses that might apply by operation of law or otherwise, including but not limited to defenses that may be asserted by the insurers who issued insurance policies with limits underlying the limits of the [Westport Excess Policy] denies coverage for any enhanced damages based on the defendants' willful and malicious conduct."

172. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Westport has reserved its right to deny its defense and indemnity obligation under the Westport Excess Policy on the grounds that "any applicable policy exclusions limit or preclude coverage for the [the Westport Excess Covered Claims] at issue, in whole or in part." Such reservation of rights as to defense and/or indemnity does not apply because the Westport Excess Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Westport Excess Policy defines that term, within the Westport Excess Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Westport Excess Covered Claims.

i. Claim 15 includes negligence allegations that RCBO "negligently supervised and/or retained ABUSER in positions of trust and authority as a priest" (¶ 49) and "failed to use reasonable care in protecting Plaintiff [] from Abuser's misconduct that created a risk of childhood sexual abuse, while Plaintiffs [] were involved in activities sponsored, supervised, organized or directed by [RCBO]" (¶ 53) and that such negligence caused the plaintiff bodily injury, including "suffer[ing] physical, mental and emotional health problems" (¶ 67).

ii. Claim 2 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 13) and that RCBO was "further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence plaintiff "has suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 14).

iii. Claim 25 includes negligence allegations that RCBO "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER, including but not limited to preventing or avoiding placement of ABUSER in a function or environment in which contact with children is an inherent aspect of the function or environment" (¶ 35) and that RCBO "failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse, while Plaintiff [], a minor, was involved in activities sponsored, supervised, organized or directed by [RCBO] or their agents and employees" (¶ 44), and that as a result of such negligence plaintiff "suffered economic, physical, psychological and emotional harm" (¶ 38).

iv. Claim 3 includes negligence allegations that RCBO "[was] at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as

to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 13) and that RCBO "[was] further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 44), and that as a result of such negligence plaintiff "suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 14).

v. Claim 4 includes negligence allegations that RCBO "[was] at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 13) and that RCBO "[was] further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence plaintiff "suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 14).

173. The remaining Westport Excess Covered Claims not listed in Paragraph 172 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Westport Excess Policy defines that term.

174. As a further example, Westport reserved its right to deny coverage under the Westport Excess Policy on the ground that "there is no indication that the limits underlying the [Westport Excess Policy] have been exhausted in accordance with the terms of the policies, Westport would have no immediate potential coverage obligations." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraph 175-176.

175. There is a substantial likelihood that the Westport Excess Covered Claims will exhaust the primary insurance underlying the Westport Excess Policy. The underlying Commercial Union primary policies nos. EF 9334-001, EF 9334-003, and EF 9334-008 have limits of $100,000 per occurrence and $300,000 in aggregate (the "10/26/71-10/26/74 Commercial Union Policies"). There are

at least 165 Westport Excess Covered Claims that trigger the coverage periods for the 10/26/71-10/26/74 Commercial Union Policies and the Westport Excess Policy.

176. Data from past clergy sexual abuse cases indicate the Westport Excess Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/71-10/26/74 Commercial Union Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Westport a demand letter on July 3, 2024 (the "UCC Westport Demand Letter"), demanding Westport pay a sum of $308.9 million (the "UCC Westport Demand Amount"), which is within the policy limits of the Westport Excess Policy and Westport umbrella policy no. PLE20430 (the "Westport Umbrella Policy), to resolve the Westport Excess Covered Claims and the claims falling within the Westport Umbrella Policy coverage period (the "Westport Umbrella Covered Claims") alleged against RCBO. The UCC based the UCC Westport Demand Amount on its reasonable estimate of the value of the Westport Excess Covered Claims and Westport Umbrella Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Westport Excess Covered Claims and Westport Umbrella Covered Claims will exhaust the 10/26/71-10/26/74 Commercial Union Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

177. Moreover, Westport must drop down and provide first-dollar coverage of the Westport Excess Covered Claims under the Westport Excess Policy because the underlying primary insurer Commercial Union is insolvent.

178. The asserted reservations of rights set forth in Paragraph 171 do not provide Westport valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Westport Excess Covered Claims under the Westport Excess Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Westport Excess Covered Claims present

covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Westport Excess Policies have been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Westport as required under the insurance, including providing notice of the claims, providing the status of the matters and providing requested materials.

179. RCBO sent Westport a letter on May 30, 2024, demanding Westport indemnify RCBO for the Westport Excess Covered Claims up to the policy limits under the Westport Excess Policy (the "Westport Excess Policy Limits Letter").

180. Westport failed to respond to the Westport Excess Policy Limits Letter confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the Westport Excess Policy to RCBO.

181. On August 6, 2024, Westport responded to the UCC Westport Demand Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the Westport Excess Policy to RCBO.

182. The Westport Excess Policy provides coverage for, and does not exclude, the Westport Excess Covered Claims, and Westport is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Westport Excess Covered Claims.

183. The Westport Excess Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

184. An actual controversy of a justiciable nature presently exists between RCBO and Westport concerning the proper construction of the Westport Excess Policy, whether Westport's cited grounds for reservation of rights to deny defense and/or indemnity under the Westport Excess Policy are valid, whether there is any coverage for the Westport Excess Covered Claims under the Westport Excess Policy, whether Westport is obligated to drop down to provide first-dollar coverage for the Westport Excess Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, Westport's and RCBO's respective rights and obligations under the Westport Excess Policy with respect to the Westport Excess Covered Claims, and whether Westport should participate in settlement regarding the Westport Excess Covered Claims. The controversy is of

sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

185. RCBO is entitled to a declaratory judgment stating Westport has issued the Westport Policies to RCBO, the Westport Excess Policy covers the Westport Excess Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Westport Excess Covered Claims under the Westport Excess Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Westport Excess Policy as alleged in Paragraphs 175-176, and the requirement that Westport drop down to provide defense and indemnity to RCBO regarding the Westport Excess Covered Claims.

**EIGHTH CAUSE OF ACTION**

**(Declaratory Relief Against CNA - Excess)**

186. RCBO realleges and incorporates herein Paragraphs 1 through 185 of this Complaint as if said Paragraphs were set forth in full.

187. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

188. An actual and justiciable controversy exists between RCBO and CNA with respect to whether CNA is obligated to provide RCBO with defense and indemnity under the CNA Policies regarding the subset of the Suits for which RCBO alleges CNA is obligated to provide RCBO with indemnity, as set forth in Paragraph 12 (the "CNA Covered Claims").

189. Pursuant to the terms of the CNA Policies, CNA is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the CNA Covered Claims.

190. RCBO has fully satisfied all conditions required under the CNA Policies, or is otherwise excused from doing so.

191. RCBO's broker and/or RCBO tendered the CNA Covered Claims to CNA on RCBO's behalf as set forth in Exhibit A.

192. On May 24, 2024, CNA agreed to provide a defense to RCBO for those CNA Covered Claims "where the applicable underlying primary coverage is either insolvent or fully and properly exhausted through payment of judgments or settlements." However, CNA denied and/or failed to

confirm it will indemnify RCBO for the CNA Covered Claims.

193. CNA has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the CNA Policies that, in turn, will exhaust those policies and trigger CNA's obligation to provide the benefits of the CNA Policies to RCBO. Rather, CNA reserved its right to deny coverage on a number of bases.

194. CNA's reservation of rights includes CNA's position that it may deny coverage on the following bases:

i. "[P]laintiffs have not sued, and do not seek damages from, the Diocese,"

ii. "[P]laintiffs are seeking damages unrelated to 'bodily injury,'

iii. "[A]n entity other than the Insured is liable for the alleged injury,"

iv. "[T]he terms of the Aetna [Casualty Ins. Co. CGL policy 05SM90296]" preclude coverage,

v. "[T]he terms of the Commercial Union policy" preclude coverage,

vi. "[A]ll applicable underlying insurance has not been exhausted,"

vii. CNA may "seek contribution from all other insurance which may be applicable" and may "assert its subrogation rights under the Policies,"

viii. CNA denies coverage for any enhanced damages based on the defendants' willful and malicious conduct,"

ix. "[T]he Diocese failed to provide timely notice of claims, occurrences, or lawsuits,"

x. CNA may "withdraw from the Diocese's defense at any time if it determines there is no potential for coverage under the Policies,"

xi. CNA may "seek reimbursement from the Diocese's other insurers for amounts paid in excess of CNA's appropriate share of defense costs,"

xii. "[T]he Diocese's liability as alleged was channeled to the BSA Trust,"

xiii. "To the extent the Diocese has released CNA from responsibility for a particular Sexual Abuse Claim, CNA would have no duty to defend or indemnify such claim."

195. In addition, CNA reserved further rights to deny coverage as follows:

i. "The right to deny coverage on the grounds that any tendering defendant does not

qualify as an insured or additional insured under the policies;"

ii. "The right to deny coverage on the ground that the subject claim does not seek recovery for covered damages caused by an occurrence, incident, or accident;"

iii. "The right to deny coverage to the extent the claim or loss alleged is not fortuitous;"

iv. "The right to deny coverage on the basis that the injuries at issue were expected or intended from the standpoint of the insured;"

v. "The right to deny coverage if the suit does not allege "bodily injury" or "personal injury" within the meaning of the policies;"

vi. "The right to deny coverage for any alleged "bodily injury" or "personal injury" that did not take place during the relevant policy period;"

vii. "The right to deny coverage to the extent that the suit does not seek recovery for "damages" within the meaning of the policies;"

viii. "The right to deny coverage for injury arising out of the willful violation of a penal statute or ordinance committed by or with the consent of any insured;"

ix. "The right to deny coverage for persons or entities that are not insureds under any policy;"

x. "The right to deny coverage for 'willful acts of the insured;'"

xi. "The right to deny coverage to the extent that any of the alleged injuries arose out of conduct that is uninsurable as a matter of public policy;"

xii. "The right to seek rescission of the policies, if there was misrepresentation or a failure to disclose known or likely sexual misconduct of the perpetrator during the application process for said policies;"

xiii. "The right to deny coverage for exemplary damages, punitive damages, and fines;"

xiv. "The right to deny or limit coverage consistent with any provision related to any limits of liability located in the policies;"

xv. "CNA has no obligation to any person or entity seeking coverage under the policies if such person or entity fails to comply with the assistance and cooperation clause in said policies;"

xvi. "CNA has no obligation to any person or entity seeking coverage under the policies if such person or entity makes a voluntary payment under said policies;"

xvii. "The right to disclaim coverage to the extent that any insured makes any settlements or payments, or commits to making such payments, without prior authorization from CNA;"

xviii. "The right to deny or limit coverage based on "other insurance" provisions in the policies;"

xix. "The right to deny coverage on the basis of late notice of occurrence, late notice of suit, or laches;"

xx. "The right to supplement the grounds upon which CNA reserves rights and/or limits or disclaims coverage, including to add any grounds that become apparent should CNA become aware of additional information regarding the Alleged CNA Policies."

196. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, CNA has reserved its right to deny its defense and indemnity obligation under the CNA Policies on the grounds that the CNA Covered Claims allege injuries that were "expected or intended from the standpoint of [RCBO]" or that "do[] not allege 'bodily injury' or 'personal injury' within the meaning of the [CNA Policies]." Such reservations of rights as to defense and/or indemnity do not apply because the CNA Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the CNA Policies define that term, within the CNA Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the CNA Covered Claims.

i. Claim 6 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 13) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 14).

ii. Claim 7 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 13) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 14).

iii. Claim 33 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 9) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 9), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 10).

iv. Claim 99 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [RCBO] failed to provide reasonable supervision of the DOE PERPETRATOR. [RCBO] further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff" (¶ 83), and that as a result of such negligence the plaintiff "suffered and will continue to suffer the physical injury of sexual assault" (¶ 99).

v. Claim 251 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the

> purposes of sexual assault" (¶ 65) and "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [RCBO] failed to provide reasonable supervision of the DOE PERPETRATOR. [RCBO] further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff" (¶ 83), and that as a result of such negligence the plaintiff "suffered the physical injury of sexual assault" (¶ 75).

197. The remaining CNA Covered Claims not listed in Paragraph 196 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the CNA Policies define that term.

198. As a further example, CNA reserved its right to deny coverage under the CNA Policies on the ground that "all applicable underlying insurance has not been exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 199-200.

199. There is a substantial likelihood that the CNA Covered Claims will exhaust the primary insurance underlying the CNA Policies. The underlying Commercial Union primary policy no. CF 9334-008 has limits of $300,000 per occurrence and $300,000 aggregate, and the underlying Travelers policies nos. 05 AL 802025 CMA, 05 SM 90296 FCA, and 05 SM 99094 FCA have limits of $300,000 per occurrence and $300,000 aggregate, $500,000 CLS, and $1,000,000 CSL, respectively (the "10/26/74-12/01/80 Commercial Union and Travelers Policies"). There are at least 180 CNA Covered Claims that trigger the coverage periods for the 10/26/74-12/01/80 Commercial Union and Travelers Policies and the CNA Policies.

200. Data from past clergy sexual abuse cases indicate the CNA Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/74-12/01/80 Commercial Union and Travelers Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026,

the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent CNA a demand letter (the "UCC CNA Demand Letter") on July 3, 2024, demanding CNA pay a sum of $162.6 million (the "UCC CNA Demand Amount"), which is within the policy limits of the CNA Policies, to resolve the CNA Covered Claims alleged against RCBO. The UCC based the UCC CNA Demand Amount on its reasonable estimate of the value of the CNA Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the CNA Covered Claims and will exhaust the 10/26/74-12/01/80 Commercial Union and Travelers Policies. *Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

201. Moreover, CNA must drop down and provide first-dollar coverage of the CNA Covered Claims under the CNA Policies because the underlying primary insurer Commercial Union is insolvent.

202. The asserted reservations of rights set forth in Paragraphs 194 and 195 do not provide CNA valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the CNA Covered Claims under the CNA Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the CNA Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the CNA Policies have been exhausted or that limits have been reduced and RCBO made no misrepresentations to CNA when obtaining the CNA Policies. Finally, RCBO has fully cooperated with CNA as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

203. RCBO sent CNA a letter on May 30, 2024, demanding CNA indemnify RCBO for the CNA Covered Claims up to the policy limits under the CNA Policies (the "CNA Policy Limits Letter").

204. On June 28, 2024 CNA responded to the CNA Policy Limits Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the CNA Policies to RCBO.

205. On August 6, 2024, CNA responded to the UCC CNA Demand Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the CNA Policies to RCBO.

206. The CNA Policies provide coverage for, and do not exclude, the CNA Covered Claims, and CNA is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the CNA Covered Claims.

207. The CNA Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

208. An actual controversy of a justiciable nature presently exists between RCBO and CNA concerning the proper construction of the CNA Policies, whether CNA's cited grounds for reservation of rights to deny defense and/or indemnity under the CNA Policies are valid, whether there is any coverage for the CNA Covered Claims under the CNA Policy, whether CNA is obligated to drop down to provide first-dollar coverage for the CNA Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, CNA's and RCBO's respective rights and obligations under the CNA Policies with respect to the CNA Covered Claims, and whether CNA should participate in settlement regarding the CNA Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

209. RCBO is entitled to a declaratory judgment stating CNA has issued the CNA Policies to RCBO, the CNA Policies cover the CNA Covered Claims, and RCBO is entitled to both defense and indemnity regarding the CNA Covered Claims under the CNA Policies, including, without limitation, a declaration of exhaustion as to the primary policies underlying the CNA Policies as alleged in Paragraphs 199-200, and the requirement that CNA drop down to provide defense and indemnity to RCBO regarding the CNA Covered Claims.

**NINTH CAUSE OF ACTION**

**(Declaratory Relief Against Westchester - Excess)**

210. RCBO realleges and incorporates herein Paragraphs 1 through 209 of this Complaint as if said Paragraphs were set forth in full.

211. To state a claim for a declaratory judgment, a party needs to plead an actual controversy.

28 U.S.C. § 2201.

212. An actual and justiciable controversy exists between RCBO and Westchester with respect to whether Westchester is obligated to provide RCBO with defense and indemnity under the Westchester Policy regarding the subset of the Suits for which RCBO alleges Westchester is obligated to provide RCBO with indemnity, as set forth in Paragraph 13 (the "Westchester Covered Claims").

213. Pursuant to the terms of the Westchester Policy, Westchester is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Westchester Covered Claims.

214. RCBO has fully satisfied all conditions required under the Westchester Policy, or is otherwise excused from doing so.

215. RCBO's broker and/or RCBO tendered the Westchester Covered Claims to Westchester on RCBO's behalf as set forth in Exhibit A.

216. Westchester refused to provide a defense to RCBO for the Westchester Covered Claims. Westchester also denied and/or failed to confirm it will indemnify RCBO for the Westchester Covered Claims.

217. Westchester has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Westchester Policy that, in turn, will exhaust those policies and trigger Westchester's obligation to provide the benefits of the Westchester Policy to RCBO. Rather, Westchester reserved its right to deny coverage on a number of bases.

218. Westchester's reservation of rights includes Westchester's position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the [Westchester] Policy."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. "[The Westchester Policy] may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

iv. "To the extent that any of the claims… do not arise out of 'personal injury' which occurred during the policy period," there would be no coverage for any such claims."

v. Westchester has "no indication that the applicable limits of the [underlying] Aetna [primary] Policy have been exhausted."

vi. "To the extent any of the claimants did not sustain a loss arising out of an accident, and as such it would not have been caused by an "occurrence," there would be no coverage."

vii. The alleged conduct may also be "excluded as uninsurable willful conduct pursuant to California Insurance Code § 533."

viii. The Westchester Policy "requires that [any] 'personal injury' must be neither expected nor intended."

219. In addition, Westchester reserved further rights to deny coverage as follows:

i. Westchester "reserves rights to the extent the [Westchester] Policy is exhausted and [it has] no further defense or indemnity obligations under the [Westchester] Policy."

ii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iii. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, [Westchester] reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

iv. "All rights with regarding to exhaustion."

v. To the extent "Pastoral Professional Liability cover is implicated" in "the underlying Aetna Policy," Westchester "reserves its rights to decline coverage… on this basis."

220. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Westchester has reserved its right to deny its defense and indemnity obligation under the Westchester Policy on the grounds that the Westchester Covered Claims allege injuries where RCBO expected or intended injury to the subject claimant that were "expected or intended from the standpoint of [RCBO]" or where RCBO is liable for damages not resulting from "bodily injury." Such

reservations of rights as to defense and/or indemnity do not apply because the Westchester Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Westchester Policy defines that term, within the Westchester Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Westchester Covered Claims.

i. Claim 10 includes negligence allegations that RCBO "[was] negligent in the hiring, retention, control, and supervision, of PERPETRATOR" (¶ 14) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 14), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 15).

ii. Claim 33 includes negligence allegations that RCBO "[was] negligent in the hiring, retention, control, and supervision, of PERPETRATOR" (¶ 9) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 9), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 10).

iii. Claim 35 includes negligence allegations that RCBO "[w]as] negligent in the hiring, retention, control, and supervision of PERPETRATOR" (¶ 9) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities and while PERPETRATOR was engaged in his duties and responsibilities of outreach as a Priest" (¶ 9), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 10).

iv. Claim 61 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's

protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 75).

v. Claim 64 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 75).

221. The remaining Westchester Covered Claims not listed in Paragraph 220 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Westchester Policy defines that term.

222. As a further example, Westchester reserved its right to deny coverage under the Westchester Policy to the extent the applicable underlying insurance has not been exhausted. This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 223-224.

223. There is a substantial likelihood that the Westchester Covered Claims will exhaust the primary insurance underlying the Westchester Policy. The underlying Aetna/Travelers primary policy no. 05 SM 107459 FCA has a limit of $1,000,000 in aggregate (the "12/01/80-12/01/81 Travelers Primary Policy"). There are at least 37 Westchester Covered Claims that trigger the coverage periods for

the 12/01/80-12/01/81 Travelers Primary Policy and the Westchester Policy.

224. Data from past clergy sexual abuse cases indicate the Westchester Covered Claims will far exceed the per occurrence and aggregate limits of the 12/01/80-12/01/81 Travelers Primary Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Chubb the UCC Chubb Demand Letter on July 3, 2024, demanding they pay the UCC Chubb Demand Amount, a sum of $219.2 million, which is within the policy limits of the Chubb Policies, including the Westchester Policy, to resolve the Westchester Covered Claims alleged against RCBO. The UCC based the UCC Chubb Demand Amount on its reasonable estimate of the value of the claims covered by the Chubb policies, including the Westchester Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Westchester Covered Claims will exhaust the 12/01/80-12/01/81 Travelers Primary Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

225. The asserted reservations of rights set forth in Paragraphs 218 and 219 do not provide Westchester valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Westchester Covered Claims under the Westchester Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Westchester Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Westchester Policies have been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Westchester as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

226. RCBO sent Westchester a letter on May 30, 2024, demanding Westchester indemnify RCBO for the Westchester Covered Claims up to the policy limits under the Westchester Policy (the

"Westchester Policy Limits Letter").

227. Westchester failed to respond to the Westchester Policy Limits Letter confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the Westchester Policy to RCBO.

228. On August 6, 2024, Westchester responded to the UCC Chubb Demand Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the Westchester Policy to RCBO.

229. The Westchester Policy provides coverage for, and does not exclude, the Westchester Covered Claims, and Westchester is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Westchester Covered Claims.

230. The Westchester Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

231. An actual controversy of a justiciable nature presently exists between RCBO and Westchester concerning the proper construction of the Westchester Policy, whether Westchester's cited grounds for reservation of rights to deny defense and/or indemnity under the Westchester Policy are valid, whether there is any coverage for the Westchester Covered Claims under the Westchester Policy, whether Westchester is obligated to drop down to provide first-dollar coverage for the Westchester Covered Claims because the underlying primary insurance is exhausted, Westchester's and RCBO's respective rights and obligations under the Westchester Policy with respect to Westchester Covered Claims, and whether Westchester should participate in settlement regarding the Westchester Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

232. RCBO is entitled to a declaratory judgment stating Westchester has issued the Westchester Policy to RCBO, the Westchester Policy covers the Westchester Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Westchester Covered Claims under the Westchester Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Westchester Policy as alleged in Paragraphs 223-224, and the requirement that Westchester drop down to provide defense and indemnity to RCBO regarding the Westchester Covered

Claims.

## TENTH CAUSE OF ACTION

**(Declaratory Relief Against Lloyd's - Excess)**

233. RCBO realleges and incorporates herein Paragraphs 1 through 232 of this Complaint as if said Paragraphs were set forth in full.

234. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

235. An actual and justiciable controversy exists between RCBO and Lloyd's Excess with respect to whether Lloyd's Excess is obligated to provide RCBO with defense and indemnity under the Lloyd's Excess Policies regarding the subset of the Suits for which RCBO alleges Lloyd's Excess is obligated to provide RCBO with indemnity, as set forth in Paragraph 14 (the "Lloyd's Excess Covered Claims").

236. Pursuant to the terms of the Lloyd's Excess Policies, Lloyd's Excess is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Lloyd's Excess Covered Claims.

237. RCBO has fully satisfied all conditions required under the Lloyd's Excess Policies, or is otherwise excused from doing so.

238. RCBO's broker and/or RCBO tendered the Lloyd's Excess Covered Claims to Lloyd's Excess on RCBO's behalf as set forth in Exhibit A.

239. Lloyd's Excess denied and/or failed to confirm it will defend and indemnify RCBO for the Lloyd's Excess Covered Claims.

240. Lloyd's Excess has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Lloyd's Excess Policies that, in turn, will exhaust those policies and trigger Lloyd's Excess's obligation to provide the benefits of the Lloyd's Excess Policies to RCBO. Rather, Lloyd's Excess reserved its right to deny coverage on a number of bases.

241. Lloyd's Excess's reservation of rights includes Lloyd's Excess's position that it may

deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Lloyd's is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Lloyd's' coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Lloyd's] Policies."

iv. "To the extent the [Lloyd's] Second Excess Umbrella Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Lloyd's "reserve[s] all rights based upon the number and timing of occurrences. It is [Lloyd's'] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Lloyd's] Policies."

viii. Lloyd's "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

242. In addition, Lloyd's Excess reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods,

including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Lloyd's "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Lloyd's thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Lloyd's] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Lloyd's] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Lloyd's reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Lloyd's reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Lloyd's'] agent for notice of claims provided in the Policy Declarations."

x. Lloyd's reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Lloyd's] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Lloyd's and RCBO "in or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Lloyd's] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Lloyd's] Policies."

xiv. Lloyd's reserves its rights "pursuant to the [Lloyd's] Policies' Other Insurance Condition."

xv. Lloyd's reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

243. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Lloyd's Excess has reserved its right to deny its defense and indemnity obligation under the Lloyd's Excess Policies on the grounds that the Lloyd's Excess Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Lloyd's Excess Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Lloyd's Excess Policies define that term, within the Lloyd's Excess Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Lloyd's Excess Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement

reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

244. The remaining Lloyd's Excess Covered Claims not listed in Paragraph 243 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Lloyd's Excess Policies define that term.

245. As a further example, Lloyd's Excess reserved its right to deny coverage under the Lloyd's Excess Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 246-247.

246. There is a substantial likelihood that the Lloyd's Excess Covered Claims will exhaust the primary insurance underlying the Lloyd's Excess Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). There are at least 38 Lloyd's Excess Covered Claims that trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies and the Lloyd's Excess Policies.

247. Data from past clergy sexual abuse cases indicate the Lloyd's Excess Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the

jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Lloyd's Excess a letter (the "UCC Lloyd's Demand Letter") on July 3, 2024, demanding Lloyd's Excess pay a sum of $42.8 million (the "UCC Lloyd's Demand Amount"), which is within the policy limits of the Lloyd's Excess Policies and the Lloyd's Umbrella Policies, to resolve the Lloyd's Excess Covered Claims and the claims falling within the Lloyd's Excess Policies coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Lloyd's Excess Covered Claims and the claims covered by the Lloyd's Umbrella Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Excess Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

248. The asserted reservations of rights set forth in Paragraphs 241 and 242 do not provide Lloyd's Excess valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Lloyd's Excess Covered Claims under the Lloyd's Excess Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Lloyd's Excess Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Lloyd's Excess Policies have been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Lloyd's Excess either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Lloyd's Excess as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

249. RCBO sent Lloyd's Excess a letter on May 30, 2024, demanding Lloyd's Excess indemnify RCBO for the Lloyd's Excess Covered Claims up to the policy limits under the Lloyd's

Excess Policies (the "Lloyd's Excess Policy Limits Letter").

250. On July 1, 2024, Lloyd's Excess responded to the Lloyd's Excess Policy Limits Letter and declined to indemnify RCBO, and thereby has failed to provide the benefits of the Lloyd's Excess Policies to RCBO.

251. On August 6, 2024, Lloyd's Excess responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the Lloyd's Excess Policies to RCBO.

252. The Lloyd's Excess Policies provide coverage for, and do not exclude, the Lloyd's Excess Covered Claims, and Lloyd's Excess is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Lloyd's Excess Covered Claims.

253. The Lloyd's Excess Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

254. An actual controversy of a justiciable nature presently exists between RCBO and Lloyd's Excess concerning the proper construction of the Lloyd's Excess Policies, whether Lloyd's Excess cited grounds for reservation of rights to deny defense and/or indemnity under the Lloyd's Excess Policies are valid, whether there is any coverage for the Lloyd's Excess Covered Claims under the Lloyd's Excess Policies, whether Lloyd's Excess is obligated to drop down to provide first-dollar coverage for the Lloyd's Excess Covered Claims because the underlying primary insurance is exhausted, Lloyd's Excess's and RCBO's respective rights and obligations under the Lloyd's Excess Policies with respect to the Lloyd's Excess Covered Claims, and whether Lloyd's Excess should participate in settlement regarding the Lloyd's Excess Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

255. RCBO is entitled to a declaratory judgment stating Lloyd's Excess has issued the Lloyd's Excess Policies to RCBO, the Lloyd's Excess Policies cover the Lloyd's Excess Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Lloyd's Excess Covered Claims under the Lloyd's Excess Policies, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Lloyd's Excess Policies as alleged in Paragraphs 246-247, and the requirement

that Lloyd's Excess drop down to provide defense and indemnity to RCBO regarding the Lloyd's Excess Covered Claims.

**ELEVENTH CAUSE OF ACTION**

**(Declaratory Relief Against Fidelidade - Excess)**

256. RCBO realleges and incorporates herein Paragraphs 1 through 255 of this Complaint as if said Paragraphs were set forth in full.

257. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

258. An actual and justiciable controversy exists between RCBO and Fidelidade with respect to whether Fidelidade is obligated to provide RCBO with defense and indemnity under the Fidelidade Excess Policy regarding the subset of the Suits for which RCBO alleges Fidelidade is obligated to provide RCBO with indemnity, as set forth in Paragraph 20 (the "Fidelidade Covered Claims").

259. Pursuant to the terms of the Fidelidade Excess Policy, Fidelidade is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Fidelidade Covered Claims.

260. RCBO has fully satisfied all conditions required under the Fidelidade Excess Policy, or is otherwise excused from doing so.

261. RCBO's broker and/or RCBO tendered the Fidelidade Covered Claims to Fidelidade on RCBO's behalf as set forth in Exhibit A.

262. Fidelidade denied and/or failed to confirm it will defend and indemnify RCBO for the Fidelidade Covered Claims.

263. Fidelidade has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Fidelidade Excess Policy that, in turn, will exhaust those policies and trigger Fidelidade's obligation to provide the benefits of the Fidelidade Excess Policy to RCBO. Rather, Fidelidade reserved its right to deny coverage on a number of bases.

264. Fidelidade's reservation of rights includes Fidelidade's position that it may deny

coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Fidelidade is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Fidelidade's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Fidelidade Excess Policy]."

iv. "To the extent the [Fidelidade Excess Policy is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Fidelidade "reserve[s] all rights based upon the number and timing of occurrences. It is [Fidelidade's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Fidelidade Excess Policy]."

viii. Fidelidade "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

265. In addition, Fidelidade reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods,

including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion).”

ii. “The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse.”

iii. Fidelidade “reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be ‘unexpected or unintended.’” Fidelidade thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an ‘occurrence,’ which requires unexpected and unintended injury.”

iv. “The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence.”

v. “If Claimant is asserting a claim against another entity besides [RCBO], then [Fidelidade] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an ‘Assured’ under the [Fidelidade Excess Policy].”

vi. “All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured.”

vii. The right “to decline indemnity for any payments made by [RCBO] for pastoral or counseling services.”

viii. Fidelidade reserves its rights “if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses.”

ix. Fidelidade reserves its rights “with respect to the Conditions pertaining to Notice” requiring “that [RCBO] provide notice of an occurrence that may implicate the respective policy ‘as soon as practicable’ to [Fidelidade’s] agent for notice of claims

provided in the Policy Declarations."

x. Fidelidade s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Fidelidade Excess Policy], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Fidelidade and RCBO "in or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Fidelidade] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Fidelidade Excess Policy]."

xiv. Fidelidade reserves its rights "pursuant to the [Fidelidade Excess Policy's] Other Insurance Condition."

xv. Fidelidade reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

266. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Fidelidade has reserved its right to deny its defense and indemnity obligation under the Fidelidade Excess Policy on the grounds that the Fidelidade Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Fidelidade Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Fidelidade Excess Policy defines that term, within the Fidelidade Excess Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury

allegations from the Fidelidade Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 202 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 68).

iv. Claim 204 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk

of childhood sexual assault" (¶ 66) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 49), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 69).

v. Claim 214 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 68).

267. The remaining Fidelidade Covered Claims not listed in Paragraph 266 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Fidelidade Excess Policy defines that term.

268. As a further example, Fidelidade reserved its right to deny coverage under the Fidelidade Excess Policy on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 269-270.

269. There is a substantial likelihood that the Fidelidade Covered Claims will exhaust the primary insurance underlying the Fidelidade Excess Policy. The underlying Pacific Indemnity primary policy no. LAC 155598 has limits of $500,000 per occurrence and $500,000 in aggregate (the "10/25/63-10/25/66 Pacific Indemnity Policy"). There are at least 34 Fidelidade Covered Claims that trigger the coverage periods for the 10/25/63-10/25/66 Pacific Indemnity Policy and the Fidelidade Excess Policy.

270. Data from past clergy sexual abuse cases indicate the Fidelidade Covered Claims will far exceed the per occurrence and aggregate limits of the 10/25/63-10/25/66 Pacific Indemnity Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately

$56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, Fidelidade received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Fidelidade was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the Fidelidade Excess Policy, to resolve the Fidelidade Covered Claims and the claims falling within the Fidelidade coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Fidelidade Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Covered Claims will exhaust the 10/25/63-10/25/66 Pacific Indemnity Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

271. The asserted reservations of rights set forth in Paragraphs 264 and 265 do not provide Fidelidade valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Fidelidade Covered Claims under the Fidelidade Excess Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Fidelidade Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Fidelidade Excess Policy has either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Fidelidade either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Fidelidade as required under the insurance including providing notice of the claims, providing the status of the matters

and providing requested materials.

272. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants letters on May 30, 2024, demanding indemnification to RCBO for the Fidelidade Covered Claims up to the policy limits under the Fidelidade Excess Policy (jointly, the "Lloyd's Policy Limits Letters"). Upon information and belief, Fidelidade received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Fidelidade was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

273. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and Fidelidade thereby has failed to provide the benefits of the Fidelidade Excess Policy to RCBO.

274. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. Fidelidade thereby has failed to provide the benefits of the Fidelidade Excess Policy to RCBO.

275. The Fidelidade Excess Policy provides coverage for, and does not exclude, the Fidelidade Covered Claims, and Fidelidade is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Fidelidade Covered Claims.

276. The Fidelidade Excess Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

277. An actual controversy of a justiciable nature presently exists between RCBO and Fidelidade concerning the proper construction of the Fidelidade Excess Policy, whether Fidelidade's cited grounds for reservation of rights to deny defense and/or indemnity under the Fidelidade Excess Policy are valid, whether there is any coverage for the Fidelidade Covered Claims under the Fidelidade Excess Policy, whether Fidelidade is obligated to drop down to provide first-dollar coverage for the Fidelidade Covered Claims because the underlying primary insurance is exhausted, Fidelidade's and RCBO's respective rights and obligations under the Fidelidade Excess Policy with respect to the Fidelidade Covered Claims, and whether Fidelidade should participate in settlement regarding the Fidelidade Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the

issuance of a declaratory judgment.

278. RCBO is entitled to a declaratory judgment stating Fidelidade has issued the Fidelidade Excess Policy to RCBO, the Fidelidade Excess Policy covers the Fidelidade Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Fidelidade Covered Claims under the Fidelidade Excess Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Fidelidade Excess Policy as alleged in Paragraphs 269-270, and the requirement that Fidelidade drop down to provide defense and indemnity to RCBO regarding the Fidelidade Covered Claims.

**TWELFTH CAUSE OF ACTION**

**(Declaratory Relief Against Excess Insurance Co. - Excess)**

279. RCBO realleges and incorporates herein Paragraphs 1 through 278 of this Complaint as if said Paragraphs were set forth in full.

280. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

281. An actual and justiciable controversy exists between RCBO and Excess Insurance Co. with respect to whether Excess Insurance Co. is obligated to provide RCBO with defense and indemnity under the Excess Insurance Co. Policies regarding the subset of the Suits for which RCBO alleges Excess Insurance Co. is obligated to provide RCBO with indemnity, as set forth in Paragraph 15 (the "Excess Insurance Co. Covered Claims").

282. Pursuant to the terms of the Excess Insurance Co. Policies, Excess Insurance Co. is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Excess Insurance Co. Covered Claims.

283. RCBO has fully satisfied all conditions required under the Excess Insurance Co. Policies, or is otherwise excused from doing so.

284. RCBO's broker and/or RCBO tendered the Excess Insurance Co. Covered Claims to Excess Insurance Co. on RCBO's behalf as set forth in Exhibit A.

285. Excess Insurance Co. denied and/or failed to confirm it will defend and indemnify RCBO

for the Excess Insurance Co. Covered Claims.

286. Excess Insurance Co. has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Excess Insurance Co. Policies that, in turn, will exhaust those policies and trigger Excess Insurance Co.'s obligation to provide the benefits of the Excess Insurance Co. Policies to RCBO. Rather, Excess Insurance Co. reserved its right to deny coverage on a number of bases.

287. Excess Insurance Co.'s reservation of rights includes Excess Insurance Co.'s position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Excess Insurance Co. is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Excess Insurance Co.'s coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Excess Insurance Co. Policies]."

iv. "To the extent the [Excess Insurance Co. Policies is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Excess Insurance Co. "reserve[s] all rights based upon the number and timing of occurrences. It is [Excess Insurance Co.'s] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Excess Insurance Co. Policies]."

viii. Excess Insurance Co. "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

288. In addition, Excess Insurance Co. reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Excess Insurance Co. "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Excess Insurance Co. thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Excess Insurance Co.] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Excess Insurance Co. Policies]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery

committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Excess Insurance Co. reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Excess Insurance Co. reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Excess Insurance Co.'s] agent for notice of claims provided in the Policy Declarations."

x. Excess Insurance Co. s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Excess Insurance Co. Policies], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Excess Insurance Co. and RCBO "in or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Excess Insurance Co.] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Excess Insurance Co. Policies]."

xiv. Excess Insurance Co. reserves its rights "pursuant to the [Excess Insurance Co. Policies'] Other Insurance Condition."

xv. Excess Insurance Co. reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

289. It is RCBO's position that the above reservations of rights are without both factual and

legal merit. For example, Excess Insurance Co. has reserved its right to deny its defense and indemnity obligation under the Excess Insurance Co. Policies on the grounds that the Excess Insurance Co. Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Excess Insurance Co. Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Excess Insurance Co. Policies defines that term, within the Excess Insurance Co. Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Excess Insurance Co. Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in

protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

290. The remaining Excess Insurance Co. Covered Claims not listed in Paragraph 289 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Excess Insurance Co. Policies defines that term.

291. As a further example, Excess Insurance Co. reserved its right to deny coverage under the Excess Insurance Co. Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 292-293.

292. There is a substantial likelihood that the Excess Insurance Co. Covered Claims will

exhaust the primary insurance underlying the Excess Insurance Co. Policies. The underlying Pacific Indemnity primary policy nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). There are at least 38 Excess Insurance Co. Covered Claims that trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies and the Excess Insurance Co. Policies.

293. Data from past clergy sexual abuse cases indicate the Excess Insurance Co. Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, Excess Insurance Co. received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Excess Insurance Co. was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the Excess Insurance Co. Policies, to resolve the Excess Insurance Co. Covered Claims and the claims falling within the Excess Insurance Co. coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Excess Insurance Co. Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

294. The asserted reservations of rights set forth in Paragraphs 287 and 288 do not provide Excess Insurance Co. valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Excess Insurance Co. Covered Claims under the Excess Insurance Co. Policies as the claims have

been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Excess Insurance Co. Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Excess Insurance Co. Policies have been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Excess Insurance Co. either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Excess Insurance Co. as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

295. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Excess Insurance Co. Covered Claims up to the policy limits under the Excess Insurance Co. Policies. Upon information and belief, Excess Insurance Co. received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Excess Insurance Co. was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

296. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and thereby Excess Insurance Co. has failed to provide the benefits of the Excess Insurance Co. Policies to RCBO.

297. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. Excess Insurance Co. thereby has failed to provide the benefits of the Excess Insurance Co. Policies to RCBO. The Excess Insurance Co. Policies provide coverage for, and do not exclude, the Excess Insurance Co. Covered Claims, and Excess Insurance Co. is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Excess Insurance Co. Covered Claims.

298. The Excess Insurance Co. Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

299. An actual controversy of a justiciable nature presently exists between RCBO and Excess Insurance Co. concerning the proper construction of the Excess Insurance Co. Policies, whether Excess Insurance Co.'s cited grounds for reservation of rights to deny defense and/or indemnity under the Excess Insurance Co. Policies are valid, whether there is any coverage for the Excess Insurance Co. Covered Claims under the Excess Insurance Co. Policies, whether Excess Insurance Co. is obligated to drop down to provide first-dollar coverage for the Excess Insurance Co. Covered Claims because the underlying primary insurance is exhausted, Excess Insurance Co.'s and RCBO's respective rights and obligations under the Excess Insurance Co. Policies with respect to the Excess Insurance Co. Covered Claims, and whether Excess Insurance Co. should participate in settlement regarding the Excess Insurance Co. Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

300. RCBO is entitled to a declaratory judgment stating Excess Insurance Co. has issued the Excess Insurance Co. Policies to RCBO, the Excess Insurance Co. Policies cover the Excess Insurance Co. Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Excess Insurance Co. Covered Claims under the Excess Insurance Co. Policies, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Excess Insurance Co. Policies as alleged in Paragraphs 292-293, and the requirement that Excess Insurance Co. drop down to provide defense and indemnity to RCBO regarding the Excess Insurance Co. Covered Claims.

**<u>THIRTEENTH CAUSE OF ACTION</u>**

**(Declaratory Relief Against River Thames - Excess)**

301. RCBO realleges and incorporates herein Paragraphs 1 through 300 of this Complaint as if said Paragraphs were set forth in full.

302. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

303. An actual and justiciable controversy exists between RCBO and River Thames with respect to whether River Thames is obligated to provide RCBO with defense and indemnity under the River Thames Policy regarding the subset of the Suits for which RCBO alleges River Thames is obligated to provide RCBO with indemnity, as set forth in Paragraph 19 (the "River Thames Covered

Claims").

304. Pursuant to the terms of the River Thames Policy, River Thames is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the River Thames Covered Claims.

305. RCBO has fully satisfied all conditions required under the River Thames Policy, or is otherwise excused from doing so.

306. RCBO's broker and/or RCBO tendered the River Thames Covered Claims to River Thames on RCBO's behalf as set forth in Exhibit A.

307. River Thames denied and/or failed to confirm it will defend and indemnify RCBO for the River Thames Covered Claims.

308. River Thames has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the River Thames Policy that, in turn, will exhaust those policies and trigger River Thames's obligation to provide the benefits of the River Thames Policy to RCBO. Rather, River Thames reserved its right to deny coverage on a number of bases.

309. River Thames's reservation of rights includes River Thames's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. River Thames is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. River Thames's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [River Thames Policy]."

iv. "To the extent the [River Thames Policy is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance)

have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. River Thames "reserve[s] all rights based upon the number and timing of occurrences. It is [River Thames's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [River Thames Policy]."

viii. River Thames "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

310. In addition, River Thames reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. River Thames "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" River Thames thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended

injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [River Thames] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [River Thames Policy]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. River Thames reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. River Thames reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [River Thames's] agent for notice of claims provided in the Policy Declarations."

x. River Thames s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [River Thames Policy], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by River Thames and RCBO "in or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation"

and states that "[a] failure by [RCBO] to cooperate with [River Thames] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [River Thames Policy]."

xiv. River Thames reserves its rights "pursuant to the [River Thames Policy's] Other Insurance Condition."

xv. River Thames reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

311. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, River Thames has reserved its right to deny its defense and indemnity obligation under the River Thames Policy on the grounds that the River Thames Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the River Thames Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the River Thames Policy defines that term, within the River Thames Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the River Thames Covered Claims.

i. Claim 15 includes negligence allegations that RCBO "negligently supervised and/or retained ABUSER in positions of trust and authority as a priest" (¶ 49) and "failed to use reasonable care in protecting Plaintiff [] from Abuser's misconduct that created a risk of childhood sexual abuse, while Plaintiffs [] were involved in activities sponsored, supervised, organized or directed by [RCBO]" (¶ 53) and that such negligence caused the plaintiff bodily injury, including "suffer[ing] physical, mental and emotional health problems" (¶ 67).

ii. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk

of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

iv. Claim 204 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 66) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 49), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 69).

v. Claim 383 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical

manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

312. The remaining River Thames Covered Claims not listed in Paragraph 311 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the River Thames Policy defines that term.

313. As a further example, River Thames reserved its right to deny coverage under the River Thames Policy on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 314-315.

314. There is a substantial likelihood that the River Thames Covered Claims will exhaust the primary insurance underlying the River Thames Policy. The underlying Pacific Indemnity primary policy no. LAC 127792 has limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/63 Pacific Indemnity Policy"). There are at least 17 River Thames Covered Claims that trigger the coverage periods for the 3/12/62-10/25/63 Pacific Indemnity Policy and the River Thames Policy.

315. Data from past clergy sexual abuse cases indicate the River Thames Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/63 Pacific Indemnity Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, River Thames received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because River Thames is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the River Thames Policy, to resolve the River Thames Covered Claims and the claims falling within the River Thames coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on

a reasonable estimate of the value of the River Thames Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/63 Pacific Indemnity Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al., Superior Court of Los Angeles County, California*, Case No. BC615789 (jury awarded $8 million to survivor).

316. The asserted reservations of rights set forth in Paragraphs 309 and 310 do not provide River Thames valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the River Thames Covered Claims under the River Thames Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the River Thames Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the River Thames Policy has either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to River Thames either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with River Thames as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

317. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the River Thames Covered Claims up to the policy limits under the River Thames Policy. Upon information and belief, River Thames received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because River Thames is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

318. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and thereby River Thames has failed to provide the benefits of the River Thames Policy to RCBO.

319. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. Excess Insurance Co. thereby has failed to provide the benefits of the Excess Insurance Co. Policies to RCBO. The River Thames Policy provides coverage for, and does not exclude, the River Thames Covered Claims, and River Thames is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the River Thames Covered Claims.

320. The River Thames Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

321. An actual controversy of a justiciable nature presently exists between RCBO and River Thames concerning the proper construction of the River Thames Policy, whether River Thames's cited grounds for reservation of rights to deny defense and/or indemnity under the River Thames Policy are valid, whether there is any coverage for the River Thames Covered Claims under the River Thames Policy, whether River Thames is obligated to drop down to provide first-dollar coverage for the River Thames Covered Claims because the underlying primary insurance is exhausted, River Thames's and RCBO's respective rights and obligations under the River Thames Policy with respect to the River Thames Covered Claims, and whether River Thames should participate in settlement regarding the River Thames Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

322. RCBO is entitled to a declaratory judgment stating River Thames has issued the River Thames Policy to RCBO, the River Thames Policy covers the River Thames Covered Claims, and RCBO is entitled to both defense and indemnity regarding the River Thames Covered Claims under the River Thames Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the River Thames Policy as alleged in Paragraphs 314-315, and the requirement that River Thames drop down to provide defense and indemnity to RCBO regarding the River Thames Covered Claims.

## FOURTEENTH CAUSE OF ACTION

**(Declaratory Relief Against World Auxiliary - Excess)**

323. RCBO realleges and incorporates herein Paragraphs 1 through 322 of this Complaint as if

said Paragraphs were set forth in full.

324. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

325. An actual and justiciable controversy exists between RCBO and World Auxiliary with respect to whether World Auxiliary is obligated to provide RCBO with defense and indemnity under the World Auxiliary Policy regarding the subset of the Suits for which RCBO alleges World Auxiliary is obligated to provide RCBO with indemnity, as set forth in Paragraph 17 (the "World Auxiliary Covered Claims").

326. Pursuant to the terms of the World Auxiliary Policy, World Auxiliary is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the World Auxiliary Covered Claims.

327. RCBO has fully satisfied all conditions required under the World Auxiliary Policy, or is otherwise excused from doing so.

328. RCBO's broker and/or RCBO tendered the World Auxiliary Covered Claims to World Auxiliary on RCBO's behalf as set forth in Exhibit A.

329. World Auxiliary denied and/or failed to confirm it will defend and indemnify RCBO for the World Auxiliary Covered Claims.

330. World Auxiliary has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the World Auxiliary Policy that, in turn, will exhaust those policies and trigger World Auxiliary's obligation to provide the benefits of the World Auxiliary Policy to RCBO. Rather, World Auxiliary reserved its right to deny coverage on a number of bases.

331. World Auxiliary's reservation of rights includes World Auxiliary's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. World Auxiliary is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. World Auxiliary's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [World Auxiliary Policy]."

iv. "To the extent the [World Auxiliary Policy is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. World Auxiliary "reserve[s] all rights based upon the number and timing of occurrences. It is [World Auxiliary's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [World Auxiliary Policy]."

viii. World Auxiliary "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

332. In addition, World Auxiliary reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially

implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. World Auxiliary "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.' World Auxiliary thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [World Auxiliary] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [World Auxiliary Policy]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. World Auxiliary reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. World Auxiliary reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [World Auxiliary's] agent for notice of claims provided in the Policy Declarations."

x. World Auxiliary s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [World Auxiliary Policy], or for which

[RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by World Auxiliary and RCBO "in or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [World Auxiliary] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [World Auxiliary Policy]."

xiv. World Auxiliary reserves its rights "pursuant to the [World Auxiliary Policy's] Other Insurance Condition."

xv. World Auxiliary reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

333. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, World Auxiliary has reserved its right to deny its defense and indemnity obligation under the World Auxiliary Policy on the grounds that the World Auxiliary Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the World Auxiliary Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the World Auxiliary Policy defines that term, within the World Auxiliary Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the World Auxiliary Covered Claims.

i. Claim 15 includes negligence allegations that RCBO "negligently supervised and/or retained ABUSER in positions of trust and authority as a priest" (¶ 49) and "failed to use reasonable care in protecting Plaintiff [] from Abuser's misconduct that created a

risk of childhood sexual abuse, while Plaintiffs [] were involved in activities sponsored, supervised, organized or directed by [RCBO]" (¶ 53) and that such negligence caused the plaintiff bodily injury, including "suffer[ing] physical, mental and emotional health problems" (¶ 67).

ii. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

iv. Claim 204 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 66) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 49), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 69).

v. Claim 383 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE

PERPETRATOR was able to commit wrongful acts against the Plaintiff" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

334. The remaining World Auxiliary Covered Claims not listed in Paragraph 333 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the World Auxiliary Policy defines that term.

335. As a further example, World Auxiliary reserved its right to deny coverage under the World Auxiliary Policy on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 336-337.

336. There is a substantial likelihood that the World Auxiliary Covered Claims will exhaust the primary insurance underlying the World Auxiliary Policy. The underlying Pacific Indemnity primary policy no. LAC 127792 has limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/63 Pacific Indemnity Policy"). There are at least 17 World Auxiliary Covered Claims that trigger the coverage periods for the 3/12/62-10/25/63 Pacific Indemnity Policy and the World Auxiliary Policy.

337. Data from past clergy sexual abuse cases indicate the World Auxiliary Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/63 Pacific Indemnity Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a

letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, World Auxiliary received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because World Auxiliary is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the World Auxiliary Policy, to resolve the World Auxiliary Covered Claims and the claims falling within the World Auxiliary coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the World Auxiliary Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/63 Pacific Indemnity Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

338. The asserted reservations of rights set forth in Paragraphs 331 and 332 do not provide World Auxiliary valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the World Auxiliary Covered Claims under the World Auxiliary Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the World Auxiliary Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the World Auxiliary Policy have been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to World Auxiliary either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with World Auxiliary as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

339. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the World Auxiliary Covered

Claims up to the policy limits under the World Auxiliary Policy. Upon information and belief, World Auxiliary received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because World Auxiliary is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

340. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and thereby World Auxiliary has failed to provide the benefits of the World Auxiliary Policy to RCBO.

341. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. World Auxiliary thereby has failed to provide the benefits of the World Auxiliary Policy to RCBO. The World Auxiliary Policy provides coverage for, and does not exclude, the World Auxiliary Covered Claims, and World Auxiliary is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the World Auxiliary Covered Claims.

342. The World Auxiliary Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

343. An actual controversy of a justiciable nature presently exists between RCBO and World Auxiliary concerning the proper construction of the World Auxiliary Policy, whether World Auxiliary's cited grounds for reservation of rights to deny defense and/or indemnity under the World Auxiliary Policy are valid, whether there is any coverage for the World Auxiliary Covered Claims under the World Auxiliary Policy, whether World Auxiliary is obligated to drop down to provide first-dollar coverage for the World Auxiliary Covered Claims because the underlying primary insurance is exhausted, World Auxiliary's and RCBO's respective rights and obligations under the World Auxiliary Policy with respect to the World Auxiliary Covered Claims, and whether World Auxiliary should participate in settlement regarding the World Auxiliary Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

344. RCBO is entitled to a declaratory judgment stating World Auxiliary has issued the World Auxiliary Policy to RCBO, the World Auxiliary Policy covers the World Auxiliary Covered Claims, and RCBO is entitled to both defense and indemnity regarding the World Auxiliary Covered Claims under

the World Auxiliary Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the World Auxiliary Policy as alleged in Paragraphs 336-337, and the requirement that World Auxiliary drop down to provide defense and indemnity to RCBO regarding the World Auxiliary Covered Claims.

## FIFTEENTH CAUSE OF ACTION

**(Declaratory Relief Against Dominion - Excess)**

345. RCBO realleges and incorporates herein Paragraphs 1 through 344 of this Complaint as if said Paragraphs were set forth in full.

346. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

347. An actual and justiciable controversy exists between RCBO and Dominion with respect to whether Dominion is obligated to provide RCBO with defense and indemnity under the Dominion Policies regarding the subset of the Suits for which RCBO alleges Dominion is obligated to provide RCBO with indemnity, as set forth in Paragraph 16 (the "Dominion Covered Claims").

348. Pursuant to the terms of the Dominion Policies, Dominion is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Dominion Covered Claims.

349. RCBO has fully satisfied all conditions required under the Dominion Policies, or is otherwise excused from doing so.

350. RCBO's broker and/or RCBO tendered the Dominion Covered Claims to Dominion on RCBO's behalf as set forth in Exhibit A.

351. Dominion denied and/or failed to confirm it will defend and indemnify RCBO for the Dominion Covered Claims.

352. Dominion has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Dominion Policies that, in turn, will exhaust those policies and trigger Dominion's obligation to provide the benefits of the Dominion Policies to RCBO. Rather, Dominion reserved its right to deny coverage on a number of

bases.

353. Dominion's reservation of rights includes Dominion's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Dominion is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Dominion's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Dominion Policies]."

iv. "To the extent the [Dominion Policies is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Dominion "reserve[s] all rights based upon the number and timing of occurrences. It is [Dominion's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Dominion Policies]."

viii. Dominion "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

354. In addition, Dominion reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Dominion "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Dominion thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Dominion] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Dominion Policies]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Dominion reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Dominion reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the

respective policy 'as soon as practicable' to [Dominion's] agent for notice of claims provided in the Policy Declarations."

x. Dominion s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Dominion Policies], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Dominion and RCBO "in or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Dominion] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Dominion Policies]."

xiv. Dominion reserves its rights "pursuant to the [Dominion Policies'] Other Insurance Condition."

xv. Dominion reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

355. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Dominion has reserved its right to deny its defense and indemnity obligation under the Dominion Policies on the grounds that the Dominion Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Dominion Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Dominion Policies defines that term, within the Dominion Policies' coverage period (*see*

Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Dominion Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in

protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

356. The remaining Dominion Covered Claims not listed in Paragraph 355 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Dominion Policies defines that term.

357. As a further example, Dominion reserved its right to deny coverage under the Dominion Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraph 358-359.

358. There is a substantial likelihood that the Dominion Covered Claims will exhaust the primary insurance underlying the Dominion Policies. The underlying Pacific Indemnity primary policy nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). There are at least 38 Dominion Covered Claims that trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies and the Dominion Policies.

359. Data from past clergy sexual abuse cases indicate the Dominion Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies.

Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, Dominion received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Dominion is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the Dominion Policies, to resolve the Dominion Covered Claims and the claims falling within the Dominion coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Dominion Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

360. The asserted reservations of rights set forth in Paragraphs 353 and 354 do not provide Dominion valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Dominion Covered Claims under the Dominion Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Dominion Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Dominion Policies have been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Dominion either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Dominion as required under the

insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

361. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Dominion Covered Claims up to the policy limits under the Dominion Policies. Upon information and belief, Dominion received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Dominion is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

362. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and thereby Dominion has failed to provide the benefits of the Dominion Policies to RCBO.

363. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. Dominion thereby has failed to provide the benefits of the Dominion Policies to RCBO. The Dominion Policies provide coverage for, and do not exclude, the Dominion Covered Claims, and Dominion is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Dominion Covered Claims.

364. The Dominion Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

365. An actual controversy of a justiciable nature presently exists between RCBO and Dominion concerning the proper construction of the Dominion Policies, whether Dominion's cited grounds for reservation of rights to deny defense and/or indemnity under the Dominion Policies are valid, whether there is any coverage for the Dominion Covered Claims under the Dominion Policies, whether Dominion is obligated to drop down to provide first-dollar coverage for the Dominion Covered Claims because the underlying primary insurance is exhausted, Dominion's and RCBO's respective rights and obligations under the Dominion Policies with respect to the Dominion Covered Claims, and whether Dominion should participate in settlement regarding the Dominion Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

366. RCBO is entitled to a declaratory judgment stating Dominion has issued the Dominion Policies to RCBO, the Dominion Policies cover the Dominion Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Dominion Covered Claims under the Dominion Policies, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Dominion Policies as alleged in Paragraphs 358-359, and the requirement that Dominion drop down to provide defense and indemnity to RCBO regarding the Dominion Covered Claims.

**SIXTEENTH CAUSE OF ACTION**

**(Declaratory Relief Against English & American - Excess)**

367. RCBO realleges and incorporates herein Paragraphs 1 through 366 of this Complaint as if said Paragraphs were set forth in full.

368. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

369. An actual and justiciable controversy exists between RCBO and English & American with respect to whether English & American is obligated to provide RCBO with defense and indemnity under the English & American Policy regarding the subset of the Suits for which RCBO alleges English & American is obligated to provide RCBO with indemnity, as set forth in Paragraph 18 (the "English & American Covered Claims").

370. Pursuant to the terms of the English & American Policy, English & American is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the English & American Covered Claims.

371. RCBO has fully satisfied all conditions required under the English & American Policy, or is otherwise excused from doing so.

372. RCBO's broker and/or RCBO tendered the English & American Covered Claims to English & American on RCBO's behalf as set forth in Exhibit A.

373. English & American denied and/or failed to confirm it will defend and indemnify RCBO for the English & American Covered Claims.

374. English & American has not acknowledged that its insured, RCBO, faces covered claims

in excess of the limits of insurance available from the primary policies underlying the English & American Policy that, in turn, will exhaust those policies and trigger English & American's obligation to provide the benefits of the English & American Policy to RCBO. Rather, English & American reserved its right to deny coverage on a number of bases.

375. English & American's reservation of rights includes English & American's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. English & American is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. English & American's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [English & American Policy]."

iv. "To the extent the [English & American Policy is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. English & American "reserve[s] all rights based upon the number and timing of occurrences. It is [English & American's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [English & American Policy]."

viii. English & American "declines coverage to any alleged perpetrator of sexual assault,

or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

376. In addition, English & American reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. English & American "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" English & American thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [English & American] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [English & American Policy]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. English & American reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. English & American reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [English & American's] agent for notice of claims provided in the Policy Declarations."

x. English & American s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [English & American Policy], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by English & American and RCBO "in or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [English & American] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [English & American Policy]."

xiv. English & American reserves its rights "pursuant to the [English & American Policy's] Other Insurance Condition."

xv. English & American reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

377. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, English & American has reserved its right to deny its defense and indemnity obligation under the English & American Policy on the grounds that the English & American Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that

conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the English & American Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the English & American Policy defines that term, within the English & American Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the English & American Covered Claims.

i. Claim 15 includes negligence allegations that RCBO "negligently supervised and/or retained ABUSER in positions of trust and authority as a priest" (¶ 49) and "failed to use reasonable care in protecting Plaintiff [] from Abuser's misconduct that created a risk of childhood sexual abuse, while Plaintiffs [] were involved in activities sponsored, supervised, organized or directed by [RCBO]" (¶ 53) and that such negligence caused the plaintiff bodily injury, including "suffer[ing] physical, mental and emotional health problems" (¶ 67).

ii. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

iv. Claim 204 includes negligence allegations that RCBO "negligently failed to properly

and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 66) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 49), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 69).

v. Claim 383 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

378. The remaining English & American Covered Claims not listed in Paragraph 377 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the English & American Policy defines that term.

379. As a further example, English & American reserved its right to deny coverage under the English & American Policy on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 380-381.

380. There is a substantial likelihood that the English & American Covered Claims will exhaust the primary insurance underlying the English & American Policy. The underlying Pacific

Indemnity primary policy no. LAC 127792 has limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/63 Pacific Indemnity Policy"). There are at least 17 English & American Covered Claims that trigger the coverage periods for the 3/12/62-10/25/63 Pacific Indemnity Policy and the English & American Policy.

381. Data from past clergy sexual abuse cases indicate the English & American Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/63 Pacific Indemnity Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, English & American received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because English & American was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the English & American Policy, to resolve the English & American Covered Claims and the claims falling within the English & American coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the English & American Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/63 Pacific Indemnity Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

382. The asserted reservations of rights set forth in Paragraphs 375 and 376 do not provide English & American valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the English & American Covered Claims under the English & American Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO

resulting in claimed "bodily injury" as defined in the insurance and thus the English & American Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the English & American Policy have been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to English & American either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with English & American as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

383. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the English & American Covered Claims up to the policy limits under the English & American Policy. Upon information and belief, English & American received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because English & American was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

384. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and thereby English & American has failed to provide the benefits of the English & American Policy to RCBO.

385. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. English & American thereby has failed to provide the benefits of the English & American Policy to RCBO. The English & American Policy provides coverage for, and does not exclude, the English & American Covered Claims, and English & American is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the English & American Covered Claims.

386. The English & American Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

387. An actual controversy of a justiciable nature presently exists between RCBO and English & American concerning the proper construction of the English & American Policy, whether English &

American's cited grounds for reservation of rights to deny defense and/or indemnity under the English & American Policy are valid, whether there is any coverage for the English & American Covered Claims under the English & American Policy, whether English & American is obligated to drop down to provide first-dollar coverage for the English & American Covered Claims because the underlying primary insurance is exhausted, English & American's and RCBO's respective rights and obligations under the English & American Policy with respect to the English & American Covered Claims, and whether English & American should participate in settlement regarding the English & American Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

388. RCBO is entitled to a declaratory judgment stating English & American has issued the English & American Policy to RCBO, the English & American Policy covers the English & American Covered Claims, and RCBO is entitled to both defense and indemnity regarding the English & American Covered Claims under the English & American Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the English & American Policy as alleged in Paragraphs 380-381, and the requirement that English & American drop down to provide defense and indemnity to RCBO regarding the English & American Covered Claims.

**SEVENTEENTH CAUSE OF ACTION**

**(Declaratory Relief Against Westport - Umbrella)**

389. RCBO realleges and incorporates herein Paragraphs 1 through 388 of this Complaint as if said Paragraphs were set forth in full.

390. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

391. An actual and justiciable controversy exists between RCBO and Westport with respect to whether Westport is obligated to provide RCBO with defense and indemnity under the Westport Umbrella Policy regarding the subset of the Suits for which RCBO alleges Westport is obligated to provide RCBO with indemnity, as set forth in Paragraph 21 (the "Westport Umbrella Covered Claims").

392. Pursuant to the terms of the Westport Umbrella Policy, Westport is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes

obligated to pay, through judgment, settlement, or otherwise, arising out of the Westport Umbrella Covered Claims.

393. RCBO has fully satisfied all conditions required under the Westport Umbrella Policy, or is otherwise excused from doing so.

394. RCBO's broker and/or RCBO tendered the Westport Umbrella Covered Claims to Westport on RCBO's behalf as set forth in Exhibit A.

395. Westport denied and/or failed to confirm it will defend or indemnify RCBO for the Westport Umbrella Covered Claims.

396. Westport has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Westport Umbrella Policy that, in turn, will exhaust those policies and trigger Westport's obligation to provide the benefits of the Westport Umbrella Policy to RCBO. Rather, Westport reserved its right to deny coverage on a number of bases.

397. Westport's reservation of rights includes Westport's position that it may deny coverage based on:

i. Westport's contention that "there is no indication that the limits underlying the [Westport Umbrella Policy] have been exhausted in accordance with the terms of the policies, Westport would have no immediate potential coverage obligations,"

ii. "Whether the claim referenced above falls within the policy period, limits, and scope of insurance afforded under the referenced [Westport Umbrella Policy] and/or policy(ies) to which the [Westport Umbrella Policy] may follow form, in whole or in part,"

iii. "Whether the applicable limits of all applicable underlying policies of insurance have in fact been exhausted in accordance with the [Westport Umbrella Policy's] terms,"

iv. "Whether any applicable policy exclusions limit or preclude coverage for the claim at issue, in whole or in part,"

v. "Whether the insured has complied with its duties under the [Westport Umbrella Policy], including but not limited to 'notice' and 'cooperation' obligations, and, if

not, whether any such failure limits or precludes coverage for the claim at issue, in whole or in part,"

vi. "Whether any applicable policy conditions limit or preclude coverage for the claims at issue, in whole or in part,"

vii. "Whether Westport's obligations, if any, are limited or precluded due to prior impairment or exhaustion of limits, settlements, releases or other agreements, or are prohibited by law, statute and/or public policy,"

viii. Westport's purported "right to assert any additional defenses that might apply by operation of law or otherwise, including but not limited to defenses that may be asserted by the insurers who issued insurance policies with limits underlying the limits of the [Westport Umbrella Policy] denies coverage for any enhanced damages based on the defendants' willful and malicious conduct."

398. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Westport has reserved its right to deny its defense and indemnity obligation under the Westport Umbrella Policy on the grounds that "any applicable policy exclusions limit or preclude coverage for the [the Westport Umbrella Covered Claims] at issue, in whole or in part." Such reservation of rights as to defense and/or indemnity does not apply because the Westport Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Westport Umbrella Policy defines that term, within the Westport Umbrella Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Westport Umbrella Covered Claims.

i. Claim 13 includes negligence allegations that RCBO "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by [] and [], including but not limited to preventing or avoiding placement of [] and [] in a function or environment in which contact with children is an inherent aspect of that function or environment" (¶ 38) and "negligently failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from [] and []'s misconduct that created a risk of childhood sexual abuse,

while Plaintiff [], a minor, was involved in activities sponsored, supervised, organized, or directed by [RCBO] or their agents and employees" (¶ 47) and that as a result of such negligence the plaintiff "suffered economic, physical, psychological and emotional harm" (¶ 41).

ii. Claim 140 includes negligence allegations that RCBO was "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 46) and that RCBO "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRATOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. Defendants further failed to take reasonable measures to prevent the childhood sexual assault, molestation and harassment of minors, including Plaintiff" (¶ 49), and that as a result of such negligence plaintiff "suffered and will continue to suffer physical, psychological, emotional and economic harm" (¶ 47).

iii. Claim 323 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [RCBO] failed to provide reasonable supervision of the DOE PERPETRATOR. [RCBO]further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff" (¶ 44), and that as a result of such negligence plaintiff "suffered the physical injury of sexual assault" (¶ 75).

iv. Claim 310 includes negligence allegations that RCBO "failed to provide reasonable supervision of the Perpetrator, failed to use reasonable care in investigating the Perpetrator, and failed to provide adequate warning to Plaintiff and Plaintiff's family of the Perpetrator's dangerous propensities and unfitness. Defendants further failed to

take reasonable measures to prevent future sexual abuse" (¶ 23) and that RCBO "breached [its] duty to take reasonable protective measures to protect Plaintiff and other minor parishioners and/or students from the risk of childhood sexual abuse by the Perpetrator, or others, by failing to warn, train, or educate Plaintiff, Plaintiff's parents or guardians, and Defendants' employees, volunteers, representatives and/or agents about how to avoid, rebuff, minimize or respond to such a risk; by failing to warn, train, or educate Plaintiff, Plaintiff's parents or guardians, and Defendants' employees, volunteers, representatives and/or agents about how to report inappropriate or suspicious behaviors to law enforcement or others of Defendants' agents; by failing to train or educate Defendants' employees, volunteers, representatives and/or agents about their mandatory reporting obligations pursuant to California Penal Code § 11164, et seq.; and by failing to promulgate or enforce those rules necessary to protect Plaintiff and other minor students or minor parishioners from the foreseeable risk of child sexual assault within Defendants' programs or on their premises" (¶ 31), and that as a result of such negligence plaintiff "suffered, and continues to suffer physical injury" (¶ 24).

v. Claim 388 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and that RCBO "failed to provide reasonable supervision of the DOE PERPETRATOR, failed to use reasonable care in investigating the DOE PERPETRATOR and failed to provide adequate warning to Plaintiff of the DOE PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent sexual assault, harassment, and molestation of children, including Plaintiff" (¶ 78), and that as a result of such negligence plaintiff "suffered the physical injury of sexual assault" (¶ 75).

399. The remaining Westport Umbrella Covered Claims not listed in Paragraph 398 likewise

include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Westport Umbrella Policy defines that term.

400. As a further example, Westport reserved its right to deny coverage under the Westport Umbrella Policy on the ground that "there is no indication that the limits underlying the [Westport Umbrella Policy] have been exhausted in accordance with the terms of the policies, Westport would have no immediate potential coverage obligations." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 401-402.

401. There is a substantial likelihood that the Westport Umbrella Covered Claims will exhaust the primary insurance underlying the Westport Umbrella Policy. The underlying Commercial Union primary policy no. CF 9334-008 has limits of $300,000 per occurrence and $300,000 in aggregate (the "10/26/74-12/01/75 Commercial Union Policy"). The underlying Travelers primary policy no. 05 AL 802025 CMA has limits of $300,000 per occurrence and $300,000 in aggregate during the policy year 12/01/75-12/01/76 and $500,000 CSL during the policy year 12/01/76-12/01/77 (the "12/01/75-12/01/77 Travelers Policy"). The underlying CNA excess policy no. RDU 146 74 50 has a limit of $1,000,000 in the aggregate (the "10/26/74-12/01/77 CNA Policy"). There are at least 15 Westport Umbrella Covered Claims that trigger the coverage periods for the 10/26/74-12/01/75 Commercial Union Policy, the 12/01/75-12/01/77 Travelers Policy, the 10/26/74-12/01/77 CNA Policy, and the Westport Umbrella Policy.

402. Data from past clergy sexual abuse cases indicate the Westport Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/74-12/01/75 Commercial Union Policy, the 12/01/75-12/01/77 Travelers Policy and the 10/26/74-12/01/77 CNA Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent the UCC Westport Demand Letter on July 3, 2024, demanding Westport pay the UCC Westport Demand Amount, a sum of $308.9 million, which is

within the policy limits of the Westport Excess Policy and Westport Umbrella Policy, to resolve the Westport Excess Covered Claims and the Westport Umbrella Covered Claims alleged against RCBO. The UCC based the UCC Westport Demand Amount on its reasonable estimate of the value of the Westport Excess Covered Claims and Westport Umbrella Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Westport Excess Covered Claims and Westport Umbrella Covered Claims will exhaust the 10/26/74-12/01/75 Commercial Union Policy, the 12/01/75-12/01/77 Travelers Policy and the 10/26/74-12/01/77 CNA Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

403. Moreover, Westport must drop down and provide first-dollar coverage of the Westport Umbrella Covered Claims under the Westport Umbrella Policy because the underlying primary insurer Commercial Union is insolvent.

404. The asserted reservations of rights set forth in Paragraph 397 do not provide Westport valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Westport Umbrella Covered Claims under the Westport Umbrella Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Westport Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Westport Policies have been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Westport as required under the insurance, including providing notice of the claims, providing the status of the matters and providing requested materials.

405. RCBO sent Westport a letter on May 30, 2024, demanding Westport indemnify RCBO for the Westport Umbrella Covered Claims up to the policy limits under the Westport Umbrella Policy ("the Westport Umbrella Policy Limits Letter").

406. Westport failed to respond to the Westport Umbrella Policy Limits Letters confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the Westport Umbrella Policy to RCBO.

407. On August 6, 2024, Westport responded to the UCC Westport Demand Letter declining to indemnify RCBO, and thereby has failed to provide the benefits of the Westport Umbrella Policy to RCBO.

408. The Westport Umbrella Policy provides coverage for, and does not exclude, the Westport Umbrella Covered Claims, and Westport is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Westport Umbrella Covered Claims.

409. The Westport Umbrella Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

410. An actual controversy of a justiciable nature presently exists between RCBO and Westport concerning the proper construction of the Westport Umbrella Policy, whether Westport's cited grounds for reservation of rights to deny defense and/or indemnity under the Westport Umbrella Policy are valid, whether there is any coverage for the Westport Umbrella Covered Claims under the Westport Umbrella Policy, whether Westport is obligated to drop down to provide first-dollar coverage for the Westport Umbrella Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, Westport's and RCBO's respective rights and obligations under the Westport Umbrella Policy with respect to the Westport Umbrella Covered Claims, and whether Westport should participate in settlement regarding the Westport Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

411. RCBO is entitled to a declaratory judgment stating Westport has issued the Westport Policies to RCBO, the Westport Umbrella Policy covers the Westport Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Westport Umbrella Covered Claims under the Westport Umbrella Policy, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Westport Umbrella Policy as alleged in Paragraph 401-402, and the requirement that Westport drop down to provide defense and indemnity to RCBO regarding the Westport Umbrella Covered Claims.

**EIGHTEENTH CAUSE OF ACTION**

**(Declaratory Relief Against Travelers - Umbrella)**

412. RCBO realleges and incorporates herein Paragraphs 1 through 411 of this Complaint as if said Paragraphs were set forth in full.

413. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

414. An actual and justiciable controversy exists between RCBO and Travelers with respect to whether Travelers is obligated to provide RCBO with defense and indemnity under the Travelers Umbrella Policies regarding the subset of the Suits for which RCBO alleges Travelers is obligated to provide RCBO with indemnity, as set forth in Paragraph 22 (the "Travelers Umbrella Covered Claims").

415. Pursuant to the terms of the Travelers Umbrella Policies, Travelers is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Travelers Umbrella Covered Claims.

416. RCBO has fully satisfied all conditions required under the Travelers Umbrella Policies, or is otherwise excused from doing so.

417. RCBO's broker and/or RCBO tendered the Travelers Umbrella Covered Claims to Travelers on RCBO's behalf as set forth in Exhibit A.

418. Travelers denied and/or failed to confirm it will defend or indemnify RCBO for the Travelers Umbrella Covered Claims.

419. Travelers has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Travelers Umbrella Policies that, in turn, will exhaust those policies and trigger Travelers' obligation to provide the benefits of the Travelers Umbrella Policies to RCBO. Rather, Travelers reserved its right to deny coverage on a number of bases.

420. Travelers' reservation of rights with respect to the Travelers Umbrella Policies includes Travelers' position that it may deny coverage on the basis that:

i. "Travelers reserves the right to assert that it has no, and can have no, duty to defend the RCBO under the Travelers Excess Policies and has no, and can have no,

obligation to reimburse the RCBO with respect to defense and/or investigation costs incurred by the RCBO,"

ii. "Travelers reserves the right to assert that it has no obligation to indemnify the RCBO pursuant to the Travelers Excess Policies for amounts that do not qualify as 'EXCESS NET LOSS,' as defined by the [Travelers Umbrella Policies],"

iii. "Travelers reserves the right to assert that the [Travelers Umbrella Policies] do not attach unless and until the RCBO becomes liable for damages with respect to a single accident or occurrence that results in an allocation of loss in excess of the total of the limits of the underlying policies,"

iv. "Travelers reserves the right to assert that it has no obligation to indemnify the RCBO with respect to a matter until the amount of the RCBO's obligation to pay has been finally determined either by judgment against the RCBO after actual trial or by written agreement of the RCBO, the claimant and Travelers,"

v. "Travelers reserves the right with respect to a matter to assert that the RCBO released Travelers pursuant to [a certain s]ettlement [a]greement from any liability in connection with that matter and the claims asserted by that [c]laimant,"

vi. Travelers may "rely on any policy provision that may be subsequently found to limit or preclude coverage,"

vii. Travelers may "initiate a declaratory relief action in order that it may have its coverage obligations, if any, to the RCBO in connection with a matter judicially determined."

421. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Travelers has reserved its right to deny its defense and indemnity obligation under the Travelers Umbrella Policies on the grounds that it may "rely on any policy provision that may be subsequently found to limit or preclude coverage." Such reservation of rights as to defense and/or indemnity does not apply because the Travelers Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Travelers Umbrella Policies define that term, within the Travelers Umbrella Policies'

coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Travelers Umbrella Covered Claims.

i. Claim 10 includes negligence allegations that RCBO "[was] negligent in the hiring, retention, control, and supervision, of PERPETRATOR" (¶ 14) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 14), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 15).

ii. Claim 21 includes negligence allegations that RCBO "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 51) and "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRTOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent the childhood sexual assault, abuse, and harassment of minor children, including Plaintiff" (¶ 54), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical, psychological, emotional, and economic harm" (¶ 52).

iii. Claim 29 includes negligence allegations that RCBO "[was] at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 9) and "[was] further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 9), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 10).

iv. Claim 33 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff"

(¶ 9) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 9), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 10).

v. Claim 35 includes negligence allegations that RCBO "[w]as] negligent in the hiring, retention, control, and supervision of PERPETRATOR" (¶ 9) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities and while PERPETRATOR was engaged in his duties and responsibilities of outreach as a Priest" (¶ 9), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 10).

422. The remaining Travelers Umbrella Covered Claims not listed in Paragraph 421 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Travelers Umbrella Policies define that term.

423. As a further example, Travelers reserved its right to deny coverage under the Travelers Umbrella Policies on the ground that "do not attach unless and until the RCBO becomes liable for damages with respect to a single accident or occurrence that results in an allocation of loss in excess of the total of the limits of the underlying policies" and "to assert that it has no obligation to indemnify the RCBO with respect to a matter until the amount of the RCBO's obligation to pay has been finally determined either by judgment against the RCBO after actual trial or by written agreement of the RCBO, the claimant and Travelers." These reservations of rights as to defense and/or indemnity do not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 424-425.

424. There is a substantial likelihood that the Travelers Umbrella Covered Claims will exhaust the primary insurance underlying the Travelers Umbrella Policies. The underlying Travelers Primary policies nos. 05 AL 802025 CMA, 05 SM 90296 FCA, 05 SM 99094, and 05 SM 107459 FCA have limits of $1,000,000 CSL (the "12/01/77-12/01/81 Travelers Primary Policies"). The underlying CNA

excess policy no. UMB 006 46 71 53 has limits of $5,000,000 in aggregate (the "12/1/77-12/1/80 CNA Policy"). The underlying Westchester excess policy no. JU 8312510 has limits of $5,000,000 in aggregate (the "12/1/80-12/1/81 Westchester Policy"). There are at least 100 Travelers Umbrella Covered Claims that trigger the coverage periods for the 12/01/77-12/01/81 Travelers Primary Policies, the 12/1/77-12/1/80 CNA Policy, the 12/1/80-12/1/81 Westchester Policy and the Travelers Umbrella Policies.

425. Data from past clergy sexual abuse cases indicate the Travelers Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 12/01/77-12/01/81 Travelers Primary Policies, the 12/1/77-12/1/80 CNA Policy and the 12/1/80-12/1/81 Westchester Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Travelers the UCC Travelers Demand Letter on July 3, 2024, demanding Travelers pay a sum of $149.9 million (the "UCC Travelers Demand Amount"), which is within the policy limits of the Travelers Primary Policies and the Travelers Umbrella Policies, to resolve the Travelers Excess Covered Claims and the Travelers Umbrella Covered Claims alleged against RCBO. The UCC based the UCC Travelers Demand Amount on its reasonable estimate of the value of the Travelers Excess Covered Claims and Travelers Umbrella Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Travelers Umbrella Covered Claims will exhaust the 12/01/77-12/01/81 Travelers Primary Policies, the 12/1/77-12/1/80 CNA Policy and the 12/1/80-12/1/81 Westchester Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

426. The asserted reservations of rights set forth in Paragraph 420 do not provide Travelers valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Travelers Umbrella Covered Claims under the Travelers Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in

claimed "bodily injury" as defined in the insurance and thus the Travelers Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Travelers Policies have been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Travelers as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

427. RCBO sent Travelers a letter on May 30, 2024, demanding Travelers indemnify RCBO for the Travelers Umbrella Covered Claims up to the policy limits under the Travelers Umbrella Policies (the "Travelers Umbrella Policy Limits Letter").

428. Travelers failed to respond to the Travelers Umbrella Policy Limits Letter confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the Travelers Umbrella Policies to RCBO.

429. On August 6, 2024, Travelers responded to the UCC Travelers Demand Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the Travelers Umbrella Policies to RCBO.

430. The Travelers Umbrella Policies provide coverage for, and do not exclude, the Travelers Umbrella Covered Claims, and Travelers is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Travelers Umbrella Covered Claims.

431. The Travelers Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

432. An actual controversy of a justiciable nature presently exists between RCBO and Travelers concerning the proper construction of the Travelers Umbrella Policies, whether Travelers' cited grounds for reservation of rights to deny defense and/or indemnity under the Travelers Umbrella Policies are valid, whether there is any coverage for the Travelers Umbrella Covered Claims under the Travelers Umbrella Policies, whether Travelers is obligated to drop down to provide first-dollar coverage for the Travelers Umbrella Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, Travelers' and RCBO's respective rights and obligations under the Travelers Umbrella Policies with respect to the Travelers Umbrella

Covered Claims, and whether Travelers should participate in settlement regarding the Travelers Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

433. RCBO is entitled to a declaratory judgment stating Travelers has issued the Travelers Policies to RCBO, the Travelers Umbrella Policies cover the Travelers Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Travelers Umbrella Covered Claims under the Travelers Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Travelers Umbrella Policies as alleged in Paragraphs 422-423, and the requirement that Travelers drop down to provide defense and indemnity to RCBO regarding the Travelers Umbrella Covered Claims.

**NINETEENTH CAUSE OF ACTION**

**(Declaratory Relief Against Pacific Employers - Umbrella)**

434. RCBO realleges and incorporates herein Paragraphs 1 through 433 of this Complaint as if said Paragraphs were set forth in full.

435. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

436. An actual and justiciable controversy exists between RCBO and Pacific Employers with respect to whether Pacific Employers is obligated to provide RCBO indemnity under the Pacific Employers Policy regarding the subset of the Suits for which RCBO alleges Pacific Employers is obligated to provide RCBO with indemnity, as set forth in Paragraph 23 (the "Pacific Employers Covered Claims").

437. Pursuant to the terms of the Pacific Employers Policy, Pacific Employers is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Pacific Employers Covered Claims.

438. RCBO has fully satisfied all conditions required under the Pacific Employers Policy, or is otherwise excused from doing so.

439. RCBO's broker and/or RCBO tendered the Pacific Employers Covered Claims to Pacific

Employers on RCBO's behalf as set forth in Exhibit A.

440. Pacific Employers agreed to provide defense to RCBO for certain of the Pacific Employers Covered Claims. However, Pacific Employers denied and/or failed to confirm it will indemnify RCBO for the Pacific Employers Covered Claims.

441. Pacific Employers has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Pacific Employers Policy that, in turn, will exhaust those policies and trigger Pacific Employers' obligation to provide the benefits of the Pacific Employers Policy to RCBO. Rather, Pacific Employers reserved its right to deny coverage on a number of bases.

442. Pacific Employers' reservation of rights includes Pacific Employers' position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the [Pacific Employers Policy]."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. "[The Pacific Employers Policy] may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

iv. RCBO "has not met its burden in establishing that the limits of all underlying insurance, including any self-insured periods, have been properly and completely exhausted."

443. In addition, Pacific Employers reserved further rights to deny coverage as follows:

i. The right "to decline coverage on the basis that the [Employers] Policy is lost or otherwise missing."

ii. Employers "reserves its rights to the extent the [Employers] Policy is exhausted and [it has] no further defense or indemnity obligations under [Employers] Policy."

iii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iv. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to

the effective date of the settlement agreement, [Pacific Employers] reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

444. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Pacific Employers has reserved its right to "assert any applicable coverage defense in the future." Such reservation of rights as to defense and/or indemnity does not apply because the Pacific Employers Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Pacific Employers Policy defines that term, within the Pacific Employers Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Pacific Employers Covered Claims.

i. Claim 51 includes negligence allegations that RCBO "negligently failed to supervise DOE 5 in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 72) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 54), and that such negligence caused the plaintiff bodily injury, including "personal physical injury as well as great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life." (¶ 77).

ii. Claim 118 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATORS in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault, and severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 81).

iii. Claim 127 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 88).

iv. Claim 130 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 88).

v. Claim 171 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "suffer the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 88).

445. The remaining Pacific Employers Covered Claims not listed in Paragraph 444 likewise

include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Pacific Employers Policy defines that term.

446. Further, Pacific Employers denied coverage under the Pacific Employers Policy on the basis that the underlying insurance has not been exhausted. This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 445-446.

447. There is a substantial likelihood that the Pacific Employers Covered Claims will exhaust the primary insurance underlying the Pacific Employers Policy. The underlying Centennial primary policy no. 287-00-46-36 has a limit of $1,000,000 in aggregate (the "12/01/84-12/01/85 Centennial Primary Policy"). The underlying Centennial excess policy no. 287-00-46-36 has a limit of $15,000,000 in aggregate (the "12/01/84-12/01/85 Centennial Excess Policy"). Centennial Insurance Company, which issued the 12/01/84-12/01/85 Centennial Primary Policy and the 12/01/84-12/01/85 Centennial Excess Policy, is in liquidation. The underlying Travelers umbrella policy no. 005 FF 1390 BCA has a limit of $10,000,000 in aggregate (the "12/01/84-12/01/85 Travelers Umbrella Policy"). There are at least 18 Pacific Employers Covered Claims that trigger the coverage periods for the 12/01/84-12/01/85 Centennial Primary Policy, the 12/01/84-12/01/85 Centennial Excess Policy, the 12/01/84-12/01/85 Travelers Umbrella Policy, and the Pacific Employers Policy.

448. Data from past clergy sexual abuse cases indicate the Pacific Employers Covered Claims will far exceed the aggregate limits of the 12/01/84-12/01/85 Centennial Primary Policy, the 12/01/84-12/01/85 Centennial Excess Policy, and the 12/01/84-12/01/85 Travelers Umbrella Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Chubb the UCC Chubb Demand Letter on July 3, 2024, demanding they pay the UCC Chubb Demand Amount, a sum of $219.2 million, which is within the policy limits of the Chubb Policies, including the Pacific Employers Policy, to resolve the Pacific Employers Covered Claims alleged against RCBO. The UCC based the UCC Chubb Demand

Amount on its reasonable estimate of the value of the claims covered by the Chubb policies, including the Pacific Employers Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Pacific Employers Covered Claims will exhaust the underlying primary and excess policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

449. Moreover, Pacific Employers must drop down and provide first-dollar coverage of the Pacific Employers Covered Claims under the Pacific Employers Policy because the underlying primary and excess insurer, Centennial, is insolvent.

450. The asserted reservations of rights set forth in Paragraphs 442 and 443 do not provide Pacific Employers valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Pacific Employers Covered Claims under the Pacific Employers Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Pacific Employers Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Pacific Employers Policies have been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Pacific Employers as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

451. RCBO sent Pacific Employers a letter on May 30, 2024, demanding Pacific Employers indemnify RCBO for the Pacific Employers Covered Claims up to the policy limits under the Pacific Employers Policy (the "Pacific Employers Policy Limits Letter").

452. Pacific Employers failed to respond to the Pacific Employers Policy Limits Letter confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the Pacific Employers Policy to RCBO.

453. On August 6, 2024, Pacific Employers responded to the UCC Chubb Demand Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of

the Pacific Employers Policy to RCBO.

454. The Pacific Employers Policy provides coverage for, and does not exclude, the Pacific Employers Covered Claims, and Pacific Employers is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Pacific Employers Covered Claims.

455. The Pacific Employers Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

456. An actual controversy of a justiciable nature presently exists between RCBO and Pacific Employers concerning the proper construction of the Pacific Employers Policy, whether Pacific Employers' cited grounds for reservation of rights to deny defense and/or indemnity under the Pacific Employers Policy are valid, whether there is any coverage for the Pacific Employers Covered Claims under the Pacific Employers Policy, whether Pacific Employers is obligated to drop down to provide first-dollar coverage for the Pacific Employers Covered Claims because the underlying primary insurance is exhausted, Pacific Employers' and RCBO's respective rights and obligations under the Pacific Employers Policy with respect to Pacific Employers Covered Claims, and whether Pacific Employers should participate in settlement regarding the Pacific Employers Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

457. RCBO is entitled to a declaratory judgment stating Pacific Employers has issued the Pacific Employers Policy to RCBO, the Pacific Employers Policy covers the Pacific Employers Covered Claims, and RCBO is entitled to both full defense and indemnity regarding the Pacific Employers Covered Claims under the Pacific Employers Policy, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Pacific Employers Policy as alleged in Paragraphs 447-448, and the requirement that Pacific Employers drop down to provide defense and indemnity to RCBO regarding the Pacific Employers Covered Claims.

**<u>TWENTIETH CAUSE OF ACTION</u>**

**(Declaratory Relief Against Lloyd's - Umbrella)**

458. RCBO realleges and incorporates herein Paragraphs 1 through 457 of this Complaint as if said Paragraphs were set forth in full.

459. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

460. An actual and justiciable controversy exists between RCBO and Lloyd's Umbrella with respect to whether Lloyd's Umbrella is obligated to provide RCBO with defense and indemnity under the Lloyd's Umbrella Policies regarding the subset of the Suits for which RCBO alleges Lloyd's Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph 29 (the "Lloyd's Umbrella Covered Claims").

461. Pursuant to the terms of the Lloyd's Umbrella Policies, Lloyd's Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Lloyd's Umbrella Covered Claims.

462. RCBO has fully satisfied all conditions required under the Lloyd's Umbrella Policies, or is otherwise excused from doing so.

463. RCBO's broker and/or RCBO tendered the Lloyd's Umbrella Covered Claims to Lloyd's Umbrella on RCBO's behalf as set forth in Exhibit A.

464. Lloyd's Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the Lloyd's Umbrella Covered Claims.

465. Lloyd's Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Lloyd's Umbrella Policies that, in turn, will exhaust those policies and trigger Lloyd's Umbrella's obligation to provide the benefits of the Lloyd's Umbrella Policies to RCBO. Rather, Lloyd's Umbrella reserved its right to deny coverage on a number of bases.

466. Lloyd's Umbrella's reservation of rights includes Lloyd's Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Lloyd's is "obligated to indemnify only for covered loss and expense in excess of the

limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Lloyd's' coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Lloyd's] Policies."

iv. "To the extent the [Lloyd's] Second Excess Umbrella Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Lloyd's "reserve[s] all rights based upon the number and timing of occurrences. It is [Lloyd's'] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Lloyd's] Policies."

viii. Lloyd's "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

467. In addition, Lloyd's Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the

alleged sexual abuse."

iii. Lloyd's "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Lloyd's thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Lloyd's] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Lloyd's] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Lloyd's reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Lloyd's reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Lloyd's'] agent for notice of claims provided in the Policy Declarations."

x. Lloyd's reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Lloyd's] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Lloyd's and RCBO "in or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Lloyd's] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Lloyd's] Policies."

xiv. Lloyd's reserves its rights "pursuant to the [Lloyd's] Policies' Other Insurance Condition."

xv. Lloyd's reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

468. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Lloyd's Umbrella has reserved its right to deny its defense and indemnity obligation under the Lloyd's Umbrella Policies on the grounds that the Lloyd's Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Lloyd's Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Lloyd's Umbrella Policies define that term, within the Lloyd's Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Lloyd's Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury,

including “the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life” (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO “negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR’s misconduct that created a risk of childhood sexual assault” (¶ 61) and “failed to take reasonable steps or implement reasonable safeguards for Plaintiff’s protection” (¶ 44), and that such negligence caused the plaintiff bodily injury, including “physical, psychological, emotional and economic harm” (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO “negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR’s misconduct that created a risk of childhood sexual assault” (¶ 65) and “failed to take reasonable steps or implement reasonable safeguards for Plaintiff’s protection” (¶ 48), and that such negligence caused the plaintiff bodily injury, including “physical, psychological, emotional and economic harm” (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO “negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR’s misconduct that created a risk of childhood sexual assault” (¶ 61) and “failed to take reasonable steps or implement reasonable safeguards for Plaintiff’s protection” (¶ 44), and that such negligence caused the plaintiff bodily injury, including “physical, psychological, emotional and economic harm” (¶ 45).

v. Claim 187 includes negligence allegations that RCBO “negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in

protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

469. The remaining Lloyd's Umbrella Covered Claims not listed in Paragraph 468 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Lloyd's Umbrella Policies define that term.

470. As a further example, Lloyd's Umbrella reserved its right to deny coverage under the Lloyd's Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 471-472.

471. There is a substantial likelihood that the Lloyd's Umbrella Covered Claims will exhaust the primary insurance underlying the Lloyd's Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 Lloyd's Umbrella Covered Claims that trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, 3/12/62-10/25/66 Lloyd's Excess Policies and the Lloyd's Umbrella Policies.

472. Data from past clergy sexual abuse cases indicate the Lloyd's Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Lloyd's Umbrella the UCC Lloyd's Demand Letter on July 3, 2024,

demanding Lloyd's Umbrella pay the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the Lloyd's Excess Policies and the Lloyd's Umbrella Policies, to resolve the Lloyd's Umbrella Covered Claims and the claims falling within the Lloyd's Umbrella Policies coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Lloyd's Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

473. The asserted reservations of rights set forth in Paragraphs 466 and 467 do not provide Lloyd's Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Lloyd's Umbrella Covered Claims under the Lloyd's Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Lloyd's Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Lloyd's Umbrella Policies have been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Lloyd's Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Lloyd's Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

474. RCBO sent Lloyd's Umbrella a letter on May 30, 2024, demanding Lloyd's Umbrella indemnify RCBO for the Lloyd's Umbrella Covered Claims up to the policy limits under the Lloyd's Umbrella Policies (the "Lloyd's Umbrella Policy Limits Letter").

475. On July 1, 2024, Lloyd's Umbrella responded to the Lloyd's Umbrella Policy Limits

Letter and declined to indemnify RCBO, and thereby has failed to provide the benefits of the Lloyd's Umbrella Policies to RCBO.

476. On August 6, 2024, Lloyd's Umbrella responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the Lloyd's Umbrella Policies to RCBO.

477. The Lloyd's Umbrella Policies provide coverage for, and do not exclude, the Lloyd's Umbrella Covered Claims, and Lloyd's Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Lloyd's Umbrella Covered Claims.

478. The Lloyd's Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

479. An actual controversy of a justiciable nature presently exists between RCBO and Lloyd's Umbrella concerning the proper construction of the Lloyd's Umbrella Policies, whether Lloyd's Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the Lloyd's Umbrella Policies are valid, whether there is any coverage for the Lloyd's Umbrella Covered Claims under the Lloyd's Umbrella Policies, whether Lloyd's Umbrella is obligated to drop down to provide first-dollar coverage for the Lloyd's Umbrella Covered Claims because the underlying primary insurance is exhausted, Lloyd's Umbrella's and RCBO's respective rights and obligations under the Lloyd's Umbrella Policies with respect to the Lloyd's Umbrella Covered Claims, and whether Lloyd's Umbrella should participate in settlement regarding the Lloyd's Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

480. RCBO is entitled to a declaratory judgment stating Lloyd's Umbrella has issued the Lloyd's Umbrella Policies to RCBO, the Lloyd's Umbrella Policies cover the Lloyd's Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Lloyd's Umbrella Covered Claims under the Lloyd's Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Lloyd's Umbrella Policies as alleged in Paragraphs 471-472, and the requirement that Lloyd's Umbrella drop down to provide defense and indemnity to RCBO regarding the Lloyd's Umbrella Covered Claims.

**<u>TWENTY-FIRST CAUSE OF ACTION</u>**

**(Declaratory Relief Against Anglo French - Umbrella)**

481. RCBO realleges and incorporates herein Paragraphs 1 through 480 of this Complaint as if said Paragraphs were set forth in full.

482. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

483. An actual and justiciable controversy exists between RCBO and Anglo French Umbrella with respect to whether Anglo French Umbrella is obligated to provide RCBO with defense and indemnity under the Anglo French Umbrella Policies regarding the subset of the Suits for which RCBO alleges Anglo French Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph 24 (the "Anglo French Umbrella Covered Claims").

484. Pursuant to the terms of the Anglo French Umbrella Policies, Anglo French Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Anglo French Umbrella Covered Claims.

485. RCBO has fully satisfied all conditions required under the Anglo French Umbrella Policies, or is otherwise excused from doing so.

486. RCBO's broker and/or RCBO tendered the Anglo French Umbrella Covered Claims to Anglo French Umbrella on RCBO's behalf as set forth in Exhibit A.

487. Anglo French Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the Anglo French Umbrella Covered Claims.

488. Anglo French Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Anglo French Umbrella Policies that, in turn, will exhaust those policies and trigger Anglo French Umbrella's obligation to provide the benefits of the Anglo French Umbrella Policies to RCBO. Rather, Anglo French Umbrella reserved its right to deny coverage on a number of bases.

489. Anglo French Umbrella's reservation of rights includes Anglo French Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Anglo French is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Anglo French's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Anglo French] Policies."

iv. "To the extent the [Anglo French Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Anglo French "reserve[s] all rights based upon the number and timing of occurrences. It is [Anglo French's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Anglo French] Policies."

viii. Anglo French "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

490. In addition, Anglo French Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also

including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Anglo French "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Anglo French thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Anglo French] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Anglo French Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Anglo French reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Anglo French reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Anglo French's] agent for notice of claims provided in the Policy Declarations."

x. Anglo French reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Anglo French] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Anglo French and RCBO "in or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Anglo French] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Anglo French Umbrella] Policies."

xiv. Anglo French reserves its rights "pursuant to the [Anglo French] Policies' Other Insurance Condition."

xv. Anglo French reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

491. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Anglo French Umbrella has reserved its right to deny its defense and indemnity obligation under the Anglo French Umbrella Policies on the grounds that the Anglo French Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Anglo French Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Anglo French Umbrella Policies define that term, within the Anglo French Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Anglo French

Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk

of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

492. The remaining Anglo French Umbrella Covered Claims not listed in Paragraph 491 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Anglo French Umbrella Policies define that term.

493. As a further example, Anglo French Umbrella reserved its right to deny coverage under the Anglo French Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 494-495.

494. There is a substantial likelihood that the Anglo French Umbrella Covered Claims will exhaust the primary insurance underlying the Anglo French Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 Anglo French Umbrella Covered Claims that trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the Anglo French

Umbrella Policies.

495. Data from past clergy sexual abuse cases indicate the Anglo French Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, Anglo French Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Anglo French Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the of the Lloyd's Excess Policies and the Anglo French Umbrella Policies, to resolve the Anglo French Umbrella Covered Claims and the claims falling within the Anglo French Umbrella coverage period alleged against RCBO. The UCC based this UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Anglo French Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Anglo French Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

496. The asserted reservations of rights set forth in Paragraphs 489 and 490 do not provide Anglo French Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Anglo French Umbrella Covered Claims under the Anglo French Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Anglo French

Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Anglo French Umbrella Policies have been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Anglo French Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Anglo French Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

497. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Anglo French Umbrella Covered Claims up to the policy limits under the Anglo French Umbrella Policies. Upon information and belief, Anglo French Umbrella received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Anglo French Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

498. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and Anglo French Umbrella thereby has failed to provide the benefits of the Anglo French Umbrella Policy to RCBO.

499. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. Anglo French thereby has failed to provide the benefits of the Anglo French Umbrella Policies to RCBO.

500. The Anglo French Umbrella Policies provide coverage for, and do not exclude, the Anglo French Umbrella Covered Claims, and Anglo French Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Anglo French Umbrella Covered Claims.

501. The Anglo French Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

502. An actual controversy of a justiciable nature presently exists between RCBO and Anglo French Umbrella concerning the proper construction of the Anglo French Umbrella Policies, whether Anglo French Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the Anglo French Umbrella Policies are valid, whether there is any coverage for the Anglo French Umbrella Covered Claims under the Anglo French Umbrella Policies, whether Anglo French Umbrella is obligated to drop down to provide first-dollar coverage for the Anglo French Umbrella Covered Claims because the underlying primary insurance is exhausted, Anglo French Umbrella's and RCBO's respective rights and obligations under the Anglo French Umbrella Policies with respect to the Anglo French Umbrella Covered Claims, and whether Anglo French Umbrella should participate in settlement regarding the Anglo French Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

503. RCBO is entitled to a declaratory judgment stating Anglo French Umbrella has issued the Anglo French Umbrella Policies to RCBO, the Anglo French Umbrella Policies cover the Anglo French Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Anglo French Umbrella Covered Claims under the Anglo French Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Anglo French Umbrella Policies as alleged in Paragraphs 494-495, and the requirement that Anglo French Umbrella drop down to provide defense and indemnity to RCBO regarding the Anglo French Umbrella Covered Claims.

**<u>TWENTY-SECOND CAUSE OF ACTION</u>**

**(Declaratory Relief Against Excess Insurance Co. - Umbrella)**

504. RCBO realleges and incorporates herein Paragraphs 1 through 503 of this Complaint as if said Paragraphs were set forth in full.

505. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

506. An actual and justiciable controversy exists between RCBO and Excess Insurance Co. Umbrella with respect to whether Excess Insurance Co. Umbrella is obligated to provide RCBO with defense and indemnity under the Excess Insurance Co. Umbrella Policies regarding the subset of the

Suits for which RCBO alleges Excess Insurance Co. Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph 25 (the "Excess Insurance Co. Umbrella Covered Claims").

507. Pursuant to the terms of the Excess Insurance Co. Umbrella Policies, Excess Insurance Co. Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Excess Insurance Co. Umbrella Covered Claims.

508. RCBO has fully satisfied all conditions required under the Excess Insurance Co. Umbrella Policies, or is otherwise excused from doing so.

509. RCBO's broker and/or RCBO tendered the Excess Insurance Co. Umbrella Covered Claims to Excess Insurance Co. Umbrella on RCBO's behalf as set forth in Exhibit A.

510. Excess Insurance Co. Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the Excess Insurance Co. Umbrella Covered Claims.

511. Excess Insurance Co. Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Excess Insurance Co. Umbrella Policies that, in turn, will exhaust those policies and trigger Excess Insurance Co. Umbrella's obligation to provide the benefits of the Excess Insurance Co. Umbrella Policies to RCBO. Rather, Excess Insurance Co. Umbrella reserved its right to deny coverage on a number of bases.

512. Excess Insurance Co. Umbrella's reservation of rights includes Excess Insurance Co. Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Excess Insurance Co. is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Excess Insurance Co.'s coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Excess Insurance Co.]

Policies."

iv. "To the extent the [Excess Insurance Co. Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Excess Insurance Co. "reserve[s] all rights based upon the number and timing of occurrences. It is [Excess Insurance Co.'s] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Excess Insurance Co.] Policies."

viii. Excess Insurance Co. "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

513. In addition, Excess Insurance Co. Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Excess Insurance Co. "reserve[s its] rights in the event [RCBO] was aware of sexual

misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Excess Insurance Co. thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Excess Insurance Co.] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Excess Insurance Co. Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Excess Insurance Co. its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Excess Insurance Co. reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Excess Insurance Co.'s] agent for notice of claims provided in the Policy Declarations."

x. Excess Insurance Co. reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Excess Insurance Co.] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and

Mutual Release" executed by Excess Insurance Co. and RCBO "in or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Excess Insurance Co.] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Excess Insurance Co. Umbrella] Policies."

xiv. Excess Insurance Co. reserves its rights "pursuant to the [Excess Insurance Co.] Policies' Other Insurance Condition."

xv. Excess Insurance Co. reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

514. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Excess Insurance Co. Umbrella has reserved its right to deny its defense and indemnity obligation under the Excess Insurance Co. Umbrella Policies on the grounds that the Excess Insurance Co. Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Excess Insurance Co. Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Excess Insurance Co. Umbrella Policies define that term, within the Excess Insurance Co. Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Excess Insurance Co. Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury,

including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in

protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

515. The remaining Excess Insurance Co. Umbrella Covered Claims not listed in Paragraph 514 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Excess Insurance Co. Umbrella Policies define that term.

516. As a further example, Excess Insurance Co. Umbrella reserved its right to deny coverage under the Excess Insurance Co. Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 517-518.

517. There is a substantial likelihood that the Excess Insurance Co. Umbrella Covered Claims will exhaust the primary insurance underlying the Excess Insurance Co. Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 Excess Insurance Co. Umbrella Covered Claims that trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the Excess Insurance Co. Umbrella Policies.

518. Data from past clergy sexual abuse cases indicate the Excess Insurance Co. Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO

cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, Excess Insurance Co. Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Excess Insurance Co. Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the of the Lloyd's Excess Policies and the Excess Insurance Co. Umbrella Policies, to resolve the Excess Insurance Co. Umbrella Covered Claims and the claims falling within the Excess Insurance Co. Umbrella coverage period alleged against RCBO. The UCC based this UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Excess Insurance Co. Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Excess Insurance Co. Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

519. The asserted reservations of rights set forth in Paragraphs 512 and 513 do not provide Excess Insurance Co. Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Excess Insurance Co. Umbrella Covered Claims under the Excess Insurance Co. Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Excess Insurance Co. Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Excess Insurance Co. Umbrella Policies have been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that

there is no fraud nor misrepresentation made by RCBO to Excess Insurance Co. Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Excess Insurance Co. Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

520. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Excess Insurance Co. Umbrella Covered Claims up to the policy limits under the Excess Insurance Co. Umbrella Policies. Upon information and belief, Excess Insurance Co. Umbrella received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Excess Insurance Co. Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

521. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and Excess Insurance Co. Umbrella thereby has failed to provide the benefits of the Excess Insurance Co. Umbrella Policy to RCBO.

522. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. Excess Insurance Co. thereby has failed to provide the benefits of the Excess Insurance Co. Umbrella Policies to RCBO.

523. The Excess Insurance Co. Umbrella Policies provide coverage for, and do not exclude, the Excess Insurance Co. Umbrella Covered Claims, and Excess Insurance Co. Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Excess Insurance Co. Umbrella Covered Claims.

524. The Excess Insurance Co. Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

525. An actual controversy of a justiciable nature presently exists between RCBO and Excess Insurance Co. Umbrella concerning the proper construction of the Excess Insurance Co. Umbrella Policies, whether Excess Insurance Co. Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the Excess Insurance Co. Umbrella Policies are valid, whether there is any coverage for the Excess Insurance Co. Umbrella Covered Claims under the Excess Insurance Co.

Umbrella Policies, whether Excess Insurance Co. Umbrella is obligated to drop down to provide first-dollar coverage for the Excess Insurance Co. Umbrella Covered Claims because the underlying primary insurance is exhausted, Excess Insurance Co. Umbrella's and RCBO's respective rights and obligations under the Excess Insurance Co. Umbrella Policies with respect to the Excess Insurance Co. Umbrella Covered Claims, and whether Excess Insurance Co. Umbrella should participate in settlement regarding the Excess Insurance Co. Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

526. RCBO is entitled to a declaratory judgment stating Excess Insurance Co. Umbrella has issued the Excess Insurance Co. Umbrella Policies to RCBO, the Excess Insurance Co. Umbrella Policies cover the Excess Insurance Co. Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Excess Insurance Co. Umbrella Covered Claims under the Excess Insurance Co. Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Excess Insurance Co. Umbrella Policies as alleged in Paragraphs 516-517, and the requirement that Excess Insurance Co. Umbrella drop down to provide defense and indemnity to RCBO regarding the Excess Insurance Co. Umbrella Covered Claims.

**TWENTY-THIRD CAUSE OF ACTION**

**(Declaratory Relief Against English & American - Umbrella)**

527. RCBO realleges and incorporates herein Paragraphs 1 through 526 of this Complaint as if said Paragraphs were set forth in full.

528. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

529. An actual and justiciable controversy exists between RCBO and English & American Umbrella with respect to whether English & American Umbrella is obligated to provide RCBO with defense and indemnity under the English & American Umbrella Policies regarding the subset of the Suits for which RCBO alleges English & American Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph 26 (the "English & American Umbrella Covered Claims").

530. Pursuant to the terms of the English & American Umbrella Policies, English & American Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all

sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the English & American Umbrella Covered Claims.

531. RCBO has fully satisfied all conditions required under the English & American Umbrella Policies, or is otherwise excused from doing so.

532. RCBO's broker and/or RCBO tendered the English & American Umbrella Covered Claims to English & American Umbrella on RCBO's behalf as set forth in Exhibit A.

533. English & American Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the English & American Umbrella Covered Claims.

534. English & American Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the English & American Umbrella Policies that, in turn, will exhaust those policies and trigger English & American Umbrella's obligation to provide the benefits of the English & American Umbrella Policies to RCBO. Rather, English & American Umbrella reserved its right to deny coverage on a number of bases.

535. English & American Umbrella's reservation of rights includes English & American Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. English & American is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. English & American's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [English & American] Policies."

iv. "To the extent the [English & American Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of

their respective ultimate net loss liability."

v. English & American "reserve[s] all rights based upon the number and timing of occurrences. It is [English & American's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [English & American] Policies."

viii. English & American "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

536. In addition, English & American Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. English & American "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" English & American thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and

unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [English & American] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [English & American Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. English & American its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. English & American reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [English & American's] agent for notice of claims provided in the Policy Declarations."

x. English & American reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [English & American] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by English & American and RCBO "in or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation"

and states that "[a] failure by [RCBO] to cooperate with [English & American] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [English & American Umbrella] Policies."

xiv. English & American reserves its rights "pursuant to the [English & American] Policies' Other Insurance Condition."

xv. English & American reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

537. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, English & American Umbrella has reserved its right to deny its defense and indemnity obligation under the English & American Umbrella Policies on the grounds that the English & American Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the English & American Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the English & American Umbrella Policies define that term, within the English & American Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the English & American Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of

enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and

economic harm" (¶ 68).

538. The remaining English & American Umbrella Covered Claims not listed in Paragraph 537 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the English & American Umbrella Policies define that term.

539. As a further example, English & American Umbrella reserved its right to deny coverage under the English & American Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 540-541.

540. There is a substantial likelihood that the English & American Umbrella Covered Claims will exhaust the primary insurance underlying the English & American Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 English & American Umbrella Covered Claims that trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the English & American Umbrella Policies.

541. Data from past clergy sexual abuse cases indicate the English & American Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO

cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, English & American Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because English & American Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the of the Lloyd's Excess Policies and the English & American Umbrella Policies, to resolve the English & American Umbrella Covered Claims and the claims falling within the English & American Umbrella coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the English & American Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the English & American Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

542. The asserted reservations of rights set forth in Paragraphs 535 and 536 do not provide English & American Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the English & American Umbrella Covered Claims under the English & American Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the English & American Umbrella Covered Claims present covered claims which are

legally insurable. Further, RCBO has not received any notice that the limits of liability of the English & American Umbrella Policies have been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to English & American Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with English & American Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

543. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the English & American Umbrella Covered Claims up to the policy limits under the English & American Umbrella Policies. Upon information and belief, English & American Umbrella received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because English & American Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

544. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and English & American Umbrella thereby has failed to provide the benefits of the English & American Umbrella Policy to RCBO.

545. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. English & American thereby has failed to provide the benefits of the English & American Umbrella Policies to RCBO.

546. The English & American Umbrella Policies provide coverage for, and do not exclude, the English & American Umbrella Covered Claims, and English & American Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement

or judgment resolving, the English & American Umbrella Covered Claims.

547. The English & American Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

548. An actual controversy of a justiciable nature presently exists between RCBO and English & American Umbrella concerning the proper construction of the English & American Umbrella Policies, whether English & American Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the English & American Umbrella Policies are valid, whether there is any coverage for the English & American Umbrella Covered Claims under the English & American Umbrella Policies, whether English & American Umbrella is obligated to drop down to provide first-dollar coverage for the English & American Umbrella Covered Claims because the underlying primary insurance is exhausted, English & American Umbrella's and RCBO's respective rights and obligations under the English & American Umbrella Policies with respect to the English & American Umbrella Covered Claims, and whether English & American Umbrella should participate in settlement regarding the English & American Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

549. RCBO is entitled to a declaratory judgment stating English & American Umbrella has issued the English & American Umbrella Policies to RCBO, the English & American Umbrella Policies cover the English & American Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the English & American Umbrella Covered Claims under the English & American Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the English & American Umbrella Policies as alleged in Paragraphs 540-541, and the requirement that English & American Umbrella drop down to provide defense and indemnity to RCBO regarding the English & American Umbrella Covered Claims.

**TWENTY-FOURTH CAUSE OF ACTION**

**(Declaratory Relief Against Orion - Umbrella)**

550. RCBO realleges and incorporates herein Paragraphs 1 through 549 of this Complaint as if said Paragraphs were set forth in full.

551. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

552. An actual and justiciable controversy exists between RCBO and Orion Umbrella with respect to whether Orion Umbrella is obligated to provide RCBO with defense and indemnity under the Orion Umbrella Policies regarding the subset of the Suits for which RCBO alleges Orion Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph 28 (the "Orion Umbrella Covered Claims").

553. Pursuant to the terms of the Orion Umbrella Policies, Orion Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Orion Umbrella Covered Claims.

554. RCBO has fully satisfied all conditions required under the Orion Umbrella Policies, or is otherwise excused from doing so.

555. RCBO's broker and/or RCBO tendered the Orion Umbrella Covered Claims to Orion Umbrella on RCBO's behalf as set forth in Exhibit A.

556. Orion Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the Orion Umbrella Covered Claims.

557. Orion Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Orion Umbrella Policies that, in turn, will exhaust those policies and trigger Orion Umbrella's obligation to provide the benefits of the Orion Umbrella Policies to RCBO. Rather, Orion Umbrella reserved its right

to deny coverage on a number of bases.

558. Orion Umbrella's reservation of rights includes Orion Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Orion is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Orion's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Orion] Policies."

iv. "To the extent the [Orion Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Orion "reserve[s] all rights based upon the number and timing of occurrences. It is [Orion's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Orion] Policies."

viii. Orion "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

559. In addition, Orion Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Orion "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Orion thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Orion] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Orion Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Orion its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Orion reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Orion's] agent for notice of claims provided in the Policy Declarations."

x. Orion reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Orion] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Orion and RCBO "in or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Orion] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Orion Umbrella] Policies."

xiv. Orion reserves its rights "pursuant to the [Orion] Policies' Other Insurance Condition."

xv. Orion reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

560. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Orion Umbrella has reserved its right to deny its defense and indemnity obligation under the Orion Umbrella Policies on the grounds that the Orion Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Orion Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Orion Umbrella Policies define that term, within the Orion Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Orion Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk

of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

561. The remaining Orion Umbrella Covered Claims not listed in Paragraph 560 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Orion Umbrella Policies define that term.

562. As a further example, Orion Umbrella reserved its right to deny coverage under the Orion Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 563-564.

563. There is a substantial likelihood that the Orion Umbrella Covered Claims will exhaust the primary insurance underlying the Orion Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 Orion Umbrella Covered Claims that trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the Orion Umbrella Policies.

564. Data from past clergy sexual abuse cases indicate the Orion Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average

settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, Orion Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Orion Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million which is within the policy limits of the of the Lloyd's Excess Policies and the Orion Umbrella Policies, to resolve the Orion Umbrella Covered Claims and the claims falling within the Orion Umbrella coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Orion Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Orion Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

565. The asserted reservations of rights set forth in Paragraphs 558 and 559 do not provide Orion Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Orion Umbrella Covered Claims under the Orion Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Orion Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Orion Umbrella Policies have been exhausted or that limits have been reduced.

In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Orion Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Orion Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

566. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Orion Umbrella Covered Claims up to the policy limits under the Orion Umbrella Policies. Upon information and belief, Orion Umbrella received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Orion Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

567. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and Orion Umbrella thereby has failed to provide the benefits of the Orion Umbrella Policy to RCBO.

568. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. Orion Umbrella thereby has failed to provide the benefits of the Orion Umbrella Policies to RCBO.

569. The Orion Umbrella Policies provide coverage for, and do not exclude, the Orion Umbrella Covered Claims, and Orion Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Orion Umbrella Covered Claims.

570. The Orion Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

571. An actual controversy of a justiciable nature presently exists between RCBO and Orion Umbrella concerning the proper construction of the Orion Umbrella Policies, whether Orion Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the Orion Umbrella Policies are valid, whether there is any coverage for the Orion Umbrella Covered Claims under the Orion Umbrella Policies, whether Orion Umbrella is obligated to drop down to provide first-dollar coverage for the Orion Umbrella Covered Claims because the underlying primary insurance is exhausted, Orion Umbrella's and RCBO's respective rights and obligations under the Orion Umbrella Policies with respect to the Orion Umbrella Covered Claims, and whether Orion Umbrella should participate in settlement regarding the Orion Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

572. RCBO is entitled to a declaratory judgment stating Orion Umbrella has issued the Orion Umbrella Policies to RCBO, the Orion Umbrella Policies cover the Orion Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Orion Umbrella Covered Claims under the Orion Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Orion Umbrella Policies as alleged in Paragraphs 563-564, and the requirement that Orion Umbrella drop down to provide defense and indemnity to RCBO regarding the Orion Umbrella Covered Claims.

## TWENTY-FIFTH CAUSE OF ACTION

### (Declaratory Relief Against London & Overseas - Umbrella)

573. RCBO realleges and incorporates herein Paragraphs 1 through 572 of this Complaint as if said Paragraphs were set forth in full.

574. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

575. An actual and justiciable controversy exists between RCBO and London & Overseas Umbrella with respect to whether London & Overseas Umbrella is obligated to provide RCBO with

defense and indemnity under the London & Overseas Umbrella Policies regarding the subset of the Suits for which RCBO alleges London & Overseas Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph 27 (the "London & Overseas Umbrella Covered Claims").

576. Pursuant to the terms of the London & Overseas Umbrella Policies, London & Overseas Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the London & Overseas Umbrella Covered Claims.

577. RCBO has fully satisfied all conditions required under the London & Overseas Umbrella Policies, or is otherwise excused from doing so.

578. RCBO's broker and/or RCBO tendered the London & Overseas Umbrella Covered Claims to London & Overseas Umbrella on RCBO's behalf as set forth in Exhibit A.

579. London & Overseas Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the London & Overseas Umbrella Covered Claims.

580. London & Overseas Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the London & Overseas Umbrella Policies that, in turn, will exhaust those policies and trigger London & Overseas Umbrella's obligation to provide the benefits of the London & Overseas Umbrella Policies to RCBO. Rather, London & Overseas Umbrella reserved its right to deny coverage on a number of bases.

581. London & Overseas Umbrella's reservation of rights includes London & Overseas Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. London & Overseas is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. London & Overseas's coverage obligations "are several only (not joint) up to the

specific subscribed percentage of risk specified in the [London & Overseas] Policies."

iv. "To the extent the [London & Overseas Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. London & Overseas "reserve[s] all rights based upon the number and timing of occurrences. It is [London & Overseas's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [London & Overseas] Policies."

viii. London & Overseas "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

582. In addition, London & Overseas Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. London & Overseas "reserve[s its] rights in the event [RCBO] was aware of sexual

misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" London & Overseas thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [London & Overseas] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [London & Overseas Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. London & Overseas reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. London & Overseas reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [London & Overseas's] agent for notice of claims provided in the Policy Declarations."

x. London & Overseas reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [London & Overseas] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and

Mutual Release" executed by London & Overseas and RCBO "in or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [London & Overseas] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [London & Overseas Umbrella] Policies."

xiv. London & Overseas reserves its rights "pursuant to the [London & Overseas] Policies' Other Insurance Condition."

xv. London & Overseas reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

583. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, London & Overseas Umbrella has reserved its right to deny its defense and indemnity obligation under the London & Overseas Umbrella Policies on the grounds that the London & Overseas Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the London & Overseas Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the London & Overseas Umbrella Policies define that term, within the London & Overseas Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the London & Overseas Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury,

including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in

protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

584. The remaining London & Overseas Umbrella Covered Claims not listed in Paragraph 583 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the London & Overseas Umbrella Policies define that term.

585. As a further example, London & Overseas Umbrella reserved its right to deny coverage under the London & Overseas Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 586-587.

586. There is a substantial likelihood that the London & Overseas Umbrella Covered Claims will exhaust the primary insurance underlying the London & Overseas Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 London & Overseas Umbrella Covered Claims that trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the London & Overseas Umbrella Policies.

587. Data from past clergy sexual abuse cases indicate the London & Overseas Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO

cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, London & Overseas Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because London & Overseas Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the of the Lloyd's Excess Policies and the London & Overseas Umbrella Policies, to resolve the London & Overseas Umbrella Covered Claims and the claims falling within the London & Overseas Umbrella coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the London & Overseas Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the London & Overseas Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

588. The asserted reservations of rights set forth in Paragraphs 581 and 582 do not provide London & Overseas Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the London & Overseas Umbrella Covered Claims under the London & Overseas Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the London & Overseas Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the London & Overseas Umbrella Policies have been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is

no fraud nor misrepresentation made by RCBO to London & Overseas Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with London & Overseas Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

589. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the London & Overseas Umbrella Covered Claims up to the policy limits under the London & Overseas Umbrella Policies. Upon information and belief, London & Overseas Umbrella received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because London & Overseas Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

590. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and London & Overseas Umbrella thereby has failed to provide the benefits of the London & Overseas Umbrella Policy to RCBO.

591. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. London & Overseas thereby has failed to provide the benefits of the London & Overseas Umbrella Policies to RCBO.

592. The London & Overseas Umbrella Policies provide coverage for, and do not exclude, the London & Overseas Umbrella Covered Claims, and London & Overseas Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the London & Overseas Umbrella Covered Claims.

593. The London & Overseas Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

594. An actual controversy of a justiciable nature presently exists between RCBO and London & Overseas Umbrella concerning the proper construction of the London & Overseas Umbrella Policies, whether London & Overseas Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the London & Overseas Umbrella Policies are valid, whether there is any coverage for the London & Overseas Umbrella Covered Claims under the London & Overseas Umbrella Policies,

whether London & Overseas Umbrella is obligated to drop down to provide first-dollar coverage for the London & Overseas Umbrella Covered Claims because the underlying primary insurance is exhausted, London & Overseas Umbrella's and RCBO's respective rights and obligations under the London & Overseas Umbrella Policies with respect to the London & Overseas Umbrella Covered Claims, and whether London & Overseas Umbrella should participate in settlement regarding the London & Overseas Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

595. RCBO is entitled to a declaratory judgment stating London & Overseas Umbrella has issued the London & Overseas Umbrella Policies to RCBO, the London & Overseas Umbrella Policies cover the London & Overseas Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the London & Overseas Umbrella Covered Claims under the London & Overseas Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the London & Overseas Umbrella Policies as alleged in Paragraphs 586-587, and the requirement that London & Overseas Umbrella drop down to provide defense and indemnity to RCBO regarding the London & Overseas Umbrella Covered Claims.

**<u>TWENTY-SIXTH CAUSE OF ACTION</u>**

**(Breach of Statutory Duty Against CIGA)**

596. RCBO realleges and incorporates herein Paragraphs 1 through 595 of this complaint as if said Paragraphs were set forth in full.

597. "CIGA's authority and liability are limited to paying 'covered claims.'" *Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 128 Cal. App. 4th 307, 313 (2005).

598. A covered claims means "(1) … the obligations of an insolvent insurer, including the obligation … (i) imposed by law and within the coverage of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; … (iv) which were incurred prior to the date coverage under the policy terminated …" *Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 153 Cal. App. 4th 524, 532-33 (2007) (citing Cal. Ins. Code, § 1063.1(c)(1)).

599. Commercial Union/Armour Insurance Company has become insolvent but had acknowledged potential coverage for the Suits tendered to it by RCBO.

600. RCBO timely presented the claims to the liquidator prior to the date coverage under the policy terminated. Therefore, the claims qualify as covered claims under the statute.

601. There is no, or there is a substantial likelihood that there will not be any, other insurance available for the Commercial Union Covered Claims because Commercial Union is insolvent, and the Commercial Union Covered Claims are likely to exhaust other applicable insurance policies.

602. Specifically, there is a substantial likelihood the Commercial Union Covered Claims will exhaust the following insurance policies: United States Fire Insurance policy no. DCL 53 98 20, for the policy period of October 25, 1970 – October 26, 1971 ($5,000,000 limit); Westport policy no. U10255, for the policy period of November 16, 1971 – October 26, 1974 ($5,000,000 limit); American Home policy no. CE-60-94, for the policy period of November 16, 1971 – October 26, 1974 ($2,000,000 limit); CNA policy no. RDU 146 74 50, for the policy period of October 26, 1974 – December 1, 1975 ($1,000,000 limit); and Westport policy no. PLE 20430, for the policy period of October 26, 1974 – December 1, 1975 ($5,000,000 limit) (together, the "Other Insurers" and the "Other Insurance Policies"). There are at least 22 Commercial Union Covered Claims.

603. Data from past clergy sexual abuse cases indicate the Commercial Union Covered Claims will far exceed the limits of the Other Insurance Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent each of the Other Insurers a demand letter on July 3, 2024, demanding they pay $56.7 million (United States Fire), $308.9 million (Westport), $11.9 million (American Home), and $162.6 million (CNA), respectively—all amounts within limits of each of the Other Insurance Policies—to resolve the Commercial Union Covered Claims alleged against RCBO. The UCC based the amounts demanded on its reasonable estimate of the value of the claims covered by the Other Insurance Policies, including the Commercial Union Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Commercial Union Covered Claims will exhaust the Other Insurance Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million

to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

604. CIGA assigned an adjuster to review the claims. CIGA confirmed that RCBO appropriately filed the claims, and CIGA understood that the claims were abuse-related claims.

605. CIGA has refused to confirm coverage for the Commercial Union Covered Claims in breach of its statutory duties under Article 14.2 of the California Insurance Code.

606. As a result of CIGA's breaches, RCBO has been damaged according to proof at trial.

**TWENTY-SEVENTH CAUSE OF ACTION**

**(Declaratory Relief Against American Home Assurance Co.)**

607. RCBO realleges and incorporates herein Paragraphs 1 through 606 of this Complaint as if said Paragraphs were set forth in full.

608. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201; Cal. Code. Civ. Proc. § 1060.

609. An actual and justiciable controversy exists between RCBO and AHAC with respect to whether AHAC is obligated to provide RCBO indemnity under the AHAC Policy regarding the subset of the Suits for which RCBO alleges AHAC is obligated to provide RCBO with indemnity, as set forth in Paragraph 30 (the "AHAC Covered Claims").

610. Pursuant to the terms of the AHAC Policy, AHAC is obligated to, among other things, defend and indemnify Plaintiff for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the AHAC Covered Claims.

611. Plaintiff RCBO has fully performed under the AHAC Policy.

612. RCBO's broker and/or RCBO tendered the AHAC Covered Claims to AHAC on RCBO's behalf as set forth in Exhibit A.

613. AHAC by way of its policy agreed to provide a defense to Plaintiff RCBO for those AHAC Covered Claims "where the applicable underlying primary coverage is either insolvent or fully and properly exhausted through payment of judgments or settlements." However, AHAC denied and/or failed to confirm it will indemnify RCBO for the AHAC Covered Claims.

614. AHAC has not acknowledged that its insured, RCBO, faces covered claims in excess of

the limits of insurance available from the primary policies underlying the AHAC Policy that, in turn, will exhaust those policies and trigger AHAC's obligation to provide the benefits of the AHAC Policy to RCBO. Rather, AHAC reserved its right to deny coverage on a number of bases.

615. AHAC's reservation of rights includes its position that it may deny coverage on the following bases:

i. The American Home Policy is an excess umbrella liability policy which potentially applies only upon exhaustion of underlying insurance. We have not received any information indicating that the underlying insurance has been exhausted. The American Home Policy is not, therefore, currently impacted by the Claim. American Home reserves all rights with respect to the proper exhaustion of the underlying insurance.

ii. To the extent the Claim does not involve liability for personal injury, coverage under the American Home Policy will not apply. American Home disclaims coverage herein on this basis.

iii. To the extent Claimant seeks to impose liability for damage that occurred outside of the effective dates of the American Home Policy, the American Home Policy does not apply. American Home disclaims coverage on this basis.

iv. To the extent Claimant alleges, or is able to prove, that the defendants knew, had reason to know, or were otherwise on notice of the conduct alleged and failed to take reasonable steps or implement reasonable safeguards. American Home reserves its right to disclaim coverage for the Claim, in whole or in part, on this additional basis. American Home also reserves all rights with respect to the number of occurrences.

v. If, prior to the issuance of the American Home Policy, RCBO knew, or had reason to know, that there was a probability it would suffer or had already suffered a loss, the known loss, loss-in-progress and/or fortuity

doctrines may preclude coverage.

vi. Under California Insurance Code §533 an insurer "is not liable for a loss caused by the willful act of the insured..." American Home reserves the right to deny coverage, in whole or in part, on this additional basis.

616. In addition, AHAC reserved further rights to deny coverage as follows:

i. American Home expressly reserves all of its rights under the American Home Policy, including the right to assert additional defenses to any claims for coverage. This includes the right to amend and/or supplement their coverage positions in the future as may be appropriate.

617. It is Plaintiff's position that the above reservations of rights are without both factual and legal merit. For example, AHAC has reserved its right to deny its defense and indemnity obligation under the AHAC Policy on the grounds that the AHAC Covered Claims allege injuries that were "expected or intended from the standpoint of RCBO" or that "do[] not allege 'bodily injury' or 'personal injury' within the meaning of the AHAC Policy." Such reservations of rights as to defense and/or indemnity do not apply because the AHAC Covered Claims allege Plaintiff was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the AHAC Policy defines that term, within the AHAC Policy's coverage period (see Exhibit A). Plaintiff sets forth below examples of negligence and bodily injury allegations from the AHAC Covered Claims in paragraph 618 and 619.

618. For example, AHAC acknowledges that for Proof of Claim 107, "The Complaint alleges causes of action sounding in: (1) Negligent Supervision and/or Retention of an Employee; and (2) Negligent Supervision of Plaintiff, a minor" and that "Plaintiff claims that he has suffered and will continue to suffer physical, psychological and emotional injuries, as well as economic loss."

619. Similarly, AHAC acknowledges in receipt of Proof of Claim 99 that "The Complaint alleges causes of action sounding in: (1) Negligent Supervision and/or Retention of an Employee; and (2) Negligent Supervision of Plaintiff, a minor" and that "Plaintiff claims that he has suffered and will continue to suffer physical, psychological and emotional injuries, as well as economic loss."

620. Virtually all of the AHAC Covered Claims likewise include similar or near-identical

allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the AHAC Policy defines that term.

621. As a further example, AHAC reserved its right to deny coverage under the AHAC Policy on the ground that "[a]s a threshold matter, the American Home Policy is an excess umbrella liability policy which potentially applies only upon exhaustion of underlying insurance. We have not received any information indicating that the underlying insurance has been exhausted. The American Home Policy is not, therefore, currently impacted by the Lawsuit. American Home reserves all rights with respect to the proper exhaustion of the underlying insurance." This reservation of rights as to defense and/or indemnity will not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 622 and 623.

622. There is a substantial likelihood that the AHAC Covered Claims will exhaust the primary insurance underlying the AHAC Policy. The underlying Commercial Union primary policies nos. EF 9334-001, EF 9334-003, and EF 9334-008 have limits of $100,000 per occurrence and $300,000 in aggregate (the "10/26/71-10/26/74 Commercial Union Policies"). The AHAC Covered Claims fall within the coverage periods for the 10/26/71-10/26/74 Commercial Union Policies and the AHAC Policy.

623. Data from past clergy sexual abuse cases indicate the AHAC Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/71-10/26/74 Commercial Union Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The Official Committee of Unsecured Creditors ("UCC") sent AHAC a letter on July 3, 2024, demanding AHAC pay a sum of $11.9 million (the "UCC AHAC Demand Amount"), which is within the policy limits of the AHAC Policy, to resolve the AHAC Covered Claims (the "UCC Demand Letter"). The UCC based the AHAC Demand Amount on its reasonable estimate of the value of the AHAC Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the AHAC Covered Claims will exhaust the 10/26/71-10/26/74 Commercial Union Policies. *See Jane Doe 3, et al. v. Roe #1, et al.,*

*Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); Janet Roe v. David Park, et al., Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).*

624. The asserted reservations of rights set forth in Paragraphs 615 and 616 do not provide AHAC valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the AHAC Covered Claims under the AHAC Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional torts) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the AHAC Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the AHAC Policy has either been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with AHAC as required under the policy, including providing notice of the claims, providing the status of the matters and providing requested materials.

625. Plaintiff sent AHAC a letter on June 4, 2024, demanding AHAC indemnify RCBO for the AHAC Covered Claims up to the policy limits under the AHAC Policy (the "Policy Limits Letter"). AHAC denied and/or failed to confirm it will indemnify RCBO in response to the Policy Limits Letter, and thereby has failed to provide the benefits of the AHAC Policy to Plaintiff.

626. AHAC has likewise denied and/or failed to confirm it will indemnify RCBO in response to the UCC Demand Letter, and thereby has failed to provide the benefits of the AHAC Excess Policy to RCBO.

627. The AHAC Policy provides coverage for, and does not exclude, the AHAC Covered Claims, and AHAC is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving the AHAC Covered Claims.

628. The AHAC Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

629. An actual controversy of a justiciable nature presently exists between RCBO and AHAC concerning the proper construction of the AHAC Policy, whether AHAC's cited grounds for reservation of rights to deny defense and/or indemnity under the AHAC Policy are valid, whether there is any coverage for the AHAC Covered Claims under the AHAC Policy, AHAC's and RCBO's respective

rights and obligations under the AHAC Policy with respect to the AHAC Covered Claims, and whether AHAC should participate in settlement regarding the AHAC Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

630. RCBO is entitled to a declaratory judgment stating AHAC has issued the AHAC Policies to RCBO, the AHAC Policy covers the AHAC Covered Claims, and RCBO is entitled to both defense and indemnity regarding the AHAC Covered Claims under the AHAC Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the AHAC Policy as alleged in Paragraphs 622 and 623.

**TWENTY-EIGTH CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Insurer Defendants)**

631. RCBO realleges and incorporates herein Paragraphs 1 through 630 of this complaint as if said Paragraphs were set forth in full.

632. Implied in every insurance policy identified in this Sixth Amended Complaint is a covenant that requires the insurer to act in good faith and deal fairly with RCBO; not to withhold benefits due under its policy or policies of insurance unreasonably or without proper cause; to do nothing to interfere with RCBO's right to receive the benefits of the Policy; to place RCBO's interests before its own interests; to exercise diligence, good faith and fidelity in safeguarding RCBO's interests; and to deal ethically with RCBO and fairly and adequately inform RCBO with respect to the nature and scope of its insurance coverage (hereinafter referred to as "the covenant of good faith and fair dealing").

633. As alleged herein, RCBO sent each Insurer Defendant a letter demanding they pay the policy limits of their respective policies to indemnify RCBO for the claims covered under their policies. Insurer Defendants failed to respond to these letters confirming that they would indemnify RCBO, thereby failing to provide RCBO the benefits of their policies.

634. Also included in insurers' obligation to act fairly and in good faith towards RCBO is a duty to accept reasonable settlement offers within each insurers' policy limits. As alleged herein, the UCC sent each Insurer Defendant a letter demanding they pay a specified amount which was within the limits of their policies. The demand for each insurer was based on the UCC's reasonable estimate of the values of the claims covered by each insurer's policies, as well as data from past clergy sexual abuse

cases.

635. Despite receiving notice of these demands which were reasonable and within policy limits, Insurer Defendants failed to respond to the UCC demands, failed to participate fully and meaningfully in the resolution process, and refused to contribute toward a settlement that would successfully result in a resolution of the claims against their insured.

636. On April 10, 2026, RCBO and Defendants attended a mandatory settlement conference in connection with the underlying cases. Despite the fact that the Superior Court had ordered Defendants to participate in the settlement conference and "negotiate in good faith," and despite having more than sufficient policy limits available to settle the claims at issue, Insurer Defendants refused to make any settlement offer in response to a demand of $100 million made by 61 of the underlying plaintiffs to resolve all of their claims against RCBO. The same day, the Superior Court issued an Order to Show Cause – Why the Court Should Not Find Bad Faith Conduct Due to a Failure to Negotiate in Good Faith at a Mandatory Settlement Conference. The Superior Court subsequently continued the Order to Show Cause to May 27, 2026. At a further mandatory settlement conference held on April 21, 2026, Westport, CNA, and Travelers offered $10.3 million to settle the 61 claims, which was not enough to reach a resolution, and well below the available policy limits. The next day, on April 22, 2026, the jury in one of the 61 cases returned a verdict in favor of the plaintiff in that case in the amount of $16 million. As a direct result of Insurer Defendants' conduct, RCBO is faced with this verdict, plus the other 60 claims (and hundreds more) still unresolved.[2]

637. Insurer Defendants' actions are without any reasonable justification, are inconsistent with RCBO's reasonable expectations, are contrary to industry custom and practice and legal requirements, and withheld benefits owing under their policies of insurance unreasonably or without proper cause, thereby constituting a breach of the implied covenant of good faith and fair dealing.

638. In light of information, facts, and relevant law to the contrary, Insurer Defendants' conduct is and has been undertaken with a conscious disregard of RCBO's rights as a beneficiary of the

[2] The conduct described in Paragraph 636 forms part of the basis for RCBO's claim for bad faith against all Insurer Defendants except Certain Underwriters at Lloyd's, London, Subscribing Severally and Not Jointly to Slip Nos. CU 1001, K66034, K78138 and CU 3061, which only issued policies prior to the first date of alleged abuse by the 61 underlying plaintiffs at issue.

policies.

639. RCBO is informed and believes and thereon alleges that Insurer Defendants' acts were performed, authorized, and/or ratified by their officers, directors, and managing agents.

640. As a direct and proximate result of Insurer Defendants' breaches of the implied covenant of good faith and fair dealing, RCBO has been forced to continue participating in negotiations with claimants and engaging in bankruptcy proceedings, incurring additional needless costs. RCBO has suffered and continues to suffer substantial damages, in an amount to be determined at trial. RCBO also has incurred and continues to incur significant, recoverable attorneys' fees and costs to obtain the benefits to which it is entitled and which Insurer Defendants wrongfully have denied under their policies. Pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), RCBO also is entitled to recover all such attorneys' fees and costs, plus interest.

**TWENTY-NINTH CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Chubb)**

641. RCBO realleges and incorporates herein Paragraphs 1 through 640 of this complaint as if said Paragraphs were set forth in full.

642. As set forth above, Defendant Chubb had, at all material times, a duty to act fairly and in good faith towards RCBO, its insured. Included in Chubb's obligation to act fairly and in good faith towards RCBO is a duty to act with undivided loyalty to the insured.

643. Unbeknownst to RCBO, Chubb has for years been operating an online campaign against a similarly situated insured, the Archdiocese of New York, and encouraging and amplifying claims of the very type underlying this matter – claims that Chubb is obligated to defend RCBO against. Since at least 2023, Chubb has fraudulently posed as a victim rights organization called the "Church Accountability Project" and operated a website under that guise. Through that website, Chubb used inflammatory rhetoric and imagery designed to portray the Archdiocese of New York, the Catholic Church generally, and, by extension, RCBO and all similar organizations, in an extremely negative and prejudicial light. On the website, Chubb blames the Archdiocese of New York and the Catholic League for intentionally delaying payments to victims by attempting to shift blame to insurers. However, by secretly acting to inflame claims and direct anger towards Catholic organizations, Chubb has sabotaged

the very organizations to which it is legally obligated to provide undivided loyalty. Under the policies that Chubb issued to RCBO, Chubb is obligated to act with undivided loyalty to its insured, and its actions via the "Church Accountability Project" website contradict this duty.

644. On previous iterations of the fraudulent website, Chubb even provided resources for claimants to report abuse by bishops and clergy more broadly. By encouraging such claims, Chubb has increased RCBO's exposure to liability for precisely the claims that Chubb is obligated to defend RCBO against. This presents a clear conflict of interest for Chubb and a breach of the implied covenant of good faith and fair dealing.

645. At the same time, in this matter, Chubb refused to accept the reasonable settlement offer proposed by the UCC, an offer within its policy limits, and failed to participate in good faith in the resolution of covered claims, further exacerbating RCBO's exposure and needlessly delaying a resolution.

646. Chubb never disclosed to RCBO that it was engaging in or authorizing this campaign, despite knowing that such conduct would materially prejudice RCBO's legal position and increase claim severity, settlement demands, and reputational harm.

647. As a direct and proximate result of Chubb's bad faith conduct, RCBO has suffered and continues to suffer substantial damages, the amount of which will be proven at trial, including increased settlement demands and litigation exposure, reputational and institutional harm, impairment of RCBO's bankruptcy efforts, and other damages. RCBO has also incurred significant, recoverable attorneys' fees and costs to obtain the benefits to which it is entitled. RCBO is informed and believes that Chubb's conduct was performed, authorized, and/or ratified by its officers, directors, and managing agents, and/or with the advance knowledge or conscious disregard of its officers, directors, and managing agents.

648. Chubb's actions were, and continue to be, willful, wanton and/or malicious, and demonstrate a conscious disregard for and/or reckless indifference to the rights of RCBO. Therefore, RCBO is entitled to recover punitive damages from Chubb in an amount sufficient to punish Chubb and deter similar conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, RCBO prays for the following relief:

1. A declaration in RCBO's favor that Pacific Indemnity issued the Pacific Indemnity Policies to RCBO, that the Pacific Indemnity Policies cover the Pacific Indemnity Covered Claims, that Pacific Indemnity is obligated to defend and indemnify RCBO against the Pacific Indemnity Covered Claims, as set forth in Count 1 above;

2. A declaration in RCBO's favor that Travelers issued the Travelers Primary Policies to RCBO, that the Travelers Primary Policies cover the Travelers Covered Claims, and that Travelers is obligated to defend and indemnify RCBO against the Travelers Covered Claims, as set forth in Count 2 above;

3. A declaration in RCBO's favor that INA issued the INA Primary Policies to RCBO, that the INA Primary Policies cover the INA Primary Covered Claims, and that INA is obligated to defend and indemnify RCBO against the INA Primary Covered Claims, as set forth in Count 3 above;

4. A declaration that the Commercial Union Covered Claims are "covered claims" triggering CIGA's statutory coverage and indemnification obligations and that CIGA must defend and indemnify RCBO against the Commercial Union Covered Claims as set forth in Count 4 above;

5. A declaration in RCBO's favor that INA issued the INA Excess Policy to RCBO, that the INA Excess Policy covers the INA Excess Covered Claims, and that INA must provide RCBO defense and indemnity for the INA Excess Covered Claims, that the primary policies underlying the INA Excess Policy are or are likely to be exhausted, and that INA must drop down to provide defense and indemnity to RCBO regarding the INA Excess Covered Claims, as set forth in Count 5 above;

6. A declaration in RCBO's favor that U.S. Fire issued the U.S. Fire Policy to RCBO, that the U.S. Fire Policy covers the U.S. Fire Covered Claims, and that U.S. Fire must provide RCBO defense and indemnity for the U.S. Fire Covered Claims, that the primary policies underlying the U.S. Fire Policy are or are likely to be exhausted, and that U.S. Fire must

drop down to provide defense and indemnity to RCBO regarding the U.S. Fire Covered Claims, as set forth in Count 6 above;

7. A declaration in RCBO's favor that Westport issued the Westport Excess Policy to RCBO, that the Westport Excess Policy covers the Westport Excess Covered Claims, and that Westport must provide RCBO defense and indemnity for the Westport Excess Covered Claims, that the primary policies underlying the Westport Excess Policy are or are likely to be exhausted, and that Westport must drop down to provide defense and indemnity to RCBO regarding the Westport Excess Covered Claims, as set forth in Count 7 above;

8. A declaration in RCBO's favor that CNA issued the CNA Policies to RCBO, that the CNA Policies cover the CNA Covered Claims, and that CNA must indemnify RCBO for the CNA Covered Claims, that the primary policies underlying the CNA Policies are or are likely to be exhausted, and that CNA must drop down to provide defense and indemnity to RCBO regarding the CNA Covered Claims, as set forth in Count 8 above;

9. A declaration in RCBO's favor that Westchester issued the Westchester Policy to RCBO, that the Westchester Policy covers the Westchester Covered Claims, and that Westchester must provide RCBO defense and indemnity for the Westchester Covered Claims, that the primary policies underlying the Westchester Policy are or are likely to be exhausted, and that Westchester must drop down to provide defense and indemnity to RCBO regarding the Westchester Covered Claims, as set forth in Count 9 above;

10. A declaration in RCBO's favor that Lloyd's issued the Lloyd's Excess Policy to RCBO, that the Lloyd's Excess Policy covers the Lloyd's Covered Claims, and that Lloyd's must provide RCBO defense and indemnity for the Lloyd's Covered Claims, that the primary policies underlying the Lloyd's Excess Policy are or are likely to be exhausted, and that Lloyd's must drop down to provide defense and indemnity to RCBO regarding the Lloyd's Covered Claims, as set forth in Count 10 above;

11. A declaration in RCBO's favor that Fidelidade issued the Fidelidade Excess Policy to RCBO, that the Fidelidade Excess Policy covers the Fidelidade Covered Claims, and that Fidelidade must provide RCBO defense and indemnity for the Fidelidade Covered Claims,

that the primary policies underlying the Fidelidade Excess Policy are or are likely to be exhausted, and that Fidelidade must drop down to provide defense and indemnity to RCBO regarding the Fidelidade Covered Claims, as set forth in Count 11 above;

12. A declaration in RCBO's favor that Excess Insurance Co. issued the Excess Insurance Co. Policies to RCBO, that the Excess Insurance Co. Policies cover the Excess Insurance Co. Covered Claims, and that Excess Insurance Co. must provide RCBO defense and indemnity for the Excess Insurance Co. Covered Claims, that the primary policies underlying the Excess Insurance Co. Policies are or are likely to be exhausted, and that Excess Insurance Co. must drop down to provide defense and indemnity to RCBO regarding the Excess Insurance Co. Covered Claims, as set forth in Count 12 above;

13. A declaration in RCBO's favor that River Thames issued the River Thames Policy to RCBO, that the River Thames Policy covers the River Thames Covered Claims, and that River Thames must provide RCBO defense and indemnity for the River Thames Covered Claims, that the primary policies underlying the River Thames Policy are or are likely to be exhausted, and that River Thames must drop down to provide defense and indemnity to RCBO regarding the River Thames Covered Claims, as set forth in Count 13 above;

14. A declaration in RCBO's favor that World Auxiliary issued the World Auxiliary Policy to RCBO, that the World Auxiliary Policy covers the World Auxiliary Covered Claims, and that World Auxiliary must provide RCBO defense and indemnity for the World Auxiliary Covered Claims, that the primary policies underlying the World Auxiliary Policy are or are likely to be exhausted, and that World Auxiliary must drop down to provide defense and indemnity to RCBO regarding the World Auxiliary Covered Claims, as set forth in Count 14 above;

15. A declaration in RCBO's favor that Dominion issued the Dominion Policies to RCBO, that the Dominion Policies cover the Dominion Covered Claims, and that Dominion must provide RCBO defense and indemnity for the Dominion Covered Claims, that the primary policies underlying the Dominion Policies are or are likely to be exhausted, and that Dominion

must drop down to provide defense and indemnity to RCBO regarding the Dominion Covered Claims, as set forth in Count 15 above;

16. A declaration in RCBO's favor that English & American issued the English & American Policy to RCBO, that the English & American Policy covers the English & American Covered Claims, and that English & American must provide RCBO defense and indemnity for the English & American Covered Claims, that the primary policies underlying the English & American Policy are or are likely to be exhausted, and that English & American must drop down to provide defense and indemnity to RCBO regarding the English & American Covered Claims, as set forth in Count 16 above;

17. A declaration in RCBO's favor that Westport issued the Westport Umbrella Policy to RCBO, that the Westport Umbrella Policy covers the Westport Umbrella Covered Claims, and that Westport must provide RCBO defense and indemnity for the Westport Umbrella Covered Claims, that the primary and excess policies underlying the Westport Umbrella Policy are or are likely to be exhausted, and that Westport must drop down to provide defense and indemnity to RCBO regarding the Westport Umbrella Covered Claims, as set forth in Count 17 above;

18. A declaration in RCBO's favor that Travelers issued the Travelers Umbrella Policies to RCBO, that the Travelers Umbrella Policies cover the Travelers Umbrella Covered Claims, and that Travelers must provide RCBO defense and indemnity for the Travelers Umbrella Covered Claims, that the primary and excess policies underlying the Travelers Umbrella Policies are or are likely to be exhausted, and that Travelers must drop down to provide defense and indemnity to RCBO regarding the Travelers Umbrella Covered Claims, as set forth in Count 18 above;

19. A declaration in RCBO's favor that Pacific Employers issued the Pacific Employers Policy to RCBO, that the Pacific Employers Policy covers the Pacific Employers Covered Claims, and that Pacific Employers must provide RCBO defense and indemnity for the Pacific Employers Covered Claims, that the primary and excess policies underlying the Pacific Employers Policy are or are likely to be exhausted, and that Pacific Employers must drop down

to provide defense and indemnity to RCBO regarding the Pacific Employers Covered Claims, as set forth in Count 19 above;

20. A declaration in RCBO's favor that Lloyd's Umbrella issued the Lloyd's Umbrella Policies to RCBO, that the Lloyd's Umbrella Policies cover the Lloyd's Umbrella Covered Claims, and that Lloyd's Umbrella must provide RCBO defense and indemnity for the Lloyd's Umbrella Covered Claims, that the primary and excess policies underlying the Lloyd's Umbrella Policies are or are likely to be exhausted, and that Lloyd's Umbrella must drop down to provide defense and indemnity to RCBO regarding the Lloyd's Umbrella Covered Claims, as set forth in Count 20 above;

21. A declaration in RCBO's favor that Anglo French Umbrella issued the Anglo French Umbrella Policies to RCBO, that the Anglo French Umbrella Policies cover the Anglo French Umbrella Covered Claims, and that Anglo French Umbrella must provide RCBO defense and indemnity for the Anglo French Umbrella Covered Claims, that the primary and excess policies underlying the Anglo French Umbrella Policies are or are likely to be exhausted, and that Anglo French Umbrella must drop down to provide defense and indemnity to RCBO regarding the Anglo French Umbrella Covered Claims, as set forth in Count 21 above;

22. A declaration in RCBO's favor that Excess Insurance Co. Umbrella issued the Excess Insurance Co. Umbrella Policies to RCBO, that the Excess Insurance Co. Umbrella Policies cover the Excess Insurance Co. Umbrella Covered Claims, and that Excess Insurance Co. Umbrella must provide RCBO defense and indemnity for the Excess Insurance Co. Umbrella Covered Claims, that the primary and excess policies underlying the Excess Insurance Co. Umbrella Policies are or are likely to be exhausted, and that Excess Insurance Co. Umbrella must drop down to provide defense and indemnity to RCBO regarding the Excess Insurance Co. Umbrella Covered Claims, as set forth in Count 22 above;

23. A declaration in RCBO's favor that English & American Umbrella issued the English & American Umbrella Policies to RCBO, that the English & American Umbrella Policies cover the English & American Umbrella Covered Claims, and that English & American Umbrella must provide RCBO defense and indemnity for the English & American Umbrella

Covered Claims, that the primary and excess policies underlying the English & American Umbrella Policies are or are likely to be exhausted, and that English & American Umbrella must drop down to provide defense and indemnity to RCBO regarding the English & American Umbrella Covered Claims, as set forth in Count 23 above;

24. A declaration in RCBO's favor that Orion Umbrella issued the Orion Umbrella Policies to RCBO, that the Orion Umbrella Policies cover the Orion Umbrella Covered Claims, and that Orion Umbrella must provide RCBO defense and indemnity for the Orion Umbrella Covered Claims, that the primary and excess policies underlying the Orion Umbrella Policies are or are likely to be exhausted, and that Orion Umbrella must drop down to provide defense and indemnity to RCBO regarding the Orion Umbrella Covered Claims, as set forth in Count 24 above;

25. A declaration in RCBO's favor that London & Overseas Umbrella issued the London & Overseas Umbrella Policies to RCBO, that the London & Overseas Umbrella Policies cover the London & Overseas Umbrella Covered Claims, and that London & Overseas Umbrella must provide RCBO defense and indemnity for the London & Overseas Umbrella Covered Claims, that the primary and excess policies underlying the London & Overseas Umbrella Policies are or are likely to be exhausted, and that London & Overseas Umbrella must drop down to provide defense and indemnity to RCBO regarding the London & Overseas Umbrella Covered Claims, as set forth in Count 25 above;

26. A declaration in RCBO's favor that AHAC issued the AHAC Policy to RCBO, that the AHAC Policy covers the AHAC Covered Claims, and that AHAC must provide RCBO defense and indemnity for the AHAC Covered Claims, and that the primary policies underlying the AHAC Policy are or are likely to be exhausted, as set forth in Count 26 above;

27. An award in RCBO's favor as a result of CIGA's breach of its statutory duty;

28. An award in RCBO's favor for compensatory and consequential damages as a result of Insurer Defendants' bad faith conduct;

29. An award in RCBO's favor for punitive damages as a result of Chubb's bad faith conduct;

30. An order awarding RCBO its costs, expenses, and reasonable attorneys' fees as provided by law; and

31. Any such other and further relief as the Court deems just and proper.

DATED: MAY 19, 2026

COVINGTON & BURLING LLP
David B. Goodwin
Christine S. Haskett
Harper A. Johnson

*<u>/s/ Christine S. Haskett</u>*
Christine S. Haskett

FOLEY & LARDNER LLP
Eileen R. Ridley
Ann Marie Uetz
Matthew D. Lee
Thomas F. Carlucci
Jeffrey R. Blease
Counsel for the Roman Catholic Bishop of Oakland

**JURY DEMAND**

Plaintiff the Roman Catholic Bishop of Oakland hereby demands a trial by jury on all issues so triable.

DATED: MAY 19, 2026

COVINGTON & BURLING LLP
David B. Goodwin
Christine S. Haskett
Harper A. Johnson

*/s/ Christine S. Haskett*
Christine S. Haskett

FOLEY & LARDNER LLP
Eileen R. Ridley
Ann Marie Uetz
Matthew D. Lee
Thomas F. Carlucci
Jeffrey R. Blease

Counsel for the Roman Catholic Bishop of Oakland

# EXHIBIT A

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 1 | 370<br><br>363 | RG19041044 | 1971-1974<br>1971-1972 | CNA agreement/ROR 5/24/24 (363)<br>Lloyd's denial 11/29/23<br>Chubb denial 1/24/24<br>Am. Home ack/ROR 4/19/21<br>Westport ack/ROR 5/21/20 | 3/20/2020 | Onebeacon/ Armour<br>(Commercial Union) 3/25/2020<br>Swiss Re 3/25/20<br>(Emp. Reins.)<br><br>CNA 3/25/20<br><br>AIG (Am. Home) 3/25/20<br>Chubb 3/25/2020 |
| 2 | 426 | HG20053992 | 1973-1978 | CNA agreement/ROR 5/24/24<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br>Am. Home ack/ROR 4/26/21 | 3/20/2020 | Onebeacon<br><br>(Commercial Union) 3/25/2020<br>Swiss Re<br><br>(Emp. Reins.) 3/25/20<br><br>CNA 3/25/20<br><br>AIG (Am. Home) 3/25/20 |
| 3 | 97 | HG20053951 | 1972-1974 | CNA agreement/ROR 5/24/24<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br>Am. Home ack/ROR 10/31/22 | 3/20/2020 | Onebeacon<br><br>(Commercial Union) 3/25/2020<br>Swiss Re<br>(Emp. Reins.) 3/25/20<br><br>CNA 3/25/20 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | AIG (Am. Home) 3/25/20 |
| 4 | 102 | HG20053984 | 1972-1975 | CNA agreement/ROR 5/24/24<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br>Am. Home ack/ROR 9/29/21 | 3/20/2020 | Onebeacon<br>(Commercial Union) 3/25/2020<br>Swiss Re<br>(Emp. Reins.) 3/25/20<br>CNA 3/25/20<br>AIG (Am. Home) 3/25/20 |
| 5 | 73 | 21CV000055 | 1973-1974 | CNA ack/ROR 7/15/22<br>Am. Home ack/ROR 7/19/22<br>Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23 | 7/5/2022 | Intact 7/6/22<br>OneBeacon 7/6/22<br>Swiss Re 7/6/22<br>Travelers 7/6/22<br>AIG 7/6/22<br>CNA 7/6/22 |
| 6 | 96 | RG20057425 | 1972-1974 | Am. Home ack/ROR 2/25/21<br>Travelers ack. 12/18/2020 | 6/12/2020 | OneBeacon/<br>Commercial Union (Armour Risk) 6/17/20 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | CNA agreement/ROR 5/24/24<br>Westport ack. 7/17/20<br>Lloyd's denial 11/29/23 | | Travelers<br><br>6/17/2020<br><br>Swiss Re (Emp. Reins.) 6/17/2020<br><br>CNA 6/17/20<br><br>AIG 6/17/20 |
| 7 | 63 | HG19048685 | 1975-1976 | Am. Home ack/ROR 2/25/21<br>Travelers ack/ROR 12/18/20 - agreement<br>CNA agreement/ROR 5/24/24<br>Chubb denial 1/24/24<br>Westport ack.7/17/20<br>Lloyd's denial 11/29/23 | 6/12/2020 | AIG 6/17/20<br><br>CNA 6/17/20<br><br>SwissRe (ER Re) 6/17/2020<br><br>Travelers 6/17/20<br><br>Onebeacon (Armour Risk) 6/17/2020 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 8 | 105 | HG20053989 | 1972-1975 | Am. Home ack/ROR 2/25/21<br>Travelers ack. 12/18/2020<br><br>Chubb denial 1/24/24<br>Westport ack. 7/17/20<br>Lloyd's denial 11/29/23<br><br>CNA agreement/ROR 5/24/24 | 6/12/2020 | OneBeacon/ Armour<br><br>(Commercial Union)<br><br>6/12/2020<br><br>Chubb 6/16/20<br><br>Swiss Re (E. Re) 6/16/2020<br><br>CNA 6/16/2020<br><br>AIG 6/16/20<br><br>Travelers 6/16/20 |
| 9 | 169 | HG20053924 | 1972-1975 | Am. Home ack/ROR 2/25/21<br>Travelers ack. 12/18/2020<br><br>CNA agreement/ROR 5/24/24<br>Westport ack. 7/17/20<br><br>Chubb denial 1/24/24 | 6/12/2020 | OneBeacon/ Armour (Commercial Union) 6/17/20<br><br>Travelers 6/17/20<br><br>Swiss Re (ER Re) 6/17/20 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | CNA 6/17/20<br>AIG 6/17/20 |
| 10 | 94 | RG20057493 | 1970-1981 | Am. Home ack/ROR 2/25/21<br>CNA agreement/ROR 5/24/24<br>Chubb agreement/ROR 1/24/24<br>Westport ack. 7/17/20<br>Travelers agreement<br>Lloyd's denial 11/29/23 | 6/12/2020 | OneBeacon/ Armour (Commercial Union) 6/16/20<br>Travelers 6/16/20<br>Chubb 6/16/20<br>Swiss Re (ER Re) 6/16/20<br>CNA 6/16/20<br>Am. Home (AIG) 6/16/20 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 11 | 95 | HG20053983 | 1972-1973 | Am. Home ack/ROR 2/25/21<br>CNA denial 1/6/21<br>Westport ack. 7/17/20<br>Lloyd's denial 11/29/23<br>Chubb denial 1/24/24 | 6/12/2020 | Am. Home (AIG) 6/16/20<br>CNA 6/17/20<br>Swiss Re (ER Re)<br>6/17/2020<br>Travelers 6/17/20<br>OneBeacon/ Armour (Commercial Union) 6/17/20 |
| 12 | 258 | HG20055763 | 1984-1986 | Travelers ack. 12/18/2020<br>Lloyd's denial 11/29/23<br>Chubb agreement/ROR 9/9/24 | 6/12/2020 | Travelers 6/17/20<br>OneBeacon/ Armour (Commercial Union) 6/17/20 |
| 13 | 339 | HG19042086 | 1975-1977 | Am. Home ack/ROR 10/7/21 | 8/3/2020 | AIG 8/6/2020 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Travelers ack 12/18/20 agreement<br>CNA agreement/ROR 5/24/24<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23 | | Travelers 8/6/2020<br>Chubb 8/6/2020<br>Swiss Re 8/6/2020<br>Armour Risk 8/6/20 |
| 14 | 81 | RG20048852 | 1971-1972 | Am. Home ack/ROR 5/6/21<br>Travelers ack. 12/18/2020<br>CNA denial 1/6/21<br>Chubb ack 8/10/2020/agreement<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23 | 8/3/2020 | AIG 8/6/2020<br>Travelers 8/6/2020<br>Chubb 8/6/2020<br>Swiss Re 8/6/2020<br>Armour Risk 8/6/20 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 15 | 128<br><br>148<br><br>158 | RG19039073 | 1969-1975<br><br>1960-1967<br><br>1971-1974 | Am. Home ack/ROR 5/10/21<br>Travelers ack. 12/18/2020<br>CNA agreement/ROR 5/24/24 (158)<br>Chubb ack 8/10/2020/agreement<br>Lloyd's ack/ROR 11/29/23<br>Chubb denial 1/24/24 (158)<br>Chubb agreement/ROR 1/24/24 (148)<br>Chubb agreement/ROR 1/24/24 (128)<br>CNA agreement/ROR 5/24/24 (128)<br>CNA denial 1/26/21 (148) | 8/3/2020 | AIG 8/6/2020<br><br>Travelers 8/6/2020<br><br>Chubb 8/6/2020<br><br>Swiss Re 8/6/2020<br><br>Armour Risk 8/6/20 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 16 | 99 | HG19048691 | 1975-1976 | Am. Home ack/ROR 9/23/21<br>Travelers ack 12/18/20/agreement<br>CNA agreement/ROR 5/24/24<br>Chubb denial 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 8/3/2020 | AIG 8/6/2020<br>Travelers 8/6/2020<br>Chubb 8/6/2020<br>Swiss Re 8/6/2020<br>OneBeacon/ Armour Risk 8/6/20 |
| 17 | 236 | RG20061260 | 1972-1975 | Am. Home ack/ROR 10/5/21<br>Travelers ack 12/18/2020/agreement<br>CNA agreement/ROR 5/24/24<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23 | 8/3/2020 | AIG 8/6/2020<br>Travelers 8/6/2020<br>Chubb 8/6/2020<br>Swiss Re 8/6/2020 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Armour Risk 8/6/20 |
| 18 | 341 | RG20064221 | 1986-87 | Am. Home ack/ROR 10/7/21<br>Travelers ack/ROR. 8/11/23<br>CNA denial 1/19/21<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23 | 8/3/2020 | Armour Risk 8/6/20<br>CNA 8/6/2020<br>Swiss Re 8/6/2020<br>AIG 8/6/2020<br>Travelers 8/6/2020<br>Chubb 8/6/2020 |
| 19 | 465<br>385<br>386 | RG20056258 | 1970<br>1977<br>1981 | Am. Home ack/ROR 2/25/21<br>Travelers ack 12/18/20/agreement<br>CNA agreement/ROR 5/24/24 (368) | 8/3/2020 | AIG 8/6/2020<br>Travelers 8/6/2020 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Chubb ack 8/10/20/agreement<br>Lloyd's denial 11/29/23<br>Chubb denial 1/24/24 (Oak 2 and 3)<br>Chubb agreement/ROR 1/24/24 (Oak 1) | | Chubb 8/6/2020<br>Swiss Re 8/6/2020<br>Armour Risk 8/6/20 |
| 20 | 40 | RG20066518 | 1976-1978 | Am. Home ack/ROR 2/25/21<br>Travelers ack 12/18/20 - agreement<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 8/3/2020 | Travelers 8/6/2020<br>Chubb 8/6/2020<br>Swiss Re 8/6/2020 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | AIG 8/6/2020 |
| 21 | 48 | RG20067225 | 1979-1980 | Am. Home ack/ROR 10/11/21 - Lexington denial 10/11/21<br>Travelers ack 12/18/20 - agreement<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 8/3/2020 | Travelers 8/6/2020<br>Chubb 8/6/2020<br>Swiss Re 8/6/2020<br>AIG 8/6/2020 |
| 22 | 107<br>123 | RG20065425 | 1973-1975 | Am. Home ack/ROR 9/29/21<br>Travelers ack 12/18/20 - agreement<br>CNA agreement/ROR 5/24/24 | 8/3/2020 | Armour Risk 8/6/20<br>CNA 8/6/2020 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Chubb denial 1/24/24<br><br>Lloyd's denial 11/29/23<br><br>Westport ack/ROR 12/27/23 | | Swiss Re 8/6/2020<br><br>AIG 8/6/2020<br><br>Travelers 8/6/2020<br><br>Chubb 8/6/2020 |
| 23 | 275<br><br>272 | RG20065264 | 1969-1972 | Am. Home ack/ROR 10/12/21<br>Travelers ack. 12/18/2020<br><br>CNA denial 1/6/21<br>Chubb ack 8/10/20 - agreement<br>Lloyd's denial 11/29/23<br>Chubb agreement/ROR 1/24/24 | 8/3/2020 | Armour Risk 8/6/20<br><br>CNA 8/6/2020<br><br>Swiss Re 8/6/2020<br><br>AIG 8/6/2020<br><br>Travelers 8/6/2020<br><br>Chubb 8/6/2020 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 24 | 388 | RG20061429 | 1986-1989 | Am. Home ack/ROR 2/25/21<br>Travelers ack. 12/18/2020<br><br>CNA denial 1/6/21<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23 | 8/3/2020 | Armour Risk 8/6/20<br><br>CNA 8/6/2020<br><br>Swiss Re 8/6/2020<br><br>AIG 8/6/2020<br><br>Travelers 8/6/2020<br><br>Chubb 8/6/2020 |
| 25 | 111<br><br>125 | RG20065437 | 1973-1975 | Am. Home ack/ROR 2/25/21<br>Travelers ack/ROR 12/18/20 - agreement<br>CNA agreement/ROR 5/24/24<br>Chubb denial 9/9/20<br>Lloyd's denial 11/29/23 | 8/3/2020 | Armour Risk 8/6/20<br><br>CNA 8/6/2020<br><br>Swiss Re 8/6/2020<br><br>AIG 8/6/2020<br><br>Travelers 8/6/2020<br><br>Chubb 8/6/2020 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 26 | 109<br><br>124 | RG20065435 | 1973-1975 | Am. Home-ack/ ROR/investigation 10/7/21<br><br>Travelers ack/ROR 12/18/20 - agreement<br><br>CNA agreement/ROR 5/24/24<br><br>Chubb denial 1/24/24 Lloyd's denial 11/29/23 | 8/3/2020 | Onebeacon/ Armour<br><br>(Commercial Union) 6/16/2020<br><br>Aetna/ Travelers<br><br>6/16/2020<br><br>CNA 8/6/2020<br><br>Swiss Re 8/6/2020<br><br>AIG 8/6/2020<br><br>Chubb 8/6/2020 |
| 27 | 378 | RG20064084 | 1971 | Am. Home ack/ ROR 8/2/23<br><br>Travelers ack. 12/18/2020 | 8/3/2020 | Armour Risk 8/6/20<br><br>CNA 8/6/2020 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | CNA-prelim denial subject to evidence 1/6/21<br><br>Chubb ROR 9/14/20/ agreement<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23 | | Swiss Re 8/6/2020<br><br>AIG 8/6/2020<br><br>Travelers 8/6/2020<br><br>Chubb 8/6/2020 |
| 28 | 389 | RG20056654 | 1972-1975 | Travelers ack/ROR 12/18/20 - agreement<br><br>Chubb agreement/ROR 9/9/24<br><br>Lloyd's denial 11/29/23 | 8/3/2020 | Travelers 8/6/2020<br><br>Chubb 8/6/2020<br><br>Swiss Re 8/6/2020<br><br>AIG 8/6/2020 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 29 | 65 | RG20067602 | 1975-1979 | Am. Home-ack/ ROR/investigation 2/25/21<br><br>Travelers ack/ROR 12/18/20 - agreement<br><br>Chubb denial 1/24/24<br><br>Lloyd's denial 11/29/23<br><br>CNA agreement/ROR 5/24/24 | 8/3/2020 | Travelers 8/6/2020<br><br>Chubb 8/6/2020<br><br>Swiss Re 8/6/2020<br><br>AIG 8/6/2020<br><br>Armour Risk 8/6/20 |
| 30 | 408 | RG20064685 | 1972-1975 | Travelers denial 12/18/20<br><br>Chubb denial 1/24/24<br><br>Lloyd's denial 11/29/23<br><br>CNA agreement/ROR 5/24/24 | 8/25/2020 | AIG 12/16/20 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 31 | 448 | RG20064759 | 1966-1976 | Am. Home ack/ROR 3/9/22<br><br>Chubb denial 1/24/24<br>Travelers agreement 12/18/20<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 8/25/2020 | |
| 32 | 80 | RG20049371 | 1968-1969 | Am. Home denial 3/7/22<br>Travelers denial 12/18/20<br><br>Westport ack/ROR 4/1/24<br><br>Lloyd's denial 11/29/23<br><br>Chubb agreement/ROR 1/24/24<br>CNA denial 1/19/21 | 9/8/2020 | AIG 9/8/20 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 33 | 104 | RG20073791 | 1972-1975 | Am. Home denial 3/7/22<br>Travelers agreement 12/18/20<br>Lloyd's denial 11/29/23<br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | 9/22/2020 | Armour Risk 12/16/20<br>AIG 12/16/20 |
| 34 | 392<br>390<br>478 | RG20075233 | 1973-1975<br>1972-1975<br>1972-1975 | Lloyd's preliminary denial 11/29/23<br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | 10/2/2020 | Armour Risk 10/2/20 |
| 35 | 103 | RG20079359 | 1972-1980 | Am. Home denial 3/9/22<br>Travelers agreement 12/18/20<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 11/19/2020 | Swiss Re 12/16/20<br>Travelers 12/16/20<br>AIG 12/16/20<br>Chubb 12/16/20<br>CNA 12/16/20 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 36 | 184 | RG20075700 | 1972-1973 | Travelers issued denial-12/18/2020<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br>CNA denial 1/19/21 | 12/8/2020 | Armour Risk 12/7/20<br>Swiss Re 12/16/20<br>Travelers 12/16/20<br>AIG 12/16/20<br>Chubb 12/16/20<br>CNA 12/16/20 |
| 37 | 279 | RG21087706 | 1972-1974 | Am. Home denial 3/8/22<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 12/19/2020 | CNA 12/18/20<br>CNA 3/18/21<br>OneBeacon 3/18/21<br>Swiss Re 3/18/21<br>AIG 3/18/21 |
| 38 | 62 | RG20078903 | Dec-94 | Am. Home denial 10/13/21<br>9/8/2020<br>Travelers ack. 12/18/2020 | 8/3/2020 | AIG 8/6/2020<br>Travelers 8/6/2020 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Lloyd's denial 11/29/23<br>CNA denial pending further evidence – 1/6/21<br><br>Chubb denial 1/24/24 | | Chubb 8/6/2020<br><br>Swiss Re 8/6/2020 |
| 39 | 250 | RG20074690 | 1967-1971 | Chubb agreement<br><br>Lloyd's denial 11/29/23<br><br>Chubb agreement/ROR 1/24/24<br><br>Am. Home ack/ROR 10/28/21 | 2/17/2021 | OneBeacon 3/18/21<br><br>Swiss Re 3/18/21<br><br>Chubb 3/18/21<br><br>AIG 3/18/21 |
| 40 | 517 | RG20068095 | 1975-1976 | Travelers agreement<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 3/1/2021 | OneBeacon 3/18/2021<br><br>Swiss Re 3/18/2021<br><br>Travelers 3/18/2021<br><br>CNA 3/18/2021 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 41 | 241 | RG20085048 | 1972-1975 | Nationwide issued denial-3/9/22<br><br>Allied ack/ROR 11/23/21<br><br>Lloyd's denial 11/29/23<br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | 3/15/2021 | CNA 11/23/21<br><br>Nationwide 11/23/21<br><br>Chubb 11/23/21<br><br>TNC 11/23/21<br><br>K&K 11/23/21<br><br>AWAC 11/23/21<br><br>Liberty 11/23/21 |
| 42 | 473 | RG20068867 | 1966-1973 | Lloyd's denial 11/29/23<br>Chubb agreement/ROR 1/24/24<br>CNA denial 12/22/21 | 3/15/2021 | CNA 11/23/21<br><br>Nationwide 11/23/21<br><br>K&K 11/23/21<br><br>AWAC 11/23/21<br><br>Liberty 11/23/21<br><br>TNC 11/23/21<br><br>Chubb 11/23/21 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 43 | 43 | RG20075018 | 1968-1969 | Chubb denial 1/24/24 (willing to consider defense per 8/23/24 email)<br><br>Lloyd's denial 11/29/23<br>CNA denial 5/27/21 | 3/16/2021 | OneBeacon 3/22/21<br><br>Swiss Re 3/22/21<br><br>Travelers 3/22/21<br><br>CNA 3/22/21<br><br>Chubb 3/22/21 |
| 44 | 259 | RG21086498 | 1973-1974 | Nationwide issued denial-3/9/22<br>Lloyd's denial 11/29/23<br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | 7/7/2021 | AWAC 11/23/21<br><br>CNA 11/23/21<br><br>Nationwide 11/23/21<br><br>K&K 11/23/21<br><br>AWC 11/23/21<br><br>Liberty 11/23/21<br><br>TNC 11/23/21 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Chubb 11/23/21 |
| 45 | 483 | RG21096482 | 1959-1964 | Nationwide issued denial- 3/9/22<br>Lloyd's denial 11/29/23<br>Lloyd's ack/ROR 11/29/23<br><br>Chubb agreement/ROR 1/24/24<br>CNA denial 12/22/21 | 7/7/2021 | CNA 11/23/21<br><br>Chubb 11/23/21<br><br>Nationwide 11/23/21<br><br>AWAC 11/23/21<br><br>Liberty IU 11/23/21<br><br>TNCRRG 11/23/21 |
| 46 | 355<br><br>66 | CIVMSC21-01242 | 1969 | Am. Home denial 9/29/23<br><br>Lloyd's denial 11/29/23<br>Chubb agreement/ROR 1/24/24<br>CNA denial 8/27/21 | 7/20/2021 | Swiss Re 8/12/21<br><br>OneBeacon 8/12/21<br><br>CNA 8/12/21<br><br>AIG 8/12/21 |
| 47 | 387 | RG21105426 | Oct 1972 – Feb 1974 | Nationwide issued denial- 3/9/22 | 7/26/2021 | CNA 11/23/21 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | | Chubb 11/23/21<br><br>Nationwide 11/23/21<br><br>K&K 11/23/21<br><br>AWAC 11/23/21<br><br>Liberty IU 11/23/21<br><br>TNCRRG 11/23/21 |
| 48 | 61 | RG21105583 | 1964-1968 | Chubb agreement<br><br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23<br>Chubb agreement/ROR 1/24/24 | 9/8/2021 | Chubb 12/6/21<br><br>Swiss Re 12/6/21 |
| 49 | 260 | RG21110490 | 1973-1974 | Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23<br>CNA denial 1/12/22 | 9/8/2021 | OneBeacon 12/8/21<br><br>Swiss Re 12/8/21 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | AIG 12/8/21<br>CNA 12/8/21 |
| 50 | 46 | RG20069692 | 1970-1971 | Chubb ack/ROR 12/9/21 - agreement<br>Am. Home ack/ROR 3/8/22<br>Lloyd's denial 11/29/23<br>Chubb agreement/ROR 1/24/24 | 12/27/2021 | Intact 12/28/21<br>Swiss Re 12/28/21<br>AIG 12/28/21<br>CNA 12/28/21<br>Chubb 12/28/21 |
| 51 | 382 | CGC-20-584124 | 1984-1989 | Travelers denial 1/6/22<br>Lloyd's denial 11/29/23<br>Chubb agreement/ROR 9/9/24 | 12/27/2021 | Travelers 12/28/21<br>Ordinary Mutual 12/28/21 |
| 52 | 474 | 21CV002646 | 1968-1969 | Chubb agreement<br>Lloyd's denial 11/29/23<br>Chubb agreement/ROR 1/24/24 | 12/27/2021 | Chubb 12/28/21 |
| 53 | 484 | 21CV003945 | 1960-1961 | Chubb agreement<br>Lloyd's denial 11/29/23 | 1/19/2022 | Chubb 1/27/22 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Chubb agreement/ROR 1/24/24 | | |
| 54 | 392 | 22CV004880 | 1973-1975 | Travelers ack. 12/18/2020<br><br>CNA denial 2/8/22<br><br>Lloyd's preliminary denial 11/29/23<br><br>Am. Home ack/ROR 9/27/21 | 1/19/2022<br><br>3/20/2020 | Onebeacon<br><br>(Commercial Union) 3/25/2020 1/27/2022<br><br>Swiss Re (Emp Reins.)<br><br>3/25/2020<br><br>CNA 3/25/20<br><br>AIG (Am. Home) 3/25/20 |
| 55 | 360 | C22-00044 | 1990 | CNA denial 2/7/22<br><br>Lloyd's denial 11/29/23 | 1/18/2022 | CNA<br>Travelers 1/17/2022 |
| 56 | 352 | 21CV002553 | 1978-1979 | CNA agreement/ROR 5/24/24<br>Travelers agreement<br><br>Lloyd's denial 11/29/23 | 1/18/2022 | CNA 1/27/22<br><br>Travelers 1/27/22 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 57 | | 21CV003362 | 1958-1962 | Chubb agreement<br>Lloyd's ack/ROR 11/29/23<br><br>Chubb agreement/ROR 1/24/24 | 1/27/2022 | Chubb 1/28/22 |
| 58 | 444 | 22CV006696 | 1973 | Travelers ack.<br>Am. Home issued ack/prelim ROR 7/19/22<br>CNA denial 8/17/22<br>Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23 | 3/22/2022 | CNA 3/23/22<br><br>Intact Insurance 3/23/22<br><br>OneBeacon 3/23/22<br><br>AIG 3/23/22<br><br>Swiss Re 3/23/22 |
| 59 | 169 | 22CV006473 | 1972-1975 | Am. Home ack/ROR 4/22/22<br>CNA agreement/ROR 5/24/24<br>Lloyd's denial 11/29/23 | 3/22/2022 | CNA 3/23/22<br><br>Travelers 3/23/22<br><br>Intact Insurance 3/23/22<br><br>AIG 3/23/22 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Swiss Re 3/23/22<br>OneBeacon 3.23.22 |
| 60 | 255 | 22CV006519 | 1972 | Am. Home ack/ROR 5/10/22<br>Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23 | 3/22/2022 | Intact 3/23/22<br>OneBeacon 3/23/22<br>AIG 3/23/22<br>Swiss Re 3/23/22 |
| 61 | 256 | 22CV006624 | 1981-1982 | Chubb denial 1/24/24<br>Lloyd's denial 11/29/23 | 7/5/2022 | Intact 7/6/22<br>OneBeacon 7/6/22<br>Travelers 7/6/22<br>Chubb 7/6/22 |
| 62 | 167 | 22CV008082 | 1989-1990 | Lloyd's denial 11/29/23 | | |
| 63 | 470 | 21CV002261 | 1980 | CNA agreement/ROR 5/24/24<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23 | 7/5/2022 | Travelers 7/6/22<br>Chubb 7/6/22 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | CNA 7/6/22 |
| 64 | 32 | 21CV003446 | 1981 (for 6 weeks) | CNA ack/ROR 7/15/22<br>Lloyd's denial 11/29/23<br>Chubb decline/no present duty 9/9/24 | 7/5/2022 | Travelers 7/6/22<br>CNA 7/6/22 |
| 65 | 518 | 22CV010527 | 1963 or 1964 or 1965 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 7/5/2022 | Chubb 7/6/22<br>RPS Ins. 7/6/22 |
| 66 | 171 | 21CV000053 | 1970-1974 | Am. Home ack/ROR 7/19/22<br>Chubb ROR 10/5/22 - agreement<br>CNA ack. 7/15/22<br>Westport ack/ROR 10/14/22<br>Lloyd's denial 11/29/23 | 7/5/2022 | Chubb 7/6/22<br>Intact 7/6/22<br>OneBeacon 7/6/22 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Chubb agreement/ROR 1/24/24 | | Swiss Re 7/6/22<br>CNA 7/6/22<br>Intact Insurance 7/6/22<br>RPS Ins. 7/6/22 |
| 67 | 12 | 22CV011957 | 1972 | American Home – Ack/ROR letter 8/16/22<br>Westport (for E. Re) ack/ROR 7/18/22<br>Am. Home ack/ ROR 6/28/23<br>Lloyd's ack/ROR 11/29/23 | 7/5/2022 | Intact 7/6/22<br>OneBeacon 7/6/22<br>Swiss Re 7/6/22<br>AIG 7/6/22 |
| 68 | 375 | 22CV012253 | 1968-1969 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 10/3/2022 | Chubb 7/13/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 69 | 418 | Notice of Claim | 1991-1992 | | | |
| 70<br><br>70a | | Notice of Claim<br><br>22CV016748 | 1968 | Chubb agreement/ROR 1/24/24 | 9/12/2022 | Chubb<br>7/16/2023<br>Chubb 10/11/22<br>RPS Ins. 10/11/22 |
| 71<br><br>71a | 377 | Notice of Claim<br><br>22CV019472 | 1981-1982 | Travelers ack/ROR 9/5/23<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23 | 9/12/2022 | Travelers 10/11/22<br>CNA 10/11/22 |
| 72 | | Notice of Claim | 1973-1974 | Am. Home ack/ROR 10/31/22<br>Chubb denial 1/24/24 | 9/12/2022 | Intact 10/12/22<br>CNA 10/12/22<br>AIG 10/12/22<br>Westport 10/12/22 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Swiss Re 10/12/22 |
| 73<br><br>73a | 523 | Notice of Claim<br><br>22CV018875 | 1983-1986 | Travelers ack/ROR 8/11/23<br>Chubb agreement/ROR 9/9/24<br>Lloyd's denial 11/29/23 | 9/19/2022<br><br>12/28/2022 | Travelers<br><br>7/16/2023<br><br>Chubb<br>7/16/2023 |
| 74 | 185 | Notice of Claim<br><br>22CV020527 | 1966 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 9/12/2022 | Chubb |
| 75 | | Notice of Claim | 1966-1967 | Chubb no present duty 1/24/24 | 9/12/2022 | Chubb 10/12/22 |
| 76 | 113<br><br>126 | Notice of Claim<br><br>22CV023336 | 1972-1974 | Am. Home ack/ROR 10/31/22<br><br>Westport ack/ROR 10/14/22 | 9/13/2022 | Intact 10/12/22<br><br>AIG 10/12/22 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | CNA agreement/ROR 5/24/24 | | Westport 10/12/22<br><br>Swiss Re 10/12/22 |
| 77 | 401<br><br>528 | Mediation notice of claim<br><br>22CV021898<br><br>Mediation notice of claim<br><br>22CV015140 | 1968-1972 | Chubb denial 1/24/24 (willing to consider defense per 8/23/24 email)<br><br>Am. Home ack/ROR 7/24/23<br>Lloyd's denial 11/29/23 | 9/30/2022 | AIG<br><br>7/13/2023<br><br>Swiss Re 7/13/2023<br><br>Chubb 7/13/2023<br><br>OneBeacon 7/13/23 |
| 78 | 521 | Notice of Claim | 1956-1958 | | | |
| 79 | 510 | Notice of Claim | 1963-1965 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 9/13/2022 | Chubb 10/12/22 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 79a | | 22CV015938 | | | | |
| 80<br>80a | 511<br>512 | Notice of Claim<br>Notice of Claim<br>22CV015043 | 1974-1975<br>or "1980s | Travelers ack/ROR 8/11/23<br>Chubb denial 1/24/24<br>Am. Home denial 8/8/23<br>Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 10/3/2022 | CNA 7/13/23<br>AIG 7/13/23<br>Travelers 7/13/23<br>Swiss Re 7/13/23<br>OneBeacon 7/13/23<br>Chubb 7/13/23 |
| 81<br>81a | 526 | Notice of Claim<br>22CV018533 | 1970-1973 | Chubb agreement/ROR 9/9/24<br>Westport ack/ROR 10/14/22<br>Am. Home ack/ROR 7/8/23<br>Lloyd's denial 11/29/23 | 9/13/2022<br>6/1/2023 | Chartis<br>8/4/2023<br>Swiss Re<br>10/12/2022<br>8/4/2023<br>AIG<br>10/12/2022<br>Intact Insurance |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | 10/12/2022<br><br>Chubb<br>10/12/2022<br>8/4/2023<br><br>OneBeacon<br>8/4/2023<br><br>Intact 10/12/22 |
| 82<br><br>82a | 520 | Notice of Claim<br><br>22CV017826 | Mid to later 1970's | Chubb denial 1/24/24<br><br>Lloyd's ack/ROR 11/29/23<br><br>CNA agreement/ROR 5/24/24 | 9/13/2022<br><br>5/31/2023 | Chubb<br><br>10/12/2022<br><br>8/1/2023<br><br>Intact Insurance<br>10/12/2022 |
| 83 | 516 | Notice of Claim | 1977-1979 | Travelers ack/ROR 10/19/22<br><br>Lloyd's denial 11/29/23 | 9/13/2022 | Travelers 10/12/22<br><br>CNA 10/12/22 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | | CNA 10/12/22 |
| 84 | 405 | Notice of Claim<br><br>22CV022809 | 1996-1998 | Lloyd's denial 11/29/23 | | |
| 85 | 79 | Notice of Claim<br><br>22CV022502 | 1973-1974 | Westport ack/ROR 10/14/22<br>Lloyd's denial 11/29/23 | 9/13/2022<br><br>12/29/2022 | CNA<br><br>7/14/2023<br><br>AIG<br>7/14/2023<br><br>Swiss Re<br>7/14/2023<br><br>Intact 10/13/22<br><br>AIG 10/13/22<br><br>Westport 10/13/22<br><br>CNA 10/13/22<br><br>Swiss Re 10/13/22 |
| 86 | 78 | Notice of Claim | 1976-1977 | Travelers ack/ROR 10/18/22 | 9/13/2022 | Travelers 10/13/22 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 86a | | 22CV022476 | | Westport ack/ROR 10/14/22<br>Lloyd's denial 11/29/23<br>Chubb denial 1/24/24 | 10/11/2023 | CNA 10/13/22<br>Westport 10/13/22<br>Swiss Re 10/13/22 |
| 87<br>87a | 68 | Notice of Claim<br>22CV022518 | 1967-1972 | Chubb ROR 10/17/22 - agreement<br>Am. Home ack/ROR 10/20/22<br>Westport ack/ROR 10/14/22<br>Lloyd's denial 11/29/23<br>Chubb agreement/ROR 1/24/24 | 9/13/2022<br>10/16/2023 | Intact 10/13/22<br>AIG 10/13/22<br>Westport 10/13/22<br>Chubb 10/13/22<br>Swiss Re 10/13/22 |
| 88 | 74 | Notice of Claim | 1975-1976 | Travelers ack/ROR 10/18/22<br>Westport ack/ROR 10/14/22<br>Lloyd's denial 11/29/23 | 9/13/2022<br>10/12/2023 | Intact 10/13/22<br>Westport 10/13/22 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 88a | | 22CV022456 | | Am. Home ROR 12/18/23<br>Chubb denial 1/24/24 | | CNA 10/13/22<br>Travelers 10/13/22<br>Swiss Re 10/13/22 |
| 89 | 495<br>192 | Notice of Claim | 1957-1958 | Lloyd's denial 11/29/23 | 9/13/2022<br>5/31/2023 | |
| 89a | | 22CV023917<br>22CV023363 | | | | |
| 90 | 221 | Notice of Claim<br>22CV016031 | 1969 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 9/14/2022 | Chubb 12/3/22 |
| 91 | 219 | Notice of Claim | 1967-1969 | Chubb agreement/ROR 1/24/24<br>Lloyd's denial 11/29/23 | 9/14/2022 | Chubb 12/3/22 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | 22CV016111 | | | | |
| 92 | 217 | Notice of Claim<br><br>22CV016472 | 1977-1978 | Lloyd's ack/ROR 11/29/23 | 9/14/2022 | Travelers 12/3/22<br><br>CNA 12/3/22 |
| 93 | 220 | Notice of Claim<br><br>22CV016115 | 1959 | Lloyd's ack/ROR 11/29/23 | 9/14/2022 | |
| 94<br><br>94a | 71 | Notice of Claim<br><br>22CV022056 | 1972-1973 | Lloyd's denial 11/29/23<br>Am. Home ack/ROR 12/12/22 | 9/14/2022<br><br>10/9/2023 | AGRM 12/3/22<br><br>Swiss Re 12/3/22<br><br>AIG 12/3/22 |
| 95<br><br>95a | 76 | Notice of Claim<br><br>22CV022633 | 1974-1977 | Travelers ack/ROR 8/11/23<br>Am. Home ack/ROR 8/2/23<br>Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23<br>Chubb denial 1/24/24 | 9/15/2022<br><br>10/16/2023 | CNA<br><br>7/12/2023<br><br>Travelers<br><br>7/12/2023<br><br>AIG<br>7/12/2023<br><br>Swiss Re<br>7/12/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 96<br><br>96a | 69 | Notice of Claim<br><br>22CV022547 | 1974-1975 | Am. Home ack/ROR 7/27/23<br><br>Travelers ack/ROR 8/11/23<br><br>Travelers ack 11/2/21<br><br>Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23 | 9/15/2022<br><br>10/12/2023 | CNA<br><br>7/12/2023<br><br>Travelers 7/12/2023<br><br>AIG 7/12/2023<br><br>Swiss Re 7/12/2023<br><br>OneBeacon 7/12/23 |
| 97<br><br>97a | 77 | Notice of Claim<br><br>22CV022453 | 1973-1976 | Travelers ack/ROR 8/11/23<br><br>Am. Home ack/ ROR 7/24/23<br><br>Lloyd's denial 11/29/23<br><br>Westport ack/ROR 12/27/23<br>Chubb denial 1/24/24 | 9/15/2022<br>10/12/2023 | CNA 7/12/2023<br><br>Travelers<br><br>7/12/2023<br><br>AIG 7/12/2023<br><br>Swiss Re |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | 7/12/2023<br><br>OneBeacon 7/12/23 |
| 98<br><br>98a | 44 | Notice of Claim<br><br>22CV022606 | 1964-1969 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 9/30/2022<br><br>10/16/2023 | Chubb 7/13/23 |
| 99<br><br>99a | 45 | Notice of Claim<br><br>22CV022618 | 1975 | Am. Home ack/ROR 7/28/23<br>Travelers ack/ROR 8/11/23<br>Chubb denial 1/24/24<br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 9/15/2022<br><br>10/12/2023 | CNA<br><br>7/12/2023<br><br>Travelers<br><br>7/12/2023<br><br>AIG<br>7/12/2023<br><br>Swiss Re<br>7/12/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Chubb 7/12/2023<br><br>OneBeacon 7/12/23 |
| 100<br><br>100a | 46 | Notice of Claim<br><br>Notice of Claim<br><br>22CV022622 | 1970 | Chubb ack/ROR Chubb agreement/ROR 1/24/24/19/23<br>Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23 | 10/3/2022 | AIG 7/13/23<br><br>Swiss Re 7/13/23<br><br>Chubb 7/13/23 |
| 101<br><br>101a | 47 | Notice of Claim<br><br>22CV022733 | 1970s | Am. Home ack/ROR 7/31/23<br>Travelers ack/ROR 8/11/23<br>Chubb agreement/ROR 1/24/24<br>Chubb ack/ROR 11/30/23<br><br>Lloyd's ack/ROR 11/29/23<br><br>CNA agreement/ROR 5/24/24 | 9/15/2022<br><br>10/12/2023 | CNA<br><br>7/12/2023<br><br>Travelers<br><br>7/12/2023<br><br>AIG 7/12/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Swiss Re 7/12/2023<br>Chubb 7/12/2023<br>OneBeacon 7/12/23 |
| 102 | | Notice of Claim | 1970s | Travelers ack/ROR 8/11/23<br>Chubb denial 1/24/24<br>Am. Home ack/ROR 8/8/23<br>Westport ack/ROR 12/27/23 | 9/16/2022 | CNA<br>7/12/2023<br>Travelers<br>7/12/2023<br>AIG 7/12/2023<br>Swiss Re 7/12/2023<br>Chubb 7/12/2023<br>OneBeacon 7/12/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 103<br><br>103a | 49 | Notice of Claim<br><br>RG21108498 | 1976 | Am. Home ack/ROR 7/31/23<br>Travelers ack/ROR 8/11/23<br>Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23<br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 9/16/2022<br>10/16/2023 | CNA<br>7/12/2023<br>Travelers<br>7/12/2023<br>AIG<br>7/12/2023<br>Swiss Re<br>7/12/2023<br>Chubb<br>7/12/2023<br>OneBeacon 7/12/23 |
| 104 | 50 | Notice of Claim | 1981-1982 | Am. Home ack/ROR 7/31/23<br>Travelers ack/ROR 8/11/23<br>Chubb denial 1/24/24 | 9/16/2022<br>10/16/2023 | CNA<br>7/12/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 104a | | RG21108531 | | Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23 | | Travelers<br><br>7/12/2023<br><br>AIG 7/12/2023<br><br>Swiss Re 7/12/2023<br><br>Chubb 7/12/2023<br><br>OneBeacon 7/12/23 |
| 105 | | Notice of Claim | 1970s | Travelers ack/ROR 8/2/23<br><br>Chubb denial 1/24/24<br><br>Am. Home ack/ROR 8/2/23 | 9/16/2022 | CNA 7/12/2023<br><br>Travelers 7/12/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Westport ack/ROR 12/27/23 | | AIG 7/12/2023<br><br>Swiss Re 7/12/2023<br><br>Chubb 7/12/2023<br><br>OneBeacon 7/12/23 |
| 106 | | Notice of Claim | 1970s | Travelers ack/ROR 8/11/23<br>Chubb no present duty 1/24/24<br>Am. Home ack/ROR 8/8/23<br>Westport ack/ROR 12/27/23 | 9/16/2022 | CNA 7/12/2023<br><br>Travelers<br><br>7/12/2023<br><br>AIG 7/12/2023<br><br>Swiss Re 7/12/2023<br><br>Chubb 7/12/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | OneBeacon 7/12/23 |
| 107 | 51 | Notice of Claim<br><br>22CV023109 | 1960s | Chubb agreement/ROR<br>Lloyd's denial 8/9/24 | 9/16/2022 | Chubb 7/12/23 |
| 108 | 532 | Notice of Claim | 1990s | | | |
| 109<br><br>109a | 462 | Notice of Claim<br><br>22CV020631 | 1960s | Chubb agreement/ROR 1/24/24<br>Lloyd's denial 8/9/24 | 9/16/2022<br><br>2/27/2023 | Chubb<br><br>7/12/2023<br>7/31/2023 |
| 110 | 52 | Notice of Claim | 1976-1977 | Am. Home ack/ROR 7/27/23<br>Lloyd's denial 11/29/23<br>Travelers ack/ROR 8/11/23 | 9/16/2022<br><br>10/12/2023 | CNA<br><br>7/12/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 110a | | 22CV023118 | | Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | | Travelers 7/12/2023<br><br>AIG<br><br>7/12/2023<br><br>Swiss Re 7/12/2023<br><br>Chubb 7/12/2023<br><br>OneBeacon 7/12/23 |
| 111 | | Notice of Claim | 2000s | Great American denial 8/9/23 | 9/16/2022 | Great American 7/12/23 |
| 112 | | Notice of Claim | 1971 or 1972 | Chubb denial 1/24/24<br><br>Am. Home ack/ROR 8/10/23<br>Westport ack/ROR 12/27/23 | 9/16/2022 | Swiss Re 7/12/2023<br><br>Chubb<br><br>7/12/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | AIG<br>7/12/2023 |
| 113<br><br>113a | 508 | Notice of Claim<br><br>22CV018198 | 1972-1974 | Am. Home ack/ROR 9/23/23<br>Lloyd's denial 11/29/23<br>Westport ack/ROR 4/1/24 | 9/16/2022<br><br>9/1/2023 | Swiss Re<br><br>7/12/2023<br><br>AIG<br>7/12/2023<br><br>CNA<br>7/12/2023<br><br>OneBeacon 7/12/23 |
| 114<br><br>114a | 515 | Notice of Claim<br><br>22CV017850 | 1965 | Lloyd's ack/ROR 11/29/23<br><br>Chubb agreement/ROR 1/24/24 | 9/19/2022<br><br>12/28/2022 | Chubb<br><br>7/12/2023<br><br>7/16/2023 |
| 115 | 519 | Notice of Claim | 1974-1975<br>1978-1979 | Am. Home ack/ROR 7/28/23<br><br>Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23 | 9/19/2022<br>12/28/2022 | CNA<br>7/12/2023<br><br>7/16/2023<br><br>Travelers |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 115a | | 22CV018880 | | Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | | 7/12/2023<br>7/16/2023<br><br>AIG<br>7/12/2023<br>7/16/2023<br><br>Swiss Re<br>7/12/2023<br>7/16/2023<br><br>OneBeacon 7/12/23 |
| 116 | 524 | Notice of Claim<br><br>22CV018167 | 1992 | Lloyd's denial 11/29/23 | 9/19/2022<br>12/28/2022 | Not reported<br>7/12/2023 |
| 117 | 522 | Notice of Claim | 1972-1980 | Travelers ack/ROR 8/2/23<br><br>Westport ack/ROR 12/27/23<br>Chubb ack/ ROR 7/19/23<br><br>Chubb denial 1/24/24<br>Am. Home ack/ ROR 7/24/23<br>Lloyd's denial 11/29/23 | 9/19/2022<br>12/28/2022 | CNA<br>7/12/2023<br><br>7/16/2023<br><br>Travelers<br>7/12/2023<br><br>7/16/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 117a | | 22CV017382 | | CNA agreement/ROR 5/24/24 | | AIG<br><br>7/12/2023<br>7/16/2023<br><br>Swiss Re<br>7/12/2023<br>7/16/2023<br><br>Chubb<br>7/12/2023<br>7/16/2023<br><br>OneBeacon 7/13/23 |
| 118<br><br>118a | 514 | Notice of Claim<br><br>22CV018172 | 1985-1986 | Travelers ack/ROR 8/11/23<br><br>Chubb agreement/ROR 9/9/24<br>Lloyd's denial 11/29/23<br>Travelers ack/ROR 9/5/23 | 9/19/2022<br><br>9/1/2023 | Travelers 7/13/23<br><br>Chubb 7/13/23 |
| 119 | 88 | Notice of Claim | 1960-1962 | Chubb no present duty 1/24/24 | 9/13/2022 | Chubb 10/12/22 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 120 | | Notice of Claim | 1963 or 1964 | Chubb no present duty 1/24/24 | 9/19/2022 | Chubb 7/13/23 |
| 121 | 384 | 22CV015222 | 1977 | Lloyd's ROR 11/29/23<br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | 9/19/2022 | Travelers 7/13/23<br><br>CNA 7/13/23 |
| 122<br><br>122a | 388 | Notice of Claim<br><br>RG20061429 | 1986-1989 | Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23 | 8/3/2020<br><br>9/19/2022 | Travelers 7/13/23 |
| 123 | 378 | Notice of Claim | 1971 | Am. Home ack/ ROR 8/2/23 | 9/19/2022 | AIG 7/13/23<br><br>Swiss Re 7/13/23<br><br>OneBeacon 7/13/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 124<br><br>124a | 383 | Notice of Claim<br><br>22CV019574 | 1978 | Lloyd's ROR 11/29/23<br>Travelers ack/ROR 8/11/23<br>CNA agreement/ROR 5/24/24 | 9/19/2022 | Travelers 7/13/23 |
| 125<br><br>125a | 341 | Notice of Claim<br><br>RG20064221 | 1986 | Travelers ack/ROR 8/2/23<br><br>Chubb denial 1/24/24 | 9/19/2022<br><br>8/3/2020 | Travelers 7/13/23 |
| 126<br><br>126a | 379 | Notice of Claim<br><br>22CV017880 | 1974-1975 | Travelers ack/ROR 8/11/23<br>Westport ack/ROR 12/27/23<br>Am. Home ack/ROR 8/8/23<br>CNA agreement/ROR 5/24/24 | 9/19/2022 | CNA<br><br>7/12/2023<br><br>Travelers<br><br>7/12/2023<br><br>AIG<br>7/12/2023<br><br>Swiss Re<br>7/12/2023<br><br>OneBeacon 7/13/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 127<br><br>127a | 345 | Notice of Claim<br><br>22CV017872 | 1985-1986 | Travelers ack/ROR 8/11/23<br>Chubb agreement/ROR 9/9/24<br>Lloyd's ack/ROR 11/29/23<br>Chubb ack 12/15/23 | 9/20/2022 | Travelers 7/13/23<br>Chubb 7/13/23 |
| 128<br><br>128a | 381 | Notice of Claim<br><br>22CV015297 | 1978-1979 | Travelers ack/ROR 8/11/23<br>Lloyd's ack/ROR 11/29/23<br>CNA agreement/ROR 5/24/24 | 9/20/2022 | CNA 7/13/23<br>Travelers 7/13/23 |
| 129<br><br>129a | 278 | Notice of Claim<br><br>10/27/2022 | 1969-1970 | Chubb agreement/ROR 8/23/24<br>Lloyd's ROR 11/29/23 | 9/20/2022 | Chubb 7/13/23<br>OneBeacon 7/13/23 |
| 130 | 472 | Notice of Claim | 1984-1987 | Travelers ack/ROR 8/11/23 | 9/20/2022 | Travelers 7/13/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | 22CV020696 | | Lloyd's ack/ROR 11/29/23<br>Chubb agreement/ROR 9/9/24 | | Chubb 7/13/23 |
| 131 | 331 | Notice of Claim | 1974-1976 | CNA agreement/ROR 5/24/24<br>Am. Home ack/ROR 8/7/23<br>Westport ack/ROR 12/28/23<br>Travelers ack/ROR 8/11/23 | 9/20/2022<br>5/30/2023 | CNA 7/13/23<br>Travelers 7/13/23<br>AIG 7/13/23<br>Swiss Re 7/13/23<br>OneBeacon 7/13/23 |
| 132 | 329 | Notice of Claim | 1976-1979 | Travekers ack/ ROR 8/11/23<br>CNA agreement/ROR 5/24/24 | 9/20/2022<br>5/30/2023 | CNA 7/13/23<br>Travelers 7/13/23<br>AIG 7/13/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Swiss Re 7/13/23<br><br>OneBeacon 7/13/23<br><br>Chubb 7/13/23 |
| 133 | 354 | Notice of Claim | 1981-1982 | Travelers ack/ROR 8/11/23 | 9/20/2022<br><br>5/31/2023 | Travelers<br><br>7/12/2023<br>8/1/2023<br><br>Chubb<br>7/12/2023<br>8/1/2023 |
| 134 | 351 | Notice of Claim | 1994 and/or 1995 | | 9/20/2022<br>5/31/2023 | Not reported<br>7/13/2023 |
| 135 | 330 | Notice of Claim | 1972 | Am. Home ack/ROR 7/28/23 | 9/20/2022<br><br>5/31/2023 | AIG<br><br>7/14/2023<br><br>Chartis<br>8/1/2023<br><br>Swiss Re<br>7/14/2023<br>8/1/2023<br><br>OneBeacon<br>7/14/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | 8/1/2023 |
| 136 | 356 | Notice of Claim | 1973 and/or 1974 | Am. Home ack/ROR 8/7/23 | 9/20/2022<br><br>5/31/2023 | CNA<br><br>7/12/2023<br>8/1/2023<br><br>AIG<br>7/12/2023<br><br>Chartis<br>8/1/2023<br><br>Swiss Re<br>7/12/2023<br>8/1/2023<br><br>OneBeacon<br>7/12/2023<br>8/1/2023 |
| 137<br><br><br>137a | 83 | Notice of Claim<br><br><br>22CV020073 | 1964 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 9/20/2022<br><br>2/23/2023 | Chubb 07/12/2023<br><br>7/25/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 138<br><br><br>138a | 238 | Notice of Claim<br><br><br>22CV020075 | 1998-1999 | Lloyd's denial 11/29/23 | 9/20/2022<br>10/15/2023 | Not reported |
| 139<br><br><br>139a | 85 | Notice of Claim<br><br><br>22CV020082 | 1968 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 9/21/2022<br>2/23/2023 | Chubb 07/12/2023<br>7/25/2023 |
| 140<br><br><br>140a | 86 | Notice of Claim<br><br><br>22CV020101 | 1975-1980 | Travelers ack/ROR 8/11/23<br>Chubb denial 1/24/24<br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 9/21/2022<br>2/23/2023 | CNA<br>7/12/2023<br>7/25/2023<br><br>Travelers<br>7/12/2023<br>7/25/2023<br><br>Swiss Re<br>7/12/2023<br>7/25/2023<br><br>OneBeacon<br>7/12/2023<br>7/25/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Chubb 07/12/2023<br>7/25/2023 |
| 141<br><br>141a | 121 | Notice of Claim<br><br>22CV020085 | 1984-1987 | Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23<br>Chubb agreement/ROR 9/9/24 | 9/21/2022<br>10/15/2023 | Travelers 7/13/23<br>Chubb 7/13/23 |
| 142<br><br>142a | 172 | Notice of Claim<br><br>22CV020135 | 1966 and 1968 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 9/21/2022<br>2/23/2023 | Chubb 07/12/2023<br>7/25/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 143<br><br>143a | 165 | Notice of Claim<br><br>22CV020136 | 1974 | Am. Home ack/ROR 7/27/23<br>Lloyd's ack/ROR 11/29/23<br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 9/21/2022<br>2/23/2023 | CNA<br>7/14/2023<br>7/25/2023<br>AIG<br>7/14/2023<br>7/25/2023<br>Swiss Re<br>7/14/2023<br>7/25/2023 |
| 144<br><br>144a | 271 | Notice of Claim<br><br>22CV020164 | 1975-1976 | Travelers ack/ROR 8/11/23<br>Lloyd's ack/ROR 11/29/23<br>Westport ack/ROR 12/27/23<br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | 9/21/2022<br>2/24/2023 | CNA<br>7/12/2023<br>7/31/2023<br>Travelers<br>7/12/2023<br>7/31/2023<br>Swiss Re<br>7/12/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | 7/31/2023<br><br>OneBeacon<br>7/12/2023<br>7/31/2023 |
| 145<br><br>145a | 120 | Notice of Claim<br><br>22CV020287 | 1970-1973 | Chubb agreement/ROR 1/24/24<br>Am. Home ack/ROR 8/7/23<br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23 | 9/21/2022<br><br>2/27/2023 | AIG<br><br>7/12/2023<br><br>Chartis<br><br>7/31/2023<br><br>Swiss Re<br>7/12/2023<br>7/31/2023<br><br>OneBeacon<br>7/12/2023<br>7/31/2023<br><br>Chubb<br>7/12/2023<br>7/31/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 146<br><br>146a | 87 | Notice of Claim<br><br>22CV020197 | 1971-1972 | Am. Home ack/ROR 7/28/23<br>Lloyd's ack/ROR 11/29/23<br><br>Chubb denial 1/24/24<br><br>Westport ack/ROR 12/27/23 | 9/22/2022<br><br>2/27/2023 | AIG<br><br>7/12/2023<br><br>Chartis 7/31/2023<br><br>Swiss Re 7/12/2023 7/31/2023<br><br>OneBeacon 7/12/2023 7/31/2023<br><br>Chubb 7/13/23 |
| 147<br><br>147a | 457 | Notice of Claim<br><br>22CV020298 | 1966-1967 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 9/21/2022<br><br>2/27/2023 | Chubb<br><br>7/12/2023<br><br>7/31/2023 |
| 148 | | Notice of Claim | 1942-1949 | | 9/22/2022 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 149<br><br>149a | 118 | Notice of Claim<br><br>22CV020455 | 1976-1979 | Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 9/22/2022<br>8/29/2023 | CNA<br>7/12/2023<br>Travelers<br>7/12/2023 |
| 150 | | Notice of Claim | 1964, 1965, and/or 1966 | Chubb no present duty 1/24/24 | 9/22/2022 | Chubb 7/13/23 |
| 151<br><br>151a | 114 | Notice of Claim<br><br>22CV020423 | 1973-1974 | Am. Home ack/ROR 7/24/23<br>Lloyd's ROR 11/29/23<br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 9/22/2022<br>8/29/2023 | CNA<br>7/13/2023<br>AIG<br>7/13/2023<br>Swiss Re 7/13/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | OneBeacon 7/13/23 |
| 152<br><br>152a | 174 | Notice of Claim<br><br>22CV020491 | 1979-1980 | Travelers ack/ROR 8/11/23<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 9/22/2022<br><br>2/27/2023 | CNA<br><br>7/13/2023<br>7/31/2023<br><br>Travelers<br>7/13/2023<br>7/31/2023<br><br>Chubb<br>7/13/2023<br>7/31/2023 |
| 153<br><br>153a | 110 | Notice of Claim<br><br>22CV020636 | 1971-1972 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23<br>Am. Home ack/ROR 8/1/23 | 9/22/2022<br><br>2/24/2023 | AIG<br><br>7/13/2023<br><br>7/31/2023<br><br>Swiss Re<br>7/13/2023<br>7/31/2023<br><br>Chubb<br>7/13/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | 7/31/2023<br><br>OneBeacon<br>7/13/2023<br>7/31/2023 |
| 154<br><br>154a | 460 | Notice of Claim<br><br>22CV020654 | 1977-1982 | Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br><br>CNA agreement/ROR 5/24/24 | 9/22/2022<br>2/27/2023 | CNA<br>7/13/2023<br><br>7/31/2023<br><br>Travelers<br>7/13/2023<br>7/31/2023<br><br>Chubb<br>7/13/2023<br>7/31/2023 |
| 155<br><br>155a | 234 | Notice of Claim<br><br>22CV020661 | 1963-1965 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 9/26/2022<br><br>10/15/2023 | Chubb 7/13/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 156<br><br>156a | 112 | Notice of Claim<br><br>22CV020795 | 1982-1983 | Lloyd's ack/ROR 11/29/23 | 9/26/2022<br>10/15/2023 | Travelers<br>7/13/2023 |
| 157<br><br>157a | 193 | Notice of Claim<br><br>22CV020519 | 1980 | Chubb denial 1/24/24<br>Travelers ack/ ROR 8/11/23<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 9/26/2022<br>6/1/2023 | CNA<br>7/13/2023<br>8/4/2023<br>Travelers<br>7/13/2023<br>8/4/2023<br>Chubb<br>7/13/2023<br>8/4/2023 |
| 158 | 228 | Notice of Claim | 1972-1976 | Chubb ack/ ROR 7/19/23<br>Travelers ack/ROR 8/11/23<br>Am. Home ack/ROR 8/7/23<br>Lloyd's ack/ROR 11/29/23 | 9/26/2022<br>2/27/2023 | CNA<br>7/13/2023<br>7/31/2023<br>Travelers<br>7/13/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 158a | | 22CV020602 | | Westport ack/ROR 12/27/23<br><br>CNA agreement/ROR 5/24/24 | | 7/31/2023<br><br>AIG<br><br>7/13/2023<br><br>Chartis 7/31/2023<br><br>OneBeacon 7/13/2023 7/31/2023<br><br>Swiss Re 7/13/2023 7/31/2023<br><br>Chubb 7/13/2023 7/31/2023 |
| 159 | 240 | Notice of Claim | 1969-1971 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/ROR 8/10/23<br>Westport ack/ROR 12/27/23 | 9/26/2022<br><br>10/15/2023 | AIG 7/13/23<br><br>Swiss Re 7/13/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 159a | | 22CV020808 | | | | Chubb 7/13/23<br><br>OneBeacon 7/13/23 |
| 160<br><br>160a | 91 | Notice of Claim<br><br>22CV021712 | 1969, 1973-1974 | Chubb agreement/ROR 1/24/24<br><br>Am. Home ack/ ROR 7/24/23<br><br>Westport ack/ROR 12/27/23<br><br>CNA agreement/ROR 5/24/24 | 9/29/2022<br><br>6/1/2023 | CNA<br><br>7/13/2023<br>8/4/2023<br><br>AIG<br><br>7/13/2023<br><br>Chartis<br>8/4/2023<br><br>Swiss Re<br>7/13/2023<br>8/4/2023<br><br>Chubb<br>7/13/2023<br>8/4/2023<br><br>OneBeacon<br>7/13/2023<br>8/4/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 161 | 428 | Notice of Claim | 1959-1960 | | 9/29/2022 | |
| 162<br><br>162a | 420 | Notice of Claim<br><br>22CV015357 | October 1972-June 1974 | Am. Home ack/ROR 7/31/23<br>CNA agreement/ROR 5/24/24<br>Lloyd's denial 11/29/23 | 9/28/2022 | AIG 7/13/23<br>Swiss Re 7/13/23<br>OneBeacon 7/13/23 |
| 163 | 414 | Notice of Claim<br><br>22CV015576 | 1974-1977 | Am. Home ack/ROR 7/25/23<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24<br>Westport ack/ROR 4/1/24 | 9/29/2022 | CNA 7/13/23<br>Travelers 7/13/23<br>AIG 7/13/23<br>Swiss Re 7/13/23<br>OneBeacon 7/13/23 |
| 164 | 326 | Notice of Claim | 1974 | Am. Home ack/ROR 8/16/23<br>CNA agreement/ROR 5/24/24<br>Lloyd's denial 11/29/23 | 9/29/2022 | CNA 7/13/23<br>AIG 7/13/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | 22CV015539 | | Westport ack/ROR 12/27/23 | | Swiss Re 7/13/23<br>OneBeacon 7/13/23 |
| 165 | 419 | Notice of Claim | 1973-1974 | Am. Home ack/ROR 7/24/23<br>Westport ack/ROR 12/27/23 | 9/29/2022 | CNA 7/13/23<br>AIG 7/13/23<br>Swiss Re 7/13/23<br>OneBeacon 7/13/23 |
| 166<br>166a | 417 | Notice of Claim<br>22CV018177 | 1979-1983 | Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 9/29/2022 | CNA 7/13/23<br>Travelers 7/13/23<br>Chubb 7/13/23 |
| 167 | 423 | Notice of Claim<br>22CV018460 | 1972-1973 | Am. Home ack/ROR 8/16/23<br>Westport ack/ROR 12/27/23<br>Lloyd's denial 11/29/23 | 9/29/2022 | AIG<br>7/14/2023<br>Swiss Re 7/14/2023 |
| 168 | 430 | Notice of Claim | 1979 | Lloyd's denial 11/29/23 | 9/29/2022 | CNA 7/13/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | 22CV019871 | | CNA agreement/ROR 5/24/24 | | Travelers 7/13/23 |
| 169 | 432 | Notice of Claim | 1991-1992 | | 9/29/2022 | Not reported 7/13/2023 |
| 170 | 409 | Notice of Claim 22CV018998 | 1991-1998 | Lloyd's denial 11/29/23 | 9/29/2022 | |
| 171<br>171a | 412 | Notice of Claim<br>22CV021259 | 1982-1985 | Chubb agreement/ROR 9/9/24<br>Lloyd's denial 11/29/23 | 9/29/2022 | Travelers 7/13/23<br>Chubb 7/13/23 |
| 172 | 415 | Notice of Claim 22CV018180 | 1978 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 9/29/2022 | CNA 7/13/23<br>Travelers 7/13/23 |
| 173 | 425 | Notice of Claim<br>22CV024211 | Summer 1969-1974 | Am. Home ack/ROR 8/10/23<br>Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 9/29/2022 | CNA 7/13/23<br>AIG 7/13/23<br>Swiss Re 7/13/23<br>OneBeacon 7/13/23 |
| 174 | 413 | Notice of Claim | 1976-1979 | Travelers ack/ROR 8/11/23 | 9/29/2022 | CNA 7/13/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | 22CV023198 | | Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23<br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | | Travelers 7/13/23<br><br>Swiss Re 7/13/23 |
| 175<br><br>175a | 525 | Notice of Claim<br><br>22CV022493 | 1968-1972 | Am. Home ack/ROR 7/31/23<br>Lloyd's denial 11/29/23<br>Chubb agreement/ROR 9/9/24<br>Westport ack/ROR 12/27/23 | 9/29/2022 | AIG 7/13/23<br><br>Swiss Re 7/13/23<br><br>Chubb 7/13/23<br><br>OneBeacon 7/13/23 |
| 176<br><br>176a | 485 | Notice of Claim<br><br>22CV020607 | 1963 and/or 1964 | Lloyd's ack/ROR 11/29/23<br><br>Chubb agreement/ROR 1/24/24 | 9/30/2022<br><br>1/24/2023 | Chubb<br><br>7/14/2023 |
| 177 | 282 | Notice of Claim | 1962 | Lloyd's ack/ROR 11/29/23<br><br>Chubb agreement/ROR 1/24/24 | 9/30/2022 | Chubb<br><br>7/14/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 177a | | 22CV022358 | | | 1/24/2023 | |
| 178<br><br>178a | 461 | Notice of Claim<br><br>22CV022806 | 1972, 1973, or 1974 | Am. Home ack/ROR 7/24/23<br>Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 9/30/2022<br><br>3/1/2023 | CNA<br><br>7/13/2023<br>7/31/2023<br><br>AIG<br>7/13/2023<br><br>Swiss Re<br>7/13/2023<br>7/31/2023<br><br>Chartis<br>7/31/2023<br><br>OneBeacon<br>7/13/2023<br>7/31/2023 |
| 179<br><br>179a | 316 | Notice of Claim<br><br>22CV022956 | 1968 | Chubb agreement/ROR 1/24/24 | 9/29/2022<br><br>10/8/2023 | Chubb 7/13/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 180<br><br>180a | 129 | Notice of Claim<br><br>22CV021638 | In or around 1974, 1975, 1976, 1977, 1978, 1979, 1980, and/or 1981 | Travelers ack/ROR 8/11/23<br><br>CNA agreement/ROR 5/24/24<br>Chubb denial 1/24/24<br>Westport 12/27/23<br>Am. Home ack/ROR 8/16/23<br>Lloyd's ack/ROR 11/29/23 | 10/4/2022<br><br>2/1/2023 | CNA 07/13/2023<br><br>7/17/2023<br><br>Travelers 07/13/2023<br>7/17/2023<br><br>AIG<br>7/13/2023<br>7/17/2023<br><br>Swiss Re<br>7/13/2023<br>7/17/2023<br><br>OneBeacon<br>7/13/2023<br>7/17/2023<br><br>Chubb 07/13/2023<br>7/17/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 181<br><br>181a | 127 | Notice of Claim<br><br>22CV020487 | In or around 1972, 1973, 1974, 1975, 1976 and/or 1977 | Am. Home ack/ROR 7/28/23<br>Travelers ack/ROR 8/11/23<br>Lloyd's ack/ROR 11/29/23<br>Westport ack/ROR 12/27/23<br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | 10/4/2022<br>1/25/2023 | CNA<br>7/13/2023<br>7/17/2023<br>Travelers<br>7/13/2023<br>7/17/2023<br>AIG<br>7/13/2023<br>7/17/2023<br>Swiss Re<br>7/13/2023<br>7/17/2023<br>OneBeacon 7/13/23 |
| 182 | 130 | Notice of Claim | In or around 1973, 1974 and/or 1975 | Travelers ack/ROR 8/11/23<br>Lloyd's ack/ROR 11/29/23<br>Westport ack/ROR 12/27/23 | 10/5/2022<br>1/27/2023 | CNA<br>7/13/2023<br>7/17/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 182a | | 22CV020432 | | CNA agreement/ROR 5/24/24<br>Am. Home ack/ROR 8/1/2023 | | Travelers<br><br>7/13/2023<br>7/17/2023<br><br>AIG<br>7/13/2023<br>7/17/2023<br><br>Swiss Re<br>7/13/2023<br>7/17/2023<br><br>OneBeacon 7/13/23 |
| 183<br><br>183a | 315 | Notice of Claim<br><br>22CV020431 | In or around 1977 and/or 1978 | Travelers ack/ROR 8/11/23<br>Lloyd's ack/ROR 11/29/23<br><br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | 10/4/2022<br><br>1/25/2023 | CNA<br><br>7/13/2023<br><br>7/17/2023<br><br>Travelers<br>7/13/2023<br>7/17/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 184<br><br><br><br><br><br><br><br>184a | 131 | Notice of Claim<br><br><br><br><br><br><br><br>22CV020434 | In or around 1969, 1970, 1971 and/or 1972 | Chubb agreement/ROR 1/24/24<br><br>Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/ ROR 7/24/23<br><br>Westport ack/ROR 12/27/23 | 10/5/2022<br><br>1/25/2023 | AIG<br><br>7/13/2023<br><br>7/17/2023<br><br>Swiss Re<br><br>7/13/2023<br>7/17/2023<br><br>Chubb<br>7/13/2023<br>7/17/2023<br><br>OneBeacon 7/14/23 |
| 185 | 132 | Notice of Claim | In or around 1965, 1966, 1967, 1968, 1969, 1970, 1971, and/or 1972 | Chubb agreement/ROR 1/24/24<br><br>Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/RoR 7/25/23<br>Westport ack/ROR 12/27/23 | 10/5/2022<br><br>1/25/2023 | AIG<br><br>7/13/2023<br><br>7/17/2023<br><br>Swiss Re<br>7/13/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 185a | | 22CV020436 | | | | 7/17/2023<br><br>Chubb<br>7/13/2023<br>7/17/2023<br><br>OneBeacon 7/14/23 |
| 186<br><br>186a | 133 | Notice of Claim<br><br>22CV020473 | In or around 1970, 1971, and/or 1972 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/ROR 8/7/23<br>Westport ack/ROR 12/27/23 | 10/5/2022<br><br>1/30/2023 | AIG<br><br>7/13/2023<br><br>7/17/2023<br><br>Swiss Re<br>7/13/2023<br>7/17/2023<br><br>Chubb<br>7/13/2023<br>7/17/2023<br><br>OneBeacon 7/14/23 |
| 187 | 135 | Notice of Claim | In or around 1965, 1966, 1967, 1968, 1969, 1970, 1971, 1972 and/or 1973 | Chubb agreement/ROR 1/24/24 | 10/5/2022 | AIG |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 187a | | 22CV020478 | | Am. Home ack/ ROR 7/24/23<br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23 | 2/23/2023 | 7/13/2023<br>7/31/2023<br><br>Swiss Re<br><br>7/13/2023<br>7/31/2023<br><br>OneBeacon<br>7/13/2023<br>7/31/2023<br><br>Chubb<br>7/13/2023<br>7/31/2023 |
| 188<br><br>188a | 134 | Notice of Claim<br><br>22CV020474 | In or around 1969 and/or 1970 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 10/5/2022<br><br>1/30/2023 | Chubb<br><br>7/13/2023<br><br>7/16/2023<br><br>OneBeacon 7/14/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 189<br><br>189a | 136 | Notice of Claim<br><br>22CV020485 | In or around 1975, 1976, 1977, 1978, 1979, 1980, and/or 1981 | Travelers ack/ROR 8/11/23<br><br>CNA agreement/ROR 5/24/24<br>Chubb denial 1/24/24<br><br>Am. Home ack/ ROR 7/24/23<br><br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23 | 10/7/2022<br><br>1/30/2023 | CNA<br><br>7/13/2023<br>7/17/2023<br><br>AIG<br>7/13/2023<br>7/17/2023<br><br>Swiss Re<br>7/13/2023<br>7/17/2023<br><br>Chubb<br>7/13/2023<br>7/17/2023<br><br>Travelers 7/14/23<br><br>OneBeacon 7/14/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 190 | 138 | Notice of Claim | In or around 1968, 1969, 1970, 1971, 1972, 1973, 1974, and/or 1975 | Travelers ack/ROR 8/11/23 | 10/7/2022 | CNA |
| | | | | Lloyd's ack/ROR 11/29/23 | 1/31/2023 | 7/14/2023 |
| | | | | Chubb agreement/ROR 1/24/24 | | 7/16/2023 |
| | | | | Westport ack/ROR 12/27/23 | | |
| | | | | Am. Home ack/ RoR 7/25/23 | | Travelers |
| | | | | CNA agreement/ROR 5/24/24 | | 7/14/2023 |
| 190a | | 22CV020437 | | | | 7/16/2023 |
| | | | | | | AIG<br>7/14/2023<br>7/16/2023 |
| | | | | | | Swiss Re<br>7/14/2023<br>7/16/2023 |
| | | | | | | Chubb<br>7/14/2023<br>7/16/2023 |
| 191 | 139 | Notice of Claim | In or around 1978, 1979, 1980, 1981, and/or 1982 | Travelers ack/ROR 8/11/23 | 10/3/2022 | CNA |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 191a | | 22CV020438 | | CNA agreement/ROR 5/24/24<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23 | 1/27/2023 | 7/13/2023<br>7/17/2023<br>Travelers<br>7/13/2023<br>7/17/2023<br>Chubb<br>7/13/2023<br>7/17/2023 |
| 192 | 186 | Notice of Claim | In or around 1972, 1973, 1974, 1975, 1976, 1977, 1978, and/or 1979 | Travelers ack/ROR 8/11/23<br>Am. Home ack/ROR 8/10/23<br>Westport ack/ROR 12/27/23<br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | 10/7/2022 | CNA<br>7/14/2023<br>Travelers<br>7/14/2023<br>AIG<br>7/14/2023<br>Swiss Re<br>7/14/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 193<br><br><br><br><br><br><br>193a | 141 | Notice of Claim<br><br><br><br><br><br><br>22CV020322 | In or around 1981 | Travelers ack/ROR 8/11/23<br>Lloyd's preliminary denial 11/29/23<br>Chubb denial 1/24/24 | 10/11/2022<br><br>1/30/2023 | Travelers 07/14/2023<br><br>7/16/2023<br><br><br>Chubb<br>7/14/2023<br>7/16/2023 |
| 194<br><br><br><br><br><br><br><br><br><br>194a | 335 | Notice of Claim<br><br><br><br><br><br><br><br><br><br>22CV020323 | 1976-1982 | Travelers ack/ROR 8/11/23<br>CNA agreement/ROR 5/24/24<br>Chubb denial 1/24/24<br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23 | 10/11/2022<br><br>2/2/2023 | CNA 07/13/2023<br><br>7/17/2023<br><br><br>Travelers 07/13/2023<br><br>7/17/2023<br><br><br>Swiss Re<br>7/13/2023<br>7/17/2023<br><br>Chubb 07/13/2023<br>7/17/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 195<br><br><br><br><br>195a | 160 | Notice of Claim<br><br><br><br><br>22CV020333 | In or around 1967, 1968, 1969 and/or 1970 | Chubb agreement/ROR 1/24/24<br><br>Lloyd's ack/ROR 11/29/23 | 10/11/2022<br><br><br>2/2/2023 | OneBeacon 07/13/2023<br><br><br>7/17/2023<br><br><br>Chubb 07/13/2023 7/17/2023 |
| 196<br><br><br><br><br><br><br><br>196a | 145 | Notice of Claim<br><br><br><br><br><br><br><br>22CV020369 | In or around 1967, 1968, 1969, 1970, and/or 1971 | Chubb agreement/ROR 1/24/24<br><br>Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/ RoR 7/25/23 | 10/11/2022<br><br><br>2/2/2023 | AIG 07/13/2023<br><br><br>7/17/2023<br><br><br>Swiss Re 07/13/2023 7/17/2023<br><br>Chubb 07/13/2023 7/17/2023<br><br>OneBeacon 07/13/2023 7/17/2023 |
| 197 | 144 | Notice of Claim | In or around 1965 and/or 1966 | Lloyd's ROR 11/29/23 | 10/11/2022 | Chubb 07/13/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 197a | | 22CV020348 | | Chubb agreement/ROR 1/24/24 | 1/31/2023 | 7/17/2023 |
| 198<br>198a | 140 | Notice of Claim<br>22CV020321 | In or around 1977, 1978, and/or1979 | Travelers ack/ROR 8/11/23<br>Lloyd's ack/ROR 11/29/23<br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | 10/7/2022<br>1/31/2023 | CNA<br>7/14/2023<br>7/17/2023<br>Travelers<br>7/14/2023<br>7/17/2023 |
| 199<br>199a | 298 | Notice of Claim<br>22CV020349 | 1970-1974 | Am. Home ack/ROR 8/9/23<br>Lloyd's ack/ROR 11/29/23<br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 10/11/2022<br>2/23/2023 | AIG<br>7/14/2023<br>7/25/2023<br>Swiss Re<br>7/14/2023<br>7/25/2023<br>OneBeacon<br>7/14/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | 7/25/2023 |
| 200<br><br>200a | 143 | Notice of Claim<br><br>22CV020347 | In or around 1972, 1973, and/or 1975 | Travelers ack/ROR 8/11/23<br>Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/ROR 8/9/23<br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 10/11/2022<br><br>1/31/2023 | CNA 07/13/2023<br><br>7/17/2023<br><br>Travelers 07/13/2023<br><br>7/17/2023<br><br>AIG<br>7/13/2023<br>7/17/2023<br><br>Swiss Re 07/13/2023<br>7/17/2023<br><br>OneBeacon 07/13/2023<br>7/17/2023 |
| 201 | 137 | Notice of Claim | In or around 1973 and/or 1974 | Am. Home ack/ROR 8/2/23<br>Lloyd's ack/ROR 11/29/23 | 10/7/2022<br><br>1/31/2023 | CNA 07/13/2023<br><br>7/17/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 201a | | 22CV020435 | | Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | | AIG<br><br>7/13/2023<br>7/17/2023<br><br>Swiss Re<br>7/13/2023<br>7/17/2023<br><br>OneBeacon<br>7/13/2023<br>7/17/2023 |
| 202<br><br>202a | 142 | Notice of Claim<br><br>22CV020343 | In or around 1964, 1965 and/or 1966 | Chubb agreement/ROR 1/24/24<br>Lloyd's ROR 11/29/23 | 10/14/2022<br><br>2/7/2023 | Chubb<br><br>7/14/2023<br>7/31/2023 |
| 203<br><br>203a | 189 | Notice of Claim<br><br>22CV020325 | In or around 1978 and/or 1979 | Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 10/11/2022<br><br>2/2/2023 | CNA 07/13/2023<br><br>7/17/2023<br><br>Travelers 07/13/2023<br>7/17/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 204<br><br>204a | 149 | Notice of Claim<br><br>22CV020375 | In or around 1956, 1957, 1958, 1959, 1960, 1961, 1962, 1963 and/or 1964 | Chubb agreement/ROR 1/24/24<br><br>Lloyd's ack/ROR 11/29/23 | 10/12/2022<br><br>5/31/2023 | Chubb<br><br>7/14/2023<br><br>8/1/2023 |
| 205 | 147 | Notice of Claim | In or around 1967, 1971 and/or 1972 | Chubb agreement/ROR 8/23/24<br>Westport ack/ROR 12/27/23<br>Am. Home ack/ROR 8/1/23 | 10/12/2022 | AIG<br><br>7/14/2023<br><br>Swiss Re 7/14/2023<br><br>Chubb 7/14/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 206<br><br>206a | 153 | Notice of Claim<br><br>22CV020388 | In or around 1968, 1969, 1970, 1971, 1972, 1973, 1974, 1975 and/or 1976 | Travelers ack/ROR 8/11/23<br><br>Lloyd's ack/ROR 11/29/23<br><br>Chubb agreement/ROR 1/24/24<br><br>Am. Home ack/ROR 8/9/23<br><br>Westport ack/ROR 12/27/23<br><br>CNA agreement/ROR 5/24/24 | 10/12/2022<br><br>2/2/2023 | CNA<br><br>7/14/2023<br><br>7/31/2023<br><br>Travelers<br><br>7/14/2023<br>7/31/2023<br><br>AIG<br><br>7/14/2023<br>7/31/2023<br><br>Swiss Re<br>7/14/2023<br>7/31/2023<br><br>Chubb<br>7/14/2023<br>7/31/2023<br><br>OneBeacon<br>7/14/2023<br>7/31/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 207<br><br>207a | 152 | Notice of Claim<br><br>22CV020382 | In or around 1970, 1971, 1972, 1973 and/or 1974 | Chubb ack/ROR 7/26/23<br><br>Chubb agreement/ROR 1/24/24<br><br>Am. Home ack/ROR 9/28/23<br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23<br><br>CNA agreement/ROR 5/24/24 | 10/12/2022<br><br>2/23/2023 | CNA<br><br>7/14/2023<br>7/25/2023<br><br>AIG<br><br>7/14/2023<br><br>7/25/2023<br><br>Swiss Re<br><br>7/14/2023<br>7/25/2023<br><br>OneBeacon<br>7/14/2023<br>7/25/2023<br><br>Chubb<br>7/14/2023<br>7/25/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 208<br><br>208a | 151 | Notice of Claim<br><br>22CV020378 | In or around 1977, 1978, 1979, 1980, 1981 and/or 1982 | Travelers ack/ROR 8/11/23<br><br>Chubb denial 1/24/24<br><br>Am. Home denial 8/8/23<br><br>Lloyd's denial 11/29/23<br><br>Westport ack/ROR 12/27/23<br><br>CNA agreement/ROR 5/24/24 | 10/12/2022<br><br>1/30/2023 | CNA<br><br>7/14/2023<br><br>7/17/2023<br><br>Travelers 7/14/2023 7/17/2023<br><br>AIG<br><br>7/14/2023 7/17/2023<br><br>Swiss Re 7/14/2023 7/17/2023<br><br>Chubb 7/14/2023 7/17/2023 |
| 209 | 146 | Notice of Claim | In or around 1972, 1973, 1974, 1975, and/or 1976 | Travelers ack/ROR 8/11/23<br><br>Lloyd's ack/ROR 11/29/23 | 10/11/2022<br><br>1/31/2023 | CNA<br><br>7/13/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 209a | | 22CV020374 | | Am. Home ack/ROR 9/28/23<br>Westport ack/ROR 12/27/23<br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | | 7/17/2023<br><br>Travelers<br>7/13/2023<br>7/17/2023<br><br>OneBeacon<br>7/13/2023<br>7/17/2023<br><br>AIG<br>7/13/2023<br>7/17/2023<br><br>Swiss Re<br>7/13/2023<br>7/17/2023 |
| 210<br><br>210a | 157 | Notice of Claim<br><br>22CV020398 | In or around 1978 and/or 1979 | Travelers ack/ROR 8/11/23<br>Lloyd's ack/ROR 11/29/23<br><br>CNA agreement/ROR 5/24/24 | 10/12/2022<br><br>5/31/2023 | CNA<br><br>7/14/2023<br><br>8/1/2023<br><br>Travelers<br>7/14/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | 8/1/2023 |
| 211<br><br>211a | 161 | Notice of Claim<br><br>22CV020396 | In or around 1970, 1971, 1972, 1973, 1974, 1975, and/or 1976 | Chubb agreement/ROR 1/24/24<br><br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24<br>Am. Home ack/ROR 8/1/23 | 10/12/2022<br><br>2/7/2023 | CNA<br><br>7/14/2023<br><br>7/31/2023<br><br>Travelers<br><br>7/14/2023<br>7/31/2023<br><br>AIG<br>7/14/2023<br><br>Swiss Re<br>7/14/2023<br>7/31/2023<br><br>OneBeacon<br>7/14/2023<br>7/31/2023<br><br>Chartis<br>7/31/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Chubb<br>7/14/2023<br>7/31/2023 |
| 212<br><br>212a | 156 | Notice of Claim<br><br>22CV020393 | In or around 1980 | Travelers ack/ROR 8/11/23<br><br>Chubb denial 1/24/24<br><br>Lloyd's denial 11/29/23<br><br>CNA agreement/ROR 5/24/24 | 10/4/2022<br><br>2/2/2023 | CNA 07/13/2023<br><br>7/17/2023<br><br>Travelers 07/13/2023<br>7/17/2023<br><br>Chubb 07/13/2023<br><br>7/17/2023 |
| 213<br><br>213a | 155 | Notice of Claim<br><br>22CV020391 | In or around 1971, 1972, 1973, 1974 and/or 1975 | Am. Home ack/ROR 7/28/23<br><br>CNA agreement/ROR 5/24/24<br>Travelers ack/ROR 8/11/23<br><br>Chubb denial 1/24/24<br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23 | 10/12/2022<br><br>1/31/2023 | CNA<br><br>7/14/2023<br><br>7/17/2023<br><br>Travelers<br>7/14/2023<br><br>7/17/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | AIG<br>7/14/2023<br>7/17/2023<br><br>Swiss Re<br>7/14/2023<br>7/17/2023<br><br>OneBeacon<br>7/14/2023<br>7/17/2023<br><br>Chubb<br>7/14/2023<br>7/17/2023 |
| 214<br><br>214a | 154 | Notice of Claim<br><br>22CV020389 | In or around 1966, 1967, 1968, 1969 and/or 1970 | Chubb agreement/ROR 1/24/24<br><br>Lloyd's ack/ROR 11/29/23 | 10/3/2022<br><br>2/23/2023 | OneBeacon<br><br>7/13/2023<br><br>7/19/2023<br><br>Chubb<br>7/13/2023<br>7/19/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 215 | 159 | Notice of Claim | In or around 1968, 1969, 1970, 1971, 1972, 1973, 1974, 1975 and/or 1976 | Chubb agreement/ROR 1/24/24 | 10/14/2022 | CNA |
| | | | | Lloyd's ack/ROR 11/29/23 | 2/23/2023 | 7/14/2023 |
| | | | | Am. Home ack/ ROR 7/24/23 | | 7/25/2023 |
| | | | | Westport ack/ROR 12/27/23 | | |
| | | | | CNA agreement/ROR 5/24/24 | | Travelers |
| | | | | | | 7/14/2023 |
| 215a | | 22CV020399 | | | | 7/25/2023 |
| | | | | | | AIG<br>7/14/2023<br>7/25/2023 |
| | | | | | | Swiss Re<br>7/14/2023<br>7/25/2023 |
| | | | | | | OneBeacon<br>7/14/2023<br>7/25/2023 |
| | | | | | | Chubb<br>7/14/2023<br>7/25/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 216<br><br><br><br>216a | 368 | Notice of Claim<br><br><br><br>22CV019903 | In or around 1977 and/or 1978 | Travelers ack/ROR 8/11/23<br>Lloyd's ack/ROR 11/29/23<br><br>Chubb denial 1/24/24<br><br>CNA agreement/ROR 5/24/24 | 10/5/2022<br><br>3/7/2023 | CNA<br><br>7/13/2023<br><br>7/31/2023<br><br>Travelers<br><br><br>7/13/2023<br>7/31/2023 |
| 217<br><br><br><br><br><br><br><br>217a | 372 | Notice of Claim<br><br><br><br><br><br><br><br>22CV019900 | In or around 1971, 1972, 1973 and/or 1974 | Chubb denial 1/24/24<br><br><br>Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/ ROR 8/7/23<br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 10/5/2022<br><br><br>3/7/2023 | AIG<br><br><br>7/13/2023<br><br><br>Chartis<br><br>7/31/2023<br><br><br>CNA<br>7/13/2023<br>7/31/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | Swiss Re<br>7/13/2023<br>7/31/2023<br><br>OneBeacon<br>7/13/2023<br>7/31/2023<br><br>Chubb<br>7/13/2023<br>7/31/2023 |
| 218<br><br>218a | 369 | Notice of Claim<br><br>22CV019910 | In or around 1970 and/or 1971 | Chubb agreement/ROR 1/24/24<br><br>Am. Home ack/ ROR 8/2/23<br>Lloyd's ack/ROR 11/29/23 | 10/12/2022<br><br>5/9/2023 | AIG<br><br>7/14/2023<br><br>Chartis<br><br>8/1/2023<br><br>Swiss Re<br>7/14/2023<br>8/1/2023<br><br>OneBeacon<br>7/14/2023<br>8/1/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Chubb<br>7/14/2023<br>8/1/2023 |
| 219<br><br>219a | 365 | Notice of Claim<br><br>22CV019902 | In or around 1972 | Am. Home ack/ROR 8/2/23<br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 4/1/24 | 10/11/2022<br><br>3/7/2023 | AIG<br><br>7/14/2023<br><br>Chartis<br>7/31/2023<br><br>Swiss Re<br>7/14/2023<br>7/31/2023<br><br>OneBeacon<br><br>7/14/2023<br>7/31/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 220<br><br>220a | 371 | Notice of Claim<br><br>22CV019921 | In or around 1969 and/or 1970 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 10/12/2022<br><br>3/7/2023 | Chubb<br><br>7/14/2023<br><br>7/31/2023<br><br>OneBeacon<br>7/14/2023<br>7/31/2023 |
| 221<br><br>221a | 374 | Notice of Claim<br><br>22CV019941 | In or around 1971 and/or 1972 | Chubb denial 1/24/24<br><br>Am. Home ack/ROR 8/9/23<br><br>Lloyd's preliminary denial 11/29/23<br><br>Westport ack/ROR 12/27/23 | 10/13/2022<br><br>5/30/2023 | AIG<br><br>7/14/2023<br><br>Chartis<br>8/1/2023<br><br>Swiss Re<br><br>7/14/2023<br>8/1/2023<br><br>OneBeacon<br>7/14/2023<br>8/1/2023<br><br>Chubb<br>7/14/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | 8/1/2023 |
| 222<br><br>222a | 376 | Notice of Claim<br><br>22CV019926 | In or around 1972 and/or 1973 | Am. Home ack/ROR 8/9/23<br>Lloyd's ROR 11/29/23<br><br>Westport ack/ROR 12/27/23 | 10/12/2022<br><br>3/2/2023 | AIG<br><br>7/14/2023<br><br>Chartis<br><br>7/31/2023<br><br>Swiss Re<br>7/14/2023<br>7/31/2023<br><br>OneBeacon<br>7/14/2023<br>7/31/2023 |
| 223<br><br>223a | 373 | Notice of Claim<br><br>22CV019923 | 1973 | Travelers ack/ROR 8/11/23<br>Lloyd's ROR 11/29/23<br>Am. Home ack/ROR 8/2/23<br>Westport ack/ROR 12/27/23 | 10/3/2022<br><br>3/6/2023 | CNA<br><br>7/13/2023<br>7/31/2023<br><br>Travelers<br>7/13/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | 7/31/2023<br><br>AIG<br>7/13/2023<br><br>Chartis<br>7/31/2023<br><br>OneBeacon<br>7/13/2023<br>7/31/2023<br><br>Swiss Re<br>7/13/2023<br>7/31/2023 |
| 224<br><br>224a | 367 | Notice of Claim<br><br>22CV019884 | In or around 1980, 1981, 1982 and/or 1983 | Chubb denial 1/24/24<br><br>Lloyd's ack/ROR 11/29/23<br><br>CNA agreement/ROR 5/24/24 | 10/13/2022<br><br>10/15/2023 | CNA<br><br>7/14/2023<br><br>Travelers<br>7/14/2023<br><br>Chubb<br>7/14/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 225<br><br>225a | 342 | Notice of Claim<br><br>22CV019887 | In or around 1978, 1979, 1980, 1981, 1982, 1983, 1984, and/or 1985 | Chubb agreement/ROR 9/9/24<br><br>Lloyd's denial 11/29/23<br><br>CNA agreement/ROR 5/24/24 | 10/13/2022<br><br>3/7/2023 | CNA<br><br>7/14/2023<br><br>7/31/2023<br><br>Travelers<br><br>7/14/2023<br>7/31/2023<br><br>Chubb<br>7/14/2023<br>7/31/2023 |
| 226<br><br>226a | 346 | Notice of Claim<br><br>22CV020000 | In or around 1982 and/or 1983 | Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23 | 10/7/2022<br><br>5/9/2023 | CNA<br><br>7/17/2023<br><br>Travelers<br>7/31/2023 |
| 227<br><br>227a | 350 | Notice of Claim<br><br>22CV019959 | In or around 1981 and/or 1982 | Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23<br>Chubb denial 1/24/24 | 10/12/2022<br><br>5/31/2023 | Travelers<br><br>7/14/2023<br>8/1/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Chubb<br>7/14/2023<br>8/1/2023 |
| 228<br><br>228a | 468 | Notice of Claim<br><br>22CV017963 | Approx. 1985-1986 | Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23<br>Chubb denial 1/24/24 | 10/5/2022<br>12/7/2022 | Travelers<br>7/16/2023<br>Travelers 7/14/23<br>Chubb 7/14/23 |
| 229<br><br>229a | 333 | Notice of Claim<br><br>22CV019961 | In or around 1973, 1974 and/or 1975 | Travelers ack/ROR 8/11/23<br>Lloyd's ack/ROR 11/29/23<br>Am. Home ack/ROR 8/15/23<br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 10/3/2022<br>5/31/2023 | CNA<br>7/13/2023<br>8/1/2023<br>Travelers<br>7/13/2023<br>8/1/2023<br>AIG<br>7/13/2023<br>Chartis<br>8/1/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Swiss Re<br>7/13/2023<br>8/1/2023<br><br>OneBeacon<br>7/14/2023<br>8/1/2023 |
| 230<br><br>230a | 334 | Notice of Claim<br><br>22CV019960 | In or around 1976, 1977 and/or 1978 | Travelers ack/ROR 8/11/23<br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 10/5/2022<br><br>5/9/2023 | CNA<br><br>7/13/2023<br><br>7/31/2023<br><br>Travelers<br>7/13/2023<br>7/31/2023<br><br>Swiss Re<br>7/13/2023<br>7/31/2023 |
| 231 | 93 | Notice of Claim | In or around 1960 and/or 1961 | Lloyd's ROR 11/29/23 | 10/11/2022<br><br>5/31/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 231a | | 22CV019898 | | | | |
| 232<br><br>232a | 344 | Notice of Claim<br><br>22CV019896 | In or around 1967, 1968 and/or 1969 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 10/3/2022<br>5/30/2032 | CNA<br>7/12/2023<br>Travelers<br>7/12/2023<br>AIG<br>7/12/2023<br>Swiss Re<br>7/12/2023<br>OneBeacon<br>7/12/2023<br>Chubb<br>7/12/2023<br>8/1/2023 |
| 233<br><br>233a | 348 | Notice of Claim<br><br>22CV019892 | In or around 1965 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 10/3/2022<br>5/31/2023 | Chubb<br>7/13/2023<br>8/1/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 234<br><br>234a | 353 | Notice of Claim<br><br>22CV019893 | In or around 1966, 1967, 1968, 1969 and/or 1970 | Chubb agreement/ROR 1/24/24<br><br>Lloyd's denial 8/9/24 | 10/3/2022<br><br>5/9/2023 | Chubb<br><br>7/13/2023<br>8/1/2023<br><br>OneBeacon<br><br>7/13/2023<br>8/1/2023 |
| 235<br><br>235a | 366 | Notice of Claim<br><br>22CV019899 | In or around 1967, 1968,1969, 1970, 1971, 1972 and/or 1973 | Chubb agreement/ROR 1/24/24<br><br>Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/ROR 9/28/23<br>Westport ack/ROR 12/27/23 | 10/14/2022<br><br>5/9/2023 | AIG<br><br>7/14/2023<br><br>Chartis<br><br>8/1/2023<br><br>Swiss Re<br>7/14/2023<br>8/1/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Chubb<br>7/14/2023<br>8/1/2023<br><br>OneBeacon 7/14/23 |
| 236 | 359 | C22-02006 | 1971-1973 | Chubb denial 1/24/24<br><br>Am. Home ack/ROR 8/10/23<br>Lloyd's denial 11/29/23<br>Westport ack/ ROR 8/21/23 | 11/9/2022 | AIG<br>7/14/2023<br><br>Swiss Re<br>7/14/2023<br><br>Chubb<br>7/14/2023<br><br>OneBeacon<br>7/14/2023 |
| 237 | 196 | 22CV015393 | 1972-1973 | Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23 | 11/9/2022 | CNA<br><br>7/14/2023<br><br>AIG<br>7/14/2023<br><br>Swiss Re<br>7/14/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | OneBeacon 7/14/23 |
| 238<br><br>238a | 445 | Notice of Claim<br><br>22CV020161 | 1967-1969 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 10/14/2022<br>2/23/2023 | Chubb<br>7/14/2023<br>7/17/2023 |
| 239<br><br>239a | 182 | Notice of Claim<br><br>22CV020490 | 1966-1969 | Chubb agreement/ROR 1/24/24<br>Lloyd's ROR 11/29/23 | 10/19/2022<br>2/27/2023 | Chubb<br>7/14/2023<br>7/31/2023 |
| 240<br><br>240a | 446 | Notice of Claim<br><br>22CV021136 | 1989-1990 | Lloyd's denial 11/29/23 | 10/19/2022<br>10/15/2023 | |
| 241 | 206 | Notice of Claim | 1988-1990 | Lloyd's denial 11/29/23 | 10/19/2022<br>2/27/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 241a | | 22CV021944 | | | | |
| 242 | | Notice of Claim | 1987-1989 | Travelers ack/ROR 8/11/23 | 11/9/2022 | Travelers<br><br>7/14/2023 |
| 243 | 391 | Notice of Claim<br><br>22CV021635 | 1972-Spring 1974 | Chubb denial 1/24/24<br><br>Am. Home ack/ ROR 7/24/23<br><br>Lloyd's denial 11/29/23<br><br>Westport ack/ROR 12/27/23<br><br>CNA agreement/ROR 5/24/24 | 11/28/2022 | CNA 7/14/2023<br><br>Travelers 7/14/2023<br><br>AIG<br><br>7/14/2023<br><br>Swiss Re 7/14/2023<br><br>Chubb 7/14/2023<br><br>OneBeacon 7/14/23 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 244 | 424 | Notice of Claim<br><br>22CV024005 | 1980 | Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23<br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | 11/9/2023 | CNA<br>7/14/2023<br>Travelers<br>7/14/2023<br>Chubb<br>7/14/2023 |
| 245<br><br>245a | 394 | Notice of Claim<br><br>22CV023397 | 1966-1968 | Chubb agreement/ROR 1/24/24<br>Lloyd's denial 8/9/24<br>Chubb ack 11/3/23 | 11/29/2022<br>10/18/2023 | Chubb<br>7/16/2023 |
| 246 | 489 | 22CV013335 | 1971-1972 | Chubb: ack/ROR 7/27/2023<br>Lloyd's denial 11/29/23<br>Chubb denial 1/24/24<br>Am. Home ack/ROR 8/10/23<br>Westport ack/ROR 12/27/23 | 12/1/2022 | AIG<br>7/16/2023<br>Swiss Re<br>7/16/2023<br>Chubb<br>7/16/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | OneBeacon 7/16/23 |
| 247 | | 22CV013310 | 1977 | Travelers ack/ROR 8/2/23<br>Lloyd's denial 11/29/23 | 12/1/2022 | CNA<br>7/16/2023<br>Tavelers 7/16/2023 |
| 248 | 170 | Notice of Claim<br>22CV023472 | 1962 | Chubb no present duty 1/24/24<br>Lloyd's denial 11/29/23 | 11/29/2022 | Chubb<br>7/16/2023 |
| 249 | 98 | 22CV017318 | 1975-1976 | Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 11/22/2022 | CNA<br>7/14/2023<br>Travelers<br>7/14/2023<br>Swiss Re 7/14/2023<br>OneBeacon 7/14/23 |
| 250 | 362 | C22-01820 | 1979-1980 | Chubb denial 1/24/24<br>Lloyd's denial 11/29/23 | 11/22/2022 | CNA<br>7/14/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | CNA agreement/ROR 5/24/24 | | Travelers 7/14/2023<br><br>Chubb 7/14/2023 |
| 251 | 253 | Notice of Claim<br><br>22CV023961 | 1969-May 1980 | Lloyd's denial 11/29/23<br>Chubb agreement/ROR 1/24/24<br>CNA agreement/ROR 5/24/24 | | |
| 252 | 443 | 22CV04375 | 1964-1966 | Chubb agreement/ROR 1/24/24 | 12/28/2022 | AIG |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | (Santa Barbara) | | Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/RoR 7/25/23<br>Westport ack/ROR 12/27/23 | | 7/16/2023<br><br>Swiss Re<br><br>7/16/2023<br><br>Chubb<br>7/16/2023 |
| 253 | 513 | 22CV014047 | 1967 | Chubb: ack/ROR 7/27/2023<br>Lloyd's denial 11/29/23<br>Chubb agreement/ROR 1/24/24 | 12/28/2022 | Chubb<br><br>7/16/2023 |
| 254 | 267 | 22CV017002 | 1984 | Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23 | 1/24/2023 | Travelers<br><br>7/14/2023 |
| 255 | 494 | 22CV024896 | 2003-2007 | Lloyd's denial 11/29/23 | 1/24/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 256 | 231 | 22CV020746 | 1976-1978 | Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23<br>Westport ack/ROR 12/27/23<br>CNA agreement/ROR 5/24/24 | 1/25/2023 | CNA<br>7/16/2023<br>Travelers<br>7/16/2023<br>Swiss Re 7/16/2023 |
| 257 | 226 | 22CV023763 | 1965-1966 | Chubb denial 1/24/24<br>Lloyd's ack/ROR 11/29/23<br>Chubb agreement/ROR 1/24/24 | 1/25/2023 | Chubb<br>7/17/2023 |
| 258 | 329 | Mediation notice of claim<br>22CV019889 | 1976-1979 | Chubb denial 1/24/24<br>Lloyd's ack/ROR 11/29/23<br>Am. Home denial 8/2/23<br>Westport ack/ROR 12/27/23 | 5/30/2023<br>9/20/2022 | Travelers<br>7/12/2023<br>8/1/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | CNA agreement/ROR 5/24/24 | | CNA<br><br>7/12/2023<br>8/1/2023<br><br>AIG<br>7/12/2023<br><br>Chartis<br>8/1/2023<br><br>Swiss Re<br>7/12/2023<br>8/1/2023<br><br>Chubb<br>7/12/2023<br>8/1/2023<br><br>OneBeacon<br>7/12/2023<br>8/1/2023 |
| 259 | 331 | Mediation notice of claim<br><br>22CV019890 | 1974-1976 | Travelers ack/ROR 8/2/23<br><br>CNA agreement/ROR 5/24/24<br>Am. Home ack/ROR 8/7/23 | 9/20/2022<br><br>5/30/2023 | Travelers<br><br>7/12/2023<br><br>8/1/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23 | | CNA<br><br>7/12/2023<br>8/1/2023<br><br>AIG<br>7/12/2023<br><br>Chartis<br>8/1/2023<br><br>Swiss Re<br>7/12/2023<br>8/1/2023<br><br>OneBeacon<br>7/12/2023<br>8/1/2023 |
| 260 | 356 | Mediation notice of claim<br><br>22CV019949 | 1973 | Am. Home ack/ROR 8/7/23<br>Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23 | 9/20/2022<br><br>5/31/2023 | CNA<br><br>7/12/2023<br><br>8/1/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | AIG<br>7/12/2023<br><br>Chartis<br>8/1/2023<br><br>Swiss Re<br>7/12/2023<br>8/1/2023<br><br>OneBeacon<br>7/12/2023<br>8/1/2023 |
| 261 | 354 | Mediation notice of claim<br><br>22CV019944 | 1981-1982 | Travelers ack/ROR 8/11/23<br><br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23 | 9/20/2022<br><br>5/31/2023 | Travelers<br><br>7/12/2023<br>8/1/2023<br><br>Chubb<br><br>7/12/2023<br>8/1/2023 |
| 262 | 330 | Mediation notice of claim | 1972 | Am. Home ack/ROR 7/28/23 | 9/20/2022 | AIG |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | 22CV019888 | | Lloyd's ack/ROR 11/29/23<br><br>Westport ack/ROR 12/27/23 | 5/31/2023 | 7/14/2023<br><br>Chartis<br>8/1/2023<br><br>Swiss Re<br>7/14/2023<br>8/1/2023<br><br>OneBeacon<br>7/14/2023<br>8/1/2023 |
| 263 | 351 | Mediation notice of claim<br><br>22CV019943 | 1994-1995 | Lloyd's denial 11/29/23 | 9/20/2022<br><br>5/31/2023 | Not reported<br><br>7/13/2023 |
| 264 | 347 | 22CV017854 | 1960-1961 | Lloyd's denial 11/29/23<br>Chubb agreement/ROR 1/24/24 | 5/31/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 265 | 450 | 22CV023416 | 1969-1971 | Chubb agreement/ROR 1/24/24<br>Lloyd's denial 11/29/23 | 5/31/2023 | OneBeacon<br>8/1/2023<br>Chubb<br>8/1/2023 |
| 266 | 486 | 22CV018558 | 1976-1978 | Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 5/31/2023 | CNA<br>8/1/2023<br>Travelers<br>8/1/2023<br>Swiss Re<br>8/1/2023 |
| 267 | 479 | 22CV024183 | 1977-1981 | Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br>Travelers ack/ ROR 8/11/23 | 5/31/2023 | CNA<br>8/4/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Travelers<br>8/4/2023<br><br>Chubb<br>8/4/2023 |
| 268 | 403 | 22CV024635 | 1967 | Chubb agreement/ROR 1/24/24<br>Lloyd's denial 11/29/23 | 5/31/2023 | Chubb<br><br>8/4/2023 |
| 269 | 469 | 22CV023091 | 1972 | Am. Home ack/ROR 9/28/23<br>Lloyd's denial 11/29/23 | 6/1/2023 | Chartis<br><br>8/4/2023<br><br>CNA<br>8/4/2023<br><br>Swiss Re<br>8/4/2023<br><br>OneBeacon<br>8/4/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 270 | 451 | 22CV022787 | 1969-1971 | Chubb agreement/ROR 1/24/24<br>Lloyd's denial 11/29/23<br>Am. Home ack/ROR 9/28/23 | 6/1/2023 | Chartis<br>8/4/2023<br>Chubb<br>8/4/2023<br>Swiss Re<br>8/4/2023<br>OneBeacon<br>8/4/2023 |
| 271 | 122 | 22CV020822 | 1971-1972 | Chubb denial 1/24/24<br>Am. Home ack/ROR 9/28/23<br>Lloyd's ack/ROR 11/29/23 | 6/1/2023 | Chartis<br>8/4/2023<br>Chubb<br>8/4/2023<br>Swiss Re<br>8/4/2023<br>OneBeacon<br>8/4/2023 |
| 272 | 229 | 22CV020837 | 1978 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 6/1/2023 | CNA<br>8/4/2023 |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | Travelers 8/4/2023 |
| 273 | 166 | 22CV023239 | 1974-1975 | Travelers ack/ROR 8/11/23<br>Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/ROR 8/16/23<br><br>Westport ack/ROR 12/27/23<br><br>CNA agreement/ROR 5/24/24 | 6/1/2023 | CNA<br><br>7/12/2023<br><br>Travelers 7/12/2023<br><br>AIG<br><br>7/12/2023<br><br>Swiss Re 7/12/2023<br><br>OneBeacon 7/12/23 |
| 274 | 200 | 22CV021909 | 1977-1978 | Travelers ack/ROR 8/11/23<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 6/1/2023 | CNA<br><br>8/4/2023<br><br>Travelers 8/4/2023<br><br>Swiss Re |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | 8/4/2023 |
| 275 | 307 | 22CV021229 | 1973-1975 | Chubb denial 1/24/24<br>Am. Home ack/ROR 10/27/23<br><br>CNA agreement/ROR 5/24/24<br>Lloyd's ack/ROR 11/29/23 | 10/5/2023 | We requested AJG tender to all policies for all years |
| 276 | 90 | 22CV020632 | Not disclosed in complaint | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/ROR 10/27/23 | 10/5/2023 | We requested AJG tender to all policies for all years |
| 277 | 176 | 22CV021959 | Not disclosed in complaint | Lloyd's ack/ROR 11/29/23<br><br>Chubb denial 1/24/24<br>Am. Home ack/ROR 11/13/23 | 10/5/2023 | We requested AJG tender to all policies for all years |
| 278 | 467 | 22CV020524 | 1979-1982 | Chubb denial 1/24/24<br><br>Am. Home ROR 11/13/23<br><br>CNA agreement/ROR 5/24/24<br>Lloyd's ack/ROR 11/29/23 | 10/5/2023 | We requested AJG tender to all policies for all years |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 279 | 89 | 22CV021619 | Not disclosed in complaint | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/ROR 11/13/23 | 10/5/2023 | We requested AJG tender to all policies for all years |
| 280 | 232 | 22CV022330 | 1973-1976 | Chubb denial 1/24/24<br><br>CNA agreement/ROR 5/24/24<br>Am. Home ack/ROR 11/21/23<br>Lloyd's ack/ROR 11/29/23 | 10/6/2023 | We requested AJG tender to all policies for all years |
| 281 | 178 | 22CV021958 | Not disclosed in complaint | Chubb ack 11/1/23<br><br>Chubb denial 1/24/24<br>Am. Home ack/ROR 11/21/23<br>Lloyd's ack/ROR 11/29/23 | 10/6/2023 | We requested AJG tender to all policies for all years |
| 282 | 270 | 22CV021982 | Not disclosed in complaint | Chubb agreement/ROR 1/24/24<br>Am. Home ack/ROR 11/21/23<br>Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/ROR 11/21/23 | 10/6/2023 | We requested AJG tender to all policies for all years |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 283 | 117 | 22CV021962 | Not disclosed in complaint | Chubb agreement/ROR 9/9/24<br>Am. Home denial 11/13/23<br>Lloyd's denial 11/29/23 | 10/6/2023 | We requested AJG tender to all policies for all years |
| 284 | 458 | 22CV023092 | 1975-1976 | Chubb denial 1/24/24<br><br>Am. Home ROR 11/13/23<br><br>CNA agreement/ROR 5/24/24<br>Lloyd's ROR 11/29/23 | 10/6/2023 | We requested AJG tender to all policies for all years |
| 285 | 164 | 22CV023077 | Not disclosed in complaint | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23<br><br>Am. Home ack/ror 11/13/2023 | 10/6/2023 | We requested AJG tender to all policies for all years |
| 286 | 264 | 22CV023536 | 1979-1983 | Chubb denial 1/24/24<br><br>Am. Home ack/ROR 11/13/23<br>CNA agreement/ROR 5/24/24<br>Lloyd's ack/ROR 11/29/23 | 10/6/2023 | We requested AJG tender to all policies for all years |
| 287 | 179 | 22CV021953 | 1980-1982 | Chubb denial 1/24/24 | 10/6/2023 | We requested AJG tender to all policies for all years |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24<br>Am. Home ack/ROR 11/13/23 | | |
| 288 | 180 | 22CV022583 | 1980-1983 | Chubb denial 1/24/24<br><br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24<br>Am. Home ROR 11/13/23 | 10/6/2023 | We requested AJG tender to all policies for all years |
| 289 | 150 | 22CV024069 | Not disclosed in complaint | Chubb denial 1/24/24<br><br>Am. Home denial 11/13/23<br>Lloyd's ack/ROR 11/29/23 | 10/6/2023 | We requested AJG tender to all policies for all years |
| 290 | 269 | 22CV023062 | Not disclosed in complaint | TNCRRG denial<br><br>Am. Home ack/ROR 12/5/23<br><br>Lloyd's ack/ROR 11/29/23<br><br>Chubb agreement/ROR 1/24/24<br>Travelers ack/ROR 12/19/23 | 10/6/2023 | We requested AJG tender to all policies for all years |
| 291 | 303 | 22CV021736 | Not disclosed in complaint | Lloyd's denial 11/29/23 | 10/6/2023 | We requested AJG tender to all policies for all years |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 292 | 336 | 22CV023423 | Not disclosed in complaint | TNCRRG denial<br><br>Am. Home denial/ROR 12/6/23<br>Lloyd's ack/ROR 11/29/23<br><br>Travelers ack/ROR 12/19/23<br>Chubb agreement/ROR 1/24/24 | 10/7/2023 | We requested AJG tender to all policies for all years |
| 293 | 320 | 22CV023960 | 1968-1970 | Am. Home ack/ROR 12/4/23<br>Lloyd's ack/ROR 11/29/23<br><br>Travelers ack/ROR 12/19/23<br>Chubb agreement/ROR 1/24/24 | 10/7/2023 | We requested AJG tender to all policies for all years |
| 294 | 235 | 22CV023242 | 1973-1974 | Am. Home ack/ROR 9/8/23<br>Lloyd's ack/ROR 11/29/23<br>CNA agreement/ROR 5/24/24 | 8/29/2023 | |
| 295 | 447 | 22CV024880 | 1976 | Lloyd's ack/ROR 11/29/23<br><br>CNA agreement/ROR 5/24/24<br>Travelers ack/ROR 8/31/23 | 8/29/2023 | |
| 296 | 477 | 22CV023669 | 1973-1983 | Lloyd's ack/ROR 11/29/23 | 8/30/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | AIG ack/ROR 9/28/23 | CNA agreement/ROR 5/24/24<br>Am. Home ack/ROR 9/28/24<br>Travelers ack/ROR 8/31/23<br>Chubb decline/no present duty 9/9/24 | | |
| 297 | 181 | 22CV022037 | 1974-1975<br>1977-1978 | Am. Home ack/ROR 9/28/23<br>Travelers ack/ROR 9/5/23<br>Lloyd's ack/ROR 11/29/23<br>CNA agreement/ROR 5/24/24 | 8/30/2023 | |
| 298 | 84 | 22CV021591 | 1974-1977 | Am. Home ack/ROR 9/28/23<br>Lloyd's ack/ROR 11/29/23<br>Travelers ack/ROR 9/5/23 | 8/30/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | CNA agreement/ROR 5/24/24 | | |
| 299 | 239 | 22CV020672 | 1962-1965 | Chubb agreement/ROR 1/24/24<br>Lloyd's ack/ROR 11/29/23 | 9/1/2023 | |
| 300 | 251 | 22CV023538 | 1960-1961 | Lloyd's ack/ROR 11/29/23 | 9/1/2023 | |
| 301 | 175 | 22CV023756 | 1993-1994 | Lloyd's denial 11/29/23 | 9/1/2023 | |
| 302 | 463 | 22CV024587 | 1972-1974 | Lloyd's ack/ROR 11/29/23<br>CNA agreement/ROR 5/24/24<br>Am. Home ack/ROR 9/28/23 | 9/2/2023 | |
| 303 | 199 | 22CV024471 | 1970-1973 | Am. Home ack/ROR 9/28/23<br>Lloyd's ack/ROR 11/29/23<br>Chubb agreement/ROR 9/9/24 | 10/4/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 304 | 116 | 22CV024532 | 1971-1972, 1974-1975 | Chubb denial 1/24/24<br><br>Travelers ack/ROR 9/5/23<br><br>Lloyd's ack/ROR 11/29/23<br><br>CNA agreement/ROR 5/24/24 | 9/1/2023 | |
| 305 | 248 | 22CV022326 | 1974 | TNCRRG denial<br>Am. Home ack/ROR 12/5/23<br>Lloyd's ack/ROR 11/29/23<br><br>Travelers ack/ROR 12/19/23<br>Chubb agreement/ROR 1/24/24<br>CNA agreement/ROR 5/24/24 | 10/7/2023 | |
| 306 | 230 | 22CV023400 | 1976 | TNCRRG denial<br>Am. Home ack/ROR 12/4/23<br>Lloyd's ack/ROR 11/29/23 | 10/7/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Travelers ack/ROR 12/19/23<br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | | |
| 307 | 265 | 22CV024846 | 1963-1964 | Lloyd's ack/ROR 11/29/23<br><br>Chubb agreement/ROR 1/24/24 | 10/7/2023 | |
| 308 | 207 | 22CV021947 | 1965-1968 | TNCRRG denial<br><br>Am. Home ack/ROR 12/6/23<br>Lloyd's ack/ROR 11/29/23<br><br>Travelers ack/ROR 12/19/23<br>Chubb agreement/ROR 1/24/24 | 10/7/2023 | |
| 309 | 210 | 22CV024139 | Not disclosed in complaint | TNCRRG ack. 11/1/23<br><br>Lloyd's denial 11/29/23<br>Travelers ack/ROR 12/19/23<br>Chubb denial 1/24/24<br>Am. Home ack/ROR 12/4/23 | 10/7/2023 | We requested AJG tender to all policies for all years |
| 310 | 400 | 22CV024839 | 1975-1978 | Travelers ack. 10/31/23 | 10/7/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Lloyd's denial 11/29/23<br><br>CNA agreement/ROR 5/24/24 | | |
| 311 | 233 | 22CV024838 | 1995-1997 | **TNCRRG ack.**<br>Am. Home denial 12/4/23<br><br>Lloyd's denial 11/29/23<br>Travelers ack/ROR 12/19/23<br>Chubb denial 1/24/24 | 10/7/2023 | |
| 312 | 482<br>533 | 23CV025256 | 1996-2004 | Lloyd's denial 11/29/23 | 10/8/2023 | |
| 313 | 459 | 22CV021946 | 1990-1993 | Lloyd's denial 11/29/23 | 10/8/2023 | |
| 314 | 187 | 22CV023764 | 1985-1987 | Chubb agreement/ROR 9/9/24<br>Lloyd's denial 11/29/23<br><br>Travelers ack/ROR 12/19/23 | 10/8/2023 | |
| 315 | 395 | 22CV022911 | 1970-1973 | Chubb denial 1/24/24 | 10/8/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Am. Home ack/ROR 11/21/23<br>Lloyd's denial 11/29/23 | | |
| 316 | 197 | 22CV023068 | 1982-1984 | TNCRRG denial<br><br>Am. Home denial/ROR 12/6/23<br>Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br>Travelers ack/ROR 12/19/23 | 10/8/2023 | |
| 317 | 358 | C22-02698 | 1980-1983 | Chubb denial 1/24/24<br>Lloyd's denial 11/29/23<br><br>Travelers ack/ROR 12/19/23<br>CNA agreement/ROR 5/24/24 | 10/8/2023 | |
| 318 | | 22CV023623 | 1972-1978 | Lloyd's denial 11/29/23<br>Am. Home ROR 12/18/23 | 10/16/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 319 | | 22CV023968 | 1980s | Lloyd's denial 11/29/23<br>Chubb agreement/ROR 9/9/24 | 10/16/2023 | |
| 320 | 261 | 22CV024931 | 1972-1973 | Am. Home ack/ROR 12/6/23<br>Lloyd's denial 11/29/23 | 10/9/2023 | |
| 321 | 119 | 22CV022009 | 1974-1978 | TNCRRG denial<br>Am. Home ROR 12/6/23<br><br>Chubb denial 1/24/24<br>Lloyd's ack/ROR 11/29/23<br><br>Travelers ack/ROR 12/19/23<br>CNA agreement/ROR 5/24/24 | 10/9/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 322 | 338 | 22CV022825 | 1972-1973 | Am. Home ack/ROR 11/21/23<br>Lloyd's denial 11/29/23<br>Chubb denial 1/24/24 | 10/9/2023 | |
| 323 | 441 | 22CV024898 | 1976-1978 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 10/10/2023 | |
| 324 | 407 | 22CV024592 | 1973-1975 | Lloyd's denial 11/29/23<br>Travelers ack/ROR 12/19/23<br>CNA agreement/ROR 5/24/24<br>Am. Home ack/ROR 12/5/23 | 10/11/2023 | |
| 325 | 434 | 22CV024582 | 1969, 1973-1974 | Chubb denial 1/24/24 (willing to consider defense per 8/23/24 email)<br><br>Am. Home ack/ROR 12/6/23<br>Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | 10/11/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 326 | 498<br><br>57 | 22CV023513 | 1970-1971 | Chubb agreement/ROR 1/24/24<br>Lloyd's denial 11/29/23<br>Am. Home ROR 12/18/23 | 10/11/2023 | |
| 327 | 195 | 22CV022803 | 1973-1974 | Lloyd's denial 11/29/23<br>Am. Home ack/ROR 12/18/23<br>CNA agreement/ROR 5/24/24 | 10/11/2023 | |
| 328 | 252 | 22CV024472 | 1966-1968 | TNCRRG denial<br><br>Lloyd's ack/ROR 11/29/23<br><br>Chubb agreement/ROR 1/24/24<br>Travelers ack/ROR 12/19/23<br>Am. Home ack/ROR 12/19/23 | 10/11/2023 | |
| 329 | 203 | 22CV024942 | 1972-1975 | TNCRRG denial<br>Lloyd's ack/ROR 11/29/23 | 10/11/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Am. Home ROR 12/18/23<br><br>Chubb denial 1/24/24<br>CNA agreement/ROR 5/24/24 | | |
| 330 | 72 | 22CV024465 | 1972-1973 | Lloyd's denial 11/29/23<br>Chubb ack/ROR 11/10/23<br><br>Am. Home ack/ROR 12/19/23 | 10/11/2023 | |
| 331 | 173 | 22CV023950 | 1984 | TNCRRG denial<br><br>Lloyd's denial 11/29/23<br>Chubb denial 1/24/24<br>Am. Home ack/ROR 12/19/23 | 10/12/2023 | |
| 332 | 108 | 22CV024988 | 1972-1974 | TNCRRG denial<br>Lloyd's ROR 11/29/23<br>Chubb denial 1/24/24<br>Am. Home ack/ROR 12/19/23<br>CNA agreement/ROR 5/24/24 | 10/12/2023 | |
| 333 | 115 | 22CV023240 | 1972-1975 | TNCRRG denial<br>Lloyd's ROR 11/29/23<br>Chubb denial 1/24/24 | 10/12/2023 | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | Am. Home ack/ROR 12/19/23<br>CNA agreement/ROR 5/24/24 | | |
| 334 | 70 | 22CV022534 | 1971-1973 | Lloyd's denial 11/29/23<br>Chubb denial 1/24/24<br>Am. Home ack/ROR 12/18/23 | 10/12/2023 | |
| 335 | 216 | 22CV024087 | 1978-1980 | Travelers ack 11/2/23<br>Lloyd's denial 11/29/23<br>Am. Home denial 12/19/23<br>CNA agreement/ROR 5/24/24 | 10/12/2023 | |
| 336 | 215 | 22CV024003 | 1969 | Chubb agreement/ROR 1/24/24<br>Lloyd's preliminary denial 11/29/23 | 10/12/2023 | |
| 337 | 490 | 22CV022760 | 1952 | Lloyd's denial 11/29/23 | 10/12/2023 | Not reported |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 338 | 39 | 22CV022604 | 1984-1987 | Lloyd's denial 11/29/23<br><br>Chubb agreement/ROR 9/9/24 | 10/12/2023 | |
| 339 | 476 | 22CV024144 | 1983-1987 | Chubb agreement/ROR 9/9/24<br>Travelers ack. 11/2/23<br><br>Lloyd's denial 11/29/23 | 10/12/2023 | |
| 340 | 59 | Only POC | 1961 | | | |
| 341 | 64 | 22CV027751 | 2013-2015 | | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 342 | 75 | 22CV023329 | 1969-1970 | Lloyd's denial 11/29/23<br>Chubb agreement/ROR 9/9/24 | | |
| 343 | 100 | 22CV024022 | 1973-1974 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | | |
| 344 | 101 | 22CV024630 | 1972-1975 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 345 | 168 | 22CV024859 | 1976-1978 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | | |
| 346 | 188 | 22CV023766 | 1972-1973 | Lloyd's denial 11/29/23 | | |
| 347 | 190 | 22CV023502 | 1974-1975 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 348 | 204<br>191 | 22CV023676 | 1970-1973 | Lloyd's denial 11/29/23<br>Chubb agreement/ROR 9/9/24 | | |
| 349 | 194 | 22CV023501 | 1977 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | | |
| 350 | 198<br><br>209 | 22CV024091 | 1985 | Lloyd's denial 11/29/23<br><br>Chubb agreement/ROR 9/9/24 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 351 | 201 | Only POC | 1972-1973 | | | |
| 352 | 202 | 22CV023509 | 1980-1982 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24<br>Chubb decline/no present duty 9/9/24 | | |
| 353 | 205 | 22CV024945 | 1972-1975 | CNA agreement/ROR 5/24/24 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 354 | 208 | Only POC | 1980-1982 | CNA agreement/ROR 5/24/24<br>Chubb decline/no present duty 9/9/24 | | |
| 355 | 211 | 22CV024176 | Unknown | Lloyd's ack/ROR 11/29/23 | | |
| 356 | 212 | 22CV024031 | 1973-1974 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 357 | 213 | Only POC | 1998-1999 | | | |
| 358 | 214 | 22CV024195 | 1967-1968 | Lloyd's ack/ROR 11/29/23<br><br>Chubb agreement/ROR 9/9/24 | | |
| 359 | 218 | 22CV024154 | 1976-1977 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 360 | 222 | 22CV024200 | 1966 | Lloyd's ack/ROR 11/29/23<br><br>Chubb agreement/ROR 9/9/24 | | |
| 361 | 223 | 22CV024157 | 1974 | Lloyd's denial 11/29/23<br><br>CNA agreement/ROR 5/24/24 | | |
| 362 | 224 | 22CV024400 | 1973-1974 | Lloyd's denial 11/29/23<br><br>CNA agreement/ROR 5/24/24 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 363 | 225 | 22CV024749 | 1985-1986 | Lloyd's denial 11/29/23<br><br>Chubb agreement/ROR 9/9/24 | | |
| 364 | 227 | Only POC | 2012 | | | |
| 365 | 237 | Only POC | 1971-1972 | | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 366 | 247 | Only POC | Unknown | | | |
| 367 | 263 | 22CV024385 | 1973-1980 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24<br>Travelers ack/ROR 8/11/23 | | |
| 368 | 266 | 22CV023759 | Spring 1973-Summer 1975 | CNA agreement/ROR 5/24/24 | | |
| 369 | 268 | 22CV021623 | 1969-1971 | Chubb agreement/ROR 9/9/24 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 370 | 274<br>442 | 22CV024854 | 1980-1982 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24<br>Chubb decline/no present duty 9/9/24 | | |
| 371 | 281<br><br>276 | Only POC | 4/24/2021-5/30/2021 | | | |
| 372 | 283 | Only POC | 1990 | | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 373 | 321 | Only POC | 1975-1982 | CNA agreement/ROR 5/24/24<br>Chubb decline/no present duty 9/9/24 | | |
| 374 | 325 | 22CV024917 | 1971-1980 | CNA agreement/ROR 5/24/24 | | |
| 375 | 328 | 22CV021441 | 1973 | Lloyd's denial 11/29/23 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 376 | 349 | 22CV023996 | 1979-1980 | Lloyd's ROR 11/29/23<br>CNA agreement/ROR 5/24/24<br>Chubb decline/no present duty 9/9/24 | | |
| 377 | 357 | 22CV024669 | 1974-1975 | CNA agreement/ROR 5/24/24 | | |
| 378 | 361 | 22CV024811 | 1968-1971 | Lloyd's preliminary denial 11/29/23<br>Chubb agreement/ROR 9/9/24 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 379 | 380 | 22CV023663 | 1978-1979 | Lloyd's ack/ROR 11/29/23<br><br>CNA agreement/ROR 5/24/24 | | |
| 380 | 393 | 22CV017158 | 1979 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | | |
| 381 | 398 | 22CV023717 | 1963-1968 | Chubb agreement/ROR 9/9/24 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 382 | 399 | 22CV024008 | 1974-1976 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | | |
| 383 | 402 | 22CV024019 | 1961-1965 | Lloyd's ack/ROR 11/29/23<br><br>Chubb agreement/ROR 9/9/24 | | |
| 384 | 404 | 22CV020452 | 1974-1977 | CNA agreement/ROR | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 385 | 411<br>34<br>38 | 22CV017589<br>22CV024556 | 1969-1973 | Lloyd's denial 11/29/23<br>Chubb agreement/ROR 9/9/24 | | |
| 386 | 416 | 22CV023199 | 1978-1979 | CNA agreement/ROR 5/24/24 | | |
| 387 | 421 | Only POC | Unknown | | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 388 | 422 | 22CV023195 | 1975 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24 | | |
| 389 | 429 | 22CV023710 | 1988-1991 | Lloyd's denial 11/29/23 | | |
| 390 | 431 | Only POC | 1990-1991 | | | |
| 391 | 433 | 22CV024007 | 1958-1962 | Lloyd's ack/ROR 11/29/23<br><br>Chubb agreement/ROR 9/9/24 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 392 | 435 | 22CV024072 | 1973-1974 | CNA agreement/ROR 5/24/24 | | |
| 393 | 436 | 22CV018779 | 1976 | Lloyd's denial 11/29/23<br>CNA agreement/ROR 5/24/24<br>Travelers ack/ROR 12/19/23 | | |
| 394 | 437 | 22CV012226 | 1973 | Lloyd's denial 11/29/23 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 395 | 438<br>537 | Only POC | Unknown | | | |
| 396 | 439 | Only POC | Unknown | | | |
| 397 | 440 | Only POC | Unknown | | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| 398 | 452 | 22CV021615 | 1990-2000 | | | |
| 399 | 466 | 22CV024510 | 1974-1975 | CNA agreement/ROR 5/24/24 | | |
| 400 | 480<br>531 | 22CV024892 | 1981-1983 | Lloyd's denial 11/29/23<br>Chubb decline/no present duty 9/9/24 | | |
| 401 | 481 | 22CV018715 | 1972 | Lloyd's denial 11/29/23 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 402 | 487 | Only POC | Summer 1977 and Summer 1978 | CNA agreement/ROR 5/24/24 | | |
| 403 | 488 | Only POC | 1978 | CNA agreement/ROR 5/24/24 | | |
| 404 | 492 | 23CV036395 | 1995-1996 | Lloyd's denial 11/29/23 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 405 | 493<br><br>277 | Only POC | 1998-1999 | | | |
| 406 | 499 | 22CV024847 | 1955-1956 | | | |
| 407 | 502 | 22CV023684 | 1983-1985 | Chubb agreement/ROR 9/9/24 | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |
| 408 | 507<br>449 | 22CV024730 | Unknown | | | |
| 409 | 509 | Only POC | Unknown | | | |
| 410 | 527 | RG20062996 | 2016-2017 | Lloyd's denial 11/29/23 | | |
| 411 | 542 | Only POC | Unknown | | | |

| Claimant No. | Proof of Claim No. | Case No. | Years of Alleged Abuse | Insurer Responses | Foley Tender to AJG Date | AJG Tendered to |
|---|---|---|---|---|---|---|
| | | | | | | |

DAVID B. GOODWIN (CA Bar No. 104469)
CHRISTINE S. HASKETT (CA Bar No. 188053)
HARPER A. JOHNSON (CA Bar No. 364768)
~~FOLEY & LARDNER~~COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: dgoodwin@cov.com; chaskett@cov.com;
hajohnson@cov.com

~~Eileen~~EILEEN R. ~~Ridley~~RIDLEY (CA Bar No. 151735)
~~Tel: (415) 438-6469; eridley@foley.com~~
~~Ann Marie Uetz (admitted *pro hac vice*)~~
~~Tel: (313) 234-7114; auetz@foley.com~~
~~Matthew D. Lee (admitted *pro hac vice*)~~
~~Tel: (608) 258-4203; mdlee@foley.com~~
ANN MARIE UETZ (admitted *pro hac vice*)
MATTHEW D. LEE (admitted *pro hac vice*)
~~Thomas~~THOMAS F. ~~Carlucci~~CARLUCCI (CA Bar No. 135767)
~~Tel: (415) 984-9824; tcarlucci@foley.com~~
~~Jeffrey~~JEFFREY R. ~~Blease~~BLEASE (CA Bar~~.~~ No. 134933)
~~Tel: (617) 226-3155; jblease@foley.com~~
FOLEY & LARDNER LLP
~~555 California~~One Market Plaza, 55 Spear Street Tower, Suite ~~1700~~1900
San Francisco, ~~CA 94104-1520~~California 94105
Telephone: (415) 434-4507
Facsimile: (415) 434-4484
Email: eridley@foley.com; auetz@foley.com;
mdlee@foley.com; tcarlucci@foley.com;
jblease@foley.com
~~*Counsel for the Debtor*~~
~~*and Debtor in Possession*~~
Attorneys for Plaintiff
THE ROMAN CATHOLIC BISHOP OF OAKLAND

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

In re:

THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole, INSURANCE ADVERSARY PROCEEDING LITIGATION

Debtor.

Case NoNos.: 3:24-cv-00709-JSC
3:24-cv-00711-JSC

BANKRUPTCY CASE NO. 23-40523 WJL

Hon. Jacqueline Scott Corley

**FIFTHSIXTH AMENDED COMPLAINT FOR DECLARATORY JUDGMENT RELIEF AND, BREACH OF STATUTORY DUTY, AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; JURY TRIAL DEMANDED**

| | |
|---|---|
| THE ROMAN CATHOLIC BISHOP OF OAKLAND,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC INDEMNITY COMPANY, a Delaware corporation; TRAVELERS CASUALTY & SURETY COMPANY F/K/A AETNA CASUALTY & SURETY COMPANY, a Connecticut corporation; INSURANCE COMPANY OF NORTH AMERICA, a Delaware corporation; UNITED STATES FIRE INSURANCE, a Delaware corporation; WESTPORT INSURANCE CORPORATION, a Delaware corporation; CONTINENTAL CASUALTY COMPANY, a Delaware corporation; PACIFIC EMPLOYERS INSURANCE, a Delaware corporation; WESTCHESTER FIRE INSURANCE COMPANY, a Pennsylvania corporation; the CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, a state entity, and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING SEVERALLY AND NOT JOINTLY TO SLIP NOS. CU 1001 AND K 66034 ISSUED TO THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, AND NOS. K 78138 AND CU 3061 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND; COMPANHIA DE SEGUROS FIDELIDADE SA F/K/A FIDELIDADE INSURANCE COMPANY OF LISBON, SUBSCRIBING TO SLIP NO. K 78138 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND; CATALINA WORTHING INSURANCE LTD F/K/A HFPI (AS PART VII TRANSFEREE OF EXCESS INSURANCE CO. LTD.); DOMINION INSURANCE COMPANY LIMITED; OCEAN MARINE INSURANCE COMPANY LIMITED (AS PART VII TRANSFEREE OF THE WORLD AUXILIARY INSURANCE CORPORATION LIMITED); ENGLISH & AMERICAN INSURANCE COMPANY LIMITED, RIVER THAMES INSURANCE COMPANY LIMITED, R&Q GAMMA COMPANY LIMITED (AS PART VII TRANSFEREE OF ANGLO FRENCH LTD.); LONDON AND OVERSEAS INSURANCE COMPANY LIMITED; and ORION INDEMNITY COMPANY.,<br><br>Defendants. | |

THE ROMAN CATHOLIC BISHOP OF OAKLAND,

Plaintiff,

v.

AMERICAN HOME ASSURANCE CO., a New York corporation,

Defendant.

Plaintiff THE ROMAN CATHOLIC BISHOP OF OAKLAND, plaintiff in the above-captioned action, for its ~~Fifth~~Sixth Amended Complaint for Declaratory Judgment Relief ~~and~~, Breach of Statutory Duty ~~(the "Fifth~~, and Breach of the Implied Covenant of Good Faith and Fair Dealing (the "Sixth Amended Complaint") against Defendants PACIFIC INDEMNITY, a Delaware corporation; TRAVELERS CASUALTY & SURETY COMPANY F/K/A AETNA CASUALTY & SURETY COMPANY, a Connecticut corporation; INSURANCE COMPANY OF NORTH AMERICA, a Delaware corporation; UNITED STATES FIRE INSURANCE, a Delaware corporation; WESTPORT INSURANCE CORPORATION, a Delaware corporation; CONTINENTAL CASUALTY COMPANY, a Delaware corporation; PACIFIC EMPLOYERS INSURANCE, a Delaware corporation; WESTCHESTER FIRE INSURANCE COMPANY, a Pennsylvania corporation; the CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, a state entity; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING SEVERALLY AND NOT JOINTLY TO SLIP NOS. CU 1001 AND K 66034 ISSUED TO THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, AND NOS. K 78138 AND CU 3061 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND; COMPANHIA DE SEGUROS FIDELIDADE SA F/K/A FIDELIDADE INSURANCE COMPANY OF LISBON, SUBSCRIBING TO SLIP NO. K 78138 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND; CATALINA WORTHING INSURANCE LTD F/K/A HFPI (AS PART VII TRANSFEREE OF EXCESS INSURANCE CO. LTD.); DOMINION INSURANCE COMPANY LIMITED, OCEAN MARINE INSURANCE COMPANY LIMITED (AS PART VII TRANSFEREE OF THE WORLD AUXILIARY INSURANCE CORPORATION LIMITED); ENGLISH & AMERICAN INSURANCE COMPANY LIMITED, RIVER THAMES INSURANCE COMPANY LIMITED; R&Q GAMMA COMPANY LIMITED (AS PART VII TRANSFEREE OF ANGLO FRENCH LTD.); LONDON AND OVERSEAS INSURANCE COMPANY LIMITED; ~~and~~ ORION INDEMNITY COMPANY; and AMERICAN HOME ASSURANCE COMPANY, a New York corporation[1]; (collectively, ~~the "~~"Defendants" and collectively without the California Insurance Guarantee Association, "Insurer Defendants"), alleges as follows:

[1] This amended complaint also serves as an amendment to the Second Amended Complaint that was filed against American Home Assurance Company only.

*[Link-to-previous setting changed from off in original to on in modified.].*

Attached hereto is Exhibit A, which lays out the specific claims that are the subject of the relief sought herein as of the date of this filing. The rows detail claim numbers designated by RCBO, case numbers assigned to the case by the court below, insurance carrier names for the years in which the alleged abuse took place, the years of the alleged abuse, the date RCBO (either itself or through its broker) tendered the claim to its respective insurers, the date of the insurer's response, and the insurer's response. Exhibit A may be the subject of further up-datingupdating and disclosure as the matter progresses. RCBO prepared Exhibit A at the Court's request but reserves all rights as to the applicable trigger of coverage for the claims listed therein.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this adversary proceeding pursuant to sections 157 and 1334 of title 28 of the United States Code ("Title 28").

2. Venue in this Court is proper pursuant to sections 1408 and 1409 of Title 28.

~~3. Plaintiff consents to the entry of a final order or judgment by this Court in connection with this adversary proceeding to the extent it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.~~

**NATURE OF THE ACTION**

3. ~~4.~~ This is an action for declaratory judgment ~~and~~, breach of statutory duty, and breach of the implied covenant of good faith and fair dealing.

**THE PARTIES**

4. ~~5.~~ Plaintiff THE ROMAN CATHOLIC BISHOP OF OAKLAND (herein "Plaintiff"~~,~~ or "RCBO~~" or the "Debtor~~") is a California corporation sole with its principal place of business in Oakland, California.

5. ~~6.~~ Defendant PACIFIC INDEMNITY COMPANY ("Pacific Indemnity") is, on information and belief, a Delaware corporation ~~which~~that conducted business in this District and issued written primary policies of insurance to RCBO under Policy No. LAC127792 for the period March 12, 1962 to October 25, 1963 and Policy No. LAC 155598 for the period October 25, 1963 to October 25, 1966 (the "Pacific Indemnity Policies"). Specifically, the Pacific Indemnity Policies are responsive to

*[Link-to-previous setting changed from off in original to on in modified.].*

certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 15, 42, 45, 53, 57, 65, 70, 74, 75, 79, 98, 107, 109, 114, 119, 120, 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 234, 239, 245, 252, 257, 285, 292, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Pacific Indemnity Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Pacific Indemnity Policies.

6. ~~7.~~ Defendant TRAVELERS CASUALTY & SURETY COMPANY F/K/A AETNA CASUALTY & SURETY COMPANY is, on information and belief, a Connecticut corporation ~~which~~that conducted business in this District (herein "Travelers"). Travelers issued written primary policies of insurance to RCBO under Policy No. 05 AL 802025 CMA for the period December 1, 1975 to December 1, 1978; Policy No. 05 SM90296 FCA for the period December 1, 1978 to December 1, 1979; Policy No. 05 SM 99094 FCA for the period December 1, 1979 to December 1, 1980; and Policy No. 05 SM 107459 FCA for the period December 1, 1980 to December 1, 1981 (the "Travelers Primary Policies"). Specifically, the Travelers Primary Policies are responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 2, 7, 10, 13, 16, 17, 19, 20, 21, 22, 25, 26, 28, 29, 31, 33, 35, 40, 41, 42, 43, 45, 54, 56, 58, 59, 61, 63, 64, 71, 80, 82, 83, 86, 88, 92, 95, 96, 97, 99, 101, 102, 103, 104, 105, 106, 110, 115, 117, 121, 126, 128, 131, 132, 133, 140, 144, 149, 152, 154, 157, 158, 163, 166, 168, 172, 174, 180, 181, 182, 189, 190, 191, 192, 193, 194, 198, 200, 203, 206, 208, 209, 210, 211, 212, 213, 215, 216, 223, 224, 225, 227, 229, 230, 243, 244, 247, 249, 250, 251, 256, 258, 259, 266, 267, 272, 273, 274, 295, 296, 297, 298, 304, 306, 310, 317, 318, 319, 321, 323, 324, 329, 333, 335, 343, 344, 345, 347, 349, 352, 353, 354, 359, 367, 368, 370, 373, 374, 376, 377, 379, 380, 382, 384, 386, 388, 392, 393, 399, 402, 403; and

ii. All claims that allege continuous or progressive injury occurring at least in part

*[Link-to-previous setting changed from off in original to on in modified.].*

during one or more of the policy periods of the Travelers Primary Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Travelers Primary Policies.

7. ~~8.~~ Defendant INSURANCE COMPANY OF NORTH AMERICA (herein "INA") is, on information and belief, a Delaware corporation ~~which~~that conducted business in this District. INA issued written primary policies of insurance to RCBO ~~under Policy No. CP 25231~~ for the policy ~~period~~periods October 25, 1966 to October 25, 1969, and ~~Policy No. CP 267867 for the policy period~~ October 25, 1969 to October 25, 1970. Upon information and belief, the policy numbers are Policy No. CP 25231 and Policy No. CP 267867, respectively (the "INA Primary Policies"). Specifically, the INA Primary Policies are responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 15, 19, 23, 32, 39, 42, 43, 46, 48, 50, 52, 53, 57, 66, 68, 70, 74, 75, 77, 81, 83, 86, 87, 88, 90, 91, 98, 101, 102, 103, 105, 106, 107, 109, 129, 139, 142, 145, 147, 150, 159, 160, 175, 179, 185, 186, 187, 188, 190, 195, 196, 202, 205, 206, 207, 211, 214, 215, 218, 220, 232, 234, 235, 238, 239, 245, 251, 252, 253, 257, 264, 265, 268, 270, 279, 282, 285, 293, 303, 308, 325, 328, 336, 342, 348, 358, 360, 369, 378, 381, 385; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the INA Primary Policies, regardless of whether the alleged initial injury began during or before the policy periods of the INA Primary Policies.

8. ~~9.~~ On information and belief, Commercial Union/Armour Insurance Company ("Commercial Union") issued written primary policies of insurance to RCBO under Policy No. EF 9334-001 for the policy period October 25, 1970 to October 26, 1972; Policy No. EF 9334-003 for the policy period October 26, 1972 to October 26, 1973; and Policy No. EF 9334-008 for the policy period October 26, 1973 to December 1, 1975 (the "Commercial Union Policies"). ~~Commerical~~Commercial Union accepted the defense of some of the underlying cases but then reported that it had ~~become~~been

*[Link-to-previous setting changed from off in original to on in modified.].*

declared insolvent. RCBO is informed and believes and thereon allegedalleges that all layers of insurance issued to RCBO by Commercial Union are insolvent and/or exhausted. RCBO is informed and believes and thereon alleges that defendant, the CALIFORNIA INSURANCE GUARANTEE ASSOCIATION ("CIGA"), assumed the responsibilities of Commercial Union regarding the Commercial Union Policies. CIGA, while not an insurer, is a statutory entity, created and existing pursuant to Article 14.2 of the California Insurance Code. The Commercial Union Policies are responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 19, 22, 23, 25, 26, 27, 29; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Commercial Union Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Commercial Union Policies.

9. 10. INA issued a written excess policy of insurance to RCBO under Policy No. XBC 24312 for the period October 25, 1966 to October 25, 1970 (the "INA Excess Policy"). Specifically, the INA Excess Policy is responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 15, 19, 23, 32, 39, 42, 43, 46, 48, 50, 52, 53, 57, 66, 68, 70, 74, 75, 77, 81, 83, 86, 87, 88, 90, 91, 98, 101, 102, 103, 105, 106, 107, 109, 129, 139, 142, 145, 147, 150, 159, 160, 175, 179, 185, 186, 187, 188, 190, 195, 196, 202, 205, 206, 207, 211, 214, 215, 218, 220, 232, 234, 235, 238, 239, 245, 251, 252, 253, 257, 264, 265, 268, 270, 279, 282, 285, 293, 303, 308, 325, 328, 336, 342, 348, 358, 360, 369, 378, 381, 385; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the INA Excess Policy, regardless of whether the alleged initial injury began during or before the policy periods of the INA Excess Policy.

10. 11. Defendant UNITED STATES FIRE INSURANCE is, on information and belief, a

*[Link-to-previous setting changed from off in original to on in modified.].*

Delaware corporation which conducted business in this District (herein "U.S. Fire"). On information and belief, RCBO alleges that U.S. Fire issued a written policy of excess insurance to RCBO under Policy No. DCL 53 9820 for the period October 25, 1970 to October 25, 1971 (the "U.S. Fire Policy"). Specifically, the U.S. Fire Policy is responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 14, 15, 23, 27, 39, 42, 43, 66, 77, 81, 87, 99, 100, 101, 102, 103, 104, 105, 106, 110, 112, 123, 129, 145, 146, 153, 159, 175, 184, 185, 186, 187, 188, 190, 195, 196, 206, 207, 211, 213, 214, 215, 217, 218, 220, 221, 234, 235, 236, 246, 251, 265, 270, 271, 279, 293, 303, 304, 315, 326, 334, 342, 348, 365, 369, 374, 378, 385; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the U.S. Fire Policy, regardless of whether the alleged initial injury began during or before the policy periods of the U.S. Fire Policy.

11. ~~12.~~ Defendant WESTPORT INSURANCE CORPORATION is, on information and belief, a Delaware corporation which conducted business in this District (herein "Westport"). On information and belief, RCBO alleges that Westport issued a written policy of excess insurance to RCBO under Policy No. U10255 for the period October 26, 1971 to October 26, 1974 (the "Westport Excess Policy"). Specifically, the Westport Excess Policy is responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 16, 17, 22, 23, 25, 26, 28, 30, 31, 33, 35, 36, 37, 40, 41, 42, 43, 44, 47, 49, 54, 58, 59, 60, 66, 67, 72, 76, 77, 80, 81, 82, 85, 87, 94, 95, 96, 97, 101, 102, 105, 106, 112, 113, 115, 117, 123, 126, 129, 131, 135, 136, 143, 145, 146, 151, 153, 158, 159, 160, 162, 163, 164, 165, 167, 173, 175, 178, 180, 181, 182, 184, 185, 186, 187, 188, 190, 192, 196, 199, 200, 201, 205, 206, 207, 209, 211, 213, 215, 217, 218, 219, 221, 222, 223, 229, 235, 236, 243, 246, 251, 259, 260, 262, 269, 270, 271, 273, 294, 296, 297, 298, 302, 303, 304, 305, 315, 318, 320, 321, 233, 324, 325, 326, 327, 329, 330, 332, 333, 334, 343, 344, 346, 347, 348, 351, 353, 356,

*[Link-to-previous setting changed from off in original to on in modified.].*

361, 362, 367, 368, 369, 374, 375, 377, 382, 384, 385, 392, 394, 399, 401; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Westport Excess Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Westport Excess Policy.

12. 13. Defendant CONTINENTAL CASUALTY COMPANY is, on information and belief, a Delaware corporation which conducted business in this District (herein "CNA"). On information and belief, RCBO alleges that CNA issued written policies of excess insurance to RCBO under Policy No. RDU 146 74 50 for the period October 26, 1974 to December 1, 1977 and Policy No. UMB 006 46 71 53 for the period December 1, 1977 to December 1, 1980 (the "CNA Policies"). Specifically, the CNA Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 15, 16, 17, 19, 20, 21, 22, 25, 26, 29, 30, 31, 33, 34, 35, 37, 40, 41, 44, 47, 54, 56, 59, 63, 76, 80, 82, 83, 85, 86, 88, 92, 95, 96, 97, 99, 101, 102, 103, 105, 106, 110, 113, 115, 117, 121, 124, 126, 128, 131, 132, 140, 143, 144, 149, 151, 152, 154, 157, 158, 160, 163, 164, 165, 166, 168, 172, 173, 174, 178, 180, 181, 182, 183, 189, 190, 191, 192, 194, 198, 199, 200, 201, 203, 206, 207, 208, 209, 210, 211, 212, 213, 215, 216, 217, 224, 225, 229, 230, 244, 247, 249, 250, 251, 256, 258, 259, 266, 267, 272, 273, 274, 275, 278, 280, 284, 286, 287, 288, 294, 295, 296, 297, 298, 302, 304, 305, 306, 310, 317, 318, 321, 323, 324, 325, 327, 329, 332, 333, 335, 344, 345, 347, 349, 352, 353, 354, 356, 359, 361, 362, 367, 368, 370, 373, 374, 376, 377, 379, 380, 382, 384, 386, 388, 392, 393, 399, 402, 403; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the CNA Policies, regardless of whether the alleged initial injury began during or before the policy periods of the CNA Policies.

13. 14. On information and belief, Industrial Indemnity issued a written policy of excess insurance to RCBO under Policy No. JU 8312510 for the period December 1, 1980 to December 1,

*[Link-to-previous setting changed from off in original to on in modified.].*

1981, and WESTCHESTER FIRE INSURANCE COMPANY ("Westchester") assumed all the obligations under said policy (the "Westchester Policy"). Specifically, the Westchester Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 10, 19, 28, 33, 35, 61, 64, 104, 133, 140, 154, 157, 166, 180, 189, 191, 193, 194, 208, 212, 224, 225, 227, 244, 250, 251, 261, 267, 296, 317, 319, 352, 354, 367, 370, 373, 376; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Westchester Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Westchester Policy.

14. ~~15.~~ On information and belief, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING SEVERALLY AND NOT JOINTLY TO SLIP NO. CU 1001 ISSUED TO THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, AND NO. K 78138 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND ("Lloyd's Excess") issued written policies of excess insurance to RCBO under Policies No. CU 1001 for the period March 12, 1962 to October 25, 1963, and K 78131 for the period October 25, 1963 to October 25, 1966 (the "Lloyd's Excess Policies"). Specifically, the Lloyd's Excess Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Lloyd's Excess Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Lloyd's Excess Policies.

15. ~~16.~~ On information and belief, CATALINA WORTHING INSURANCE LTD F/K/A HFPI (AS PART VII TRANSFEREE OF EXCESS INSURANCE CO. LTD.) ("Excess Insurance Co.")

*[Link-to-previous setting changed from off in original to on in modified.].*

issued written policies of excess insurance to RCBO under Policies No. CU 1001 for the period March 12, 1962 to October 25, 1963, and K 78131 for the period October 25, 1963 to October 25, 1966 (the "Excess Insurance Co. Policies"). Specifically, the Excess Insurance Co. Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Excess Insurance Co. Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Excess Insurance Co. Policies.

16. ~~17.~~ On information and belief, DOMINION INSURANCE COMPANY LIMITED ("Dominion") issued written policies of excess insurance to RCBO under Policies No. CU 1001 for the period March 12, 1962 to October 25, 1963, and K 78131 for the period October 25, 1963 to October 25, 1966 (the "Dominion Policies"). Specifically, the Dominion Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Dominion Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Dominion Policies.

17. ~~18.~~ On information and belief, the OCEAN MARINE INSURANCE COMPANY LIMITED (AS PART VII TRANSFEREE OF THE WORLD AUXILIARY INSURANCE CORPORATION LIMITED) ("World Auxiliary") issued a written policy of excess insurance to RCBO under Policy No. CU 1001 for the period March 12, 1962 to October 25, 1963 (the "World Auxiliary

*[Link-to-previous setting changed from off in original to on in modified.].*

Policy"). Specifically, the World Auxiliary Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 45, 57, 65, 79, 119, 120, 155, 176, 177, 187, 204, 299, 307, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the World Auxiliary Policy, regardless of whether the alleged initial injury began during or before the policy periods of the World Auxiliary Policy.

18. ~~19.~~ On information and belief, the ENGLISH & AMERICAN INSURANCE COMPANY LIMITED ("English & American") issued a written policy of excess insurance to RCBO under Policy No. CU 1001 for the period March 12, 1962 to October 25, 1963 (the "English & American Policy"). Specifically, the English & American Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 45, 57, 65, 79, 119, 120, 155, 176, 177, 187, 204, 299, 307, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the English & American Policy, regardless of whether the alleged initial injury began during or before the policy periods of the English & American Policy.

19. ~~20.~~ On information and belief, the RIVER THAMES INSURANCE COMPANY LIMITED ("River Thames") issued a written policy of excess insurance to RCBO under Policy No. CU 1001 for the period March 12, 1962 to October 25, 1963 (the "River Thames Policy"). Specifically, the River Thames Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 45, 57, 65, 79, 119, 120, 155, 176, 177, 187, 204, 299, 307, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the River Thames Policy, regardless of

*[Link-to-previous setting changed from off in original to on in modified.].*

whether the alleged initial injury began during or before the policy periods of the River Thames Policy.

20. ~~21.~~ On information and belief, COMPANHIA DE SEGUROS FIDELIDADE SA F/K/A FIDELIDADE INSURANCE COMPANY OF LISBON, SUBSCRIBING TO SLIP NO. K 78138 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND ("Fidelidade") subscribed for a percentage participation of a written policy of excess insurance to RCBO under Policy Slip No. K 78131 for the period October 25, 1963 to October 25, 1966 (the "Fidelidade Excess Policy"). Specifically, the Fidelidade Excess Policy is responsive to certain claims, including but not limited to the following:

i. Nos. 15, 42, 45, 48, 65, 74, 75, 79, 98, 114, 120, 137, 142, 147, 150, 155, 176, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Fidelidade Excess Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Fidelidade Excess Policy.

21. ~~22.~~ Defendant Westport is, on information and belief, a Delaware corporation which conducted business in this District. On information and belief RCBO alleges that Westport issued a written umbrella policy of insurance to RCBO under Policy No. PLE20430 for the period October 16, 1974 to October 16, 1977 (the "Westport Umbrella Policy"). Specifically, the Westport Umbrella Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 20, 28, 83, 88, 140, 144, 174, 189, 249, 267, 295, 310, 323, 373, 388; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Westport Umbrella Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Westport Umbrella Policy.

22. ~~23.~~ Defendant Travelers is, on information and belief, a Connecticut corporation which conducted business in this District. On information and belief RCBO alleges that Travelers issued written umbrella polices of insurance to RCBO under Policy No. 05 XN 55 WCA for the period

*[Link-to-previous setting changed from off in original to on in modified.].*

December 1, 1977 to February 1, 1979; Policy No. 05 XN 75 WCA for the period February 1, 1979 to December 1, 1979 and Policy No. 05 XN 87 WCA for the period December 1, 1979 to December 1, 1981 (the "Travelers Umbrella Policies"). Specifically, the Travelers Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 10, 21, 29, 33, 35, 56, 61, 64, 71, 82, 83, 86, 92, 95, 96, 97, 99, 101, 102, 103, 104, 105, 106, 110, 115, 117, 121, 124, 126, 128, 131, 132, 133, 140, 149, 152, 154, 157, 158, 163, 166, 168, 174, 180, 181, 183, 189, 191, 192, 193, 194, 198, 203, 206, 208, 210, 212, 216, 224, 225, 227, 230, 243, 244, 247, 250, 251, 256, 258, 261, 266, 267, 272, 273, 274, 296, 297, 298, 310, 317, 318, 319, 321, 323, 345, 349, 352, 354, 359, 367, 370, 373, 374, 376, 379; 380, 384, 386, 402, 403; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Travelers Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Travelers Umbrella Policies.

23. ~~24.~~ Defendant PACIFIC EMPLOYERS INSURANCE ("Pacific Employers") is, on information and belief, a Delaware corporation which conducted business in this District. On information and belief RCBO alleges that Pacific Employers issued a written umbrella policy of insurance to RCBO under Policy No. XCC 01 2405 for the period March 13, 1985 to December 1, 1985 (the "Pacific Employers Policy"). Specifically, the Pacific Employers Policy is responsive to certain claims, including but not limited to the following ~~claim~~claims:

i. Nos. 12, 51, 73, 80, 118, 127, 130, 141, 171, 225, 228, 254, 314, 338, 339, 350, 363, 407; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Pacific Employers Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Pacific Employers Policy.

24. ~~25.~~ On information and belief, R&Q GAMMA COMPANY LIMITED (AS PART VII

*[Link-to-previous setting changed from off in original to on in modified.].*

TRANSFEREE OF ANGLO FRENCH LTD.) ("Anglo French Umbrella") issued written policies of umbrella insurance to RCBO under Slip No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "Anglo French Umbrella Policies"). Specifically, the Anglo French Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Anglo French Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Anglo French Umbrella Policies.

25. 26. On information and belief, Excess Insurance Co. ("Excess Insurance Co. Umbrella") issued written policies of umbrella insurance to RCBO under Slip No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "Excess Insurance Co. Umbrella Policies"). Specifically, the Excess Insurance Co. Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Excess Insurance Co. Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Excess Insurance Co. Umbrella Policies.

26. 27. On information and belief, English & American ("English & American Umbrella") issued written policies of umbrella insurance to RCBO under Slip No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the

*[Link-to-previous setting changed from off in original to on in modified.].*

"English & American Umbrella Policies"). Specifically, the English & American Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the English & American Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the English & American Umbrella Policies.

27. ~~28.~~ On information and belief, the LONDON AND OVERSEAS INSURANCE COMPANY LIMITED ("London & Overseas Umbrella") issued written policies of umbrella insurance to RCBO under Slips No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "London & Overseas Umbrella Policies"). Specifically, the London & Overseas Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the London & Overseas Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the London & Overseas Umbrella Policies.

28. ~~29.~~ On information and belief, the ORION INDEMNITY COMPANY ("Orion Umbrella") issued written policies of umbrella insurance to RCBO under Slip No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "Orion Indemnity Umbrella Policies"). Specifically, the Orion Indemnity Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

*[Link-to-previous setting changed from off in original to on in modified.].*

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Orion Indemnity Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Orion Indemnity Umbrella Policies.

29. ~~30.~~ On information and belief, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING SEVERALLY AND NOT JOINTLY TO SLIP NO. K 66034 ISSUED TO THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, AND NO. CU 3061 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND ("Lloyd's Umbrella") issued written policies of umbrella insurance to RCBO under Policies No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "Lloyd's Umbrella Policies"). Specifically, the Lloyd's Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Lloyd's Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Lloyd's Umbrella Policies.

30. Defendant AMERICAN HOME ASSURANCE COMPANY ("AHAC") is, on information and belief, a New York corporation which conducted business in this District. On information and belief, RCBO alleges that AHAC issued a written excess policy of insurance to RCBO under Policy No. CE 35-60-94 for the period November 15, 1971, to October 26, 1974 (the "AHAC

*[Link-to-previous setting changed from off in original to on in modified.].*

Policy"). Specifically, the AHAC Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 16, 17, 22, 23, 25, 26, 28, 30, 31, 33, 35, 36, 37, 40, 41, 42, 43, 44, 47, 49, 54, 58, 59, 60, 66, 67, 72, 76, 77, 80, 81, 82, 85, 87, 94, 95, 96, 97, 101, 102, 105, 106, 112, 113, 115, 117, 123, 126, 129, 131, 135, 136, 143, 145, 146, 151, 153, 158, 159, 160, 162, 163, 164, 165, 167, 173, 175, 178, 180, 181, 182, 184, 185, 186, 187, 188, 190, 192, 196, 199, 200, 201, 205, 206, 207, 209, 211, 213, 215, 217, 218, 219, 221, 222, 223, 229, 235, 236, 243, 246, 251, 259, 260, 262, 269, 270, 271, 273, 294, 296, 297, 298, 302, 303, 304, 305, 315, 318, 320, 321, 233, 324, 325, 326, 327, 329, 330, 332, 333, 334, 343, 344, 346, 347, 348, 351, 353, 356, 361, 362, 367, 368, 369, 374, 375, 377, 382, 384, 385, 392, 394, 399, 401; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the AHAC Policy, regardless of whether the alleged initial injury began during or before the policy period(s) of the AHAC Policy.

**FACTUAL BACKGROUND COMMON TO ALL DEFENDANTS**

31. On June 22, 2023, the ~~Debtor~~Plaintiff filed the First Amended Complaint for declaratory relief and breach of contract, seeking to litigate the ~~Debtor's~~Plaintiff's claims against numerous of its historical insurance carriers. [Docket No. 2 with attached Exhibit and Attachment (collectively, the "First Amended Complaint")]. On December 18, 2023, the ~~Debtor~~Plaintiff filed the Second Amended Complaint for declaratory relief, breach of contract, and breach of statutory duty to address issues raised in various motions to dismiss, per the Court's order. On January 12, 2024, the ~~Debtor~~Plaintiff filed the Third Amended Complaint for declaratory relief, breach of contract, and breach of statutory duty to include additional insurers that it alleges are liable to provide indemnity and/or defense of the underlying complaints.

~~32. The Debtor files this Fifth Amended Complaint to, among other things, include additional factual detail as the Court ordered on July 11, 2024. As of the date of this filing the Debtor has resolved~~

*[Link-to-previous setting changed from off in original to on in modified.].*

any disputes related to its past claims of breach of contract based on any Defendant's duty to defend the underlying claims. This Fifth Amended Complaint therefore does not bring any claims for breach of any Defendant's duty to defend and seeks only claims for declaratory relief and breach of statutory duty herein. As the underlying Suits (defined below) tendered to the defendants are stayed due to the RCBO bankruptcy proceedings, there is no present need for a defense of those Suits. The Debtor reserves all of its rights as against Defendants including, without limitation, the right to bring future claims for breach of contract based on any Defendant's duty to defend, which duty arises after the date of this filing.

32. The Plaintiff filed a Fifth Amended Complaint to, among other things, include additional factual detail as the Court ordered on July 11, 2024.

33. The Plaintiff files this Sixth Amended Complaint for two purposes. First, the Sixth Amended Complaint clarifies expressly that each of the Plaintiff's policies are triggered not only by claims alleging abuse during the applicable policy period and by claims alleging injury during the policy period, but also by claims alleging an initial injury beginning prior to the applicable policy period, if the plaintiff alleges continuous or progressive injury thereafter. Under California's "continuous injury" trigger of coverage, "'[t]here is no requirement that . . . the conditions giving rise to the damage or injury . . . themselves occur within the policy period in order for potential liability coverage to arise.' . . . '[B]odily injury and property damage which is continuous or progressively deteriorating throughout several policy periods is potentially covered by all policies in effect during those periods.'" *Montrose Chem. Corp. v. Superior Court*, 9 Cal. 5th 215, 227 (2020).

34. Second, the Sixth Amended Complaint includes additional causes of action for breach of the implied duty of good faith and fair dealing against Insurer Defendants. These claims are based on Insurer Defendants' failure to accept and participate in reasonable opportunities to resolve covered claims within applicable policy limits. Against Pacific Indemnity, INA, Westchester and Pacific Employers (collectively, "Chubb"), an additional claim is based on its participation in an online campaign which directly contradicts its duty of loyalty to its insured, the Plaintiff. The Sixth Amended Complaint also incorporates RCBO's causes of action against American Home Assurance Company, which previously were proceeding under a separate complaint.

*[Link-to-previous setting changed from off in original to on in modified.].*

35. ~~33.~~ RCBO has been named in more than 350 complaints primarily filed in the Alameda Superior Court as well as proofs of claim filed in the Bankruptcy Court seeking recovery for alleged negligent supervision and hiring of certain clerical and ministerial personnel over a period of decades. These suits and proofs of claim (collectively referred to as the "Suits") have been filed as a result of California's passing of AB 218, which extended the statute of limitations for the filing of similar civil actions.

36. The underlying plaintiffs allege abuse by certain clerical or ministerial personnel many years ago, including improper physical contact and bodily injury, and further allege, or could allege, continuous or progressive injury thereafter. Each insurance policy in effect when initial physical contact with a claimant occurred, and each insurance policy in effect thereafter, owes a duty to defend and/or indemnify RCBO against the claimant's Suit.

37. ~~34.~~ Although section 362 of the Bankruptcy Code provides for an automatic stay of the Suits and of additional lawsuits against the ~~Debtor~~Plaintiff, RCBO is informed, and believes, that additional suits may be filed and/or served after the filing of this proceeding and RCBO will update the list as reflected in Exhibit A to reflect all such cases as appropriate.

38. ~~35.~~ RCBO has maintained insurance coverage through a series of primary, excess, and umbrella insurers from the early 1960s through the present time as alleged above.

39. ~~36.~~ RCBO has tendered through its broker (*i.e.*, "AJG" as designated in Exhibit A) both RCBO's defense and indemnity of the Suits under all applicable insurance policies to the associated Defendants that issued those policies and were not insolvent.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief Against Pacific Indemnity - Primary)**

40. ~~37.~~ RCBO realleges and incorporates herein ~~paragraphs~~Paragraphs 1 through ~~36~~39 of this Complaint as if said ~~paragraphs~~Paragraphs were set forth in full.

41. ~~38.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

42. ~~39.~~ An actual and justiciable controversy exists between RCBO and Pacific Indemnity

*[Link-to-previous setting changed from off in original to on in modified.].*

with respect to whether Pacific Indemnity is obligated to provide RCBO with indemnity under ~~its insurance policies (~~the ~~"~~Pacific Indemnity Policies~~")~~ regarding the subset of the Suits for which RCBO alleges Pacific Indemnity is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~6~~5 (the "Pacific Indemnity Covered Claims").

43. ~~40.~~ Pursuant to the terms of the Pacific Indemnity Policies, Pacific Indemnity is obligated to, among other things, indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Pacific Indemnity Covered Claims.

44. ~~41.~~ RCBO has fully ~~performed~~satisfied all conditions required under the Pacific Indemnity Policies, or is otherwise excused from doing so.

45. ~~42.~~ RCBO's broker and/or RCBO tendered the Pacific Indemnity Covered Claims to Pacific Indemnity on RCBO's behalf as set forth in Exhibit A.

46. ~~43.~~ Pacific Indemnity has agreed to provide a defense to RCBO for the Pacific Indemnity Covered Claims under a reservation of rights.

47. ~~44.~~ Pacific Indemnity's reservation of rights includes Pacific Indemnity's position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the [Pacific Indemnity Policies]."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. For certain claims, Pacific Indemnity contends it "has not located any evidence of the existence of any policies issued to [RCBO] during the period when the plaintiffs or claimants allege they were abused."

iv. The Pacific Indemnity Policies "may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

v. "To the extent emotional distress is alleged without any physical injury, there is no coverage."

*[Link-to-previous setting changed from off in original to on in modified.].*

vi. "To the extent [RCBO] is liable for damages not resulting from 'bodily injury,' there would be no coverage."

vii. "To the extent the evidence demonstrates that [RCBO] 'expected or intended' injury to the subject claimant, coverage will be barred."

viii. The alleged conduct may also be "excluded as uninsurable willful conduct pursuant to California Insurance Code § 533."

ix. "To the extent [RCBO] breached any notice provision contained in the 1963-1966 Pacific Indemnity Primary Policies, there is no coverage."

x. The Pacific Indemnity Primary Policies "may also contain additional exclusions that exclude coverage for damages arising out of sexual abuse."

48. ~~45.~~ In addition, Pacific Indemnity reserved further rights to deny coverage as follows:

i. Pacific Indemnity "reserves rights to the extent the [Pacific Indemnity Policies are] exhausted and [it has] no further defense or indemnity obligations under the [Policies]."

ii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iii. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, Pacific Indemnity reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

iv. "The right to assert the [] limit of liability" based on damages "as the result of any one occurrence."

v. The right "to determine the number of claim(s) and/or occurrence(s) that exist in this matter, if any."

vi. The right "to deny coverage under the 1963-55 Pacific Indemnity Primary Policy for any amounts that are uninsurable pursuant to applicable law."

49. ~~46.~~ It is RCBO's position that the above reservations of rights are without both factual

*[Link-to-previous setting changed from off in original to on in modified.].*

and legal merit.

50. ~~47.~~ For example, Pacific Indemnity has reserved its right to deny its indemnity obligation under the Pacific Indemnity Policies on the grounds that the Pacific Indemnity Covered Claims allege injuries that were "'expected' or 'intended' from the standpoint of the RCBO" or that do not constitute covered "'bodily injury.'" Such defenses to indemnity do not apply because the Pacific Indemnity Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Pacific Indemnity Policies define that term, within the Pacific Indemnity ~~Policy 's~~Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Pacific Indemnity Covered Claims.

i. Claim 74 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and "failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83), and that such negligence caused the plaintiff bodily injury, including "severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 75).

ii. Claim 142 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 197 includes negligence allegations that RCBO "negligently failed to properly

*[Link-to-previous setting changed from off in original to on in modified.].*

and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

iv. Claim 245 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

v. Claim 360 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 99).

51. ~~48.~~ The remaining Pacific Indemnity Covered Claims not listed in Paragraph ~~47~~50 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the

*[Link-to-previous setting changed from off in original to on in modified.].*

Pacific Indemnity Policies define that term.

52. 49. The asserted reservations of rights set forth in Paragraphs 4447 and 4548 do not provide Pacific Indemnity valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Pacific Indemnity Covered Claims under the Pacific Indemnity Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conductwillful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Pacific Indemnity Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Pacific Indemnity Policies have either been exhausted or that limits have been reduced.

53. 50. Pacific Indemnity has improperly denied and/or failed to provide indemnity for the Pacific Indemnity Covered Claims, as required under the Pacific Indemnity Policies. *See* Exhibit A. RCBO continues to seek indemnity from Pacific Indemnity under the Pacific Indemnity Policies.

54. 51. The Pacific Indemnity Policies providesprovide coverage for, and doesdo not exclude, the Pacific Indemnity Covered Claims, and Pacific Indemnity is obligated to defend and indemnify RCBO foragainst any settlement or judgment resolving, the Pacific Indemnity Covered Claims.

55. 52. The Pacific Indemnity Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

56. 53. RCBO sent Pacific Indemnity a letter on May 30, 2024, demanding Pacific Indemnity indemnify RCBO for the Pacific Indemnity Covered Claims up to the policy limits under the Pacific Indemnity Policies (the "Pacific Indemnity Policy Limits Letter").

57. 54. Pacific Indemnity failed to respond to the Pacific Indemnity Policy Limits LettersLetter confirming it will indemnify RCBO in response to the Policy Limits Letters, and thereby has failed to provide the benefits of the Pacific Indemnity Policies to RCBO.

58. 55. The Official Committee of Unsecured Creditors ("UCC") sent Pacific Indemnity, INA, Westchester and Pacific Employers (collectively, "Chubb") a letter on July 3, 2024, demanding they pay a sum of $219.2 million, which is within the policy limits of the Chubb policies, including the

*[Link-to-previous setting changed from off in original to on in modified.].*

Pacific Indemnity Policies, to resolve the Pacific Indemnity Covered Claims alleged against RCBO (the "UCC Chubb Demand Letter").

59. 56. On August 6, 2024, Pacific Indemnity responded to the UCC Chubb Demand letterLetter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Chubb Demand Letter, and thereby has failed to provide the benefits of the Pacific Indemnity Policy to RCBO.

60. 57. An actual controversy of a justiciable nature presently exists between RCBO and Pacific Indemnity concerning the proper construction of the Pacific Indemnity Policies, whether Pacific Indemnity's cited grounds for reservation of rights to deny coverage under the Pacific Indemnity Policies are valid, whether there is any coverage for the Pacific Indemnity Covered Claims under the Pacific Indemnity Policies, Pacific Indemnity's and RCBO's respective rights and obligations under the Pacific Indemnity Policies with respect to the Pacific Indemnity Covered Claims, and whether Pacific Indemnity should participate in settlement and/or indemnity regarding the Pacific Indemnity Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

61. 58. RCBO is entitled to a declaratory judgment stating Pacific Indemnity has issued the Pacific Indemnity Policies to RCBO, the Pacific Indemnity Policies cover the Pacific Indemnity Covered Claims, and RCBO is entitled to indemnity regarding the Pacific Indemnity Covered Claims under the Pacific Indemnity Policies.

**SECOND CAUSE OF ACTION**

**(Declaratory Relief Against Travelers - Primary)**

62. 59. RCBO realleges and incorporates herein paragraphsParagraphs 1 through 5861 of this Complaint as if said paragraphsParagraphs were set forth in full.

63. 60. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201; Cal. Code. Civ. P. § 1060.

64. 61. An actual and justiciable controversy exists between RCBO and Travelers with respect to whether Travelers is obligated to provide RCBO with indemnity under the Travelers Primary Policies regarding the subset of the Suits for which RCBO alleges Travelers is obligated to provide

*[Link-to-previous setting changed from off in original to on in modified.].*

RCBO with indemnity, as set forth in Paragraph ~~7~~6 (the "Travelers Covered Claims").

65. ~~62.~~ Pursuant to the terms of the Travelers Primary Policies, Travelers is obligated to, among other things, indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Travelers Covered Claims.

66. ~~63.~~ RCBO has fully ~~performed~~satisfied all conditions required under the Travelers Primary Policies, or is otherwise excused from doing so.

67. ~~64.~~ RCBO's broker and/or RCBO tendered the Travelers Covered Claims to Travelers on RCBO's behalf as set forth in Exhibit A.

68. ~~65.~~ Travelers has agreed to provide a defense to RCBO for the Travelers Covered Claims under a reservation of rights. Travelers has denied and/or failed to provide indemnity for the Travelers Covered Claims, as required under the Travelers Primary Policies. *See* Exhibit A. RCBO continues to seek indemnity from Travelers under the Travelers Primary Policies.

69. ~~66.~~ Travelers' reservation of rights includes Travelers' position that it may deny coverage on the following bases:

i. Travelers "never issued the Alleged Primary Policies and/or that those Primary Policies are lost,"

ii. Travelers "has no duty to defend or indemnify the RCBO in connection with matter because the alleged injuries at issue involve emotional or psychological injury as opposed to physical injury to the body and, therefore, do not constitute covered 'bodily injury,'"

iii. The alleged injuries "occurred outside the effective period of the Primary Policy,"

iv. "[T]he alleged injuries were 'expected' or 'intended' from the standpoint of the RCBO,"

v. "Applicable law does not permit the recovery of insurance proceeds for losses known by the insured to be substantially certain to occur or losses that are otherwise not fortuitous,"

vi. "The Claimants allege generally that the RCBO is liable for willful and intentional

*[Link-to-previous setting changed from off in original to on in modified.].*

acts" and California law "bar[s] coverage for the claims asserted,"

vii. California law "bar[s] indemnification for punitive damages,"

viii. "[R]egardless of the number of sexual abuse claims that are made or suits brought pertaining to alleged sexual abuse, the limit of liability of Travelers applicable to all judgments in or settlements of such matters is the 'each occurrence' limit. Travelers reserves the right to assert that the 'each occurrence' limit of a Primary Policy is impaired or exhausted as a result of prior payments made by Travelers in connection with injuries of the type alleged in the matter,"

ix. "[T]here is no coverage in connection with the matter because the RCBO did not comply with the notice conditions of a Policy,"

x. Travelers is not obligated to defend or indemnify RCBO "in the event this condition [requiring cooperation with Travelers] has been violated or is violated in the future,"

xi. Travelers has no obligation to defend or indemnify RCBO "in the event this condition [prohibiting RCBO from making a voluntary payment at the time of the accident] has been violated or is violated in the future," and

xii. Travelers may "limit any obligation it might have under a Policy and [] seek contribution toward any sums expended from any other insurer whose coverage may apply to a matter."

70. ~~67.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit.

71. ~~68.~~ For example, Travelers has reserved its right to deny its indemnity obligation under the Travelers Primary Policies on the grounds that the Travelers Covered Claims allege injuries that were "'expected' or 'intended' from the standpoint of the RCBO" or are "willful" or do not constitute covered 'bodily injury.'" Such defenses to indemnity do not apply because the Travelers Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Travelers Primary Policies define that term, within the Travelers Primary Policies' coverage ~~period~~periods (*see* Exhibit A). RCBO sets forth below examples of

*[Link-to-previous setting changed from off in original to on in modified.].*

negligence and bodily injury allegations from the Travelers Covered Claims.

i. Claim 20 includes negligence allegations that RCBO "failed to take reasonable steps or implement reasonable safeguards for Plaintiffs protection" (¶ 121) and "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRATOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent the childhood sexual assault, abuse, and harassment of minor children, including Plaintiff" (¶ 125), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical, psychological, emotional, and economic harm" (¶ 129).

ii. Claim 21 includes negligence allegations that RCBO "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 51) and "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRTOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent the childhood sexual assault, abuse, and harassment of minor children, including Plaintiff" (¶ 54), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical, psychological, emotional, and economic harm" (¶ 52).

iii. Claim 22 includes negligence allegations that RCBO "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER, including but not limited to preventing or avoiding placement of ABUSER in a function or environment in which contact with children is an inherent aspect of the function or environment" (¶ 35) and "failed to supervise Plaintiff JOHN DOE PD, a minor, and failed to use reasonable care in protecting Plaintiff JOHN DOE PD, a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse, while Plaintiff JOHN DOE PD, a minor, was involved in

*[Link-to-previous setting changed from off in original to on in modified.].*

activities sponsored, supervised, organized or directed by [RCBO] or their agents and employees" (¶ 44), and that as a result of such negligence the plaintiff "suffered economic, physical, psychological and emotional harm" (¶ 38).

iv. Claim 29 includes negligence allegations that RCBO "[was] at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 9) and "[was] further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 9), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 10).

v. Claim 132 includes negligence allegations that RCBO "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 47) and "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRATOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent the childhood sexual assault, molestation and harassment of minors, including Plaintiff" (¶ 50), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical, psychological, emotional and economic harm" (¶ 48).

72. ~~69.~~ The remaining Travelers Covered Claims not listed in Paragraph ~~68~~71 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Travelers Primary Policies define that term.

73. ~~70.~~ The asserted reservations of rights set forth in Paragraph ~~66~~69 do not provide Travelers valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Travelers Covered Claims under the Travelers Primary Policies as the claims have been tendered (and

*[Link-to-previous setting changed from off in original to on in modified.].*

notice provided) and concern allegations of negligence (not intentional conductwillful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Travelers Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Travelers Policies have either been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Travelers as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

74. 71. RCBO sent Travelers a letter on May 30, 2024, demanding Travelers indemnify RCBO for the Travelers Covered Claims up to the policy limits under the Travelers Primary Policies (the "Travelers Primary Policy Limits Letter").

75. 72. Travelers failed to respond to the Travelers Primary Policy Limits Letter confirming it will indemnify RCBO in response to the Policy Limits Letter, and thereby has failed to provide the benefits of the Travelers Primary Policies to RCBO.

76. 73. The Official Committee of Unsecured Creditors ("UCC") sent Travelers a letter on July 3, 2024, demanding Travelers pay a sum within the policy limits of the Travelers Primary Policies to resolve the Travelers Covered Claims against RCBO (the "UCC Travelers Demand Letter").

77. 74. On August 6, 2024, Travelers responded to the UCC Travelers Demand letterLetter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Demand Letter, and thereby has failed to provide the benefits of the Travelers Primary Policies to RCBO.

78. 75. The Travelers Primary Policies provide coverage for, and do not exclude, the Travelers Covered Claims, and Travelers is obligated to defend and indemnify RCBO foragainst any settlement or judgment resolving, the Travelers Covered Claims.

79. 76. The Travelers Primary Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

80. 77. An actual controversy of a justiciable nature presently exists between RCBO and Travelers concerning the proper construction of the Travelers Primary Policies, whether Travelers' cited grounds for reservation of rights to deny coverage under the Travelers Primary Policies are valid, whether there is any coverage for the Travelers Covered Claims under the Travelers PolicyPrimary

*[Link-to-previous setting changed from off in original to on in modified.].*

Policies, Travelers' and RCBO's respective rights and obligations under the Travelers Primary Policies with respect to the Travelers Covered Claims, and whether Travelers should participate in settlement regarding the Travelers Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

81. ~~78.~~ RCBO is entitled to a declaratory judgment stating Travelers has issued the Travelers Primary Policies to RCBO, the Travelers Primary Policies cover the Travelers Covered Claims, and that RCBO is entitled to indemnity regarding the Travelers Covered Claims under the Travelers Primary Policies.

**THIRD CAUSE OF ACTION**

**(Declaratory Relief Against INA - Primary)**

82. ~~79.~~ RCBO realleges and incorporates herein ~~paragraphs~~Paragraphs 1 through ~~78~~81 of this Complaint as if said ~~paragraphs~~Paragraphs were set forth in full.

83. ~~80.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

84. ~~81.~~ An actual and justiciable controversy exists between RCBO and INA with respect to whether INA is obligated to provide RCBO with indemnity under the INA Primary Policies regarding the subset of the Suits for which RCBO alleges INA is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~8~~7 (the "INA Primary Covered Claims").

85. ~~82.~~ Pursuant to the terms of the INA Primary Policies, INA is obligated to, among other things, indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the INA Primary Covered Claims.

86. ~~83.~~ RCBO has fully ~~performed~~satisfied all conditions required under the INA Primary Policies, or is otherwise excused from doing so.

87. ~~84.~~ RCBO's broker and/or RCBO tendered the INA Primary Covered Claims to INA on RCBO's behalf as set forth in Exhibit A.

88. ~~85.~~ INA has agreed to provide a defense to RCBO for the INA Primary Covered Claims under a reservation of rights. INA has denied and/or failed to provide indemnity for the INA Primary

*[Link-to-previous setting changed from off in original to on in modified.].*

Covered Claims, as required under the INA Primary Policies. *See* Exhibit A. RCBO continues to seek indemnity from INA under the INA Primary Policies.

89. ~~86.~~ INA's reservation of rights includes INA's position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the Policies."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. For certain claims, INA "has not located any evidence of the existence of any policies issued to [RCBO] during the period when the plaintiffs or claimants allege they were abused."

iv. "[The INA Primary] Policies may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

v. "To the extent emotional distress is alleged without any physical injury, there is no coverage."

vi. "To the extent [RCBO] is liable for damages not resulting from 'bodily injury' as defined by the INA Primary Policies, there would be no coverage."

vii. "To the extent the evidence demonstrates that [RCBO] 'expected or intended' injury to the subject claimant, coverage will be barred."

viii. The alleged conduct may also be "excluded as uninsurable willful conduct pursuant to California Insurance Code § 533."

ix. "To the extent [RCBO] breached any notice provision contained in the INA Primary Policies, there is no coverage."

x. The INA Primary Policies "may also contain additional exclusions that exclude coverage for damages arising out of sexual abuse."

90. ~~87.~~ In addition, INA reserved further rights to deny coverage as follows:

i. INA "reserves rights to the extent the Policies are exhausted and [it has] no further

*[Link-to-previous setting changed from off in original to on in modified.].*

defense or indemnity obligations under the Policies."

ii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iii. "An accident is not present when the insured performs a deliberate act and INA reserves its rights accordingly to deny coverage."

iv. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, INA reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

v. "The right to assert the [] limit of liability" based on damages "as the result of any one occurrence or accident."

vi. The right "to determine the number of claim(s) and/or occurrence(s) that exist in this matter, if any."

vii. INA "reserves its rights under the premises clause of the insuring agreement."

viii. The right "to deny coverage under the INA Primary Policies for any amounts that are uninsurable pursuant to applicable law."

91. ~~88.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit.

92. ~~89.~~ For example, INA has reserved its right to deny its indemnity obligation under the INA Primary Policies on the grounds that the INA Primary Covered Claims allege injuries that were "expected" or "intended" from the standpoint of the RCBO or that do not constitute covered "bodily injury." Such defenses to indemnity do not apply because the INA Primary Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the INA Primary Policies define that term, within the INA Primary Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the INA Primary Covered Claims.

i. Claim 81 includes negligence allegations that RCBO "negligently failed to supervise

*[Link-to-previous setting changed from off in original to on in modified.].*

the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 64) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 46), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 69).

ii. Claim 129 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

iii. Claim 303 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iv. Claim 348 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take

*[Link-to-previous setting changed from off in original to on in modified.].*

any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 75).

v. Claim 361 includes negligence allegations that RCBO "negligently failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse" (¶ 38) and "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER" (¶ 29), and that such negligence caused the plaintiff bodily injury, including "physical, psychological and emotional harm" (¶ 32).

93. ~~90.~~ The remaining INA Primary Covered Claims not listed in Paragraph ~~89~~92 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the INA Primary Policies define that term.

94. ~~91.~~ The asserted reservations of rights set forth in Paragraphs ~~86~~89 and ~~87~~90 do not provide INA valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the INA Primary Covered Claims under the INA Primary Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not ~~intentional conduct~~willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the INA Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the INA Policies have ~~either~~ been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with INA as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

95. ~~92.~~ RCBO sent INA a letter on May 30, 2024, demanding INA indemnify RCBO for the

*[Link-to-previous setting changed from off in original to on in modified.].*

INA Covered Claims up to the policy limits under the INA Primary Policies (the "INA Policy Limits Letter").

96. 93. INA failed to respond to the INA Policy Limits Letter confirming it will indemnify RCBO in response to the Policy Limits Letter, and thereby has failed to provide the benefits of the INA Primary Policies to RCBO.

97. 94. The Official Committee of Unsecured Creditors ("UCC") sent INA, Pacific Indemnity, Westchester and Pacific Employers (collectively, "Chubb") a letter UCC sent Chubb the UCC Chubb Demand Letter on July 3, 2024, demanding they pay a sum of $219.2 million, which is within the policy limits of the Chubb Policies, including the INA ExcessPrimary Policy, to resolve the INA Primary Covered Claims alleged against RCBO (the "UCC Chubb Demand Letter").

98. 95. On August 6, 2024, INA responded to the UCC Chubb Demand letterLetter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Chubb Demand Letter, and thereby has failed to provide the benefits of the INA Primary Policies to RCBO.

99. 96. The INA Primary Policies provide coverage for, and do not exclude, the INA Primary Covered Claims, and INA is obligated to defend and indemnify RCBO foragainst any settlement or judgment resolving, the INA Primary Covered Claims.

100. 97. The INA Primary Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

101. 98. An actual controversy of a justiciable nature presently exists between RCBO and INA concerning the proper construction of the INA Primary Policies, whether INA's cited grounds for reservation of rights to deny coverage under the INA Primary Policies are valid, whether there is any coverage for the INA Primary Covered Claims under the INA Primary Policies, INA's and RCBO's respective rights and obligations under the INA Primary Policies with respect to the INA Primary Covered Claims, and whether INA should participate in settlement regarding the INA Primary Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

102. 99. RCBO is entitled to a declaratory judgment stating INA has issued the INA Primary

*[Link-to-previous setting changed from off in original to on in modified.].*

Policies to RCBO, the INA Primary Policies cover the INA Primary Covered Claims, and that RCBO is entitled to indemnity regarding the INA Primary Covered Claims under the INA Primary Policies.

**FOURTH CAUSE OF ACTION**

**(Declaratory Relief Against CIGA)**

103. 100. RCBO realleges and incorporates herein Paragraphs 1 through 99102 of this Complaint as if said Paragraphs were set forth in full.

104. 101. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201; Cal. Code. Civ. P. § 1060.

105. 102. An actual and justiciable controversy exists between RCBO and CIGA with respect to whether CIGA is obligated to indemnify RCBO pursuant to its statutory obligations, in relation to the Commercial Union Policies regarding the subset of the Suits for which RCBO alleges CIGA is obligated to provide RCBO with indemnity, as set forth in Paragraph 98 (the "Commercial Union Covered Claims").

106. 103. "CIGA's authority and liability are limited to paying 'covered claims.'" *Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 128 Cal. App. 4th 307, 313, 26 Cal. Rptr. 3d 845, 848 (2005).*Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 128 Cal. App. 4th 307, 313 (2005).

107. 104. A covered claims means "(1) … the obligations of an insolvent insurer, including the obligation … (i) imposed by law and within the coverage of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; … (iv) which were incurred prior to the date coverage under the policy terminated …" *Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 153 Cal. App. 4th 524, 532-33, 62 Cal. Rptr. 3d 855, 860 (2007)*Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 153 Cal. App. 4th 524, 532-33 (2007) (citing (Cal. Ins. Code, § 1063.1, subd. (c)(1))).

108. 105. Commercial Union has become insolvent but had acknowledged potential coverage for the Suits tendered to it by RCBO.

109. 106. RCBO timely presented the claims to the liquidator prior to the date coverage under

*[Link-to-previous setting changed from off in original to on in modified.].*

the policy terminated. Therefore, the claims qualify as covered claimclaims under the statute.

110. 107. There is no, or there is a substantial likelihood that there will not be any, other insurance available for the Commercial Union Covered Claims because Commercial Union is insolvent, and the Commercial Union Covered Claims are likely to exhaust other applicable insurance policies.

111. 108. Specifically, there is a substantial likelihood the Commercial Union Covered Claims will exhaust the following insurance policies: United States Fire Insurance policy no. DCL 53 98 20, for the policy period of October 25, 1970 – October 26, 1971 ($5,000,000 limit); Westport policy no. U10255, for the policy period of November 16, 1971 – October 26, 1974 ($5,000,000 limit); American Home policy no. CE-60-94, for the policy period of November 16, 1971 – October 26, 1974 ($2,000,000 limit); CNA policy no. RDU 146 74 50, for the policy period of October 26, 1974 – December 1, 1975 ($1,000,000 limit); and Westport policy no. PLE 20430, for the policy period of October 26, 1974 – December 1, 1975 ($5,000,000 limit) (together, the "Other Insurers" and the "Other Insurance Policies"). There are 22 Commercial Union Covered Claims.

112. 109. Data from past clergy sexual abuse cases indicate the CommericalCommercial Union Covered Claims will far exceed the limits of the Other Insurance Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. The Official Committee of Unsecured Creditors ("On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC") sent each of the Other Insurers a letter on July 3, 2024, demanding they pay $56.7 million (United States Fire), $308.9 million (Westport), $11.9 million (American Home), and $162.6 million (CNA), respectively—all amounts within limits of each of the Other Insurance Policies—to resolve the Commercial Union Covered Claims alleged against RCBO. The UCC based the amounts demanded on its reasonable estimate of the value of the claims covered by the Other Insurance Policies, including the Commercial Union Covered Claims. JuryThe $16 million jury verdict in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the Commercial Union Covered Claims will exhaust the Other Insurance Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los

*[Link-to-previous setting changed from off in original to on in modified.].*

Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

113. ~~110.~~ CIGA has expressed the position that it does not have any obligation to indemnify RCBO in relation to the Commercial Union Policies and the Commercial Union Covered Claims.

114. ~~111.~~ CIGA's position is without both factual and legal merit. The Commercial Union Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Commercial Union Policies define that term, within the Commercial Union Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Commercial Union Covered Claims.

i. Claim 6 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 13) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 14).

ii. Claim 99 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [RCBO] failed to provide reasonable supervision of the DOE PERPETRATOR. [RCBO] further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff" (¶ 83), and that as a result of such negligence the plaintiff

*[Link-to-previous setting changed from off in original to on in modified.].*

"suffered and will continue to suffer the physical injury of sexual assault" (¶ 99).

iii. Claim 235 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR 1's and PERPETRATOR 2's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 49).

iv. Claim 348 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 75).

v. Claim 361 includes negligence allegations that RCBO "negligently failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse" (¶ 38) and "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER" (¶ 29), and that such negligence caused the plaintiff bodily injury, including "physical, psychological and emotional harm" (¶ 32).

115. ~~112.~~ As the successor-in-interest to Commercial Union, which accepted defense ~~or~~of and acknowledged its potential coverage obligations with respect to the Commercial Union Covered Claims, CIGA is obligated to defend and indemnify RCBO ~~for~~against the Commercial Union Covered Claims,

*[Link-to-previous setting changed from off in original to on in modified.].*

subject only to the statutory limitations on CIGA's payment obligations.

116. ~~113.~~ An actual controversy of a justiciable nature presently exists between RCBO and CIGA concerning CIGA's obligation to indemnify RCBO for the Commercial Union Covered Claims.

117. ~~114.~~ RCBO is entitled to a declaratory judgment stating the Commercial Union Covered Claims are "covered claims" triggering CIGA's statutory coverage and indemnification obligations and that RCBO is entitled to indemnity regarding the Commercial Union Covered Claims.

**FIFTH CAUSE OF ACTION**

**(Declaratory Relief Against INA - Excess)**

118. ~~115.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~114~~117 of this Complaint as if said Paragraphs were set forth in full.

119. ~~116.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

120. ~~117.~~ An actual and justiciable controversy exists between RCBO and INA with respect to whether INA is obligated to provide RCBO with defense and indemnity under the INA Excess Policy regarding the subset of the Suits for which RCBO alleges INA is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~10~~9 (the "INA Excess Covered Claims").

121. ~~118.~~ Pursuant to the terms of the INA Excess Policy, INA is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the INA Excess Covered Claims.

122. ~~119.~~ RCBO has fully ~~performed~~satisfied all conditions required under the INA Excess Policy, or is otherwise excused from doing so.

123. ~~120.~~ RCBO's broker and/or RCBO tendered the INA Excess Covered Claims to INA on RCBO's behalf as set forth in Exhibit A.

124. ~~121.~~ INA agreed to provide defense to RCBO for certain of the INA Excess Covered Claims. However, INA denied and/or failed to confirm it will indemnify RCBO for the INA Excess Covered Claims.

125. ~~122.~~ INA has not acknowledged that its insured, RCBO, faces covered claims in excess

*[Link-to-previous setting changed from off in original to on in modified.].*

of the limits of insurance available from the primary policies underlying the INA Excess Policy that, in turn, will exhaust those policies and trigger INA's obligation to provide the benefits of the INA Excess Policy to RCBO. Rather, INA reserved its right to deny coverage on a number of bases.

126. ~~123.~~ INA's reservation of rights includes INA's position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the [INA Excess Policy]."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. For certain claims, INA "has not located any evidence of the existence of any policies issued to [RCBO] during the period when the plaintiffs or claimants allege they were abused."

iv. "[The INA Excess Policy] may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

v. "To the extent emotional distress is alleged without any physical injury, there is no coverage."

vi. "To the extent [RCBO] is liable for damages not resulting from 'bodily injury' as defined by the INA Primary [and/or Excess] Policies, there would be no coverage."

vii. "To the extent the evidence demonstrates that [RCBO] 'expected or intended' injury to the subject claimant, coverage will be barred."

viii. The alleged conduct may also be "excluded as uninsurable willful conduct pursuant to California Insurance Code § 533."

ix. "To the extent [RCBO] breached any notice provision contained in the INA Primary [and/or Excess] Policies, there is no coverage."

x. The INA Excess Policy "may also contain additional exclusions that exclude coverage for damages arising out of sexual abuse."

xi. The "INA Excess Policy would only provide coverage if the limits of the respective

*[Link-to-previous setting changed from off in original to on in modified.].*

year's underlying policies are exhausted."

127. ~~124.~~ In addition, INA reserved further rights to deny coverage as follows:

i. INA "reserves rights to the extent the Policies are exhausted and [it has] no further defense or indemnity obligations under the Policies."

ii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iii. "An accident is not present when the insured performs a deliberate act and INA reserves its rights accordingly to deny coverage."

iv. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, INA reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

v. "The right to assert the [] limit of liability" based on damages "as the result of any one occurrence or accident."

vi. The right "to determine the number of claim(s) and/or occurrence(s) that exist in this matter, if any."

vii. INA "reserves its rights under the premises clause of the insuring agreement."

viii. The right "to deny coverage under the [INA Excess Policy] for any amounts that are uninsurable pursuant to applicable law."

128. ~~125.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, INA has reserved its right to deny its defense and indemnity obligation under the INA Excess Policy on the grounds that the INA Excess Covered Claims allege injuries where "[RCBO] 'expected or intended' injury to the subject claimant that were "expected or intended from the standpoint of [RCBO]" or where "[RCBO] is liable for damages not resulting from 'bodily injury'." Such reservations of rights as to defense and/or indemnity do not apply because the INA Excess Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the INA Excess Policy defines that term, within

*[Link-to-previous setting changed from off in original to on in modified.].*

the INA Excess Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the INA Excess Covered Claims.

i. Claim 81 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 64) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 46), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 69).

ii. Claim 129 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

iii. Claim 303 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

*[Link-to-previous setting changed from off in original to on in modified.].*

iv. Claim 348 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 75).

v. Claim 361 includes negligence allegations that RCBO "negligently failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse" (¶ 38) and "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER" (¶ 29), and that such negligence caused the plaintiff bodily injury, including "physical, psychological and emotional harm" (¶ 32).

129. ~~126.~~ The remaining INA Excess Covered Claims not listed in Paragraph ~~125~~128 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the INA Excess Policy defines that term.

130. ~~127.~~ As a further example, INA reserved its right to deny coverage under the INA Excess Policy to the extent the applicable underlying insurance has not been exhausted. This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs ~~128-129~~131-132.

131. ~~128.~~ There is a substantial likelihood that the INA Excess Covered Claims will exhaust the primary insurance underlying the INA Excess Policy. The underlying INA primary policies ~~nos.~~, whose policy numbers are, upon information and belief, CP 25231 and CP 267867, each have limits of

*[Link-to-previous setting changed from off in original to on in modified.].*

$100,000 per occurrence and $300,000 in the aggregate (the "10/25/66-10/25/70 INA Primary Policies"). There are at least 91 INA Excess Covered Claims that ~~fall within~~trigger the coverage periods for the 10/25/66-10/25/70 INA Primary Policies and the INA Excess Policy.

132. ~~129.~~ Data from past clergy sexual abuse cases indicate the INA Excess Covered Claims will far exceed the per occurrence and aggregate limits of the 10/25/66-10/25/70 INA Primary Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. ~~The Official Committee of Unsecured Creditors ("UCC") sent INA, Pacific Indemnity, Westchester and Pacific Employers (collectively, "Chubb") a letter~~On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Chubb the UCC Chubb Demand Letter on July 3, 2024, demanding they pay a sum of $219.2 million (the "UCC Chubb Demand Amount"), which is within the policy limits of the Chubb Policies, including the INA Excess Policy, to resolve the INA Excess Covered Claims alleged against RCBO~~ (the "UCC Chubb Demand Letter")~~. The UCC based the UCC Chubb Demand Amount on its reasonable estimate of the value of the claims covered by the Chubb policies, including the INA Excess Covered Claims. ~~Jury~~The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related ~~child sexual abuse~~ cases further confirm the INA Excess Covered Claims will exhaust the 10/25/66-10/25/70 INA Primary Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

133. ~~130.~~ The asserted reservations of rights set forth in Paragraphs ~~123~~126 and ~~124~~127 do not provide INA valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the INA Excess Covered Claims under the INA Excess Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not ~~intentional conduct~~willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the INA Excess Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice

*[Link-to-previous setting changed from off in original to on in modified.].*

that the limits of liability of the INA Excess Policies have ~~either~~ been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with INA Excess as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

134. ~~131.~~ RCBO sent INA ~~a letter~~the INA Policy Limits Letter on May 30, 2024, demanding INA indemnify RCBO for the INA Excess Covered Claims up to the policy limits under the INA Excess Policy ~~(the "Policy Limits Letter")~~.

135. ~~132.~~ INA failed to respond to the INA Policy Limits Letter confirming it will indemnify RCBO ~~in response to the Policy Limits Letter~~, and thereby has failed to provide the benefits of the INA Excess Policy to RCBO.

136. ~~133.~~ On August 6, 2024, INA responded to the UCC Chubb Demand ~~letter~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the UCC Chubb Demand Letter~~, and thereby has failed to provide the benefits of the INA Excess Policy to RCBO.

137. ~~134.~~ The INA Excess Policy provides coverage for, and does not exclude, the INA Excess Covered Claims, and INA is obligated to defend and indemnify RCBO ~~for~~against any settlement or judgment resolving, the INA Excess Covered Claims.

138. ~~135.~~ The INA Excess Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

139. ~~136.~~ An actual controversy of a justiciable nature presently exists between RCBO and INA concerning the proper construction of the INA Excess Policy, whether INA's cited grounds for reservation of rights to deny indemnity under the INA Excess Policy are valid, whether there is any coverage for the INA Excess Covered Claims under the INA Excess Policy, whether INA is obligated to drop down to provide first-dollar coverage for the INA Excess Covered Claims because the underlying primary insurance is exhausted as alleged by RCBO, INA's and RCBO's respective rights and obligations under the INA Excess Policy with respect to INA Excess Covered Claims, and whether INA should participate in settlement regarding the INA Excess Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

*[Link-to-previous setting changed from off in original to on in modified.].*

140. ~~137.~~ RCBO is entitled to a declaratory judgment stating INA has issued the INA Excess Policy to RCBO, the INA Excess Policy covers the INA Excess Covered Claims, and RCBO is entitled to both full defense and indemnity regarding the INA Excess Covered Claims under the INA Excess Policy, including, without limitation, a declaration that the primary policies underlying the INA Excess Policy are or are likely to be exhausted as alleged in Paragraphs ~~128-129~~131-132 and that INA must drop down to provide defense and indemnity to RCBO regarding the INA Excess Covered Claims.

**SIXTH CAUSE OF ACTION**

**(Declaratory Relief Against U.S. Fire - Excess)**

141. ~~138.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~137~~140 of this Complaint as if said Paragraphs were set forth in full.

142. ~~139.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

143. ~~140.~~ An actual and justiciable controversy exists between RCBO and U.S. Fire with respect to whether U.S. Fire is obligated to provide RCBO with defense and indemnity under the ~~"~~U.S. Fire Policy~~"~~ regarding the subset of the Suits for which RCBO alleges U.S. Fire is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~11~~10 (the "U.S. Fire Covered Claims").

144. ~~141.~~ Pursuant to the terms of the U.S. Fire Policy, U.S. Fire is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the U.S. Fire Covered Claims.

145. ~~142.~~ RCBO has fully ~~performed~~satisfied all conditions required under the U.S. Fire Policy, or is otherwise excused from doing so.

146. ~~143.~~ RCBO's broker and/or RCBO tendered the U.S. Fire Covered Claims to U.S. Fire on RCBO's behalf as set forth in Exhibit A.

147. ~~144.~~ U.S. Fire denied and/or failed to confirm it will defend or indemnify RCBO for the U.S. Fire Covered Claims.

148. ~~145.~~ U.S. Fire has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the U.S. Fire Policy that,

*[Link-to-previous setting changed from off in original to on in modified.].*

in turn, will exhaust those policies and trigger U.S. Fire's obligation to provide the benefits of the U.S. Fire Policy to RCBO. Rather, U.S. Fire denies the existence of the U.S. Fire Policy, and otherwise reserved its right to deny defense and coverage, stating "RCBO has not established that U.S. Fire has any obligation to pay defense costs on its behalf, and, even further, it has not provided any information to show the actual exhaustion of any alleged underlying limits."

149. ~~146.~~ It is RCBO's position U.S. Fire's bases for denying defense and indemnity are without both factual and legal merit. The U.S. Fire Policy covers the U.S. Fire Covered Claims because they allege RCBO was negligent (i.e., did not expect or intend the alleged injuries) and that RCBO's alleged negligence caused "bodily injury" within the U.S. Fire Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the U.S. Fire Covered Claims.

i. Claim 23 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 71) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 55), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 74).

ii. Claim 27 includes negligence allegations that RCBO "negligently failed to supervise [PRIEST] in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 74) and "failed to supervise WILCOX in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 56), and that such negligence caused the plaintiff bodily injury, including "personal physical injury as well as great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life." (¶ 79).

*[Link-to-previous setting changed from off in original to on in modified.].*

iii. Claim 81 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 64) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 46), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 69).

iv. Claim 235 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR 1's and PERPETRATOR 2's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 49).

v. Claim 175 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [Defendants] failed to provide reasonable supervision of the DOE PERPETRATOR. [Defendants] further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff" (¶ 73), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace,

*[Link-to-previous setting changed from off in original to on in modified.].*

humiliation, and loss of enjoyment of life." (¶ 78).

150. ~~147.~~ The remaining U.S. Fire Covered Claims not listed in Paragraph ~~146~~149 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the U.S. Fire Policy defines that term.

151. ~~148.~~ As a further example, U.S. Fire denies its defense and indemnity obligations because it claims "[RCBO] has not provided any information to show the actual exhaustion of any alleged underlying limits." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs ~~149-151~~152-153.

152. ~~149.~~ There is a substantial likelihood that the U.S. Fire Covered Claims will exhaust the primary insurance underlying the U.S. Fire Policy. The underlying Commercial Union primary policy no. EF 9334-001 has limits of $100,000 per occurrence and $300,000 in aggregate (the "10/26/70-10/26/71 Commercial Union Policy"). There are at least 68 U.S. Fire Covered Claims that ~~fall within~~trigger the coverage periods for the 10/26/70-10/26/71 Commercial Union Policy and the U.S. Fire Policy.

153. ~~150.~~ Data from past clergy sexual abuse cases indicate the U.S. Fire Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/70-10/26/71 Commercial Union Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. ~~The Official Committee of Unsecured Creditors ("~~On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC~~")~~ sent U.S. Fire a letter on July 3, 2024, demanding U.S. Fire pay a sum of $56.7 million (the "UCC U.S. Fire Demand Amount"), which is within the policy limits of the U.S. Fire Policy, to resolve the U.S. Fire Covered Claims alleged against RCBO ~~(the "UCC Demand Letter")~~. The UCC based the UCC U.S. Fire Demand Amount on its reasonable estimate of the value of the U.S. Fire Covered Claims. ~~Jury~~The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related

*[Link-to-previous setting changed from off in original to on in modified.].*

~~child sexual abuse~~ cases further confirm the U.S. Fire Covered Claims will exhaust the 10/26/70-10/26/71 Commercial Union Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

154. ~~151.~~ Moreover, U.S. Fire must drop down and provide first-dollar coverage of the U.S. Fire Covered Claims under the U.S. Fire Policy because the underlying primary insurer Commercial Union is insolvent.

155. ~~152.~~ The asserted bases for U.S. Fire's failure to defend or indemnify RCBO as set forth in Paragraph ~~145~~148 are not valid or meritorious. The claims have been tendered (and notice provided) and concern allegations of negligence (not ~~intentional conduct~~willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the U.S. Fire Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the U.S. Fire Policy has either been exhausted or that limits have been reduced. In addition, U.S. Fire's contention that it did not issue a policy to RCBO is contrary to documentary evidence including letters from the broker of record confirming the issuance of the specific policy of insurance identified herein. Finally, RCBO has fully cooperated with US Fire as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

156. ~~153.~~ RCBO sent U.S. Fire a letter on May 30, 2024, demanding U.S. Fire indemnify RCBO for the U.S. Fire Covered Claims up to the policy limits under the U.S. Fire Policy (the "U.S. Fire Policy Limits Letter").

157. ~~154.~~ On June 28, 2024, U.S. Fire responded to the U.S. Fire Policy Limits ~~Letters~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the Policy Limits Letters~~, and thereby has failed to provide the benefits of the U.S. Fire Policy to RCBO.

158. ~~155.~~ The UCC sent U.S. Fire a letter on July 3, 2024, demanding Travelers pay a sum within the policy limits of the U.S. Fire Policy to resolve the U.S. Fire Covered Claims (the "UCC U.S.

*[Link-to-previous setting changed from off in original to on in modified.].*

Fire Demand Letter"). On August 6, 2024, U.S. Fire responded to the UCC U.S. Fire Demand letterLetter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Demand Letter, and thereby has failed to provide the benefits of the U.S. Fire Policy to RCBO.

159. 156. The U.S. Fire Policy provides coverage for, and does not exclude, the U.S. Fire Covered Claims, and U.S. Fire is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the U.S. Fire Covered Claims.

160. 157. The U.S. Fire Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

161. 158. An actual controversy of a justiciable nature presently exists between RCBO and U.S. Fire concerning the proper construction of the U.S. Fire Policy, the existence of a policy of insurance issued by U.S. Fire to RCBO, whether U.S. Fire's cited grounds for reservation of rights to deny defense and/or indemnity under the U.S. Fire Policy are valid, whether there is any coverage for the U.S. Fire Covered Claims under the U.S. Fire Policy, whether U.S. Fire is obligated to drop down to provide first-dollar coverage for the U.S. Fire Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, U.S. Fire's and RCBO's respective rights and obligations under the U.S. Fire Policy with respect to the U.S. Fire Covered Claims, and whether U.S. Fire should participate in settlement regarding the U.S. Fire Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

162. 159. RCBO is entitled to a declaratory judgment stating U.S. Fire has issued the U.S. Fire Policies to RCBO, the U.S. Fire Policy covers the U.S. Fire Covered Claims, and RCBO is entitled to both defense and indemnity regarding the U.S. Fire Covered Claims under the U.S. Fire Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the U.S. Fire Policy as alleged in Paragraphs 149-151152-153, and the requirement that U.S. Fire drop down to provide defense and indemnity to RCBO regarding the U.S. Fire Covered Claims.

## SEVENTH CAUSE OF ACTION

**(Declaratory Relief Against Westport - Excess)**

*[Link-to-previous setting changed from off in original to on in modified.].*

163. ~~160.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~159~~162 of this Complaint as if said Paragraphs were set forth in full.

164. ~~161.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

165. ~~162.~~ An actual and justiciable controversy exists between RCBO and Westport with respect to whether Westport is obligated to provide RCBO with defense and indemnity under the Westport Excess Policy regarding the subset of the Suits for which RCBO alleges Westport is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~12~~11 (the "Westport Excess Covered Claims").

166. ~~163.~~ Pursuant to the terms of the Westport Excess Policy, Westport is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Westport Excess Covered Claims.

167. ~~164.~~ RCBO has fully ~~performed~~satisfied all conditions required under the Westport Excess Policy, or is otherwise excused from doing so.

168. ~~165.~~ RCBO's broker and/or RCBO tendered the Westport Excess Covered Claims to Westport on RCBO's behalf as set forth in Exhibit A.

169. ~~166.~~ Westport denied and/or failed to confirm it will defend or indemnify RCBO for the Westport Excess Covered Claims.

170. ~~167.~~ Westport has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Westport Excess Policy that, in turn, will exhaust those policies and trigger Westport's obligation to provide the benefits of the Westport Excess Policy to RCBO. Rather, Westport reserved its right to deny coverage on a number of bases.

171. ~~168.~~ Westport's reservation of rights includes Westport's position that it may deny coverage based on:

i. Westport's contention that "there is no indication that the limits underlying the

*[Link-to-previous setting changed from off in original to on in modified.].*

[Westport Excess Policy] have been exhausted in accordance with the terms of the policies, Westport would have no immediate potential coverage obligations,"

ii. "Whether the claim referenced above falls within the policy period, limits, and scope of insurance afforded under the referenced [Westport Excess Policy] and/or policy(ies) to which the [Westport Excess Policy] may follow form, in whole or in part,"

iii. "Whether the applicable limits of all applicable underlying policies of insurance have in fact been exhausted in accordance with the [Westport Excess Policy's] terms,"

iv. "Whether any applicable policy exclusions limit or preclude coverage for the claim at issue, in whole or in part,"

v. "Whether the insured has complied with its duties under the [Westport Excess Policy], including but not limited to 'notice' and 'cooperation' obligations, and, if not, whether any such failure limits or precludes coverage for the claim at issue, in whole or in part,"

vi. "Whether any applicable policy conditions limit or preclude coverage for the claims at issue, in whole or in part,"

vii. "Whether Westport's obligations, if any, are limited or precluded due to prior impairment or exhaustion of limits, settlements, releases or other agreements, or are prohibited by law, statute and/or public policy,"

viii. Westport's purported "right to assert any additional defenses that might apply by operation of law or otherwise, including but not limited to defenses that may be asserted by the insurers who issued insurance policies with limits underlying the limits of the [Westport Excess Policy] denies coverage for any enhanced damages based on the defendants' willful and malicious conduct."

172. ~~169.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Westport has reserved its right to deny its defense and indemnity obligation under the Westport Excess Policy on the grounds that "any applicable policy exclusions limit

*[Link-to-previous setting changed from off in original to on in modified.].*

or preclude coverage for the [the Westport Excess Covered Claims] at issue, in whole or in part." Such reservation of rights as to defense and/or indemnity does not apply because the Westport Excess Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Westport Excess Policy defines that term, within the Westport Excess Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Westport Excess Covered Claims.

i. Claim 15 includes negligence allegations that RCBO "negligently supervised and/or retained ABUSER in positions of trust and authority as a priest" (¶ 49) and "failed to use reasonable care in protecting Plaintiff [] from Abuser's misconduct that created a risk of childhood sexual abuse, while Plaintiffs [] were involved in activities sponsored, supervised, organized or directed by [RCBO]" (¶ 53) and that such negligence caused the plaintiff bodily injury, including "suffer[ing] physical, mental and emotional health problems" (¶ 67).

ii. Claim 2 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 13) and that RCBO was "further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence plaintiff "has suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 14).

iii. Claim 25 includes negligence allegations that RCBO "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER, including but not limited to preventing or avoiding placement of ABUSER in a function or environment in which contact with children is an inherent aspect of the function or environment" (¶ 35) and that RCBO "failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff

*[Link-to-previous setting changed from off in original to on in modified.].*

[], a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse, while Plaintiff [], a minor, was involved in activities sponsored, supervised, organized or directed by [RCBO] or their agents and employees" (¶ 44), and that as a result of such negligence plaintiff "suffered economic, physical, psychological and emotional harm" (¶ 38).

iv. Claim 3 includes negligence allegations that RCBO "[was] at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 13) and that RCBO "[was] further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 44), and that as a result of such negligence plaintiff "suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 14).

v. Claim 4 includes negligence allegations that RCBO "[was] at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 13) and that RCBO "[was] further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence plaintiff "suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 14).

173. ~~170.~~ The remaining Westport Excess Covered Claims not listed in Paragraph ~~169~~172 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Westport Excess Policy defines that term.

174. ~~171.~~ As a further example, Westport reserved its right to deny coverage under the Westport Excess Policy on the ground that "there is no indication that the limits underlying the

*[Link-to-previous setting changed from off in original to on in modified.].*

[Westport Excess Policy] have been exhausted in accordance with the terms of the policies, Westport would have no immediate potential coverage obligations." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraph ~~172-173~~175-176.

175. ~~172.~~ There is a substantial likelihood that the Westport Excess Covered Claims will exhaust the primary insurance underlying the Westport Excess Policy. The underlying Commercial Union primary policies nos. EF 9334-001, EF 9334-003, and EF 9334-008 have limits of $100,000 per occurrence and $300,000 in aggregate (the "10/26/71-10/26/74 Commercial Union Policies"). There are at least 165 Westport Excess Covered Claims that ~~fall within~~trigger the coverage periods for the 10/26/71-10/26/74 Commercial Union Policies and the Westport Excess Policy.

176. ~~173.~~ Data from past clergy sexual abuse cases indicate the Westport Excess Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/71-10/26/74 Commercial Union Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. ~~The Official Committee of Unsecured Creditors ("~~On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC~~")~~ sent Westport a demand letter on July 3, 2024~~,~~ (the "UCC Westport Demand Letter"), demanding Westport pay a sum of $308.9 million (the "UCC Westport Demand Amount"), which is within the policy limits of the Westport Excess Policy and Westport umbrella policy no. PLE20430 (the "Westport Umbrella Policy), to resolve the Westport Excess Covered Claims and the claims falling within the Westport Umbrella Policy coverage period (the "Westport Umbrella Covered Claims") alleged against RCBO ~~(the "UCC Demand Letter")~~. The UCC based the UCC Westport Demand Amount on its reasonable estimate of the value of the Westport Excess Covered Claims and Westport Umbrella Covered Claims. ~~Jury~~The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related ~~child sexual abuse~~ cases further confirm the Westport Excess Covered Claims and Westport Umbrella Covered Claims will exhaust the 10/26/71-10/26/74 Commercial Union Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case

*[Link-to-previous setting changed from off in original to on in modified.].*

No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

177. 174. Moreover, Westport must drop down and provide first-dollar coverage of the Westport Excess Covered Claims under the Westport Excess Policy because the underlying primary insurer Commercial Union is insolvent.

178. 175. The asserted reservations of rights set forth in Paragraph 168171 do not provide Westport valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Westport Excess Covered Claims under the Westport Excess Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conductwillful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Westport Excess Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Westport Excess Policies have either been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Westport Excess as required under the insurance, including providing notice of the claims, providing the status of the matters and providing requested materials.

179. 176. RCBO sent Westport a letter on May 30, 2024, demanding Westport indemnify RCBO for the Westport Excess Covered Claims up to the policy limits under the Westport Excess Policy (the "Westport Excess Policy Limits Letter").

180. 177. Westport failed to respond to the Westport Excess Policy Limits LettersLetter confirming it will indemnify RCBO in response to the Policy Limits Letters, and thereby has failed to provide the benefits of the Westport Excess Policy to RCBO.

181. 178. On August 6, 2024, Westport responded to the UCC Westport Demand letterLetter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Demand Letter, and thereby has failed to provide the benefits of the Westport Excess Policy to RCBO.

182. 179. The Westport Excess Policy provides coverage for, and does not exclude, the Westport Excess Covered Claims, and Westport is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Westport

*[Link-to-previous setting changed from off in original to on in modified.].*

Excess Covered Claims.

183. 180. The Westport Excess Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

184. 181. An actual controversy of a justiciable nature presently exists between RCBO and Westport concerning the proper construction of the Westport Excess Policy, whether Westport's cited grounds for reservation of rights to deny defense and/or indemnity under the Westport Excess Policy are valid, whether there is any coverage for the Westport Excess Covered Claims under the Westport Excess Policy, whether Westport is obligated to drop down to provide first-dollar coverage for the Westport Excess Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, Westport's and RCBO's respective rights and obligations under the Westport Excess Policy with respect to the Westport Excess Covered Claims, and whether Westport should participate in settlement regarding the Westport Excess Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

185. 182. RCBO is entitled to a declaratory judgment stating Westport has issued the Westport Policies to RCBO, the Westport Excess Policy covers the Westport Excess Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Westport Excess Covered Claims under the Westport Excess Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Westport Excess Policy as alleged in Paragraphs 172-173175-176, and the requirement that Westport drop down to provide defense and indemnity to RCBO regarding the Westport Excess Covered Claims.

**EIGHTH CAUSE OF ACTION**

**(Declaratory Relief Against CNA - Excess)**

186. 183. RCBO realleges and incorporates herein Paragraphs 1 through 181185 of this Complaint as if said Paragraphs were set forth in full.

187. 184. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201; Cal. Code. Civ. P. § 1060.

188. 185. An actual and justiciable controversy exists between RCBO and CNA with respect

*[Link-to-previous setting changed from off in original to on in modified.].*

to whether CNA is obligated to provide RCBO with defense and indemnity under the CNA Policies regarding the subset of the Suits for which RCBO alleges CNA is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~13~~12 (the "CNA Covered Claims").

189. ~~186.~~ Pursuant to the terms of the CNA Policies, CNA is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the CNA Covered Claims.

190. ~~187.~~ RCBO has fully ~~performed~~satisfied all conditions required under the CNA Policies, or is otherwise excused from doing so.

191. ~~188.~~ RCBO's broker and/or RCBO tendered the CNA Covered Claims to CNA on RCBO's behalf as set forth in Exhibit A.

192. ~~189.~~ On May 24, 2024, CNA agreed to provide a defense to RCBO for those CNA Covered Claims "where the applicable underlying primary coverage is either insolvent or fully and properly exhausted through payment of judgments or settlements." However, CNA denied and/or failed to confirm it will indemnify RCBO for the CNA Covered Claims.

193. ~~190.~~ CNA has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the CNA Policies that, in turn, will exhaust those policies and trigger CNA's obligation to provide the benefits of the CNA Policies to RCBO. Rather, CNA reserved its right to deny coverage on a number of bases.

194. ~~191.~~ CNA's reservation of rights includes CNA's position that it may deny coverage on the following bases:

i. "[P]laintiffs have not sued, and do not seek damages from, the Diocese,"

ii. "[P]laintiffs are seeking damages unrelated to 'bodily injury,'

iii. "[A]n entity other than the Insured is liable for the alleged injury,"

iv. "[T]he terms of the Aetna [Casualty Ins. Co. CGL policy 05SM90296]" preclude coverage,

v. "[T]he terms of the Commercial Union policy" preclude coverage,

vi. "[A]ll applicable underlying insurance has not been exhausted,"

*[Link-to-previous setting changed from off in original to on in modified.].*

vii. CNA may "seek contribution from all other insurance which may be applicable" and may "assert its subrogation rights under the Policies,"

viii. CNA denies coverage for any enhanced damages based on the defendants' willful and malicious conduct,"

ix. "[T]he Diocese failed to provide timely notice of claims, occurrences, or lawsuits,"

x. CNA may "withdraw from the Diocese's defense at any time if it determines there is no potential for coverage under the Policies,"

xi. CNA may "seek reimbursement from the Diocese's other insurers for amounts paid in excess of CNA's appropriate share of defense costs,"

xii. "[T]he Diocese's liability as alleged was channeled to the BSA Trust,"

xiii. "To the extent the Diocese has released CNA from responsibility for a particular Sexual Abuse Claim, CNA would have no duty to defend or indemnify such claim."

195. ~~192.~~ In addition, CNA reserved further rights to deny coverage as follows:

i. "The right to deny coverage on the grounds that any tendering defendant does not qualify as an insured or additional insured under the policies;"

ii. "The right to deny coverage on the ground that the subject claim does not seek recovery for covered damages caused by an occurrence, incident, or accident;"

iii. "The right to deny coverage to the extent the claim or loss alleged is not fortuitous;"

iv. "The right to deny coverage on the basis that the injuries at issue were expected or intended from the standpoint of the insured;"

v. "The right to deny coverage if the suit does not allege "bodily injury" or "personal injury" within the meaning of the policies;"

vi. "The right to deny coverage for any alleged "bodily injury" or "personal injury" that did not take place during the relevant policy period;"

vii. "The right to deny coverage to the extent that the suit does not seek recovery for "damages" within the meaning of the policies;"

viii. "The right to deny coverage for injury arising out of the willful violation of a penal

*[Link-to-previous setting changed from off in original to on in modified.].*

statute or ordinance committed by or with the consent of any insured;”

ix. “The right to deny coverage for persons or entities that are not insureds under any policy;”

x. “The right to deny coverage for ‘willful acts of the insured;’”~~;~~

xi. “The right to deny coverage to the extent that any of the alleged injuries arose out of conduct that is uninsurable as a matter of public policy;”

xii. “The right to seek rescission of the policies, if there was misrepresentation or a failure to disclose known or likely sexual misconduct of the perpetrator during the application process for said policies;”

xiii. “The right to deny coverage for exemplary damages, punitive damages, and fines;”

xiv. “The right to deny or limit coverage consistent with any provision related to any limits of liability located in the policies;”

xv. “CNA has no obligation to any person or entity seeking coverage under the policies if such person or entity fails to comply with the assistance and cooperation clause in said policies;”

xvi. “CNA has no obligation to any person or entity seeking coverage under the policies if such person or entity makes a voluntary payment under said policies;”

xvii. “The right to disclaim coverage to the extent that any insured makes any settlements or payments, or commits to making such payments, without prior authorization from CNA;”

xviii. “The right to deny or limit coverage based on “other insurance” provisions in the policies;”

xix. “The right to deny coverage on the basis of late notice of occurrence, late notice of suit, or laches;”

xx. “The right to supplement the grounds upon which CNA reserves rights and/or limits or disclaims coverage, including to add any grounds that become apparent should CNA become aware of additional information regarding the Alleged CNA Policies.”

*[Link-to-previous setting changed from off in original to on in modified.].*

196. ~~193.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, CNA has reserved its right to deny its defense and indemnity obligation under the CNA Policies on the grounds that the CNA Covered Claims allege injuries that were "expected or intended from the standpoint of [RCBO]" or that "do[] not allege 'bodily injury' or 'personal injury' within the meaning of the [CNA Policies]." Such reservations of rights as to defense and/or indemnity do not apply because the CNA Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the CNA Policies define that term, within the CNA Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the CNA Covered Claims.

i. Claim 6 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 13) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 14).

ii. Claim 7 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 13) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 14).

iii. Claim 33 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 9) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest

*[Link-to-previous setting changed from off in original to on in modified.]*.

while Plaintiff was on its property and engaged in its activities" (¶ 9), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 10).

iv. Claim 99 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [RCBO] failed to provide reasonable supervision of the DOE PERPETRATOR. [RCBO] further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff" (¶ 83), and that as a result of such negligence the plaintiff "suffered and will continue to suffer the physical injury of sexual assault" (¶ 99).

v. Claim 251 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [RCBO] failed to provide reasonable supervision of the DOE PERPETRATOR. [RCBO] further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff" (¶ 83), and that as a result of such negligence the plaintiff "suffered the physical injury of sexual assault" (¶ 75).

197. ~~194.~~ The remaining CNA Covered Claims not listed in Paragraph ~~193~~196 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's

*[Link-to-previous setting changed from off in original to on in modified.].*

negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the CNA Policies define that term.

198. ~~195.~~ As a further example, CNA reserved its right to deny coverage under the CNA Policies on the ground that "all applicable underlying insurance has not been exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs ~~196-198~~199-200.

199. ~~196.~~ There is a substantial likelihood that the CNA Covered Claims will exhaust the primary insurance underlying the CNA Policies. The underlying Commercial Union primary policy no. CF 9334-008 has limits of $300,000 per occurrence and $300,000 aggregate, and the underlying Travelers policies nos. 05 AL 802025 CMA, 05 SM 90296 FCA, and 05 SM 99094 FCA have limits of $300,000 per occurrence and $300,000 aggregate, $500,000 CLS, and $1,000,000 CSL, respectively (the "10/26/74-12/01/80 Commercial Union and Travelers Policies"). There are at least 180 CNA Covered Claims that ~~fall within~~trigger the coverage periods for the 10/26/74-12/01/80 Commercial Union and Travelers Policies and the CNA Policies.

200. ~~197.~~ Data from past clergy sexual abuse cases indicate the CNA Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/74-12/01/80 Commercial Union and Travelers Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. ~~The Official Committee of Unsecured Creditors ("~~On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC~~")~~ sent CNA a demand letter (the "UCC CNA Demand Letter") on July 3, 2024, demanding CNA pay a sum of $162.6 million (the "UCC CNA Demand Amount"), which is within the policy limits of the CNA Policies, to resolve the CNA Covered Claims alleged against RCBO~~ (the "UCC Demand Letter")~~. The UCC based the UCC CNA Demand Amount on its reasonable estimate of the value of the CNA Covered Claims. ~~Jury~~The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related ~~child sexual abuse~~ cases further confirm the CNA Covered Claims and will exhaust the 10/26/74-12/01/80 Commercial Union and Travelers Policies. *Jane Doe 3,*

*[Link-to-previous setting changed from off in original to on in modified.].*

*et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

201. ~~198.~~ Moreover, CNA must drop down and provide first-dollar coverage of the CNA Covered Claims under the CNA Policies because the underlying primary insurer Commercial Union is insolvent.

202. ~~199.~~ The asserted reservations of rights set forth in Paragraphs ~~191~~194 and ~~192~~195 do not provide CNA valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the CNA Covered Claims under the CNA Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not ~~intentional conduct~~willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the CNA Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the CNA Policies have ~~either~~ been exhausted or that limits have been reduced and RCBO made no misrepresentations to CNA when obtaining the ~~CAN~~CNA Policies. Finally, RCBO has fully cooperated with CNA as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

203. ~~200.~~ RCBO sent CNA a letter on May 30, 2024, demanding CNA indemnify RCBO for the CNA Covered Claims up to the policy limits under the CNA Policies (the "CNA Policy Limits Letter").

204. ~~201.~~ On June 28, 2024 CNA responded to the CNA Policy Limits ~~Letters~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the Policy Limits Letters~~, and thereby has failed to provide the benefits of the CNA Policies to RCBO.

205. ~~202.~~ On August 6, 2024, CNA responded to the UCC CNA Demand ~~letter~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the UCC Demand Letter~~, and thereby has failed to provide the benefits of the CNA Policies to RCBO.

206. ~~203.~~ The CNA Policies provide coverage for, and do not exclude, the CNA Covered Claims, and CNA is obligated to pay in full the expenditures RCBO made to defend itself against, and to

*[Link-to-previous setting changed from off in original to on in modified.].*

indemnify RCBO for any settlement or judgment resolving, the CNA Covered Claims.

207. ~~204.~~ The CNA Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

208. ~~205.~~ An actual controversy of a justiciable nature presently exists between RCBO and CNA concerning the proper construction of the CNA Policies, whether CNA's cited grounds for reservation of rights to deny defense and/or indemnity under the CNA Policies are valid, whether there is any coverage for the CNA Covered Claims under the CNA Policy, whether CNA is obligated to drop down to provide first-dollar coverage for the CNA Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, CNA's and RCBO's respective rights and obligations under the CNA Policies with respect to the CNA Covered Claims, and whether CNA should participate in settlement regarding the CNA Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

209. ~~206.~~ RCBO is entitled to a declaratory judgment stating CNA has issued the CNA Policies to RCBO, the CNA Policies cover the CNA Covered Claims, and RCBO is entitled to both defense and indemnity regarding the CNA Covered Claims under the CNA Policies, including, without limitation, a declaration of exhaustion as to the primary policies underlying the CNA Policies as alleged in Paragraphs ~~196-198~~199-200, and the requirement that CNA drop down to provide defense and indemnity to RCBO regarding the CNA Covered Claims.

**NINTH CAUSE OF ACTION**

**(Declaratory Relief Against Westchester - Excess)**

210. ~~207.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~206~~209 of this Complaint as if said Paragraphs were set forth in full.

211. ~~208.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

212. ~~209.~~ An actual and justiciable controversy exists between RCBO and Westchester with respect to whether Westchester is obligated to provide RCBO with defense and indemnity under the Westchester Policy regarding the subset of the Suits for which RCBO alleges Westchester is obligated to

*[Link-to-previous setting changed from off in original to on in modified.].*

provide RCBO with indemnity, as set forth in Paragraph ~~14~~13 (the "Westchester Covered Claims").

213. ~~210.~~ Pursuant to the terms of the Westchester Policy, Westchester is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Westchester Covered Claims.

214. ~~211.~~ RCBO has fully ~~performed~~satisfied all conditions required under the Westchester Policy, or is otherwise excused from doing so.

215. ~~212.~~ RCBO's broker and/or RCBO tendered the Westchester Covered Claims to Westchester on RCBO's behalf as set forth in Exhibit A.

216. ~~213.~~ Westchester refused to provide a defense to RCBO for the Westchester Covered Claims. Westchester also denied and/or failed to confirm it will indemnify RCBO for the Westchester Covered Claims.

217. ~~214.~~ Westchester has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Westchester Policy that, in turn, will exhaust those policies and trigger Westchester's obligation to provide the benefits of the Westchester Policy to RCBO. Rather, Westchester reserved its right to deny coverage on a number of bases.

218. ~~215.~~ Westchester's reservation of rights includes Westchester's position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the [Westchester] Policy."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. "[The Westchester Policy] may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

iv. "To the extent that any of the claims… do not arise out of 'personal injury' which occurred during the policy period," there would be no coverage for any such claims."

*[Link-to-previous setting changed from off in original to on in modified.].*

v. Westchester has "no indication that the applicable limits of the [underlying] Aetna [primary] Policy have been exhausted."

vi. "To the extent any of the claimants did not sustain a loss arising out of an accident, and as such it would not have been caused by an "occurrence," there would be no coverage."

vii. The alleged conduct may also be "excluded as uninsurable willful conduct pursuant to California Insurance Code § 533."

viii. The Westchester Policy "requires that [any] 'personal injury' must be neither expected nor intended."

219. ~~216.~~ In addition, Westchester reserved further rights to deny coverage as follows:

i. Westchester "reserves rights to the extent the [Westchester] Policy is exhausted and [it has] no further defense or indemnity obligations under the [Westchester] Policy."

ii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iii. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, [Westchester] reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

iv. "All rights with regarding to exhaustion."

v. To the extent "Pastoral Professional Liability cover is implicated" in "the underlying Aetna Policy," Westchester "reserves its rights to decline coverage… on this basis."

220. ~~217.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Westchester has reserved its right to deny its defense and indemnity obligation under the Westchester Policy on the grounds that the Westchester Covered Claims allege injuries where RCBO expected or intended injury to the subject claimant that were "expected or intended from the standpoint of [RCBO]" or where RCBO is liable for damages not resulting from "bodily injury." Such reservations of rights as to defense and/or indemnity do not apply because the

*[Link-to-previous setting changed from off in original to on in modified.].*

Westchester Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Westchester Policy defines that term, within the Westchester Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Westchester Covered Claims.

i. Claim 10 includes negligence allegations that RCBO "[was] negligent in the hiring, retention, control, and supervision, of PERPETRATOR" (¶ 14) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 14), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 15).

ii. Claim 33 includes negligence allegations that RCBO "[was] negligent in the hiring, retention, control, and supervision, of PERPETRATOR" (¶ 9) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 9), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 10).

iii. Claim 35 includes negligence allegations that RCBO "[w]as] negligent in the hiring, retention, control, and supervision of PERPETRATOR" (¶ 9) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities and while PERPETRATOR was engaged in his duties and responsibilities of outreach as a Priest" (¶ 9), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 10).

iv. Claim 61 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's

*[Link-to-previous setting changed from off in original to on in modified.].*

protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 75).

v. Claim 64 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 75).

221. ~~218.~~ The remaining Westchester Covered Claims not listed in Paragraph ~~217~~220 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Westchester Policy defines that term.

222. ~~219.~~ As a further example, Westchester reserved its right to deny coverage under the Westchester Policy to the extent the applicable underlying insurance has not been exhausted. This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs ~~220-221~~223-224.

223. ~~220.~~ There is a substantial likelihood that the Westchester Covered Claims will exhaust the primary insurance underlying the Westchester Policy. The underlying Aetna/Travelers primary policy no. 05 SM 107459 FCA has a limit of $1,000,000 in aggregate (the "12/01/80-12/01/81 Travelers

*[Link-to-previous setting changed from off in original to on in modified.].*

Primary Policy"). There are at least 37 Westchester Covered Claims that fall withintrigger the coverage periods for the 12/01/80-12/01/81 Travelers Primary Policy and the Westchester Policy.

224. 221. Data from past clergy sexual abuse cases indicate the Westchester Covered Claims will far exceed the per occurrence and aggregate limits of the 12/01/80-12/01/81 Travelers Primary Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. The Official Committee of Unsecured Creditors ("UCC") sent Westchester, INA, Pacific Indemnity and Pacific Employers (collectively, "Chubb") a letterOn April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Chubb the UCC Chubb Demand Letter on July 3, 2024, demanding they pay the UCC Chubb Demand Amount, a sum of $219.2 million (the "UCC Chubb Demand Amount"), which is within the policy limits of the Chubb Policies, including the Westchester Policy, to resolve the Westchester Covered Claims alleged against RCBO (the "UCC Chubb Demand Letter"). The UCC based the UCC Chubb Demand Amount on its reasonable estimate of the value of the claims covered by the Chubb policies, including the Westchester Covered Claims. JuryThe $16 million jury verdict in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the Westchester Covered Claims will exhaust the 12/01/80-12/01/81 Travelers Primary Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

225. 222. The asserted reservations of rights set forth in Paragraphs 215218 and 216219 do not provide Westchester valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Westchester Covered Claims under the Westchester Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conductwillful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Westchester Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Westchester Policies have either been exhausted or that limits

*[Link-to-previous setting changed from off in original to on in modified.].*

have been reduced. Finally, RCBO has fully cooperated with Westchester as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

226. 223. RCBO sent Westchester a letter on May 30, 2024, demanding Westchester indemnify RCBO for the Westchester Covered Claims up to the policy limits under the Westchester Policy (the "Westchester Policy Limits Letter").

227. 224. Westchester failed to respond to the Westchester Policy Limits Letter confirming it will indemnify RCBO in response to the Policy Limits Letter, and thereby has failed to provide the benefits of the Westchester Policy to RCBO.

228. 225. On August 6, 2024, Westchester responded to the UCC Chubb Demand letterLetter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Chubb Demand Letter, and thereby has failed to provide the benefits of the Westchester Policy to RCBO.

229. 226. The Westchester Policy provides coverage for, and does not exclude, the Westchester Covered Claims, and Westchester is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Westchester Covered Claims.

230. 227. The Westchester Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

231. 228. An actual controversy of a justiciable nature presently exists between RCBO and Westchester concerning the proper construction of the Westchester Policy, whether Westchester's cited grounds for reservation of rights to deny defense and/or indemnity under the Westchester Policy are valid, whether there is any coverage for the Westchester Covered Claims under the Westchester Policy, whether Westchester is obligated to drop down to provide first-dollar coverage for the Westchester Covered Claims because the underlying primary insurance is exhausted, Westchester's and RCBO's respective rights and obligations under the Westchester Policy with respect to Westchester Covered Claims, and whether Westchester should participate in settlement regarding the Westchester Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a

*[Link-to-previous setting changed from off in original to on in modified.].*

declaratory judgment.

232. ~~229.~~ RCBO is entitled to a declaratory judgment stating Westchester has issued the Westchester Policy to RCBO, the Westchester Policy covers the Westchester Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Westchester Covered Claims under the Westchester Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Westchester Policy as alleged in Paragraphs ~~220-221~~223-224, and the requirement that Westchester drop down to provide defense and indemnity to RCBO regarding the Westchester Covered Claims.

**TENTH CAUSE OF ACTION**

**(Declaratory Relief Against Lloyd's - Excess)**

233. ~~230.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~229~~232 of this Complaint as if said Paragraphs were set forth in full.

234. ~~231.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

235. ~~232.~~ An actual and justiciable controversy exists between RCBO and Lloyd's Excess with respect to whether Lloyd's Excess is obligated to provide RCBO with defense and indemnity under the Lloyd's Excess Policies regarding the subset of the Suits for which RCBO alleges Lloyd's Excess is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~15~~14 (the "Lloyd's Excess Covered Claims").

236. ~~233.~~ Pursuant to the terms of the Lloyd's Excess Policies, Lloyd's Excess is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Lloyd's Excess Covered Claims.

237. ~~234.~~ RCBO has fully ~~performed~~satisfied all conditions required under the Lloyd's Excess Policies, or is otherwise excused from doing so.

238. ~~235.~~ RCBO's broker and/or RCBO tendered the Lloyd's Excess Covered Claims to Lloyd's Excess on RCBO's behalf as set forth in Exhibit A.

*[Link-to-previous setting changed from off in original to on in modified.].*

239. 236. Lloyd's Excess denied and/or failed to confirm it will defend and indemnify RCBO for the Lloyd's Excess Covered Claims.

240. 237. Lloyd's Excess has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Lloyd's Excess Policies that, in turn, will exhaust those policies and trigger Lloyd's Excess's obligation to provide the benefits of the Lloyd's Excess Policies to RCBO. Rather, Lloyd's Excess reserved its right to deny coverage on a number of bases.

241. 238. Lloyd's Excess's reservation of rights includes Lloyd's Excess's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Lloyd's is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Lloyd's' coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Lloyd's] Policies."

iv. "To the extent the [Lloyd's] Second Excess Umbrella Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Lloyd's "reserve[s] all rights based upon the number and timing of occurrences. It is [Lloyd's'] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator

*[Link-to-previous setting changed from off in original to on in modified.].*

and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Lloyd's] Policies."

viii. Lloyd's "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

242. ~~239.~~ In addition, Lloyd's Excess reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Lloyd's "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Lloyd's thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Lloyd's] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Lloyd's] Policies."

*[Link-to-previous setting changed from off in original to on in modified.].*

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Lloyd's reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Lloyd's reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Lloyd's'] agent for notice of claims provided in the Policy Declarations."

x. Lloyd's reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Lloyd's] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Lloyd's and RCBO "in ~~our~~or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Lloyd's] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Lloyd's] Policies."

xiv. Lloyd's reserves its rights "pursuant to the [Lloyd's] Policies' Other Insurance Condition."

xv. Lloyd's reserves its rights "with respect to any award of damages, punitive or treble,

*[Link-to-previous setting changed from off in original to on in modified.].*

against the Diocese which is based on intentional conduct."

243. ~~240.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Lloyd's Excess has reserved its right to deny its defense and indemnity obligation under the Lloyd's Excess Policies on the grounds that the Lloyd's Excess Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Lloyd's Excess Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Lloyd's Excess Policies define that term, within the Lloyd's Excess Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Lloyd's Excess Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and

*[Link-to-previous setting changed from off in original to on in modified.].*

economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

244. ~~241.~~ The remaining Lloyd's Excess Covered Claims not listed in Paragraph ~~240~~243 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Lloyd's Excess Policies define that term.

245. ~~242.~~ As a further example, Lloyd's Excess reserved its right to deny coverage under the

*[Link-to-previous setting changed from off in original to on in modified.].*

Lloyd's Excess Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs ~~243-244~~246-247.

246. ~~243.~~ There is a substantial likelihood that the Lloyd's Excess Covered Claims will exhaust the primary insurance underlying the Lloyd's Excess Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). There are at least 38 Lloyd's Excess Covered Claims that ~~fall within~~trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies and the Lloyd's Excess Policies.

247. ~~244.~~ Data from past clergy sexual abuse cases indicate the Lloyd's Excess Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. ~~The Official Committee of Unsecured Creditors ("~~On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC~~")~~ sent Lloyd's Excess a letter (the "UCC Lloyd's Demand Letter") on July 3, 2024, demanding Lloyd's Excess pay a sum of $42.8 million (the "UCC Lloyd's Demand Amount"), which is within the policy limits of the Lloyd's Excess Policies and the Lloyd's Umbrella Policies, to resolve the Lloyd's Excess Covered Claims and the claims falling within the Lloyd's Excess Policies coverage period alleged against RCBO ~~(the "UCC Lloyd's Demand Letter")~~. The UCC based the UCC Lloyd's Demand Amount ~~as~~on a reasonable estimate of the value of the Lloyd's Excess Covered Claims and the claims covered by the Lloyd's Umbrella Policies. ~~Jury~~The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related ~~child sexual abuse~~ cases further confirm the Lloyd's Excess Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

*[Link-to-previous setting changed from off in original to on in modified.].*

248. 245. The asserted reservations of rights set forth in Paragraphs 238241 and 239242 do not provide Lloyd's Excess valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Lloyd's Excess Covered Claims under the Lloyd's Excess Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conductwillful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Lloyd's Excess Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Lloyd's Excess Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Lloyd's Excess either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Lloyd's Excess as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

249. 246. RCBO sent Lloyd's Excess a letter on May 30, 2024, demanding Lloyd's Excess indemnify RCBO for the Lloyd's Excess Covered Claims up to the policy limits under the Lloyd's Excess Policies (the "Lloyd's Excess Policy Limits Letter").

250. 247. On July 1, 2024, Lloyd's Excess responded to the Lloyd's Excess Policy Limits Letter and declined to indemnify RCBO in response to the Policy Limits Letter, and thereby has failed to provide the benefits of the Lloyd's Excess Policies to RCBO.

251. 248. On August 6, 2024, Lloyd's Excess responded to the UCC Lloyd's Demand letterLetter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Lloyd's Demand Letter, and thereby has failed to provide the benefits of the Lloyd's Excess Policies to RCBO.

252. 249. The Lloyd's Excess Policies provide coverage for, and do not exclude, the Lloyd's Excess Covered Claims, and Lloyd's Excess is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Lloyd's Excess Covered Claims.

253. 250. The Lloyd's Excess Policies constitute a significant asset of RCBO as well as a

*[Link-to-previous setting changed from off in original to on in modified.].*

recovery source for the alleged abuse survivors in the Bankruptcy Case.

254. ~~251.~~ An actual controversy of a justiciable nature presently exists between RCBO and Lloyd's Excess concerning the proper construction of the Lloyd's Excess Policies, whether Lloyd's Excess cited grounds for reservation of rights to deny defense and/or indemnity under the Lloyd's Excess Policies are valid, whether there is any coverage for the Lloyd's Excess Covered Claims under the Lloyd's Excess Policies, whether Lloyd's Excess is obligated to drop down to provide first-dollar coverage for the Lloyd's Excess Covered Claims because the underlying primary insurance is exhausted, Lloyd's Excess's and RCBO's respective rights and obligations under the Lloyd's Excess Policies with respect to the Lloyd's Excess Covered Claims, and whether Lloyd's Excess should participate in settlement regarding the Lloyd's Excess Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

255. ~~252.~~ RCBO is entitled to a declaratory judgment stating Lloyd's Excess has issued the Lloyd's Excess Policies to RCBO, the Lloyd's Excess Policies cover the Lloyd's Excess Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Lloyd's Excess Covered Claims under the Lloyd's Excess Policies, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Lloyd's Excess Policies as alleged in Paragraphs ~~243-244~~246-247, and the requirement that Lloyd's Excess drop down to provide defense and indemnity to RCBO regarding the Lloyd's Excess Covered Claims.

**ELEVENTH CAUSE OF ACTION**

**(Declaratory Relief Against Fidelidade - Excess)**

256. ~~253.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~252~~255 of this Complaint as if said Paragraphs were set forth in full.

257. ~~254.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

258. ~~255.~~ An actual and justiciable controversy exists between RCBO and Fidelidade with respect to whether Fidelidade is obligated to provide RCBO with defense and indemnity under the Fidelidade Excess Policy regarding the subset of the Suits for which RCBO alleges Fidelidade is

*[Link-to-previous setting changed from off in original to on in modified.].*

obligated to provide RCBO with indemnity, as set forth in Paragraph ~~21~~20 (the "Fidelidade Covered Claims").

259. ~~256.~~ Pursuant to the terms of the Fidelidade Excess Policy, Fidelidade is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Fidelidade Covered Claims.

260. ~~257.~~ RCBO has fully ~~performed~~satisfied all conditions required under the Fidelidade Excess Policy, or is otherwise excused from doing so.

261. ~~258.~~ RCBO's broker and/or RCBO tendered the Fidelidade Covered Claims to Fidelidade on RCBO's behalf as set forth in Exhibit A.

262. ~~259.~~ Fidelidade denied and/or failed to confirm it will defend and indemnify RCBO for the Fidelidade Covered Claims.

263. ~~260.~~ Fidelidade has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Fidelidade Excess Policy that, in turn, will exhaust those policies and trigger Fidelidade's obligation to provide the benefits of the Fidelidade Excess Policy to RCBO. Rather, Fidelidade reserved its right to deny coverage on a number of bases.

264. ~~261.~~ Fidelidade's reservation of rights includes Fidelidade's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Fidelidade is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Fidelidade's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Fidelidade Excess Policy]."

*[Link-to-previous setting changed from off in original to on in modified.].*

iv. "To the extent the [Fidelidade Excess Policy is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Fidelidade "reserve[s] all rights based upon the number and timing of occurrences. It is [Fidelidade's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Fidelidade Excess Policy]."

viii. Fidelidade "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

265. ~~262.~~ In addition, Fidelidade reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Fidelidade "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of

*[Link-to-previous setting changed from off in original to on in modified.].*

Claimant since such misconduct would not be 'unexpected or unintended.'" Fidelidade thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Fidelidade] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Fidelidade Excess Policy]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Fidelidade reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Fidelidade reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Fidelidade's] agent for notice of claims provided in the Policy Declarations."

x. Fidelidade s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Fidelidade Excess Policy], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and

*[Link-to-previous setting changed from off in original to on in modified.].*

Mutual Release" executed by Fidelidade and RCBO "in ~~our~~or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Fidelidade] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Fidelidade Excess Policy]."

xiv. Fidelidade reserves its rights "pursuant to the [Fidelidade Excess Policy's] Other Insurance Condition."

xv. Fidelidade reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

266. ~~263.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Fidelidade has reserved its right to deny its defense and indemnity obligation under the Fidelidade Excess Policy on the grounds that the Fidelidade Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Fidelidade Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Fidelidade Excess Policy defines that term, within the Fidelidade Excess Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Fidelidade Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury,

*[Link-to-previous setting changed from off in original to on in modified.].*

including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 202 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 68).

iv. Claim 204 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 66) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 49), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 69).

v. Claim 214 includes negligence allegations that RCBO "negligently failed to properly

*[Link-to-previous setting changed from off in original to on in modified.].*

and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 68).

267. ~~264.~~ The remaining Fidelidade Covered Claims not listed in Paragraph ~~263~~266 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Fidelidade Excess Policy defines that term.

268. ~~265.~~ As a further example, Fidelidade reserved its right to deny coverage under the Fidelidade Excess Policy on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs ~~266-267~~269-270.

269. ~~266.~~ There is a substantial likelihood that the Fidelidade Covered Claims will exhaust the primary insurance underlying the Fidelidade Excess Policy. The underlying Pacific Indemnity primary policy no. LAC 155598 has limits of $500,000 per occurrence and $500,000 in aggregate (the "10/25/63-10/25/66 Pacific Indemnity Policy"). There are at least 34 Fidelidade Covered Claims that ~~fall within~~trigger the coverage periods for the 10/25/63-10/25/66 Pacific Indemnity Policy and the Fidelidade Excess Policy.

270. ~~267.~~ Data from past clergy sexual abuse cases indicate the Fidelidade Covered Claims will far exceed the per occurrence and aggregate limits of the 10/25/63-10/25/66 Pacific Indemnity Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The ~~Official Committee of Unsecured Creditors ("~~UCC~~")~~ sent a letter to counsel for the Lloyd's Excess and Lloyd's

*[Link-to-previous setting changed from off in original to on in modified.].*

Umbrella Defendants ~~(the "UCC Demand Letter")~~. Upon information and belief, Fidelidade received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Fidelidade was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million ~~(the "UCC Demand Amount")~~, which is within the policy limits of the Fidelidade Excess Policy, to resolve the Fidelidade Covered Claims and the claims falling within the Fidelidade coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount ~~as~~on a reasonable estimate of the value of the Fidelidade Covered Claims. ~~Jury~~The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related ~~child sexual abuse~~ cases further confirm the Lloyd's Covered Claims will exhaust the 10/25/63-10/25/66 Pacific Indemnity Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

271. ~~268.~~ The asserted reservations of rights set forth in Paragraphs ~~261~~264 and ~~262~~265 do not provide Fidelidade valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Fidelidade Covered Claims under the Fidelidade Excess Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not ~~intentional conduct~~willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Fidelidade Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Fidelidade Excess Policy has either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Fidelidade either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Fidelidade as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

*[Link-to-previous setting changed from off in original to on in modified.].*

272. ~~269.~~ RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants ~~a letter~~letters on May 30, 2024, demanding indemnification to RCBO for the Fidelidade Covered Claims up to the policy limits under the Fidelidade Excess Policy (jointly, the "Lloyd's Policy Limits ~~Letter~~Letters"). Upon information and belief, Fidelidade received the Lloyd's Policy Limits ~~Letter~~Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Fidelidade was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

273. ~~270.~~ On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits ~~Letter~~Letters and declined to indemnify RCBO ~~in response to the Policy Limits Letter~~, and Fidelidade thereby has failed to provide the benefits of the Fidelidade Excess Policy to RCBO.

274. ~~271.~~ On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand ~~letter~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the UCC Demand Letter~~. Fidelidade thereby has failed to provide the benefits of the Fidelidade Excess Policy to RCBO.

275. ~~272.~~ The Fidelidade Excess Policy provides coverage for, and does not exclude, the Fidelidade Covered Claims, and Fidelidade is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Fidelidade Covered Claims.

276. ~~273.~~ The Fidelidade Excess Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

277. ~~274.~~ An actual controversy of a justiciable nature presently exists between RCBO and Fidelidade concerning the proper construction of the Fidelidade Excess Policy, whether Fidelidade's cited grounds for reservation of rights to deny defense and/or indemnity under the Fidelidade Excess Policy are valid, whether there is any coverage for the Fidelidade Covered Claims under the Fidelidade Excess Policy, whether Fidelidade is obligated to drop down to provide first-dollar coverage for the Fidelidade Covered Claims because the underlying primary insurance is exhausted, Fidelidade's and RCBO's respective rights and obligations under the Fidelidade Excess Policy with respect to the Fidelidade Covered Claims, and whether Fidelidade should participate in settlement regarding the Fidelidade Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the

*[Link-to-previous setting changed from off in original to on in modified.].*

issuance of a declaratory judgment.

278. ~~275.~~ RCBO is entitled to a declaratory judgment stating Fidelidade has issued the Fidelidade Excess Policy to RCBO, the Fidelidade Excess Policy covers the Fidelidade Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Fidelidade Covered Claims under the Fidelidade Excess Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Fidelidade Excess Policy as alleged in Paragraphs ~~266-267~~269-270, and the requirement that Fidelidade drop down to provide defense and indemnity to RCBO regarding the Fidelidade Covered Claims.

**TWELFTH CAUSE OF ACTION**

**(Declaratory Relief Against Excess Insurance Co. - Excess)**

279. ~~276.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~275~~278 of this Complaint as if said Paragraphs were set forth in full.

280. ~~277.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

281. ~~278.~~ An actual and justiciable controversy exists between RCBO and Excess Insurance Co. with respect to whether Excess Insurance Co. is obligated to provide RCBO with defense and indemnity under the Excess Insurance Co. Policies regarding the subset of the Suits for which RCBO alleges Excess Insurance Co. is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~16~~15 (the "Excess Insurance Co. Covered Claims").

282. ~~279.~~ Pursuant to the terms of the Excess Insurance Co. Policies, Excess Insurance Co. is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Excess Insurance Co. Covered Claims.

283. ~~280.~~ RCBO has fully ~~performed~~satisfied all conditions required under the Excess Insurance Co. Policies, or is otherwise excused from doing so.

284. ~~281.~~ RCBO's broker and/or RCBO tendered the Excess Insurance Co. Covered Claims to Excess Insurance Co. on RCBO's behalf as set forth in Exhibit A.

*[Link-to-previous setting changed from off in original to on in modified.].*

285. ~~282.~~ Excess Insurance Co. denied and/or failed to confirm it will defend and indemnify RCBO for the Excess Insurance Co. Covered Claims.

286. ~~283.~~ Excess Insurance Co. has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Excess Insurance Co. Policies that, in turn, will exhaust those policies and trigger Excess Insurance Co.'s obligation to provide the benefits of the Excess Insurance Co. Policies to RCBO. Rather, Excess Insurance Co. reserved its right to deny coverage on a number of bases.

287. ~~284.~~ Excess Insurance Co.'s reservation of rights includes Excess Insurance Co.'s position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Excess Insurance Co. is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Excess Insurance Co.'s coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Excess Insurance Co. Policies]."

iv. "To the extent the [Excess Insurance Co. Policies is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Excess Insurance Co. "reserve[s] all rights based upon the number and timing of occurrences. It is [Excess Insurance Co.'s] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance

*[Link-to-previous setting changed from off in original to on in modified.].*

limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Excess Insurance Co. Policies]."

viii. Excess Insurance Co. "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

288. ~~285.~~ In addition, Excess Insurance Co. reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Excess Insurance Co. "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Excess Insurance Co. thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Excess

*[Link-to-previous setting changed from off in original to on in modified.].*

Insurance Co.] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Excess Insurance Co. Policies]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Excess Insurance Co. reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Excess Insurance Co. reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Excess Insurance Co.'s] agent for notice of claims provided in the Policy Declarations."

x. Excess Insurance Co. s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Excess Insurance Co. Policies], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Excess Insurance Co. and RCBO "in ~~our~~or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Excess Insurance Co.] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Excess Insurance Co. Policies]."

*[Link-to-previous setting changed from off in original to on in modified.].*

xiv. Excess Insurance Co. reserves its rights "pursuant to the [Excess Insurance Co. Policies'] Other Insurance Condition."

xv. Excess Insurance Co. reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

289. ~~286.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Excess Insurance Co. has reserved its right to deny its defense and indemnity obligation under the Excess Insurance Co. Policies on the grounds that the Excess Insurance Co. Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Excess Insurance Co. Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Excess Insurance Co. Policies defines that term, within the Excess Insurance Co. Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Excess Insurance Co. Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk

*[Link-to-previous setting changed from off in original to on in modified.].*

of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

290. ~~287.~~ The remaining Excess Insurance Co. Covered Claims not listed in Paragraph ~~286~~289 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of

*[Link-to-previous setting changed from off in original to on in modified.].*

RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Excess Insurance Co. Policies defines that term.

291. ~~288.~~ As a further example, Excess Insurance Co. reserved its right to deny coverage under the Excess Insurance Co. Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs ~~289-290~~292-293.

292. ~~289.~~ There is a substantial likelihood that the Excess Insurance Co. Covered Claims will exhaust the primary insurance underlying the Excess Insurance Co. Policies. The underlying Pacific Indemnity primary policy nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). There are at least 38 Excess Insurance Co. Covered Claims that ~~fall within~~trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies and the Excess Insurance Co. Policies.

293. ~~290.~~ Data from past clergy sexual abuse cases indicate the Excess Insurance Co. Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The ~~Official Committee of Unsecured Creditors ("~~UCC~~")~~ sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants ~~(the "UCC Demand Letter")~~. Upon information and belief, Excess Insurance Co. received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Excess Insurance Co. was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million ~~(the "UCC Demand Amount")~~, which is within the policy limits of the Excess Insurance Co. Policies, to resolve the Excess Insurance Co. Covered Claims and the claims falling within the Excess Insurance Co. coverage period

*[Link-to-previous setting changed from off in original to on in modified.].*

alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount ason a reasonable estimate of the value of the Excess Insurance Co. Covered Claims. JuryThe $16 million jury verdict in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

294. 291. The asserted reservations of rights set forth in Paragraphs 284287 and 285288 do not provide Excess Insurance Co. valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Excess Insurance Co. Covered Claims under the Excess Insurance Co. Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conductwillful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Excess Insurance Co. Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Excess Insurance Co. Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Excess Insurance Co. either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Excess Insurance Co. as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

295. 292. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants a letterthe Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Excess Insurance Co. Covered Claims up to the policy limits under the Excess Insurance Co. Policies (the "Policy Limits Letter"). Upon information and belief, Excess Insurance Co. received the Lloyd's Policy Limits LetterLetters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Excess Insurance Co. was at the time represented by the same counsel as the

*[Link-to-previous setting changed from off in original to on in modified.].*

Lloyd's Excess and Lloyd's Umbrella Defendants.

296. ~~293.~~ On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits ~~Letter~~Letters and declined to indemnify RCBO ~~in response to the Policy Limits Letter~~, and thereby Excess Insurance Co. has failed to provide the benefits of the Excess Insurance Co. Policies to RCBO.

297. ~~294.~~ On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand ~~letter~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the UCC Demand Letter~~. Excess Insurance Co. thereby has failed to provide the benefits of the Excess Insurance Co. Policies to RCBO. The Excess Insurance Co. Policies provide coverage for, and do not exclude, the Excess Insurance Co. Covered Claims, and Excess Insurance Co. is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Excess Insurance Co. Covered Claims.

298. ~~295.~~ The Excess Insurance Co. Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

299. ~~296.~~ An actual controversy of a justiciable nature presently exists between RCBO and Excess Insurance Co. concerning the proper construction of the Excess Insurance Co. Policies, whether Excess Insurance Co.'s cited grounds for reservation of rights to deny defense and/or indemnity under the Excess Insurance Co. Policies are valid, whether there is any coverage for the Excess Insurance Co. Covered Claims under the Excess Insurance Co. Policies, whether Excess Insurance Co. is obligated to drop down to provide first-dollar coverage for the Excess Insurance Co. Covered Claims because the underlying primary insurance is exhausted, Excess Insurance Co.'s and RCBO's respective rights and obligations under the Excess Insurance Co. Policies with respect to the Excess Insurance Co. Covered Claims, and whether Excess Insurance Co. should participate in settlement regarding the Excess Insurance Co. Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

300. ~~297.~~ RCBO is entitled to a declaratory judgment stating Excess Insurance Co. has issued the Excess Insurance Co. Policies to RCBO, the Excess Insurance Co. Policies cover the Excess Insurance Co. Covered Claims, and RCBO is entitled to both defense and indemnity regarding the

*[Link-to-previous setting changed from off in original to on in modified.].*

Excess Insurance Co. Covered Claims under the Excess Insurance Co. Policies, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Excess Insurance Co. Policies as alleged in Paragraphs ~~289-290~~292-293, and the requirement that Excess Insurance Co. drop down to provide defense and indemnity to RCBO regarding the Excess Insurance Co. Covered Claims.

**THIRTEENTH CAUSE OF ACTION**

**(Declaratory Relief Against River Thames - Excess)**

301. ~~298.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~297~~300 of this Complaint as if said Paragraphs were set forth in full.

302. ~~299.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

303. ~~300.~~ An actual and justiciable controversy exists between RCBO and River Thames with respect to whether River Thames is obligated to provide RCBO with defense and indemnity under the River Thames Policy regarding the subset of the Suits for which RCBO alleges River Thames is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~20~~19 (the "River Thames Covered Claims").

304. ~~301.~~ Pursuant to the terms of the River Thames Policy, River Thames is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the River Thames Covered Claims.

305. ~~302.~~ RCBO has fully ~~performed~~satisfied all conditions required under the River Thames Policy, or is otherwise excused from doing so.

306. ~~303.~~ RCBO's broker and/or RCBO tendered the River Thames Covered Claims to River Thames on RCBO's behalf as set forth in Exhibit A.

307. ~~304.~~ River Thames denied and/or failed to confirm it will defend and indemnify RCBO for the River Thames Covered Claims.

308. ~~305.~~ River Thames has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the River Thames Policy

*[Link-to-previous setting changed from off in original to on in modified.].*

that, in turn, will exhaust those policies and trigger River Thames's obligation to provide the benefits of the River Thames Policy to RCBO. Rather, River Thames reserved its right to deny coverage on a number of bases.

309. ~~306.~~ River Thames's reservation of rights includes River Thames's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. River Thames is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. River Thames's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [River Thames Policy]."

iv. "To the extent the [River Thames Policy is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. River Thames "reserve[s] all rights based upon the number and timing of occurrences. It is [River Thames's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [River Thames Policy]."

viii. River Thames "declines coverage to any alleged perpetrator of sexual assault, or any

*[Link-to-previous setting changed from off in original to on in modified.].*

individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

310. ~~307.~~ In addition, River Thames reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. River Thames "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" River Thames thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [River Thames] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [River Thames Policy]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or

*[Link-to-previous setting changed from off in original to on in modified.].*

counseling services."

viii. River Thames reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. River Thames reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [River Thames's] agent for notice of claims provided in the Policy Declarations."

x. River Thames s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [River Thames Policy], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by River Thames and RCBO "in ~~our~~or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [River Thames] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [River Thames Policy]."

xiv. River Thames reserves its rights "pursuant to the [River Thames Policy's] Other Insurance Condition."

xv. River Thames reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

311. ~~308.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, River Thames has reserved its right to deny its defense and indemnity

*[Link-to-previous setting changed from off in original to on in modified.].*

obligation under the River Thames Policy on the grounds that the River Thames Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the River Thames Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the River Thames Policy defines that term, within the River Thames Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the River Thames Covered Claims.

i. Claim 15 includes negligence allegations that RCBO "negligently supervised and/or retained ABUSER in positions of trust and authority as a priest" (¶ 49) and "failed to use reasonable care in protecting Plaintiff [] from Abuser's misconduct that created a risk of childhood sexual abuse, while Plaintiffs [] were involved in activities sponsored, supervised, organized or directed by [RCBO]" (¶ 53) and that such negligence caused the plaintiff bodily injury, including "suffer[ing] physical, mental and emotional health problems" (¶ 67).

ii. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence

*[Link-to-previous setting changed from off in original to on in modified.].*

caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

iv. Claim 204 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 66) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 49), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 69).

v. Claim 383 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

312. ~~309.~~ The remaining River Thames Covered Claims not listed in Paragraph ~~308~~311 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the River Thames Policy defines that term.

313. ~~310.~~ As a further example, River Thames reserved its right to deny coverage under the River Thames Policy on the ground that "underlying insurance limits must first be exhausted." This

*[Link-to-previous setting changed from off in original to on in modified.].*

reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs ~~311-312~~314-315.

314. ~~311.~~ There is a substantial likelihood that the River Thames Covered Claims will exhaust the primary insurance underlying the River Thames Policy. The underlying Pacific Indemnity primary policy no. LAC 127792 has limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/63 Pacific Indemnity Policy"). There are at least 17 River Thames Covered Claims that ~~fall within~~trigger the coverage periods for the 3/12/62-10/25/63 Pacific Indemnity Policy and the River Thames Policy.

315. ~~312.~~ Data from past clergy sexual abuse cases indicate the River Thames Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/63 Pacific Indemnity Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The ~~Official Committee of Unsecured Creditors ("~~UCC~~")~~ sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants ~~(the "UCC Demand Letter")~~. Upon information and belief, River Thames received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because River Thames is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million ~~(the "UCC Demand Amount")~~, which is within the policy limits of the River Thames Policy, to resolve the River Thames Covered Claims and the claims falling within the River Thames coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount ~~as~~on a reasonable estimate of the value of the River Thames Covered Claims. ~~Jury~~The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related ~~child sexual abuse~~ cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/63 Pacific Indemnity Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et*

*[Link-to-previous setting changed from off in original to on in modified.].*

*al., Superior Court of Los Angeles County, California*, Case No. BC615789 (jury awarded $8 million to survivor).

316. ~~313.~~ The asserted reservations of rights set forth in Paragraphs ~~306~~309 and ~~307~~310 do not provide River Thames valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the River Thames Covered Claims under the River Thames Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not ~~intentional conduct~~willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the River Thames Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the River Thames Policy has either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to River Thames either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with River Thames as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

317. ~~314.~~ RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants ~~a letter~~the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the River Thames Covered Claims up to the policy limits under the River Thames Policy ~~(the "Policy Limits Letter")~~. Upon information and belief, River Thames received the Lloyd's Policy Limits ~~Letter~~Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because River Thames is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

318. ~~315.~~ On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits ~~Letter~~Letters and declined to indemnify RCBO ~~in response to the Policy Limits Letter~~, and thereby River Thames has failed to provide the benefits of the River Thames Policy to RCBO.

319. ~~316.~~ On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand ~~letter~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the UCC Demand Letter~~. Excess

*[Link-to-previous setting changed from off in original to on in modified.].*

Insurance Co. thereby has failed to provide the benefits of the Excess Insurance Co. Policies to RCBO. The River Thames Policy provides coverage for, and does not exclude, the River Thames Covered Claims, and River Thames is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the River Thames Covered Claims.

320. ~~317.~~ The River Thames Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

321. ~~318.~~ An actual controversy of a justiciable nature presently exists between RCBO and River Thames concerning the proper construction of the River Thames Policy, whether River Thames's cited grounds for reservation of rights to deny defense and/or indemnity under the River Thames Policy are valid, whether there is any coverage for the River Thames Covered Claims under the River Thames Policy, whether River Thames is obligated to drop down to provide first-dollar coverage for the River Thames Covered Claims because the underlying primary insurance is exhausted, River Thames's and RCBO's respective rights and obligations under the River Thames Policy with respect to the River Thames Covered Claims, and whether River Thames should participate in settlement regarding the River Thames Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

322. ~~319.~~ RCBO is entitled to a declaratory judgment stating River Thames has issued the River Thames Policy to RCBO, the River Thames Policy covers the River Thames Covered Claims, and RCBO is entitled to both defense and indemnity regarding the River Thames Covered Claims under the River Thames Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the River Thames Policy as alleged in Paragraphs ~~311-312~~314-315, and the requirement that River Thames drop down to provide defense and indemnity to RCBO regarding the River Thames Covered Claims.

## FOURTEENTH CAUSE OF ACTION

### (Declaratory Relief Against World Auxiliary - Excess)

323. ~~320.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~219~~322 of this

*[Link-to-previous setting changed from off in original to on in modified.].*

Complaint as if said Paragraphs were set forth in full.

324. ~~321.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

325. ~~322.~~ An actual and justiciable controversy exists between RCBO and World Auxiliary with respect to whether World Auxiliary is obligated to provide RCBO with defense and indemnity under the World Auxiliary Policy regarding the subset of the Suits for which RCBO alleges World Auxiliary is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~18~~17 (the "World Auxiliary Covered Claims").

326. ~~323.~~ Pursuant to the terms of the World Auxiliary Policy, World Auxiliary is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the World Auxiliary Covered Claims.

327. ~~324.~~ RCBO has fully ~~performed~~satisfied all conditions required under the World Auxiliary Policy, or is otherwise excused from doing so.

328. ~~325.~~ RCBO's broker and/or RCBO tendered the World Auxiliary Covered Claims to World Auxiliary on RCBO's behalf as set forth in Exhibit A.

329. ~~326.~~ World Auxiliary denied and/or failed to confirm it will defend and indemnify RCBO for the World Auxiliary Covered Claims.

330. ~~327.~~ World Auxiliary has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the World Auxiliary Policy that, in turn, will exhaust those policies and trigger World Auxiliary's obligation to provide the benefits of the World Auxiliary Policy to RCBO. Rather, World Auxiliary reserved its right to deny coverage on a number of bases.

331. ~~328.~~ World Auxiliary's reservation of rights includes World Auxiliary's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the

*[Link-to-previous setting changed from off in original to on in modified.].*

Excess Umbrella Policies."

ii. World Auxiliary is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. World Auxiliary's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [World Auxiliary Policy]."

iv. "To the extent the [World Auxiliary Policy is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. World Auxiliary "reserve[s] all rights based upon the number and timing of occurrences. It is [World Auxiliary's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [World Auxiliary Policy]."

viii. World Auxiliary "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

332. ~~329.~~ In addition, World Auxiliary reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual

*[Link-to-previous setting changed from off in original to on in modified.].*

misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. World Auxiliary "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'~~"~~ World Auxiliary thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [World Auxiliary] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [World Auxiliary Policy]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. World Auxiliary reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. World Auxiliary reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [World Auxiliary's] agent for notice of claims provided in the Policy Declarations."

*[Link-to-previous setting changed from off in original to on in modified.].*

x. World Auxiliary s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [World Auxiliary Policy], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by World Auxiliary and RCBO "in ~~our~~or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [World Auxiliary] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [World Auxiliary Policy]."

xiv. World Auxiliary reserves its rights "pursuant to the [World Auxiliary Policy's] Other Insurance Condition."

xv. World Auxiliary reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

333. ~~330.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, World Auxiliary has reserved its right to deny its defense and indemnity obligation under the World Auxiliary Policy on the grounds that the World Auxiliary Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the World Auxiliary Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the World Auxiliary Policy defines that term, within the World Auxiliary Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and

*[Link-to-previous setting changed from off in original to on in modified.].*

bodily injury allegations from the World Auxiliary Covered Claims.

i. Claim 15 includes negligence allegations that RCBO "negligently supervised and/or retained ABUSER in positions of trust and authority as a priest" (¶ 49) and "failed to use reasonable care in protecting Plaintiff [] from Abuser's misconduct that created a risk of childhood sexual abuse, while Plaintiffs [] were involved in activities sponsored, supervised, organized or directed by [RCBO]" (¶ 53) and that such negligence caused the plaintiff bodily injury, including "suffer[ing] physical, mental and emotional health problems" (¶ 67).

ii. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

iv. Claim 204 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 66) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 49), and that such negligence

*[Link-to-previous setting changed from off in original to on in modified.].*

caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 69).

v. Claim 383 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

334. ~~331.~~ The remaining World Auxiliary Covered Claims not listed in Paragraph ~~330~~333 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the World Auxiliary Policy defines that term.

335. ~~332.~~ As a further example, World Auxiliary reserved its right to deny coverage under the World Auxiliary Policy on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs ~~333-334~~336-337.

336. ~~333.~~ There is a substantial likelihood that the World Auxiliary Covered Claims will exhaust the primary insurance underlying the World Auxiliary Policy. The underlying Pacific Indemnity primary policy no. LAC 127792 has limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/63 Pacific Indemnity Policy"). There are at least 17 World Auxiliary Covered Claims that ~~fall within~~trigger the coverage periods for the 3/12/62-10/25/63 Pacific Indemnity Policy and the

*[Link-to-previous setting changed from off in original to on in modified.].*

World Auxiliary Policy.

337. 334. Data from past clergy sexual abuse cases indicate the World Auxiliary Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/63 Pacific Indemnity Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The Official Committee of Unsecured Creditors ("UCC") sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants (the "UCC Demand Letter"). Upon information and belief, World Auxiliary received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because World Auxiliary is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million (the "UCC Demand Amount"), which is within the policy limits of the World Auxiliary Policy, to resolve the World Auxiliary Covered Claims and the claims falling within the World Auxiliary coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount ason a reasonable estimate of the value of the World Auxiliary Covered Claims. JuryThe $16 million jury verdict in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/63 Pacific Indemnity Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

338. 335. The asserted reservations of rights set forth in Paragraphs 328331 and 329332 do not provide World Auxiliary valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the World Auxiliary Covered Claims under the World Auxiliary Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conductwillful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the

*[Link-to-previous setting changed from off in original to on in modified.].*

World Auxiliary Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the World Auxiliary Policy has eitherhave been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to World Auxiliary either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with World Auxiliary as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

339. 336. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants a letterthe Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the World Auxiliary Covered Claims up to the policy limits under the World Auxiliary Policy (the "Policy Limits Letter"). Upon information and belief, World Auxiliary received the Lloyd's Policy Limits LetterLetters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because World Auxiliary is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

340. 337. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits LetterLetters and declined to indemnify RCBO in response to the Policy Limits Letter, and thereby World Auxiliary has failed to provide the benefits of the World Auxiliary Policy to RCBO.

341. 338. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand letterLetter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Demand Letter. World Auxiliary thereby has failed to provide the benefits of the World Auxiliary Policy to RCBO. The World Auxiliary Policy provides coverage for, and does not exclude, the World Auxiliary Covered Claims, and World Auxiliary is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the World Auxiliary Covered Claims.

342. 339. The World Auxiliary Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

343. 340. An actual controversy of a justiciable nature presently exists between RCBO and

*[Link-to-previous setting changed from off in original to on in modified.].*

World Auxiliary concerning the proper construction of the World Auxiliary Policy, whether World Auxiliary's cited grounds for reservation of rights to deny defense and/or indemnity under the World Auxiliary Policy are valid, whether there is any coverage for the World Auxiliary Covered Claims under the World Auxiliary Policy, whether World Auxiliary is obligated to drop down to provide first-dollar coverage for the World Auxiliary Covered Claims because the underlying primary insurance is exhausted, World Auxiliary's and RCBO's respective rights and obligations under the World Auxiliary Policy with respect to the World Auxiliary Covered Claims, and whether World Auxiliary should participate in settlement regarding the World Auxiliary Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

344. ~~341.~~ RCBO is entitled to a declaratory judgment stating World Auxiliary has issued the World Auxiliary Policy to RCBO, the World Auxiliary Policy covers the World Auxiliary Covered Claims, and RCBO is entitled to both defense and indemnity regarding the World Auxiliary Covered Claims under the World Auxiliary Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the World Auxiliary Policy as alleged in Paragraphs ~~333-334~~336-337, and the requirement that World Auxiliary drop down to provide defense and indemnity to RCBO regarding the World Auxiliary Covered Claims.

## FIFTEENTH CAUSE OF ACTION

### (Declaratory Relief Against Dominion - Excess)

345. ~~342.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~341~~344 of this Complaint as if said Paragraphs were set forth in full.

346. ~~343.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

347. ~~344.~~ An actual and justiciable controversy exists between RCBO and Dominion with respect to whether Dominion is obligated to provide RCBO with defense and indemnity under the Dominion Policies regarding the subset of the Suits for which RCBO alleges Dominion is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~17~~16 (the "Dominion Covered Claims").

*[Link-to-previous setting changed from off in original to on in modified.].*

348. 345. Pursuant to the terms of the Dominion Policies, Dominion is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Dominion Covered Claims.

349. 346. RCBO has fully performedsatisfied all conditions required under the Dominion Policies, or is otherwise excused from doing so.

350. 347. RCBO's broker and/or RCBO tendered the Dominion Covered Claims to Dominion on RCBO's behalf as set forth in Exhibit A.

351. 348. Dominion denied and/or failed to confirm it will defend and indemnify RCBO for the Dominion Covered Claims.

352. 349. Dominion has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Dominion Policies that, in turn, will exhaust those policies and trigger Dominion's obligation to provide the benefits of the Dominion Policies to RCBO. Rather, Dominion reserved its right to deny coverage on a number of bases.

353. 350. Dominion's reservation of rights includes Dominion's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Dominion is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Dominion's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Dominion Policies]."

iv. "To the extent the [Dominion Policies is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance)

*[Link-to-previous setting changed from off in original to on in modified.].*

have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Dominion "reserve[s] all rights based upon the number and timing of occurrences. It is [Dominion's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Dominion Policies]."

viii. Dominion "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

354. ~~351.~~ In addition, Dominion reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Dominion "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Dominion thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an

*[Link-to-previous setting changed from off in original to on in modified.].*

'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Dominion] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Dominion Policies]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Dominion reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Dominion reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Dominion's] agent for notice of claims provided in the Policy Declarations."

x. Dominion s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Dominion Policies], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Dominion and RCBO "in ~~our~~or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

*[Link-to-previous setting changed from off in original to on in modified.].*

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Dominion] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Dominion Policies]."

xiv. Dominion reserves its rights "pursuant to the [Dominion ~~Policies's~~Policies'] Other Insurance Condition."

xv. Dominion reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

355. ~~352.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Dominion has reserved its right to deny its defense and indemnity obligation under the Dominion Policies on the grounds that the Dominion Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Dominion Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Dominion Policies defines that term, within the Dominion Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Dominion Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional

*[Link-to-previous setting changed from off in original to on in modified.].*

distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement

*[Link-to-previous setting changed from off in original to on in modified.].*

reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

356. 353. The remaining Dominion Covered Claims not listed in Paragraph 352355 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Dominion Policies defines that term.

357. 354. As a further example, Dominion reserved its right to deny coverage under the Dominion Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraph 355-356358-359.

358. 355. There is a substantial likelihood that the Dominion Covered Claims will exhaust the primary insurance underlying the Dominion Policies. The underlying Pacific Indemnity primary policy nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). There are at least 38 Dominion Covered Claims that fall withintrigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies and the Dominion Policies.

359. 356. Data from past clergy sexual abuse cases indicate the Dominion Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The Official Committee of Unsecured Creditors ("UCC") sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants (the "UCC Demand Letter"). Upon information and belief, Dominion received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Dominion is represented by the same counsel as the Lloyd's

*[Link-to-previous setting changed from off in original to on in modified.].*

Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million (the "UCC Demand Amount"), which is within the policy limits of the Dominion Policies, to resolve the Dominion Covered Claims and the claims falling within the Dominion coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount ason a reasonable estimate of the value of the Dominion Covered Claims. JuryThe $16 million jury verdict in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

360. 357. The asserted reservations of rights set forth in Paragraphs 350353 and 351354 do not provide Dominion valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Dominion Covered Claims under the Dominion Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conductwillful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Dominion Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Dominion Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Dominion either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Dominion as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

361. 358. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants a letterthe Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Dominion Covered Claims up to the policy limits under the Dominion Policies (the "Policy Limits Letter"). Upon information and belief, Dominion received the Lloyd's Policy Limits LetterLetters as a subscriber to the

*[Link-to-previous setting changed from off in original to on in modified.].*

same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Dominion is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

362. ~~359.~~ On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits ~~Letter~~Letters and declined to indemnify RCBO ~~in response to the Policy Limits Letter~~, and thereby Dominion has failed to provide the benefits of the Dominion Policies to RCBO.

363. ~~360.~~ On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand ~~letter~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the UCC Demand Letter~~. Dominion thereby has failed to provide the benefits of the Dominion Policies to RCBO. The Dominion Policies provide coverage for, and do not exclude, the Dominion Covered Claims, and Dominion is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Dominion Covered Claims.

364. ~~361.~~ The Dominion Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

365. ~~362.~~ An actual controversy of a justiciable nature presently exists between RCBO and Dominion concerning the proper construction of the Dominion Policies, whether Dominion's cited grounds for reservation of rights to deny defense and/or indemnity under the Dominion Policies are valid, whether there is any coverage for the Dominion Covered Claims under the Dominion Policies, whether Dominion is obligated to drop down to provide first-dollar coverage for the Dominion Covered Claims because the underlying primary insurance is exhausted, Dominion's and RCBO's respective rights and obligations under the Dominion Policies with respect to the Dominion Covered Claims, and whether Dominion should participate in settlement regarding the Dominion Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

366. ~~363.~~ RCBO is entitled to a declaratory judgment stating Dominion has issued the Dominion Policies to RCBO, the Dominion Policies cover the Dominion Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Dominion Covered Claims under the Dominion Policies, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Dominion Policies as alleged in Paragraphs ~~355-356~~358-359, and the requirement that Dominion

*[Link-to-previous setting changed from off in original to on in modified.].*

drop down to provide defense and indemnity to RCBO regarding the Dominion Covered Claims.

~~364.~~

~~365.~~

## SIXTEENTH CAUSE OF ACTION

### (Declaratory Relief Against English & American - Excess)

367. ~~366.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~363~~366 of this Complaint as if said Paragraphs were set forth in full.

368. ~~367.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

369. ~~368.~~ An actual and justiciable controversy exists between RCBO and English & American with respect to whether English & American is obligated to provide RCBO with defense and indemnity under the English & American Policy regarding the subset of the Suits for which RCBO alleges English & American is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~19~~18 (the "English & American Covered Claims").

370. ~~369.~~ Pursuant to the terms of the English & American Policy, English & American is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the English & American Covered Claims.

371. ~~370.~~ RCBO has fully ~~performed~~satisfied all conditions required under the English & American Policy, or is otherwise excused from doing so.

372. ~~371.~~ RCBO's broker and/or RCBO tendered the English & American Covered Claims to English & American on RCBO's behalf as set forth in Exhibit A.

373. ~~372.~~ English & American denied and/or failed to confirm it will defend and indemnify RCBO for the English & American Covered Claims.

374. ~~373.~~ English & American has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the English & American Policy that, in turn, will exhaust those policies and trigger English & American's obligation to

*[Link-to-previous setting changed from off in original to on in modified.].*

provide the benefits of the English & American Policy to RCBO. Rather, English & American reserved its right to deny coverage on a number of bases.

375. ~~374.~~ English & American's reservation of rights includes English & American's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. English & American is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. English & American's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [English & American Policy]."

iv. "To the extent the [English & American Policy is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. English & American "reserve[s] all rights based upon the number and timing of occurrences. It is [English & American's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [English & American Policy]."

viii. English & American "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

*[Link-to-previous setting changed from off in original to on in modified.].*

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

376. ~~375.~~ In addition, English & American reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. English & American "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" English & American thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [English & American] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [English & American Policy]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

*[Link-to-previous setting changed from off in original to on in modified.].*

viii. English & American reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. English & American reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [English & American's] agent for notice of claims provided in the Policy Declarations."

x. English & American s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [English & American Policy], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by English & American and RCBO "in ~~our~~or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [English & American] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [English & American Policy]."

xiv. English & American reserves its rights "pursuant to the [English & American Policy's] Other Insurance Condition."

xv. English & American reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

377. ~~376.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, English & American has reserved its right to deny its defense and indemnity obligation under the English & American Policy on the grounds that the English & American

*[Link-to-previous setting changed from off in original to on in modified.].*

Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the English & American Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the English & American Policy defines that term, within the English & American Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the English & American Covered Claims.

i. Claim 15 includes negligence allegations that RCBO "negligently supervised and/or retained ABUSER in positions of trust and authority as a priest" (¶ 49) and "failed to use reasonable care in protecting Plaintiff [] from Abuser's misconduct that created a risk of childhood sexual abuse, while Plaintiffs [] were involved in activities sponsored, supervised, organized or directed by [RCBO]" (¶ 53) and that such negligence caused the plaintiff bodily injury, including "suffer[ing] physical, mental and emotional health problems" (¶ 67).

ii. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and

*[Link-to-previous setting changed from off in original to on in modified.].*

economic harm" (¶ 68).

iv. Claim 204 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 66) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 49), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 69).

v. Claim 383 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

378. ~~377.~~ The remaining English & American Covered Claims not listed in Paragraph ~~374~~377 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the English & American Policy defines that term.

379. ~~378.~~ As a further example, English & American reserved its right to deny coverage under the English & American Policy on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary

*[Link-to-previous setting changed from off in original to on in modified.].*

insurance policies are or will be exhausted as alleged in Paragraphs 377-378380-381.

380. 379. There is a substantial likelihood that the English & American Covered Claims will exhaust the primary insurance underlying the English & American Policy. The underlying Pacific Indemnity primary policy no. LAC 127792 has limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/63 Pacific Indemnity Policy"). There are at least 17 English & American Covered Claims that fall withintrigger the coverage periods for the 3/12/62-10/25/63 Pacific Indemnity Policy and the English & American Policy.

381. 380. Data from past clergy sexual abuse cases indicate the English & American Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/63 Pacific Indemnity Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The Official Committee of Unsecured Creditors ("UCC") sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants (the "UCC Demand Letter"). Upon information and belief, English & American received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because English & American was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million (the "UCC Demand Amount"), which is within the policy limits of the English & American Policy, to resolve the English & American Covered Claims and the claims falling within the English & American coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount ason a reasonable estimate of the value of the English & American Covered Claims. JuryThe $16 million jury verdict in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/63 Pacific Indemnity Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles

*[Link-to-previous setting changed from off in original to on in modified.].*

County, California, Case No. BC615789 (jury awarded $8 million to survivor).

382. ~~381.~~ The asserted reservations of rights set forth in Paragraphs ~~372~~375 and ~~373~~376 do not provide English & American valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the English & American Covered Claims under the English & American Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not ~~intentional conduct~~willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the English & American Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the English & American Policy ~~has either~~have been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to English & American either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with English & American as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

383. ~~382.~~ RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants ~~a letter~~the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the English & American Covered Claims up to the policy limits under the English & American Policy ~~(the "Policy Limits Letter")~~. Upon information and belief, English & American received the Lloyd's Policy Limits ~~Letter~~Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because English & American was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

384. ~~383.~~ On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits ~~Letter~~Letters and declined to indemnify RCBO ~~in response to the Policy Limits Letter~~, and thereby English & American has failed to provide the benefits of the English & American Policy to RCBO.

385. ~~384.~~ On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand ~~letter~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the UCC Demand Letter~~. English

*[Link-to-previous setting changed from off in original to on in modified.].*

& American thereby has failed to provide the benefits of the English & American Policy to RCBO. The English & American Policy provides coverage for, and does not exclude, the English & American Covered Claims, and English & American is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the English & American Covered Claims.

386. ~~385.~~ The English & American Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

387. ~~386.~~ An actual controversy of a justiciable nature presently exists between RCBO and English & American concerning the proper construction of the English & American Policy, whether English & American's cited grounds for reservation of rights to deny defense and/or indemnity under the English & American Policy are valid, whether there is any coverage for the English & American Covered Claims under the English & American Policy, whether English & American is obligated to drop down to provide first-dollar coverage for the English & American Covered Claims because the underlying primary insurance is exhausted, English & American's and RCBO's respective rights and obligations under the English & American Policy with respect to the English & American Covered Claims, and whether English & American should participate in settlement regarding the English & American Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

388. ~~387.~~ RCBO is entitled to a declaratory judgment stating English & American has issued the English & American Policy to RCBO, the English & American Policy covers the English & American Covered Claims, and RCBO is entitled to both defense and indemnity regarding the English & American Covered Claims under the English & American Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the English & American Policy as alleged in Paragraphs ~~377-378~~380-381, and the requirement that English & American drop down to provide defense and indemnity to RCBO regarding the English & American Covered Claims.

**SEVENTEENTH CAUSE OF ACTION**

**(Declaratory Relief Against Westport - Umbrella)**

*[Link-to-previous setting changed from off in original to on in modified.].*

389. 388. RCBO realleges and incorporates herein Paragraphs 1 through 385388 of this Complaint as if said Paragraphs were set forth in full.

390. 389. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201; Cal. Code. Civ. P. § 1060.

391. 390. An actual and justiciable controversy exists between RCBO and Westport with respect to whether Westport is obligated to provide RCBO with defense and indemnity under the Westport Umbrella Policy regarding the subset of the Suits for which RCBO alleges Westport is obligated to provide RCBO with indemnity, as set forth in Paragraph 2221 (the "Westport Umbrella Covered Claims").

392. 391. Pursuant to the terms of the Westport Umbrella Policy, Westport is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Westport Umbrella Covered Claims.

393. 392. RCBO has fully performedsatisfied all conditions required under the Westport Umbrella Policy, or is otherwise excused from doing so.

394. 393. RCBO's broker and/or RCBO tendered the Westport Umbrella Covered Claims to Westport on RCBO's behalf as set forth in Exhibit A.

395. 394. Westport denied and/or failed to confirm it will defend or indemnify RCBO for the Westport Umbrella Covered Claims.

396. 395. Westport has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Westport Umbrella Policy that, in turn, will exhaust those policies and trigger Westport's obligation to provide the benefits of the Westport Umbrella Policy to RCBO. Rather, Westport reserved its right to deny coverage on a number of bases.

397. 396. Westport's reservation of rights includes Westport's position that it may deny coverage based on:

i. Westport's contention that "there is no indication that the limits underlying the

*[Link-to-previous setting changed from off in original to on in modified.].*

[Westport Umbrella Policy] have been exhausted in accordance with the terms of the policies, Westport would have no immediate potential coverage obligations,"

ii. "Whether the claim referenced above falls within the policy period, limits, and scope of insurance afforded under the referenced [Westport Umbrella Policy] and/or policy(ies) to which the [Westport Umbrella Policy] may follow form, in whole or in part,"

iii. "Whether the applicable limits of all applicable underlying policies of insurance have in fact been exhausted in accordance with the [Westport Umbrella Policy's] terms,"

iv. "Whether any applicable policy exclusions limit or preclude coverage for the claim at issue, in whole or in part,"

v. "Whether the insured has complied with its duties under the [Westport Umbrella Policy], including but not limited to 'notice' and 'cooperation' obligations, and, if not, whether any such failure limits or precludes coverage for the claim at issue, in whole or in part,"

vi. "Whether any applicable policy conditions limit or preclude coverage for the claims at issue, in whole or in part,"

vii. "Whether Westport's obligations, if any, are limited or precluded due to prior impairment or exhaustion of limits, settlements, releases or other agreements, or are prohibited by law, statute and/or public policy,"

viii. Westport's purported "right to assert any additional defenses that might apply by operation of law or otherwise, including but not limited to defenses that may be asserted by the insurers who issued insurance policies with limits underlying the limits of the [Westport Umbrella Policy] denies coverage for any enhanced damages based on the defendants' willful and malicious conduct."

398. ~~397.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Westport has reserved its right to deny its defense and indemnity obligation under the Westport Umbrella Policy on the grounds that "any applicable policy exclusions

*[Link-to-previous setting changed from off in original to on in modified.].*

limit or preclude coverage for the [the Westport Umbrella Covered Claims] at issue, in whole or in part." Such reservation of rights as to defense and/or indemnity does not apply because the Westport Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Westport Umbrella Policy defines that term, within the Westport Umbrella Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Westport Umbrella Covered Claims.

i. Claim 13 includes negligence allegations that RCBO "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by [] and [], including but not limited to preventing or avoiding placement of [] and [] in a function or environment in which contact with children is an inherent aspect of that function or environment" (¶ 38) and "negligently failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from [] and []'s misconduct that created a risk of childhood sexual abuse, while Plaintiff [], a minor, was involved in activities sponsored, supervised, organized, or directed by [RCBO] or their agents and employees" (¶ 47) and that as a result of such negligence the plaintiff "suffered economic, physical, psychological and emotional harm" (¶ 41).

ii. Claim 140 includes negligence allegations that RCBO was "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 46) and that RCBO "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRATOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. Defendants further failed to take reasonable measures to prevent the childhood sexual assault, molestation and harassment of minors, including Plaintiff" (¶ 49), and that as a result of such negligence plaintiff "suffered and will continue to suffer physical, psychological, emotional and economic harm" (¶ 47).

*[Link-to-previous setting changed from off in original to on in modified.].*

iii. Claim 323 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [RCBO] failed to provide reasonable supervision of the DOE PERPETRATOR. [RCBO]further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff" (¶ 44), and that as a result of such negligence plaintiff "suffered the physical injury of sexual assault" (¶ 75).

iv. Claim 310 includes negligence allegations that RCBO "failed to provide reasonable supervision of the Perpetrator, failed to use reasonable care in investigating the Perpetrator, and failed to provide adequate warning to Plaintiff and Plaintiff's family of the Perpetrator's dangerous propensities and unfitness. Defendants further failed to take reasonable measures to prevent future sexual abuse" (¶ 23) and that RCBO "breached [its] duty to take reasonable protective measures to protect Plaintiff and other minor parishioners and/or students from the risk of childhood sexual abuse by the Perpetrator, or others, by failing to warn, train, or educate Plaintiff, Plaintiff's parents or guardians, and Defendants' employees, volunteers, representatives and/or agents about how to avoid, rebuff, minimize or respond to such a risk; by failing to warn, train, or educate Plaintiff, Plaintiff's parents or guardians, and Defendants' employees, volunteers, representatives and/or agents about how to report inappropriate or suspicious behaviors to law enforcement or others of Defendants' agents; by failing to train or educate Defendants' employees, volunteers, representatives and/or agents about their mandatory reporting obligations pursuant to California Penal Code § 11164, et seq.; and by failing to promulgate or enforce those

*[Link-to-previous setting changed from off in original to on in modified.].*

rules necessary to protect Plaintiff and other minor students or minor parishioners from the foreseeable risk of child sexual assault within Defendants' programs or on their premises" (¶ 31), and that as a result of such negligence plaintiff "suffered, and continues to suffer physical injury" (¶ 24).

v. Claim 388 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and that RCBO "failed to provide reasonable supervision of the DOE PERPETRATOR, failed to use reasonable care in investigating the DOE PERPETRATOR and failed to provide adequate warning to Plaintiff of the DOE PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent sexual assault, harassment, and molestation of children, including Plaintiff" (¶ 78), and that as a result of such negligence plaintiff "suffered the physical injury of sexual assault" (¶ 75).

399. ~~398.~~ The remaining Westport Umbrella Covered Claims not listed in Paragraph ~~395~~398 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Westport Umbrella Policy defines that term.

400. ~~399.~~ As a further example, Westport reserved its right to deny coverage under the Westport Umbrella Policy on the ground that "there is no indication that the limits underlying the [Westport Umbrella Policy] have been exhausted in accordance with the terms of the policies, Westport would have no immediate potential coverage obligations." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs ~~398-400~~401-402.

401. ~~400.~~ There is a substantial likelihood that the Westport Umbrella Covered Claims will exhaust the primary insurance underlying the Westport Umbrella Policy. The underlying Commercial

*[Link-to-previous setting changed from off in original to on in modified.].*

Union primary policy no. CF 9334-008 has limits of $300,000 per occurrence and $300,000 in aggregate (the "10/26/74-12/01/75 Commercial Union Policy"). The underlying Travelers primary policy no. 05 AL 802025 CMA has limits of $300,000 per occurrence and $300,000 in aggregate during the policy year 12/01/75-12/01/76 and $500,000 CSL during the policy year 12/01/76-12/01/77 (the "12/01/75-12/01/77 Travelers Policy"). The underlying CNA excess policy no. RDU 146 74 50 has a limit of $1,000,000 in the aggregate (the "10/26/74-12/01/77 CNA Policy"). There are at least 15 Westport Umbrella Covered Claims that ~~fall within~~trigger the coverage periods for the 10/26/74-12/01/75 Commercial Union Policy, the 12/01/75-12/01/77 Travelers Policy, the 10/26/74-12/01/77 CNA Policy, and the Westport Umbrella Policy.

402. ~~401.~~ Data from past clergy sexual abuse cases indicate the Westport Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/74-12/01/75 Commercial Union Policy, the 12/01/75-12/01/77 Travelers Policy and the 10/26/74-12/01/77 CNA Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. ~~The Official Committee of Unsecured Creditors ("UCC") sent Westport a letter~~On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent the UCC Westport Demand Letter on July 3, 2024, demanding Westport pay the UCC Westport Demand Amount, a sum of $308.9 million ~~(the "UCC Westport Demand Amount")~~, which is within the policy limits of the Westport Excess Policy and Westport Umbrella Policy, to resolve the Westport Excess Covered Claims and the Westport Umbrella Covered Claims alleged against RCBO ~~(the "UCC Demand Letter")~~. The UCC based the UCC Westport Demand Amount on its reasonable estimate of the value of the Westport Excess Covered Claims and Westport Umbrella Covered Claims. ~~Jury~~The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related ~~child sexual abuse~~ cases further confirm the Westport Excess Covered Claims and Westport Umbrella Covered Claims will exhaust the 10/26/74-12/01/75 Commercial Union Policy, the 12/01/75-12/01/77 Travelers Policy and the 10/26/74-12/01/77 CNA Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury

*[Link-to-previous setting changed from off in original to on in modified.].*

awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

403. ~~402.~~ Moreover, Westport must drop down and provide first-dollar coverage of the Westport Umbrella Covered Claims under the Westport Umbrella Policy because the underlying primary insurer Commercial Union is insolvent.

404. ~~403.~~ The asserted reservations of rights set forth in Paragraph ~~394~~397 do not provide Westport valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Westport Umbrella Covered Claims under the Westport Umbrella Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not ~~intentional conduct~~willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Westport Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Westport Policies have ~~either~~ been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Westport as required under the insurance, including providing notice of the claims, providing the status of the matters and providing requested materials.

405. ~~404.~~ RCBO sent Westport a letter on May 30, 2024, demanding Westport indemnify RCBO for the Westport Umbrella Covered Claims up to the policy limits under the Westport Umbrella Policy ("the ~~"~~Westport Umbrella Policy Limits Letter").

406. ~~405.~~ Westport failed to respond to the Westport Umbrella Policy Limits Letters confirming it will indemnify RCBO~~ in response to the Policy Limits Letter~~, and thereby has failed to provide the benefits of the Westport Umbrella Policy to RCBO.

407. ~~406.~~ On August 6, 2024, Westport responded to the UCC Westport Demand Letter declining to indemnify RCBO~~ in response to the UCC Demand Letter~~, and thereby has failed to provide the benefits of the Westport Umbrella Policy to RCBO.

408. ~~407.~~ The Westport Umbrella Policy provides coverage for, and does not exclude, the Westport Umbrella Covered Claims, and Westport is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the

*[Link-to-previous setting changed from off in original to on in modified.].*

Westport Umbrella Covered Claims.

409. ~~408.~~ The Westport Umbrella Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

410. ~~409.~~ An actual controversy of a justiciable nature presently exists between RCBO and Westport concerning the proper construction of the Westport Umbrella Policy, whether Westport's cited grounds for reservation of rights to deny defense and/or indemnity under the Westport Umbrella Policy are valid, whether there is any coverage for the Westport Umbrella Covered Claims under the Westport Umbrella Policy, whether Westport is obligated to drop down to provide first-dollar coverage for the Westport Umbrella Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, Westport's and RCBO's respective rights and obligations under the Westport Umbrella Policy with respect to the Westport Umbrella Covered Claims, and whether Westport should participate in settlement regarding the Westport Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

411. ~~410.~~ RCBO is entitled to a declaratory judgment stating Westport has issued the Westport Policies to RCBO, the Westport Umbrella Policy covers the Westport Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Westport Umbrella Covered Claims under the Westport Umbrella Policy, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Westport Umbrella Policy as alleged in Paragraph ~~398-400~~401-402, and the requirement that Westport drop down to provide defense and indemnity to RCBO regarding the Westport Umbrella Covered Claims.

**EIGHTEENTH CAUSE OF ACTION**

**(Declaratory Relief Against Travelers - Umbrella)**

412. ~~411.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~408~~411 of this Complaint as if said Paragraphs were set forth in full.

413. ~~412.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

*[Link-to-previous setting changed from off in original to on in modified.].*

414. 413. An actual and justiciable controversy exists between RCBO and Travelers with respect to whether Travelers is obligated to provide RCBO with defense and indemnity under the Travelers Umbrella Policies regarding the subset of the Suits for which RCBO alleges Travelers is obligated to provide RCBO with indemnity, as set forth in Paragraph 2322 (the "Travelers Umbrella Covered Claims").

415. 414. Pursuant to the terms of the Travelers Umbrella Policies, Travelers is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Travelers Umbrella Covered Claims.

416. 415. RCBO has fully performedsatisfied all conditions required under the Travelers Umbrella Policies, or is otherwise excused from doing so.

417. 416. RCBO's broker and/or RCBO tendered the Travelers Umbrella Covered Claims to Travelers on RCBO's behalf as set forth in Exhibit A.

418. 417. Travelers denied and/or failed to confirm it will defend or indemnify RCBO for the Travelers Umbrella Covered Claims.

419. 418. Travelers has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Travelers Umbrella Policies that, in turn, will exhaust those policies and trigger Travelers' obligation to provide the benefits of the Travelers Umbrella Policies to RCBO. Rather, Travelers reserved its right to deny coverage on a number of bases.

420. 419. Travelers' reservation of rights with respect to the Travelers Umbrella Policies includes Travelers' position that it may deny coverage on the basis that:

i. "Travelers reserves the right to assert that it has no, and can have no, duty to defend the RCBO under the Travelers Excess Policies and has no, and can have no, obligation to reimburse the RCBO with respect to defense and/or investigation costs incurred by the RCBO,"

ii. "Travelers reserves the right to assert that it has no obligation to indemnify the RCBO

*[Link-to-previous setting changed from off in original to on in modified.].*

pursuant to the Travelers Excess Policies for amounts that do not qualify as 'EXCESS NET LOSS,' as defined by the [Travelers Umbrella Policies],"

iii. "Travelers reserves the right to assert that the [Travelers Umbrella Policies] do not attach unless and until the RCBO becomes liable for damages with respect to a single accident or occurrence that results in an allocation of loss in excess of the total of the limits of the underlying policies,"

iv. "Travelers reserves the right to assert that it has no obligation to indemnify the RCBO with respect to a matter until the amount of the RCBO's obligation to pay has been finally determined either by judgment against the RCBO after actual trial or by written agreement of the RCBO, the claimant and Travelers,"

v. "Travelers reserves the right with respect to a matter to assert that the RCBO released Travelers pursuant to [a certain s]ettlement [a]greement from any liability in connection with that matter and the claims asserted by that [c]laimant,"

vi. Travelers may "rely on any policy provision that may be subsequently found to limit or preclude coverage,"

vii. Travelers may "initiate a declaratory relief action in order that it may have its coverage obligations, if any, to the RCBO in connection with a matter judicially determined."

421. ~~420.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Travelers has reserved its right to deny its defense and indemnity obligation under the Travelers Umbrella Policies on the grounds that it may "rely on any policy provision that may be subsequently found to limit or preclude coverage." Such reservation of rights as to defense and/or indemnity does not apply because the Travelers Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Travelers Umbrella Policies define that term, within the Travelers Umbrella ~~Policies's~~Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Travelers Umbrella Covered Claims.

*[Link-to-previous setting changed from off in original to on in modified.].*

i. Claim 10 includes negligence allegations that RCBO "[was] negligent in the hiring, retention, control, and supervision, of PERPETRATOR" (¶ 14) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 14), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 15).

ii. Claim 21 includes negligence allegations that RCBO "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 51) and "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRTOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent the childhood sexual assault, abuse, and harassment of minor children, including Plaintiff" (¶ 54), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical, psychological, emotional, and economic harm" (¶ 52).

iii. Claim 29 includes negligence allegations that RCBO "[was] at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 9) and "[was] further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 9), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 10).

iv. Claim 33 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 9) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest

*[Link-to-previous setting changed from off in original to on in modified.].*

while Plaintiff was on its property and engaged in its activities" (¶ 9), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 10).

v. Claim 35 includes negligence allegations that RCBO "[w]as] negligent in the hiring, retention, control, and supervision of PERPETRATOR" (¶ 9) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities and while PERPETRATOR was engaged in his duties and responsibilities of outreach as a Priest" (¶ 9), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 10).

422. ~~421.~~ The remaining Travelers Umbrella Covered Claims not listed in Paragraph ~~418~~421 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Travelers Umbrella Policies define that term.

423. ~~422.~~ As a further example, Travelers reserved its right to deny coverage under the Travelers Umbrella Policies on the ground that "do not attach unless and until the RCBO becomes liable for damages with respect to a single accident or occurrence that results in an allocation of loss in excess of the total of the limits of the underlying policies" and "to assert that it has no obligation to indemnify the RCBO with respect to a matter until the amount of the RCBO's obligation to pay has been finally determined either by judgment against the RCBO after actual trial or by written agreement of the RCBO, the claimant and Travelers." These reservations of rights as to defense and/or indemnity ~~does~~do not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs ~~421-422~~424-425.

424. ~~423.~~ There is a substantial likelihood that the Travelers Umbrella Covered Claims will exhaust the primary insurance underlying the Travelers Umbrella Policies. The underlying Travelers Primary policies nos. 05 AL 802025 CMA, 05 SM 90296 FCA, 05 SM 99094, and 05 SM 107459 FCA have limits of $1,000,000 CSL (the "12/01/77-12/01/81 Travelers Primary Policies"). The underlying

*[Link-to-previous setting changed from off in original to on in modified.].*

CNA excess policy no. UMB 006 46 71 53 has limits of $5,000,000 in aggregate (the "12/1/77-12/1/80 CNA Policy"). The underlying Westchester excess policy no. JU 8312510 has limits of $5,000,000 in aggregate (the "12/1/80-12/1/81 Westchester Policy"). There are at least 100 Travelers Umbrella Covered Claims that fall withintrigger the coverage periods for the 12/01/77-12/01/81 Travelers Primary Policies, the 12/1/77-12/1/80 CNA Policy, the 12/1/80-12/1/81 Westchester Policy and the Travelers Umbrella Policies.

425. 424. Data from past clergy sexual abuse cases indicate the Travelers Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 12/01/77-12/01/81 Travelers Primary Policies, the 12/1/77-12/1/80 CNA Policy and the 12/1/80-12/1/81 Westchester Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. The Official Committee of Unsecured Creditors ("On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC") sent Travelers a letterthe UCC Travelers Demand Letter on July 3, 2024, demanding Travelers pay a sum of $149.9 million (the "UCC Travelers Demand Amount"), which is within the policy limits of the Travelers Primary Policies and the Travelers Umbrella Policies, to resolve the Travelers Excess Covered Claims and the Travelers Umbrella Covered Claims alleged against RCBO (the "UCC Demand Letter"). The UCC based the UCC Travelers Demand Amount on its reasonable estimate of the value of the Travelers Excess Covered Claims and Travelers Umbrella Covered Claims. JuryThe $16 million jury verdict in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the Travelers Umbrella Covered Claims will exhaust the 12/01/77-12/01/81 Travelers Primary Policies, the 12/1/77-12/1/80 CNA Policy and the 12/1/80-12/1/81 Westchester Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

426. 425. The asserted reservations of rights set forth in Paragraph 417420 do not provide Travelers valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the

*[Link-to-previous setting changed from off in original to on in modified.].*

Travelers Umbrella Covered Claims under the Travelers Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not ~~intentional conduct~~willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Travelers Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Travelers Policies have ~~either~~ been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Travelers as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

427. ~~426.~~ RCBO sent Travelers a letter on May 30, 2024, demanding Travelers indemnify RCBO for the Travelers Umbrella Covered Claims up to the policy limits under the Travelers Umbrella Policies (the "Travelers Umbrella Policy Limits Letter").

428. ~~427.~~ Travelers failed to respond to the Travelers Umbrella Policy Limits ~~Letters~~Letter confirming it will indemnify RCBO ~~in response to the Policy Limits Letters~~, and thereby has failed to provide the benefits of the Travelers Umbrella Policies to RCBO.

429. ~~428.~~ On August 6, 2024, Travelers responded to the UCC Travelers Demand ~~letter~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the UCC Demand Letter~~, and thereby has failed to provide the benefits of the Travelers Umbrella Policies to RCBO.

430. ~~429.~~ The Travelers Umbrella Policies provide coverage for, and do not exclude, the Travelers Umbrella Covered Claims, and Travelers is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Travelers Umbrella Covered Claims.

431. ~~430.~~ The Travelers Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

432. ~~431.~~ An actual controversy of a justiciable nature presently exists between RCBO and Travelers concerning the proper construction of the Travelers Umbrella Policies, whether Travelers' cited grounds for reservation of rights to deny defense and/or indemnity under the Travelers Umbrella Policies are valid, whether there is any coverage for the Travelers Umbrella Covered Claims under the

*[Link-to-previous setting changed from off in original to on in modified.].*

Travelers Umbrella Policies, whether Travelers is obligated to drop down to provide first-dollar coverage for the Travelers Umbrella Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, Travelers' and RCBO's respective rights and obligations under the Travelers Umbrella Policies with respect to the Travelers Umbrella Covered Claims, and whether Travelers should participate in settlement regarding the Travelers Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

433. ~~432.~~ RCBO is entitled to a declaratory judgment stating Travelers has issued the Travelers Policies to RCBO, the Travelers Umbrella Policies cover the Travelers Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Travelers Umbrella Covered Claims under the Travelers Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Travelers Umbrella Policies as alleged in Paragraphs ~~421-422~~422-423, and the requirement that Travelers drop down to provide defense and indemnity to RCBO regarding the Travelers Umbrella Covered Claims.

**NINETEENTH CAUSE OF ACTION**

**(Declaratory Relief Against Pacific Employers - Umbrella)**

434. ~~433.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~430~~433 of this Complaint as if said Paragraphs were set forth in full.

435. ~~434.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

436. ~~435.~~ An actual and justiciable controversy exists between RCBO and Pacific Employers with respect to whether Pacific Employers is obligated to provide RCBO indemnity under the Pacific Employers Policy regarding the subset of the Suits for which RCBO alleges Pacific Employers is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~24~~23 (the "Pacific Employers Covered Claims").

437. ~~436.~~ Pursuant to the terms of the Pacific Employers Policy, Pacific Employers is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that

*[Link-to-previous setting changed from off in original to on in modified.].*

RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Pacific Employers Covered Claims.

438. ~~437.~~ RCBO has fully ~~performed~~satisfied all conditions required under the Pacific Employers Policy, or is otherwise excused from doing so.

439. ~~438.~~ RCBO's broker and/or RCBO tendered the Pacific Employers Covered Claims to Pacific Employers on RCBO's behalf as set forth in Exhibit A.

440. ~~439.~~ Pacific Employers agreed to provide defense to RCBO for certain of the Pacific Employers Covered Claims. However, Pacific Employers denied and/or failed to confirm it will indemnify RCBO for the Pacific Employers Covered Claims.

441. ~~440.~~ Pacific Employers has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Pacific Employers Policy that, in turn, will exhaust those policies and trigger Pacific Employers' obligation to provide the benefits of the Pacific Employers Policy to RCBO. Rather, Pacific Employers reserved its right to deny coverage on a number of bases.

442. ~~441.~~ Pacific Employers' reservation of rights includes Pacific Employers' position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the [Pacific Employers Policy]."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. "[The Pacific Employers Policy] may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

iv. RCBO "has not met its burden in establishing that the limits of all underlying insurance, including any self-insured periods, have been properly and completely exhausted."

443. ~~442.~~ In addition, Pacific Employers reserved further rights to deny coverage as follows:

i. The right "to decline coverage on the basis that the [Employers] Policy is lost or

*[Link-to-previous setting changed from off in original to on in modified.].*

otherwise missing."

ii. Employers "reserves its rights to the extent the [Employers] Policy is exhausted and [it has] no further defense or indemnity obligations under [Employers] Policy."

iii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iv. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, [Pacific Employers] reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

444. ~~443.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Pacific Employers has reserved its right to "assert any applicable coverage defense in the future." Such reservation of rights as to defense and/or indemnity does not apply because the Pacific Employers Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Pacific Employers Policy defines that term, within the Pacific Employers Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Pacific Employers Covered Claims.

i. Claim 51 includes negligence allegations that RCBO "negligently failed to supervise DOE 5 in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 72) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 54), and that such negligence caused the plaintiff bodily injury, including "personal physical injury as well as great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life." (¶ 77).

ii. Claim 118 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATORS in his positions of trust and authority as an employee,

*[Link-to-previous setting changed from off in original to on in modified.].*

agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault, and severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 81).

iii. Claim 127 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 88).

iv. Claim 130 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 88).

v. Claim 171 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee,

*[Link-to-previous setting changed from off in original to on in modified.].*

agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "suffer the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 88).

445. ~~444.~~ The remaining Pacific Employers Covered Claims not listed in Paragraph ~~441~~444 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Pacific Employers Policy defines that term.

446. ~~445.~~ Further, Pacific Employers denied coverage under the Pacific Employers Policy on the basis that the underlying insurance has not been exhausted. This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs ~~444-446~~445-446.

447. ~~446.~~ There is a substantial likelihood that the Pacific Employers Covered Claims will exhaust the primary insurance underlying the Pacific Employers Policy. The underlying Centennial primary policy no. 287-00-46-36 has a limit of $1,000,000 in aggregate (the "12/01/84-12/01/85 Centennial Primary Policy"). The underlying Centennial excess policy no. 287-00-46-36 has a limit of $15,000,000 in aggregate (the "12/01/84-12/01/85 Centennial Excess Policy"). Centennial Insurance Company, which issued the 12/01/84-12/01/85 Centennial Primary Policy and the 12/01/84-12/01/85 Centennial Excess Policy, is in liquidation. The underlying Travelers umbrella policy no. 005 FF 1390 BCA has a limit of $10,000,000 in aggregate (the "12/01/84-12/01/85 Travelers Umbrella Policy"). There are at least 18 Pacific Employers Covered Claims that ~~fall within~~trigger the coverage periods for the 12/01/84-12/01/85 Centennial Primary Policy, the 12/01/84-12/01/85 Centennial Excess Policy, the 12/01/84-12/01/85 Travelers Umbrella Policy, and the Pacific Employers Policy.

448. ~~447.~~ Data from past clergy sexual abuse cases indicate the Pacific Employers Covered

*[Link-to-previous setting changed from off in original to on in modified.].*

Claims will far exceed the aggregate limits of the 12/01/84-12/01/85 Centennial Primary Policy, the 12/01/84-12/01/85 Centennial Excess Policy, and the 12/01/84-12/01/85 Travelers Umbrella Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. The Official Committee of Unsecured Creditors ("UCC") sent Pacific Employers, INA, Pacific Indemnity, and Westchester (collectively, "Chubb") a letterOn April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Chubb the UCC Chubb Demand Letter on July 3, 2024, demanding they pay the UCC Chubb Demand Amount, a sum of $219.2 million (the "UCC Chubb Demand Amount"), which is within the policy limits of the Chubb Policies, including the Pacific Employers Policy, to resolve the Pacific Employers Covered Claims alleged against RCBO (the "UCC Chubb Demand Letter"). The UCC based the UCC Chubb Demand Amount on its reasonable estimate of the value of the claims covered by the Chubb policies, including the Pacific Employers Covered Claims. JuryThe $16 million jury verdict in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the Pacific Employers Covered Claims will exhaust the underlying primary and excess policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

449. 448. Moreover, Pacific Employers must drop down and provide first-dollar coverage of the Pacific Employers Covered Claims under the Pacific Employers Policy because the underlying primary and excess insurer, Centennial, is insolvent.

450. 449. The asserted reservations of rights set forth in Paragraphs 439442 and 440443 do not provide Pacific Employers valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Pacific Employers Covered Claims under the Pacific Employers Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conductwillful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Pacific Employers Covered Claims present covered claims which are legally insurable.

*[Link-to-previous setting changed from off in original to on in modified.].*

Further, RCBO has not received any notice that the limits of liability of the Pacific Employers Policies have ~~either~~ been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Pacific Employers as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

451. ~~450.~~ RCBO sent Pacific Employers a letter on May 30, 2024, demanding Pacific Employers indemnify RCBO for the Pacific Employers Covered Claims up to the policy limits under the Pacific Employers Policy (the "Pacific Employers Policy Limits Letter").

452. ~~451.~~ Pacific Employers failed to respond to the Pacific Employers Policy Limits Letter confirming it will indemnify RCBO ~~in response to the Policy Limits Letter~~, and thereby has failed to provide the benefits of the Pacific Employers Policy to RCBO.

453. ~~452.~~ On August 6, 2024, Pacific Employers responded to the UCC Chubb Demand ~~letter~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the UCC Chubb Demand Letter~~, and thereby has failed to provide the benefits of the Pacific Employers Policy to RCBO.

454. ~~453.~~ The Pacific Employers Policy provides coverage for, and does not exclude, the Pacific Employers Covered Claims, and Pacific Employers is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Pacific Employers Covered Claims.

455. ~~454.~~ The Pacific Employers Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

456. ~~455.~~ An actual controversy of a justiciable nature presently exists between RCBO and Pacific Employers concerning the proper construction of the Pacific Employers Policy, whether Pacific Employers' cited grounds for reservation of rights to deny defense and/or indemnity under the Pacific Employers Policy are valid, whether there is any coverage for the Pacific Employers Covered Claims under the Pacific Employers Policy, whether Pacific Employers is obligated to drop down to provide first-dollar coverage for the Pacific Employers Covered Claims because the underlying primary insurance is exhausted, Pacific Employers' and RCBO's respective rights and obligations under the Pacific Employers Policy with respect to Pacific Employers Covered Claims, and whether Pacific

*[Link-to-previous setting changed from off in original to on in modified.].*

Employers should participate in settlement regarding the Pacific Employers Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

457. ~~456.~~ RCBO is entitled to a declaratory judgment stating Pacific Employers has issued the Pacific Employers Policy to RCBO, the Pacific Employers Policy covers the Pacific Employers Covered Claims, and RCBO is entitled to both full defense and indemnity regarding the Pacific Employers Covered Claims under the Pacific Employers Policy, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Pacific Employers Policy as alleged in Paragraphs ~~444-446~~447-448, and the requirement that Pacific Employers drop down to provide defense and indemnity to RCBO regarding the Pacific Employers Covered Claims.

**TWENTIETH CAUSE OF ACTION**

**(Declaratory Relief Against Lloyd's - Umbrella)**

458. ~~457.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~454~~457 of this Complaint as if said Paragraphs were set forth in full.

459. ~~458.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

460. ~~459.~~ An actual and justiciable controversy exists between RCBO and Lloyd's Umbrella with respect to whether Lloyd's Umbrella is obligated to provide RCBO with defense and indemnity under the Lloyd's Umbrella Policies regarding the subset of the Suits for which RCBO alleges Lloyd's Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~30~~29 (the "Lloyd's Umbrella Covered Claims").

461. ~~460.~~ Pursuant to the terms of the Lloyd's Umbrella Policies, Lloyd's Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Lloyd's Umbrella Covered Claims.

462. ~~461.~~ RCBO has fully ~~performed~~satisfied all conditions required under the Lloyd's Umbrella Policies, or is otherwise excused from doing so.

463. ~~462.~~ RCBO's broker and/or RCBO tendered the Lloyd's Umbrella Covered Claims to

*[Link-to-previous setting changed from off in original to on in modified.].*

Lloyd's Umbrella on RCBO's behalf as set forth in Exhibit A.

464. ~~463.~~ Lloyd's Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the Lloyd's Umbrella Covered Claims.

465. ~~464.~~ Lloyd's Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Lloyd's Umbrella Policies that, in turn, will exhaust those policies and trigger Lloyd's Umbrella's obligation to provide the benefits of the Lloyd's Umbrella Policies to RCBO. Rather, Lloyd's Umbrella reserved its right to deny coverage on a number of bases.

466. ~~465.~~ Lloyd's Umbrella's reservation of rights includes Lloyd's Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Lloyd's is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Lloyd's' coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Lloyd's] Policies."

iv. "To the extent the [Lloyd's] Second Excess Umbrella Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Lloyd's "reserve[s] all rights based upon the number and timing of occurrences. It is [Lloyd's'] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance

*[Link-to-previous setting changed from off in original to on in modified.].*

limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Lloyd's] Policies."

viii. Lloyd's "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

467. ~~466.~~ In addition, Lloyd's Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Lloyd's "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Lloyd's thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Lloyd's] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the

*[Link-to-previous setting changed from off in original to on in modified.].*

[Lloyd's] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Lloyd's reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Lloyd's reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Lloyd's'] agent for notice of claims provided in the Policy Declarations."

x. Lloyd's reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Lloyd's] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Lloyd's and RCBO "in ~~our~~or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Lloyd's] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Lloyd's] Policies."

xiv. Lloyd's reserves its rights "pursuant to the [Lloyd's] Policies' Other Insurance Condition."

*[Link-to-previous setting changed from off in original to on in modified.].*

xv. Lloyd's reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

468. ~~467.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Lloyd's Umbrella has reserved its right to deny its defense and indemnity obligation under the Lloyd's Umbrella Policies on the grounds that the Lloyd's Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Lloyd's Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Lloyd's Umbrella Policies define that term, within the Lloyd's Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Lloyd's Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence

*[Link-to-previous setting changed from off in original to on in modified.].*

caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

469. ~~468.~~ The remaining Lloyd's Umbrella Covered Claims not listed in Paragraph ~~465~~468 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Lloyd's Umbrella Policies define that term.

*[Link-to-previous setting changed from off in original to on in modified.].*

470. ~~469.~~ As a further example, Lloyd's Umbrella reserved its right to deny coverage under the Lloyd's Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs ~~468-469~~471-472.

471. ~~470.~~ There is a substantial likelihood that the Lloyd's Umbrella Covered Claims will exhaust the primary insurance underlying the Lloyd's Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 Lloyd's Umbrella Covered Claims that ~~fall within~~trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, 3/12/62-10/25/66 Lloyd's Excess Policies and the Lloyd's Umbrella Policies.

472. ~~471.~~ Data from past clergy sexual abuse cases indicate the Lloyd's Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. ~~The Official Committee of Unsecured Creditors ("~~On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC~~")~~ sent Lloyd's Umbrella ~~a letter~~ the UCC Lloyd's Demand Letter on July 3, 2024, demanding Lloyd's Umbrella pay the UCC Lloyd's Demand Amount, a sum of $42.8 million ~~(the "UCC Lloyd's Demand Amount")~~, which is within the policy limits of the Lloyd's Excess Policies and the Lloyd's Umbrella Policies, to resolve the Lloyd's Umbrella Covered Claims and the claims falling within the Lloyd's Umbrella Policies coverage period alleged against RCBO ~~(the "UCC Lloyd's Demand Letter")~~. The UCC based the UCC Lloyd's Demand Amount ~~as~~on a reasonable estimate of the value of the Lloyd's Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. ~~Jury~~The $16 million jury verdict

*[Link-to-previous setting changed from off in original to on in modified.].*

in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the Lloyd's Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

473. 472. The asserted reservations of rights set forth in Paragraphs 463466 and 464467 do not provide Lloyd's Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Lloyd's Umbrella Covered Claims under the Lloyd's Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conductwillful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Lloyd's Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Lloyd's Umbrella Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Lloyd's Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Lloyd's Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

474. 473. RCBO sent Lloyd's Umbrella a letter on May 30, 2024, demanding Lloyd's Umbrella indemnify RCBO for the Lloyd's Umbrella Covered Claims up to the policy limits under the Lloyd's Umbrella Policies (the "Lloyd's Umbrella Policy Limits Letter").

475. 474. On July 1, 2024, Lloyd's Umbrella responded to the Lloyd's Umbrella Policy Limits Letter and declined to indemnify RCBO in response to the Policy Limits Letter, and thereby has failed to provide the benefits of the Lloyd's Umbrella Policies to RCBO.

476. 475. On August 6, 2024, Lloyd's Umbrella responded to the UCC Lloyd's Demand

*[Link-to-previous setting changed from off in original to on in modified.].*

letterLetter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Lloyd's Demand Letter, and thereby has failed to provide the benefits of the Lloyd's Umbrella Policies to RCBO.

477. 476. The Lloyd's Umbrella Policies provide coverage for, and do not exclude, the Lloyd's Umbrella Covered Claims, and Lloyd's Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Lloyd's Umbrella Covered Claims.

478. 477. The Lloyd's Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

479. 478. An actual controversy of a justiciable nature presently exists between RCBO and Lloyd's Umbrella concerning the proper construction of the Lloyd's Umbrella Policies, whether Lloyd's Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the Lloyd's Umbrella Policies are valid, whether there is any coverage for the Lloyd's Umbrella Covered Claims under the Lloyd's Umbrella Policies, whether Lloyd's Umbrella is obligated to drop down to provide first-dollar coverage for the Lloyd's Umbrella Covered Claims because the underlying primary insurance is exhausted, Lloyd's Umbrella's and RCBO's respective rights and obligations under the Lloyd's Umbrella Policies with respect to the Lloyd's Umbrella Covered Claims, and whether Lloyd's Umbrella should participate in settlement regarding the Lloyd's Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

480. 479. RCBO is entitled to a declaratory judgment stating Lloyd's Umbrella has issued the Lloyd's Umbrella Policies to RCBO, the Lloyd's Umbrella Policies cover the Lloyd's Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Lloyd's Umbrella Covered Claims under the Lloyd's Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Lloyd's Umbrella Policies as alleged in Paragraphs 468-469471-472, and the requirement that Lloyd's Umbrella drop down to provide defense and indemnity to RCBO regarding the Lloyd's Umbrella Covered Claims.

## TWENTY-FIRST CAUSE OF ACTION

*[Link-to-previous setting changed from off in original to on in modified.].*

**(Declaratory Relief Against Anglo French - Umbrella)**

481. ~~480.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~477~~480 of this Complaint as if said Paragraphs were set forth in full.

482. ~~481.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

483. ~~482.~~ An actual and justiciable controversy exists between RCBO and Anglo French Umbrella with respect to whether Anglo French Umbrella is obligated to provide RCBO with defense and indemnity under the Anglo French Umbrella Policies regarding the subset of the Suits for which RCBO alleges Anglo French Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~25~~24 (the "Anglo French Umbrella Covered Claims").

484. ~~483.~~ Pursuant to the terms of the Anglo French Umbrella Policies, Anglo French Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Anglo French Umbrella Covered Claims.

485. ~~484.~~ RCBO has fully ~~performed~~satisfied all conditions required under the Anglo French Umbrella Policies, or is otherwise excused from doing so.

486. ~~485.~~ RCBO's broker and/or RCBO tendered the Anglo French Umbrella Covered Claims to Anglo French Umbrella on RCBO's behalf as set forth in Exhibit A.

487. ~~486.~~ Anglo French Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the Anglo French Umbrella Covered Claims.

488. ~~487.~~ Anglo French Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Anglo French Umbrella Policies that, in turn, will exhaust those policies and trigger Anglo French Umbrella's obligation to provide the benefits of the Anglo French Umbrella Policies to RCBO. Rather, Anglo French Umbrella reserved its right to deny coverage on a number of bases.

489. ~~488.~~ Anglo French Umbrella's reservation of rights includes Anglo French Umbrella's position that it may deny coverage on the following bases:

*[Link-to-previous setting changed from off in original to on in modified.].*

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Anglo French is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Anglo French's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Anglo French] Policies."

iv. "To the extent the [Anglo French Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Anglo French "reserve[s] all rights based upon the number and timing of occurrences. It is [Anglo French's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Anglo French] Policies."

viii. Anglo French "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

490. ~~489.~~ In addition, Anglo French Umbrella reserved further rights to deny coverage as follows:

*[Link-to-previous setting changed from off in original to on in modified.].*

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Anglo French "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Anglo French thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Anglo French] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Anglo French Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Anglo French reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Anglo French reserves its rights "with respect to the Conditions pertaining to Notice"

*[Link-to-previous setting changed from off in original to on in modified.].*

requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Anglo French's] agent for notice of claims provided in the Policy Declarations."

x. Anglo French reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Anglo French] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Anglo French and RCBO "in ~~our~~or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Anglo French] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Anglo French Umbrella] Policies."

xiv. Anglo French reserves its rights "pursuant to the [Anglo French] Policies' Other Insurance Condition."

xv. Anglo French reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

491. ~~490.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Anglo French Umbrella has reserved its right to deny its defense and indemnity obligation under the Anglo French Umbrella Policies on the grounds that the Anglo French Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Anglo

*[Link-to-previous setting changed from off in original to on in modified.].*

French Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Anglo French Umbrella Policies define that term, within the Anglo French Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Anglo French Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence

*[Link-to-previous setting changed from off in original to on in modified.].*

caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

492. ~~491.~~ The remaining Anglo French Umbrella Covered Claims not listed in Paragraph ~~488~~491 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Anglo French Umbrella Policies define that term.

493. ~~492.~~ As a further example, Anglo French Umbrella reserved its right to deny coverage under the Anglo French Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs ~~491-492~~494-495.

494. ~~493.~~ There is a substantial likelihood that the Anglo French Umbrella Covered Claims will exhaust the primary insurance underlying the Anglo French Umbrella Policies. The underlying

*[Link-to-previous setting changed from off in original to on in modified.].*

Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 Anglo French Umbrella Covered Claims that fall withintrigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the Anglo French Umbrella Policies.

495. 494. Data from past clergy sexual abuse cases indicate the Anglo French Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The Official Committee of Unsecured Creditors ("UCC") sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants (the "UCC Demand Letter"). Upon information and belief, Anglo French Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Anglo French Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million (the "UCC Demand Amount"), which is within the policy limits of the of the Lloyd's Excess Policies and the Anglo French Umbrella Policies, to resolve the Anglo French Umbrella Covered Claims and the claims falling within the Anglo French Umbrella coverage period alleged against RCBO. The UCC based thethis UCC Lloyd's Demand Amount ason a reasonable estimate of the value of the Anglo French Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. JuryThe $16 million jury verdict in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the Anglo French Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess

*[Link-to-previous setting changed from off in original to on in modified.].*

Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

496. 495. The asserted reservations of rights set forth in Paragraphs 486489 and 487490 do not provide Anglo French Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Anglo French Umbrella Covered Claims under the Anglo French Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conductwillful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Anglo French Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Anglo French Umbrella Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Anglo French Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Anglo French Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

497. 496. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants a letterthe Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Anglo French Umbrella Covered Claims up to the policy limits under the Anglo French Umbrella Policies (the "Policy Limits Letter"). Upon information and belief, Anglo French Umbrella received the Lloyd's Policy Limits LetterLetters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Anglo French Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

498. 497. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits LetterLetters and declined to indemnify RCBO in response to the Policy Limits Letter, and Anglo French Umbrella thereby has failed to provide the benefits of the Anglo French Umbrella Policy to RCBO.

*[Link-to-previous setting changed from off in original to on in modified.].*

499. 498. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand letterLetter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Demand Letter. Anglo French thereby has failed to provide the benefits of the Anglo French Umbrella Policies to RCBO.

500. 499. The Anglo French Umbrella Policies provide coverage for, and do not exclude, the Anglo French Umbrella Covered Claims, and Anglo French Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Anglo French Umbrella Covered Claims.

501. 500. The Anglo French Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

502. 501. An actual controversy of a justiciable nature presently exists between RCBO and Anglo French Umbrella concerning the proper construction of the Anglo French Umbrella Policies, whether Anglo French Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the Anglo French Umbrella Policies are valid, whether there is any coverage for the Anglo French Umbrella Covered Claims under the Anglo French Umbrella Policies, whether Anglo French Umbrella is obligated to drop down to provide first-dollar coverage for the Anglo French Umbrella Covered Claims because the underlying primary insurance is exhausted, Anglo French Umbrella's and RCBO's respective rights and obligations under the Anglo French Umbrella Policies with respect to the Anglo French Umbrella Covered Claims, and whether Anglo French Umbrella should participate in settlement regarding the Anglo French Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

503. 502. RCBO is entitled to a declaratory judgment stating Anglo French Umbrella has issued the Anglo French Umbrella Policies to RCBO, the Anglo French Umbrella Policies cover the Anglo French Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Anglo French Umbrella Covered Claims under the Anglo French Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Anglo French Umbrella Policies as alleged in Paragraphs 491-492494-495, and the requirement that Anglo French Umbrella drop down to provide defense and indemnity to RCBO regarding the Anglo

*[Link-to-previous setting changed from off in original to on in modified.].*

French Umbrella Covered Claims.

## TWENTY-SECOND CAUSE OF ACTION

**(Declaratory Relief Against Excess Insurance Co. - Umbrella)**

504. ~~503.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~500~~503 of this Complaint as if said Paragraphs were set forth in full.

505. ~~504.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

506. ~~505.~~ An actual and justiciable controversy exists between RCBO and Excess Insurance Co. Umbrella with respect to whether Excess Insurance Co. Umbrella is obligated to provide RCBO with defense and indemnity under the Excess Insurance Co. Umbrella Policies regarding the subset of the Suits for which RCBO alleges Excess Insurance Co. Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~26~~25 (the "Excess Insurance Co. Umbrella Covered Claims").

507. ~~506.~~ Pursuant to the terms of the Excess Insurance Co. Umbrella Policies, Excess Insurance Co. Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Excess Insurance Co. Umbrella Covered Claims.

508. ~~507.~~ RCBO has fully ~~performed~~satisfied all conditions required under the Excess Insurance Co. Umbrella Policies, or is otherwise excused from doing so.

509. ~~508.~~ RCBO's broker and/or RCBO tendered the Excess Insurance Co. Umbrella Covered Claims to Excess Insurance Co. Umbrella on RCBO's behalf as set forth in Exhibit A.

510. ~~509.~~ Excess Insurance Co. Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the Excess Insurance Co. Umbrella Covered Claims.

511. ~~510.~~ Excess Insurance Co. Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Excess Insurance Co. Umbrella Policies that, in turn, will exhaust those policies and trigger Excess Insurance Co. Umbrella's obligation to provide the benefits of the Excess Insurance Co. Umbrella Policies to RCBO. Rather, Excess Insurance Co. Umbrella reserved its right to deny coverage

*[Link-to-previous setting changed from off in original to on in modified.].*

on a number of bases.

512. ~~511.~~ Excess Insurance Co. Umbrella's reservation of rights includes Excess Insurance Co. Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Excess Insurance Co. is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Excess Insurance Co.'s coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Excess Insurance Co.] Policies."

iv. "To the extent the [Excess Insurance Co. Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Excess Insurance Co. "reserve[s] all rights based upon the number and timing of occurrences. It is [Excess Insurance Co.'s] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Excess Insurance Co.] Policies."

viii. Excess Insurance Co. "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

*[Link-to-previous setting changed from off in original to on in modified.].*

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

513. ~~512.~~ In addition, Excess Insurance Co. Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Excess Insurance Co. "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Excess Insurance Co. thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Excess Insurance Co.] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Excess Insurance Co. Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or

*[Link-to-previous setting changed from off in original to on in modified.].*

counseling services."

viii. Excess Insurance Co. its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Excess Insurance Co. reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Excess Insurance Co.'s] agent for notice of claims provided in the Policy Declarations."

x. Excess Insurance Co. reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Excess Insurance Co.] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Excess Insurance Co. and RCBO "in ~~our~~or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Excess Insurance Co.] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Excess Insurance Co. Umbrella] Policies."

xiv. Excess Insurance Co. reserves its rights "pursuant to the [Excess Insurance Co.] Policies' Other Insurance Condition."

xv. Excess Insurance Co. reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

514. ~~513.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Excess Insurance Co. Umbrella has reserved its right to deny its defense

*[Link-to-previous setting changed from off in original to on in modified.].*

and indemnity obligation under the Excess Insurance Co. Umbrella Policies on the grounds that the Excess Insurance Co. Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Excess Insurance Co. Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Excess Insurance Co. Umbrella Policies define that term, within the Excess Insurance Co. Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Excess Insurance Co. Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly

*[Link-to-previous setting changed from off in original to on in modified.].*

and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

515. ~~514.~~ The remaining Excess Insurance Co. Umbrella Covered Claims not listed in Paragraph ~~511~~514 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Excess Insurance Co. Umbrella Policies define that term.

516. ~~515.~~ As a further example, Excess Insurance Co. Umbrella reserved its right to deny coverage under the Excess Insurance Co. Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply

*[Link-to-previous setting changed from off in original to on in modified.].*

because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs ~~514–515~~517-518.

517. ~~516.~~ There is a substantial likelihood that the Excess Insurance Co. Umbrella Covered Claims will exhaust the primary insurance underlying the Excess Insurance Co. Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 Excess Insurance Co. Umbrella Covered Claims that ~~fall within~~trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the Excess Insurance Co. Umbrella Policies.

518. ~~517.~~ Data from past clergy sexual abuse cases indicate the Excess Insurance Co. Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The ~~Official Committee of Unsecured Creditors ("~~UCC~~")~~ sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants ~~(the "UCC Demand Letter")~~. Upon information and belief, Excess Insurance Co. Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Excess Insurance Co. Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million ~~(the "UCC Demand Amount")~~, which is within the policy limits of the of the Lloyd's Excess Policies and the Excess Insurance Co. Umbrella Policies, to resolve the Excess Insurance Co. Umbrella Covered Claims and the claims falling within the Excess Insurance Co. Umbrella coverage period alleged against RCBO. The UCC based

*[Link-to-previous setting changed from off in original to on in modified.].*

~~the~~this UCC Lloyd's Demand Amount ~~as~~on a reasonable estimate of the value of the Excess Insurance Co. Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. ~~Jury~~The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related ~~child sexual abuse~~ cases further confirm the Excess Insurance Co. Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

519. ~~518.~~ The asserted reservations of rights set forth in Paragraphs ~~509~~512 and ~~510~~513 do not provide Excess Insurance Co. Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Excess Insurance Co. Umbrella Covered Claims under the Excess Insurance Co. Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not ~~intentional conduct~~willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Excess Insurance Co. Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Excess Insurance Co. Umbrella Policies have ~~either~~ been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Excess Insurance Co. Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Excess Insurance Co. Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

520. ~~519.~~ RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants ~~a letter~~the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Excess Insurance Co. Umbrella Covered Claims up to the policy limits under the Excess Insurance Co. Umbrella Policies ~~(the "Policy Limits Letter")~~. Upon information and belief, Excess Insurance Co. Umbrella received the Lloyd's Policy Limits ~~Letter~~Letters as a subscriber to the same slips as the Lloyd's Excess and/or

*[Link-to-previous setting changed from off in original to on in modified.].*

Lloyd's Umbrella Defendants, and/or because Excess Insurance Co. Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

521. ~~520.~~ On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits ~~Letter~~Letters and declined to indemnify RCBO ~~in response to the Policy Limits Letter~~, and Excess Insurance Co. Umbrella thereby has failed to provide the benefits of the Excess Insurance Co. Umbrella Policy to RCBO.

522. ~~521.~~ On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand ~~letter~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the UCC Demand Letter~~. Excess Insurance Co. thereby has failed to provide the benefits of the Excess Insurance Co. Umbrella Policies to RCBO.

523. ~~522.~~ The Excess Insurance Co. Umbrella Policies provide coverage for, and do not exclude, the Excess Insurance Co. Umbrella Covered Claims, and Excess Insurance Co. Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Excess Insurance Co. Umbrella Covered Claims.

524. ~~523.~~ The Excess Insurance Co. Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

525. ~~524.~~ An actual controversy of a justiciable nature presently exists between RCBO and Excess Insurance Co. Umbrella concerning the proper construction of the Excess Insurance Co. Umbrella Policies, whether Excess Insurance Co. Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the Excess Insurance Co. Umbrella Policies are valid, whether there is any coverage for the Excess Insurance Co. Umbrella Covered Claims under the Excess Insurance Co. Umbrella Policies, whether Excess Insurance Co. Umbrella is obligated to drop down to provide first-dollar coverage for the Excess Insurance Co. Umbrella Covered Claims because the underlying primary insurance is exhausted, Excess Insurance Co. Umbrella's and RCBO's respective rights and obligations under the Excess Insurance Co. Umbrella Policies with respect to the Excess Insurance Co. Umbrella Covered Claims, and whether Excess Insurance Co. Umbrella should participate in settlement regarding the Excess Insurance Co. Umbrella Covered Claims. The controversy is of

*[Link-to-previous setting changed from off in original to on in modified.].*

sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

526. ~~525.~~ RCBO is entitled to a declaratory judgment stating Excess Insurance Co. Umbrella has issued the Excess Insurance Co. Umbrella Policies to RCBO, the Excess Insurance Co. Umbrella Policies cover the Excess Insurance Co. Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Excess Insurance Co. Umbrella Covered Claims under the Excess Insurance Co. Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Excess Insurance Co. Umbrella Policies as alleged in Paragraphs ~~514-515~~516-517, and the requirement that Excess Insurance Co. Umbrella drop down to provide defense and indemnity to RCBO regarding the Excess Insurance Co. Umbrella Covered Claims.

**TWENTY-THIRD CAUSE OF ACTION**

~~526.~~ **(Declaratory Relief Against English & American - Umbrella)**

527. RCBO realleges and incorporates herein Paragraphs 1 through ~~523~~526 of this Complaint as if said Paragraphs were set forth in full.

528. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

529. An actual and justiciable controversy exists between RCBO and English & American Umbrella with respect to whether English & American Umbrella is obligated to provide RCBO with defense and indemnity under the English & American Umbrella Policies regarding the subset of the Suits for which RCBO alleges English & American Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~27~~26 (the "English & American Umbrella Covered Claims").

530. Pursuant to the terms of the English & American Umbrella Policies, English & American Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the English & American Umbrella Covered Claims.

531. RCBO has fully ~~performed~~satisfied all conditions required under the English & American Umbrella Policies, or is otherwise excused from doing so.

532. RCBO's broker and/or RCBO tendered the English & American Umbrella Covered

*[Link-to-previous setting changed from off in original to on in modified.].*

Claims to English & American Umbrella on RCBO's behalf as set forth in Exhibit A.

533. English & American Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the English & American Umbrella Covered Claims.

534. English & American Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the English & American Umbrella Policies that, in turn, will exhaust those policies and trigger English & American Umbrella's obligation to provide the benefits of the English & American Umbrella Policies to RCBO. Rather, English & American Umbrella reserved its right to deny coverage on a number of bases.

535. English & American Umbrella's reservation of rights includes English & American Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. English & American is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. English & American's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [English & American] Policies."

iv. "To the extent the [English & American Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. English & American "reserve[s] all rights based upon the number and timing of occurrences. It is [English & American's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be

*[Link-to-previous setting changed from off in original to on in modified.].*

allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [English & American] Policies."

viii. English & American "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

536. In addition, English & American Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. English & American "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" English & American thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not

*[Link-to-previous setting changed from off in original to on in modified.].*

arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [English & American] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [English & American Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. English & American its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. English & American reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [English & American's] agent for notice of claims provided in the Policy Declarations."

x. English & American reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [English & American] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by English & American and RCBO "in ~~our~~or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [English & American] may preclude coverage."

*[Link-to-previous setting changed from off in original to on in modified.].*

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [English & American Umbrella] Policies."

xiv. English & American reserves its rights "pursuant to the [English & American] Policies' Other Insurance Condition."

xv. English & American reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

537. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, English & American Umbrella has reserved its right to deny its defense and indemnity obligation under the English & American Umbrella Policies on the grounds that the English & American Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the English & American Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the English & American Umbrella Policies define that term, within the English & American Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the English & American Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

*[Link-to-previous setting changed from off in original to on in modified.].*

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and

*[Link-to-previous setting changed from off in original to on in modified.].*

economic harm" (¶ 68).

538. The remaining English & American Umbrella Covered Claims not listed in Paragraph ~~534~~537 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the English & American Umbrella Policies define that term.

539. As a further example, English & American Umbrella reserved its right to deny coverage under the English & American Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs ~~537-538~~540-541.

540. There is a substantial likelihood that the English & American Umbrella Covered Claims will exhaust the primary insurance underlying the English & American Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 English & American Umbrella Covered Claims that ~~fall within~~trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the English & American Umbrella Policies.

541. Data from past clergy sexual abuse cases indicate the English & American Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO

*[Link-to-previous setting changed from off in original to on in modified.].*

cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The Official Committee of Unsecured Creditors ("UCC") sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants (the "UCC Demand Letter"). Upon information and belief, English & American Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because English & American Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million (the "UCC Demand Amount"), which is within the policy limits of the of the Lloyd's Excess Policies and the English & American Umbrella Policies, to resolve the English & American Umbrella Covered Claims and the claims falling within the English & American Umbrella coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount ason a reasonable estimate of the value of the English & American Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. JuryThe $16 million jury verdict in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the English & American Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

542. The asserted reservations of rights set forth in Paragraphs 532535 and 533536 do not provide English & American Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the English & American Umbrella Covered Claims under the English & American Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conductwillful misconduct) by RCBO resulting in claimed

*[Link-to-previous setting changed from off in original to on in modified.].*

"bodily injury" as defined in the insurance and thus the English & American Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the English & American Umbrella Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to English & American Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with English & American Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

543. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants a letterthe Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the English & American Umbrella Covered Claims up to the policy limits under the English & American Umbrella Policies (the "Policy Limits Letter"). Upon information and belief, English & American Umbrella received the Lloyd's Policy Limits LetterLetters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because English & American Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

544. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits LetterLetters and declined to indemnify RCBO in response to the Policy Limits Letter, and English & American Umbrella thereby has failed to provide the benefits of the English & American Umbrella Policy to RCBO.

545. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand letterLetter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Demand Letter. English & American thereby has failed to provide the benefits of the English & American Umbrella Policies to RCBO.

546. The English & American Umbrella Policies provide coverage for, and do not exclude, the

*[Link-to-previous setting changed from off in original to on in modified.].*

English & American Umbrella Covered Claims, and English & American Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the English & American Umbrella Covered Claims.

547. The English & American Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

548. An actual controversy of a justiciable nature presently exists between RCBO and English & American Umbrella concerning the proper construction of the English & American Umbrella Policies, whether English & American Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the English & American Umbrella Policies are valid, whether there is any coverage for the English & American Umbrella Covered Claims under the English & American Umbrella Policies, whether English & American Umbrella is obligated to drop down to provide first-dollar coverage for the English & American Umbrella Covered Claims because the underlying primary insurance is exhausted, English & American Umbrella's and RCBO's respective rights and obligations under the English & American Umbrella Policies with respect to the English & American Umbrella Covered Claims, and whether English & American Umbrella should participate in settlement regarding the English & American Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

549. RCBO is entitled to a declaratory judgment stating English & American Umbrella has issued the English & American Umbrella Policies to RCBO, the English & American Umbrella Policies cover the English & American Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the English & American Umbrella Covered Claims under the English & American Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the English & American Umbrella Policies as alleged in Paragraphs ~~537-538~~540-541, and the requirement that English & American Umbrella drop down to provide defense and

*[Link-to-previous setting changed from off in original to on in modified.].*

indemnity to RCBO regarding the English & American Umbrella Covered Claims.

**TWENTY-FOURTH CAUSE OF ACTION**

550. **(Declaratory Relief Against Orion - Umbrella)**

550. 551. RCBO realleges and incorporates herein Paragraphs 1 through 546549 of this Complaint as if said Paragraphs were set forth in full.

551. 552. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201; Cal. Code. Civ. P. § 1060.

552. 553. An actual and justiciable controversy exists between RCBO and Orion Umbrella with respect to whether Orion Umbrella is obligated to provide RCBO with defense and indemnity under the Orion Umbrella Policies regarding the subset of the Suits for which RCBO alleges Orion Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph 2928 (the "Orion Umbrella Covered Claims").

553. 554. Pursuant to the terms of the Orion Umbrella Policies, Orion Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Orion Umbrella Covered Claims.

554. 555. RCBO has fully performedsatisfied all conditions required under the Orion Umbrella Policies, or is otherwise excused from doing so.

555. 556. RCBO's broker and/or RCBO tendered the Orion Umbrella Covered Claims to Orion Umbrella on RCBO's behalf as set forth in Exhibit A.

556. 557. Orion Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the Orion Umbrella Covered Claims.

557. 558. Orion Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Orion

*[Link-to-previous setting changed from off in original to on in modified.].*

Umbrella Policies that, in turn, will exhaust those policies and trigger Orion Umbrella's obligation to provide the benefits of the Orion Umbrella Policies to RCBO. Rather, Orion Umbrella reserved its right to deny coverage on a number of bases.

558. ~~559.~~ Orion Umbrella's reservation of rights includes Orion Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Orion is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Orion's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Orion] Policies."

iv. "To the extent the [Orion Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Orion "reserve[s] all rights based upon the number and timing of occurrences. It is [Orion's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

*[Link-to-previous setting changed from off in original to on in modified.].*

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Orion] Policies."

viii. Orion "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

559. ~~560.~~ In addition, Orion Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Orion "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Orion thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Orion] reserve[s] the right to decline coverage if that entity is not one of the parishes,

*[Link-to-previous setting changed from off in original to on in modified.].*

schools, or other entities and agencies that qualify as an 'Assured' under the [Orion Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Orion its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Orion reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Orion's] agent for notice of claims provided in the Policy Declarations."

x. Orion reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Orion] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Orion and RCBO "in ~~our~~or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Orion] may preclude coverage."

*[Link-to-previous setting changed from off in original to on in modified.].*

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Orion Umbrella] Policies."

xiv. Orion reserves its rights "pursuant to the [Orion] Policies' Other Insurance Condition."

xv. Orion reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

560. ~~561.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Orion Umbrella has reserved its right to deny its defense and indemnity obligation under the Orion Umbrella Policies on the grounds that the Orion Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Orion Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Orion Umbrella Policies define that term, within the Orion Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Orion Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional

*[Link-to-previous setting changed from off in original to on in modified.].*

distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly

*[Link-to-previous setting changed from off in original to on in modified.].*

and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

561. ~~562.~~ The remaining Orion Umbrella Covered Claims not listed in Paragraph ~~557~~560 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Orion Umbrella Policies define that term.

562. ~~563.~~ As a further example, Orion Umbrella reserved its right to deny coverage under the Orion Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs ~~560-561~~563-564.

563. ~~564.~~ There is a substantial likelihood that the Orion Umbrella Covered Claims will exhaust the primary insurance underlying the Orion Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 Orion Umbrella Covered Claims that ~~fall within~~trigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the Orion Umbrella Policies.

564. ~~565.~~ Data from past clergy sexual abuse cases indicate the Orion Umbrella Covered

*[Link-to-previous setting changed from off in original to on in modified.].*

Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The Official Committee of Unsecured Creditors ("UCC") sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants (the "UCC Demand Letter"). Upon information and belief, Orion Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Orion Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million (the "UCC Demand Amount"), which is within the policy limits of the of the Lloyd's Excess Policies and the Orion Umbrella Policies, to resolve the Orion Umbrella Covered Claims and the claims falling within the Orion Umbrella coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount ason a reasonable estimate of the value of the Orion Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. JuryThe $16 million jury verdict in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the Orion Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

565. 566. The asserted reservations of rights set forth in Paragraphs 555558 and 556559 do not provide Orion Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity

*[Link-to-previous setting changed from off in original to on in modified.].*

for the Orion Umbrella Covered Claims under the Orion Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not ~~intentional conduct~~willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Orion Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Orion Umbrella Policies have ~~either~~ been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Orion Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Orion Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

566. ~~567.~~ RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants ~~a letter~~the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Orion Umbrella Covered Claims up to the policy limits under the Orion Umbrella Policies ~~(the "Policy Limits Letter")~~. Upon information and belief, Orion Umbrella received the Lloyd's Policy Limits ~~Letter~~Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Orion Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

567. ~~568.~~ On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits ~~Letter~~Letters and declined to indemnify RCBO ~~in response to the Policy Limits Letter~~, and Orion Umbrella thereby has failed to provide the benefits of the Orion Umbrella Policy to RCBO.

568. ~~569.~~ On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand ~~letter~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the UCC Demand Letter~~. Orion Umbrella thereby has failed to provide the benefits of the Orion Umbrella Policies to RCBO.

*[Link-to-previous setting changed from off in original to on in modified.].*

569. ~~570.~~ The Orion Umbrella Policies provide coverage for, and do not exclude, the Orion Umbrella Covered Claims, and Orion Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Orion Umbrella Covered Claims.

570. ~~571.~~ The Orion Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

571. ~~572.~~ An actual controversy of a justiciable nature presently exists between RCBO and Orion Umbrella concerning the proper construction of the Orion Umbrella Policies, whether Orion Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the Orion Umbrella Policies are valid, whether there is any coverage for the Orion Umbrella Covered Claims under the Orion Umbrella Policies, whether Orion Umbrella is obligated to drop down to provide first-dollar coverage for the Orion Umbrella Covered Claims because the underlying primary insurance is exhausted, Orion Umbrella's and RCBO's respective rights and obligations under the Orion Umbrella Policies with respect to the Orion Umbrella Covered Claims, and whether Orion Umbrella should participate in settlement regarding the Orion Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

572. ~~573.~~ RCBO is entitled to a declaratory judgment stating Orion Umbrella has issued the Orion Umbrella Policies to RCBO, the Orion Umbrella Policies cover the Orion Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Orion Umbrella Covered Claims under the Orion Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Orion Umbrella Policies as alleged in Paragraphs ~~560-561~~563-564, and the requirement that Orion Umbrella drop down to provide defense and indemnity to RCBO regarding the Orion Umbrella Covered Claims.

*[Link-to-previous setting changed from off in original to on in modified.].*

## TWENTY-FIFTH CAUSE OF ACTION

**(Declaratory Relief Against London & Overseas - Umbrella)**

573. ~~574.~~ RCBO realleges and incorporates herein Paragraphs 1 through ~~569~~572 of this Complaint as if said Paragraphs were set forth in full.

574. ~~575.~~ To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201~~; Cal. Code. Civ. P. § 1060~~.

575. ~~576.~~ An actual and justiciable controversy exists between RCBO and London & Overseas Umbrella with respect to whether London & Overseas Umbrella is obligated to provide RCBO with defense and indemnity under the London & Overseas Umbrella Policies regarding the subset of the Suits for which RCBO alleges London & Overseas Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph ~~28~~27 (the "London & Overseas Umbrella Covered Claims").

576. ~~577.~~ Pursuant to the terms of the London & Overseas Umbrella Policies, London & Overseas Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the London & Overseas Umbrella Covered Claims.

577. ~~578.~~ RCBO has fully ~~performed~~satisfied all conditions required under the London & Overseas Umbrella Policies, or is otherwise excused from doing so.

578. ~~579.~~ RCBO's broker and/or RCBO tendered the London & Overseas Umbrella Covered Claims to London & Overseas Umbrella on RCBO's behalf as set forth in Exhibit A.

579. ~~580.~~ London & Overseas Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the London & Overseas Umbrella Covered Claims.

580. ~~581.~~ London & Overseas Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the London & Overseas Umbrella Policies that, in turn, will exhaust those policies and trigger London & Overseas Umbrella's obligation to provide the benefits of the London & Overseas Umbrella Policies to RCBO. Rather, London & Overseas Umbrella reserved its right to deny coverage on a number of bases.

*[Link-to-previous setting changed from off in original to on in modified.].*

581. ~~582.~~ London & Overseas Umbrella's reservation of rights includes London & Overseas Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. London & Overseas is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. London & Overseas's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [London & Overseas] Policies."

iv. "To the extent the [London & Overseas Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. London & Overseas "reserve[s] all rights based upon the number and timing of occurrences. It is [London & Overseas's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [London & Overseas] Policies."

viii. London & Overseas "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

*[Link-to-previous setting changed from off in original to on in modified.].*

582. ~~583.~~ In addition, London & Overseas Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. London & Overseas "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" London & Overseas thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [London & Overseas] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [London & Overseas Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. London & Overseas reserves its rights "if [RCBO] should settle [a] claim without due

*[Link-to-previous setting changed from off in original to on in modified.].*

consideration for the merits of all available liability defenses."

ix. London & Overseas reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [London & Overseas's] agent for notice of claims provided in the Policy Declarations."

x. London & Overseas reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [London & Overseas] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by London & Overseas and RCBO "in ~~our~~or around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [London & Overseas] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [London & Overseas Umbrella] Policies."

xiv. London & Overseas reserves its rights "pursuant to the [London & Overseas] Policies' Other Insurance Condition."

xv. London & Overseas reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

583. ~~584.~~ It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, London & Overseas Umbrella has reserved its right to deny its defense and indemnity obligation under the London & Overseas Umbrella Policies on the grounds that the London & Overseas Umbrella Covered Claims allege injuries that were not "unexpected or unintended"

*[Link-to-previous setting changed from off in original to on in modified.].*

from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the London & Overseas Umbrella Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the London & Overseas Umbrella Policies define that term, within the London & Overseas Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the London & Overseas Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk

*[Link-to-previous setting changed from off in original to on in modified.].*

of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

584. ~~585.~~ The remaining London & Overseas Umbrella Covered Claims not listed in Paragraph ~~580~~583 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the London & Overseas Umbrella Policies define that term.

585. ~~586.~~ As a further example, London & Overseas Umbrella reserved its right to deny coverage under the London & Overseas Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs ~~583-584~~586-587.

*[Link-to-previous setting changed from off in original to on in modified.].*

586. 587. There is a substantial likelihood that the London & Overseas Umbrella Covered Claims will exhaust the primary insurance underlying the London & Overseas Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 London & Overseas Umbrella Covered Claims that fall withintrigger the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the London & Overseas Umbrella Policies.

587. 588. Data from past clergy sexual abuse cases indicate the London & Overseas Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The Official Committee of Unsecured Creditors ("UCC") sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants (the "UCC Demand Letter"). Upon information and belief, London & Overseas Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because London & Overseas Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million (the "UCC Demand Amount"), which is within the policy limits of the of the Lloyd's Excess Policies and the London & Overseas Umbrella Policies, to resolve the London & Overseas Umbrella Covered Claims and the claims falling within the London & Overseas Umbrella coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount ason a reasonable estimate of the value of the London & Overseas Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. JuryThe $16 million

*[Link-to-previous setting changed from off in original to on in modified.].*

jury verdict in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the London & Overseas Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

588. 589. The asserted reservations of rights set forth in Paragraphs 578581 and 579582 do not provide London & Overseas Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the London & Overseas Umbrella Covered Claims under the London & Overseas Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conductwillful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the London & Overseas Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the London & Overseas Umbrella Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to London & Overseas Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with London & Overseas Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

589. 590. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants a letterthe Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the London & Overseas Umbrella Covered Claims up to the policy limits under the London & Overseas Umbrella Policies (the "Policy Limits Letter"). Upon information and belief, London & Overseas Umbrella received the Lloyd's Policy Limits LetterLetters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because London & Overseas Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

*[Link-to-previous setting changed from off in original to on in modified.].*

590. ~~591.~~ On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits ~~Letter~~Letters and declined to indemnify RCBO ~~in response to the Policy Limits Letter~~, and London & Overseas Umbrella thereby has failed to provide the benefits of the London & Overseas Umbrella Policy to RCBO.

591. ~~592.~~ On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand ~~letter~~Letter and denied and/or failed to confirm it will indemnify RCBO ~~in response to the UCC Demand Letter~~. London & Overseas thereby has failed to provide the benefits of the London & Overseas Umbrella Policies to RCBO.

592. ~~593.~~ The London & Overseas Umbrella Policies provide coverage for, and do not exclude, the London & Overseas Umbrella Covered Claims, and London & Overseas Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the London & Overseas Umbrella Covered Claims.

593. ~~594.~~ The London & Overseas Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

594. ~~595.~~ An actual controversy of a justiciable nature presently exists between RCBO and London & Overseas Umbrella concerning the proper construction of the London & Overseas Umbrella Policies, whether London & Overseas Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the London & Overseas Umbrella Policies are valid, whether there is any coverage for the London & Overseas Umbrella Covered Claims under the London & Overseas Umbrella Policies, whether London & Overseas Umbrella is obligated to drop down to provide first-dollar coverage for the London & Overseas Umbrella Covered Claims because the underlying primary insurance is exhausted, London & Overseas Umbrella's and RCBO's respective rights and obligations under the London & Overseas Umbrella Policies with respect to the London & Overseas Umbrella Covered Claims, and whether London & Overseas Umbrella should participate in settlement regarding the London & Overseas Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

595. ~~596.~~ RCBO is entitled to a declaratory judgment stating London & Overseas Umbrella has issued the London & Overseas Umbrella Policies to RCBO, the London & Overseas Umbrella

*[Link-to-previous setting changed from off in original to on in modified.].*

Policies cover the London & Overseas Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the London & Overseas Umbrella Covered Claims under the London & Overseas Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the London & Overseas Umbrella Policies as alleged in Paragraphs ~~583-584~~586-587, and the requirement that London & Overseas Umbrella drop down to provide defense and indemnity to RCBO regarding the London & Overseas Umbrella Covered Claims.

**TWENTY-SIXTH CAUSE OF ACTION**

**(Breach of Statutory Duty Against CIGA)**

596. ~~597.~~ RCBO realleges and incorporates herein ~~paragraphs~~Paragraphs 1 through ~~592~~595 of this complaint as if said ~~paragraphs~~Paragraphs were set forth in full.

597. ~~598.~~ "CIGA's authority and liability are limited to paying 'covered claims.'" ~~*Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 128 Cal. App. 4th 307, 313, 26 Cal. Rptr. 3d 845, 848 (2005).~~ *Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 128 Cal. App. 4th 307, 313 (2005).

598. ~~599.~~ A covered claims means "(1) … the obligations of an insolvent insurer, including the obligation … (i) imposed by law and within the coverage of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; … (iv) which were incurred prior to the date coverage under the policy terminated …" ~~*Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 153 Cal. App. 4th 524, 532-33, 62 Cal. Rptr. 3d 855, 860 (2007)~~*Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 153 Cal. App. 4th 524, 532-33 (2007) (citing ~~(~~Cal. Ins. Code, § 1063.1~~, subd.~~ (c)(1))~~)~~.

599. ~~600.~~ Commercial Union/Armour Insurance Company has become insolvent but had acknowledged potential coverage for the Suits tendered to it by RCBO.

600. ~~601.~~ RCBO timely presented the claims to the liquidator prior to the date coverage under the policy terminated. Therefore, the claims qualify as covered ~~claim~~claims under the statute.

601. ~~602.~~ There is no, or there is a substantial likelihood that there will not be any, other insurance available for the Commercial Union Covered Claims because Commercial Union is insolvent,

*[Link-to-previous setting changed from off in original to on in modified.].*

and the Commercial Union Covered Claims are likely to exhaust other applicable insurance policies.

602. 603. Specifically, there is a substantial likelihood the Commercial Union Covered Claims will exhaust the following insurance policies: United States Fire Insurance policy no. DCL 53 98 20, for the policy period of October 25, 1970 – October 26, 1971 ($5,000,000 limit); Westport policy no. U10255, for the policy period of November 16, 1971 – October 26, 1974 ($5,000,000 limit); American Home policy no. CE-60-94, for the policy period of November 16, 1971 – October 26, 1974 ($2,000,000 limit); CNA policy no. RDU 146 74 50, for the policy period of October 26, 1974 – December 1, 1975 ($1,000,000 limit); and Westport policy no. PLE 20430, for the policy period of October 26, 1974 – December 1, 1975 ($5,000,000 limit) (together, the "Other Insurers" and the "Other Insurance Policies"). There are at least 22 Commercial Union Covered Claims.

603. 604. Data from past clergy sexual abuse cases indicate the CommericalCommercial Union Covered Claims will far exceed the limits of the Other Insurance Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. The Official Committee of Unsecured Creditors ("On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC") sent each of the Other Insurers a demand letter on July 3, 2024, demanding they pay $56.7 million (United States Fire), $308.9 million (Westport), $11.9 million (American Home), and $162.6 million (CNA), respectively—all amounts within limits of each of the Other Insurance Policies—to resolve the Commercial Union Covered Claims alleged against RCBO. The UCC based the amounts demanded on its reasonable estimate of the value of the claims covered by the Other Insurance Policies, including the Commercial Union Covered Claims. JuryThe $16 million jury verdict in one underlying RCBO case, and jury verdicts in related child sexual abuse cases further confirm the Commercial Union Covered Claims will exhaust the Other Insurance Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

*[Link-to-previous setting changed from off in original to on in modified.].*

604. ~~605.~~ CIGA assigned an adjuster to review the claims. CIGA confirmed that RCBO appropriately filed the claims, and CIGA understood that the claims were abuse-related claims.

605. ~~606.~~ CIGA has refused to confirm coverage for the Commercial Union Covered Claims in breach of its statutory duties under Article 14.2 of the California Insurance Code.

606. ~~607.~~ As a result of CIGA's breaches, RCBO has been damaged according to proof at trial.

**TWENTY-SEVENTH CAUSE OF ACTION**

**(Declaratory Relief Against American Home Assurance Co.)**

607. RCBO realleges and incorporates herein Paragraphs 1 through 606 of this Complaint as if said Paragraphs were set forth in full.

608. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201; Cal. Code. Civ. Proc. § 1060.

609. An actual and justiciable controversy exists between RCBO and AHAC with respect to whether AHAC is obligated to provide RCBO indemnity under the AHAC Policy regarding the subset of the Suits for which RCBO alleges AHAC is obligated to provide RCBO with indemnity, as set forth in Paragraph 30 (the "AHAC Covered Claims").

610. Pursuant to the terms of the AHAC Policy, AHAC is obligated to, among other things, defend and indemnify Plaintiff for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the AHAC Covered Claims.

611. Plaintiff RCBO has fully performed under the AHAC Policy.

612. RCBO's broker and/or RCBO tendered the AHAC Covered Claims to AHAC on RCBO's behalf as set forth in Exhibit A.

613. AHAC by way of its policy agreed to provide a defense to Plaintiff RCBO for those AHAC Covered Claims "where the applicable underlying primary coverage is either insolvent or fully and properly exhausted through payment of judgments or settlements." However, AHAC denied and/or failed to confirm it will indemnify RCBO for the AHAC Covered Claims.

614. AHAC has not acknowledged that its insured, RCBO, faces covered claims in excess of

*[Link-to-previous setting changed from off in original to on in modified.].*

the limits of insurance available from the primary policies underlying the AHAC Policy that, in turn, will exhaust those policies and trigger AHAC's obligation to provide the benefits of the AHAC Policy to RCBO. Rather, AHAC reserved its right to deny coverage on a number of bases.

615. AHAC's reservation of rights includes its position that it may deny coverage on the following bases:

i. The American Home Policy is an excess umbrella liability policy which potentially applies only upon exhaustion of underlying insurance. We have not received any information indicating that the underlying insurance has been exhausted. The American Home Policy is not, therefore, currently impacted by the Claim. American Home reserves all rights with respect to the proper exhaustion of the underlying insurance.

ii. To the extent the Claim does not involve liability for personal injury, coverage under the American Home Policy will not apply. American Home disclaims coverage herein on this basis.

iii. To the extent Claimant seeks to impose liability for damage that occurred outside of the effective dates of the American Home Policy, the American Home Policy does not apply. American Home disclaims coverage on this basis.

iv. To the extent Claimant alleges, or is able to prove, that the defendants knew, had reason to know, or were otherwise on notice of the conduct alleged and failed to take reasonable steps or implement reasonable safeguards. American Home reserves its right to disclaim coverage for the Claim, in whole or in part, on this additional basis. American Home also reserves all rights with respect to the number of occurrences.

v. If, prior to the issuance of the American Home Policy, RCBO knew, or had reason to know, that there was a probability it would suffer or had

*[Link-to-previous setting changed from off in original to on in modified.].*

already suffered a loss, the known loss, loss-in-progress and/or fortuity doctrines may preclude coverage.

vi. Under California Insurance Code §533 an insurer "is not liable for a loss caused by the willful act of the insured..." American Home reserves the right to deny coverage, in whole or in part, on this additional basis.

616. In addition, AHAC reserved further rights to deny coverage as follows:

i. American Home expressly reserves all of its rights under the American Home Policy, including the right to assert additional defenses to any claims for coverage. This includes the right to amend and/or supplement their coverage positions in the future as may be appropriate.

617. It is Plaintiff's position that the above reservations of rights are without both factual and legal merit. For example, AHAC has reserved its right to deny its defense and indemnity obligation under the AHAC Policy on the grounds that the AHAC Covered Claims allege injuries that were "expected or intended from the standpoint of RCBO" or that "do[] not allege 'bodily injury' or 'personal injury' within the meaning of the AHAC Policy." Such reservations of rights as to defense and/or indemnity do not apply because the AHAC Covered Claims allege Plaintiff was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the AHAC Policy defines that term, within the AHAC Policy's coverage period (see Exhibit A). Plaintiff sets forth below examples of negligence and bodily injury allegations from the AHAC Covered Claims in paragraph 618 and 619.

618. For example, AHAC acknowledges that for Proof of Claim 107, "The Complaint alleges causes of action sounding in: (1) Negligent Supervision and/or Retention of an Employee; and (2) Negligent Supervision of Plaintiff, a minor" and that "Plaintiff claims that he has suffered and will continue to suffer physical, psychological and emotional injuries, as well as economic loss."

619. Similarly, AHAC acknowledges in receipt of Proof of Claim 99 that "The Complaint alleges causes of action sounding in: (1) Negligent Supervision and/or Retention of an Employee; and (2) Negligent Supervision of Plaintiff, a minor" and that "Plaintiff claims that he has suffered and will

*[Link-to-previous setting changed from off in original to on in modified.].*

continue to suffer physical, psychological and emotional injuries, as well as economic loss."

620. Virtually all of the AHAC Covered Claims likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the AHAC Policy defines that term.

621. As a further example, AHAC reserved its right to deny coverage under the AHAC Policy on the ground that "[a]s a threshold matter, the American Home Policy is an excess umbrella liability policy which potentially applies only upon exhaustion of underlying insurance. We have not received any information indicating that the underlying insurance has been exhausted. The American Home Policy is not, therefore, currently impacted by the Lawsuit. American Home reserves all rights with respect to the proper exhaustion of the underlying insurance." This reservation of rights as to defense and/or indemnity will not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 622 and 623.

622. There is a substantial likelihood that the AHAC Covered Claims will exhaust the primary insurance underlying the AHAC Policy. The underlying Commercial Union primary policies nos. EF 9334-001, EF 9334-003, and EF 9334-008 have limits of $100,000 per occurrence and $300,000 in aggregate (the "10/26/71-10/26/74 Commercial Union Policies"). The AHAC Covered Claims fall within the coverage periods for the 10/26/71-10/26/74 Commercial Union Policies and the AHAC Policy.

623. Data from past clergy sexual abuse cases indicate the AHAC Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/71-10/26/74 Commercial Union Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The Official Committee of Unsecured Creditors ("UCC") sent AHAC a letter on July 3, 2024, demanding AHAC pay a sum of $11.9 million (the "UCC AHAC Demand Amount"), which is within the policy limits of the AHAC Policy, to resolve the AHAC Covered Claims (the "UCC Demand Letter"). The UCC based the AHAC Demand Amount on its

*[Link-to-previous setting changed from off in original to on in modified.].*

reasonable estimate of the value of the AHAC Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the AHAC Covered Claims will exhaust the 10/26/71-10/26/74 Commercial Union Policies. *See Jane Doe 3, et al. v. Roe #1, et al., Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); Janet Roe v. David Park, et al., Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).*

624. The asserted reservations of rights set forth in Paragraphs 615 and 616 do not provide AHAC valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the AHAC Covered Claims under the AHAC Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional torts) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the AHAC Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the AHAC Policy has either been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with AHAC as required under the policy, including providing notice of the claims, providing the status of the matters and providing requested materials.

625. Plaintiff sent AHAC a letter on June 4, 2024, demanding AHAC indemnify RCBO for the AHAC Covered Claims up to the policy limits under the AHAC Policy (the "Policy Limits Letter"). AHAC denied and/or failed to confirm it will indemnify RCBO in response to the Policy Limits Letter, and thereby has failed to provide the benefits of the AHAC Policy to Plaintiff.

626. AHAC has likewise denied and/or failed to confirm it will indemnify RCBO in response to the UCC Demand Letter, and thereby has failed to provide the benefits of the AHAC Excess Policy to RCBO.

627. The AHAC Policy provides coverage for, and does not exclude, the AHAC Covered Claims, and AHAC is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving the AHAC Covered Claims.

628. The AHAC Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

*[Link-to-previous setting changed from off in original to on in modified.].*

629. An actual controversy of a justiciable nature presently exists between RCBO and AHAC concerning the proper construction of the AHAC Policy, whether AHAC's cited grounds for reservation of rights to deny defense and/or indemnity under the AHAC Policy are valid, whether there is any coverage for the AHAC Covered Claims under the AHAC Policy, AHAC's and RCBO's respective rights and obligations under the AHAC Policy with respect to the AHAC Covered Claims, and whether AHAC should participate in settlement regarding the AHAC Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

630. RCBO is entitled to a declaratory judgment stating AHAC has issued the AHAC Policies to RCBO, the AHAC Policy covers the AHAC Covered Claims, and RCBO is entitled to both defense and indemnity regarding the AHAC Covered Claims under the AHAC Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the AHAC Policy as alleged in Paragraphs 622 and 623.

**TWENTY-EIGTH CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Insurer Defendants)**

631. RCBO realleges and incorporates herein Paragraphs 1 through 630 of this complaint as if said Paragraphs were set forth in full.

632. Implied in every insurance policy identified in this Sixth Amended Complaint is a covenant that requires the insurer to act in good faith and deal fairly with RCBO; not to withhold benefits due under its policy or policies of insurance unreasonably or without proper cause; to do nothing to interfere with RCBO's right to receive the benefits of the Policy; to place RCBO's interests before its own interests; to exercise diligence, good faith and fidelity in safeguarding RCBO's interests; and to deal ethically with RCBO and fairly and adequately inform RCBO with respect to the nature and scope of its insurance coverage (hereinafter referred to as "the covenant of good faith and fair dealing").

633. As alleged herein, RCBO sent each Insurer Defendant a letter demanding they pay the policy limits of their respective policies to indemnify RCBO for the claims covered under their policies. Insurer Defendants failed to respond to these letters confirming that they would indemnify RCBO, thereby failing to provide RCBO the benefits of their policies.

*[Link-to-previous setting changed from off in original to on in modified.].*

634. Also included in insurers' obligation to act fairly and in good faith towards RCBO is a duty to accept reasonable settlement offers within each insurers' policy limits. As alleged herein, the UCC sent each Insurer Defendant a letter demanding they pay a specified amount which was within the limits of their policies. The demand for each insurer was based on the UCC's reasonable estimate of the values of the claims covered by each insurer's policies, as well as data from past clergy sexual abuse cases.

635. Despite receiving notice of these demands which were reasonable and within policy limits, Insurer Defendants failed to respond to the UCC demands, failed to participate fully and meaningfully in the resolution process, and refused to contribute toward a settlement that would successfully result in a resolution of the claims against their insured.

636. On April 10, 2026, RCBO and Defendants attended a mandatory settlement conference in connection with the underlying cases. Despite the fact that the Superior Court had ordered Defendants to participate in the settlement conference and "negotiate in good faith," and despite having more than sufficient policy limits available to settle the claims at issue, Insurer Defendants refused to make any settlement offer in response to a demand of $100 million made by 61 of the underlying plaintiffs to resolve all of their claims against RCBO. The same day, the Superior Court issued an Order to Show Cause – Why the Court Should Not Find Bad Faith Conduct Due to a Failure to Negotiate in Good Faith at a Mandatory Settlement Conference. The Superior Court subsequently continued the Order to Show Cause to May 27, 2026. At a further mandatory settlement conference held on April 21, 2026, Westport, CNA, and Travelers offered $10.3 million to settle the 61 claims, which was not enough to reach a resolution, and well below the available policy limits. The next day, on April 22, 2026, the jury in one of the 61 cases returned a verdict in favor of the plaintiff in that case in the amount of $16 million. As a direct result of Insurer Defendants' conduct, RCBO is faced with this verdict, plus the other 60 claims (and hundreds more) still unresolved.[2]

---

[2] The conduct described in Paragraph 636 forms part of the basis for RCBO's claim for bad faith against all Insurer Defendants except Certain Underwriters at Lloyd's, London, Subscribing Severally and Not Jointly to Slip Nos. CU 1001, K66034, K78138 and CU 3061, which only issued policies prior to the first date of alleged abuse by the 61 underlying plaintiffs at issue.

*[Link-to-previous setting changed from off in original to on in modified.].*

637. Insurer Defendants' actions are without any reasonable justification, are inconsistent with RCBO's reasonable expectations, are contrary to industry custom and practice and legal requirements, and withheld benefits owing under their policies of insurance unreasonably or without proper cause, thereby constituting a breach of the implied covenant of good faith and fair dealing.

638. In light of information, facts, and relevant law to the contrary, Insurer Defendants' conduct is and has been undertaken with a conscious disregard of RCBO's rights as a beneficiary of the policies.

639. RCBO is informed and believes and thereon alleges that Insurer Defendants' acts were performed, authorized, and/or ratified by their officers, directors, and managing agents.

640. As a direct and proximate result of Insurer Defendants' breaches of the implied covenant of good faith and fair dealing, RCBO has been forced to continue participating in negotiations with claimants and engaging in bankruptcy proceedings, incurring additional needless costs. RCBO has suffered and continues to suffer substantial damages, in an amount to be determined at trial. RCBO also has incurred and continues to incur significant, recoverable attorneys' fees and costs to obtain the benefits to which it is entitled and which Insurer Defendants wrongfully have denied under their policies. Pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), RCBO also is entitled to recover all such attorneys' fees and costs, plus interest.

## TWENTY-NINTH CAUSE OF ACTION

## (Breach of the Implied Covenant of Good Faith and Fair Dealing Against Chubb)

641. RCBO realleges and incorporates herein Paragraphs 1 through 640 of this complaint as if said Paragraphs were set forth in full.

642. As set forth above, Defendant Chubb had, at all material times, a duty to act fairly and in good faith towards RCBO, its insured. Included in Chubb's obligation to act fairly and in good faith towards RCBO is a duty to act with undivided loyalty to the insured.

643. Unbeknownst to RCBO, Chubb has for years been operating an online campaign against a similarly situated insured, the Archdiocese of New York, and encouraging and amplifying claims of the very type underlying this matter – claims that Chubb is obligated to defend RCBO against. Since at

*[Link-to-previous setting changed from off in original to on in modified.].*

least 2023, Chubb has fraudulently posed as a victim rights organization called the "Church Accountability Project" and operated a website under that guise. Through that website, Chubb used inflammatory rhetoric and imagery designed to portray the Archdiocese of New York, the Catholic Church generally, and, by extension, RCBO and all similar organizations, in an extremely negative and prejudicial light. On the website, Chubb blames the Archdiocese of New York and the Catholic League for intentionally delaying payments to victims by attempting to shift blame to insurers. However, by secretly acting to inflame claims and direct anger towards Catholic organizations, Chubb has sabotaged the very organizations to which it is legally obligated to provide undivided loyalty. Under the policies that Chubb issued to RCBO, Chubb is obligated to act with undivided loyalty to its insured, and its actions via the "Church Accountability Project" website contradict this duty.

644. On previous iterations of the fraudulent website, Chubb even provided resources for claimants to report abuse by bishops and clergy more broadly. By encouraging such claims, Chubb has increased RCBO's exposure to liability for precisely the claims that Chubb is obligated to defend RCBO against. This presents a clear conflict of interest for Chubb and a breach of the implied covenant of good faith and fair dealing.

645. At the same time, in this matter, Chubb refused to accept the reasonable settlement offer proposed by the UCC, an offer within its policy limits, and failed to participate in good faith in the resolution of covered claims, further exacerbating RCBO's exposure and needlessly delaying a resolution.

646. Chubb never disclosed to RCBO that it was engaging in or authorizing this campaign, despite knowing that such conduct would materially prejudice RCBO's legal position and increase claim severity, settlement demands, and reputational harm.

647. As a direct and proximate result of Chubb's bad faith conduct, RCBO has suffered and continues to suffer substantial damages, the amount of which will be proven at trial, including increased settlement demands and litigation exposure, reputational and institutional harm, impairment of RCBO's bankruptcy efforts, and other damages. RCBO has also incurred significant, recoverable attorneys' fees and costs to obtain the benefits to which it is entitled. RCBO is informed and believes that Chubb's

*[Link-to-previous setting changed from off in original to on in modified.].*

conduct was performed, authorized, and/or ratified by its officers, directors, and managing agents, and/or with the advance knowledge or conscious disregard of its officers, directors, and managing agents.

648. Chubb's actions were, and continue to be, willful, wanton and/or malicious, and demonstrate a conscious disregard for and/or reckless indifference to the rights of RCBO. Therefore, RCBO is entitled to recover punitive damages from Chubb in an amount sufficient to punish Chubb and deter similar conduct in the future.

**PRAYER FOR RELIEF**

WHEREFORE, RCBO prays for the following relief:

1. A declaration in RCBO's favor that Pacific Indemnity issued the Pacific Indemnity Policies to RCBO, that the Pacific Indemnity Policies cover the Pacific Indemnity Covered Claims, that Pacific Indemnity is obligated to defend and indemnify RCBO ~~for~~against the Pacific Indemnity Covered Claims, as set forth in Count 1 above;

2. A declaration in RCBO's favor that Travelers issued the Travelers Primary Policies to RCBO, that the Travelers Primary Policies cover the Travelers Covered Claims, and that Travelers is obligated to defend and indemnify RCBO ~~for~~against the Travelers Covered Claims, as set forth in Count 2 above;

3. A declaration in RCBO's favor that INA issued the INA Primary Policies to RCBO, that the INA Primary Policies cover the INA Primary Covered Claims, and that INA is obligated to defend and indemnify RCBO ~~for~~against the INA Primary Covered Claims, as set forth in Count 3 above;

4. A declaration that the Commercial Union Covered Claims are "covered claims" triggering CIGA's statutory coverage and indemnification obligations and that CIGA must defend and indemnify RCBO ~~for~~against the Commercial Union Covered Claims as set forth in Count 4 above;

5. A declaration in RCBO's favor that INA issued the INA Excess Policy to RCBO, that the INA Excess Policy covers the INA Excess Covered Claims, and that INA must provide

*[Link-to-previous setting changed from off in original to on in modified.].*

RCBO defense and indemnity for the INA Excess Covered Claims, that the primary policies underlying the INA Excess Policy are or are likely to be exhausted, and that INA must drop down to provide defense and indemnity to RCBO regarding the INA Excess Covered Claims, as set forth in Count 5 above;

6. A declaration in RCBO's favor that U.S. Fire issued the U.S. Fire Policy to RCBO, that the U.S. Fire Policy covers the U.S. Fire Covered Claims, and that U.S. Fire must provide RCBO defense and indemnity for the U.S. Fire Covered Claims, that the primary policies underlying the U.S. Fire Policy are or are likely to be exhausted, and that U.S. Fire must drop down to provide defense and indemnity to RCBO regarding the U.S. Fire Covered Claims, as set forth in Count 6 above;

7. A declaration in RCBO's favor that Westport issued the Westport Excess Policy to RCBO, that the Westport Excess Policy covers the Westport Excess Covered Claims, and that Westport must provide RCBO defense and indemnity for the Westport Excess Covered Claims, that the primary policies underlying the Westport Excess Policy are or are likely to be exhausted, and that Westport must drop down to provide defense and indemnity to RCBO regarding the Westport Excess Covered Claims, as set forth in Count 7 above;

8. A declaration in RCBO's favor that CNA issued the CNA Policies to RCBO, that the CNA Policies cover the CNA Covered Claims, and that CNA must indemnify RCBO for the CNA Covered Claims, that the primary policies underlying the CNA Policies are or are likely to be exhausted, and that CNA must drop down to provide defense and indemnity to RCBO regarding the CNA Covered Claims, as set forth in Count 8 above;

9. A declaration in RCBO's favor that Westchester issued the Westchester Policy to RCBO, that the Westchester Policy covers the Westchester Covered Claims, and that Westchester must provide RCBO defense and indemnity for the Westchester Covered Claims, that the primary policies underlying the Westchester Policy are or are likely to be exhausted, and that Westchester must drop down to provide defense and indemnity to RCBO regarding the Westchester Covered Claims, as set forth in Count 9 above;

*[Link-to-previous setting changed from off in original to on in modified.].*

10. A declaration in RCBO's favor that Lloyd's issued the Lloyd's Excess Policy to RCBO, that the Lloyd's Excess Policy covers the Lloyd's Covered Claims, and that Lloyd's must provide RCBO defense and indemnity for the Lloyd's Covered Claims, that the primary policies underlying the Lloyd's Excess Policy are or are likely to be exhausted, and that Lloyd's must drop down to provide defense and indemnity to RCBO regarding the Lloyd's Covered Claims, as set forth in Count 10 above;

11. A declaration in RCBO's favor that Fidelidade issued the Fidelidade Excess Policy to RCBO, that the Fidelidade Excess Policy covers the Fidelidade Covered Claims, and that Fidelidade must provide RCBO defense and indemnity for the Fidelidade Covered Claims, that the primary policies underlying the Fidelidade Excess Policy are or are likely to be exhausted, and that Fidelidade must drop down to provide defense and indemnity to RCBO regarding the Fidelidade Covered Claims, as set forth in Count 11 above;

12. A declaration in RCBO's favor that Excess Insurance Co. issued the Excess Insurance Co. Policies to RCBO, that the Excess Insurance Co. Policies cover the Excess Insurance Co. Covered Claims, and that Excess Insurance Co. must provide RCBO defense and indemnity for the Excess Insurance Co. Covered Claims, that the primary policies underlying the Excess Insurance Co. Policies are or are likely to be exhausted, and that Excess Insurance Co. must drop down to provide defense and indemnity to RCBO regarding the Excess Insurance Co. Covered Claims, as set forth in Count 12 above;

13. A declaration in RCBO's favor that River Thames issued the River Thames Policy to RCBO, that the River Thames Policy covers the River Thames Covered Claims, and that River Thames must provide RCBO defense and indemnity for the River Thames Covered Claims, that the primary policies underlying the River Thames Policy are or are likely to be exhausted, and that River Thames must drop down to provide defense and indemnity to RCBO regarding the River Thames Covered Claims, as set forth in Count 13 above;

14. A declaration in RCBO's favor that World Auxiliary issued the World Auxiliary Policy to RCBO, that the World Auxiliary Policy covers the World Auxiliary Covered Claims,

*[Link-to-previous setting changed from off in original to on in modified.].*

and that World Auxiliary must provide RCBO defense and indemnity for the World Auxiliary Covered Claims, that the primary policies underlying the World Auxiliary Policy are or are likely to be exhausted, and that World Auxiliary must drop down to provide defense and indemnity to RCBO regarding the World Auxiliary Covered Claims, as set forth in Count 14 above;

15. A declaration in RCBO's favor that Dominion issued the Dominion Policies to RCBO, that the Dominion Policies cover the Dominion Covered Claims, and that Dominion must provide RCBO defense and indemnity for the Dominion Covered Claims, that the primary policies underlying the Dominion Policies are or are likely to be exhausted, and that Dominion must drop down to provide defense and indemnity to RCBO regarding the Dominion Covered Claims, as set forth in Count 15 above;

16. A declaration in RCBO's favor that English & American issued the English & American Policy to RCBO, that the English & American Policy covers the English & American Covered Claims, and that English & American must provide RCBO defense and indemnity for the English & American Covered Claims, that the primary policies underlying the English & American Policy are or are likely to be exhausted, and that English & American must drop down to provide defense and indemnity to RCBO regarding the English & American Covered Claims, as set forth in Count 16 above;

17. A declaration in RCBO's favor that Westport issued the Westport Umbrella Policy to RCBO, that the Westport Umbrella Policy covers the Westport Umbrella Covered Claims, and that Westport must provide RCBO defense and indemnity for the Westport Umbrella Covered Claims, that the primary and excess policies underlying the Westport Umbrella Policy are or are likely to be exhausted, and that Westport must drop down to provide defense and indemnity to RCBO regarding the Westport Umbrella Covered Claims, as set forth in Count 17 above;

18. A declaration in RCBO's favor that Travelers issued the Travelers Umbrella Policies to RCBO, that the Travelers Umbrella Policies cover the Travelers Umbrella Covered

*[Link-to-previous setting changed from off in original to on in modified.].*

Claims, and that Travelers must provide RCBO defense and indemnity for the Travelers Umbrella Covered Claims, that the primary and excess policies underlying the Travelers Umbrella Policies are or are likely to be exhausted, and that Travelers must drop down to provide defense and indemnity to RCBO regarding the Travelers Umbrella Covered Claims, as set forth in Count 18 above;

19. A declaration in RCBO's favor that Pacific Employers issued the Pacific Employers Policy to RCBO, that the Pacific Employers Policy covers the Pacific Employers Covered Claims, and that Pacific Employers must provide RCBO defense and indemnity for the Pacific Employers Covered Claims, that the primary and excess policies underlying the Pacific Employers Policy are or are likely to be exhausted, and that Pacific Employers must drop down to provide defense and indemnity to RCBO regarding the Pacific Employers Covered Claims, as set forth in Count 19 above;

20. A declaration in RCBO's favor that Lloyd's Umbrella issued the Lloyd's Umbrella Policies to RCBO, that the Lloyd's Umbrella Policies cover the Lloyd's Umbrella Covered Claims, and that Lloyd's Umbrella must provide RCBO defense and indemnity for the Lloyd's Umbrella Covered Claims, that the primary and excess policies underlying the Lloyd's Umbrella Policies are or are likely to be exhausted, and that Lloyd's Umbrella must drop down to provide defense and indemnity to RCBO regarding the Lloyd's Umbrella Covered Claims, as set forth in Count 20 above;

21. A declaration in RCBO's favor that Anglo French Umbrella issued the Anglo French Umbrella Policies to RCBO, that the Anglo French Umbrella Policies cover the Anglo French Umbrella Covered Claims, and that Anglo French Umbrella must provide RCBO defense and indemnity for the Anglo French Umbrella Covered Claims, that the primary and excess policies underlying the Anglo French Umbrella Policies are or are likely to be exhausted, and that Anglo French Umbrella must drop down to provide defense and indemnity to RCBO regarding the Anglo French Umbrella Covered Claims, as set forth in Count 21 above;

*[Link-to-previous setting changed from off in original to on in modified.].*

22. A declaration in RCBO's favor that Excess Insurance Co. Umbrella issued the Excess Insurance Co. Umbrella Policies to RCBO, that the Excess Insurance Co. Umbrella Policies cover the Excess Insurance Co. Umbrella Covered Claims, and that Excess Insurance Co. Umbrella must provide RCBO defense and indemnity for the Excess Insurance Co. Umbrella Covered Claims, that the primary and excess policies underlying the Excess Insurance Co. Umbrella Policies are or are likely to be exhausted, and that Excess Insurance Co. Umbrella must drop down to provide defense and indemnity to RCBO regarding the Excess Insurance Co. Umbrella Covered Claims, as set forth in Count 22 above;

23. A declaration in RCBO's favor that English & American Umbrella issued the English & American Umbrella Policies to RCBO, that the English & American Umbrella Policies cover the English & American Umbrella Covered Claims, and that English & American Umbrella must provide RCBO defense and indemnity for the English & American Umbrella Covered Claims, that the primary and excess policies underlying the English & American Umbrella Policies are or are likely to be exhausted, and that English & American Umbrella must drop down to provide defense and indemnity to RCBO regarding the English & American Umbrella Covered Claims, as set forth in Count 23 above;

24. A declaration in RCBO's favor that Orion Umbrella issued the Orion Umbrella Policies to RCBO, that the Orion Umbrella Policies cover the Orion Umbrella Covered Claims, and that Orion Umbrella must provide RCBO defense and indemnity for the Orion Umbrella Covered Claims, that the primary and excess policies underlying the Orion Umbrella Policies are or are likely to be exhausted, and that Orion Umbrella must drop down to provide defense and indemnity to RCBO regarding the Orion Umbrella Covered Claims, as set forth in Count 24 above;

25. A declaration in RCBO's favor that London & Overseas Umbrella issued the London & Overseas Umbrella Policies to RCBO, that the London & Overseas Umbrella Policies cover the London & Overseas Umbrella Covered Claims, and that London & Overseas Umbrella must provide RCBO defense and indemnity for the London & Overseas Umbrella Covered

*[Link-to-previous setting changed from off in original to on in modified.].*

Claims, that the primary and excess policies underlying the London & Overseas Umbrella Policies are or are likely to be exhausted, and that London & Overseas Umbrella must drop down to provide defense and indemnity to RCBO regarding the London & Overseas Umbrella Covered Claims, as set forth in Count 25 above;

26. A declaration in RCBO's favor that AHAC issued the AHAC Policy to RCBO, that the AHAC Policy covers the AHAC Covered Claims, and that AHAC must provide RCBO defense and indemnity for the AHAC Covered Claims, and that the primary policies underlying the AHAC Policy are or are likely to be exhausted, as set forth in Count 26 above;

27. ~~26.~~ An award in RCBO's favor as a result of CIGA's breach of its statutory duty;

28. An award in RCBO's favor for compensatory and consequential damages as a result of Insurer Defendants' bad faith conduct;

29. An award in RCBO's favor for punitive damages as a result of Chubb's bad faith conduct;

30. ~~27.~~ An order awarding RCBO its costs, expenses, and reasonable attorneys' fees as provided by law; and

31. ~~28.~~ Any such other and further relief as the Court deems just and proper.

*[Link-to-previous setting changed from off in original to on in modified.].*

DATED: ~~OCTOBER 7~~MAY 19, ~~2024~~2026

COVINGTON & BURLING LLP
David B. Goodwin
Christine S. Haskett
Harper A. Johnson

*/s/ Christine S. Haskett*
Christine S. Haskett

FOLEY & LARDNER LLP
Eileen R. Ridley ~~(CA Bar No. 151735)~~
Ann Marie Uetz ~~(admitted pro hac vice)~~
Matthew D. Lee ~~(admitted pro hac vice)~~
Thomas F. Carlucci ~~(CA Bar No. 135767)~~
Jeffrey R. Blease ~~(CA Bar. No. 134933)~~
~~*/s/ Eileen R. Ridley*~~

~~EILEEN R. RIDLEY~~
~~COUNSEL FOR THE ROMAN CATHOLIC BISHOP OF OAKLAND~~Counsel for the Roman Catholic Bishop of Oakland

*[Link-to-previous setting changed from off in original to on in modified.].*

## JURY DEMAND

Plaintiff the Roman Catholic Bishop of Oakland hereby demands a trial by jury on all issues so triable.

DATED: MAY 19, 2026

COVINGTON & BURLING LLP
David B. Goodwin
Christine S. Haskett
Harper A. Johnson

*/s/ Christine S. Haskett*
Christine S. Haskett

FOLEY & LARDNER LLP
Eileen R. Ridley
Ann Marie Uetz
Matthew D. Lee
Thomas F. Carlucci
Jeffrey R. Blease

Counsel for the Roman Catholic Bishop of Oakland

*[Link-to-previous setting changed from off in original to on in modified.].*

| **Summary report: Litera Compare for Word 11.14.0.42 Document comparison done on 5/19/2026 8:57:10 AM** | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://covdocsus.cov.com/dc/12039698/1 - RCBO - Fifth Amended Complaint.docx | |
| **Modified DMS:** iw://covdocsus.cov.com/dc/12017684/14 - 2026.05.14 Sixth Amended Complaint.docx | |
| **Changes:** | |
| Add | 1537 |
| ~~Delete~~ | 1281 |
| ~~Move From~~ | 6 |
| Move To | 6 |
| Table Insert | 2 |
| ~~Table Delete~~ | 0 |
| Table moves to | 0 |
| ~~Table moves from~~ | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 2832 |