M. KEITH MOSKOWITZ (*pro hac vice*)
keith.moskowitz@dentons.com
DENTONS US LLP
233 South Wacker Drive, Suite 7800
Chicago, IL 60606
Telephone: 312 876 8000
Facsimile: 312 876 7934

LAUREN M. MACKSOUD (*pro hac vice*)
lauren.macksoud@dentons.com
DENTONS US LLP
1221 Avenue of the Americas, 25th Floor
New York, NY 10020
Telephone: 212 768 6700
Facsimile: 212 768 6800

NATALIE M. LIMBER (SBN 304252)
natalie.limber@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone: 213 623 9300
Facsimile: 213 623-9924

ANDREW D. TELLES WYATT (SBN 316740)
andrew.wyatt@dentons.com
DENTONS US LLP
4675 MacArthur Court
Newport Beach, CA 92660
Telephone: 949 732 3700
Facsimile: 949 732 3739

*Attorneys for Travelers Casualty & Surety Company*



**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

In re:

THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,

DEBTOR.

Case No. 3:24-cv-00709-JSC

Bankruptcy Case No. 23-40523 WJL

Hon. Jacqueline Scott Corley

**ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES OF TRAVELERS CASUALTY & SURETY COMPANY (F/K/A AETNA CASUALTY & SURETY COMPANY) TO PLAINTIFF'S SIXTH AMENDED COMPLAINT FOR DECLARATORY JUDGMENT RELIEF AND BREACH OF STATUTORY DUTY AND COUNTERCLAIMS**

**JURY DEMANDED**

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

THE ROMAN CATHOLIC BISHOP OF OAKLAND,

PLAINTIFF,

v.

PACIFIC INDEMNITY, a Delaware corporation; TRAVELERS CASUALTY & SURETY COMPANY F/K/A AETNA CASUALTY & SURETY COMPANY, a Connecticut corporation; INSURANCE COMPANY OF NORTH AMERICA, a Delaware corporation; UNITED STATES FIRE INSURANCE, a Delaware corporation; WESTPORT INSURANCE CORPORATION, a Delaware corporation; CONTINENTAL CASUALTY COMPANY, a Delaware corporation; PACIFIC EMPLOYERS INSURANCE, a Delaware corporation; WESTCHESTER FIRE INSURANCE COMPANY, a Pennsylvania corporation; the CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, a state entity, and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING SEVERALLY AND NOT JOINTLY TO SLIP NOS. CU 1001 AND K 66034 ISSUED TO THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, AND NOS. K 78138 AND CU 3061 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND; COMPANHIA DE SEGUROS FIDELIDADE SA F/K/A FIDELIDADE INSURANCE COMPANY OF LISBON, SUBSCRIBING TO SLIP NO. K 78138 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND; CATALINA WORTHING INSURANCE LTD F/K/A HFPI (AS PART VII TRANSFEREE OF EXCESS INSURANCE CO. LTD.); DOMINION INSURANCE COMPANY LIMITED; OCEAN MARINE INSURANCE COMPANY LIMITED (AS PART VII TRANSFEREE OF THE WORLD AUXILIARY INSURANCE CORPORATION LIMITED); ENGLISH & AMERICAN INSURANCE COMPANY LIMITED, RIVER THAMES INSURANCE COMPANY LIMITED, R&Q GAMMA

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

COMPANY LIMITED (AS PART VII TRANSFEREE OF ANGLO FRENCH LTD.); LONDON AND OVERSEAS INSURANCE COMPANY LIMITED; and ORION INDEMNITY COMPANY,

DEFENDANTS.

Travelers Casualty & Surety Company f/k/a Aetna Casualty & Surety Company ("Travelers") hereby answers and responds to Plaintiff's Sixth Amended Complaint as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this adversary proceeding pursuant to sections 157 and 1334 of title 28 of the United States Code ("Title 28").

**ANSWER:** Travelers admits that this Court has subject matter jurisdiction over this Adversary Proceeding pursuant to Section 1334 of Title 28, but denies the remaining allegations of paragraph 1.

2. Venue in this Court is proper pursuant to sections 1408 and 1409 of Title 28.

**ANSWER:** Travelers admits that venue is proper as to Plaintiff's claims against it, but lacks knowledge and information sufficient to form a belief as to the truth of paragraph 2 as to the other parties and therefore denies same.

**NATURE OF THE ACTION**

3. This is an action for declaratory judgment, breach of statutory duty, and breach of the implied covenant of good faith and fair dealing.

**ANSWER:** Travelers admits that this action purports to state various causes of action against various defendants, but denies the remaining allegations of paragraph 3.

**THE PARTIES**

4. Plaintiff THE ROMAN CATHOLIC BISHOP OF OAKLAND (herein "Plaintiff" or "RCBO") is a California corporation sole with its principal place of business in Oakland, California.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 4 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

5. Defendant PACIFIC INDEMNITY ("Pacific Indemnity") is, on information and belief, a Delaware corporation which conducted business in this District and issued written primary policies of insurance to RCBO under Policy No. LAC127792 for the period March 12, 1962 to October 25, 1963 and Policy No. LAC 155598 for the period October 25, 1963 to October 25, 1966 (the "Pacific Indemnity Policies"). Specifically, the Pacific Policies are responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 15, 42, 45, 53, 57, 65, 70, 74, 75, 79, 98, 107, 109, 114, 119, 120, 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 234, 239, 245, 252, 257, 285, 292, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Pacific Indemnity Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Pacific Indemnity Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 5 and therefore denies same.

6. Defendant TRAVELERS CASUALTY & SURETY COMPANY F/K/A AETNA CASUALTY & SURETY COMPANY is, on information and belief, a Connecticut corporation which conducted business in this District (herein "Travelers"). Travelers issued written primary policies of insurance to RCBO under Policy No. 05 AL 802025 CMA for the period December 1, 1975 to December 1, 1978; Policy No. 05 SM90296 FCA for the period December 1, 1978 to December 1, 1979; Policy No. 05 SM 99094 FCA for the period December 1, 1979 to December 1, 1980; and Policy No. 05 SM 107459 FCA for the period December 1, 1980 to December 1, 1981 (the "Travelers Primary Policies"). Specifically, the Travelers Primary Policies are responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 2, 7, 10, 13, 16, 17, 19, 20, 21, 22, 25, 26, 28, 29, 31, 33, 35, 40, 41, 42, 43, 45, 54, 56, 58, 59, 61, 63, 64, 71, 80, 82, 83, 86, 88, 92, 95, 96, 97, 99, 101, 102, 103, 104, 105, 106, 110, 115, 117, 121, 126, 128, 131, 132,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

133, 140, 144, 149, 152, 154, 157, 158, 163, 166, 168, 172, 174, 180, 181, 182, 189, 190, 191, 192, 193, 194, 198, 200, 203, 206, 208, 209, 210, 211, 212, 213, 215, 216, 223, 224, 225, 227, 229, 230, 243, 244, 247, 249, 250, 251, 256, 258, 259, 266, 267, 272, 273, 274, 295, 296, 297, 298, 304, 306, 310, 317, 318, 319, 321, 323, 324, 329, 333, 335, 343, 344, 345, 347, 349, 352, 353, 354, 359, 367, 368, 370, 373, 374, 376, 377, 379, 380, 382, 384, 386, 388, 392, 393, 399, 402, 403; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Travelers Primary Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Travelers Primary Policies.

**ANSWER:** Travelers admits that it is a Connecticut corporation which conducted business in this District. With respect to the purported "primary" policies alleged in paragraph 6 (collectively, the "Alleged Primary Policies"), Travelers has been unable to locate any policy of insurance issued to RCBO and numbered as Policy No. 05 AL 802025CMA (December 1, 1975 to December 1, 1978); Policy No. 05 SM90296FCA (December 1, 1978 to December 1, 1979); and/or Policy No. 05 SM 99094FCA (December 1, 1979 to December 1, 1980), as alleged, and therefore denies RCBO's claims for coverage thereunder. With respect to purported Policy No. 05 SM 107459FCA (December 1, 1980 to December 1, 1981), Travelers has located an incomplete copy of such a purported policy but lacks knowledge or information sufficient to form a belief as to whether the material located evidences an issued and fully in-force policy as alleged, and includes all pertinent governing provisions, and therefore denies RCBO's claims for coverage thereunder. Travelers denies the remaining allegations of paragraph 6.

7. Defendant INSURANCE COMPANY OF NORTH AMERICA (herein "INA") is, on information and belief, a Delaware corporation which conducted business in this District. INA issued written primary policies of insurance to RCBO under Policy No. CP 25231 for the policy period October 25, 1966 to October 25, 1969, and Policy No. CP 267867 for the policy period October 25,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

1969 to October 25, 1970 (the "INA Primary Policies"). Specifically, the INA Primary Policies are responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 15, 19, 23, 32, 39, 42, 43, 46, 48, 50, 52, 53, 57, 66, 68, 70, 74, 75, 77, 81, 83, 86, 87, 88, 90, 91, 98, 101, 102, 103, 105, 106, 107, 109, 129, 139, 142, 145, 147, 150, 159, 160, 175, 179, 185, 186, 187, 188, 190, 195, 196, 202, 205, 206, 207, 211, 214, 215, 218, 220, 232, 234, 235, 238, 239, 245, 251, 252, 253, 257, 264, 265, 268, 270, 279, 282, 285, 293, 303, 308, 325, 328, 336, 342, 348, 358, 360, 369, 378, 381, 385; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the INA Primary Policies, regardless of whether the alleged initial injury began during or before the policy periods of the INA Primary Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 7 and therefore denies same.

8. On information and belief, Commercial Union/Armour Insurance Company ("Commercial Union") issued written primary policies of insurance to RCBO under Policy No. EF 9334-001 for the policy period October 25, 1970 to October 26, 1972; Policy No. EF 9334-003 for the policy period October 26, 1972 to October 26, 1973; and Policy No. EF 9334-008 for the policy period October 26, 1973 to December 1, 1975 (the "Commercial Union Policies"). Commerical Union accepted the defense of some of the underlying cases but then reported that it had become insolvent. RCBO is informed and believes and thereon alleged that all layers of insurance issued to RCBO by Commercial Union are insolvent and/or exhausted. RCBO is informed and believes and thereon alleges that defendant, the CALIFORNIA INSURANCE GUARANTEE ASSOCIATION ("CIGA"), assumed the responsibilities of Commercial Union regarding the Commercial Union Policies. CIGA, while not an insurer, is a statutory entity, created and existing pursuant to Article 14.2 of the California Insurance Code. The Commercial Union Policies are responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

i. Nos. 1, 2, 3, 4, 6, 7, 8 , 9, 10, 11, 13, 14, 15, 16, 17, 19, 22, 23, 25, 26, 27, 29; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Commercial Union Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Commercial Union Policies.

**ANSWER*:*** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 8 and therefore denies same.

9. INA issued a written excess policy of insurance to RCBO under Policy No. XBC 24312 for the period October 25, 1966 to October 25, 1970 (the "INA Excess Policy"). Specifically, the INA Excess Policy is responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 15, 19, 23, 32, 39, 42, 43, 46, 48, 50, 52, 53, 57, 66, 68, 70, 74, 75, 77, 81, 83, 86, 87, 88, 90, 91, 98, 101, 102, 103, 105, 106, 107, 109, 129, 139, 142, 145, 147, 150, 159, 160, 175, 179, 185, 186, 187, 188, 190, 195, 196, 202, 205, 206, 207, 211, 214, 215, 218, 220, 232, 234, 235, 238, 239, 245, 251, 252, 253, 257, 264, 265, 268, 270, 279, 282, 285, 293, 303, 308, 325, 328, 336, 342, 348, 358, 360, 369, 378, 381, 385; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the INA Excess Policy, regardless of whether the alleged initial injury began during or before the policy periods of the INA Excess Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 9 and therefore denies same.

10. Defendant UNITED STATES FIRE INSURANCE is, on information and belief, a Delaware corporation which conducted business in this District (herein "U.S. Fire"). On information and belief, RCBO alleges that U.S. Fire issued a written policy of excess insurance to RCBO under Policy No. DCL 53 9820 for the period October 25, 1970 to October 25, 1971 (the "U.S. Fire Policy").

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Specifically, the U.S. Fire Policy is responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 14, 15, 23, 27, 39, 42, 43, 66, 77, 81, 87, 99, 100, 101, 102, 103, 104, 105, 106, 110, 112, 123, 129, 145, 146, 153, 159, 175, 184, 185, 186, 187, 188, 190, 195, 196, 206, 207, 211, 213, 214, 215, 217, 218, 220, 221, 234, 235, 236, 246, 251, 265, 270, 271, 279, 293, 303, 304, 315, 326, 334, 342, 348, 365, 369, 374, 378, 385; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the U.S. Fire Policy, regardless of whether the alleged initial injury began during or before the policy periods of the U.S. Fire Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 10 and therefore denies same.

11. Defendant WESTPORT INSURANCE CORPORATION is, on information and belief, a Delaware corporation which conducted business in this District (herein "Westport"). On information and belief, RCBO alleges that Westport issued a written policy of excess insurance to RCBO under Policy No. U10255 for the period October 26, 1971 to October 26, 1974 (the "Westport Excess Policy"). Specifically, the Westport Excess Policy is responsive to certain claims, including but not limited to the following claims as shown in Exhibit A:

i. Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 16, 17, 22, 23, 25, 26, 28, 30, 31, 33, 35, 36, 37, 40, 41, 42, 43, 44, 47, 49, 54, 58, 59, 60, 66, 67, 72, 76, 77, 80, 81, 82, 85, 87, 94, 95, 96, 97, 101, 102, 105, 106, 112, 113, 115, 117, 123, 126, 129, 131, 135, 136, 143, 145,146, 151, 153, 158, 159, 160, 162, 163, 164, 165, 167, 173, 175, 178, 180, 181, 182, 184, 185, 186, 187, 188, 190, 192, 196, 199, 200, 201, 205, 206, 207, 209, 211, 213, 215, 217, 218, 219, 221, 222, 223, 229, 235, 236, 243, 246, 251, 259, 260, 262, 269, 270, 271, 273, 294, 296, 297, 298, 302, 303, 304, 305, 315, 318, 320, 321, 233, 324, 325, 326, 327, 329, 330, 332, 333, 334, 343, 344, 346, 347, 348, 351,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

353, 356, 361 362, 367, 368, 369, 374, 375, 377, 382, 384, 385, 392, 394, 399, 401; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Westport Excess Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Westport Excess Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 11 and therefore denies same.

12. Defendant CONTINENTAL CASUALTY COMPANY is, on information and belief, a Delaware corporation which conducted business in this District (herein "CNA"). On information and belief, RCBO alleges that CNA issued written policies of excess insurance to RCBO under Policy No. RDU 146 74 50 for the period October 26, 1974 to December 1, 1977 and Policy No. UMB 006 46 71 53 for the period December 1, 1977 to December 1, 1980 (the "CNA Policies"). Specifically, the CNA Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 15, 16, 17, 19, 20, 21, 22, 25, 26, 29, 30, 31, 33, 34, 35, 37, 40, 41, 44, 47, 54, 56, 59, 63, 76, 80, 82, 83, 85, 86, 88, 92, 95, 96, 97, 99, 101, 102, 103, 105, 106, 110, 113, 115, 117, 121, 124, 126, 128, 131, 132, 140, 143, 144, 149, 151, 152, 154, 157, 158, 160, 163, 164, 165, 166, 168, 172, 173, 174, 178, 180, 181, 182, 183, 189, 190, 191, 192, 194, 198, 199, 200, 201, 203, 206, 207, 208, 209, 210, 211, 212, 213, 215, 216, 217, 224, 225, 229, 230, 244, 247, 249, 250, 251, 256, 258, 259, 266, 267, 272, 273, 274, 275, 278, 280, 284, 286, 287, 288, 294, 295, 296, 297, 298, 302, 304, 305, 306, 310, 317, 318, 321, 323, 324, 325, 327, 329, 332, 333, 335, 344, 345, 347, 349, 352, 353, 354, 356, 359, 361, 362, 367, 368, 370, 373, 374, 376, 377, 379, 380, 382, 384, 386, 388, 392, 393, 399, 402, 403; and

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the CNA Policies, regardless of whether the alleged initial injury began during or before the policy periods of the CNA Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 12 and therefore denies same.

13. On information and belief, Industrial Indemnity issued a written policy of excess insurance to RCBO under Policy No. JU 8312510 for the period December 1, 1980 to December 1, 1981, and WESTCHESTER FIRE INSURANCE COMPANY ("Westchester") assumed all the obligations under said policy (the "Westchester Policy"). Specifically, the Westchester Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 10, 19, 28, 33, 35, 61, 64, 104, 133, 140, 154, 157, 166, 180, 189, 191, 193, 194, 208, 212, 224, 225, 227, 244, 250, 251, 261, 267, 296, 317, 319, 352, 354, 367, 370, 373, 376; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Westchester Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Westchester Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 13 and therefore denies same.

14. On information and belief, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING SEVERALLY AND NOT JOINTLY TO SLIP NO. CU 1001 ISSUED TO THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, AND NO. K 78138 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND ("Lloyd's Excess") issued written policies of excess insurance to RCBO under Policies No. CU 1001 for the period March 12, 1962 to October 25, 1963, and K 78131 for the period October 25, 1963 to October 25, 1966 (the "Lloyd's Excess Policies"). Specifically, the Lloyd's Excess Policies are responsive to certain claims, including but not limited to the following claims:

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Lloyd's Excess Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Lloyd's Excess Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 14 and therefore denies same.

15. On information and belief, CATALINA WORTHING INSURANCE LTD F/K/A HFPI (AS PART VII TRANSFEREE OF EXCESS INSURANCE CO. LTD.) ("Excess Insurance Co.") issued written policies of excess insurance to RCBO under Policies No. CU 1001 for the period March 12, 1962 to October 25, 1963, and K 78131 for the period October 25, 1963 to October 25, 1966 (the "Excess Insurance Co. Policies"). Specifically, the Excess Insurance Co. Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Excess Insurance Co. Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Excess Insurance Co. Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 15 and therefore denies same.

16. On information and belief, DOMINION INSURANCE COMPANY LIMITED ("Dominion") issued written policies of excess insurance to RCBO under Policies No. CU 1001 for the period March 12, 1962 to October 25, 1963, and K 78131 for the period October 25, 1963 to

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

October 25, 1966 (the "Dominion Policies"). Specifically, the Dominion Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Dominion Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Dominion Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 16 and therefore denies same.

17. On information and belief, the OCEAN MARINE INSURANCE COMPANY LIMITED (AS PART VII TRANSFEREE OF THE WORLD AUXILIARY INSURANCE CORPORATION LIMITED) ("World Auxiliary") issued a written policy of excess insurance to RCBO under Policy No. CU 1001 for the period March 12, 1962 to October 25, 1963 (the "World Auxiliary Policy"). Specifically, the World Auxiliary Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 45, 57, 65, 79, 119, 120, 155, 176, 177, 187, 204, 299, 307, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the World Auxiliary Policy, regardless of whether the alleged initial injury began during or before the policy periods of the World Auxiliary Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 17 and therefore denies same.

18. On information and belief, the ENGLISH & AMERICAN INSURANCE COMPANY LIMITED ("English & American") issued a written policy of excess insurance to RCBO under Policy No. CU 1001 for the period March 12, 1962 to October 25, 1963 (the "English & American Policy").

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Specifically, the English & American Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 45, 57, 65, 79, 119, 120, 155, 176, 177, 187, 204, 299, 307, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the English & American Policy, regardless of whether the alleged initial injury began during or before the policy periods of the English & American Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 18 and therefore denies same.

19. On information and belief, the RIVER THAMES INSURANCE COMPANY LIMITED ("River Thames") issued a written policy of excess insurance to RCBO under Policy No. CU 1001 for the period March 12, 1962 to October 25, 1963 (the "River Thames Policy"). Specifically, the River Thames Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 45, 57, 65, 79, 119, 120, 155, 176, 177, 187, 204, 299, 307, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the River Thames Policy, regardless of whether the alleged initial injury began during or before the policy periods of the River Thames Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 19 and therefore denies same.

20. On information and belief, COMPANHIA DE SEGUROS FIDELIDADE SA F/K/A FIDELIDADE INSURANCE COMPANY OF LISBON, SUBSCRIBING TO SLIP NO. K 78138 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND ("Fidelidade") subscribed for a percentage participation of a written policy of excess insurance to RCBO under Policy Slip No. K 78131 for the period October 25, 1963 to October 25, 1966 (the "Fidelidade Excess Policy").

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Specifically, the Fidelidade Excess Policy is responsive to certain claims, including but not limited to the following:

i. Nos. 15, 42, 45, 48, 65, 74, 75, 79, 98, 114, 120, 137, 142, 147, 150, 155, 176, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Fidelidade Excess Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Fidelidade Excess Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 20 and therefore denies same.

21. Defendant Westport is, on information and belief, a Delaware corporation which conducted business in this District. On information and belief RCBO alleges that Westport issued a written umbrella policy of insurance to RCBO under Policy No. PLE20430 for the period October 16, 1974 to October 16, 1977 (the “Westport Umbrella Policy”). Specifically, the Westport Umbrella Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 20, 28, 83, 88, 140, 144, 174, 189, 249, 267, 295, 310, 323, 373, 388; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Westport Umbrella Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Westport Umbrella Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 21 and therefore denies same.

22. Defendant Travelers is, on information and belief, a Connecticut corporation which conducted business in this District. On information and belief RCBO alleges that Travelers issued written umbrella polices of insurance to RCBO under Policy No. 05 XN 55 WCA for the period December 1, 1977 to February 1, 1979; Policy No. 05 XN 75 WCA for the period February 1, 1979

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

to December 1, 1979 and Policy No. 05 XN 87 WCA for the period December 1, 1979 to December 1, 1981 (the "Travelers Umbrella Policies"). Specifically, the Travelers Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 10, 21, 29, 33, 35, 56, 61, 64, 71, 82, 83, 86, 92, 95, 96, 97, 99, 101, 102, 103, 104, 105, 106, 110, 115, 117, 121, 124, 126, 128, 131, 132, 133, 140, 149, 152, 154, 157, 158, 163, 166, 168, 174, 180, 181, 183, 189, 191, 192, 193, 194, 198, 203, 206, 208, 210, 212, 216, 224, 225, 227, 230, 243, 244, 247, 250, 251, 256, 258, 261, 266, 267, 272, 273, 274, 296, 297, 298, 310, 317, 318, 319, 321, 323, 345, 349, 352, 354, 359, 367, 370, 373, 374, 376, 379; 380, 384, 386, 402, 403; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Travelers Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Travelers Umbrella Policies.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers admits that it issued Policy No. XN 55 WCA, Policy No. 05 XN 75 WCA, and Policy No. 05 XN 87 (the "Excess Policies") to RCBO, but they are not "umbrella" policies as alleged. Travelers further admits that, while it issued Policy No. 05 XN 87, that policy was issued for the period December 1, 1979 to December 1, 1980, not the period alleged above. Travelers denies the remaining allegations of paragraph 22.

23. Defendant PACIFIC EMPLOYERS INSURANCE ("Pacific Employers") is, on information and belief, a Delaware corporation which conducted business in this District. On information and belief RCBO alleges that Pacific Employers issued a written umbrella policy of insurance to RCBO under Policy No. XCC 01 2405 for the period March 13, 1985 to December 1, 1985 (the "Pacific Employers Policy"). Specifically, the Pacific Employers Policy is responsive to certain claims, including but not limited to the following claim:

i. Nos. 12, 51, 73, 80, 118, 127, 130, 141, 171, 225, 228, 254, 314, 338, 339, 350, 363, 407; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Pacific Employers Policy, regardless of whether the alleged initial injury began during or before the policy periods of the Pacific Employers Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 23 and therefore denies same.

24. On information and belief, R&Q GAMMA COMPANY LIMITED (AS PART VII TRANSFEREE OF ANGLO FRENCH LTD.) ("Anglo French Umbrella") issued written policies of umbrella insurance to RCBO under Slip No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "Anglo French Umbrella Policies"). Specifically, the Anglo French Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Anglo French Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Anglo French Umbrella Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 24 and therefore denies same.

25. On information and belief, Excess Insurance Co. ("Excess Insurance Co. Umbrella") issued written policies of umbrella insurance to RCBO under Slip No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "Excess Insurance Co. Umbrella Policies"). Specifically, the Excess Insurance Co. Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Excess Insurance Co. Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Excess Insurance Co. Umbrella Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 26 and therefore denies same.

26. On information and belief, English & American ("English & American Umbrella") issued written policies of umbrella insurance to RCBO under Slip No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "English & American Umbrella Policies"). Specifically, the English & American Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the English & American Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the English & American Umbrella Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 26 and therefore denies same.

27. On information and belief, the LONDON AND OVERSEAS INSURANCE COMPANY LIMITED ("London & Overseas Umbrella") issued written policies of umbrella insurance to RCBO under Slips No. K 66034 for the period March 12, 1962 to October 25, 1963, and

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

CU 3061 for the period October 25, 1963 to October 25, 1966 (the "London & Overseas Umbrella Policies"). Specifically, the London & Overseas Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the London & Overseas Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the London & Overseas Umbrella Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 27 and therefore denies same.

28. On information and belief, the ORION INDEMNITY COMPANY ("Orion Umbrella") issued written policies of umbrella insurance to RCBO under Slip No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "Orion Indemnity Umbrella Policies"). Specifically, the Orion Indemnity Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Orion Indemnity Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Orion Indemnity Umbrella Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 28 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

29. On information and belief, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING SEVERALLY AND NOT JOINTLY TO SLIP NO. K 66034 ISSUED TO THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, AND NO. CU 3061 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND ("Lloyd's Umbrella") issued written policies of umbrella insurance to RCBO under Policies No. K 66034 for the period March 12, 1962 to October 25, 1963, and CU 3061 for the period October 25, 1963 to October 25, 1966 (the "Lloyd's Umbrella Policies"). Specifically, the Lloyd's Umbrella Policies are responsive to certain claims, including but not limited to the following claims:

i. Nos. 15, 42, 45, 48, 57, 65, 74, 75, 79, 98, 114, 119, 120 137, 142, 147, 150, 155, 176, 177, 185, 187, 197, 202, 204, 214, 233, 239, 252, 257, 299, 307, 308, 328, 360, 381, 383, 391; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the Lloyd's Umbrella Policies, regardless of whether the alleged initial injury began during or before the policy periods of the Lloyd's Umbrella Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 29 and therefore denies same.

30. Defendant AMERICAN HOME ASSURANCE COMPANY ("AHAC") is, on information and belief, a New York corporation which conducted business in this District. On information and belief, RCBO alleges that AHAC issued a written excess policy of insurance to RCBO under Policy No. CE 35-60-94 for the period November 15, 1971, to October 26, 1974 (the "AHAC Policy"). Specifically, the AHAC Policy is responsive to certain claims, including but not limited to the following claims:

i. Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 16, 17, 22, 23, 25, 26, 28, 30, 31, 33, 35, 36, 37, 40, 41, 42, 43, 44, 47, 49, 54, 58, 59, 60, 66, 67, 72, 76, 77, 80, 81, 82, 85, 87, 94, 95, 96, 97, 101, 102, 105, 106, 112, 113, 115, 117, 123, 126, 129, 131, 135, 136, 143, 145, 146, 151, 153, 158, 159, 160, 162, 163, 164, 165, 167, 173, 175, 178, 180, 181, 182, 184, 185, 186, 187, 188,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

190, 192, 196, 199, 200, 201, 205, 206, 207, 209, 211, 213, 215, 217, 218, 219, 221, 222, 223, 229, 235, 236, 243, 246, 251, 259, 260, 262, 269, 270, 271, 273, 294, 296, 297, 298, 302, 303, 304, 305, 315, 318, 320, 321, 233, 324, 325, 326, 327, 329, 330, 332, 333, 334, 343, 344, 346, 347, 348, 351, 353, 356, 361, 362, 367, 368, 369, 374, 375, 377, 382, 384, 385, 392, 394, 399, 401; and

ii. All claims that allege continuous or progressive injury occurring at least in part during one or more of the policy periods of the AHAC Policy, regardless of whether the alleged initial injury began during or before the policy period(s) of the AHAC Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 30 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

## FACTUAL BACKGROUND COMMON TO ALL DEFENDANTS

31. On June 22, 2023, the Plaintiff filed the First Amended Complaint for declaratory relief and breach of contract, seeking to litigate the Plaintiff's claims against numerous of its historical insurance carriers. [Docket No. 2 with attached Exhibit and Attachment (collectively, the "First Amended Complaint")]. On December 18, 2023, the Plaintiff filed the Second Amended Complaint for declaratory relief, breach of contract, and breach of statutory duty to address issues raised in various motions to dismiss, per the Court's order. On January 12, 2024, the Plaintiff filed the Third Amended Complaint for declaratory relief, breach of contract, and breach of statutory duty to include additional insurers that it alleges are liable to provide indemnity and/or defense of the underlying complaints.

**ANSWER:** Travelers admits that RCBO filed the First Amended Complaint in this action on June 22, 2023, to which Travelers responded by way of Answer thereto filed on September 1, 2023 [Docket No. 78]. Travelers admits that RCBO filed the Second Amended Complaint in this action on December 18, 2023. Travelers admits that RCBO filed the Third Amended Complaint in this action on January 12, 2024, to which Travelers responded by way of Answer thereto filed on

January 25, 2024 [Docket No. 164]. Travelers incorporates herein its Answers to the First Amended Complaint and Third Amended Complaint and denies the remaining allegations of paragraph 31.

32. The Plaintiff filed a Fifth Amended Complaint to, among other things, include additional factual detail as the Court ordered on July 11, 2024.

**ANSWER:** Travelers admits that RCBO filed the Fifth Amened Complaint in this action on July 11, 2024, and denies the remaining allegations of paragraph 32.

33. The Plaintiff files this Sixth Amended Complaint for two purposes. First, the Sixth Amended Complaint clarifies expressly that each of the Plaintiff's policies are triggered not only by claims alleging abuse during the applicable policy period and by claims alleging injury during the policy period, but also by claims alleging an initial injury beginning prior to the applicable policy period, if the plaintiff alleges continuous or progressive injury thereafter. Under California's "continuous injury" trigger of coverage, "'[t]here is no requirement that . . . the conditions giving rise to the damage or injury . . . themselves occur within the policy period in order for potential liability coverage to arise.' . . . '[B]odily injury and property damage which is continuous or progressively deteriorating throughout several policy periods is potentially covered by all policies in effect during those periods.'" *Montrose Chem. Corp. v. Superior Court,* 9 Cal. 5th 215, 227 (2020).

**ANSWER:** Paragraph 33 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 33 and therefore denies same.

34. Second, the Sixth Amended Complaint includes additional causes of action for breach of the implied duty of good faith and fair dealing against Insurer Defendants. These claims are based on Insurer Defendants' failure to accept and participate in reasonable opportunities to resolve covered claims within applicable policy limits. Against Pacific Indemnity, INA, Westchester and Pacific Employers (collectively, "Chubb"), an additional claim is based on its participation in an online campaign which directly contradicts its duty of loyalty to its insured, the Plaintiff. The Sixth Amended Complaint also incorporates RCBO's causes of action against American Home Assurance Company, which previously were proceeding under a separate complaint.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Paragraph 34 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 34 and therefore denies same.

35. RCBO has been named in more than 350 complaints primarily filed in the Alameda Superior Court as well as proofs of claim filed in the Bankruptcy Court seeking recovery for alleged negligent supervision and hiring of certain clerical and ministerial personnel over a period of decades. These suits and proofs of claim (collectively referred to as the "Suits") have been filed as a result of California's passing of AB 218, which extended the statute of limitations for the filing of similar civil actions.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 35 and therefore denies same.

36. The underlying plaintiffs allege abuse by certain clerical or ministerial personnel many years ago, including improper physical contact and bodily injury, and further allege, or could allege, continuous or progressive injury thereafter. Each insurance policy in effect when initial physical contact with a claimant occurred, and each insurance policy in effect thereafter, owes a duty to defend and/or indemnify RCBO against the claimant's Suit.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 36 and therefore denies same.

37. Although section 362 of the Bankruptcy Code provides for an automatic stay of the Suits and of additional lawsuits against the Plaintiff, RCBO is informed, and believes, that additional suits may be filed and/or served after the filing of this proceeding and RCBO will update the list as reflected in Exhibit A to reflect all such cases as appropriate.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 37 and therefore denies same.

38. RCBO has maintained insurance coverage through a series of primary, excess and umbrella insurers from the early 1960s through the present time as alleged above.

**ANSWER:** Travelers adopts and incorporates by reference its responses to paragraphs 6 and 22 above, as part of its response to paragraph 38; and is without knowledge or information sufficient

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

to form a belief regarding the truth of the remaining allegations of paragraph 38 and therefore denies same.

39. RCBO has tendered through its broker (*i.e.*, "AJG" as designated in Exhibit A) both RCBO's defense and indemnity of the Suits under all applicable insurance policies to the associated Defendants that issued those policies and were not insolvent.

**ANSWER:** Travelers adopts and incorporates by reference its responses to paragraphs 6 and 22 above, as part of its response to paragraph 39. Travelers is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations of paragraph 39 and therefore denies same.

## FIRST CAUSE OF ACTION

### (Declaratory Relief Against Pacific Indemnity - Primary

40. RCBO realleges and incorporates herein paragraphs 1 through 39 of this Complaint as if said paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 39 above as its response to paragraph 40.

41. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 41 states legal conclusions to which no response is required and Travelers therefore denies same.

42. An actual and justiciable controversy exists between RCBO and Pacific Indemnity with respect to whether Pacific Indemnity is obligated to provide RCBO with indemnity under its insurance policies (the "Pacific Indemnity Policies") regarding the subset of the Suits for which RCBO alleges Pacific Indemnity is obligated to provide RCBO with indemnity, as set forth in Paragraph 5 (the "Pacific Indemnity Covered Claims").

**ANSWER:** Paragraph 42 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 42 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

43. Pursuant to the terms of the Pacific Indemnity Policies, Pacific Indemnity is obligated to, among other things, indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Pacific Indemnity Covered Claims.

**ANSWER:** Paragraph 43 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 43 and therefore denies same.

44. RCBO has fully satisfied all conditions required under the Pacific Indemnity Policies, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 44 and therefore denies same.

45. RCBO's broker and/or RCBO tendered the Pacific Indemnity Covered Claims to Pacific Indemnity on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 45 and therefore denies same.

46. Pacific Indemnity has agreed to provide a defense to RCBO for the Pacific Indemnity Covered Claims under a reservation of rights.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 46 and therefore denies same.

47. Pacific Indemnity's reservation of rights includes Pacific Indemnity's position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the [Pacific Indemnity Policies]."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. For certain claims, Pacific Indemnity contends it "has not located any evidence of the existence of any policies issued to [RCBO] during the period when the plaintiffs or claimants allege they were abused."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

iv. The Pacific Indemnity Policies "may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

v. "To the extent emotional distress is alleged without any physical injury, there is no coverage."

vi. "To the extent [RCBO] is liable for damages not resulting from `bodily injury,' there would be no coverage."

vii. "To the extent the evidence demonstrates that [RCBO] `expected or intended' injury to the subject claimant, coverage will be barred."

viii. The alleged conduct may also be "excluded as uninsurable willful conduct pursuant to California Insurance Code § 533."

ix. "To the extent [RCBO] breached any notice provision contained in the 1963-1966 Pacific Indemnity Primary Policies, there is no coverage."

x. The Pacific Indemnity Primary Policies "may also contain additional exclusions that exclude coverage for damages arising out of sexual abuse."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 47 and therefore denies same.

48. In addition, Pacific Indemnity reserved further rights to deny coverage as follows:

i. Pacific Indemnity "reserves rights to the extent the [Pacific Indemnity Policies are] exhausted and [it has] no further defense or indemnity obligations under the [Policies]."

ii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iii. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, Pacific Indemnity reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

iv. "The right to assert the [] limit of liability" based on damages "as the result of any one occurrence."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

v. The right "to determine the number of claim(s) and/or occurrence(s) that exist in this matter, if any."

vi. The right "to deny coverage under the 1963-55 Pacific Indemnity Primary Policy for any amounts that are uninsurable pursuant to applicable law."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 48 and therefore denies same

49. It is RCBO's position that the above reservations of rights are without both factual and legal merit.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 49 and therefore denies same

50. For example, Pacific Indemnity has reserved its right to deny its indemnity obligation under the Pacific Indemnity Policies on the grounds that the Pacific Indemnity Covered Claims allege injuries that were "'expected' or `intended' from the standpoint of the RCBO" or that do not constitute covered `bodily injury.'" Such defenses to indemnity do not apply because the Pacific Indemnity Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Pacific Indemnity Policies define that term, within the Pacific Indemnity Policy `s coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Pacific Indemnity Covered Claims.

i. Claim 74 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiffs protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and "failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83), and that such negligence caused the plaintiff bodily injury, including "severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 75).

ii. Claim 142 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiffs protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 197 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiffs protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

iv. Claim 245 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

v. Claim 360 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 99).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 50 and therefore denies same

51. The remaining Pacific Indemnity Covered Claims not listed in Paragraph 47 and 48 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Pacific Indemnity Policies define that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 51 and therefore denies same

52. The asserted reservations of rights set forth in Paragraphs 47 and 48 do not provide Pacific Indemnity valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Pacific Indemnity Covered Claims under the Pacific Indemnity Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Pacific Indemnity Covered Claims present covered claims which are legally insurable. Further, RCBO has

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

not received any notice that the limits of liability of the Pacific Indemnity Policies have been exhausted or that limits have been reduced.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 52 and therefore denies same

53. Pacific Indemnity has improperly denied and/or failed to provide indemnity for the Pacific Indemnity Covered Claims, as required under the Pacific Indemnity Policies. *See* Exhibit A. RCBO continues to seek indemnity from Pacific Indemnity under the Pacific Indemnity Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 53 and therefore denies same

54. The Pacific Indemnity Policies provide coverage for, and do not exclude, the Pacific Indemnity Covered Claims, and Pacific Indemnity is obligated to indemnify RCBO for any settlement or judgment resolving, the Pacific Indemnity Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 54 and therefore denies same

55. The Pacific Indemnity Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 55 and therefore denies same

56. RCBO sent Pacific Indemnity a letter on May 30, 2024, demanding Pacific Indemnity indemnify RCBO for the Pacific Indemnity Covered Claims up to the policy limits under the Pacific Indemnity Policies (the "Pacific Indemnity Policy Limits Letter").

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 56 and therefore denies same

57. Pacific Indemnity failed to respond to the Pacific Indemnity Policy Limits Letter confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the Pacific Indemnity Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 57 and therefore denies same

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

58. The Official Committee of Unsecured Creditors ("UCC") sent Chubb a letter on July 3, 2024, demanding they pay a sum of $219.2 million, which is within the policy limits of the Chubb policies, including the Pacific Indemnity Policies, to resolve the Pacific Indemnity Covered Claims alleged against RCBO (the "UCC Chubb Demand Letter").

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 58 and therefore denies same

59. On August 6, 2024, Pacific Indemnity responded to the UCC Chubb Demand letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the Pacific Indemnity Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 59 and therefore denies same

60. An actual controversy of a justiciable nature presently exists between RCBO and Pacific Indemnity concerning the proper construction of the Pacific Indemnity Policies, whether Pacific Indemnity's cited grounds for reservation of rights to deny coverage under the Pacific Indemnity Policies are valid, whether there is any coverage for the Pacific Indemnity Covered Claims under the Pacific Indemnity Policies, Pacific Indemnity's and RCBO's respective rights and obligations under the Pacific Indemnity Policies with respect to the Pacific Indemnity Covered Claims, and whether Pacific Indemnity should participate in settlement and/or indemnity regarding the Pacific Indemnity Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 60 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 60 and therefore denies same.

61. RCBO is entitled to a declaratory judgment stating Pacific Indemnity has issued the Pacific Indemnity Policies to RCBO, the Pacific Indemnity Policies cover the Pacific Indemnity Covered Claims, and RCBO is entitled to indemnity regarding the Pacific Indemnity Covered Claims under the Pacific Indemnity Policies.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Paragraph 61 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 61 and therefore denies same.

**SECOND CAUSE OF ACTION**

**(Declaratory Relief Against Travelers - Primary)**

62. RCBO realleges and incorporates herein paragraphs 1 through 61 of this Complaint as if said paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 61 above as its response to paragraph 62.

63. To state a claim for a declaratory judgment, a party needs to plead an actual controversy.28 U.S.C. § 2201.

**ANSWER:** Paragraph 63 states legal conclusions to which no response is required and Travelers therefore denies the same.

64. An actual and justiciable controversy exists between RCBO and Travelers with respect to whether Travelers is obligated to provide RCBO with indemnity under the Travelers Primary Policies regarding the subset of the Suits for which RCBO alleges Travelers is obligated to provide RCBO with indemnity, as set forth in Paragraph 6 (the "Travelers Covered Claims").

**ANSWER*:*** Paragraph 64 states legal conclusions to which no response is required and Travelers therefore denies the same.

65. Pursuant to the terms of the Travelers Primary Policies, Travelers is obligated to, among other things, indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Travelers Covered Claims.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 65. Travelers denies the remaining allegations in paragraph 65.

66. RCBO has fully satisfied all conditions required under the Travelers Primary Policies, or is otherwise excused from doing so.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 66. Travelers denies the remaining allegations in paragraph 66.

67. RCBO's broker and/or RCBO tendered the Travelers Covered Claims to Travelers on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 67. Travelers admits that it has received certain tenders from RCBO.

68. Travelers has agreed to provide a defense to RCBO for the Travelers Covered Claims under a reservation of rights. Travelers has denied and/or failed to provide indemnity for the Travelers Covered Claims, as required under the Travelers Primary Policies. *See* Exhibit A. RCBO continues to seek indemnity from Travelers under the Travelers Primary Policies.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 68. Travelers admits that it has agreed to provide a defense under a reservation of rights to RCBO for the claims that RCBO has tendered to Travelers. Travelers admits that it has denied to indemnify RCBO for the claims that RCBO has tendered to Travelers. Travelers admits that RCBO continues to seek indemnity from Travelers. Except as so admitted, Travelers denies the remaining allegations of paragraph 68.

69. Travelers' reservation of rights includes Travelers' position that it may deny coverage on the following bases:

i. Travelers "never issued the Alleged Primary Policies and/or that those Primary Policies are lost,"

ii. Travelers "has no duty to defend or indemnify the RCBO in connection with matter because the alleged injuries at issue involve emotional or psychological injury as opposed to physical injury to the body and, therefore, do not constitute covered `bodily injury,'"

iii. The alleged injuries "occurred outside the effective period of the Primary Policy,"

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

iv. "[T]he alleged injuries were 'expected' or 'intended' from the standpoint of the RCBO,"

v. "Applicable law does not permit the recovery of insurance proceeds for losses known by the insured to be substantially certain to occur or losses that are otherwise not fortuitous,"

vi. "The Claimants allege generally that the RCBO is liable for willful and intentional acts" and California law "bar[s] coverage for the claims asserted,"

vii. California law "bar[s] indemnification for punitive damages,"

viii. "[R]egardless of the number of sexual abuse claims that are made or suits brought pertaining to alleged sexual abuse, the limit of liability of Travelers applicable to all judgments in or settlements of such matters is the 'each occurrence' limit. Travelers reserves the right to assert that the 'each occurrence' limit of a Primary Policy is impaired or exhausted as a result of prior payments made by Travelers in connection with injuries of the type alleged in the matter,"

ix. "[T]here is no coverage in connection with the matter because the RCBO did not comply with the notice conditions of a Policy,"

x. Travelers is not obligated to defend or indemnify RCBO "in the event this condition [requiring cooperation with Travelers] has been violated or is violated in the future,"

xi. Travelers has no obligation to defend or indemnify RCBO "in the event this condition [prohibiting RCBO from making a voluntary payment at the time of the accident] has been violated or is violated in the future," and

xii. Travelers may "limit any obligation it might have under a Policy and [] seek contribution toward any sums expended from any other insurer whose coverage may apply to a matter."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers admits that paragraph 69 outlines the bases for Travelers' reservation of rights. Travelers otherwise avers that its reservation of rights letters are the best evidence of their contents and to the extent any allegations are inconsistent with them, Travelers specifically denies them.

70. It is RCBO's position the above reservations of rights are without both factual and legal merit.

**ANSWER:** Travelers denies that its reservations of rights are without factual and legal merit.

71. For example, Travelers has reserved its right to deny its indemnity obligation under the Travelers Primary Policies on the grounds that the Travelers Covered Claims allege injuries that were "'expected' or 'intended' from the standpoint of the RCBO" or are "willful" or do not constitute covered 'bodily injury.'" Such defenses to indemnity do not apply because the Travelers Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Travelers Primary Policies define that term, within the Travelers Primary Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Travelers Covered Claims.

i. Claim 20 includes negligence allegations that RCBO "failed to take reasonable steps or implement reasonable safeguards for Plaintiffs protection" (¶ 121) and "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRATOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent the childhood sexual assault, abuse, and harassment of minor children, including Plaintiff' (¶ 125), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical, psychological, emotional, and economic harm" (¶ 129).

ii. Claim 21 includes negligence allegations that RCBO "failed to take reasonable steps or implement reasonable safeguards for Plaintiffs





DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

protection" (¶ 51) and "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRTOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent the childhood sexual assault, abuse, and harassment of minor children, including Plaintiff" (¶ 54), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical, psychological, emotional, and economic harm" (¶ 52).

iii. Claim 22 includes negligence allegations that RCBO "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER, including but not limited to preventing or avoiding placement of ABUSER in a function or environment in which contact with children is an inherent aspect of the function or environment" (¶ 35) and "failed to supervise Plaintiff JOHN DOE PD, a minor, and failed to use reasonable care in protecting Plaintiff JOHN DOE PD, a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse, while Plaintiff JOHN DOE PD, a minor, was involved in activities sponsored, supervised, organized or directed by [RCBO] or their agents and employees" (¶ 44), and that as a result of such negligence the plaintiff "suffered economic, physical, psychological and emotional harm" (¶ 38).

iv. Claim 29 includes negligence allegations that RCBO "[was] at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 9) and "[was] further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 9), and

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 10).

v. Claim 132 includes negligence allegations that RCBO "failed to take reasonable steps or implement reasonable safeguards for Plaintiffs protection" (¶ 47) and "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRATOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent the childhood sexual assault, molestation and harassment of minors, including Plaintiff' (¶ 50), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical, psychological, emotional and economic harm" (¶ 48).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 71. Travelers admits that it has reserved its right to deny indemnification for RCBO to the extent that the claims that RCBO has tendered to Travelers allege injuries that were "expected" or "intended" from the standpoint of RCBO or are "willful" or do not constitute covered "bodily injury." Travelers denies that these defenses do not apply. Travelers is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations of paragraph 71 and therefore denies same.

72. The remaining Travelers Covered Claims not listed in Paragraph 71 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Travelers Primary Policies define that term.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 72. Travelers denies that the claims RCBO has tendered to Travelers constitute a "bodily injury" caused by an "occurrence" as defined in the Alleged

Primary Policies. Travelers is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations of paragraph 72 and therefore denies same.

73. The asserted reservations of rights set forth in Paragraph 69 do not provide Travelers valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Travelers Covered Claims under the Travelers Primary Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Travelers Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Travelers Policies have been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Travelers as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 73. Travelers admits that it has not given RCBO any notice that the Alleged Primary Policies have been exhausted or that their limits have been reduced. Travelers denies the remaining allegations in paragraph 73.

74. RCBO sent Travelers a letter on May 30, 2024, demanding Travelers indemnify RCBO for the Travelers Covered Claims up to the policy limits under the Travelers Primary Policies (the "Travelers Policy Limits Letter").

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 74. Travelers admits that RCBO sent Travelers a letter dated May 30, 2024 demanding that Travelers indemnify RCBO for certain claims up to the policy limits of the Alleged Primary Policies. However, Travelers denies that this letter was a valid policy limits demand letter. Travelers otherwise avers that the letter dated May 30, 2024 is the best evidence of its contents and to the extent any allegations are inconsistent with it, Travelers specifically denies them.

75. Travelers failed to respond to the Policy Limits Letter confirming it will indemnify RCBO in response to the Policy Limits Letter, and thereby has failed to provide the benefits of the Travelers Primary Policies to RCBO.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 75. Travelers admits that its counsel responded to RCBO's letter dated May 30, 2024 by letter dated July 1, 2024 setting forth Travelers' position that RCBO's letter was not a proper policy limits demand letter and that the letter failed to provide sufficient information for Travelers to evaluate RCBO's demand. Travelers otherwise avers that its response letter dated July 1, 2024 is the best evidence of its contents and to the extent any allegations are inconsistent with it, Travelers specifically denies them. Travelers denies the remaining allegations in paragraph 75 and expressly denies that any benefits are owed to RCBO under the Alleged Primary Policies.

76. The UCC sent Travelers a letter on July 3, 2024, demanding Travelers pay a sum within the policy limits of the Travelers Primary Policies to resolve the Travelers Covered Claims (the "UCC Travelers Demand Letter").

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 76. Travelers admits that the UCC sent Travelers a letter dated July 3, 2024 demanding that Travelers pay a sum to resolve the claims that RCBO has tendered to Travelers. Travelers otherwise avers that the UCC Demand Letter is the best evidence of its contents and to the extent any allegations are inconsistent with it, Travelers specifically denies them.

77. On August 6, 2024, Travelers responded to the UCC Travelers Demand letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the Travelers Primary Policies to RCBO.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 77. Travelers admits that its counsel responded to the UCC Travelers Demand Letter by letter dated August 6, 2024, setting forth its position that the UCC Travelers Demand Letter was not a proper policy limits demand letter and that the UCC Travelers Demand Letter did not include sufficient information for Travelers to properly consider the demand. Travelers otherwise avers that its response letter dated August 6, 2024 is the best evidence of its contents and to the extent any allegations are inconsistent with it, Travelers specifically denies them.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Travelers denies the remaining allegations in paragraph 77 and expressly denies that any benefits are owed to RCBO under the Alleged Primary Policies.

78. The Travelers Primary Policies provide coverage for, and do not exclude, the Travelers Covered Claims, and Travelers is obligated to indemnify RCBO for any settlement or judgment resolving, the Travelers Covered Claims.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 78. Travelers denies the allegations in paragraph 78.

79. The Travelers Primary Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 79. Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 79 and therefore denies same.

80. An actual controversy of a justiciable nature presently exists between RCBO and Travelers concerning the proper construction of the Travelers Primary Policies, whether Travelers' cited grounds for reservation of rights to deny coverage under the Travelers Primary Policies are valid, whether there is any coverage for the Travelers Covered Claims under the Travelers Policy, Travelers' and RCBO's respective rights and obligations under the Travelers Primary Policies with respect to the Travelers Covered Claims, and whether Travelers should participate in settlement regarding the Travelers Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 80. Paragraph 80 states legal conclusions to which no response is required and Travelers therefore denies the same.

81. RCBO is entitled to a declaratory judgment stating Travelers has issued the Travelers Primary Policies to RCBO, the Travelers Primary Policies cover the Travelers Covered Claims, and that RCBO is entitled to indemnity regarding the Travelers Covered Claims under the Travelers Primary Policies.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 6 above, as part of its response to paragraph 81. Travelers admits that RCBO is seeking declaratory judgment as set forth in paragraph 81 but denies that RCBO is entitled to the same.

**THIRD CAUSE OF ACTION**

**(Declaratory Relief Against INA - Primary)**

82. RCBO realleges and incorporates herein paragraphs 1 through 81 of this Complaint as if said paragraphs were set forth in full.

**ANSWER*:*** Travelers adopts and incorporates its responses to paragraphs 1 through 81 above as its response to paragraph 82.

83. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 83 states legal conclusions to which no response is required and Travelers therefore denies same.

84. An actual and justiciable controversy exists between RCBO and INA with respect to whether INA is obligated to provide RCBO with indemnity under the INA Primary Policies regarding the subset of the Suits for which RCBO alleges INA is obligated to provide RCBO with indemnity, as set forth in Paragraph 7 (the "INA Primary Covered Claims").

**ANSWER:** Paragraph 84 states legal conclusions to which no response is required and Travelers therefore denies same.

85. Pursuant to the terms of the INA Primary Policies, INA is obligated to, among other things, indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the INA Primary Covered Claims.

**ANSWER:** Paragraph 85 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 85 and therefore denies same.

86. RCBO has fully satisfied all conditions required under the INA Primary Policies, or is otherwise excused from doing so.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 86 and therefore denies same.

87. RCBO's broker and/or RCBO tendered the INA Primary Covered Claims to INA on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 87 and therefore denies same.

88. INA has agreed to provide a defense to RCBO for the INA Primary Covered Claims under a reservation of rights. INA has denied and/or failed to provide indemnity for the INA Primary Covered Claims, as required under the INA Primary Policies. *See* Exhibit A. RCBO continues to seek indemnity from INA under the INA Primary Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 88 and therefore denies same.

89. INA's reservation of rights includes INA's position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the Policies."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. For certain claims, INA "has not located any evidence of the existence of any policies issued to [RCBO] during the period when the plaintiffs or claimants allege they were abused."

iv. "[The INA Primary] Policies may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

v. "To the extent emotional distress is alleged without any physical injury, there is no coverage."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

vi. "To the extent [RCBO] is liable for damages not resulting from `bodily injury' as defined by the INA Primary Policies, there would be no coverage."

vii. "To the extent the evidence demonstrates that [RCBO] `expected or intended' injury to the subject claimant, coverage will be barred."

viii. The alleged conduct may also be "excluded as uninsurable willful conduct pursuant to California Insurance Code § 533."

ix. "To the extent [RCBO] breached any notice provision contained in the INA Primary Policies, there is no coverage."

x. The INA Primary Policies "may also contain additional exclusions that exclude coverage for damages arising out of sexual abuse."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 89 and therefore denies same.

90. In addition, INA reserved further rights to deny coverage as follows:

i. INA "reserves rights to the extent the Policies are exhausted and [it has] no further defense or indemnity obligations under the Policies."

ii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iii. "An accident is not present when the insured performs a deliberate act and INA reserves its rights accordingly to deny coverage."

iv. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, INA reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

v. "The right to assert the [] limit of liability" based on damages "as the result of any one occurrence or accident."

vi. The right "to determine the number of claim(s) and/or occurrence(s) that exist in this matter, if any."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

vii. INA "reserves its rights under the premises clause of the insuring agreement."

viii. The right "to deny coverage under the INA Primary Policies for any amounts that are uninsurable pursuant to applicable law."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 90 and therefore denies same.

91. It is RCBO's position that the above reservations of rights are without both factual and legal merit.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 91 and therefore denies same.

92. For example, INA has reserved its right to deny its indemnity obligation under the INA Primary Policies on the grounds that the INA Primary Covered Claims allege injuries that were "expected" or "intended" from the standpoint of the RCBO or that do not constitute covered "bodily injury." Such defenses to indemnity do not apply because the INA Primary Covered Claims allege RCBO was negligent (i.e., did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the INA Primary Policies define that term, within the INA Primary Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the INA Primary Covered Claims.

i. Claim 81 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 64) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 46), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 69).

ii. Claim 129 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

iii. Claim 303 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iv. Claim 348 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 75).

v. Claim 361 includes negligence allegations that RCBO "negligently failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse" (¶ 38) and "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER" (¶ 29), and that such negligence caused the plaintiff bodily injury, including "physical, psychological and emotional harm" (¶ 32).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 91 and therefore denies same.

93. The remaining INA Primary Covered Claims not listed in Paragraph 92 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the INA Primary Policies define that term

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 93 and therefore denies same.

94. The asserted reservations of rights set forth in Paragraphs 89 and 90 do not provide INA valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the INA Primary Covered Claims under the INA Primary Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the INA Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the INA Policies have either been exhausted or that limits have been reduced. Finally, RCBO has fully

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

cooperated with INA as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 94 and therefore denies same.

95. RCBO sent INA a letter on May 30, 2024, demanding INA indemnify RCBO for the INA Covered Claims up to the policy limits under the INA Primary Policies (the "INA Policy Limits Letter").

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 95 and therefore denies same.

96. INA failed to respond to the INA Policy Limits Letter confirming it will indemnify RCBO in response to the Policy Limits Letter, and thereby has failed to provide the benefits of the INA Primary Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 96 and therefore denies same.

97. The UCC sent Chubb the UCC Chubb Demand Letter on July 3, 2024, demanding they pay a sum of $219.2 million, which is within the policy limits of the Chubb Policies, including the INA Primary Policy, to resolve the INA Primary Covered Claims alleged against RCBO.

**ANSWER*:*** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 97 and therefore denies same.

98. On August 6, 2024, INA responded to the UCC Chubb Demand letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the INA Primary Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 98 and therefore denies same.

99. The INA Primary Policies provide coverage for, and do not exclude, the INA Primary Covered Claims, and INA is obligated to indemnify RCBO for any settlement or judgment resolving, the INA Primary Covered Claims.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 99 and therefore denies same.

100. The INA Primary Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 100 and therefore denies same.

101. An actual controversy of a justiciable nature presently exists between RCBO and INA concerning the proper construction of the INA Primary Policies, whether INA's cited grounds for reservation of rights to deny coverage under the INA Primary Policies are valid, whether there is any coverage for the INA Primary Covered Claims under the INA Primary Policies, INA's and RCBO's respective rights and obligations under the INA Primary Policies with respect to the INA Primary Covered Claims, and whether INA should participate in settlement regarding the INA Primary Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 101 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 101 and therefore denies same.

102. RCBO is entitled to a declaratory judgment stating INA has issued the INA Primary Policies to RCBO, the INA Primary Policies cover the INA Primary Covered Claims, and that RCBO is entitled to indemnity regarding the INA Primary Covered Claims under the INA Primary Policies.

**ANSWER:** Paragraph 102 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 102 and therefore denies same.

**FOURTH CAUSE OF ACTION**

**(Declaratory Relief Against CIGA)**

103. RCBO realleges and incorporates herein Paragraphs 1 through 102 of this Complaint as if said Paragraphs were set forth in full.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 102 above as its response to paragraph 103.

104. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 104 states legal conclusions to which no response is required and Travelers therefore denies same.

105. An actual and justiciable controversy exists between RCBO and CIGA with respect to whether CIGA is obligated to indemnify RCBO pursuant to its statutory obligations, in relation to the Commercial Union Policies regarding the subset of the Suits for which RCBO alleges CIGA is obligated to provide RCBO with indemnity, as set forth in Paragraph 8 (the "Commercial Union Covered Claims").

**ANSWER:** Paragraph 105 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 105 and therefore denies same.

106. "CIGA's authority and liability are limited to paying `covered claims.'" *Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 128 Cal. App. 4th 307, 313, 26 Cal. Rptr. 3d 845, 848 (2005).

**ANSWER:** Paragraph 106 states legal conclusions to which no response is required and Travelers therefore denies same.

107. A covered claims means "(1) … the obligations of an insolvent insurer, including the obligation … (i) imposed by law and within the coverage of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; ... (iv) which were incurred prior to the date coverage under the policy terminated …" *Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 153 Cal. App. 4th 524, 532-33 (2007) (citing Cal. Ins. Code, § 1063.1, subd. (c)(1)).

**ANSWER:** Paragraph 107 states legal conclusions to which no response is required and Travelers therefore denies same.

108. Commercial Union has become insolvent but had acknowledged potential coverage for the Suits tendered to it by RCBO.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 108 and therefore denies same.

109. RCBO timely presented the claims to the liquidator prior to the date coverage under the policy terminated. Therefore, the claims qualify as covered claim under the statute.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 109 and therefore denies same.

110. There is no, or there is a substantial likelihood that there will not be any, other insurance available for the Commercial Union Covered Claims because Commercial Union is insolvent, and the Commercial Union Covered Claims are likely to exhaust other applicable insurance policies.

ANSWER: Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 110 and therefore denies same.

111. Specifically, there is a substantial likelihood the Commercial Union Covered Claims will exhaust the following insurance policies: United States Fire Insurance policy no. DCL 53 98 20, for the policy period of October 25, 1970 — October 26, 1971 ($5,000,000 limit); Westport policy no. U10255, for the policy period of November 16, 1971 — October 26, 1974 ($5,000,000 limit); American Home policy no. CE-60-94, for the policy period of November 16, 1971 — October 26, 1974 ($2,000,000 limit); CNA policy no. RDU 146 74 50, for the policy period of October 26, 1974 — December 1, 1975 ($1,000,000 limit); and Westport policy no. PLE 20430, for the policy period of October 26, 1974 — December 1, 1975 ($5,000,000 limit) (together, the "Other Insurers" and the "Other Insurance Policies"). There are 22 Commercial Union Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 111 and therefore denies same.

112. Data from past clergy sexual abuse cases indicate the Commercial Union Covered Claims will far exceed the limits of the Other Insurance Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

negligent supervision. The UCC sent each of the Other Insurers a letter on July 3, 2024, demanding they pay $56.7 million (United States Fire), $308.9 million (Westport), $11.9 million (American Home), and $162.6 million (CNA), respectively—all amounts within limits of each of the Other Insurance Policies—to resolve the Commercial Union Covered Claims alleged against RCBO. The UCC based the amounts demanded on its reasonable estimate of the value of the claims covered by the Other Insurance Policies, including the Commercial Union Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Commercial Union Covered Claims will exhaust the Other Insurance Policies. *See Jane Doe 3, et al. v. Roe #1, et al.,* Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.,* Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 112 and therefore denies same.

113. CIGA has expressed the position that it does not have any obligation to indemnify RCBO in relation to the Commercial Union Policies and the Commercial Union Covered Claims.

**ANSWER*:*** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 113 and therefore denies same.

114. CIGA's position is without both factual and legal merit. The Commercial Union Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Commercial Union Policies define that term, within the Commercial Union Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Commercial Union Covered Claims.

i. Claim 6 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff' (¶ 13) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on

its property and engaged in its activities" (¶ 13), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 14).

ii. Claim 99 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [RCBO] failed to provide reasonable supervision of the DOE PERPETRATOR. [RCBO] further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff" (¶ 83), and that as a result of such negligence the plaintiff "suffered and will continue to suffer the physical injury of sexual assault" (¶ 99).

iii. Claim 235 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR l's and PERPETRATOR 2's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiffs protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 49).

iv. Claim 348 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 75).

v. Claim 361 includes negligence allegations that RCBO "negligently failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse" (¶ 38) and "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER" (¶ 29), and that such negligence caused the plaintiff bodily injury, including "physical, psychological and emotional harm" (¶ 32).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 114 and therefore denies same.

115. As the successor-in-interest to Commercial Union, which accepted defense of and acknowledged its potential coverage obligations with respect to the Commercial Union Covered Claims, CIGA is obligated to defend and indemnify RCBO against the Commercial Union Covered Claims, subject only to the statutory limitations on CIGA's payment obligations.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 115 and therefore denies same.

116. An actual controversy of a justiciable nature presently exists between RCBO and CIGA concerning CIGA's obligation to indemnify RCBO for the Commercial Union Covered Claims.

**ANSWER:** Paragraph 116 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 116 and therefore denies same.

117. RCBO is entitled to a declaratory judgment stating the Commercial Union Covered Claims are "covered claims" triggering CIGA's statutory coverage and indemnification obligations and that RCBO is entitled to indemnity regarding the Commercial Union Covered Claims.

**ANSWER:** Paragraph 117 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 117 and therefore denies same.

**FIFTH CAUSE OF ACTION**

**(Declaratory Relief Against INA - Excess)**

118. RCBO realleges and incorporates herein Paragraphs 1 through 117 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 117 above as its response to paragraph 115.

119. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 119 states legal conclusions to which no response is required and Travelers therefore denies same.

120. An actual and justiciable controversy exists between RCBO and INA with respect to whether INA is obligated to provide RCBO with defense and indemnity under the INA Excess Policy regarding the subset of the Suits for which RCBO alleges INA is obligated to provide RCBO with indemnity, as set forth in Paragraph 10 (the "INA Excess Covered Claims").

**ANSWER:** Paragraph 120 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 120 and therefore denies same.

121. Pursuant to the terms of the INA Excess Policy, INA is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the INA Excess Covered Claims.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Paragraph 121 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 121 and therefore denies same.

122. RCBO has fully satisfied all conditions required under the INA Excess Policy, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 122 and therefore denies same.

123. RCBO's broker and/or RCBO tendered the INA Excess Covered Claims to INA on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 123 and therefore denies same.

124. INA agreed to provide defense to RCBO for certain of the INA Excess Covered Claims. However, INA denied and/or failed to confirm it will indemnify RCBO for the INA Excess Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 124 and therefore denies same.

125. INA has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the INA Excess Policy that, in turn, will exhaust those policies and trigger INA's obligation to provide the benefits of the INA Excess Policy to RCBO. Rather, INA reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 125 and therefore denies same.

126. INA's reservation of rights includes INA's position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the [INA Excess Policy]."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

iii. For certain claims, INA "has not located any evidence of the existence of any policies issued to [RCBO] during the period when the plaintiffs or claimants allege they were abused."

iv. "[The INA Excess Policy] may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

v. "To the extent emotional distress is alleged without any physical injury, there is no coverage."

vi. "To the extent [RCBO] is liable for damages not resulting from `bodily injury' as defined by the INA Primary [and/or Excess] Policies, there would be no coverage."

vii. "To the extent the evidence demonstrates that [RCBO] `expected or intended' injury to the subject claimant, coverage will be barred."

viii. The alleged conduct may also be "excluded as uninsurable willful conduct pursuant to California Insurance Code § 533."

ix. "To the extent [RCBO] breached any notice provision contained in the INA Primary [and/or Excess] Policies, there is no coverage."

x. The INA Excess Policy "may also contain additional exclusions that exclude coverage for damages arising out of sexual abuse."

xi. The "INA Excess Policy would only provide coverage if the limits of the respective year's underlying policies are exhausted."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 126 and therefore denies same.

127. In addition, INA reserved further rights to deny coverage as follows:

i. INA "reserves rights to the extent the Policies are exhausted and [it has] no further defense or indemnity obligations under the Policies."

ii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

iii. "An accident is not present when the insured performs a deliberate act and INA reserves its rights accordingly to deny coverage."

iv. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, INA reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

v. "The right to assert the [] limit of liability" based on damages "as the result of any one occurrence or accident."

vi. The right "to determine the number of claim(s) and/or occurrence(s) that exist in this matter, if any."

vii. INA "reserves its rights under the premises clause of the insuring agreement."

viii. The right "to deny coverage under the [INA Excess Policy] for any amounts that are uninsurable pursuant to applicable law.".

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 127 and therefore denies same.

128. It is RCBO's position the above reservations of rights are without both factual and legal merit. For example, INA has reserved its right to deny its defense and indemnity obligation under the INA Excess Policy on the grounds that the INA Excess Covered Claims allege injuries where "[RCBO]`expected or intended' injury to the subject claimant that were "expected or intended from the standpoint of [RCBO]" or where "[RCBO] is liable for damages not resulting from `bodily injury'." Such reservations of rights as to defense and/or indemnity do not apply because the INA Excess Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the INA Excess Policy defines that term, within the INA Excess Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the INA Excess Covered Claims.

i. Claim 81 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 64) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 46), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 69).

ii. Claim 129 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

iii. Claim 303 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iv. Claim 348 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 75).

v. Claim 361 includes negligence allegations that RCBO "negligently failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse" (¶ 38) and "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER" (¶ 29), and that such negligence caused the plaintiff bodily injury, including "physical, psychological and emotional harm" (¶ 32).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 128 and therefore denies same.

129. The remaining INA Excess Covered Claims not listed in Paragraph 128 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the INA Excess Policy defines that term.

**ANSWER*:*** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 129 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

130. As a further example, INA reserved its right to deny coverage under the INA Excess Policy to the extent the applicable underlying insurance has not been exhausted. This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 131-132.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 130 and therefore denies same.

131. There is a substantial likelihood that the INA Excess Covered Claims will exhaust the primary insurance underlying the INA Excess Policy. The underlying INA primary policies, whose policy numbers are, upon information and belief, CP 25231 and CP 267867, each have limits of $100,000 per occurrence and $300,000 in the aggregate (the "10/25/66-10/25/70 INA Primary Policies"). There are at least 91 INA Excess Covered Claims that trigger the coverage periods for the 10/25/66-10/25/70 INA Primary Policies and the INA Excess Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 131 and therefore denies same.

132. Data from past clergy sexual abuse cases indicate the INA Excess Covered Claims will far exceed the per occurrence and aggregate limits of the 10/25/66-10/25/70 INA Primary Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Chubb the UCC Chubb Demand Letter on July 3, 2024, demanding they pay a sum of $219.2 million (the "UCC Chubb Demand Amount"), which is within the policy limits of the Chubb Policies, including the INA Excess Policy, to resolve the INA Excess Covered Claims alleged against RCBO. The UCC based the UCC Chubb Demand Amount on its reasonable estimate of the value of the claims covered by the Chubb policies, including the INA Excess Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the INA Excess Covered Claims will exhaust the 10/25/66-10/25/70 INA Primary Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 132 and therefore denies same.

133. The asserted reservations of rights set forth in Paragraphs 126 and 127 do not provide INA valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the INA Excess Covered Claims under the INA Excess Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the INA Excess Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the INA Excess Policies have been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with INA Excess as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 134 and therefore denies same.

134. RCBO sent INA the INA Policy Limits Letter on May 30, 2024, demanding INA indemnify RCBO for the INA Excess Covered Claims up to the policy limits under the INA Excess Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 134 and therefore denies same.

135. INA failed to respond to the INA Policy Limits Letter confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the INA Excess Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 135 and therefore denies same.

136. On August 6, 2024, INA responded to the UCC Chubb Demand letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the INA Excess Policy to RCBO.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 136 and therefore denies same.

137. The INA Excess Policy provides coverage for, and does not exclude, the INA Excess Covered Claims, and INA is obligated to indemnify RCBO against any settlement or judgment resolving, the INA Excess Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 137 and therefore denies same.

138. The INA Excess Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 138 and therefore denies same.

139. An actual controversy of a justiciable nature presently exists between RCBO and INA concerning the proper construction of the INA Excess Policy, whether INA's cited grounds for reservation of rights to deny indemnity under the INA Excess Policy are valid, whether there is any coverage for the INA Excess Covered Claims under the INA Excess Policy, whether INA is obligated to drop down to provide first-dollar coverage for the INA Excess Covered Claims because the underlying primary insurance is exhausted as alleged by RCBO, INA's and RCBO's respective rights and obligations under the INA Excess Policy with respect to INA Excess Covered Claims, and whether INA should participate in settlement regarding the INA Excess Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 139 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 139 and therefore denies same.

140. RCBO is entitled to a declaratory judgment stating INA has issued the INA Excess Policy to RCBO, the INA Excess Policy covers the INA Excess Covered Claims, and RCBO is entitled to both full defense and indemnity regarding the INA Excess Covered Claims under the INA Excess Policy, including, without limitation, a declaration that the primary policies underlying the

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

INA Excess Policy are or are likely to be exhausted as alleged in Paragraphs 131-132 and that INA must drop down to provide defense and indemnity to RCBO regarding the INA Excess Covered Claims.

**ANSWER:** Paragraph 140 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 140 and therefore denies same.

**SIXTH CAUSE OF ACTION**

**(Declaratory Relief Against U.S. Fire - Excess)**

141. RCBO realleges and incorporates herein Paragraphs 1 through 140 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 140 above as its response to paragraph 141.

142. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 142 states legal conclusions to which no response is required and Travelers therefore denies same.

143. An actual and justiciable controversy exists between RCBO and U.S. Fire with respect to whether U.S. Fire is obligated to provide RCBO with defense and indemnity under the U.S. Fire Policy regarding the subset of the Suits for which RCBO alleges U.S. Fire is obligated to provide RCBO with indemnity, as set forth in Paragraph 11 (the "U.S. Fire Covered Claims").

**ANSWER***:* Paragraph 143 states legal conclusions to which no response is required and Travelers therefore denies same.

144. Pursuant to the terms of the U.S. Fire Policy, U.S. Fire is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the U.S. Fire Covered Claims.

**ANSWER:** Paragraph 144 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 144 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

145. RCBO has fully satisfied all conditions required under the U.S. Fire Policy, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 145 and therefore denies same.

146. RCBO's broker and/or RCBO tendered the U.S. Fire Covered Claims to U.S. Fire on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 146 and therefore denies same.

147. U.S. Fire denied and/or failed to confirm it will defend or indemnify RCBO for the U.S. Fire Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 147 and therefore denies same.

148. U.S. Fire has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the U.S. Fire Policy that, in turn, will exhaust those policies and trigger U.S. Fire's obligation to provide the benefits of the U.S. Fire Policy to RCBO. Rather, U.S. Fire denies the existence of the U.S. Fire Policy, and otherwise reserved its right to deny defense and coverage, stating "RCBO has not established that U.S. Fire has any obligation to pay defense costs on its behalf, and, even further, it has not provided any information to show the actual exhaustion of any alleged underlying limits."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 148 and therefore denies same.

149. It is RCBO's position U.S. Fire's bases for denying defense and indemnity are without both factual and legal merit. The U.S. Fire Policy covers the U.S. Fire Covered Claims because they allege RCBO was negligent (i.e. did not expect or intend the alleged injuries) and that RCBO's alleged negligence caused "bodily injury" within the U.S. Fire Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the U.S. Fire Covered Claims.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

i. Claim 23 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 71) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiffs protection" (¶ 55), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 74).

ii. Claim 27 includes negligence allegations that RCBO "negligently failed to supervise [PRIEST] in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 74) and "failed to supervise WILCOX in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 56), and that such negligence caused the plaintiff bodily injury, including "personal physical injury as well as great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life." (¶ 79).

iii. Claim 81 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 64) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 46), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 69).

iv. Claim 235 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR l's and PERPETRATOR 2's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 49).

v. Claim 175 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [Defendants] failed to provide reasonable supervision of the DOE PERPETRATOR. [Defendants] further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff' (¶ 73), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 78).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 149 and therefore denies same.

150. The remaining U.S. Fire Covered Claims not listed in Paragraph 149 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

the plaintiff in question allegedly suffered physical harm and bodily injury as the U.S. Fire Policy defines that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 150 and therefore denies same.

151. As a further example, U.S. Fire denies its defense and indemnity obligations because it claims "[RCBO] has not provided any information to show the actual exhaustion of any alleged underlying limits." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 152-153.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 151 and therefore denies same.

152. There is a substantial likelihood that the U.S. Fire Covered Claims will exhaust the primary insurance underlying the U.S. Fire Policy. The underlying Commercial Union primary policy no. EF 9334-001 has limits of $100,000 per occurrence and $300,000 in aggregate (the "10/26/70-10/26/71 Commercial Union Policy"). There are at least 68 U.S. Fire Covered Claims that fall within the coverage periods for the 10/26/70-10/26/71 Commercial Union Policy and the U.S. Fire Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 152 and therefore denies same.

153. Data from past clergy sexual abuse cases indicate the U.S. Fire Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/70-10/26/71 Commercial Union Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent U.S. Fire a letter on July 3, 2024, demanding U.S. Fire pay a sum of $56.7 million (the "UCC U.S. Fire Demand Amount"), which is within the policy limits of the U.S. Fire Policy, to resolve the U.S. Fire Covered Claims alleged against RCBO. The UCC based the UCC U.S. Fire Demand Amount on its reasonable estimate of the value of the U.S. Fire Covered Claims. The $16 million jury verdict in

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

one underlying RCBO case, and jury verdicts in related cases further confirm the U.S. Fire Covered Claims will exhaust the 10/26/70-10/26/71 Commercial Union Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 153 and therefore denies same.

154. Moreover, U.S. Fire must drop down and provide first-dollar coverage of the U.S. Fire Covered Claims under the U.S. Fire Policy because the underlying primary insurer Commercial Union is insolvent.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 154 and therefore denies same.

155. The asserted bases for U.S. Fire's failure to defend or indemnify RCBO as set forth in Paragraph 148 are not valid or meritorious. The claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the U.S. Fire Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the U.S. Fire Policy has either been exhausted or that limits have been reduced. In addition, U.S. Fire's contention that it did not issue a policy to RCBO is contrary to documentary evidence including letters from the broker of record confirming the issuance of the specific policy of insurance identified herein. Finally, RCBO has fully cooperated with US Fire as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 155 and therefore denies same.

156. RCBO sent U.S. Fire a letter on May 30, 2024, demanding U.S. Fire indemnify RCBO for the U.S. Fire Covered Claims up to the policy limits under the U.S. Fire Policy (the "Policy Limits Letter").

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 156 and therefore denies same.

157. On June 28, 2024, U.S. Fire responded to the Policy Limits Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the U.S. Fire Policy to RCBO.

**ANSWER*:*** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 157 and therefore denies same.

158. The UCC sent U.S. Fire a letter on July 3, 2024, demanding Travelers pay a sum within the policy limits of the U.S. Fire Policy to resolve the U.S. Fire Covered Claims (the "UCC U.S. Fire Demand Letter"). On August 6, 2024, U.S. Fire responded to the UCC U.S. Fire Demand Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the U.S. Fire Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 158 and therefore denies same, except that Travelers denies that it has any obligations related to the U.S. Fire Policy as alleged in paragraph 158 because no Travelers policy is excess over any potentially applicable U.S. Fire Policy.

159. The U.S. Fire Policy provides coverage for, and does not exclude, the U.S. Fire Covered Claims, and U.S. Fire is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the U.S. Fire Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 159 and therefore denies same.

160. The U.S. Fire Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 160 and therefore denies same.

161. An actual controversy of a justiciable nature presently exists between RCBO and U.S. Fire concerning the proper construction of the U.S. Fire Policy, the existence of a policy of insurance issued by U.S. Fire to RCBO, whether U.S. Fire's cited grounds for reservation of rights to deny

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

defense and/or indemnity under the U.S. Fire Policy are valid, whether there is any coverage for the U.S. Fire Covered Claims under the U.S. Fire Policy, whether U.S. Fire is obligated to drop down to provide first-dollar coverage for the U.S. Fire Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, U.S. Fire's and RCBO's respective rights and obligations under the U.S. Fire Policy with respect to the U.S. Fire Covered Claims, and whether U.S. Fire should participate in settlement regarding the U.S. Fire Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 161 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 161 and therefore denies same.

162. RCBO is entitled to a declaratory judgment stating U.S. Fire has issued the U.S. Fire Policies to RCBO, the U.S. Fire Policy covers the U.S. Fire Covered Claims, and RCBO is entitled to both defense and indemnity regarding the U.S. Fire Covered Claims under the U.S. Fire Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the U.S. Fire Policy as alleged in Paragraphs 152-153, and the requirement that U.S. Fire drop down to provide defense and indemnity to RCBO regarding the U.S. Fire Covered Claims.

**ANSWER:** Paragraph 159 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 159 and therefore denies same.

**<u>SEVENTH CAUSE OF ACTION</u>**

**(Declaratory Relief Against Westport - Excess)**

163. RCBO realleges and incorporates herein Paragraphs 1 through 162 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 162 above as its response to paragraph 163.

164. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Paragraph 164 states legal conclusions to which no response is required and Travelers therefore denies same.

165. An actual and justiciable controversy exists between RCBO and Westport with respect to whether Westport is obligated to provide RCBO with defense and indemnity under the Westport Excess Policy regarding the subset of the Suits for which RCBO alleges Westport is obligated to provide RCBO with indemnity, as set forth in Paragraph 11 (the "Westport Excess Covered Claims").

**ANSWER:** Paragraph 165 states legal conclusions to which no response is required and Travelers therefore denies same.

166. Pursuant to the terms of the Westport Excess Policy, Westport is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Westport Excess Covered Claims.

**ANSWER:** Paragraph 166 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 166 and therefore denies same.

167. RCBO has fully satisfied all conditions required under the Westport Excess Policy, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 167 and therefore denies same.

168. RCBO's broker and/or RCBO tendered the Westport Excess Covered Claims to Westport on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 168 and therefore denies same.

169. Westport denied and/or failed to confirm it will defend or indemnify RCBO for the Westport Excess Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 169 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

170. Westport has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Westport Excess Policy that, in turn, will exhaust those policies and trigger Westport's obligation to provide the benefits of the Westport Excess Policy to RCBO. Rather, Westport reserved its right to deny coverage on a number.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 170 and therefore denies same.

171. Westport's reservation of rights includes Westport's position that it may deny coverage based on:

i. Westport's contention that "there is no indication that the limits underlying the [Westport Excess Policy] have been exhausted in accordance with the terms of the policies, Westport would have no immediate potential coverage obligations,"

ii. "Whether the claim referenced above falls within the policy period, limits, and scope of insurance afforded under the referenced [Westport Excess Policy] and/or policy(ies) to which the [Westport Excess Policy] may follow form, in whole or in part,"

iii. "Whether the applicable limits of all applicable underlying policies of insurance have in fact been exhausted in accordance with the [Westport Excess Policy's] terms,"

iv. "Whether any applicable policy exclusions limit or preclude coverage for the claim at issue, in whole or in part,"

v. "Whether the insured has complied with its duties under the [Westport Excess Policy], including but not limited to `notice' and `cooperation' obligations, and, if not, whether any such failure limits or precludes coverage for the claim at issue, in whole or in part,"

vi. "Whether any applicable policy conditions limit or preclude coverage for the claims at issue, in whole or in part,"

vii. vii. "Whether Westport's obligations, if any, are limited or precluded due to prior impairment or exhaustion of limits, settlements, releases or other agreements, or are prohibited by law, statute and/or public policy,"

viii. Westport's purported "right to assert any additional defenses that might apply by operation of law or otherwise, including but not limited to defenses that may be asserted by the insurers who issued insurance policies with limits underlying the limits of the [Westport Excess Policy] denies coverage for any enhanced damages based on the defendants' willful and malicious conduct."

**ANSWER*:*** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 171 and therefore denies same.

172. It is RCBO's position the above reservations of rights are without both factual and legal merit. For example, Westport has reserved its right to deny its defense and indemnity obligation under the Westport Excess Policy on the grounds that "any applicable policy exclusions limit or preclude coverage for the [the Westport Excess Covered Claims] at issue, in whole or in part." Such reservation of rights as to defense and/or indemnity does not apply because the Westport Excess Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Westport Excess Policy defines that term, within the Westport Excess Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Westport Excess Covered Claims.

i. Claim 15 includes negligence allegations that RCBO "negligently supervised and/or retained ABUSER in positions of trust and authority as a priest" (¶ 49) and "failed to use reasonable care in protecting Plaintiff [] from Abuser's misconduct that created a risk of childhood sexual abuse, while Plaintiffs [] were involved in activities sponsored, supervised, organized or directed by [RCBO]" (¶ 53) and that such negligence caused the plaintiff bodily injury, including "suffer[ing] physical, mental and emotional health problems" (¶ 67).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

ii. Claim 2 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff' (¶ 13) and that RCBO was "further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence plaintiff "has suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 14).

iii. Claim 25 includes negligence allegations that RCBO "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by ABUSER, including but not limited to preventing or avoiding placement of ABUSER in a function or environment in which contact with children is an inherent aspect of the function or environment" (¶ 35) and that RCBO "failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from ABUSER's misconduct that created a risk of childhood sexual abuse, while Plaintiff [], a minor, was involved in activities sponsored, supervised, organized or directed by [RCBO] or their agents and employees" (¶ 44), and that as a result of such negligence plaintiff "suffered economic, physical, psychological and emotional harm" (¶ 38).

iv. Claim 3 includes negligence allegations that RCBO "[was] at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff' (¶ 13) and that RCBO "[was] further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

activities" (¶ 44), and that as a result of such negligence plaintiff "suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 14).

v. Claim 4 includes negligence allegations that RCBO "[was] at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff' (¶ 13) and that RCBO "[was] further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence plaintiff "suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 14).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 172 and therefore denies same.

173. The remaining Westport Excess Covered Claims not listed in Paragraph 172 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Westport Excess Policy defines that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 173 and therefore denies same.

174. As a further example, Westport reserved its right to deny coverage under the Westport Excess Policy on the ground that "there is no indication that the limits underlying the [Westport Excess Policy] have been exhausted in accordance with the terms of the policies, Westport would have no immediate potential coverage obligations." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraph 175-176.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 174 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

175. There is a substantial likelihood that the Westport Excess Covered Claims will exhaust the primary insurance underlying the Westport Excess Policy. The underlying Commercial Union primary policies nos. EF 9334-001, EF 9334-003, and EF 9334-008 have limits of $100,000 per occurrence and $300,000 in aggregate (the "10/26/71-10/26/74 Commercial Union Policies"). There are at least 165 Westport Excess Covered Claims that fall within the coverage periods for the 10/26/71-10/26/74 Commercial Union Policies and the Westport Excess Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 175 and therefore denies same.

176. Data from past clergy sexual abuse cases indicate the Westport Excess Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/71-10/26/74 Commercial Union Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Westport a demand letter on July 3, 2024 (the "UCC Westport Demand Letter"), demanding Westport pay a sum of $308.9 million (the "UCC Westport Demand Amount"), which is within the policy limits of the Westport Excess Policy and Westport umbrella policy no. PLE20430 (the "Westport Umbrella Policy), to resolve the Westport Excess Covered Claims and the claims falling within the Westport Umbrella Policy coverage period (the "Westport Umbrella Covered Claims") alleged against RCBO. The UCC based the UCC Westport Demand Amount on its reasonable estimate of the value of the Westport Excess Covered Claims and Westport Umbrella Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Westport Excess Covered Claims and Westport Umbrella Covered Claims will exhaust the 10/26/71-10/26/74 Commercial Union Policies. *See Jane Doe 3, et al. v. Roe #1, et al.,* Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.,* Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 176 and therefore denies same.

177. Moreover, Westport must drop down and provide first-dollar coverage of the Westport Excess Covered Claims under the Westport Excess Policy because the underlying primary insurer Commercial Union is insolvent.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 177 and therefore denies same.

178. The asserted reservations of rights set forth in Paragraph 171 do not provide Westport valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Westport Excess Covered Claims under the Westport Excess Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Westport Excess Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the limits of liability of the Westport Excess Policies have been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Westport as required under the insurance, including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 178 and therefore denies same.

179. RCBO sent Westport a letter on May 30, 2024, demanding Westport indemnify RCBO for the Westport Excess Covered Claims up to the policy limits under the Westport Excess Policy (the "Westport Policy Limits Letter").

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 179 and therefore denies same.

180. Westport failed to respond to the Westport Excess Policy Limits Letter confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the Westport Excess Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 180 and therefore denies same.

181. On August 6, 2024, Westport responded to the UCC Westport Demand letter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Demand Letter, and thereby has failed to provide the benefits of the Westport Excess Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 181 and therefore denies same.

182. The Westport Excess Policy provides coverage for, and does not exclude, the Westport Excess Covered Claims, and Westport is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Westport Excess Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 182 and therefore denies same.

183. The Westport Excess Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 183 and therefore denies same.

184. An actual controversy of a justiciable nature presently exists between RCBO and Westport concerning the proper construction of the Westport Excess Policy, whether Westport's cited grounds for reservation of rights to deny defense and/or indemnity under the Westport Excess Policy are valid, whether there is any coverage for the Westport Excess Covered Claims under the Westport Excess Policy, whether Westport is obligated to drop down to provide first-dollar coverage for the Westport Excess Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, Westport's and RCBO's respective rights and obligations under the Westport Excess Policy with respect to the Westport Excess Covered Claims, and whether Westport should participate in settlement regarding the Westport Excess Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Paragraph 184 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 184 and therefore denies same.

185. RCBO is entitled to a declaratory judgment stating Westport has issued the Westport Policies to RCBO, the Westport Excess Policy covers the Westport Excess Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Westport Excess Covered Claims under the Westport Excess Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Westport Excess Policy as alleged in Paragraphs 175-176, and the requirement that Westport drop down to provide defense and indemnity to RCBO regarding the Westport Excess Covered Claims.

**ANSWER*:*** Paragraph 185 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 185 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

## EIGHTH CAUSE OF ACTION

### (Declaratory Relief Against CNA - Excess)

186. RCBO realleges and incorporates herein Paragraphs 1 through 185 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 185 above as its response to paragraph 186.

187. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 187 states legal conclusions to which no response is required and Travelers therefore denies same.

188. An actual and justiciable controversy exists between RCBO and CNA with respect to whether CNA is obligated to provide RCBO with defense and indemnity under the CNA Policies regarding the subset of the Suits for which RCBO alleges CNA is obligated to provide RCBO with indemnity, as set forth in Paragraph 12 (the "CNA Covered Claims").

**ANSWER:** Paragraph 188 states legal conclusions to which no response is required and Travelers therefore denies same.

189. Pursuant to the terms of the CNA Policies, CNA is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the CNA Covered Claims.

**ANSWER:** Paragraph 189 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 189 and therefore denies same.

190. RCBO has fully satisfied all conditions required under the CNA Policies, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 190 and therefore denies same.

191. RCBO's broker and/or RCBO tendered the CNA Covered Claims to CNA on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 191 and therefore denies same.

192. On May 24, 2024, CNA agreed to provide a defense to RCBO for those CNA Covered Claims "where the applicable underlying primary coverage is either insolvent or fully and properly exhausted through payment of judgments or settlements." However, CNA denied and/or failed to confirm it will indemnify RCBO for the CNA Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 192 and therefore denies same.

193. CNA has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the CNA Policies that, in turn, will exhaust those policies and trigger CNA's obligation to provide the benefits of the CNA Policies to RCBO. Rather, CNA reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 193 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

194. CNA's reservation of rights includes CNA's position that it may deny coverage on the following bases:

i. "[P]laintiffs have not sued, and do not seek damages from, the Diocese,"

ii. "[P]laintiffs are seeking damages unrelated to `bodily injury,'

iii. "[A]n entity other than the Insured is liable for the alleged injury,"

iv. "[T]he terms of the Aetna [Casualty Ins. Co. CGL policy 05SM90296]" preclude coverage,

v. "[T]he terms of the Commercial Union policy" preclude coverage,

vi. "[A]ll applicable underlying insurance has not been exhausted,"

vii. CNA may "seek contribution from all other insurance which may be applicable" and may "assert its subrogation rights under the Policies,"

viii. CNA denies coverage for any enhanced damages based on the defendants' willful and malicious conduct,"

ix. "[T]he Diocese failed to provide timely notice of claims, occurrences, or lawsuits,"

x. CNA may "withdraw from the Diocese's defense at any time if it determines there is no potential for coverage under the Policies,"

xi. CNA may "seek reimbursement from the Diocese's other insurers for amounts paid in excess of CNA's appropriate share of defense costs,"

xii. "[T]he Diocese's liability as alleged was channeled to the BSA Trust,"

xiii. "To the extent the Diocese has released CNA from responsibility for a particular Sexual Abuse Claim, CNA would have no duty to defend or indemnify such claim."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 194 and therefore denies same.

195. In addition, CNA reserved further rights to deny coverage as follows:

i. "The right to deny coverage on the grounds that any tendering defendant does not qualify as an insured or additional insured under the policies;"

ii. "The right to deny coverage on the ground that the subject claim does not seek recovery for covered damages caused by an occurrence, incident, or accident;"

iii. "The right to deny coverage to the extent the claim or loss alleged is not fortuitous;"

iv. "The right to deny coverage on the basis that the injuries at issue were expected or intended from the standpoint of the insured;"

v. "The right to deny coverage if the suit does not allege "bodily injury" or "personal injury" within the meaning of the policies;"

vi. "The right to deny coverage for any alleged "bodily injury" or "personal injury" that did not take place during the relevant policy period;"

vii. "The right to deny coverage to the extent that the suit does not seek recovery for "damages" within the meaning of the policies;"

viii. "The right to deny coverage for injury arising out of the willful violation of a penal statute or ordinance committed by or with the consent of any insured;"

ix. "The right to deny coverage for persons or entities that are not insureds under any policy;"

x. "The right to deny coverage for `willful acts of the insured";

xi. "The right to deny coverage to the extent that any of the alleged injuries arose out of conduct that is uninsurable as a matter of public policy;"

xii. xii. "The right to seek rescission of the policies, if there was misrepresentation or a failure to disclose known or likely sexual misconduct of the perpetrator during the application process for said policies;"

xiii. "The right to deny coverage for exemplary damages, punitive damages, and fines;"

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

xiv. "The right to deny or limit coverage consistent with any provision related to any limits of liability located in the policies;"

xv. "CNA has no obligation to any person or entity seeking coverage under the policies if such person or entity fails to comply with the assistance and cooperation clause in said policies;"

xvi. "CNA has no obligation to any person or entity seeking coverage under the policies if such person or entity makes a voluntary payment under said policies;"

xvii. "The right to disclaim coverage to the extent that any insured makes any settlements or payments, or commits to making such payments, without prior authorization from CNA;"

xviii. "The right to deny or limit coverage based on "other insurance" provisions in the policies;"

xix. "The right to deny coverage on the basis of late notice of occurrence, late notice of suit, or laches;"

xx. "The right to supplement the grounds upon which CNA reserves rights and/or limits or disclaims coverage, including to add any grounds that become apparent should CNA become aware of additional information regarding the Alleged CNA Policies."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 195 and therefore denies same.

196. It is RCBO's position the above reservations of rights are without both factual and legal merit. For example, CNA has reserved its right to deny its defense and indemnity obligation under the CNA Policies on the grounds that the CNA Covered Claims allege injuries that were "expected or intended from the standpoint of [RCBO]" or that "do[] not allege 'bodily injury' or 'personal injury' within the meaning of the [CNA Policies]." Such reservations of rights as to defense and/or indemnity do not apply because the CNA Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury"

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

as the CNA Policies define that term, within the CNA Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the CNA Covered Claims.

i. Claim 6 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff' (¶ 13) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 14).

ii. Claim 7 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff' (¶ 13) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 13), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 14).

iii. Claim 33 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff' (¶ 9) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 9), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 10).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

iv. Claim 99 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [RCBO] failed to provide reasonable supervision of the DOE PERPETRATOR. [RCBO] further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff' (¶ 83), and that as a result of such negligence the plaintiff "suffered and will continue to suffer the physical injury of sexual assault" (¶ 99). Claim 251 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiffs protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [RCBO] failed to provide reasonable supervision of the DOE PERPETRATOR. [RCBO] further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff" (¶ 83), and that as a result of such negligence the plaintiff "suffered the physical injury of sexual assault" (¶ 75).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 196 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

197. The remaining CNA Covered Claims not listed in Paragraph 196 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the CNA Policies define that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 196 and therefore denies same.

198. As a further example, CNA reserved its right to deny coverage under the CNA Policies on the ground that "all applicable underlying insurance has not been exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 199-200.

**ANSWER*:*** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 198 and therefore denies same.

199. There is a substantial likelihood that the CNA Covered Claims will exhaust the primary insurance underlying the CNA Policies. The underlying Commercial Union primary policy no. CF 9334-008 has limits of $300,000 per occurrence and $300,000 aggregate, and the underlying Travelers policies nos. 05 AL 802025 CMA, 05 SM 90296 FCA, and 05 SM 99094 FCA have limits of $300,000 per occurrence and $300,000 aggregate, $500,000 CLS, and $1,000,000 CSL, respectively (the "10/26/74-12/01/80 Commercial Union and Travelers Policies"). There are at least 180 CNA Covered Claims that fall within the coverage periods for the 10/26/74-12/01/80 Commercial Union and Travelers Policies and the CNA Policies.

ANSWER: Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 199 and therefore denies same.

200. Data from past clergy sexual abuse cases indicate the CNA Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/74-12/01/80 Commercial Union and Travelers Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. The UCC sent CNA a letter on July 3, 2024, demanding CNA pay a sum of $162.6 million (the "UCC CNA Demand Amount"), which is within the policy limits of the CNA Policies, to resolve the CNA

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Covered Claims alleged against RCBO (the "UCC CNA Demand Letter"). The UCC based the UCC CNA Demand Amount on its reasonable estimate of the value of the CNA Covered Claims. Jury verdicts in related child sexual abuse cases further confirm the CNA Covered Claims and will exhaust the 10/26/74-12/01/80 Commercial Union and Travelers Policies. *Jane Doe 3, et al. v. Roe #1, et al.,* Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.,* Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 200 and therefore denies same.

201. Moreover, CNA must drop down and provide first-dollar coverage of the CNA Covered Claims under the CNA Policies because the underlying primary insurer Commercial Union is insolvent.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 201 and therefore denies same.

202. The asserted reservations of rights set forth in Paragraphs 194 and 195 do not provide CNA valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the CNA Covered Claims under the CNA Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the CNA Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the CNA Policies have either been exhausted or that limits have been reduced and RCBO made no misrepresentations to CNA when obtaining the CNA Policies. Finally, RCBO has fully cooperated with CNA as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 202 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

203. RCBO sent CNA a letter on May 30, 2024, demanding CNA indemnify RCBO for the CNA Covered Claims up to the policy limits under the CNA Policies (the "CNA Policy Limits Letter").

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 203 and therefore denies same.

204. On June 28, 2024 CNA responded to the CNA Policy Limits Letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the CNA Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 204 and therefore denies same.

205. On August 6, 2024, CNA responded to the UCC CNA Demand letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the CNA Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 205 and therefore denies same.

206. The CNA Policies provide coverage for, and do not exclude, the CNA Covered Claims, and CNA is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the CNA Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 206 and therefore denies same.

207. The CNA Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 207 and therefore denies same.

208. An actual controversy of a justiciable nature presently exists between RCBO and CNA concerning the proper construction of the CNA Policies, whether CNA's cited grounds for reservation of rights to deny defense and/or indemnity under the CNA Policies are valid, whether there is any coverage for the CNA Covered Claims under the CNA Policy, whether CNA is obligated

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

to drop down to provide first-dollar coverage for the CNA Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, CNA's and RCBO's respective rights and obligations under the CNA Policies with respect to the CNA Covered Claims, and whether CNA should participate in settlement regarding the CNA Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 208 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 208 and therefore denies same.

209. RCBO is entitled to a declaratory judgment stating CNA has issued the CNA Policies to RCBO, the CNA Policies cover the CNA Covered Claims, and RCBO is entitled to both defense and indemnity regarding the CNA Covered Claims under the CNA Policies, including, without limitation, a declaration of exhaustion as to the primary policies underlying the CNA Policies as alleged in Paragraphs 199-200, and the requirement that CNA drop down to provide defense and indemnity to RCBO regarding the CNA Covered Claims.

**ANSWER:** Paragraph 209 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 209 and therefore denies same.

## NINTH CAUSE OF ACTION

### (Declaratory Relief Against Westchester - Excess)

210. RCBO realleges and incorporates herein Paragraphs 1 through 209 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 209 above as its response to paragraph 210.

211. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 211 states legal conclusions to which no response is required and Travelers therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

212. An actual and justiciable controversy exists between RCBO and Westchester with respect to whether Westchester is obligated to provide RCBO with defense and indemnity under the Westchester Policy regarding the subset of the Suits for which RCBO alleges Westchester is obligated to provide RCBO with indemnity, as set forth in Paragraph 13 (the "Westchester Covered Claims").

**ANSWER*:*** Paragraph 212 states legal conclusions to which no response is required and Travelers therefore denies same.

213. Pursuant to the terms of the Westchester Policy, Westchester is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Westchester Covered Claims.

**ANSWER:** Paragraph 213 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 210 and therefore denies same.

214. RCBO has fully satisfied all conditions required under the Westchester Policy, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 214 and therefore denies same.

215. RCBO's broker and/or RCBO tendered the Westchester Covered Claims to Westchester on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 215 and therefore denies same.

216. Westchester refused to provide a defense to RCBO for the Westchester Covered Claims. Westchester also denied and/or failed to confirm it will indemnify RCBO for the Westchester Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 216 and therefore denies same.

217. Westchester has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Westchester

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Policy that, in turn, will exhaust those policies and trigger Westchester's obligation to provide the benefits of the Westchester Policy to RCBO. Rather, Westchester reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 217 and therefore denies same.

218. Westchester's reservation of rights includes Westchester's position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the [Westchester] Policy."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. "[The Westchester Policy] may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

iv. "To the extent that any of the claims do not arise out of `personal injury' which occurred during the policy period," there would be no coverage for any such claims."

v. Westchester has "no indication that the applicable limits of the [underlying] Aetna [primary] Policy have been exhausted."

vi. "To the extent any of the claimants did not sustain a loss arising out of an accident, and as such it would not have been caused by an "occurrence," there would be no coverage."

vii. The alleged conduct may also be "excluded as uninsurable willful conduct pursuant to California Insurance Code § 533."

viii. The Westchester Policy "requires that [any] `personal injury' must be neither expected nor intended."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 219 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

219. In addition, Westchester reserved further rights to deny coverage as follows:

i. Westchester "reserves rights to the extent the [Westchester] Policy is exhausted and [it has] no further defense or indemnity obligations under the [Westchester] Policy."

ii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iii. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, [Westchester] reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

iv. "All rights with regarding to exhaustion."

v. To the extent "Pastoral Professional Liability cover is implicated" in "the underlying Aetna Policy," Westchester "reserves its rights to decline coverage… on this basis."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 219 and therefore denies same.

220. It is RCBO's position the above reservations of rights are without both factual and legal merit. For example, Westchester has reserved its right to deny its defense and indemnity obligation under the Westchester Policy on the grounds that the Westchester Covered Claims allege injuries where RCBO expected or intended injury to the subject claimant that were "expected or intended from the standpoint of [RCBO]" or where RCBO is liable for damages not resulting from "bodily injury." Such reservations of rights as to defense and/or indemnity do not apply because the Westchester Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Westchester Policy defines that term, within the Westchester Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Westchester Covered Claims.

i. Claim 10 includes negligence allegations that RCBO "[was] negligent in the hiring, retention, control, and supervision, of PERPETRATOR" (¶ 14)

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 14), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 15).

ii. Claim 33 includes negligence allegations that RCBO "[was] negligent in the hiring, retention, control, and supervision, of PERPETRATOR" (¶ 9) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 9), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 10).

iii. Claim 35 includes negligence allegations that RCBO "[w]as] negligent in the hiring, retention, control, and supervision of PERPETRATOR" (¶ 9) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities and while PERPETRATOR was engaged in his duties and responsibilities of outreach as a Priest" (¶ 9), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 10).

iv. Claim 61 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff s protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 75).

v. Claim 64 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 75).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 220 and therefore denies same.

221. The remaining Westchester Covered Claims not listed in Paragraph 220 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Westchester Policy defines that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 220 and therefore denies same.

222. As a further example, Westchester reserved its right to deny coverage under the Westchester Policy to the extent the applicable underlying insurance has not been exhausted. This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 223-224.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 222 and therefore denies same.



DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

223. There is a substantial likelihood that the Westchester Covered Claims will exhaust the primary insurance underlying the Westchester Policy. The underlying Aetna/Travelers primary policy no. 05 SM 107459 FCA has a limit of $1,000,000 in aggregate (the "12/01/80-12/01/81 Travelers Primary Policy"). There are at least 37 Westchester Covered Claims that fall within the coverage periods for the 12/01/80-12/01/81 Travelers Primary Policy and the Westchester Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 223 and therefore denies same.

224. Data from past clergy sexual abuse cases indicate the Westchester Covered Claims will far exceed the per occurrence and aggregate limits of the 12/01/80-12/01/81 Travelers Primary Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Chubb the UCC Chubb Demand Letter on July 3, 2024, demanding they pay the UCC Chubb Demand Amount, a sum of $219.2 million, which is within the policy limits of the Chubb Policies, including the Westchester Policy, to resolve the Westchester Covered Claims alleged against RCBO. The UCC based the UCC Chubb Demand Amount on its reasonable estimate of the value of the claims covered by the Chubb policies, including the Westchester Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Westchester Covered Claims will exhaust the 12/01/80-12/01/81 Travelers Primary Policy. *See Jane Doe 3, et al. v. Roe #1, et al.,* Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.,* Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 224 and therefore denies same.

225. The asserted reservations of rights set forth in Paragraphs 218 and 219 do not provide Westchester valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Westchester Covered Claims under the Westchester Policy as the claims have been tendered (and

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Westchester Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the Westchester Policies have either been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Westchester as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 225 and therefore denies same.

226. RCBO sent Westchester a letter on May 30, 2024, demanding Westchester indemnify RCBO for the Westchester Covered Claims up to the policy limits under the Westchester Policy (the "Westchester Policy Limits Letter").

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 226 and therefore denies same.

227. Westchester failed to respond to the Westchester Policy Limits Letter confirming it will indemnify RCBO in response to the Policy Limits Letter, and thereby has failed to provide the benefits of the Westchester Policy to RCBO.

**ANSWER***:* Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 227 and therefore denies same.

228. On August 6, 2024, Westchester responded to the UCC Chubb Demand letter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Chubb Demand Letter, and thereby has failed to provide the benefits of the Westchester Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 228 and therefore denies same.

229. The Westchester Policy provides coverage for, and does not exclude, the Westchester Covered Claims, and Westchester is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Westchester Covered Claims.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 229 and therefore denies same.

230. The Westchester Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 230 and therefore denies same.

231. An actual controversy of a justiciable nature presently exists between RCBO and Westchester concerning the proper construction of the Westchester Policy, whether Westchester's cited grounds for reservation of rights to deny defense and/or indemnity under the Westchester Policy are valid, whether there is any coverage for the Westchester Covered Claims under the Westchester Policy, whether Westchester is obligated to drop down to provide first-dollar coverage for the Westchester Covered Claims because the underlying primary insurance is exhausted, Westchester's and RCBO's respective rights and obligations under the Westchester Policy with respect to Westchester Covered Claims, and whether Westchester should participate in settlement regarding the Westchester Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment

**ANSWER:** Paragraph 231 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 231 and therefore denies same.

232. RCBO is entitled to a declaratory judgment stating Westchester has issued the Westchester Policy to RCBO, the Westchester Policy covers the Westchester Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Westchester Covered Claims under the Westchester Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Westchester Policy as alleged in Paragraphs 223-224, and the requirement that Westchester drop down to provide defense and indemnity to RCBO regarding the Westchester Covered Claims.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Paragraph 232 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 232 and therefore denies same.

**TENTH CAUSE OF ACTION**

**(Declaratory Relief Against Lloyd's - Excess)**

233. RCBO realleges and incorporates herein Paragraphs 1 through 232 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 232 above as its response to paragraph 233.

234. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 234 states legal conclusions to which no response is required and Travelers therefore denies same.

235. An actual and justiciable controversy exists between RCBO and Lloyd's Excess with respect to whether Lloyd's Excess is obligated to provide RCBO with defense and indemnity under the Lloyd's Excess Policies regarding the subset of the Suits for which RCBO alleges Lloyd's Excess is obligated to provide RCBO with indemnity, as set forth in Paragraph 14 (the "Lloyd's Excess Covered Claims").

**ANSWER:** Paragraph 235 states legal conclusions to which no response is required and Travelers therefore denies same.

236. Pursuant to the terms of the Lloyd's Excess Policies, Lloyd's Excess is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Lloyd's Excess Covered Claims.

**ANSWER:** Paragraph 236 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 236 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

237. RCBO has fully satisfied all conditions required under the Lloyd's Excess Policies, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 237 and therefore denies same.

238. RCBO's broker and/or RCBO tendered the Lloyd's Excess Covered Claims to Lloyd's Excess Covered nor RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 238 and therefore denies same.

239. Lloyd's Excess denied and/or failed to confirm it will defend and indemnify RCBO for the Lloyd's Excess Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 239 and therefore denies same.

240. Lloyd's Excess has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Lloyd's Excess Policies that, in turn, will exhaust those policies and trigger Lloyd's Excess's obligation to provide the benefits of the Lloyd's Excess Policies to RCBO. Rather, Lloyd's Excess reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 240 and therefore denies same.

241. Lloyd's Excess's reservation of rights includes Lloyd's Excess's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Lloyd's is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

iii. Lloyd's' coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Lloyd's] Policies."

iv. "To the extent the [Lloyd's] Second Excess Umbrella Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Lloyd's "reserve[s] all rights based upon the number and timing of occurrences. It is [Lloyd's'] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Lloyd's] Policies."

viii. Lloyd's "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

**ANSWER*:*** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 241 and therefore denies same.

242. In addition, Lloyd's Excess reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Lloyd's "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be `unexpected or unintended.'" Lloyd's thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an `occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Lloyd's] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an `Assured' under the [Lloyd's] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Lloyd's reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Lloyd's reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy `as soon as practicable' to [Lloyd's'] agent for notice of claims provided in the Policy Declarations."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

x. Lloyd's reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Lloyd's] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Lloyd's and RCBO "in our around November 2005 pertaining to certain `Abuse Claims' and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Lloyd's] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Lloyd's] Policies."

xiv. Lloyd's reserves its rights "pursuant to the [Lloyd's] Policies' Other Insurance Condition."

xv. Lloyd's reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 242 and therefore denies same.

243. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Lloyd's Excess has reserved its right to deny its defense and indemnity obligation under the Lloyd's Excess Policies on the grounds that the Lloyd's Excess Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Lloyd's Excess

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Lloyd's Excess Policies define that term, within the Lloyd's Excess Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Lloyd's Excess Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, gent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiffs protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68)

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 243 and therefore denies same.

244. The remaining Lloyd's Excess Covered Claims not listed in Paragraph 243 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Lloyd's Excess Policies define that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 244 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

245. As a further example, Lloyd's Excess reserved its right to deny coverage under the Lloyd's Excess Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 246-247.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 245 and therefore denies same.

246. There is a substantial likelihood that the Lloyd's Excess Covered Claims will exhaust the primary insurance underlying the Lloyd's Excess Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). There are at least 38 Lloyd's Excess Covered Claims that fall within the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies and the Lloyd's Excess Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 246 and therefore denies same.

247. Data from past clergy sexual abuse cases indicate the Lloyd's Excess Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Lloyd's Excess a letter (the "UCC Lloyd's Demand Letter") on July 3, 2024, demanding Lloyd's Excess pay a sum of $42.8 million (the "UCC Lloyd's Demand Amount"), which is within the policy limits of the Lloyd's Excess Policies and the Lloyd's Umbrella Policies, to resolve the Lloyd's Excess Covered Claims and the claims falling within the Lloyd's Excess Policies coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Lloyd's Excess Covered Claims and the claims covered by the Lloyd's Umbrella Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Excess Covered Claims will exhaust the 3/12/62-10/25/66 Pacific

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Indemnity Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 247 and therefore denies same.

248. The asserted reservations of rights set forth in Paragraphs 241 and 242 do not provide Lloyd's Excess valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Lloyd's Excess Covered Claims under the Lloyd's Excess Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Lloyd's Excess Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the Lloyd's Excess Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Lloyd's Excess either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Lloyd's Excess as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 248 and therefore denies same.

249. RCBO sent Lloyd's Excess a letter on May 30, 2024, demanding Lloyd's Excess indemnify RCBO for the Lloyd's Excess Covered Claims up to the policy limits under the Lloyd's Excess Policies (the "Lloyd's Excess Policy Limits Letter").

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 249 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

250. On July 1, 2024, Lloyd's Excess responded to the Lloyd's Excess Policy Limits Letter and declined to indemnify RCBO, and thereby has failed to provide the benefits of the Lloyd's Excess Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 250 and therefore denies same.

251. On August 6, 2024, Lloyd's Excess responded to the UCC Lloyd's Demand letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the Lloyd's Excess Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 251 and therefore denies same.

252. The Lloyd's Excess Policies provide coverage for, and do not exclude, the Lloyd's Excess Covered Claims, and Lloyd's Excess is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Lloyd's Excess Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 252 and therefore denies same.

253. The Lloyd's Excess Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 253 and therefore denies same.

254. An actual controversy of a justiciable nature presently exists between RCBO and Lloyd's Excess concerning the proper construction of the Lloyd's Excess Policies, whether Lloyd's Excess cited grounds for reservation of rights to deny defense and/or indemnity under the Lloyd's Excess Policies are valid, whether there is any coverage for the Lloyd's Excess Covered Claims under the Lloyd's Excess Policies, whether Lloyd's Excess is obligated to drop down to provide first-dollar coverage for the Lloyd's Excess Covered Claims because the underlying primary insurance is exhausted, Lloyd's Excess's and RCBO's respective rights and obligations under the Lloyd's Excess Policies with respect to the Lloyd's Excess Covered Claims, and whether Lloyd's Excess should

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

participate in settlement regarding the Lloyd's Excess Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 254 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 254 and therefore denies same.

255. RCBO is entitled to a declaratory judgment stating Lloyd's Excess has issued the Lloyd's Excess Policies to RCBO, the Lloyd's Excess Policies cover the Lloyd's Excess Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Lloyd's Excess Covered Claims under the Lloyd's Excess Policies, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Lloyd's Excess Policies as alleged in Paragraphs 246-247, and the requirement that Lloyd's Excess drop down to provide defense and indemnity to RCBO regarding the Lloyd's Excess Covered Claims.

**ANSWER:** Paragraph 255 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 255 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

## <u>ELEVENTH CAUSE OF ACTION</u>

### (Declaratory Relief Against Fidelidade - Excess)

256. RCBO realleges and incorporates herein Paragraphs 1 through 255 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 255 above as its response to paragraph 256.

257. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 257 states legal conclusions to which no response is required and Travelers therefore denies same.

258. An actual and justiciable controversy exists between RCBO and Fidelidade with respect to whether Fidelidade is obligated to provide RCBO with defense and indemnity under the Fidelidade

Excess Policy regarding the subset of the Suits for which RCBO alleges Fidelidade is obligated to provide RCBO with indemnity, as set forth in Paragraph 20 (the "Fidelidade Covered Claims").

**ANSWER*:*** Paragraph 258 states legal conclusions to which no response is required and Travelers therefore denies same.

259. Pursuant to the terms of the Fidelidade Excess Policy, Fidelidade is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Fidelidade Covered Claims.

**ANSWER:** Paragraph 259 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 259 and therefore denies same.

260. RCBO has fully satisfied all conditions required under the Fidelidade Excess Policy, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 260 and therefore denies same.

261. RCBO's broker and/or RCBO tendered the Fidelidade Covered Claims to Fidelidade on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 261 and therefore denies same.

262. Fidelidade denied and/or failed to confirm it will defend and indemnify RCBO for the Fidelidade Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 262 and therefore denies same.

263. Fidelidade has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Fidelidade Excess Policy that, in turn, will exhaust those policies and trigger Fidelidade's obligation to provide the benefits of the Fidelidade Excess Policy to RCBO. Rather, Fidelidade reserved its right to deny coverage on a number of bases.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 263 and therefore denies same.

264. Fidelidade's reservation of rights includes Fidelidade's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Fidelidade is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Fidelidade's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Fidelidade Excess Policy]."

iv. "To the extent the [Fidelidade Excess Policy is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Fidelidade "reserve[s] all rights based upon the number and timing of occurrences. It is [Fidelidade's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Fidelidade Excess Policy]."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

viii. Fidelidade "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 264 and therefore denies same.

265. In addition, Fidelidade reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. he right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Fidelidade "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be `unexpected or unintended.'" Fidelidade thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an `occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Fidelidade] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an `Assured' under the [Fidelidade Excess Policy]."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Fidelidade reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Fidelidade reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy `as soon as practicable' to [Fidelidade's] agent for notice of claims provided in the Policy Declarations."

x. Fidelidade s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Fidelidade Excess Policy], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Fidelidade and RCBO "in our around November 2005 pertaining to certain `Abuse Claims' and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Fidelidade] may preclude coverage."

xiii. xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Fidelidade Excess Policy]."

xiv. Fidelidade reserves its rights "pursuant to the [Fidelidade Excess Policy's] Other Insurance Condition."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

xv. Fidelidade reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 265 and therefore denies same.

266. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Fidelidade has reserved its right to deny its defense and indemnity obligation under the Fidelidade Excess Policy on the grounds that the Fidelidade Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Fidelidade Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Fidelidade Excess Policy defines that term, within the Fidelidade Excess Policy's coverage period (*See* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Fidelidade Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 202 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 68).

iv. Claim 204 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 66) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 49), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 69).

v. Claim 214 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 68).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 266 and therefore denies same.

267. The remaining Fidelidade Covered Claims not listed in Paragraph 263 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Fidelidade Excess Policy defines that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 267 and therefore denies same.

268. As a further example, Fidelidade reserved its right to deny coverage under the Fidelidade Excess Policy on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 269-270.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 268 and therefore denies same.

269. There is a substantial likelihood that the Fidelidade Covered Claims will exhaust the primary insurance underlying the Fidelidade Excess Policy. The underlying Pacific Indemnity primary policy no. LAC 155598 has limits of $500,000 per occurrence and $500,000 in aggregate (the "10/25/63-10/25/66 Pacific Indemnity Policy"). There are at least 34 Fidelidade Covered Claims that fall within the coverage periods for the 10/25/63-10/25/66 Pacific Indemnity Policy and the Fidelidade Excess Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 269 and therefore denies same.

Data from past clergy sexual abuse cases indicate the Fidelidade Covered Claims will far exceed the per occurrence and aggregate limits of the 10/25/63-10/25/66 Pacific Indemnity Policy.

270. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff



DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, Fidelidade received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Fidelidade was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the Fidelidade Excess Policy, to resolve the Fidelidade Covered Claims and the claims falling within the Fidelidade coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Fidelidade Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Covered Claims will exhaust the 10/25/63-10/25/66 Pacific Indemnity Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 270 and therefore denies same.

271. The asserted reservations of rights set forth in Paragraphs 261 and 262 do not provide Fidelidade valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Fidelidade Covered Claims under the Fidelidade Excess Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Fidelidade Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the Fidelidade Excess Policy has either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Fidelidade either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Fidelidade as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 271 and therefore denies same.

272. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants letters on May 30, 2024, demanding indemnification to RCBO for the Fidelidade Covered Claims up to the policy limits under the Fidelidade Excess Policy (jointly, the "Lloyd's Policy Limits Letters"). Upon information and belief, Fidelidade received the Lloyds's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Fidelidade was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 272 and therefore denies same.

273. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and Fidelidade thereby has failed to provide the benefits of the Fidelidade Excess Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 273 and therefore denies same.

274. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand letter and denied and/or failed to confirm it will indemnify RCBO. Fidelidade thereby has failed to provide the benefits of the Fidelidade Excess Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 274 and therefore denies same.

275. The Fidelidade Excess Policy provides coverage for, and does not exclude, the Fidelidade Covered Claims, and Fidelidade is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Fidelidade Covered Claims.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 275 and therefore denies same.

276. The Fidelidade Excess Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 276 and therefore denies same.

277. An actual controversy of a justiciable nature presently exists between RCBO and Fidelidade concerning the proper construction of the Fidelidade Excess Policy, whether Fidelidade's cited grounds for reservation of rights to deny defense and/or indemnity under the Fidelidade Excess Policy are valid, whether there is any coverage for the Fidelidade Covered Claims under the Fidelidade Excess Policy, whether Fidelidade is obligated to drop down to provide first-dollar coverage for the Fidelidade Covered Claims because the underlying primary insurance is exhausted, Fidelidade's and RCBO's respective rights and obligations under the Fidelidade Excess Policy with respect to the Fidelidade Covered Claims, and whether Fidelidade should participate in settlement regarding the Fidelidade Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 277 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 277 and therefore denies same.

278. RCBO is entitled to a declaratory judgment stating Fidelidade has issued the Fidelidade Excess Policy to RCBO, the Fidelidade Excess Policy covers the Fidelidade Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Fidelidade Covered Claims under the Fidelidade Excess Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Fidelidade Excess Policy as alleged in Paragraphs 269-270, and the requirement that Fidelidade drop down to provide defense and indemnity to RCBO regarding the Fidelidade Covered Claims.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Paragraph 279 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 279 and therefore denies same.

**TWELFTH CAUSE OF ACTION**

**(Declaratory Relief Against Excess Insurance Co. - Excess)**

279. RCBO realleges and incorporates herein Paragraphs 1 through 278 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 278 above as its response to paragraph 279.

280. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 279 states legal conclusions to which no response is required and Travelers therefore denies same.

281. An actual and justiciable controversy exists between RCBO and Excess Insurance Co. with respect to whether Excess Insurance Co. is obligated to provide RCBO with defense and indemnity under the Excess Insurance Co. Policies regarding the subset of the Suits for which RCBO alleges Excess Insurance Co. is obligated to provide RCBO with indemnity, as set forth in Paragraph 15 (the "Excess Insurance Co. Covered Claims").

**ANSWER***:* Paragraph 281 states legal conclusions to which no response is required and Travelers therefore denies same.

282. Pursuant to the terms of the Excess Insurance Co. Policies, Excess Insurance Co. is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Excess Insurance Co. Covered Claims.

**ANSWER:** Paragraph 282 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 282 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

283. RCBO has fully satisfied all conditions required under the Excess Insurance Co. Policies, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 283 and therefore denies same.

284. RCBO's broker and/or RCBO tendered the Excess Insurance Co. Covered Claims to Excess Insurance Co. on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 284 and therefore denies same.

285. Excess Insurance Co. denied and/or failed to confirm it will defend and indemnify RCBO for the Excess Insurance Co. Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 285 and therefore denies same.

286. Excess Insurance Co. has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Excess Insurance Co. Policies that, in turn, will exhaust those policies and trigger Excess Insurance Co.'s obligation to provide the benefits of the Excess Insurance Co. Policies to RCBO. Rather, Excess Insurance Co. reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 286 and therefore denies same.

287. Excess Insurance Co.'s reservation of rights includes Excess Insurance Co.'s position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Excess Insurance Co. is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

iii. Excess Insurance Co.'s coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Excess Insurance Co. Policies]."

iv. "To the extent the [Excess Insurance Co. Policies is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Excess Insurance Co. "reserve[s] all rights based upon the number and timing of occurrences. It is [Excess Insurance Co.'s] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Excess Insurance Co. Policies]."

viii. Excess Insurance Co. "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 287 and therefore denies same.

288. In addition, Excess Insurance Co. reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of

coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Excess Insurance Co. "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Excess Insurance Co. thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Excess Insurance Co.] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Excess Insurance Co. Policies]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Excess Insurance Co. reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Excess Insurance Co. reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

practicable' to [Excess Insurance Co.'s] agent for notice of claims provided in the Policy Declarations."

x. Excess Insurance Co. s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Excess Insurance Co. Policies], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Excess Insurance Co. and RCBO "in our around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Excess Insurance Co.] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Excess Insurance Co. Policies]."

xiv. Excess Insurance Co. reserves its rights "pursuant to the [Excess Insurance Co. Policies'] Other Insurance Condition."

xv. Excess Insurance Co. reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 288 and therefore denies same.

289. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Excess Insurance Co. has reserved its right to deny its defense and indemnity obligation under the Excess Insurance Co. Policies on the grounds that the Excess

Insurance Co. Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Excess Insurance Co. Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Excess Insurance Co. Policies defines that term, within the Excess Insurance Co. Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Excess Insurance Co. Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 289 and therefore denies same.

290. The remaining Excess Insurance Co. Covered Claims not listed in Paragraph 289 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Excess Insurance Co. Policies defines that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 290 and therefore denies same.

291. As a further example, Excess Insurance Co. reserved its right to deny coverage under the Excess Insurance Co. Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 292-293.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 291 and therefore denies same.

292. There is a substantial likelihood that the Excess Insurance Co. Covered Claims will exhaust the primary insurance underlying the Excess Insurance Co. Policies. The underlying Pacific Indemnity primary policy nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). There are at least 38 Excess Insurance Co. Covered Claims that fall within the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies and the Excess Insurance Co. Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 292 and therefore denies same.

293. Data from past clergy sexual abuse cases indicate the Excess Insurance Co. Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, Excess Insurance Co. received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Excess Insurance Co. was at the time represented by the same counsel as the Lloyd's Excess

and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the Excess Insurance Co. Policies, to resolve the Excess Insurance Co. Covered Claims and the claims falling within the Excess Insurance Co. coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Excess Insurance Co. Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies. *See Jane Doe 3, et al. v. Roe #1, et al.,* Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.,* Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 293and therefore denies same.

294. The asserted reservations of rights set forth in Paragraphs 284 and 285 do not provide Excess Insurance Co. valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Excess Insurance Co. Covered Claims under the Excess Insurance Co. Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Excess Insurance Co. Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the Excess Insurance Co. Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Excess Insurance Co. either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Excess Insurance Co. as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 294 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

295. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Excess Insurance Co. Covered Claims up to the policy limits under the Excess Insurance Co. Policies (the "Policy Limits Letter"). Upon information and belief, Excess Insurance Co. received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Excess Insurance Co. was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

**ANSWER*:*** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 295 and therefore denies same.

296. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and thereby Excess Insurance Co. has failed to provide the benefits of the Excess Insurance Co. Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 296 and therefore denies same.

297. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. Excess Insurance Co. thereby has failed to provide the benefits of the Excess Insurance Co. Policies to RCBO. The Excess Insurance Co. Policies provide coverage for, and do not exclude, the Excess Insurance Co. Covered Claims, and Excess Insurance Co. is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Excess Insurance Co. Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 297 and therefore denies same.

298. .The Excess Insurance Co. Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 298 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

299. An actual controversy of a justiciable nature presently exists between RCBO and Excess Insurance Co. concerning the proper construction of the Excess Insurance Co. Policies, whether Excess Insurance Co.'s cited grounds for reservation of rights to deny defense and/or indemnity under the Excess Insurance Co. Policies are valid, whether there is any coverage for the Excess Insurance Co. Covered Claims under the Excess Insurance Co. Policies, whether Excess Insurance Co. is obligated to drop down to provide first-dollar coverage for the Excess Insurance Co. Covered Claims because the underlying primary insurance is exhausted, Excess Insurance Co.'s and RCBO's respective rights and obligations under the Excess Insurance Co. Policies with respect to the Excess Insurance Co. Covered Claims, and whether Excess Insurance Co. should participate in settlement regarding the Excess Insurance Co. Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 299 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 299 and therefore denies same.

300. RCBO is entitled to a declaratory judgment stating Excess Insurance Co. has issued the Excess Insurance Co. Policies to RCBO, the Excess Insurance Co. Policies cover the Excess Insurance Co. Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Excess Insurance Co. Covered Claims under the Excess Insurance Co. Policies, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Excess Insurance Co. Policies as alleged in Paragraphs 292-293, and the requirement that Excess Insurance Co. drop down to provide defense and indemnity to RCBO regarding the Excess Insurance Co. Covered Claims.

**ANSWER:** Paragraph 300 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 300 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**THIRTEENTH CAUSE OF ACTION**

**(Declaratory Relief Against River Thames - Excess)**

301. RCBO realleges and incorporates herein Paragraphs 1 through 300 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 300 above as its response to paragraph 301.

302. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 302 states legal conclusions to which no response is required and Travelers therefore denies same.

303. An actual and justiciable controversy exists between RCBO and River Thames with respect to whether River Thames is obligated to provide RCBO with defense and indemnity under the River Thames Policy regarding the subset of the Suits for which RCBO alleges River Thames is obligated to provide RCBO with indemnity, as set forth in Paragraph 20 (the "River Thames Covered Claims").

**ANSWER:** Paragraph 303 states legal conclusions to which no response is required and Travelers therefore denies same.

304. Pursuant to the terms of the River Thames Policy, River Thames is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the River Thames Covered Claims.

**ANSWER:** Paragraph 304 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 304 and therefore denies same.

305. RCBO has fully satisfied all conditions required under the River Thames Policy, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 305 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

306. RCBO's broker and/or RCBO tendered the River Thames Covered Claims to River Thames on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 306 and therefore denies same.

307. River Thames denied and/or failed to confirm it will defend and indemnify RCBO for the River Thames Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 307 and therefore denies same.

308. River Thames has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the River Thames Policy that, in turn, will exhaust those policies and trigger River Thames's obligation to provide the benefits of the River Thames Policy to RCBO. Rather, River Thames reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 309 and therefore denies same.

309. River Thames's reservation of rights includes River Thames's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. River Thames is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. River Thames's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [River Thames Policy]."

iv. "To the extent the [River Thames Policy is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the

underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. River Thames "reserve[s] all rights based upon the number and timing of occurrences. It is [River Thames's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [River Thames Policy]."

viii. River Thames "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

**ANSWER*:*** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 309 and therefore denies same.

310. In addition, River Thames reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

iii. River Thames "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" River Thames thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [River Thames] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [River Thames Policy]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. River Thames reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. River Thames reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [River Thames's] agent for notice of claims provided in the Policy Declarations."

x. River Thames s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [River Thames Policy], or for which [RCBO] abandoned its claim for

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by River Thames and RCBO "in our around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [River Thames] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [River Thames Policy]."

xiv. River Thames reserves its rights "pursuant to the [River Thames Policy's] Other Insurance Condition."

xv. River Thames reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 310 and therefore denies same.

311. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, River Thames has reserved its right to deny its defense and indemnity obligation under the River Thames Policy on the grounds that the River Thames Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the River Thames Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the River Thames Policy defines that term,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

within the River Thames Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the River Thames Covered Claims.

i. Claim 15 includes negligence allegations that RCBO "negligently supervised and/or retained ABUSER in positions of trust and authority as a priest" (¶ 49) and "failed to use reasonable care in protecting Plaintiff [] from Abuser's misconduct that created a risk of childhood sexual abuse, while Plaintiffs [] were involved in activities sponsored, supervised, organized or directed by [RCBO]" (¶ 53) and that such negligence caused the plaintiff bodily injury, including "suffer[ing] physical, mental and emotional health problems" (¶ 67).

ii. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

iv. Claim 204 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 66) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 49), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 69).

v. Claim 383 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 311 and therefore denies same.

312. The remaining River Thames Covered Claims not listed in Paragraph 311 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the River Thames Policy defines that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 312 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

313. As a further example, River Thames reserved its right to deny coverage under the River Thames Policy on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 314-315.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 313 and therefore denies same.

314. There is a substantial likelihood that the River Thames Covered Claims will exhaust the primary insurance underlying the River Thames Policy. The underlying Pacific Indemnity primary policy no. LAC 127792 has limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/63 Pacific Indemnity Policy"). There are at least 17 River Thames Covered Claims that fall within the coverage periods for the 3/12/62-10/25/63 Pacific Indemnity Policy and the River Thames Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 314 and therefore denies same.

315. Data from past clergy sexual abuse cases indicate the River Thames Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/63 Pacific Indemnity Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, River Thames received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because River Thames is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the River Thames Policy, to resolve the River Thames Covered Claims and the claims falling within the River Thames coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the River Thames

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/63 Pacific Indemnity Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 315 and therefore denies same.

316. The asserted reservations of rights set forth in Paragraphs 309 and 310 do not provide River Thames valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the River Thames Covered Claims under the River Thames Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the River Thames Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the River Thames Policy has either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to River Thames either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with River Thames as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 316 and therefore denies same.

317. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the River Thames Covered Claims up to the policy limits under the River Thames Policy. Upon information and belief, River Thames received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because River Thames is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 317 and therefore denies same.

318. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and thereby River Thames has failed to provide the benefits of the River Thames Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 318 and therefore denies same.

319. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. Excess Insurance Co. thereby has failed to provide the benefits of the Excess Insurance Co. Policies to RCBO. The River Thames Policy provides coverage for, and does not exclude, the River Thames Covered Claims, and River Thames is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the River Thames Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 319 and therefore denies same.

320. The River Thames Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 320 and therefore denies same.

321. An actual controversy of a justiciable nature presently exists between RCBO and River Thames concerning the proper construction of the River Thames Policy, whether River Thames's cited grounds for reservation of rights to deny defense and/or indemnity under the River Thames Policy are valid, whether there is any coverage for the River Thames Covered Claims under the River Thames Policy, whether River Thames is obligated to drop down to provide first-dollar coverage for the River Thames Covered Claims because the underlying primary insurance is exhausted, River Thames's and RCBO's respective rights and obligations under the River Thames

Policy with respect to the River Thames Covered Claims, and whether River Thames should participate in settlement regarding the River Thames Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 321 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 321 and therefore denies same.

322. RCBO is entitled to a declaratory judgment stating River Thames has issued the River Thames Policy to RCBO, the River Thames Policy covers the River Thames Covered Claims, and RCBO is entitled to both defense and indemnity regarding the River Thames Covered Claims under the River Thames Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the River Thames Policy as alleged in Paragraphs 311-312, and the requirement that River Thames drop down to provide defense and indemnity to RCBO regarding the River Thames Covered Claims.

**ANSWER:** Paragraph 322 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 322 and therefore denies same.

**<u>FOURTEENTH CAUSE OF ACTION</u>**

**(Declaratory Relief Against World Auxiliary - Excess)**

323. RCBO realleges and incorporates herein Paragraphs 1 through 322 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER*:*** Travelers adopts and incorporates its responses to paragraphs 1 through 322 above as its response to paragraph 323.

324. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 324 states legal conclusions to which no response is required and Travelers therefore denies same.

325. An actual and justiciable controversy exists between RCBO and World Auxiliary with respect to whether World Auxiliary is obligated to provide RCBO with defense and indemnity

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

under the World Auxiliary Policy regarding the subset of the Suits for which RCBO alleges World Auxiliary is obligated to provide RCBO with indemnity, as set forth in Paragraph 18 (the "World Auxiliary Covered Claims").

**ANSWER:** Paragraph 325 states legal conclusions to which no response is required and Travelers therefore denies same.

326. Pursuant to the terms of the World Auxiliary Policy, World Auxiliary is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the World Auxiliary Covered Claims.

**ANSWER:** Paragraph 326 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 326 and therefore denies same.

327. RCBO has fully satisfied all conditions required under the World Auxiliary Policy, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 327 and therefore denies same.

328. RCBO's broker and/or RCBO tendered the World Auxiliary Covered Claims to World Auxiliary on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 328 and therefore denies same.

329. World Auxiliary denied and/or failed to confirm it will defend and indemnify RCBO for the World Auxiliary Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 328 and therefore denies same.

330. World Auxiliary has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the World Auxiliary Policy that, in turn, will exhaust those policies and trigger World Auxiliary's obligation

to provide the benefits of the World Auxiliary Policy to RCBO. Rather, World Auxiliary reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 330 and therefore denies same.

331. World Auxiliary's reservation of rights includes World Auxiliary's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. World Auxiliary is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. World Auxiliary's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [World Auxiliary Policy]."

iv. "To the extent the [World Auxiliary Policy is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. World Auxiliary "reserve[s] all rights based upon the number and timing of occurrences. It is [World Auxiliary's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [World Auxiliary Policy]."

viii. World Auxiliary "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 331 and therefore denies same.

332. In addition, World Auxiliary reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. World Auxiliary "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" World Auxiliary thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [World Auxiliary] reserve[s] the right to decline coverage if that

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [World Auxiliary Policy]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. World Auxiliary reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. World Auxiliary reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [World Auxiliary's] agent for notice of claims provided in the Policy Declarations."

x. World Auxiliary s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [World Auxiliary Policy], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by World Auxiliary and RCBO "in our around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [World Auxiliary] may preclude coverage."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [World Auxiliary Policy]."

xiv. World Auxiliary reserves its rights "pursuant to the [World Auxiliary Policy's] Other Insurance Condition."

xv. xv. World Auxiliary reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 332 and therefore denies same.

333. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, World Auxiliary has reserved its right to deny its defense and indemnity obligation under the World Auxiliary Policy on the grounds that the World Auxiliary Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the World Auxiliary Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the World Auxiliary Policy defines that term, within the World Auxiliary Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the World Auxiliary Covered Claims.

i. Claim 15 includes negligence allegations that RCBO "negligently supervised and/or retained ABUSER in positions of trust and authority as a priest" (¶ 49) and "failed to use reasonable care in protecting Plaintiff [] from Abuser's misconduct that created a risk of childhood sexual abuse, while Plaintiffs [] were involved in activities sponsored, supervised, organized or directed by [RCBO]" (¶ 53) and that such negligence caused the plaintiff bodily injury, including "suffer[ing] physical, mental and emotional health problems" (¶ 67).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

ii. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

iv. Claim 204 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 66) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 49), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 69).

v. Claim 383 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit

wrongful acts against the Plaintiff" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 333 and therefore denies same.

334. The remaining World Auxiliary Covered Claims not listed in Paragraph 333 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the World Auxiliary Policy defines that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 334 and therefore denies same.

335. As a further example, World Auxiliary reserved its right to deny coverage under the World Auxiliary Policy on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 336-337.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 335 and therefore denies same.

336. There is a substantial likelihood that the World Auxiliary Covered Claims will exhaust the primary insurance underlying the World Auxiliary Policy. The underlying Pacific Indemnity primary policy no. LAC 127792 has limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/63 Pacific Indemnity Policy"). There are at least 17 World Auxiliary

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Covered Claims that fall within the coverage periods for the 3/12/62-10/25/63 Pacific Indemnity Policy and the World Auxiliary Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 336 and therefore denies same.

337. Data from past clergy sexual abuse cases indicate the World Auxiliary Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/63 Pacific Indemnity Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, World Auxiliary received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because World Auxiliary is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the World Auxiliary Policy, to resolve the World Auxiliary Covered Claims and the claims falling within the World Auxiliary coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the World Auxiliary Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/63 Pacific Indemnity Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 337 and therefore denies same.

338. The asserted reservations of rights set forth in Paragraphs 331 and 332 do not provide World Auxiliary valid or meritorious bases on which to deny and/or refuse to confirm indemnity for

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

the World Auxiliary Covered Claims under the World Auxiliary Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the World Auxiliary Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the World Auxiliary Policy has either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to World Auxiliary either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with World Auxiliary as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 338 and therefore denies same.

339. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the World Auxiliary Covered Claims up to the policy limits under the World Auxiliary Policy. Upon information and belief, World Auxiliary received the Policy Limits Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because World Auxiliary is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 339 and therefore denies same.

340. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and thereby World Auxiliary has failed to provide the benefits of the World Auxiliary Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 340 and therefore denies same.

341. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letters and denied and/or failed to confirm it will indemnify RCBO. World Auxiliary thereby has failed to

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

provide the benefits of the World Auxiliary Policy to RCBO. The World Auxiliary Policy provides coverage for, and does not exclude, the World Auxiliary Covered Claims, and World Auxiliary is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the World Auxiliary Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 341 and therefore denies same.

342. The World Auxiliary Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 342 and therefore denies same.

343. An actual controversy of a justiciable nature presently exists between RCBO and World Auxiliary concerning the proper construction of the World Auxiliary Policy, whether World Auxiliary's cited grounds for reservation of rights to deny defense and/or indemnity under the World Auxiliary Policy are valid, whether there is any coverage for the World Auxiliary Covered Claims under the World Auxiliary Policy, whether World Auxiliary is obligated to drop down to provide first-dollar coverage for the World Auxiliary Covered Claims because the underlying primary insurance is exhausted, World Auxiliary's and RCBO's respective rights and obligations under the World Auxiliary Policy with respect to the World Auxiliary Covered Claims, and whether World Auxiliary should participate in settlement regarding the World Auxiliary Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 343 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 343 and therefore denies same.

344. RCBO is entitled to a declaratory judgment stating World Auxiliary has issued the World Auxiliary Policy to RCBO, the World Auxiliary Policy covers the World Auxiliary Covered Claims, and RCBO is entitled to both defense and indemnity regarding the World Auxiliary Covered Claims under the World Auxiliary Policy, including, without limitation, a declaration of exhaustion

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

as to the primary policies underlying the World Auxiliary Policy as alleged in Paragraphs 333-334, and the requirement that World Auxiliary drop down to provide defense and indemnity to RCBO regarding the World Auxiliary Covered Claims.

**ANSWER:** Paragraph 344 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 344 and therefore denies same.

**FIFTEENTH CAUSE OF ACTION**

**(Declaratory Relief Against Dominion - Excess)**

345. RCBO realleges and incorporates herein Paragraphs 1 through 344 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 344 above as its response to paragraph 345.

346. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 346 states legal conclusions to which no response is required and Travelers therefore denies same.

347. An actual and justiciable controversy exists between RCBO and Dominion with respect to whether Dominion is obligated to provide RCBO with defense and indemnity under the Dominion Policies regarding the subset of the Suits for which RCBO alleges Dominion is obligated to provide RCBO with indemnity, as set forth in Paragraph 16 (the "Dominion Covered Claims").

**ANSWER:** Paragraph 347 states legal conclusions to which no response is required and Travelers therefore denies same.

348. Pursuant to the terms of the Dominion Policies, Dominion is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Dominion Covered Claims.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Paragraph 348 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 348 and therefore denies same.

349. RCBO has fully satisfied all conditions required under the Dominion Policies, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 349 and therefore denies same.

350. RCBO's broker and/or RCBO tendered the Dominion Covered Claims to Dominion on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 349 and therefore denies same.

351. Dominion denied and/or failed to confirm it will defend and indemnify RCBO for the Dominion Covered Claims.

ANSWER: Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 349 and therefore denies same.

352. Dominion has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the Dominion Policies that, in turn, will exhaust those policies and trigger Dominion's obligation to provide the benefits of the Dominion Policies to RCBO. Rather, Dominion reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 352 and therefore denies same.

353. Dominion's reservation of rights includes Dominion's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."




DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

ii. Dominion is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Dominion's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Dominion Policies]."

iv. "To the extent the [Dominion Policies is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Dominion "reserve[s] all rights based upon the number and timing of occurrences. It is [Dominion's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Dominion Policies]."

viii. Dominion "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 353 and therefore denies same.

354. In addition, Dominion reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Dominion "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Dominion thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Dominion] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Dominion Policies]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Dominion reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Dominion reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

implicate the respective policy 'as soon as practicable' to [Dominion's] agent for notice of claims provided in the Policy Declarations."

x. Dominion s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Dominion Policies], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Dominion and RCBO "in our around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Dominion] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Dominion Policies]."

xiv. Dominion reserves its rights "pursuant to the [Dominion Policies's] Other Insurance Condition."

xv. Dominion reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 354 and therefore denies same.

355. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Dominion has reserved its right to deny its defense and indemnity obligation under the Dominion Policies on the grounds that the Dominion Covered Claims allege




DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/ or indemnity do not apply because the Dominion Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Dominion Policies defines that term, within the Dominion Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Dominion Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 355 and therefore denies same.

356. The remaining Dominion Covered Claims not listed in Paragraph 355 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Dominion Policies defines that term.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 356 and therefore denies same.

357. As a further example, Dominion reserved its right to deny coverage under the Dominion Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraph 358-359.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 357 and therefore denies same.

358. There is a substantial likelihood that the Dominion Covered Claims will exhaust the primary insurance underlying the Dominion Policies. The underlying Pacific Indemnity primary policy nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). There are at least 38 Dominion Covered Claims that fall within the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies and the Dominion Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 358 and therefore denies same.

359. Data from past clergy sexual abuse cases indicate the Dominion Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, Dominion received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Dominion is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the Dominion Policies, to resolve the Dominion Covered Claims and the

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

claims falling within the Dominion coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Dominion Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 359 and therefore denies same.

360. The asserted reservations of rights set forth in Paragraphs 353 and 354 do not provide Dominion valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Dominion Covered Claims under the Dominion Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Dominion Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the Dominion Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Dominion either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Dominion as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 360 and therefore denies same.

361. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Dominion Covered Claims up to the policy limits under the Dominion Policies. Upon information and belief, Dominion

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Dominion is represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 361 and therefore denies same.

362. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and thereby Dominion has failed to provide the benefits of the Dominion Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 362 and therefore denies same.

363. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand letter and denied and/or failed to confirm it will indemnify RCBO. Dominion thereby has failed to provide the benefits of the Dominion Policies to RCBO. The Dominion Policies provide coverage for, and do not exclude, the Dominion Covered Claims, and Dominion is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Dominion Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 363 and therefore denies same.

364. The Dominion Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 364 and therefore denies same.

365. An actual controversy of a justiciable nature presently exists between RCBO and Dominion concerning the proper construction of the Dominion Policies, whether Dominion's cited grounds for reservation of rights to deny defense and/or indemnity under the Dominion Policies are valid, whether there is any coverage for the Dominion Covered Claims under the Dominion Policies, whether Dominion is obligated to drop down to provide first-dollar coverage for the Dominion Covered Claims because the underlying primary insurance is exhausted, Dominion's and RCBO's

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

respective rights and obligations under the Dominion Policies with respect to the Dominion Covered Claims, and whether Dominion should participate in settlement regarding the Dominion Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 365 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 365 and therefore denies same.

366. RCBO is entitled to a declaratory judgment stating Dominion has issued the Dominion Policies to RCBO, the Dominion Policies cover the Dominion Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Dominion Covered Claims under the Dominion Policies, including, without limitation, a declaration of exhaustion as to the primary policies underlying the Dominion Policies as alleged in Paragraphs 358-359, and the requirement that Dominion drop down to provide defense and indemnity to RCBO regarding the Dominion Covered Claims.

**ANSWER:** Paragraph 366 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 366 and therefore denies same.

**SIXTEENTH CAUSE OF ACTION**

**(Declaratory Relief Against English & American - Excess)**

367. RCBO realleges and incorporates herein Paragraphs 1 through 366 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 366 above as its response to paragraph 367.

368. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 368 states legal conclusions to which no response is required and Travelers therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

369. An actual and justiciable controversy exists between RCBO and English & American with respect to whether English & American is obligated to provide RCBO with defense and indemnity under the English & American Policy regarding the subset of the Suits for which RCBO alleges English & American is obligated to provide RCBO with indemnity, as set forth in Paragraph 19 (the "English & American Covered Claims").

**ANSWER:** Paragraph 369 states legal conclusions to which no response is required and Travelers therefore denies same.

370. Pursuant to the terms of the English & American Policy, English & American is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the English & American Covered Claims.

**ANSWER:** Paragraph 370 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 370 and therefore denies same.

371. RCBO has fully satisfied all conditions required under the English & American Policy, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 371 and therefore denies same.

372. RCBO's broker and/or RCBO tendered the English & American Covered Claims to English & American on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 372 and therefore denies same.

373. English & American denied and/or failed to confirm it will defend and indemnify RCBO for the English & American Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 373 and therefore denies same.

374. English & American has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the English

& American Policy that, in turn, will exhaust those policies and trigger English & American's obligation to provide the benefits of the English & American Policy to RCBO. Rather, English & American reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 374 and therefore denies same.

375. English & American's reservation of rights includes English & American's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. English & American is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. English & American's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [English & American Policy]."

iv. "To the extent the [English & American Policy is] potentially implicated, [it] provide[s] indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. English & American "reserve[s] all rights based upon the number and timing of occurrences. It is [English & American's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [English & American Policy]."

viii. English & American "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 375 and therefore denies same.

376. In addition, English & American reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. English & American "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" English & American thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [English & American] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [English & American Policy]."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. English & American reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. English & American reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [English & American's] agent for notice of claims provided in the Policy Declarations."

x. English & American s reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [English & American Policy], or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by English & American and RCBO "in our around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [English & American] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [English & American Policy]."

xiv. English & American reserves its rights "pursuant to the [English & American Policy's] Other Insurance Condition."

xv. English & American reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 376 and therefore denies same.

377. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, English & American has reserved its right to deny its defense and indemnity obligation under the English & American Policy on the grounds that the English & American Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the English & American Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the English & American Policy defines that term, within the English & American Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the English & American Covered Claims.

i. Claim 15 includes negligence allegations that RCBO "negligently supervised and/or retained ABUSER in positions of trust and authority as a priest" (¶ 49) and "failed to use reasonable care in protecting Plaintiff [] from Abuser's misconduct that created a risk of childhood sexual abuse, while Plaintiffs [] were involved in activities sponsored, supervised,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

organized or directed by [RCBO]" (¶ 53) and that such negligence caused the plaintiff bodily injury, including "suffer[ing] physical, mental and emotional health problems" (¶ 67).

ii. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

iv. Claim 204 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 66) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 49), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm." (¶ 69).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

v. Claim 383 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 88).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 377 and therefore denies same.

378. The remaining English & American Covered Claims not listed in Paragraph 377 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the English & American Policy defines that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 378 and therefore denies same.

379. As a further example, English & American reserved its right to deny coverage under the English & American Policy on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 380-381.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 379 and therefore denies same.

380. There is a substantial likelihood that the English & American Covered Claims will exhaust the primary insurance underlying the English & American Policy. The underlying Pacific Indemnity primary policy no. LAC 127792 has limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/63 Pacific Indemnity Policy"). There are at least 17 English & American Covered Claims that fall within the coverage periods for the 3/12/62-10/25/63 Pacific Indemnity Policy and the English & American Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 380 and therefore denies same.

381. Data from past clergy sexual abuse cases indicate the English & American Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/63 Pacific Indemnity Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, English & American received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because English & American was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the English & American Policy, to resolve the English & American Covered Claims and the claims falling within the English & American coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the English & American Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Covered Claims will exhaust the 3/12/62-10/25/63 Pacific Indemnity Policy. *See Jane Doe 3, et al. v. Roe #1, et al.,* Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.,* Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 381 and therefore denies same.

382. The asserted reservations of rights set forth in Paragraphs 375 and 376 do not provide English & American valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the English & American Covered Claims under the English & American Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the English & American Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the English & American Policy has either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to English & American either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with English & American as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 382 and therefore denies same.

383. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the English & American Covered Claims up to the policy limits under the English & American Policy. Upon information and belief, English & American received the Policy Limits Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because English & American was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 383 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

384. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and thereby English & American has failed to provide the benefits of the English & American Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 384 and therefore denies same.

385. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. English & American thereby has failed to provide the benefits of the English & American Policy to RCBO. The English & American Policy provides coverage for, and does not exclude, the English & American Covered Claims, and English & American is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the English & American Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 385 and therefore denies same.

386. The English & American Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 386 and therefore denies same.

387. An actual controversy of a justiciable nature presently exists between RCBO and English & American concerning the proper construction of the English & American Policy, whether English & American's cited grounds for reservation of rights to deny defense and/or indemnity under the English & American Policy are valid, whether there is any coverage for the English & American Covered Claims under the English & American Policy, whether English & American is obligated to drop down to provide first-dollar coverage for the English & American Covered Claims because the underlying primary insurance is exhausted, English & American's and RCBO's respective rights and obligations under the English & American Policy with respect to the English & American Covered Claims, and whether English & American should participate in settlement regarding the

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

English & American Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 387 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 386 and therefore denies same.

388. RCBO is entitled to a declaratory judgment stating English & American has issued the English & American Policy to RCBO, the English & American Policy covers the English & American Covered Claims, and RCBO is entitled to both defense and indemnity regarding the English & American Covered Claims under the English & American Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the English & American Policy as alleged in Paragraphs 380-381, and the requirement that English & American drop down to provide defense and indemnity to RCBO regarding the English & American Covered Claims.

**ANSWER:** Paragraph 388 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 388 and therefore denies same.

**SEVENTEENTH CAUSE OF ACTION**

**(Declaratory Relief Against Westport - Umbrella)**

389. RCBO realleges and incorporates herein Paragraphs 1 through 385 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 387 above as its response to paragraph 389.

390. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 390 states legal conclusions to which no response is required and Travelers therefore denies same.

391. An actual and justiciable controversy exists between RCBO and Westport with respect to whether Westport is obligated to provide RCBO with defense and indemnity under the Westport Umbrella Policy regarding the subset of the Suits for which RCBO alleges Westport is

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

obligated to provide RCBO with indemnity, as set forth in Paragraph 22 (the "Westport Umbrella Covered Claims").

**ANSWER:** Paragraph 391 states legal conclusions to which no response is required and Travelers therefore denies same.

392. Pursuant to the terms of the Westport Umbrella Policy, Westport is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Westport Umbrella Covered Claims.

**ANSWER:** Paragraph 392 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 392 and therefore denies same.

393. RCBO has fully satisfied all conditions required under the Westport Umbrella Policy, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 393 and therefore denies same.

394. RCBO's broker and/or RCBO tendered the Westport Umbrella Covered Claims to Westport on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 394 and therefore denies same.

395. Westport denied and/or failed to confirm it will defend or indemnify RCBO for the Westport Umbrella Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 395 and therefore denies same.

396. Westport has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Westport Umbrella Policy that, in turn, will exhaust those policies and trigger Westport's obligation to provide the benefits of the Westport Umbrella Policy to RCBO. Rather, Westport reserved its right to deny coverage on a number of bases.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 396 and therefore denies same.

397. Westport's reservation of rights includes Westport's position that it may deny coverage based on:

i. Westport's contention that "there is no indication that the limits underlying the [Westport Umbrella Policy] have been exhausted in accordance with the terms of the policies, Westport would have no immediate potential coverage obligations,"

ii. "Whether the claim referenced above falls within the policy period, limits, and scope of insurance afforded under the referenced [Westport Umbrella Policy] and/or policy(ies) to which the [Westport Umbrella Policy] may follow form, in whole or in part,"

iii. "Whether the applicable limits of all applicable underlying policies of insurance have in fact been exhausted in accordance with the [Westport Umbrella Policy's] terms,"

iv. "Whether any applicable policy exclusions limit or preclude coverage for the claim at issue, in whole or in part,"

v. "Whether the insured has complied with its duties under the [Westport Umbrella Policy], including but not limited to 'notice' and 'cooperation' obligations, and, if not, whether any such failure limits or precludes coverage for the claim at issue, in whole or in part,"

vi. "Whether any applicable policy conditions limit or preclude coverage for the claims at issue, in whole or in part,"

vii. "Whether Westport's obligations, if any, are limited or precluded due to prior impairment or exhaustion of limits, settlements, releases or other agreements, or are prohibited by law, statute and/or public policy,"

viii. Westport's purported "right to assert any additional defenses that might apply by operation of law or otherwise, including but not limited to

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

> defenses that may be asserted by the insurers who issued insurance policies with limits underlying the limits of the [Westport Umbrella Policy] denies coverage for any enhanced damages based on the defendants' willful and malicious conduct."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 397 and therefore denies same.

398. It is RCBO's position the above reservations of rights are without both factual and legal merit. For example, Westport has reserved its right to deny its defense and indemnity obligation under the Westport Umbrella Policy on the grounds that "any applicable policy exclusions limit or preclude coverage for the [the Westport Umbrella Covered Claims] at issue, in whole or in part." Such reservation of rights as to defense and/or indemnity does not apply because the Westport Umbrella Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Westport Umbrella Policy defines that term, within the Westport Umbrella Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Westport Umbrella Covered Claims.

i. Claim 13 includes negligence allegations that RCBO "failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of childhood sexual abuse in the future by [] and [], including but not limited to preventing or avoiding placement of [] and [] in a function or environment in which contact with children is an inherent aspect of that function or environment" (¶ 38) and "negligently failed to supervise Plaintiff [], a minor, and failed to use reasonable care in protecting Plaintiff [], a minor, from [] and []'s misconduct that created a risk of childhood sexual abuse, while Plaintiff [], a minor, was involved in activities sponsored, supervised, organized, or directed by [RCBO] or their agents and employees" (¶ 47) and that as a result of such negligence




DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

the plaintiff "suffered economic, physical, psychological and emotional harm" (¶ 41).

ii. Claim 140 includes negligence allegations that RCBO was "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 46) and that RCBO "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRATOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. Defendants further failed to take reasonable measures to prevent the childhood sexual assault, molestation and harassment of minors, including Plaintiff' (¶ 49), and that as a result of such negligence plaintiff "suffered and will continue to suffer physical, psychological, emotional and economic harm" (¶ 47).

iii. Claim 323 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure, where the DOE PERPETRATOR was able to commit wrongful acts against the Plaintiff. [RCBO] failed to provide reasonable supervision of the DOE PERPETRATOR. [RCBO]further failed to take reasonable measures to prevent sexual harassment, molestation and assault of minors, including the Plaintiff" (¶ 44), and that as a result of such negligence plaintiff "suffered the physical injury of sexual assault" (¶ 75).

iv. Claim 310 includes negligence allegations that RCBO "failed to provide reasonable supervision of the Perpetrator, failed to use reasonable care in

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

investigating the Perpetrator, and failed to provide adequate warning to Plaintiff and Plaintiff's family of the Perpetrator's dangerous propensities and unfitness. Defendants further failed to take reasonable measures to prevent future sexual abuse" (¶ 23) and that RCBO "breached [its] duty to take reasonable protective measures to protect Plaintiff and other minor parishioners and/or students from the risk of childhood sexual abuse by the Perpetrator, or others, by failing to warn, train, or educate Plaintiff, Plaintiff's parents or guardians, and Defendants' employees, volunteers, representatives and/or agents about how to avoid, rebuff, minimize or respond to such a risk; by failing to warn, train, or educate Plaintiff, Plaintiff's parents or guardians, and Defendants' employees, volunteers, representatives and/or agents about how to report inappropriate or suspicious behaviors to law enforcement or others of Defendants' agents; by failing to train or educate Defendants' employees, volunteers, representatives and/or agents about their mandatory reporting obligations pursuant to California Penal Code § 11164, et seq.; and by failing to promulgate or enforce those rules necessary to protect Plaintiff and other minor students or minor parishioners from the foreseeable risk of child sexual assault within Defendants' programs or on their premises" (¶ 31), and that as a result of such negligence plaintiff "suffered, and continues to suffer physical injury" (¶ 24).

v. Claim 388 includes negligence allegations that RCBO "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection whatsoever, and continued to make Plaintiff accessible to the DOE PERPETRATOR for the purposes of sexual assault" (¶ 65) and that RCBO "failed to provide reasonable supervision of the DOE PERPETRATOR, failed to use reasonable care in investigating the DOE PERPETRATOR and failed to provide adequate warning to Plaintiff of

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

> the DOE PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent sexual assault, harassment, and molestation of children, including Plaintiff" (¶ 78), and that as a result of such negligence plaintiff "suffered the physical injury of sexual assault" (¶ 75).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 398 and therefore denies same.

399. The remaining Westport Umbrella Covered Claims not listed in Paragraph 398 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Westport Umbrella Policy defines that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 399 and therefore denies same.

400. As a further example, Westport reserved its right to deny coverage under the Westport Umbrella Policy on the ground that "there is no indication that the limits underlying the [Westport Umbrella Policy] have been exhausted in accordance with the terms of the policies, Westport would have no immediate potential coverage obligations." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 401-402.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 400 and therefore denies same.

401. There is a substantial likelihood that the Westport Umbrella Covered Claims will exhaust the primary insurance underlying the Westport Umbrella Policy. The underlying Commercial Union primary policy no. CF 9334-008 has limits of $300,000 per occurrence and $300,000 in aggregate (the "10/26/74-12/01/75 Commercial Union Policy"). The underlying Travelers primary policy no. 05 AL 802025 CMA has limits of $300,000 per occurrence and $300,000 in aggregate during the policy year 12/01/75-12/01/76 and $500,000 CSL during the policy year 12/01/76-12/01/77 (the "12/01/75-12/01/77 Travelers Policy"). The underlying CNA excess

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

policy no. RDU 146 74 50 has a limit of $1,000,000 in the aggregate (the "10/26/74-12/01/77 CNA Policy"). There are at least 15 Westport Umbrella Covered Claims that fall within the coverage periods for the 10/26/74-12/01/75 Commercial Union Policy, the 12/01/75-12/01/77 Travelers Policy, the 10/26/74-12/01/77 CNA Policy, and the Westport Umbrella Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 401 and therefore denies same.

402. Data from past clergy sexual abuse cases indicate the Westport Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/74-12/01/75 Commercial Union Policy, the 12/01/75-12/01/77 Travelers Policy and the 10/26/74-12/01/77 CNA Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million— more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent the UCC Westport Demand Letter on July 3, 2024, demanding Westport pay the UCC Westport Demand Amount, a sum of $308.9 million, which is within the policy limits of the Westport Excess Policy and Westport Umbrella Policy, to resolve the Westport Excess Covered Claims and the Westport Umbrella Covered Claims alleged against RCBO. The UCC based the UCC Westport Demand Amount on its reasonable estimate of the value of the Westport Excess Covered Claims and Westport Umbrella Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Westport Excess Covered Claims and Westport Umbrella Covered Claims will exhaust the 10/26/74-12/01/75 Commercial Union Policy, the 12/01/75-12/01/77 Travelers Policy and the 10/26/74-12/01/77 CNA Policy. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 402 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

403. Moreover, Westport must drop down and provide first-dollar coverage of the Westport Umbrella Covered Claims under the Westport Umbrella Policy because the underlying primary insurer Commercial Union is insolvent.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 403 and therefore denies same.

404. The asserted reservations of rights set forth in Paragraph 397 do not provide Westport valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Westport Umbrella Covered Claims under the Westport Umbrella Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Westport Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the Westport Policies have either been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Westport as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 404 and therefore denies same.

405. RCBO sent Westport a letter on May 30, 2024, demanding Westport indemnify RCBO for the Westport Umbrella Covered Claims up to the policy limits under the Westport Umbrella Policy (the "Westport Umbrella Policy Limits Letter").

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 405 and therefore denies same.

406. Westport failed to respond to the Westport Umbrella Policy Limits Letters confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the Westport Umbrella Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 406 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

407. On August 6, 2024, Westport responded to the UCC Westport Demand Letter declining to indemnify RCBO, and thereby has failed to provide the benefits of the Westport Umbrella Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 407 and therefore denies same.

408. The Westport Umbrella Policy provides coverage for, and does not exclude, the Westport Umbrella Covered Claims, and Westport is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Westport Umbrella Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 408 and therefore denies same.

409. The Westport Umbrella Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 409 and therefore denies same.

410. An actual controversy of a justiciable nature presently exists between RCBO and Westport concerning the proper construction of the Westport Umbrella Policy, whether Westport's cited grounds for reservation of rights to deny defense and/or indemnity under the Westport Umbrella Policy are valid, whether there is any coverage for the Westport Umbrella Covered Claims under the Westport Umbrella Policy, whether Westport is obligated to drop down to provide first-dollar coverage for the Westport Umbrella Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, Westport's and RCBO's respective rights and obligations under the Westport Umbrella Policy with respect to the Westport Umbrella Covered Claims, and whether Westport should participate in settlement regarding the Westport Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Paragraph 410 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 410 and therefore denies same.

411. RCBO is entitled to a declaratory judgment stating Westport has issued the Westport Policies to RCBO, the Westport Umbrella Policy covers the Westport Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Westport Umbrella Covered Claims under the Westport Umbrella Policy, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Westport Umbrella Policy as alleged in Paragraph 398-400, and the requirement that Westport drop down to provide defense and indemnity to RCBO regarding the Westport Umbrella Covered Claims.

**ANSWER:** Paragraph 411 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 411 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

## EIGHTEENTH CAUSE OF ACTION

### (Declaratory Relief Against Travelers - Umbrella)

412. RCBO realleges and incorporates herein Paragraphs 1 through 411 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 411 above as its response to paragraph 412.

413. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 413 states legal conclusions to which no response is required and Travelers therefore denies the same.

414. An actual and justiciable controversy exists between RCBO and Travelers with respect to whether Travelers is obligated to provide RCBO with defense and indemnity under the Travelers Umbrella Policies regarding the subset of the Suits for which RCBO alleges Travelers is obligated to provide RCBO with indemnity, as set forth in Paragraph 22 (the "Travelers Umbrella Covered Claims").

**ANSWER:** Paragraph 414 states legal conclusions to which no response is required and Travelers therefore denies the same.

415. Pursuant to the terms of the Travelers Umbrella Policies, Travelers is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Travelers Umbrella Covered Claims.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 414. Travelers denies the remaining allegations in paragraph 415.

416. RCBO has fully satisfied all conditions required under the Travelers Umbrella Policies, or is otherwise excused from doing so..

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 416. Travelers denies the remaining allegations in paragraph 416.

417. RCBO's broker and/or RCBO tendered the Travelers Umbrella Covered Claims to Travelers on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 417. Travelers admits that it has received certain tenders from RCBO.

418. Travelers denied and/or failed to confirm it will defend or indemnify RCBO for the Travelers Umbrella Covered Claims.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 418. Travelers denies that RCBO faces covered claims in excess of the limits of insurance underlying the Excess Policies and, for this reason among other reasons, RCBO has failed to show that Travelers' obligation to provide benefits under the Excess Policies has been triggered. Travelers admits that it has reserved its rights to deny coverage as to the claims that RCBO has tendered to Travelers on multiple bases. Except as so admitted, Travelers denies the remaining allegations of paragraph 418.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

419. Travelers has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Travelers Umbrella Policies that, in turn, will exhaust those policies and trigger Travelers' obligation to provide the benefits of the Travelers Umbrella Policies to RCBO. Rather, Travelers reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraphs 22 and 418 above, as part of its response to paragraph 419. Travelers denies that RCBO faces covered claims in excess of the limits of insurance underlying the Excess Policies and, for this reason among other reasons, RCBO has failed to show that Travelers' obligation to provide benefits under the Excess Policies has been triggered. Travelers admits that it has reserved its rights to deny coverage as to the claims that RCBO has tendered to Travelers on multiple bases. Except as so admitted, Travelers denies the remaining allegations of paragraph 419.

420. Travelers' reservation of rights with respect to the Travelers Umbrella Policies includes Travelers' position that it may deny coverage on the basis that:

i. "Travelers reserves the right to assert that it has no, and can have no, duty to defend the RCBO under the Travelers Excess Policies and has no, and can have no, obligation to reimburse the RCBO with respect to defense and/or investigation costs incurred by the RCBO,"

ii. "Travelers reserves the right to assert that it has no obligation to indemnify the RCBO pursuant to the Travelers Excess Policies for amounts that do not qualify as 'EXCESS NET LOSS,' as defined by the [Travelers Umbrella Policies],"

iii. "Travelers reserves the right to assert that the [Travelers Umbrella Policies] do not attach unless and until the RCBO becomes liable for damages with respect to a single accident or occurrence that results in an allocation of loss in excess of the total of the limits of the underlying policies,"

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

iv. "Travelers reserves the right to assert that it has no obligation to indemnify the RCBO with respect to a matter until the amount of the RCBO's obligation to pay has been finally determined either by judgment against the RCBO after actual trial or by written agreement of the RCBO, the claimant and Travelers,"

v. "Travelers reserves the right with respect to a matter to assert that the RCBO released Travelers pursuant to [a certain s]ettlement [a]greement from any liability in connection with that matter and the claims asserted by that [c]laimant,"

vi. Travelers may "rely on any policy provision that may be subsequently found to limit or preclude coverage,"

vii. Travelers may "initiate a declaratory relief action in order that it may have its coverage obligations, if any, to the RCBO in connection with a matter judicially determined."

**ANSWER:** Travelers admits that paragraph 420 outlines the bases for Travelers' reservation of rights. Travelers otherwise avers that its reservation of rights letters are the best evidence of their contents and to the extent any allegations are inconsistent with them, Travelers specifically denies them.

421. It is RCBO's position the above reservations of rights are without both factual and legal merit. For example, Travelers has reserved its right to deny its defense and indemnity obligation under the Travelers Umbrella Policies on the grounds that it may "rely on any policy provision that may be subsequently found to limit or preclude coverage." Such reservation of rights as to defense and/or indemnity does not apply because the Travelers Umbrella Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Travelers Umbrella Policies define that term, within the Travelers Umbrella Policies's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Travelers Umbrella Covered Claims.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

i. Claim 10 includes negligence allegations that RCBO "[was] negligent in the hiring, retention, control, and supervision, of PERPETRATOR" (¶ 14) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 14), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 15).

ii. Claim 21 includes negligence allegations that RCBO "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 51) and "failed to provide reasonable supervision of PERPETRATOR, failed to use reasonable care in investigating PERPETRTOR, and failed to provide adequate warning to Plaintiff and others of PERPETRATOR's dangerous propensities and unfitness. [RCBO] further failed to take reasonable measures to prevent the childhood sexual assault, abuse, and harassment of minor children, including Plaintiff" (¶ 54), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical, psychological, emotional, and economic harm" (¶ 52).

iii. Claim 29 includes negligence allegations that RCBO "[was] at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 9) and "[was] further negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 9), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury, psychological, emotional and economic harm" (¶ 10).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

iv. Claim 33 includes negligence allegations that RCBO was "at all times herein negligent in the hiring, retention, control, and supervision, of PERPETRATOR, so as to allow him to repeatedly commit sexual assaults upon minors, including Plaintiff" (¶ 9) and "fail[ed] to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities" (¶ 9), and that as a result of such negligence the plaintiff "suffered and will continue to suffer physical injury" (¶ 10).

v. Claim 35 includes negligence allegations that RCBO "[w]as] negligent in the hiring, retention, control, and supervision of PERPETRATOR" (¶ 9) and "[was] negligent in failing to protect and supervise Plaintiff from sexual assaults by its Priest while Plaintiff was on its property and engaged in its activities and while PERPETRATOR was engaged in his duties and responsibilities of outreach as a Priest" (¶ 9), and that such negligence caused the plaintiff bodily injury, including "physical injury, psychological, emotional and economic harm." (¶ 10).

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 421. Travelers admits that it has reserved its right to deny a defense and indemnification for RCBO on the ground that Travelers may "rely on any policy provision that may be subsequently found to limit or preclude coverage." Travelers otherwise avers that its reservation of rights letters are the best evidence of their contents and to the extent any allegations are inconsistent with them, Travelers specifically denies them. Travelers denies that these defenses do not apply. Travelers is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations of paragraph 421 and therefore denies same and expressly denies that Travelers' reservations of rights are without merit.

422. The remaining Travelers Umbrella Covered Claims not listed in Paragraph 421 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Travelers Umbrella Policies define that term.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 422. Travelers denies that the claims RCBO has tendered to Travelers constitute "bodily injury" caused by an "occurrence" as defined in the Excess Policies or underlying umbrella policies to which the Excess Policies follow form. Travelers is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations of paragraph 422 and therefore denies same.

423. As a further example, Travelers reserved its right to deny coverage under the Travelers Umbrella Policies on the ground that "do not attach unless and until the RCBO becomes liable for damages with respect to a single accident or occurrence that results in an allocation of loss in excess of the total of the limits of the underlying policies" and "to assert that it has no obligation to indemnify the RCBO with respect to a matter until the amount of the RCBO's obligation to pay has been finally determined either by judgment against the RCBO after actual trial or by written agreement of the RCBO, the claimant and Travelers." These reservations of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 424-425.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 423. Travelers admits that it has reserved its right to deny a defense and indemnification for RCBO on the grounds set forth in paragraph 423. Travelers otherwise avers that its reservation of rights letters are the best evidence of their contents and to the extent any allegations are inconsistent with them, Travelers specifically denies them. Travelers denies the remaining allegations of paragraph 423.

424. There is a substantial likelihood that the Travelers Umbrella Covered Claims will exhaust the primary insurance underlying the Travelers Umbrella Policies. The underlying Travelers Primary policies nos. 05 AL 802025 CMA, 05 SM 90296 FCA, 05 SM 99094, and 05 SM 107459 FCA have limits of $1,000,000 CSL (the "12/01/77-12/01/81 Travelers Primary Policies"). The underlying CNA excess policy no. UMB 006 46 71 53 has limits of $5,000,000 in aggregate (the




DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

"12/1/77-12/1/80 CNA Policy"). The underlying Westchester excess policy no. JU 8312510 has limits of $5,000,000 in aggregate (the "12/1/80-12/1/81 Westchester Policy"). There are at least 100 Travelers Umbrella Covered Claims that fall within the coverage periods for the 12/01/77-12/01/81 Travelers Primary Policies, the 12/1/77-12/1/80 CNA Policy, the 12/1/80-12/1/81 Westchester Policy and the Travelers Umbrella Policies.

**ANSWER:** Travelers adopts and incorporates by reference its responses to paragraphs 6 and 22 above, as part of its response to paragraph 424. Travelers denies that Alleged Travelers Policy No. 05 AL 802025 CMA, to the extent that it does exist, Alleged Travelers Policy No. 05 SM 107459, and the 12/1/80-12/1/81 Westchester Policy, are underlying any of the Excess Policies. Travelers admits that Alleged Travelers Policy No. 05 SM 90296 FCA, to the extent that it does exist, would be underlying Excess Policy No. 05 XN 55 WCA. Travelers further admits that the 12/1/77-12/1/80 CNA Policy is underlying Excess Policy No. 05 XN 55WCA. Travelers admits that Alleged Travelers Policy No. 05 SM 99094, to the extent that it does exist, would be underlying Excess Policy No. 05 XN 87 WCA. Travelers otherwise avers that the Alleged Primary Policies, to the extent they exist, the Excess Policies, the 12/1/77-12/1/80 CNA Policy, and the 12/1/80-12/1/81 Westchester Policy are the best evidence of their contents and to the extent any allegations are inconsistent with them, Travelers specifically denies them. Travelers is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations of paragraph 424 and therefore denies same.

425. Data from past clergy sexual abuse cases indicate the Travelers Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 12/01/77-12/01/81 Travelers Primary Policies, the 12/1/77-12/1/80 CNA Policy and the 12/1/80-12/1/81 Westchester Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Travelers the UCC Travelers Demand Letter on July 3, 2024, demanding Travelers pay a sum of $149.9 million (the "UCC Travelers Demand Amount"), which is within the policy limits of the Travelers Primary

Dentons US LLP
1999 Harrison Street, Suite 1300
Oakland, California 94612-4709
415 882 5000

Policies and the Travelers Umbrella Policies, to resolve the Travelers Excess Covered Claims and the Travelers Umbrella Covered Claims alleged against RCBO. The UCC based the UCC Travelers Demand Amount on its reasonable estimate of the value of the Travelers Excess Covered Claims and Travelers Umbrella Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Travelers Umbrella Covered Claims will exhaust the 12/01/77-12/01/81 Travelers Primary Policies, the 12/1/77-12/1/80 CNA Policy and the 12/1/80-12/1/81 Westchester Policy. *See Jane Doe 3, et al. v. Roe #1, et al.,* Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.,* Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers adopts and incorporates by reference its responses to paragraphs 6 and 22 above, as part of its response to paragraph 425. Travelers admits that the UCC sent Travelers a letter dated July 3, 2024 demanding that Travelers pay a sum to resolve the claims that RCBO has tendered to Travelers. Travelers otherwise avers that the UCC Demand Letter is the best evidence of its contents and to the extent any allegations are inconsistent with it, Travelers specifically denies them. Travelers is without knowledge or information sufficient to form a belief regarding the truth of the remaining allegations of paragraph 424 and therefore denies same.

426. The asserted reservations of rights set forth in Paragraph 420 do not provide Travelers valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Travelers Umbrella Covered Claims under the Travelers Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional conduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Travelers Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the Travelers Policies have either been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Travelers as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 426. Travelers admits that it has not given RCBO any

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

notice that the Excess Policies have been exhausted or that their limits have been reduced. Travelers denies the remaining allegations in paragraph 426.

427. RCBO sent Travelers a letter on May 30, 2024, demanding Travelers indemnify RCBO for the Travelers Umbrella Covered Claims up to the policy limits under the Travelers Umbrella Policies (the "Travelers Umbrella Policy Limits Letter").

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 427. Travelers admits that RCBO sent Travelers a letter dated May 30, 2024 demanding that Travelers indemnify RCBO for certain claims up to the policy limits of the Excess Policies. However, Travelers denies that this letter was a valid policy limits demand letter. Travelers otherwise avers that the letter dated May 30, 2024 is the best evidence of its contents and to the extent any allegations are inconsistent with it, Travelers specifically denies them.

428. Travelers failed to respond to the Travelers Umbrella Policy Limits Letter confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the Travelers Umbrella Policies to RCBO.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 428. Travelers admits that its counsel responded to RCBO's letter dated May 30, 2024 by letter dated July 1, 2024 setting forth Travelers' position that RCBO's letter was not a proper policy limits demand letter and that the letter failed to provide sufficient information for Travelers to evaluate RCBO's demand. Travelers otherwise avers that its response letter dated July 1, 2024 is the best evidence of its contents and to the extent any allegations are inconsistent with it, Travelers specifically denies them. Travelers denies the remaining allegations in paragraph 428 and expressly denies that any benefits are presently owed to RCBO under the Excess Policies.

429. On August 6, 2024, Travelers responded to the UCC Travelers Demand letter and denied and/or failed to confirm it will indemnify RCBO, and thereby has failed to provide the benefits of the Travelers Umbrella Policies to RCBO.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers adopts and incorporates by reference its response to 22 above, as part of its response to paragraph 429. Travelers admits that its counsel responded to the UCC Demand Letter by letter dated August 6, 2024, setting forth its position that the UCC Demand Letter was not a proper policy limits demand letter and that the UCC Demand Letter did not include sufficient information for Travelers to properly consider the demand. Travelers otherwise avers that its response letter dated August 6, 2024 is the best evidence of its contents and to the extent any allegations are inconsistent with it, Travelers specifically denies them. Travelers denies the remaining allegations in paragraph 429 and expressly denies that any benefits are presently owed to RCBO under the Excess Policies.

430. The Travelers Umbrella Policies provide coverage for, and do not exclude, the Travelers Umbrella Covered Claims, and Travelers is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Travelers Umbrella Covered Claims.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 430. Travelers denies the allegations in paragraph 429.

431. The Travelers Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 431. Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 431 and therefore denies same.

432. An actual controversy of a justiciable nature presently exists between RCBO and Travelers concerning the proper construction of the Travelers Umbrella Policies, whether Travelers' cited grounds for reservation of rights to deny defense and/or indemnity under the Travelers Umbrella Policies are valid, whether there is any coverage for the Travelers Umbrella Covered Claims under the Travelers Umbrella Policies, whether Travelers is obligated to drop down to provide first-dollar coverage for the Travelers Umbrella Covered Claims because the underlying primary insurer is insolvent and/or the underlying primary insurance is exhausted, Travelers' and RCBO's respective rights and obligations under the Travelers Umbrella Policies with respect to the

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Travelers Umbrella Covered Claims, and whether Travelers should participate in settlement regarding the Travelers Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 432. Paragraph 432 states legal conclusions to which no response is required and Travelers therefore denies the same.

433. RCBO is entitled to a declaratory judgment stating Travelers has issued the Travelers Policies to RCBO, the Travelers Umbrella Policies cover the Travelers Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Travelers Umbrella Covered Claims under the Travelers Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Travelers Umbrella Policies as alleged in Paragraphs 422-423, and the requirement that Travelers drop down to provide defense and indemnity to RCBO regarding the Travelers Umbrella Covered Claims.

**ANSWER:** Travelers adopts and incorporates by reference its response to paragraph 22 above, as part of its response to paragraph 433. Travelers admits that RCBO is seeking declaratory judgment as set forth in paragraph 433 but denies that RCBO is entitled to the same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**NINETEENTH CAUSE OF ACTION**

**(Declaratory Relief Against Pacific Employers - Umbrella)**

434. RCBO realleges and incorporates herein Paragraphs 1 through 433 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 432 above as its response to paragraph 433.

435. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 435 states legal conclusions to which no response is required and Travelers therefore denies same.

436. An actual and justiciable controversy exists between RCBO and Pacific Employers with respect to whether Pacific Employers is obligated to provide RCBO indemnity under the Pacific

Employers Policy regarding the subset of the Suits for which RCBO alleges Pacific Employers is obligated to provide RCBO with indemnity, as set forth in Paragraph 24 (the "Pacific Employers Covered Claims").

**ANSWER:** Paragraph 436 states legal conclusions to which no response is required and Travelers therefore denies same.

437. Pursuant to the terms of the Pacific Employers Policy, Pacific Employers is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Pacific Employers Covered Claims

**ANSWER:** Paragraph 437 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 437 and therefore denies same.

438. RCBO has fully satisfied all conditions required under the Pacific Employers Policy, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 438 and therefore denies same.

439. RCBO's broker and/or RCBO tendered the Pacific Employers Covered Claims to Pacific Employers on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 439 and therefore denies same.

440. Pacific Employers agreed to provide defense to RCBO for certain of the Pacific Employers Covered Claims. However, Pacific Employers denied and/or failed to confirm it will indemnify RCBO for the Pacific Employers Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 440 and therefore denies same.

441. Pacific Employers has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Pacific Employers Policy that, in turn, will exhaust those policies and trigger Pacific Employers'

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

obligation to provide the benefits of the Pacific Employers Policy to RCBO. Rather, Pacific Employers reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 441 and therefore denies same.

442. Pacific Employers' reservation of rights includes Pacific Employers' position that it may deny coverage on the following bases:

i. RCBO "has not met its burden of establishing the material terms and conditions of the [Pacific Employers Policy]."

ii. "Any alleged personal injury taking place outside the effective dates of coverage [is] not [] covered."

iii. "[The Pacific Employers Policy] may have been exhausted through the settlement of claims in connection with prior litigation involving [RCBO]."

iv. RCBO "has not met its burden in establishing that the limits of all underlying insurance, including any self-insured periods, have been properly and completely exhausted."

**ANSWER**: Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 442 and therefore denies same.

443. In addition, Pacific Employers reserved further rights to deny coverage as follows:

i. The right "to decline coverage on the basis that the [Employers] Policy is lost or otherwise missing."

ii. Employers "reserves its rights to the extent the [Employers] Policy is exhausted and [it has] no further defense or indemnity obligations under [Employers] Policy."

iii. "The right to the extent that limits are reduced in connection with settlement of prior claims."

iv. iv. "To the extent that [RCBO] knew of any of the abuse alleged by claimants prior to the effective date of the settlement agreement, [Pacific





DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Employers] reserves the right to deny coverage to the extent that any of the claims were released as part of [a prior] settlement."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 442 and therefore denies same.

444. It is RCBO's position the above reservations of rights are without both factual and legal merit. For example, Pacific Employers has reserved its right to "assert any applicable coverage defense in the future." Such reservation of rights as to defense and/or indemnity does not apply because the Pacific Employers Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Pacific Employers Policy defines that term, within the Pacific Employers Policy's coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Pacific Employers Covered Claims.

i. Claim 51 includes negligence allegations that RCBO "negligently failed to supervise DOE 5 in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 72) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 54), and that such negligence caused the plaintiff bodily injury, including "personal physical injury as well as great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life." (¶ 77).

ii. Claim 118 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATORS in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault, and severe mental and emotional distress



DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 81).

iii. Claim 127 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 88).

iv. Claim 130 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 88).

v. Claim 171 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and

authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 83) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 65), and that such negligence caused the plaintiff bodily injury, including "suffer the physical injury of childhood sexual assault, severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life." (¶ 88).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 444 and therefore denies same.

445. The remaining Pacific Employers Covered Claims not listed in Paragraph 444 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Pacific Employers Policy defines that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 445 and therefore denies same.

446. Further, Pacific Employers denied coverage under the Pacific Employers Policy on the basis that the underlying insurance has not been exhausted. This reservation of rights as to defense and/ or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 445-446.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 446 and therefore denies same.

447. There is a substantial likelihood that the Pacific Employers Covered Claims will exhaust the primary insurance underlying the Pacific Employers Policy. The underlying Centennial primary policy no. 287-00-46-36 has a limit of $1,000,000 in aggregate (the "12/01/84-12/01/85 Centennial Primary Policy"). The underlying Centennial excess policy no. 287-00-46-36 has a limit of $15,000,000 in aggregate (the "12/01/84-12/01/85 Centennial Excess Policy"). Centennial

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Insurance Company, which issued the 12/01/84-12/01/85 Centennial Primary Policy and the 12/01/84-12/01/85 Centennial Excess Policy, is in liquidation. The underlying Travelers umbrella policy no. 005 FF 1390 BCA has a limit of $10,000,000 in aggregate (the "12/01/84-12/01/85 Travelers Umbrella Policy"). There are at least 18 Pacific Employers Covered Claims that fall within the coverage periods for the 12/01/84-12/01/85 Centennial Primary Policy, the 12/01/84-12/01/85 Centennial Excess Policy, the 12/01/84-12/01/85 Travelers Umbrella Policy, and the Pacific Employers Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 447 and therefore denies same.

448. Data from past clergy sexual abuse cases indicate the Pacific Employers Covered Claims will far exceed the aggregate limits of the 12/01/84-12/01/85 Centennial Primary Policy, the 12/01/84-12/01/85 Centennial Excess Policy, and the 12/01/84-12/01/85 Travelers Umbrella Policy. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million— more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Chubb the UCC Chubb Demand Letter on July 3, 2024, demanding they pay the UCC Chubb Demand Amount, a sum of $219.2 million, which is within the policy limits of the Chubb Policies, including the Pacific Employers Policy, to resolve the Pacific Employers Covered Claims alleged against RCBO. The UCC based the UCC Chubb Demand Amount on its reasonable estimate of the value of the claims covered by the Chubb policies, including the Pacific Employers Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Pacific Employers Covered Claims will exhaust the underlying primary and excess policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 448 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

449. Moreover, Pacific Employers must drop down and provide first-dollar coverage of the Pacific Employers Covered Claims under the Pacific Employers Policy because the underlying primary and excess insurer, Centennial, is insolvent.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 449 and therefore denies same.

450. The asserted reservations of rights set forth in Paragraphs 442 and 443 do not provide Pacific Employers valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Pacific Employers Covered Claims under the Pacific Employers Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Pacific Employers Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the Pacific Employers Policies have either been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with Pacific Employers as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 450 and therefore denies same.

451. RCBO sent Pacific Employers a letter on May 30, 2024, demanding Pacific Employers indemnify RCBO for the Pacific Employers Covered Claims up to the policy limits under the Pacific Employers Policy (the "Pacific Employers Policy Limits Letter").

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 451 and therefore denies same.

452. Pacific Employers failed to respond to the Pacific Employers Policy Limits Letter confirming it will indemnify RCBO, and thereby has failed to provide the benefits of the Pacific Employers Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 452 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

453. On August 6, 2024, Pacific Employers responded to the UCC Chubb Demand letter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Chubb Demand Letter, and thereby has failed to provide the benefits of the Pacific Employers Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 453 and therefore denies same.

454. The Pacific Employers Policy provides coverage for, and does not exclude, the Pacific Employers Covered Claims, and Pacific Employers is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Pacific Employers Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 454 and therefore denies same.

455. The Pacific Employers Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 455 and therefore denies same.

456. An actual controversy of a justiciable nature presently exists between RCBO and Pacific Employers concerning the proper construction of the Pacific Employers Policy, whether Pacific Employers' cited grounds for reservation of rights to deny defense and/or indemnity under the Pacific Employers Policy are valid, whether there is any coverage for the Pacific Employers Covered Claims under the Pacific Employers Policy, whether Pacific Employers is obligated to drop down to provide first-dollar coverage for the Pacific Employers Covered Claims because the underlying primary insurance is exhausted, Pacific Employers' and RCBO's respective rights and obligations under the Pacific Employers Policy with respect to Pacific Employers Covered Claims, and whether Pacific Employers should participate in settlement regarding the Pacific Employers Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Paragraph 456 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 456 and therefore denies same.

457. RCBO is entitled to a declaratory judgment stating Pacific Employers has issued the Pacific Employers Policy to RCBO, the Pacific Employers Policy covers the Pacific Employers Covered Claims, and RCBO is entitled to both full defense and indemnity regarding the Pacific Employers Covered Claims under the Pacific Employers Policy, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Pacific Employers Policy as alleged in Paragraphs 447-448, and the requirement that Pacific Employers drop down to provide defense and indemnity to RCBO regarding the Pacific Employers Covered Claims.

**ANSWER:** Paragraph 457 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 457 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

## TWENTIETH CAUSE OF ACTION

### (Declaratory Relief Against Lloyd's - Umbrella)

458. RCBO realleges and incorporates herein Paragraphs 1 through 457 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 457 above as its response to paragraph 456.

459. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 459 states legal conclusions to which no response is required and Travelers therefore denies same.

460. An actual and justiciable controversy exists between RCBO and Lloyd's Umbrella with respect to whether Lloyd's Umbrella is obligated to provide RCBO with defense and indemnity under the Lloyd's Umbrella Policies regarding the subset of the Suits for which RCBO alleges Lloyd's Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph 30 (the "Lloyd's Umbrella Covered Claims").

**ANSWER:** Paragraph 460 states legal conclusions to which no response is required and Travelers therefore denies same.

461. Pursuant to the terms of the Lloyd's Umbrella Policies, Lloyd's Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Lloyd's Umbrella Covered Claims.

**ANSWER:** Paragraph 461 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 461 and therefore denies same.

462. RCBO has fully satisfied all conditions required under the Lloyd's Umbrella Policies, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 462 and therefore denies same.

463. RCBO's broker and/or RCBO tendered the Lloyd's Umbrella Covered Claims to Lloyd's Umbrella on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 463 and therefore denies same.

464. Lloyd's Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the Lloyd's Umbrella Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 464 and therefore denies same.

465. Lloyd's Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Lloyd's Umbrella Policies that, in turn, will exhaust those policies and trigger Lloyd's Umbrella's obligation to provide the benefits of the Lloyd's Umbrella Policies to RCBO. Rather, Lloyd's Umbrella reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 465 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

466. Lloyd's Umbrella's reservation of rights includes Lloyd's Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Lloyd's is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Lloyd's' coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Lloyd's] Policies."

iv. "To the extent the [Lloyd's] Second Excess Umbrella Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Lloyd's "reserve[s] all rights based upon the number and timing of occurrences. It is [Lloyd's'] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Lloyd's] Policies."

viii. Lloyd's "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 466 and therefore denies same.

467. In addition, Lloyd's Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Lloyd's "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Lloyd's thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Lloyd's] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Lloyd's] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Lloyd's reserves its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Lloyd's reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Lloyd's'] agent for notice of claims provided in the Policy Declarations."

x. Lloyd's reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Lloyd's] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Lloyd's and RCBO "in our around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Lloyd's] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Lloyd's] Policies."

xiv. Lloyd's reserves its rights "pursuant to the [Lloyd's] Policies' Other Insurance Condition."

xv. Lloyd's reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 467 and therefore denies same.

468. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Lloyd's Umbrella has reserved its right to deny its defense and indemnity obligation under the Lloyd's Umbrella Policies on the grounds that the Lloyd's Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Lloyd's Umbrella Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Lloyd's Umbrella Policies define that term, within the Lloyd's Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Lloyd's Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 468 and therefore denies same.

469. The remaining Lloyd's Umbrella Covered Claims not listed in Paragraph 468 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Lloyd's Umbrella Policies define that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 469 and therefore denies same.

470. As a further example, Lloyd's Umbrella reserved its right to deny coverage under the Lloyd's Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 471-472.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 470 and therefore denies same.

471. There is a substantial likelihood that the Lloyd's Umbrella Covered Claims will exhaust the primary insurance underlying the Lloyd's Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are 38 Lloyd's Umbrella Covered Claims that fall within the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, 3/12/62-10/25/66 Lloyd's Excess Policies and the Lloyd's Umbrella Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 471 and therefore denies same.

472. Data from past clergy sexual abuse cases indicate the Lloyd's Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years

RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent Lloyd's Umbrella the UCC Lloyd's Demand Letter on July 3, 2024, demanding Lloyd's Umbrella pay the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the Lloyd's Excess Policies and the Lloyd's Umbrella Policies, to resolve the Lloyd's Umbrella Covered Claims and the claims falling within the Lloyd's Umbrella Policies coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Lloyd's Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Lloyd's Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 472 and therefore denies same.

473. The asserted reservations of rights set forth in Paragraphs 463 and 464 do not provide Lloyd's Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Lloyd's Umbrella Covered Claims under the Lloyd's Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Lloyd's Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the Lloyd's Umbrella Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

to Lloyd's Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Lloyd's Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 473 and therefore denies same.

474. RCBO sent Lloyd's Umbrella a letter on May 30, 2024, demanding Lloyd's Umbrella indemnify RCBO for the Lloyd's Umbrella Covered Claims up to the policy limits under the Lloyd's Umbrella Policies (the "Lloyd's Umbrella Policy Limits Letter").

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 474 and therefore denies same.

475. On July 1, 2024, Lloyd's Umbrella responded to the Lloyd's Umbrella Policy Limits Letter and declined to indemnify RCBO, and thereby has failed to provide the benefits of the Lloyd's Umbrella Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 475 and therefore denies same.

476. On August 6, 2024, Lloyd's Umbrella responded to the UCC Lloyd's Demand letter and denied and/or failed to confirm it will indemnify RCBO in response to the UCC Lloyd's Demand Letter, and thereby has failed to provide the benefits of the Lloyd's Umbrella Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 476 and therefore denies same.

477. The Lloyd's Umbrella Policies provide coverage for, and do not exclude, the Lloyd's Umbrella Covered Claims, and Lloyd's Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Lloyd's Umbrella Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 477 and therefore denies same.

478. The Lloyd's Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 478 and therefore denies same.

479. An actual controversy of a justiciable nature presently exists between RCBO and Lloyd's Umbrella concerning the proper construction of the Lloyd's Umbrella Policies, whether Lloyd's Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the Lloyd's Umbrella Policies are valid, whether there is any coverage for the Lloyd's Umbrella Covered Claims under the Lloyd's Umbrella Policies, whether Lloyd's Umbrella is obligated to drop down to provide first-dollar coverage for the Lloyd's Umbrella Covered Claims because the underlying primary insurance is exhausted, Lloyd's Umbrella's and RCBO's respective rights and obligations under the Lloyd's Umbrella Policies with respect to the Lloyd's Umbrella Covered Claims, and whether Lloyd's Umbrella should participate in settlement regarding the Lloyd's Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 479 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 479 and therefore denies same.

480. RCBO is entitled to a declaratory judgment stating Lloyd's Umbrella has issued the Lloyd's Umbrella Policies to RCBO, the Lloyd's Umbrella Policies cover the Lloyd's Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Lloyd's Umbrella Covered Claims under the Lloyd's Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Lloyd's Umbrella Policies as alleged in Paragraphs 471-472, and the requirement that Lloyd's Umbrella drop down to provide defense and indemnity to RCBO regarding the Lloyd's Umbrella Covered Claims.

**ANSWER:** Paragraph 480 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 480 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**TWENTY-FIRST CAUSE OF ACTION**

**(Declaratory Relief Against Anglo French - Umbrella)**

481. RCBO realleges and incorporates herein Paragraphs 1 through 480 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 480 above as its response to paragraph 481.

482. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 482 states legal conclusions to which no response is required and Travelers therefore denies same.

483. An actual and justiciable controversy exists between RCBO and Anglo French Umbrella with respect to whether Anglo French Umbrella is obligated to provide RCBO with defense and indemnity under the Anglo French Umbrella Policies regarding the subset of the Suits for which RCBO alleges Anglo French Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph 24 (the "Anglo French Umbrella Covered Claims").

**ANSWER:** Paragraph 483 states legal conclusions to which no response is required and Travelers therefore denies same.

484. Pursuant to the terms of the Anglo French Umbrella Policies, Anglo French Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Anglo French Umbrella Covered Claims.

**ANSWER:** Paragraph 484 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 484 and therefore denies same.

485. RCBO has fully satisfied all conditions required under the Anglo French Umbrella Policies, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 485 and therefore denies same.

486. RCBO's broker and/or RCBO tendered the Anglo French Umbrella Covered Claims to Anglo French Umbrella on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 486 and therefore denies same.

487. Anglo French Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the Anglo French Umbrella Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 487 and therefore denies same.

488. Anglo French Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Anglo French Umbrella Policies that, in turn, will exhaust those policies and trigger Anglo French Umbrella's obligation to provide the benefits of the Anglo French Umbrella Policies to RCBO. Rather, Anglo French Umbrella reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 488 and therefore denies same.

489. Anglo French Umbrella's reservation of rights includes Anglo French Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Anglo French is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Anglo French's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Anglo French] Policies."

iv. "To the extent the [Anglo French Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella

Dentons US LLP
1999 Harrison Street, Suite 1300
Oakland, California 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Anglo French "reserve[s] all rights based upon the number and timing of occurrences. It is [Anglo French's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Anglo French] Policies."

viii. Anglo French "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 489 and therefore denies same.

490. In addition, Anglo French Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Anglo French "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Anglo French thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Anglo French] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Anglo French Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Anglo French its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Anglo French reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Anglo French's] agent for notice of claims provided in the Policy Declarations."

x. Anglo French reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

enforcement agencies), payments, settlements, or releases under the [Anglo French] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Anglo French and RCBO "in our around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Anglo French] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Anglo French Umbrella] Policies."

xiv. Anglo French reserves its rights "pursuant to the [Anglo French] Policies' Other Insurance Condition."

xv. Anglo French reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 490 and therefore denies same.

491. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Anglo French Umbrella has reserved its right to deny its defense and indemnity obligation under the Anglo French Umbrella Policies on the grounds that the Anglo French Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Anglo French Umbrella Covered Claims allege RCBO was negligent (i.e. did not expect or

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Anglo French Umbrella Policies define that term, within the Anglo French Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Anglo French Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement

reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 491 and therefore denies same.

492. The remaining Anglo French Umbrella Covered Claims not listed in Paragraph 491 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Anglo French Umbrella Policies define that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 492 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

493. As a further example, Anglo French Umbrella reserved its right to deny coverage under the Anglo French Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 494-495.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 493 and therefore denies same.

494. There is a substantial likelihood that the Anglo French Umbrella Covered Claims will exhaust the primary insurance underlying the Anglo French Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are 38 Anglo French Umbrella Covered Claims that fall within the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the Anglo French Umbrella Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 494 and therefore denies same.

495. Data from past clergy sexual abuse cases indicate the Anglo French Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, Anglo French Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Anglo French Umbrella was at the time

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the of the Lloyd's Excess Policies and the Anglo French Umbrella Policies, to resolve the Anglo French Umbrella Covered Claims and the claims falling within the Anglo French Umbrella coverage period alleged against RCBO. The UCC based this UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Anglo French Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Anglo French Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.,* Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.,* Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 495 and therefore denies same.

496. The asserted reservations of rights set forth in Paragraphs 489 and 490 do not provide Anglo French Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Anglo French Umbrella Covered Claims under the Anglo French Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Anglo French Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the Anglo French Umbrella Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Anglo French Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Anglo French

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 496 and therefore denies same.

497. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Anglo French Umbrella Covered Claims up to the policy limits under the Anglo French Umbrella Policies. Upon information and belief, Anglo French Umbrella received the Lloyds' Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Anglo French Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 497 and therefore denies same.

498. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO, and Anglo French Umbrella thereby has failed to provide the benefits of the Anglo French Umbrella Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 498 and therefore denies same.

499. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand letter and denied and/or failed to confirm it will indemnify RCBO. Anglo French thereby has failed to provide the benefits of the Anglo French Umbrella Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 499 and therefore denies same.

500. The Anglo French Umbrella Policies provide coverage for, and do not exclude, the Anglo French Umbrella Covered Claims, and Anglo French Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Anglo French Umbrella Covered Claims.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 500 and therefore denies same.

501. The Anglo French Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 501 and therefore denies same.

502. An actual controversy of a justiciable nature presently exists between RCBO and Anglo French Umbrella concerning the proper construction of the Anglo French Umbrella Policies, whether Anglo French Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the Anglo French Umbrella Policies are valid, whether there is any coverage for the Anglo French Umbrella Covered Claims under the Anglo French Umbrella Policies, whether Anglo French Umbrella is obligated to drop down to provide first-dollar coverage for the Anglo French Umbrella Covered Claims because the underlying primary insurance is exhausted, Anglo French Umbrella's and RCBO's respective rights and obligations under the Anglo French Umbrella Policies with respect to the Anglo French Umbrella Covered Claims, and whether Anglo French Umbrella should participate in settlement regarding the Anglo French Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 502 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 502 and therefore denies same.

503. RCBO is entitled to a declaratory judgment stating Anglo French Umbrella has issued the Anglo French Umbrella Policies to RCBO, the Anglo French Umbrella Policies cover the Anglo French Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Anglo French Umbrella Covered Claims under the Anglo French Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Anglo French Umbrella Policies as alleged in Paragraphs 494-495, and the requirement that Anglo

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

French Umbrella drop down to provide defense and indemnity to RCBO regarding the Anglo French Umbrella Covered Claims.

**ANSWER:** Paragraph 503 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 503 and therefore denies same.

**TWENTY-SECOND CAUSE OF ACTION**

**(Declaratory Relief Against Excess Insurance Co. - Umbrella)**

504. RCBO realleges and incorporates herein Paragraphs 1 through 503 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 503 above as its response to paragraph 504.

505. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 505 states legal conclusions to which no response is required and Travelers therefore denies same.

506. An actual and justiciable controversy exists between RCBO and Excess Insurance Co. Umbrella with respect to whether Excess Insurance Co. Umbrella is obligated to provide RCBO with defense and indemnity under the Excess Insurance Co. Umbrella Policies regarding the subset of the Suits for which RCBO alleges Excess Insurance Co. Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph 25 (the "Excess Insurance Co. Umbrella Covered Claims").

**ANSWER:** Paragraph 506 states legal conclusions to which no response is required and Travelers therefore denies same.

507. Pursuant to the terms of the Excess Insurance Co. Umbrella Policies, Excess Insurance Co. Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Excess Insurance Co. Umbrella Covered Claims.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Paragraph 507 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 507 and therefore denies same.

508. RCBO has fully satisfied all conditions required under the Excess Insurance Co. Umbrella Policies, or is otherwise excused from doing so..

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 508 and therefore denies same.

509. RCBO's broker and/or RCBO tendered the Excess Insurance Co. Umbrella Covered Claims to Excess Insurance Co. Umbrella on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 509 and therefore denies same.

510. Excess Insurance Co. Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the Excess Insurance Co. Umbrella Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 510 and therefore denies same.

511. Excess Insurance Co. Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Excess Insurance Co. Umbrella Policies that, in turn, will exhaust those policies and trigger Excess Insurance Co. Umbrella's obligation to provide the benefits of the Excess Insurance Co. Umbrella Policies to RCBO. Rather, Excess Insurance Co. Umbrella reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 511 and therefore denies same.

512. Excess Insurance Co. Umbrella's reservation of rights includes Excess Insurance Co. Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

ii. Excess Insurance Co. is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Excess Insurance Co.'s coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Excess Insurance Co.] Policies."

iv. "To the extent the [Excess Insurance Co. Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. Excess Insurance Co. "reserve[s] all rights based upon the number and timing of occurrences. It is [Excess Insurance Co.'s] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Excess Insurance Co.] Policies."

viii. Excess Insurance Co. "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 512 and therefore denies same.

513. In addition, Excess Insurance Co. Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Excess Insurance Co. "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" Excess Insurance Co. thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Excess Insurance Co.] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Excess Insurance Co. Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Excess Insurance Co. its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Excess Insurance Co. reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Excess Insurance Co.'s] agent for notice of claims provided in the Policy Declarations."

x. Excess Insurance Co. reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Excess Insurance Co.] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Excess Insurance Co. and RCBO "in our around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Excess Insurance Co.] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Excess Insurance Co. Umbrella] Policies."

xiv. Excess Insurance Co. reserves its rights "pursuant to the [Excess Insurance Co.] Policies' Other Insurance Condition."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

xv. Excess Insurance Co. reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 513 and therefore denies same.

514. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Excess Insurance Co. Umbrella has reserved its right to deny its defense and indemnity obligation under the Excess Insurance Co. Umbrella Policies on the grounds that the Excess Insurance Co. Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Excess Insurance Co. Umbrella Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Excess Insurance Co. Umbrella Policies define that term, within the Excess Insurance Co. Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Excess Insurance Co. Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 514 and therefore denies same.

515. The remaining Excess Insurance Co. Umbrella Covered Claims not listed in Paragraph 511 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Excess Insurance Co. Umbrella Policies define that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 515 and therefore denies same.

516. As a further example, Excess Insurance Co. Umbrella reserved its right to deny coverage under the Excess Insurance Co. Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 517-518.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 516 and therefore denies same.

517. There is a substantial likelihood that the Excess Insurance Co. Umbrella Covered Claims will exhaust the primary insurance underlying the Excess Insurance Co. Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 Excess Insurance Co. Umbrella Covered Claims that fall within the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the Excess Insurance Co. Umbrella Policies.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 517 and therefore denies same.

518. Data from past clergy sexual abuse cases indicate the Excess Insurance Co. Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, Excess Insurance Co. Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Excess Insurance Co. Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the of the Lloyd's Excess Policies and the Excess Insurance Co. Umbrella Policies, to resolve the Excess Insurance Co. Umbrella Covered Claims and the claims falling within the Excess Insurance Co. Umbrella coverage period alleged against RCBO. The UCC based this UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Excess Insurance Co. Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Excess Insurance Co. Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 518 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

519. The asserted reservations of rights set forth in Paragraphs 512 and 513 do not provide Excess Insurance Co. Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Excess Insurance Co. Umbrella Covered Claims under the Excess Insurance Co. Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Excess Insurance Co. Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the Excess Insurance Co. Umbrella Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Excess Insurance Co. Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Excess Insurance Co. Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 519 and therefore denies same.

520. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants The Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the Excess Insurance Co. Umbrella Covered Claims up to the policy limits under the Excess Insurance Co. Umbrella Policies. Upon information and belief, Excess Insurance Co. Umbrella received the Policy Limits Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Excess Insurance Co. Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 520 and therefore denies same.

521. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO. Excess Insurance Co. Umbrella thereby has failed to provide the benefits of the Excess Insurance Co. Umbrella Policy to RCBO.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 521 and therefore denies same.

522. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand letter and denied and/or failed to confirm it will indemnify RCBO. Excess Insurance Co. thereby has failed to provide the benefits of the Excess Insurance Co. Umbrella Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 522 and therefore denies same.

523. The Excess Insurance Co. Umbrella Policies provide coverage for, and do not exclude, the Excess Insurance Co. Umbrella Covered Claims, and Excess Insurance Co. Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Excess Insurance Co. Umbrella Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 523 and therefore denies same.

524. The Excess Insurance Co. Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 524 and therefore denies same.

525. An actual controversy of a justiciable nature presently exists between RCBO and Excess Insurance Co. Umbrella concerning the proper construction of the Excess Insurance Co. Umbrella Policies, whether Excess Insurance Co. Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the Excess Insurance Co. Umbrella Policies are valid, whether there is any coverage for the Excess Insurance Co. Umbrella Covered Claims under the Excess Insurance Co. Umbrella Policies, whether Excess Insurance Co. Umbrella is obligated to drop down to provide first-dollar coverage for the Excess Insurance Co. Umbrella Covered Claims because the underlying primary insurance is exhausted, Excess Insurance Co. Umbrella's and RCBO's respective rights and obligations under the Excess Insurance Co. Umbrella Policies with respect to the Excess Insurance Co. Umbrella Covered Claims, and whether Excess Insurance Co.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Umbrella should participate in settlement regarding the Excess Insurance Co. Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 525 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 525 and therefore denies same.

526. RCBO is entitled to a declaratory judgment stating Excess Insurance Co. Umbrella has issued the Excess Insurance Co. Umbrella Policies to RCBO, the Excess Insurance Co. Umbrella Policies cover the Excess Insurance Co. Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Excess Insurance Co. Umbrella Covered Claims under the Excess Insurance Co. Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Excess Insurance Co. Umbrella Policies as alleged in Paragraphs 516-517, and the requirement that Excess Insurance Co. Umbrella drop down to provide defense and indemnity to RCBO regarding the Excess Insurance Co. Umbrella Covered Claims.

**ANSWER:** Paragraph 526 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 525 and therefore denies same.

**TWENTY-THIRD CAUSE OF ACTION**

**(Declaratory Relief Against English & American - Umbrella)**

527. RCBO realleges and incorporates herein Paragraphs 1 through 526 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 526 above as its response to paragraph 527.

528. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 528 states legal conclusions to which no response is required and Travelers therefore denies same.

529. An actual and justiciable controversy exists between RCBO and English & American Umbrella with respect to whether English & American Umbrella is obligated to provide RCBO with defense and indemnity under the English & American Umbrella Policies regarding the subset of the Suits for which RCBO alleges English & American Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph 26 (the "English & American Umbrella Covered Claims").

**ANSWER:** Paragraph 529 states legal conclusions to which no response is required and Travelers therefore denies same.

530. Pursuant to the terms of the English & American Umbrella Policies, English & American Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the English & American Umbrella Covered Claims.

**ANSWER:** Paragraph 530 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 530 and therefore denies same.

531. RCBO has fully satisfied all conditions required under the English & American Umbrella Policies, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 531 and therefore denies same.

532. RCBO's broker and/or RCBO tendered the English & American Umbrella Covered Claims to English & American Umbrella on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 532 and therefore denies same.

533. English & American Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the English & American Umbrella Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 533 and therefore denies same.

534. English & American Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

underlying the English & American Umbrella Policies that, in turn, will exhaust those policies and trigger English & American Umbrella's obligation to provide the benefits of the English & American Umbrella Policies to RCBO. Rather, English & American Umbrella reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 534 and therefore denies same.

535. English & American Umbrella's reservation of rights includes English & American Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. English & American is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. English & American's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [English & American] Policies."

iv. "To the extent the [English & American Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. English & American "reserve[s] all rights based upon the number and timing of occurrences. It is [English & American's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [English & American] Policies."

viii. English & American "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 535 and therefore denies same.

536. In addition, English & American Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. English & American "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" English & American thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [English & American] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [English & American Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. English & American its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. English & American reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [English & American's] agent for notice of claims provided in the Policy Declarations."

x. English & American reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [English & American] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by English & American and RCBO "in our around November 2005 pertaining to certain 'Abuse

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [English & American] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [English & American Umbrella] Policies."

xiv. English & American reserves its rights "pursuant to the [English & American] Policies' Other Insurance Condition."

xv. English & American reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 536 and therefore denies same.

537. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, English & American Umbrella has reserved its right to deny its defense and indemnity obligation under the English & American Umbrella Policies on the grounds that the English & American Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the English & American Umbrella Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the English & American Umbrella Policies define that term, within the English & American Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the English & American Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47), and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual

assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 537 and therefore denies same.

538. The remaining English & American Umbrella Covered Claims not listed in Paragraph 537 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the English & American Umbrella Policies define that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 538 and therefore denies same.

539. As a further example, English & American Umbrella reserved its right to deny coverage under the English & American Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 540-541.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 539 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

540. There is a substantial likelihood that the English & American Umbrella Covered Claims will exhaust the primary insurance underlying the English & American Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 English & American Umbrella Covered Claims that fall within the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the English & American Umbrella Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 540 and therefore denies same.

541. Data from past clergy sexual abuse cases indicate the English & American Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO. cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, English & American Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because English & American Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the of the Lloyd's Excess Policies and the English & American Umbrella Policies, to resolve the English & American Umbrella Covered Claims and the claims falling within the English & American Umbrella coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the English & American Umbrella Covered Claims and the claims covered

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

by the Lloyd's Excess Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the English & American Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 541 and therefore denies same.

542. The asserted reservations of rights set forth in Paragraphs 535 and 536 do not provide English & American Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the English & American Umbrella Covered Claims under the English & American Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the English & American Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the English & American Umbrella Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to English & American Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with English & American Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 542 and therefore denies same.

543. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the English & American Umbrella Covered Claims up to the policy limits under the English & American Umbrella Policies.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Upon information and belief, English & American Umbrella received the Policy Limits Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because English & American Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 543 and therefore denies same.

544. On July 1, 2024, Lloyd's responded to the Policy Limits Letter and declined to indemnify RCBO. English & American Umbrella thereby has failed to provide the benefits of the English & American Umbrella Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 544 and therefore denies same.

545. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand letter and denied and/or failed to confirm it will indemnify RCBO. English & American thereby has failed to provide the benefits of the English & American Umbrella Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 545 and therefore denies same.

546. The English & American Umbrella Policies provide coverage for, and do not exclude, the English & American Umbrella Covered Claims, and English & American Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the English & American Umbrella Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 546 and therefore denies same.

547. The English & American Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 547 and therefore denies same.

548. An actual controversy of a justiciable nature presently exists between RCBO and English & American Umbrella concerning the proper construction of the English & American

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Umbrella Policies, whether English & American Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the English & American Umbrella Policies are valid, whether there is any coverage for the English & American Umbrella Covered Claims under the English & American Umbrella Policies, whether English & American Umbrella is obligated to drop down to provide first-dollar coverage for the English & American Umbrella Covered Claims because the underlying primary insurance is exhausted, English & American Umbrella's and RCBO's respective rights and obligations under the English & American Umbrella Policies with respect to the English & American Umbrella Covered Claims, and whether English & American Umbrella should participate in settlement regarding the English & American Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 548 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 548 and therefore denies same.

549. RCBO is entitled to a declaratory judgment stating English & American Umbrella has issued the English & American Umbrella Policies to RCBO, the English & American Umbrella Policies cover the English & American Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the English & American Umbrella Covered Claims under the English & American Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the English & American Umbrella Policies as alleged in Paragraphs 540-541, and the requirement that English & American Umbrella drop down to provide defense and indemnity to RCBO regarding the English & American Umbrella Covered Claims.

**ANSWER:** Paragraph 549 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 549 and therefore denies same.

**<u>TWENTY-FOURTH CAUSE OF ACTION</u>**

**(Declaratory Relief Against Orion - Umbrella)**

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

550. RCBO realleges and incorporates herein Paragraphs 1 through 549 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 549 above as its response to paragraph 550.

551. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 551 states legal conclusions to which no response is required and Travelers therefore denies same.

552. An actual and justiciable controversy exists between RCBO and Orion Umbrella with respect to whether Orion Umbrella is obligated to provide RCBO with defense and indemnity under the Orion Umbrella Policies regarding the subset of the Suits for which RCBO alleges Orion Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph 28 (the "Orion Umbrella Covered Claims").

**ANSWER:** Paragraph 552 states legal conclusions to which no response is required and Travelers therefore denies same.

553. Pursuant to the terms of the Orion Umbrella Policies, Orion Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the Orion Umbrella Covered Claims.

**ANSWER:** Paragraph 553 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 553 and therefore denies same.

554. RCBO has fully satisfied all conditions required under the Orion Umbrella Policies, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 554 and therefore denies same.

555. RCBO's broker and/or RCBO tendered the Orion Umbrella Covered Claims to Orion Umbrella on RCBO's behalf as set forth in Exhibit A.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 555 and therefore denies same.

556. Orion Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the Orion Umbrella Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 556 and therefore denies same.

557. Orion Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the Orion Umbrella Policies that, in turn, will exhaust those policies and trigger Orion Umbrella's obligation to provide the benefits of the Orion Umbrella Policies to RCBO. Rather, Orion Umbrella reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 557 and therefore denies same.

558. Orion Umbrella's reservation of rights includes Orion Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. Orion is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. Orion's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [Orion] Policies."

iv. "To the extent the [Orion Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

v. Orion "reserve[s] all rights based upon the number and timing of occurrences. It is [Orion's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [Orion] Policies."

viii. Orion "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 558 and therefore denies same.

559. In addition, Orion Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. Orion "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

unintended.'" Orion thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [Orion] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [Orion Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. Orion its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. Orion reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [Orion's] agent for notice of claims provided in the Policy Declarations."

x. Orion reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [Orion] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by Orion and RCBO "in our around November 2005 pertaining to certain 'Abuse Claims'" and

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [Orion] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [Orion Umbrella] Policies."

xiv. Orion reserves its rights "pursuant to the [Orion] Policies' Other Insurance Condition."

xv. Orion reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 559 and therefore denies same.

560. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, Orion Umbrella has reserved its right to deny its defense and indemnity obligation under the Orion Umbrella Policies on the grounds that the Orion Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the Orion Umbrella Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the Orion Umbrella Policies define that term, within the Orion Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the Orion Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47),

and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 560 and therefore denies same.

561. The remaining Orion Umbrella Covered Claims not listed in Paragraph 560 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the Orion Umbrella Policies define that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 561 and therefore denies same.

562. As a further example, Orion Umbrella reserved its right to deny coverage under the Orion Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 563-564.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 562 and therefore denies same.

563. There is a substantial likelihood that the Orion Umbrella Covered Claims will exhaust the primary insurance underlying the Orion Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 Orion Umbrella Covered Claims that fall within the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the Orion Umbrella Policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 563 and therefore denies same.

564. Data from past clergy sexual abuse cases indicate the Orion Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, Orion Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Orion Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million which is within the policy limits of the of the Lloyd's Excess Policies and the Orion Umbrella Policies, to resolve the Orion Umbrella Covered Claims and the claims falling within the Orion Umbrella coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the Orion Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Orion Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. *See Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

$35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 564 and therefore denies same.

565. The asserted reservations of rights set forth in Paragraphs 558 and 559 do not provide Orion Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the Orion Umbrella Covered Claims under the Orion Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the Orion Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the Orion Umbrella Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to Orion Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with Orion Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 565 and therefore denies same.

566. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letter on May 30, 2024, demanding indemnification to RCBO for the Orion Umbrella Covered Claims up to the policy limits under the Orion Umbrella Policies. Upon information and belief, Orion Umbrella received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because Orion Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 566 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

567. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO. Orion Umbrella thereby has failed to provide the benefits of the Orion Umbrella Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 567 and therefore denies same.

568. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand Letter and denied and/or failed to confirm it will indemnify RCBO. Orion Umbrella thereby has failed to provide the benefits of the Orion Umbrella Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 568 and therefore denies same.

569. The Orion Umbrella Policies provide coverage for, and do not exclude, the Orion Umbrella Covered Claims, and Orion Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the Orion Umbrella Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 569 and therefore denies same.

570. The Orion Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 570 and therefore denies same.

571. An actual controversy of a justiciable nature presently exists between RCBO and Orion Umbrella concerning the proper construction of the Orion Umbrella Policies, whether Orion Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the Orion Umbrella Policies are valid, whether there is any coverage for the Orion Umbrella Covered Claims under the Orion Umbrella Policies, whether Orion Umbrella is obligated to drop down to provide first-dollar coverage for the Orion Umbrella Covered Claims because the underlying primary insurance is exhausted, Orion Umbrella's and RCBO's respective rights and obligations under the Orion Umbrella Policies with respect to the Orion Umbrella Covered Claims, and whether Orion

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Umbrella should participate in settlement regarding the Orion Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 571 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 571 and therefore denies same.

572. RCBO is entitled to a declaratory judgment stating Orion Umbrella has issued the Orion Umbrella Policies to RCBO, the Orion Umbrella Policies cover the Orion Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the Orion Umbrella Covered Claims under the Orion Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the Orion Umbrella Policies as alleged in Paragraphs 557-558, and the requirement that Orion Umbrella drop down to provide defense and indemnity to RCBO regarding the Orion Umbrella Covered Claims.

**ANSWER:** Paragraph 572 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 572 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

## TWENTY-FIFTH CAUSE OF ACTION

### (Declaratory Relief Against London & Overseas - Umbrella)

573. RCBO realleges and incorporates herein Paragraphs 1 through 572 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 572 above as its response to paragraph 573.

574. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

**ANSWER:** Paragraph 574 states legal conclusions to which no response is required and Travelers therefore denies same.

575. An actual and justiciable controversy exists between RCBO and London & Overseas Umbrella with respect to whether London & Overseas Umbrella is obligated to provide RCBO with

defense and indemnity under the London & Overseas Umbrella Policies regarding the subset of the Suits for which RCBO alleges London & Overseas Umbrella is obligated to provide RCBO with indemnity, as set forth in Paragraph 28 (the "London & Overseas Umbrella Covered Claims").

**ANSWER:** Paragraph 575 states legal conclusions to which no response is required and Travelers therefore denies same.

576. Pursuant to the terms of the London & Overseas Umbrella Policies, London & Overseas Umbrella is obligated to, among other things, defend and indemnify RCBO for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the London & Overseas Umbrella Covered Claims.

**ANSWER:** Paragraph 576 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 576 and therefore denies same.

577. RCBO has fully satisfied all conditions required under the London & Overseas Umbrella Policies, or is otherwise excused from doing so.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 577 and therefore denies same.

578. RCBO's broker and/or RCBO tendered the London & Overseas Umbrella Covered Claims to London & Overseas Umbrella on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 578 and therefore denies same.

579. London & Overseas Umbrella denied and/or failed to confirm it will defend and indemnify RCBO for the London & Overseas Umbrella Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 579 and therefore denies same.

580. London & Overseas Umbrella has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary and excess policies underlying the London & Overseas Umbrella Policies that, in turn, will exhaust those policies and trigger London & Overseas Umbrella's obligation to provide the benefits of the London & Overseas

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Umbrella Policies to RCBO. Rather, London & Overseas Umbrella reserved its right to deny coverage on a number of bases.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 580 and therefore denies same.

581. London & Overseas Umbrella's reservation of rights includes London & Overseas Umbrella's position that it may deny coverage on the following bases:

i. "[T]he [Proofs of Claim] allege abuse incidents that occurred prior to March 12, 1962 and/or after October 25, 1966, which pre- or post-date the period of coverage of the Excess Umbrella Policies."

ii. London & Overseas is "obligated to indemnify only for covered loss and expense in excess of the limits of the underlying insurance(s) in respect of each occurrence covered by said underlying insurance."

iii. London & Overseas's coverage obligations "are several only (not joint) up to the specific subscribed percentage of risk specified in the [London & Overseas] Policies."

iv. "To the extent the [London & Overseas Umbrella] Policies are potentially implicated, they provide indemnity only after the Underlying Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability."

v. London & Overseas "reserve[s] all rights based upon the number and timing of occurrences. It is [London & Overseas's] position that any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place."

vi. "[A]ny per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place."

vii. "[T]he underlying insurance limits must first be exhausted before potentially implicating the [London & Overseas] Policies."

viii. London & Overseas "declines coverage to any alleged perpetrator of sexual assault, or any individual seeking coverage on behalf of an alleged perpetrator."

ix. That conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 581 and therefore denies same.

582. In addition, London & Overseas Umbrella reserved further rights to deny coverage as follows:

i. "The right to allocate any covered loss and expense against all implicated periods, including periods that pre-date or post-date their periods of coverage, and also including periods where there is no coverage or coverage is excluded (e.g. a sexual misconduct exclusion)."

ii. "The right to modify [its] position concerning which Policies are potentially implicated if and when Claimant provides more specifics regarding the dates of the alleged sexual abuse."

iii. London & Overseas "reserve[s its] rights in the event [RCBO] was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of Claimant since such misconduct would not be 'unexpected or unintended.'" London & Overseas thus reserves the right to decline coverage for any [Ultimate Net Loss] based upon the definition of an 'occurrence,' which requires unexpected and unintended injury."

iv. "The right to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

v. "If Claimant is asserting a claim against another entity besides [RCBO], then [London & Overseas] reserve[s] the right to decline coverage if that entity is not one of the parishes, schools, or other entities and agencies that qualify as an 'Assured' under the [London & Overseas Umbrella] Policies."

vi. "All rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured."

vii. The right "to decline indemnity for any payments made by [RCBO] for pastoral or counseling services."

viii. London & Overseas its rights "if [RCBO] should settle [a] claim without due consideration for the merits of all available liability defenses."

ix. London & Overseas reserves its rights "with respect to the Conditions pertaining to Notice" requiring "that [RCBO] provide notice of an occurrence that may implicate the respective policy 'as soon as practicable' to [London & Overseas's] agent for notice of claims provided in the Policy Declarations."

x. London & Overseas reserves its rights "to the extent [a] claim was previously tendered, was subject to prior investigations (including by any law enforcement agencies), payments, settlements, or releases under the [London & Overseas] Policies, or for which [RCBO] abandoned its claim for coverage (including reimbursement of defense expenses or indemnity payments)."

xi. All rights with respect to "an Amended Confidential Settlement Agreement and Mutual Release" executed by London & Overseas and RCBO "in our around November 2005 pertaining to certain 'Abuse Claims'" and whether certain underlying claims in this lawsuit "constitute[] an Abuse Claim for the purposes of the Release."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

xii. "All rights with respect to the Conditions pertaining to Assistance and Cooperation" and states that "[a] failure by [RCBO] to cooperate with [London & Overseas] may preclude coverage."

xiii. "All rights pursuant to the Loss Payable and Maintenance of Underlying Insurance Conditions in the [London & Overseas Umbrella] Policies."

xiv. London & Overseas reserves its rights "pursuant to the [London & Overseas] Policies' Other Insurance Condition."

xv. London & Overseas reserves its rights "with respect to any award of damages, punitive or treble, against the Diocese which is based on intentional conduct."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 582 and therefore denies same.

583. It is RCBO's position that the above reservations of rights are without both factual and legal merit. For example, London & Overseas Umbrella has reserved its right to deny its defense and indemnity obligation under the London & Overseas Umbrella Policies on the grounds that the London & Overseas Umbrella Covered Claims allege injuries that were not "unexpected or unintended" from the standpoint of RCBO or that conduct alleged against RCBO "may not constitute Bodily Injuries or Personal Injuries." Such reservations of rights as to defense and/or indemnity do not apply because the London & Overseas Umbrella Covered Claims allege RCBO was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the London & Overseas Umbrella Policies define that term, within the London & Overseas Umbrella Policies' coverage period (*see* Exhibit A). RCBO sets forth below examples of negligence and bodily injury allegations from the London & Overseas Umbrella Covered Claims.

i. Claim 114 includes negligence allegations that RCBO "negligently failed to supervise the DOE PERPETRATOR in his positions of trust and authority as an employee, agent, counselor and mentor, and/or other authority figure" (¶ 65) and "failed to take any reasonable steps or implement any reasonable safeguards for Plaintiff's protection" (¶ 47),

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

and that such negligence caused the plaintiff bodily injury, including "the physical injury of sexual assault and has suffered and will continue to suffer severe mental and emotional distress including, but not limited to, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" (¶ 57).

ii. Claim 137 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

iii. Claim 147 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 49).

iv. Claim 155 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 61) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 44), and that such

negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 45).

v. Claim 187 includes negligence allegations that RCBO "negligently failed to properly and/or adequately supervise Plaintiff, a minor, and failed to use reasonable care in protecting Plaintiff, a minor, from PERPETRATOR's misconduct that created a risk of childhood sexual assault" (¶ 65) and "failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection" (¶ 48), and that such negligence caused the plaintiff bodily injury, including "physical, psychological, emotional and economic harm" (¶ 68).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 583 and therefore denies same.

584. The remaining London & Overseas Umbrella Covered Claims not listed in Paragraph 580 likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the London & Overseas Umbrella Policies define that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 584 and therefore denies same.

585. As a further example, London & Overseas Umbrella reserved its right to deny coverage under the London & Overseas Umbrella Policies on the ground that "underlying insurance limits must first be exhausted." This reservation of rights as to defense and/or indemnity does not apply because the underlying primary and excess insurance policies are or will be exhausted as alleged in Paragraphs 586-587.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 585 and therefore denies same.

586. There is a substantial likelihood that the London & Overseas Umbrella Covered Claims will exhaust the primary insurance underlying the London & Overseas Umbrella Policies. The underlying Pacific Indemnity primary policies nos. LAC 127792 and LAC 155598 have limits

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

of $500,000 per occurrence and $500,000 in aggregate (the "3/12/62-10/25/66 Pacific Indemnity Policies"). The Lloyd's Excess policy no. CU 1001 has a limit of $997,000 in aggregate and the Lloyd's Excess policy no. K 78138 has a limit of $1,000,000 in aggregate (the "3/12/62-10/25/66 Lloyd's Excess Policies"). There are at least 38 London & Overseas Umbrella Covered Claims that fall within the coverage periods for the 3/12/62-10/25/66 Pacific Indemnity Policies, the 3/12/62-10/25/66 Lloyd's Excess Policies and the London & Overseas Umbrella Policies.

**ANSWER*:*** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 586 and therefore denies same.

587. Data from past clergy sexual abuse cases indicate the London & Overseas Umbrella Covered Claims will far exceed the per occurrence and aggregate limits of the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. On July 3, 2024, The UCC sent a letter to counsel for the Lloyd's Excess and Lloyd's Umbrella Defendants. Upon information and belief, London & Overseas Umbrella received the UCC Lloyd's Demand Letter as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants, and/or because London & Overseas Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants. The UCC Lloyd's Demand Letter demanded the UCC Lloyd's Demand Amount, a sum of $42.8 million, which is within the policy limits of the of the Lloyd's Excess Policies and the London & Overseas Umbrella Policies, to resolve the London & Overseas Umbrella Covered Claims and the claims falling within the London & Overseas Umbrella coverage period alleged against RCBO. The UCC based the UCC Lloyd's Demand Amount on a reasonable estimate of the value of the London & Overseas Umbrella Covered Claims and the claims covered by the Lloyd's Excess Policies. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the London & Overseas Umbrella Covered Claims will exhaust the 3/12/62-10/25/66 Pacific Indemnity Policies and the 3/12/62-10/25/66 Lloyd's Excess

Policies. See *Jane Doe 3, et al. v. Roe #1, et al.*, Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.*, Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 587 and therefore denies same.

588. The asserted reservations of rights set forth in Paragraphs 581 and 582 do not provide London & Overseas Umbrella valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the London & Overseas Umbrella Covered Claims under the London & Overseas Umbrella Policies as the claims have been tendered (and notice provided) and concern allegations of negligence (not willful misconduct) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the London & Overseas Umbrella Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the London & Overseas Umbrella Policies have either been exhausted or that limits have been reduced. In addition, RCBO contends that prior settlements regarding abuse cases (including those in "Clergy III") concerned only those claims identified in that matter not the claims in this matter. Further, RCBO contends that there is no fraud nor misrepresentation made by RCBO to London & Overseas Umbrella either in the placing of the insurance or submission of the claims. Finally, RCBO has fully cooperated with London & Overseas Umbrella as required under the insurance including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 588 and therefore denies same.

589. RCBO sent the Lloyd's Excess and Lloyd's Umbrella Defendants the Lloyd's Policy Limits Letters on May 30, 2024, demanding indemnification to RCBO for the London & Overseas Umbrella Covered Claims up to the policy limits under the London & Overseas Umbrella Policies. Upon information and belief, London & Overseas Umbrella received the Lloyd's Policy Limits Letters as a subscriber to the same slips as the Lloyd's Excess and/or Lloyd's Umbrella Defendants,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

and/or because London & Overseas Umbrella was at the time represented by the same counsel as the Lloyd's Excess and Lloyd's Umbrella Defendants.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 589 and therefore denies same.

590. On July 1, 2024, Lloyd's responded to the Lloyd's Policy Limits Letters and declined to indemnify RCBO. London & Overseas Umbrella thereby has failed to provide the benefits of the London & Overseas Umbrella Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 590 and therefore denies same.

591. On August 6, 2024, Lloyd's responded to the UCC Lloyd's Demand letter and denied and/or failed to confirm it will indemnify RCBO. London & Overseas thereby has failed to provide the benefits of the London & Overseas Umbrella Policies to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 591 and therefore denies same.

592. The London & Overseas Umbrella Policies provide coverage for, and do not exclude, the London & Overseas Umbrella Covered Claims, and London & Overseas Umbrella is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving, the London & Overseas Umbrella Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 592 and therefore denies same.

593. The London & Overseas Umbrella Policies constitute a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 593 and therefore denies same.

594. An actual controversy of a justiciable nature presently exists between RCBO and London & Overseas Umbrella concerning the proper construction of the London & Overseas Umbrella Policies, whether London & Overseas Umbrella cited grounds for reservation of rights to deny defense and/or indemnity under the London & Overseas Umbrella Policies are valid, whether

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

there is any coverage for the London & Overseas Umbrella Covered Claims under the London & Overseas Umbrella Policies, whether London & Overseas Umbrella is obligated to drop down to provide first-dollar coverage for the London & Overseas Umbrella Covered Claims because the underlying primary insurance is exhausted, London & Overseas Umbrella's and RCBO's respective rights and obligations under the London & Overseas Umbrella Policies with respect to the London & Overseas Umbrella Covered Claims, and whether London & Overseas Umbrella should participate in settlement regarding the London & Overseas Umbrella Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 594 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 594 and therefore denies same.

595. RCBO is entitled to a declaratory judgment stating London & Overseas Umbrella has issued the London & Overseas Umbrella Policies to RCBO, the London & Overseas Umbrella Policies cover the London & Overseas Umbrella Covered Claims, and RCBO is entitled to both defense and indemnity regarding the London & Overseas Umbrella Covered Claims under the London & Overseas Umbrella Policies, including, without limitation, a declaration of exhaustion as to the primary and excess policies underlying the London & Overseas Umbrella Policies as alleged in Paragraphs 583-584, and the requirement that London & Overseas Umbrella drop down to provide defense and indemnity to RCBO regarding the London & Overseas Umbrella Covered Claims.

**ANSWER:** Paragraph 595 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 595 and therefore denies same.

**TWENTY-SIXTH CAUSE OF ACTION**

**(Breach of Statutory Duty Against CIGA)**

596. RCBO realleges and incorporates herein paragraphs 1 through 595 of this complaint as if said paragraphs were set forth in full.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 595 above as its response to paragraph 596.

597. CIGA's authority and liability are limited to paying 'covered claims.'" *Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.,* 128 Cal. App. 4th 307, 313, 26 Cal. Rptr. 3d 845, 848 (2005).

**ANSWER:** Paragraph 597 states legal conclusions to which no response is required and Travelers therefore denies same.

598. A covered claims means "(1) … the obligations of an insolvent insurer, including the obligation … (i) imposed by law and within the coverage of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; … (iv) which were incurred prior to the date coverage under the policy terminated …" *Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.,* 153 Cal. App. 4th 524, 532-33, (2007) (citing Ins. Code, § 1063.1, subd. (c)(1)).

**ANSWER:** Paragraph 598 states legal conclusions to which no response is required and Travelers therefore denies same.

599. Commercial Union/Armour Insurance Company has become insolvent but had acknowledged potential coverage for the Suits tendered to it by RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 599 and therefore denies same.

600. RCBO timely presented the claims to the liquidator prior to the date coverage under the policy terminated. Therefore, the claims qualify as covered claim under the statute.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 600 and therefore denies same.

601. There is no, or there is a substantial likelihood that there will not be any, other insurance available for the Commercial Union Covered Claims because Commercial Union is insolvent, and the Commercial Union Covered Claims are likely to exhaust other applicable insurance policies.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 601 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

602. Specifically, there is a substantial likelihood the Commercial Union Covered Claims will exhaust the following insurance policies: United States Fire Insurance policy no. DCL 53 98 20, for the policy period of October 25, 1970 — October 26, 1971 ($5,000,000 limit); Westport policy no. U10255, for the policy period of November 16, 1971 — October 26, 1974 ($5,000,000 limit); American Home policy no. CE-60-94, for the policy period of November 16, 1971 — October 26, 1974 ($2,000,000 limit); CNA policy no. RDU 146 74 50, for the policy period of October 26, 1974 — December 1, 1975 ($1,000,000 limit); and Westport policy no. PLE 20430, for the policy period of October 26, 1974 — December 1, 1975 ($5,000,000 limit) (together, the "Other Insurers" and the "Other Insurance Policies"). There are at least 22 Commercial Union Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 602 and therefore denies same.

603. Data from past clergy sexual abuse cases indicate the Commercial Union Covered Claims will far exceed the limits of the Other Insurance Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The UCC sent each of the Other Insurers a demand letter on July 3, 2024, demanding they pay $56.7 million (United States Fire), $308.9 million (Westport), $11.9 million (American Home), and $162.6 million (CNA), respectively—all amounts within limits of each of the Other Insurance Policies—to resolve the Commercial Union Covered Claims alleged against RCBO. The UCC based the amounts demanded on its reasonable estimate of the value of the claims covered by the Other Insurance Policies, including the Commercial Union Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the Commercial Union Covered Claims will exhaust the Other Insurance Policies. See Jane Doe 3, et al. v. Roe #1, et al., Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); *Janet Roe v. David Park, et al.,* Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 603 and therefore denies same.

604. CIGA assigned an adjuster to review the claims. CIGA confirmed that RCBO appropriately filed the claims, and CIGA understood that the claims were abuse-related claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 603 and therefore denies same.

605. CIGA has refused to confirm coverage for the Commercial Union Covered Claims in breach of its statutory duties under Article 14.2 of the California Insurance Code.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 605 and therefore denies same.

606. As a result of CIGA's breaches, RCBO has been damaged according to proof at trial.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 606 and therefore denies same.

## TWENTY-SEVENTH CAUSE OF ACTION

### (Declaratory Relief Against American Home Assurance Co.)

607. RCBO realleges and incorporates herein Paragraphs 1 through 606 of this Complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 606 above as its response to paragraph 607.

608. To state a claim for a declaratory judgment, a party needs to plead an actual controversy. 28 U.S.C. § 2201; Cal. Code. Civ. Proc. § 1060.

**ANSWER:** Paragraph 608 states legal conclusions to which no response is required and Travelers therefore denies same.

609. An actual and justiciable controversy exists between RCBO and AHAC with respect to whether AHAC is obligated to provide RCBO indemnity under the AHAC Policy regarding the subset of the Suits for which RCBO alleges AHAC is obligated to provide RCBO with indemnity, as set forth in Paragraph 30 (the "AHAC Covered Claims").

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Paragraph 609 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 609 and therefore denies same.

610. Pursuant to the terms of the AHAC Policy, AHAC is obligated to, among other things, defend and indemnify Plaintiff for, or pay on its behalf, all sums that RCBO becomes obligated to pay, through judgment, settlement, or otherwise, arising out of the AHAC Covered Claims.

**ANSWER:** Paragraph 610 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 610 and therefore denies same.

611. Plaintiff RCBO has fully performed under the AHAC Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 611 and therefore denies same.

612. RCBO's broker and/or RCBO tendered the AHAC Covered Claims to AHAC on RCBO's behalf as set forth in Exhibit A.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 612 and therefore denies same.

613. AHAC by way of its policy agreed to provide a defense to Plaintiff RCBO for those AHAC Covered Claims "where the applicable underlying primary coverage is either insolvent or fully and properly exhausted through payment of judgments or settlements." However, AHAC denied and/or failed to confirm it will indemnify RCBO for the AHAC Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 613 and therefore denies same.

614. AHAC has not acknowledged that its insured, RCBO, faces covered claims in excess of the limits of insurance available from the primary policies underlying the AHAC Policy that, in turn, will exhaust those policies and trigger AHAC's obligation to provide the benefits of the AHAC Policy to RCBO. Rather, AHAC reserved its right to deny coverage on a number of bases.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 614 and therefore denies same.

615. AHAC's reservation of rights includes its position that it may deny coverage on the following bases:

i. The American Home Policy is an excess umbrella liability policy which potentially applies only upon exhaustion of underlying insurance. We have not received any information indicating that the underlying insurance has been exhausted. The American Home Policy is not, therefore, currently impacted by the Claim. American Home reserves all rights with respect to the proper exhaustion of the underlying insurance.

ii. To the extent the Claim does not involve liability for personal injury, coverage under the American Home Policy will not apply. American Home disclaims coverage herein on this basis.

iii. To the extent Claimant seeks to impose liability for damage that occurred outside of the effective dates of the American Home Policy, the American Home Policy does not apply. American Home disclaims coverage on this basis.

iv. To the extent Claimant alleges, or is able to prove, that the defendants knew, had reason to know, or were otherwise on notice of the conduct alleged and failed to take reasonable steps or implement reasonable safeguards. American Home reserves its right to disclaim coverage for the Claim, in whole or in part, on this additional basis. American Home also reserves all rights with respect to the number of occurrences.

v. If, prior to the issuance of the American Home Policy, RCBO knew, or had reason to know, that there was a probability it would suffer or had already suffered a loss, the known loss, loss-in-progress and/or fortuity doctrines may preclude coverage.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

vi. Under California Insurance Code §533 an insurer "is not liable for loss caused by the willful act of the insured..." American Home reserves the right to deny coverage, in whole or in part, on this additional basis.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 615 and therefore denies same.

616. In addition, AHAC reserved further rights to deny coverage as follows:

i. American Home expressly reserves all of its rights under the American Home Policy, including the right to assert additional defenses to any claims for coverage. This includes the right to amend and/or supplement their coverage positions in the future as may be appropriate.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 616 and therefore denies same.

617. It is Plaintiff's position that the above reservations of rights are without both factual and legal merit. For example, AHAC has reserved its right to deny its defense and indemnity obligation under the AHAC Policy on the grounds that the AHAC Covered Claims allege injuries that were "expected or intended from the standpoint of RCBO" or that "do[] not allege 'bodily injury' or 'personal injury' within the meaning of the AHAC Policy." Such reservations of rights as to defense and/or indemnity do not apply because the AHAC Covered Claims allege Plaintiff was negligent (i.e. did not expect or intend the alleged injuries), and that RCBO's alleged negligence caused "bodily injury" as the AHAC Policy defines that term, within the AHAC Policy's coverage period (see Exhibit A). Plaintiff sets forth below examples of negligence and bodily injury allegations from the AHAC Covered Claims in paragraph 618 and 619.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 617 and therefore denies same.

618. For example, AHAC acknowledges that for Proof of Claim 107, "The Complaint alleges causes of action sounding in: (1) Negligent Supervision and/or Retention of an Employee; and (2) Negligent Supervision of Plaintiff, a minor" and that "Plaintiff claims that he has suffered and will continue to suffer physical, psychological and emotional injuries, as well as economic loss."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 618 and therefore denies same.

619. Similarly, AHAC acknowledges in receipt of Proof of Claim 99 that "The Complaint alleges causes of action sounding in: (1) Negligent Supervision and/or Retention of an Employee; and (2) Negligent Supervision of Plaintiff, a minor" and that "Plaintiff claims that he has suffered and will continue to suffer physical, psychological and emotional injuries, as well as economic loss."

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 619 and therefore denies same.

620. Virtually all of the AHAC Covered Claims likewise include similar or near-identical allegations that RCBO was negligent and, as a result of RCBO's negligence, the plaintiff in question allegedly suffered physical harm and bodily injury as the AHAC Policy defines that term.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 620 and therefore denies same.

621. As a further example, AHAC reserved its right to deny coverage under the AHAC Policy on the ground that "[a]s a threshold matter, the American Home Policy is an excess umbrella liability policy which potentially applies only upon exhaustion of underlying insurance. We have not received any information indicating that the underlying insurance has been exhausted. The American Home Policy is not, therefore, currently impacted by the Lawsuit. American Home reserves all rights with respect to the proper exhaustion of the underlying insurance." This reservation of rights as to defense and/or indemnity will not apply because the underlying primary insurance policies are or will be exhausted as alleged in Paragraphs 622 and 623.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 621 and therefore denies same.

622. There is a substantial likelihood that the AHAC Covered Claims will exhaust the primary insurance underlying the AHAC Policy. The underlying Commercial Union primary policies nos. EF 9334-001, EF 9334-003, and EF 9334-008 have limits of $100,000 per occurrence and $300,000 in aggregate (the "10/26/71-10/26/74 Commercial Union Policies"). The AHAC

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Covered Claims fall within the coverage periods for the 10/26/71-10/26/74 Commercial Union Policies and the AHAC Policy.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 622 and therefore denies same.

623. Data from past clergy sexual abuse cases indicate the AHAC Covered Claims will far exceed the per occurrence and aggregate limits of the 10/26/71-10/26/74 Commercial Union Policies. Within the last twenty years RCBO settled 52 clergy sexual abuse claims against it for approximately $56 million—more than $1 million average settlement per claim. On April 22, 2026, the jury in only one of the underlying RCBO cases returned a verdict in favor of the plaintiff in that case of $16 million, on the sole cause of action for negligent supervision. The Official Committee of Unsecured Creditors ("UCC") sent AHAC a letter on July 3, 2024, demanding AHAC pay a sum of $11.9 million (the "UCC AHAC Demand Amount"), which is within the policy limits of the AHAC Policy, to resolve the AHAC Covered Claims (the "UCC Demand Letter"). The UCC based the AHAC Demand Amount on its reasonable estimate of the value of the AHAC Covered Claims. The $16 million jury verdict in one underlying RCBO case, and jury verdicts in related cases further confirm the AHAC Covered Claims will exhaust the 10/26/71-10/26/74 Commercial Union Policies. *See Jane Doe 3, et al. v. Roe #1, et al., Superior Court of Los Angeles County, California, Case No. 22PSCV00686 (jury awarded $35 million to survivor); Janet Roe v. David Park, et al., Superior Court of Los Angeles County, California, Case No. BC615789 (jury awarded $8 million to survivor).*

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 623 and therefore denies same.

624. The asserted reservations of rights set forth in Paragraphs 615 and 616 do not provide AHAC valid or meritorious bases on which to deny and/or refuse to confirm indemnity for the AHAC Covered Claims under the AHAC Policy as the claims have been tendered (and notice provided) and concern allegations of negligence (not intentional torts) by RCBO resulting in claimed "bodily injury" as defined in the insurance and thus the AHAC Covered Claims present covered claims which are legally insurable. Further, RCBO has not received any notice that the AHAC Policy has either been exhausted or that limits have been reduced. Finally, RCBO has fully cooperated with

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

AHAC as required under the policy, including providing notice of the claims, providing the status of the matters and providing requested materials.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 624 and therefore denies same.

625. Plaintiff sent AHAC a letter on June 4, 2024, demanding AHAC indemnify RCBO for the AHAC Covered Claims up to the policy limits under the AHAC Policy (the "Policy Limits Letter"). AHAC denied and/or failed to confirm it will indemnify RCBO in response to the Policy Limits Letter, and thereby has failed to provide the benefits of the AHAC Policy to Plaintiff.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 625 and therefore denies same.

626. AHAC has likewise denied and/or failed to confirm it will indemnify RCBO in response to the UCC Demand Letter, and thereby has failed to provide the benefits of the AHAC Excess Policy to RCBO.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 626 and therefore denies same.

627. The AHAC Policy provides coverage for, and does not exclude, the AHAC Covered Claims, and AHAC is obligated to pay in full the expenditures RCBO made to defend itself against, and to indemnify RCBO for any settlement or judgment resolving the AHAC Covered Claims.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 627 and therefore denies same.

628. The AHAC Policy constitutes a significant asset of RCBO as well as a recovery source for the alleged abuse survivors in the Bankruptcy Case.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 628 and therefore denies same.

629. An actual controversy of a justiciable nature presently exists between RCBO and AHAC concerning the proper construction of the AHAC Policy, whether AHAC's cited grounds for reservation of rights to deny defense and/or indemnity under the AHAC Policy are valid, whether there is any coverage for the AHAC Covered Claims under the AHAC Policy, AHAC's and RCBO's

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

respective rights and obligations under the AHAC Policy with respect to the AHAC Covered Claims, and whether AHAC should participate in settlement regarding the AHAC Covered Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

**ANSWER:** Paragraph 629 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 629 and therefore denies same.

630. RCBO is entitled to a declaratory judgment stating AHAC has issued the AHAC Policies to RCBO, the AHAC Policy covers the AHAC Covered Claims, and RCBO is entitled to both defense and indemnity regarding the AHAC Covered Claims under the AHAC Policy, including, without limitation, a declaration of exhaustion as to the primary policies underlying the AHAC Policy as alleged in Paragraphs 622 and 623.

**ANSWER:** Paragraph 630 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 630 and therefore denies same.

**TWENTY-EIGHTH CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Insurer Defendants)**

631. RCBO realleges and incorporates herein Paragraphs 1 through 630 of this complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 630 above as its response to paragraph 631.

632. Implied in every insurance policy identified in this Sixth Amended Complaint is a covenant that requires the insurer to act in good faith and deal fairly with RCBO; not to withhold benefits due under its policy or policies of insurance unreasonably or without proper cause; to do nothing to interfere with RCBO's right to receive the benefits of the Policy; to place RCBO's interests before its own interests; to exercise diligence, good faith and fidelity in safeguarding RCBO's interests; and to deal ethically with RCBO and fairly and adequately inform RCBO with

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

respect to the nature and scope of its insurance coverage (hereinafter referred to as "the covenant of good faith and fair dealing").

**ANSWER*:*** Paragraph 632 states legal conclusions to which no response is required. To the extent a response is required, Travelers denies that it breached any insurance policy or acted unreasonably in any way with regard to any insurance policy.

633. As alleged herein, RCBO sent each Insurer Defendant a letter demanding they pay the policy limits of their respective policies to indemnify RCBO for the claims covered under their policies. Insurer Defendants failed to respond to these letters confirming that they would indemnify RCBO, thereby failing to provide RCBO the benefits of their policies.

**ANSWER*:*** Travelers admits that it received certain letters demanding it pay the policy limits of certain insurance policies. Travelers' responses to said letters are the best evidence of their content and to the extent any allegations are inconsistent with them, Travelers specifically denies them. Travelers further denies that it breached any insurance policy or acted unreasonably in any way with regard to any insurance policy.

634. Also included in insurers' obligation to act fairly and in good faith towards RCBO is a duty to accept reasonable settlement offers within each insurers' policy limits. As alleged herein, the UCC sent each Insurer Defendant a letter demanding they pay a specified amount which was within the limits of their policies. The demand for each insurer was based on the UCC's reasonable estimate of the values of the claims covered by each insurer's policies, as well as data from past clergy sexual abuse cases.

**ANSWER*:*** Paragraph 634 states legal conclusions to which no response is required. To the extent a response is required, Travelers admits that it received certain letters demanding it pay the policy limits of certain insurance policies. Travelers' responses to said letters are the best evidence of their content and to the extent any allegations are inconsistent with them, Travelers specifically denies them. Travelers further denies that it breached any insurance policy or acted unreasonably in any way with regard to any insurance policy.

635. Despite receiving notice of these demands which were reasonable and within policy limits, Insurer Defendants failed to respond to the UCC demands, failed to participate fully and

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

meaningfully in the resolution process, and refused to contribute toward a settlement that would successfully result in a resolution of the claims against their insured.

**ANSWER*:*** Paragraph 635 states legal conclusions to which no response is required. To the extent a response is required, Travelers admits that it received certain letters demanding it pay the policy limits of certain insurance policies. Travelers' responses to said letters are the best evidence of their content and to the extent any allegations are inconsistent with them, Travelers specifically denies them. Travelers further denies that it breached any insurance policy or acted unreasonably in any way with regard to any insurance policy.

636. On April 10, 2026, RCBO and Defendants attended a mandatory settlement conference in connection with the underlying cases. Despite the fact that the Superior Court had ordered Defendants to participate in the settlement conference and "negotiate in good faith," and despite having more than sufficient policy limits available to settle the claims at issue, Insurer Defendants refused to make any settlement offer in response to a demand of $100 million made by 61 of the underlying plaintiffs to resolve all of their claims against RCBO. The same day, the Superior Court issued an Order to Show Cause – Why the Court Should Not Find Bad Faith Conduct Due to a Failure to Negotiate in Good Faith at a Mandatory Settlement Conference. The Superior Court subsequently continued the Order to Show Cause to May 27, 2026. At a further mandatory settlement conference held on April 21, 2026, Westport, CNA, and Travelers offered $10.3 million to settle the 61 claims, which was not enough to reach a resolution, and well below the available policy limits. The next day, on April 22, 2026, the jury in one of the 61 cases returned a verdict in favor of the plaintiff in that case in the amount of $16 million. As a direct result of Insurer Defendants' conduct, RCBO is faced with this verdict, plus the other 60 claims (and hundreds more) still unresolved.

**ANSWER*:*** Paragraph 636 states legal conclusions to which no response is required. To the extent a response is required, Travelers denies acting in bad faith in any regard. Travelers further denies that it breached any insurance policy or acted unreasonably in any way with regard to any insurance policy. Travelers further denies the allegations in paragraph 636.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

637. Insurer Defendants' actions are without any reasonable justification, are inconsistent with RCBO's reasonable expectations, are contrary to industry custom and practice and legal requirements, and withheld benefits owing under their policies of insurance unreasonably or without proper cause, thereby constituting a breach of the implied covenant of good faith and fair dealing.

**ANSWER*:*** Paragraph 637 states legal conclusions to which no response is required. To the extent a response is required, Travelers denies that it breached any insurance policy or acted unreasonably in any way with regard to any insurance policy. Travelers further denies the allegations in paragraph 639.

638. In light of information, facts, and relevant law to the contrary, Insurer Defendants' conduct is and has been undertaken with a conscious disregard of RCBO's rights as a beneficiary of the policies.

**ANSWER*:*** Paragraph 638 states legal conclusions to which no response is required. To the extent a response is required, Travelers denies that it breached any insurance policy or acted unreasonably in any way with regard to any insurance policy. Travelers further denies the allegations in paragraph 639.

639. RCBO is informed and believes and thereon alleges that Insurer Defendants' acts were performed, authorized, and/or ratified by their officers, directors, and managing agents.

**ANSWER*:*** Paragraph 639 states legal conclusions to which no response is required. To the extent a response is required, Travelers denies that it breached any insurance policy or acted unreasonably in any way with regard to any insurance policy. Travelers further denies the allegations in paragraph 639.

640. As a direct and proximate result of Insurer Defendants' breaches of the implied covenant of good faith and fair dealing, RCBO has been forced to continue participating in negotiations with claimants and engaging in bankruptcy proceedings, incurring additional needless costs. RCBO has suffered and continues to suffer substantial damages, in an amount to be determined at trial. RCBO also has incurred and continues to incur significant, recoverable attorneys' fees and costs to obtain the benefits to which it is entitled and which Insurer Defendants

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

wrongfully have denied under their policies. Pursuant to *Brandt v. Superior Court,* 37 Cal. 3d 813 (1985), RCBO also is entitled to recover all such attorneys' fees and costs, plus interest.

**ANSWER*:*** Paragraph 640 states legal conclusions to which no response is required. To the extent a response is required, Travelers denies that it breached any insurance policy or acted unreasonably in any way with regard to any insurance policy. Travelers further denies the allegations in paragraph 640.

**TWENTY-EIGHTH CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Chubb)**

641. RCBO realleges and incorporates herein Paragraphs 1 through 640 of this complaint as if said Paragraphs were set forth in full.

**ANSWER:** Travelers adopts and incorporates its responses to paragraphs 1 through 640 above as its response to paragraph 641.

642. As set forth above, Defendant Chubb had, at all material times, a duty to act fairly and in good faith towards RCBO, its insured. Included in Chubb's obligation to act fairly and in good faith towards RCBO is a duty to act with undivided loyalty to the insured.

**ANSWER:** Paragraph 435 states legal conclusions to which no response is required and Travelers therefore denies same.

643. Unbeknownst to RCBO, Chubb has for years been operating an online campaign against a similarly situated insured, the Archdiocese of New York, and encouraging and amplifying claims of the very type underlying this matter – claims that Chubb is obligated to defend RCBO against. Since at least 2023, Chubb has fraudulently posed as a victim rights organization called the "Church Accountability Project" and operated a website under that guise. Through that website, Chubb used inflammatory rhetoric and imagery designed to portray the Archdiocese of New York, the Catholic Church generally, and, by extension, RCBO and all similar organizations, in an extremely negative and prejudicial light. On the website, Chubb blames the Archdiocese of New York and the Catholic League for intentionally delaying payments to victims by attempting to shift blame to insurers. However, by secretly acting to inflame claims and direct anger towards Catholic organizations, Chubb has sabotaged the very organizations to which it is legally obligated to provide

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

undivided loyalty. Under the policies that Chubb issued to RCBO, Chubb is obligated to act with undivided loyalty to its insured, and its actions via the "Church Accountability Project" website contradict this duty.

**ANSWER:** Paragraph 643 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 643 and therefore denies same.

644. On previous iterations of the fraudulent website, Chubb even provided resources for claimants to report abuse by bishops and clergy more broadly. By encouraging such claims, Chubb has increased RCBO's exposure to liability for precisely the claims that Chubb is obligated to defend RCBO against. This presents a clear conflict of interest for Chubb and a breach of the implied covenant of good faith and fair dealing.

**ANSWER:** Paragraph 644 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 644 and therefore denies same.

645. At the same time, in this matter, Chubb refused to accept the reasonable settlement offer proposed by the UCC, an offer within its policy limits, and failed to participate in good faith in the resolution of covered claims, further exacerbating RCBO's exposure and needlessly delaying a resolution.

**ANSWER:** Paragraph 645 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 645 and therefore denies same.

646. Chubb never disclosed to RCBO that it was engaging in or authorizing this campaign, despite knowing that such conduct would materially prejudice RCBO's legal position and increase claim severity, settlement demands, and reputational harm.

**ANSWER:** Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 646 and therefore denies same.

647. As a direct and proximate result of Chubb's bad faith conduct, RCBO has suffered and continues to suffer substantial damages, the amount of which will be proven at trial, including

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

increased settlement demands and litigation exposure, reputational and institutional harm, impairment of RCBO's bankruptcy efforts, and other damages. RCBO has also incurred significant, recoverable attorneys' fees and costs to obtain the benefits to which it is entitled. RCBO is informed and believes that Chubb's conduct was performed, authorized, and/or ratified by its officers, directors, and managing agents, and/or with the advance knowledge or conscious disregard of its officers, directors, and managing agents.

**ANSWER:** Paragraph 647 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 647 and therefore denies same.

648. Chubb's actions were, and continue to be, willful, wanton and/or malicious, and demonstrate a conscious disregard for and/or reckless indifference to the rights of RCBO. Therefore, RCBO is entitled to recover punitive damages from Chubb in an amount sufficient to punish Chubb and deter similar conduct in the future.

**ANSWER:** Paragraph 648 states legal conclusions to which no response is required. To the extent a response is required, Travelers is without knowledge or information sufficient to form a belief regarding the truth of paragraph 648 and therefore denies same.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

## AFFIRMATIVE AND ADDITIONAL DEFENSES

Travelers asserts the following affirmative and other defenses without assuming any burden of proof not imposed on it by applicable law. Unless otherwise specified, the below defenses apply to the Alleged Primary Policies, the Excess Policies, and any other policy alleged, or that may in the future be alleged, by RCBO and to the extent RCBO is able to meet its burden to prove the issuance and material terms thereof. (For ease of reference and this limited purpose, all of the aforesaid, collectively, are referred to as "Travelers Policies").

## FIRST AFFIRMATIVE DEFENSE

**(Failure to State a Claim)**

Coverage is barred, in whole or in part, to the extent the Sixth Amended Complaint fails to state a cause of action against Travelers upon which relief may be granted.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**SECOND AFFIRMATIVE DEFENSE**

**(No Right of Action)**

Coverage is barred to the extent the Sixth Amended Complaint purports to seek relief based on alleged conduct not enforceable in a private right of action, or based on alleged acts for which redress may be enforced only by regulatory authorities with jurisdiction thereof.

**THIRD AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

Coverage is barred, in whole or in part, by applicable statutes of limitations.

**FOURTH AFFIRMATIVE DEFENSE**

**(Consent)**

RCBO's claim is barred, in whole or in part, because RCBO has consented to the acts, conduct or omissions that RCBO alleges caused or contributed to its alleged losses, damages and/or injuries.

**FIFTH AFFIRMATIVE DEFENSE**

**(Standing)**

RCBO's claim is barred, in whole or in part, because RCBO lacks standing to pursue their claim against Travelers.

**SIXTH AFFIRMATIVE DEFENSE**

**(No Damages)**

RCBO has suffered no cognizable damages as a result of the conduct alleged in the Complaint.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Adequate Remedy at Law)**

Travelers alleges that RCBO has an adequate remedy at law. Therefore, injunctive, equitable, and/or declaratory relief is inappropriate.

/ / /

/ / /

/ / /

**EIGHTH AFFIRMATIVE DEFENSE**

**(No Actual and Justiciable Controversy)**

RCBO's claim is barred because there is no actual and justiciable controversy existing between RCBO and Travelers.

**NINTH AFFIRMATIVE DEFENSE**

**(Failure to Provide Timely Notice of Occurrence(s) and Claims)**

Coverage is barred, in whole or in part, to the extent RCBO failed to comply with the terms of the Travelers Policies, including the requirement to provide timely notice of underlying occurrence(s), its knowledge of propensities and wrongful conduct of alleged or otherwise suspected wrongdoers, whether identified in the "Suits," or who are the subject of other claims/complaints of any sort made or asserted against RCBO.

**TENTH AFFIRMATIVE DEFENSE**

**(Laches)**

Coverage is barred, in whole or in part, under the doctrine of laches. RCBO has relinquished and abandoned any rights it otherwise might have had under the Travelers Policies by and to the extent, among other things, concealing from Travelers knowledge or information it knew or should have known regarding the propensities and wrongful conduct of the alleged wrongdoers that are the subject of one or more claims (including the "Suits") asserted against RCBO.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Expected or Intended Conduct)**

Coverage is barred, in whole or in part, to the extent the liabilities incurred, or that may be incurred, by RCBO were expected or intended by RCBO.

**TWELFTH AFFIRMATIVE DEFENSE**

**(No Coverage for Occurrences Taking Place Outside Policy Period)**

Coverage is barred, in whole or in part, to the extent any one or more alleged occurrences that are the subject of one or more claims (including the "Suits") asserted against RCBO relate to, or arise out of, conduct that took place outside the period of the Travelers Policies.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(No "Occurrence" or "Accident")**

Coverage is barred, in whole or in part, to the extent one or more claims (including the "Suits") asserted against RCBO relate to, or arise out of, conduct that did not involve an "occurrence" or "accident" as defined by the Travelers Policies.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Misrepresentation/Failure to Disclose)**

Coverage is barred, in whole or in part, to the extent RCBO failed to disclose and/or misrepresented material facts in connection with purchasing one or more of the Travelers Policies.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Ripeness)**

All or some of RCBO's claims are not ripe for adjudication.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

RCBO, by reason of its own conduct, is barred from the relief sought in the Sixth Amended Complaint, or any relief whatsoever, based on the doctrine of unclean hands.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Do Equity)**

RCBO has failed to act equitably and, therefore, RCBO's claim is barred by the doctrine that one who seeks equity must do equity.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Allege with Particularity)**

RCBO's Fourth Amended Complaint fails to set out its claim with sufficient particularity to permit Travelers to raise all appropriate defenses and, thus, Travelers reserves the right to add additional defenses as the factual basis for the claim becomes known.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(Justification)**

RCBO's claim is barred in whole or in part because Travelers was justified in its actions.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**TWENTIETH AFFIRMATIVE DEFENSE**

**(Voluntary Payments)**

Coverage is barred, in whole or in part, to the extent RCBO is seeking reimbursement for amounts it voluntarily paid, assumed an obligation to pay or otherwise paid when there was no legal obligation to do so, in violation of the Travelers Policies.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(No "Bodily Injury" or "Personal Injury")**

Coverage is barred, in whole or in part, to the extent claims (including the "Suits") for which RCBO seeks coverage do not allege or seek damages because of "bodily injury" or "personal injury" within the meaning of the Travelers Policies.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

**(Limits of Liability)**

Coverage, if any, is limited by the limits of liability set forth in the Travelers Policies, including but not limited to, applicable per occurrence limits and aggregate limits.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**(Incomplete or Missing Policies)**

Coverage is barred, in whole or in part, to the extent RCBO is seeking coverage under policies beyond those acknowledged above as having been acquired by Travelers, and is unable to meet its burden in establishing the existence of all such policies and their material terms, including but not limited to the terms and conditions of all policies that underly the Travelers Policies.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

**(Other Insurance)**

Coverage is barred, in whole or in part, to the extent "other insurance" provisions in the Travelers Policies may apply.

/ / /

/ / /

/ / /

/ / /

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

**(Non-Covered and/or Excluded Claims)**

Coverage is barred, in whole or in part, to the extent claims (including the "Suits") for which coverage is sought are outside the scope of the insuring clauses set forth in the Travelers Policies, or otherwise excluded by the terms of the Travelers Policies.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

**(Cooperation Clause)**

Coverage is barred, in whole or in part, to the extent RCBO failed to comply with provisions in the Travelers Policies that require RCBO's assistance and cooperation once a claim (or "Suit") has been made or an occurrence has taken place.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate)**

Coverage is barred, in whole or in part, to the extent RCBO failed to take steps to mitigate, minimize or avoid its alleged liabilities and damages.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

**(Impairment of Contribution and Other Rights)**

Coverage is barred, in whole or in part, to the extent RCBO has prejudiced or impaired Travelers contribution or other rights with respect to claims (including the "Suits") for which coverage is sought.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

Coverage is barred, in whole or in part, by the doctrine of unclean hands to the extent RCBO has breached its duties and obligations under the Travelers Policies.

**THIRTIETH AFFIRMATIVE DEFENSE**

**(Waiver and Estoppel)**

Coverage is barred, in whole or in part, to the extent RCBO has waived, relinquished, and/or abandoned, and is estopped from asserting, any rights it otherwise might have under the Travelers Policies by and to the extent, among other things, it failed to fully and timely notify Travelers of the

claims and/or occurrences giving rise to claims or "Suits" asserted against RCBO, concealed material facts during the policy acquisition or renewal process, and/or knowingly paid more than the reasonable settlement value of claims (including as relates to "Suits") asserted against RCBO.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

**(No Duty to Defend)**

Travelers has no duty to defend RCBO against claims (including the "Suits") asserted against RCBO for which coverage is sought that do not trigger coverage under Travelers Policies that set forth such a duty.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

**(Fines, Sanctions, Penalties, Punitive and Exemplary Damages)**

Coverage is barred to the extent the terms of the Travelers Policies and/or applicable law bar coverage for amounts incurred defending against claims (including the "Suits") that seek, or indemnifying amounts incurred or awarded against RCBO in the nature of, fines, sanctions, penalties and/or punitive or exemplary damages.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

**(Known Loss)**

Coverage is barred, in whole or in part, to the extent losses for which RCBO seeks coverage were known or loss in progress at the time when RCBO applied for and was issued the Travelers Policies.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

**(Exhaustion)**

Coverage is barred, in whole or in part, to the extent the limits of the Travelers Policies have been exhausted by the payment of prior settlements or judgments.

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

**(Non-Exhaustion)**

Coverage is barred, in whole or in part, under the Travelers Policies to the extent the limits of policies that underlie the Travelers Policies, to the extent applicable, have not been fully exhausted by the payment of prior settlements or judgments.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**THIRTY-SIXTH AFFIRMATIVE DEFENSE**

**(Coverage Barred under Underlying Policy(ies))**

Coverage is barred, in whole or in part, under the Travelers Policies to the extent coverage therefor is excluded under the terms of applicable underlying insurance policies.

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

**(Insured Status)**

Coverage is barred, in whole or in part, to the extent RCBO is unable to meet its burden to establish that it, or any other party seeking coverage under any of the Travelers Policies, qualifies as an insured thereunder.

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE**

**(Prior Settlement)**

Coverage is barred, in whole or part, to the extent released by RCBO under terms of an Amended Confidential Settlement Agreement and Mutual Release entered into in or about November, 2005.

**THIRTY-NINTH AFFIRMATIVE DEFENSE**

**(No Attorney Fees)**

RCBO has alleged no facts sufficient to state a claim for recovery of its attorneys' fees.

**FORTIETH AFFIRMATIVE DEFENSE**

**(Genuine Dispute)**

Travelers and RCBO had a genuine dispute over whether any coverage applied, and thus Travelers is not liable for breach of the implied covenant of good faith and fair dealing.

**FORTY-FIRST AFFIRMATIVE DEFENSE**

(California Insurance Code Section 533 – No Coverage for Willful Conduct)

Coverage is barred, in whole or in part, for the defense of any suit and the indemnity of any damages, arising from, caused by, or related to RCBO's intentional or willful acts and omissions pursuant to California Insurance Code section 533.

**FORTY-SECOND AFFIRMATIVE DEFENSE**

**(Incorporation of Defenses by Other Insurers)**

Travelers incorporates and adopts the defenses asserted by other insurer defendants named in the Complaint.

Travelers reserves its rights to assert additional defenses upon further discovery of RCBO's claims and its bases for asserting coverage under one or more of the Travelers Policies.

**ADDITIONAL DEFENSES**

Travelers presently has insufficient knowledge or information upon which to form a belief as to whether there may be additional, as yet unstated, defenses and reserves the right to assert additional defenses in the event that discovery indicates such defenses are appropriate.

**DEMAND FOR TRIAL BY JURY**

Travelers demands a trial by jury as to all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Travelers respectfully requests that the Court deny all relief requested by RCBO and enter judgment for Travelers:

a. Dismissing RCBO's Complaint with prejudice;

b. Declaring RCBO is not entitled to any order, declaration, judgment, or other relief whatsoever against Travelers;

c. Declaring judgment in favor of Travelers;

d. Awarding Travelers its attorneys' fees, expenses and costs herein; and

e. Granting Travelers such other and further relief that this Court deems just and proper.

**COUNTERCLAIMS**

Pursuant to Federal Rule of Civil Procedure 13, Travelers alleges the following as counterclaims in this action:

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

1. RCBO alleges that Travelers issued a primary liability insurance policy to RCBO, bearing policy no. 05AL802025CMA, effective December 1, 1975 to December 1, 1976 (the "Alleged Primary Policy"). Neither RCBO nor Travelers can locate this alleged policy and Travelers therefore cannot certify it was issued. However, assuming this policy exists and was issued, RCBO alleges it provides coverage to RCBO for, in whole or part, the $16,000,000 judgment entered in

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

*John Doe OK 1022 v. RCBO*, Case No. HG19048685, Superior Court of California, County of Alameda (the "*Woodall* suit").

2. CNA issued Umbrella Policy No. RDU1467450 (the "CNA Umbrella Policy") to RCBO, effective October 26, 1974 to October 26, 1977.

3. Travelers issued a second-layer excess policy to RCBO, bearing policy no. 005XN33WCA (the "75-77 Excess Policy"), effective October 26, 1975 to December 1, 1977, which is follow-form to the CNA Umbrella Policy and has a $5,000,000 per occurrence limit in excess of $5,000,000. Travelers has certified the 75-77 Excess Policy.

4. The Schedule of Underlying Insurance contained in the 75-77 Excess Policy states the underlying CNA Umbrella Policy has a $5,000,000 per occurrence limit. Travelers located records kept by Travelers in the normal course of Travelers' business, which included a copy of the CNA Umbrella Policy stamped by RCBO's insurance broker Heffernan, Keiler, Doble Inc., confirming by issued endorsement that the CNA Umbrella Policy's "EACH OCCURRENCE" limit increased from $1,000,000 to $5,000,000 effective October 26, 1975.

5. Travelers is not aware of or in possession of any documents that contradict the Schedule of Underlying Insurance or Travelers' records, and is informed and believes that RCBO acknowledges the copy of the CNA Umbrella Policy it has relied on is an uncertified incomplete copy.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

**FIRST CAUSE OF ACTION**

**(Declaratory Relief – Prior Settlement and Release – Against RCBO)**

6. Travelers incorporates the preceding paragraphs 1-7 as if set forth in full herein.

7. To state a claim for declaratory relief, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

8. An actual and justiciable controversy exists between Travelers and RCBO regarding whether RCBO released Travelers from all obligations under its Alleged Primary Policy and 75-77 Excess Policy with respect to Woodall's claims against RCBO.

9. In 2005, RCBO entered into an "Amended Confidential Settlement Agreement and Mutual Release" with Travelers and other insurers of RCBO (the "2005 Settlement Agreement").

The 2005 Settlement Agreement resolved RCBO's claims for insurance coverage from the participating insurers for sexual abuse claims arising in the *Clergy III* litigation.

10. Per the 2005 Settlement Agreement, RCBO released its insurers, including Travelers, from liability for certain "Abuse Claims" defined to include sexual abuse claims then pending as lawsuits against RCBO, and any claims of which RCBO was or reasonably should have been aware. settled insurance coverage litigation with Travelers, and other insurers, including CNA, releasing the insurers from sexual abuse claims then pending as lawsuits against RCBO and any claims of which RCBO was or reasonably should have been aware at that time.

11. In 2004, RCBO learned of Woodall's allegation that he was sexually abused by Kiesle in 2004, through the report made by Woodall's sister. Following the report, RCBO agreed to reimburse Woodall's past therapy costs and pay for his future therapy costs.

12. The *Woodall* suit qualifies as a released "Abuse Claim" under the 2005 Settlement Agreement because RCBO knew, at the time RCBO entered into the 2005 Settlement Agreement, that Mr. Woodall had claimed he had been sexually abused by Kiesle in 1975.

13. RCBO is not entitled to insurance coverage under the Alleged Primary Policy or the 75-77 Excess Policy for the judgment entered in the *Woodall* suit because RCBO released Travelers from liability for Woodall's claim in the 2005 Settlement Agreement.

**<u>SECOND CAUSE OF ACTION</u>**

**(Declaratory Relief – No Coverage Because Acts Were Expected or Intended – Against RCBO)**

14. Travelers incorporates the foregoing paragraphs 1-13 of its counterclaims as if set forth in full herein.

15. To state a claim for declaratory relief, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

16. An actual and justiciable controversy exists between Travelers and RCBO regarding whether the *Woodall* suit is covered under the Alleged Primary Policy and the 75-77 Excess Policy based on RCBO's inability to satisfy its burden to show coverage is triggered under the basic insuring provisions in either policy.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

17. The basic insuring provision in the Alleged Primary Policy states in part that Travelers "will pay on behalf of the 'Insured' all sums which the 'Insured' shall become legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'occurrence . . . .'"

18. The Alleged Primary Policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in 'bodily injury' or 'property damage' neither expected nor intended from the standpoint of the 'Insured.'"

19. The 75-77 Excess Policy is follow-form to the CNA Umbrella Policy, meaning that it incorporates all of the CNA Umbrella Policy's policy terms, exclusions, and limitations. That is, in order to obtain coverage under the 75-77 Excess Policy, an insured must at least be able to obtain coverage under the CNA Umbrella Policy. If an insured cannot obtain coverage under the CNA Umbrella Policy, then it cannot trigger or obtain coverage under the 75-77 Excess Policy.

20. RCBO alleges the judgment in the *Woodall* suit implicates coverage under the Alleged Primary Policy, the CNA Umbrella Policy, and the 75-77 Excess Policy.

21. RCBO cannot satisfy the Alleged Primary Policy's definition of "occurrence" and cannot trigger coverage under the Alleged Primary Policy's basic insuring provision.

22. Travelers is informed and believes RCBO cannot trigger coverage under the terms, conditions, and provisions of the CNA Umbrella Policy on this same ground, and therefore cannot trigger coverage under the 75-77 Excess Policy.

23. In the *Woodall* suit, Steven Woodall alleged that he was abused by Stephen Kiesle ("Kiesle"), a former priest of the Diocese of Oakland.

24. Kiesle began studying at St. Patrick's Seminary in Menlo Park, California in 1966, and graduated in 1972.

25. On information and belief, in 1968, photographs of semi-nude and nude children were found in a roll of film Kiesel developed in connection with directing a children's play. The rector of St. Patrick's discussed the photographs with Kiesle but took no further action after Kiesle claimed the photos were taken by others and that he knew nothing about them. However, Kiesle

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

also admitted to photographing a boy wearing only a loincloth. On information and belief, the pastor at St. Isidore's parish in Danville, California was informed of the incident.

26. On information and belief, Kiesel regularly hosted "sleepovers" in his room at St. Patrick's seminary with the children he worked with in his official capacity.

27. In January 1972, the Roman Catholic Bishop of Oakland wrote to the head pastor at a church where Kiesle had served as a deacon prior to being ordained that he was "deeply concerned" about Kiesle and asking for a "confidential and serious" report about him. The head pastor responded that Kiesle was "immature and difficult to communicate with," "does not communicate well with adults," but was "excellent with the very young children teenagers" with whom he was "outgoing, interested and concerned."

28. In a 1971-72 evaluation by another priest, the "concern" about Kiesle's "ability to relate with adults" was repeated and it was noted that Kiesle "spent a great deal of time pastorally with young people."

29. After Kiesle was ordained in May 1972, he continued to hold regular "sleepovers" for children in the parish at his first assignment at St. Joseph's Church in Pinole, California.

30. At these sleepovers, children slept in Kiesle's room and were permitted to drink alcohol, including on at least one occasion to such excess that a child vomited from alcohol consumption.

31. Kiesle admitted that he began engaging in sexual activity with women and boys at this time, including specific admissions, under oath, that he would "hug and kiss" a female child spending the night at St. Joseph's, and that it was "quite possible" that he touched her vagina and breasts. On information and belief, other priests and adults affiliated with the Diocese were present in the rectory when these events occurred.

32. Kiesle was transferred to Our Lady of the Rosary Church in Union City, California in May 1975. He continued to hold sleepovers and to socialize with children there. Mr. Woodall first met Kiesle there in 1975, and alleged that he was abused twice by Kiesle, once in the fall of 1975 and once in 1976 at the rectory.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

33. In 1978, Kiesle pleaded no contest to sexually abusing two minor boys and was sentenced to three years of probation.

34. In 1981, RCBO and Kiesle petitioned the Vatican to laicize Kiesle, which occurred in 1987.

35. In 2002, Kiesle was charged with sexually abusing children while working at Santa Paula in the 1960s and 1970s.

36. In 2004, Kiesle was prosecuted for sexually abusing a 15-year-old girl and sentenced to six years in prison.

37. On information and belief, in addition to knowing of multiple incidents of alleged sexual abuse involving Kiesle, the fact that priests engaged in sexual abuse of minors generally was well-known by the Catholic Church and its bishops, including RCBO, before 1975.

38. RCBO reasonably should have been aware of Kiesle's propensity for abuse at or before Kiesle abuse Woodall because of the facts describing Kiesle's history of abuse and RCBO's knowledge of same alleged in the *Woodall* suit, including and additionally that (i) Kiesle was convicted of child sexual abuse, (ii) Kiesle was known to have sexually assaulted children other than Woodall, (iii) RCBO knew of these incidents, knew that Kiesle was continuing this behavior, and failed to take reasonable steps to prevent future incidents, including Woodall's alleged abuse, (iv) RCBO continued to allow children to be alone with Kiesle despite its knowledge of Kiesle's acts and propensities, and (v) at the time of Woodall's alleged abuse by Kiesle, it was reasonably foreseeable to RCBO that its acts and omissions would expose Woodall to the serious risk of being sexually abused by Kiesle.

39. Mr. Woodall sued RCBO in the *Woodall* suit. Shortly before trial commenced, RCBO, without permission of any insurer, stipulated that it was 100 percent liable for Mr. Woodall's claimed damages. The jury returned a verdict assessing $16 million in damages, judgment was entered against RCBO accordingly, and RCBO did not appeal.

40. There is no coverage under the Alleged Primary Policy because Woodall's suit does not allege an "occurrence" as that term is defined in the Alleged Primary Policy.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

41. Because the *Woodall* suit alleged that RCBO was on notice, prior to Mr. Woodall's alleged abuse, that Kiesle had a high propensity to sexually abuse children, and indeed had done so in the past, Kiesle's alleged abuse of Mr. Woodall was expected and intended by RCBO as those terms are used in the Alleged Primary Policy.

42. RCBO thus cannot satisfy the Alleged Primary Policy's basic insuring provision to trigger coverage for the verdict entered in the *Woodall* suit.

43. Travelers is informed and believes RCBO cannot trigger coverage under the CNA Umbrella Policy on this same basis, thus RCBO also cannot trigger coverage under the 75-77 Excess Policy.

**<u>THIRD CAUSE OF ACTION</u>**

**(Declaratory Relief – Failure to Cooperate)**

44. Travelers incorporates the foregoing paragraphs 1-43 of its counterclaims as if set forth in full herein.

45. To state a claim for declaratory relief, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

46. An actual and justiciable controversy exists between Travelers and RCBO regarding whether RCBO breached the cooperation provisions contained in the Alleged Primary Policy and 75-77 Excess Policy with respect to the Woodall *suit*.

47. RCBO voided its coverage under the Alleged Primary Policy, and to the extent RCBO voided its coverage under the CNA Umbrella Policy, it therefore also voided its coverage under the 75-77 Excess Policy, by failing to cooperate with its insurers.

48. During the pendency of the *Woodall* suit, RCBO and its attorneys (to which RCBO asserted it was entitled as independent counsel under Civil Code section 2860) made only minimal attempts to inform Travelers and other insurers about the conduct of the defense of the suit and made all decisions related thereto.

49. The Alleged Primary Policy contained a cooperation clause requiring the insured to cooperate with its insurers, including assisting in the "conduct of suits."

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

50. The CNA Umbrella Policy, and therefore, the follow-form 75-77 Excess Policy, contained a cooperation clause requiring the insured to cooperate with its insurers, including assisting in the "conduct of suits."

51. RCBO breached the cooperation clause by stipulating to 100 percent liability, thereby affirmatively seeking to expand damages that might be awarded and failing to contest liability at all.

52. Additionally, RCBO failed to cross-examine certain of Mr. Woodall's witnesses, conducted perfunctory cross-examinations of others, did not present any of its own evidence, failed to call any witnesses including its own expert witness who had been designated and deposed, and presented only a brief and ineffective closing argument.

53. On information and belief, RCBO did all of these things knowing that its insurers would be solely responsible for any judgment entered in the *Woodall* suit, and that allowing judgment to be entered in the *Woodall* suit (the larger, the better) would pressure its insurers to enter a global settlement in RCBO's still-pending bankruptcy case.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

## FOURTH CAUSE OF ACTION

**(Declaratory Relief – No Exhaustion – Against RCBO)**

54. Travelers incorporates the foregoing paragraphs 1-53 of its counterclaims as if set forth in full herein.

55. To state a claim for declaratory relief, a party needs to plead an actual controversy. 28 U.S.C. § 2201.

56. An actual and justiciable controversy exists between Travelers and RCBO regarding whether coverage is triggered under the 75-77 Excess Policy.

57. The 75-77 Excess Policy contains Section 2. INDEMNITY AGREEMENT whereby Travelers agrees to "indemnify the INSURED against EXCESS NET LOSS arising out of an accident or occurrence during the policy period, subject to the limits of liability in Section 1. and to all of the terms of this policy".

58. The 75-77 Excess Policy defines "EXCESS NET LOSS" as "that part of the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, and which would be covered by the terms of the Controlling

Underlying Insurance, if written without any limit of liability of all policies described in Section 3. Schedule of Underlying Insurance, whether or not such policies are in force."

59. The Schedule of Underlying Insurance contained in the 75-77 Excess Policy states the underlying CNA Umbrella Policy has a $5,000,000 per occurrence limit. Travelers located records kept by Travelers in the normal course of Travelers' business, which included a copy of the CNA Umbrella Policy stamped by RCBO's insurance broker Heffernan, Keiler, Doble Inc., confirming by issued endorsement that the CNA Umbrella Policy's "EACH OCCURRENCE" limit increased from $1,000,000 to $5,000,000 effective October 26, 1975.

60. Travelers is not aware of or in possession of any documents that contradict the Schedule of Underlying Insurance or Travelers' records, and based on information and belief understands that RCBO acknowledges the copy of the CNA Umbrella Policy it has relied on is an uncertified incomplete copy.

61. A $1,000,000 per occurrence limit persisting across all three years of the CNA Umbrella Policy is inconsistent with the total limits RCBO maintained in its insurance program in the year immediately before and immediately after the October 26, 1975 to December 1, 1977 period at issue. Specifically, RCBO maintained $1,000,000 per occurrence umbrella coverage through CNA and $9,000,000 per occurrence excess coverage through Westport, for a total of $10,000,000 in available per occurrence excess limits from October 26, 1974 to October 26, 1975.

62. Westport's excess policy expired on October 26, 1975, which is when the 75-77 Excess Policy went into effect with a $5,000,000 per occurrence limit in excess of the CNA Umbrella Policy.

63. For the period after December 1, 1977, RCBO maintained $5,000,000 per occurrence umbrella coverage through CNA and $5,000,000 per occurrence excess coverage through Travelers, for a total of $10,000,000 in available per occurrence excess limits from December 1, 1977 to December 1, 1978.

64. A $16 million judgment was entered in favor of Mr. Woodall in the *Woodall* suit.

65. Travelers has tendered the $300,000 per occurrence limits of the Travelers Primary Policy to Mr. Woodall.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

66. The $5,000,000 limits of the CNA Umbrella Policy have not been paid or tendered to Mr. Woodall.

67. RCBO cannot obtain coverage under the 75-77 Excess Policy, and Travelers has no obligation to indemnify RCBO, unless and until RCBO's covered obligations satisfy the definition of "EXCESS NET LOSS" as defined in the 75-77 Excess Policy.

68. On information and belief, no amounts have been paid or tendered to Mr. Woodall from CNA or any other relevant source that satisfy the definition of EXCESS NET LOSS under the 75-77 Excess Policy.

**PRAYER FOR RELIEF**

WHEREFORE, Travelers requests the Court grant relief on its counterclaims as follows:

a. Declaring that RCBO released Travelers from any obligations under the Alleged Primary Policy and the 75-77 Excess Policy through the 2005 Settlement Agreement;

b. Declaring that RCBO is not entitled to coverage under the Alleged Primary Policy or the 75-77 Excess Policy based on RCBO's failure to trigger coverage under the policies' basic insuring provisions as Kiesle's abuse was expected by RCBO as that term is used in the Alleged Primary Policy and CNA Umbrella Policy to which the 75-77 Excess Policy is follow-form;

c. Declaring that RCBO breached the cooperation provisions in the Alleged Primary Policy and the 75-77 Excess Policy with respect to the *Woodall* suit;

d. Declaring that coverage is not triggered under the 75-77 Excess Policy as RCBO has not established exhaustion of the underlying CNA Umbrella Policy's $5,000,000 each occurrence limit by CNA or any other relevant source;

e. Awarding Travelers its costs on its counterclaims; and

f. Awarding such other and further relief as may be just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Dated: November 5, 2026

Respectfully submitted,

DENTONS US LLP

By: *\/s/Andrew D. Telles Wyatt*
ANDREW D. TELLES WYATT

*Attorneys for Travelers Casualty & Surety Company*

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000