Catalina J. Sugayan
Clinton E. Cameron (*pro hac vice*)
Yongli Yang (*pro hac vice*)
**CLYDE & CO US LLP**
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: (312) 635-7000
catalina.sugayan@clydeco.us
clinton.cameron@clydeco.us
yongli.yang@clydeco.us

Russell W. Roten
Jeff D. Kahane
Timothy W. Evanston
**Skarzynski Marick & Black LLP**
333 S. Grand Avenue, Suite 3550
Los Angeles, California 90071
Telephone: (213) 721-0650
rrotten@skarzynski.com
jkahane@skarzynski.com
tevanston@skarzynski.com

Counsel for Defendants and Counter-Claimants
LONDON MARKET INSURERS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

In Re:

THE ROMAN CATHOLIC BISHOP OF OAKLAND INSURANCE ADVERSARY PROCEEDING LITIGATION

ROMAN CATHOLIC BISHOP OF OAKLAND,
Plaintiff,
v.
PACIFIC INDEMNITY, a Delaware corp. et. al.,
Defendants

Case No. 3:24-cv-00709-JSC
Hon. Jacqueline Scott Corley
Bankruptcy Case No. 23-40523-WJL

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING SEVERALLY AND NOT JOINTLY TO SLIP NOS. CU 1001 AND K 66034 ISSUED TO THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, AND NOS. K 78138 AND CU 3061 ISSUED TO THE ROMAN CATHOLIC BISHOP OF OAKLAND; CATALINA WORTHING INS. LTD. f/k/a HFPI (as Part VII transferee of Excess Insurance Co. Ltd.); THE OCEAN MARINE INS. CO. LTD. (as Part VII transferee of the World Auxiliary Insurance Corporation Limited); RIVER THAMES INS. CO. LTD.; DOMINION INS. CO. LTD.; COMPANHIA DE SEGUTOS FIDELIDADE SA f/k/a Fidelidade Insurance Company of Lisbon; and R&Q GAMMA CO.

**LONDON MARKET INSURERS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM TO PLAINTIFF THE ROMAN CATHOLIC BISHOP OF OAKLAND'S SIXTH AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

LTD. (as Part VII transferee of Anglo French Ltd.)
Defendants and Counter-Claimants
v.
ROMAN CATHOLIC BISHOP OF OAKLAND,
Plaintiff and Counter-Defendant

NOW COME the Defendants and Counter-Claimants, Certain Underwriters at Lloyd's, London, subscribing severally and not jointly to Slip Nos. CU 1001 and K 66034 issued to the Roman Catholic Archbishop of San Francisco, and Nos. K 78138 and CU 3061 issued to the Roman Catholic Bishop of Oakland ("Underwriters"); Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Co. Ltd.) ("Excess"); the Ocean Marine Insurance Company Limited (as Part VII transferee of the World Auxiliary Insurance Corporation Limited) ("World Auxiliary"); River Thames Insurance Company Limited ("River Thames"); Dominion Insurance Company Limited ("Dominion"); Companhia De Seguros Fidelidade SA f/k/a Fidelidade Insurance Company of Lisbon ("Fidelidade"); and R&Q Gamma Company Limited (as Part VII transferee of Anglo French Ltd.) ("Angelo French") (collectively "London Market Insurers" or "LMI"), having subscribed severally and not jointly, as their interests may appear with respect to one or more insurance policies, for their Answer, Affirmative Defenses, and Counterclaim to the Sixth Amended Complaint at Dkt. No. 279, filed by the Plaintiff and Counter-Defendant, The Roman Catholic Bishop of Oakland ("RCBO"), state as follows:

## JURISDICTION AND VENUE

1. LMI are not required to respond to the Diocese's legal conclusions regarding jurisdiction. To the extent a response is required, LMI state the proceeding is related to RCBO's Chapter 11 case. LMI deny any remaining allegations in Paragraph 1.

2. LMI are not required to respond to the Diocese's legal conclusions regarding venue. To the extent a response is required, LMI admit events giving rise to the claim occurred in this judicial district. LMI deny any remaining allegations in Paragraph 2.

## NATURE OF THE ACTION

3. LMI admit that RCBO asserted causes of action against them for Declaratory Relief. *See* Sixth Amended Complaint, Dkt. No. 279, at Tenth Cause of Action (Underwriters-Excess Policies) ¶¶233-255, Eleventh Cause of Action (Fidelidade-Excess Policies) ¶¶256-278, Twelfth Cause of Action (Excess-Excess Policies) ¶¶279-300, Thirteenth Cause of Action (River Thames-Excess Policies) ¶¶301-322, Fourteenth Cause of Action (World Auxiliary-Excess Policies) ¶¶323-344, Fifteenth Cause of Action (Dominion-Excess Policies) ¶¶345-366, Twentieth Cause of Action (Underwriters-Umbrella Policies) ¶¶458-480, Twenty-First Cause of Action (Angelo French-Umbrella Policies) ¶¶481-503, Twenty-Second Cause of Action (Excess-Umbrella Policies) ¶¶504-526. LMI also admit that RCBO asserted a cause of action them for Breach of the Implied Covenant of Good Faith and Fair Dealing (the "Bad Faith Claim"). *Id.* at Twenty-Eighth Cause of Action ¶¶631-640. However, LMI filed a Motion to Dismiss RCBO's Sixth Amended Complaint. *See* LMI Motion to Dismiss RCBO's Sixth Amended Complaint, Dkt. No. 291. This Court entered an Order that granted the LMI Motion to Dismiss in Part and dismissed the Bad Faith Claim in the Twenty-Eighth Cause of Action as to LMI since they are not insurers involved in the Woodall matter. *See* Order Denying in Part and Granting in Part Motions to Dismiss, Dkt. No. 329. LMI deny any remaining allegations in Paragraph 3.

## **<u>THE PARTIES</u>**

4. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4 and, therefore, deny them.

5. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5 and, therefore, deny them.

6. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 6 and, therefore, deny them.

7. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7 and, therefore, deny them.

8. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 8 and, therefore, deny them.

9. LMI lack knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 9 and, therefore, deny them.

10. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10 and, therefore, deny them.

11. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11 and, therefore, deny them.

12. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12 and, therefore, deny them.

13. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13 and, therefore, deny them.

14. Underwriters admit that they subscribed, severally and not jointly, and as their respective interests may appear, to Slip No. CU 1001 issued to the Roman Catholic Archbishop of San Francisco effective for the annual periods from November 1, 1960 to October 25, 1963, and No. K 78138 issued to the Roman Catholic Archbishop of Oakland effective for the annual periods from October 25, 1963 to October 25, 1966. Underwriters are not required to respond to the allegation that Slip Nos. CU 1001 and K 78138 “are responsive to certain claims”, which is a legal conclusion. Underwriters deny the remaining allegations in Paragraph 14.

15. Excess admits that it subscribed, severally and not jointly, and as its respective interests may appear, to Slip No. CU 1001 issued to the Roman Catholic Archbishop of San Francisco effective for the annual periods from November 1, 1960 to October 25, 1963, and No. K 78138 issued to the Roman Catholic Archbishop of Oakland effective for the annual periods from October 25, 1963 to October 25, 1966. Excess is not required to respond to the allegation that Slip Nos. CU 1001 and K 78138 “are responsive to certain claims”, which is a legal conclusion. Excess denies the remaining allegations in Paragraph 15.

16. Dominion admits that it subscribed, severally and not jointly, and as its respective interests may appear, to Slip No. CU 1001 issued to the Roman Catholic Bishop of San Francisco effective for the annual periods from November 1, 1960 to October 25, 1963, and No. K 78138 issued to the Roman Catholic Archbishop of Oakland effective for the annual periods from October 25, 1963 to October 25, 1966. Dominion is not required to respond to the allegation that Slip Nos.

CU 1001 and K 78138 “are responsive to certain claims”, which is a legal conclusion. Excess denies the remaining allegations in Paragraph 16.

17. World Auxiliary admits that it subscribed, severally and not jointly, and as its respective interests may appear, to Slip No. CU 1001 issued to the Roman Catholic Archbishop of San Francisco effective for the annual periods from November 1, 1960 to October 25, 1963. World Auxiliary is not required to respond to allegation that Slip No. CU 1001 “is responsive to certain claims”, which is a legal conclusion. World Auxiliary denies the remaining allegations in Paragraph 17.

18. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18 and, therefore, deny them.

19. River Thames admits that it subscribed, severally and not jointly, and as its respective interests may appear, to Slip No. CU 1001 issued to the Roman Catholic Archbishop of San Francisco effective for the annual periods from November 1, 1960 to October 25, 1963. River Thames is not required to respond to the allegation that Slip No. CU 1001 “is responsive to certain claims”, which is a legal conclusion. River Thames denies the remaining allegations in Paragraph 19.

20. Fidelidade admits that it subscribed, severally and not jointly, and as its respective interests may appear, to Slip No. K 78138 issued to the Roman Catholic Bishop of Oakland effective for the annual periods from October 25, 1963 to October 25, 1966. Fidelidade is not required to respond to the allegation that Slip No. K 78138 “is responsive to certain claims”, which is a legal conclusion. Fidelidade denies the remaining allegations in Paragraph 20.

21. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21 and, therefore, deny them.

22. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22 and, therefore, deny them.

23. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23 and, therefore, deny them.

24. Anglo French admits that it subscribed, severally and not jointly, and as its respective

interests may appear, to Slip Nos. K 66034 issued to the Roman Catholic Archbishop of San Francisco effective for the annual periods from November 1, 1960 to October 25, 1963 and CU 3061 issued to the Roman Catholic Bishop of Oakland effective for the annual periods from October 25, 1963 to October 25, 1966. Anglo French is not required to respond to the allegation that Slip Nos. K 66034 and CU 3061 "are responsive to certain claims", which is a legal conclusion. Anglo French denies the remaining allegations in Paragraph 24.

25. Excess admits that it subscribed, severally and not jointly, and as its respective interests may appear, to Slip Nos. K 66034 issued to the Roman Catholic Archbishop of San Francisco effective for the annual periods from November 1, 1960 to October 25, 1963 and CU 3061 issued to the Roman Catholic Bishop of Oakland effective for the annual periods from October 25, 1963 to October 25, 1966. Excess is not required to respond to the allegation that Slip Nos. K 66034 and CU 3061 "are responsive to certain claims", which is a legal conclusion. Excess denies the remaining allegations in Paragraph 25.

26. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26 and, therefore, deny them.

27. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27 and, therefore, deny them.

28. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28 and, therefore, deny them.

29. Underwriters admit that they subscribed, severally and not jointly, and as their respective interests may appear, to Slip Nos. K 66034 issued to the Roman Catholic Archbishop of San Francisco effective for the annual periods from November 1, 1960 to October 25, 1963 and CU 3061 issued to the Roman Catholic Bishop of Oakland effective for the annual periods from October 25, 1963 to October 25, 1966. Underwriters are not required to respond to the allegation that Slip Nos. K 66034 and CU 3061 "are responsive to certain claims", which is a legal conclusion. Underwriters deny the remaining allegations in Paragraph 29.

30. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30 and, therefore, deny them.

## FACTUAL BACKGROUND COMMON TO ALL DEFENDANTS

31. LMI admit that RCBO filed the First Amended Complaint on June 22, 2023, the Second Amended Complaint on December 18, 2023, and the Third Amended Complaint on January 12, 2024. LMI are not required to respond to legal conclusions in Paragraph 31. LMI deny any remaining allegations in Paragraph 31.

32. LMI admit that RCBO filed the Fifth Amended Complaint on July 11, 2024. LMI lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 32 and, therefore, deny them.

33. LMI are not required to respond to legal conclusions in Paragraph 33. LMI lack knowledge or information sufficient to form a belief about the truth of the allegations relating to the purpose of the Sixth Amended Complaint. LMI deny the remaining allegations in Paragraph 33.

34. LMI state that the causes of action for breach of the implied duty of good faith and fair dealing against them were dismissed by the Court pursuant to its Order dated September 17, 2026 [Dkt. No. 329]. Accordingly, LMI are not required to respond to allegations in Paragraph 34 that are directed to them. To the extent there are allegations in Paragraph 34 that are directed to others, LMI lack knowledge or information sufficient to form a belief about the truth of those allegations and, therefore, deny them.

35. LMI admit that certain individuals have brought claims against RCBO alleging sexual abuse. LMI also admit that California passed AB 218. LMI lack knowledge or information sufficient to form a belief about the truth of any remaining allegations in Paragraph 35 and, therefore, deny them.

36. LMI admit that certain individuals have brought claims against RCBO alleging sexual abuse. LMI are not required to respond to legal conclusions in Paragraph 36. LMI lack knowledge or information sufficient to form a belief about the truth of any allegations regarding what the underlying plaintiffs allege and therefore deny them. LMI deny the remaining allegations in Paragraph 36.

37. LMI are not required to respond to legal conclusions in Paragraph 37. LMI lack knowledge or information sufficient to form a belief about the truth of any remaining allegations in

Paragraph 37 and, therefore, deny them.

38. LMI lack knowledge or information sufficient to form a belief about the truth of any remaining allegations in Paragraph 38 and, therefore, deny them.

39. LMI lack knowledge or information sufficient to form a belief about the truth of any remaining allegations in Paragraph 39 and, therefore, deny them.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief Against Pacific Indemnity – Primary)**

40–61. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**SECOND CAUSE OF ACTION**

**(Declaratory Relief Against Travelers – Primary)**

62–81. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**THIRD CAUSE OF ACTION**

**(Declaratory Relief Against INA – Primary)**

82–102. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**FOURTH CAUSE OF ACTION**

**(Declaratory Relief Against CIGA)**

103–117. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**FIFTH CAUSE OF ACTION**

**(Declaratory Relief Against INA – Excess)**

118–140. This cause of action is directed to other Defendants and LMI do not need to answer.

To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**<u>SIXTH CAUSE OF ACTION</u>**

**(Declaratory Relief Against U.S. Fire – Excess)**

141–162. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**<u>SEVENTH CAUSE OF ACTION</u>**

**(Declaratory Relief Against Westport – Excess)**

163–185. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**<u>EIGHTH CAUSE OF ACTION</u>**

**(Declaratory Relief Against CNA – Excess)**

186–209. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**<u>NINTH CAUSE OF ACTION</u>**

**(Declaratory Relief Against Westchester – Excess)**

210–232. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**<u>TENTH CAUSE OF ACTION</u>**

**(Declaratory Relief Against Lloyd's – Excess)**

233. Underwriters incorporate by reference and repeat the answers to Paragraphs 1 through 232 as though set forth fully herein.

234. Underwriters admit 28 U.S.C. §2201 requires an actual controversy and that the statute speaks for itself. Underwriters are not required to respond to legal conclusions in Paragraph

234.

235. Underwriters are unable to answer the discordant allegations in Paragraph 235 that, on the one hand, assert "an actual and justiciable controversary exists between RCBO and Lloyd's Excess with respect to whether Lloyd's Excess is obligated to provide RCBO with *defense and indemnity*" of certain Suits, and, on the other hand, assert "RCBO alleges Lloyd's Excess is obligated to provide RCBO with *indemnity*". Underwriters deny any duty to defend under the LMI policies and also assert the Suits for which RCBO seeks coverage have been stayed by the bankruptcy filing or, if released from the stay, are being defended by other insurers. Underwriters also deny any obligation to indemnify since there has been no settlement or judgment in a Suit that potentially implicates the LMI policies. Underwriters are not required to respond to any legal conclusions in Paragraph 235. Underwriters deny the remaining allegation in Paragraph 235.

236. Underwriters deny that Paragraph 236 fully, completely, and accurately describes the terms of the LMI policies, which as written documents, speak for themselves. Underwriters are not required to respond to the legal conclusions in Paragraph 236. Underwriters deny any remaining allegations in Paragraph 236.

237. Underwriters deny the allegations in Paragraph 237.

238. Underwriters admit that RCBO provided LMI with some Proofs of Claim and some other information relating to certain sexual abuse claims. Underwriters deny the remaining allegations in Paragraph 238.

239. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 239. Underwriters deny any remaining allegations in Paragraph 239.

240. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 240. Underwriters deny any remaining allegations in Paragraph 240.

241. Underwriters admit they provided coverage position letters in response to claim

tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 241. Underwriters deny any remaining allegations in Paragraph 241.

242. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 242. Underwriters deny any remaining allegations in Paragraph 242.

243. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. Underwriters also admit the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 243. Underwriters deny any remaining allegations in Paragraph 243.

244. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. Underwriters also admit the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 244. Underwriters deny any remaining allegations in Paragraph 244.

245. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies and the underlying policies, as written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 245. Underwriters deny any remaining allegations in Paragraph 245.

246. Underwriters admit some purported "Covered Claims" allege abuse during the periods of the LMI policies. Underwriters deny that there is a purported "Covered Claim" with a settlement or verdict that exhausted the limits of the underlying policies. Underwriters are not required to respond to speculation and legal conclusions in Paragraph 246. Underwriters deny the remaining allegations in Paragraph 246.

247. Underwriters admit the UCC sent a letter to counsel for LMI on or around July 3, 2024. Underwriters deny that Paragraph 247 fully, completely, and accurately describes the contents

of that letter, which as a written document, speaks for itself. Underwriters lack knowledge or sufficient information about the underlying policies and the verdicts and settlements referenced in Paragraph 247, to form a belief about the truth of any remaining allegations and, therefore, deny them. Underwriters are not required to respond to speculation and legal conclusions in Paragraph 247. Underwriters deny any remaining allegations in Paragraph 247.

248. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies, and the Proofs of Claim tendered, as written documents, speak for themselves. Underwriters lack knowledge or sufficient information about the underlying claims to form a basis to evaluate claimant credibility, RCBO's potential liability, and potential damages since, for most tendered claims, only the complaints, Proof of Claim forms and perhaps some limited and incomplete perpetrator files have been provided. Underwriters also lack knowledge or sufficient information to determine whether RCBO had prior notice of certain alleged perpetrator's propensities to abuse minors, when RCBO first became aware of certain claims, and other information relevant to coverage. Underwriters deny any obligation to indemnify where there is no verdict or a reasonable settlement after sufficient information has been provided. Underwriters are not required to respond to speculation and legal conclusions in Paragraph 248. Underwriters deny any remaining allegations in Paragraph 248.

249. Underwriters admit that RCBO sent counsel for LMI a letter on or around May 30, 2024. Underwriters deny that Paragraph 249 fully, completely, and accurately describes the content of that letter, which as a written document, speaks for itself. Underwriters deny any remaining allegations in Paragraph 249.

250. Underwriters admit that counsel for LMI responded to RCBO's May 30, 2024 letter. Underwriters deny that Paragraph 250 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. Underwriters deny any remaining allegations in Paragraph 250.

251. Underwriters admit that counsel for LMI responded to the UCC's July 3, 2024 letter. Underwriters deny that Paragraph 251 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. Underwriters deny any remaining

allegations in Paragraph 251.

252. Underwriters are not required to respond to legal conclusions in Paragraph 252. Underwriters deny any remaining allegations in Paragraph 252.

253. Underwriters are not required to respond to legal conclusions in Paragraph 253. Underwriters deny any remaining allegations in Paragraph 253.

254. Underwriters are not required to respond to legal conclusions in Paragraph 254. Underwriters deny any remaining allegations in Paragraph 254.

255. Underwriters are not required to respond to legal conclusions in Paragraph 255. Underwriters deny that RCBO is entitled to the declaratory relief requested in Paragraph 255.

## **ELEVENTH CAUSE OF ACTION**

### **(Declaratory Relief Against Fidelidade – Excess)**

256. Fidelidade incorporates by reference and repeats the answers to Paragraphs 1 through 255 as though set forth fully herein.

257. Fidelidade admits 28 U.S.C. §2201 requires an actual controversy and that the statute speaks for itself. Fidelidade is not required to respond to legal conclusions in Paragraph 257.

258. Fidelidade is unable to answer the discordant allegations in Paragraph 258 that, on the one hand, assert "an actual and justiciable controversary exists between RCBO and Fidelidade with respect to whether Fidelidade is obligated to provide RCBO with *defense and indemnity*" of certain Suits, and, on the other hand, assert "RCBO alleges Fidelidade is obligated to provide RCBO with *indemnity*". Fidelidade denies any duty to defend under the LMI policies and also asserts the Suits for which RCBO seeks coverage have been stayed by the bankruptcy filing or, if released from the stay, are being defended by other insurers. Fidelidade also denies any obligation to indemnify since there has been no settlement or judgment in a Suit that potentially implicates the LMI policies. Fidelidade is not required to respond to any legal conclusions in Paragraph 258. Fidelidade denies the remaining allegation in Paragraph 258.

259. Fidelidade denies that Paragraph 259 fully, completely, and accurately describes the terms of the LMI policies, which as written documents, speak for themselves. Fidelidade is not required to respond to the legal conclusions in Paragraph 259. Fidelidade denies any remaining

allegations in Paragraph 259.

260. Fidelidade denies the allegations in Paragraph 260.

261. Fidelidade admits that RCBO provided LMI with some Proofs of Claim and some other information relating to certain sexual abuse claims. Fidelidade denies the remaining allegations in Paragraph 261.

262. Fidelidade admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Fidelidade is not required to respond to legal conclusions in Paragraph 262. Fidelidade denies any remaining allegations in Paragraph 262.

263. Fidelidade admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Fidelidade is not required to respond to legal conclusions in Paragraph 263. Fidelidade denies any remaining allegations in Paragraph 263.

264. Fidelidade admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Fidelidade is not required to respond to legal conclusions in Paragraph 264. Fidelidade denies any remaining allegations in Paragraph 264.

265. Fidelidade admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Fidelidade is not required to respond to legal conclusions in Paragraph 265. Fidelidade denies any remaining allegations in Paragraph 265.

266. Fidelidade admits it provided coverage position letters in response to claim tenders received from RCBO. Fidelidade also admits the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. Fidelidade is not required to respond to legal conclusions in Paragraph 266. Fidelidade denies any remaining allegations in Paragraph 266.

267. Fidelidade admits it provided coverage position letters in response to claim tenders received from RCBO. Fidelidade also admits the legal theories asserted in some of the Claims

include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. Fidelidade is not required to respond to legal conclusions in Paragraph 267. Fidelidade denies any remaining allegations in Paragraph 267.

268. Fidelidade admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies and the underlying policies, as written documents, speak for themselves. Fidelidade is not required to respond to legal conclusions in Paragraph 268. Fidelidade denies any remaining allegations in Paragraph 268.

269. Fidelidade admits some purported "Covered Claims" allege abuse during the periods of the LMI policies. Fidelidade denies that there is a purported "Covered Claim" with a settlement or verdict that exhausted the limits of the underlying policies. Fidelidade is not required to respond to speculation and legal conclusions in Paragraph 269. Fidelidade denies the remaining allegations in Paragraph 269.

270. Fidelidade admits the UCC sent a letter to counsel for LMI on or around July 3, 2024. Fidelidade denies that Paragraph 270 fully, completely, and accurately describes the contents of that letter, which as a written document, speaks for itself. Fidelidade lacks knowledge or sufficient information about the underlying policies and the verdicts and settlements referenced in Paragraph 270, to form a belief about the truth of any remaining allegations and, therefore, denies them. Fidelidade is not required to respond to speculation and legal conclusions in Paragraph 270. Fidelidade denies any remaining allegations in Paragraph 270.

271. Fidelidade admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies, and the Proofs of Claim tendered, as written documents, speak for themselves. Fidelidade lacks knowledge or sufficient information about the underlying claims to form a basis to evaluate claimant credibility, RCBO's potential liability, and potential damages since, for most tendered claims, only the complaints, Proof of Claim forms and perhaps some limited and incomplete perpetrator files have been provided. Fidelidade also lacks knowledge or sufficient information to determine whether RCBO had prior notice of certain alleged perpetrator's propensities to abuse minors, when RCBO first became aware of certain claims, and other information relevant to coverage. Fidelidade denies any obligation to indemnify

where there is no verdict or a reasonable settlement after sufficient information has been provided. Fidelidade is not required to respond to speculation and legal conclusions in Paragraph 271. Fidelidade denies any remaining allegations in Paragraph 271.

272. Fidelidade admits that RCBO sent counsel for LMI a letter on or around May 30, 2024. Fidelidade denies that Paragraph 272 fully, completely, and accurately describes the content of that letter, which as a written document, speaks for itself. Fidelidade denies any remaining allegations in Paragraph 272.

273. Fidelidade admits that counsel for LMI responded to RCBO's May 30, 2024 letter. Fidelidade denies that Paragraph 273 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. Fidelidade denies any remaining allegations in Paragraph 273.

274. Fidelidade admits that counsel for LMI responded to the UCC's July 3, 2024 letter. Fidelidade denies that Paragraph 274 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. Fidelidade denies any remaining allegations in Paragraph 274.

275. Fidelidade is not required to respond to legal conclusions in Paragraph 275. Fidelidade denies any remaining allegations in Paragraph 275.

276. Fidelidade is not required to respond to legal conclusions in Paragraph 276. Fidelidade denies any remaining allegations in Paragraph 276.

277. Fidelidade is not required to respond to legal conclusions in Paragraph 277. Fidelidade denies any remaining allegations in Paragraph 277.

278. Fidelidade is not required to respond to legal conclusions in Paragraph 278. Fidelidade denies that RCBO is entitled to the declaratory relief requested in Paragraph 278.

## TWELFTH CAUSE OF ACTION

**(Declaratory Relief Against Excess Insurance Co. – Excess)**

279. Excess incorporates by reference and repeats the answers to Paragraphs 1 through 278 as though set forth fully herein.

280. Excess admits 28 U.S.C. §2201 requires an actual controversy and that the statute

speaks for itself. Excess is not required to respond to legal conclusions in Paragraph 280.

281. Excess is unable to answer the discordant allegations in Paragraph 281 that, on the one hand, assert "an actual and justiciable controversary exists between RCBO and Excess Insurance Co. with respect to whether Excess is obligated to provide RCBO with *defense and indemnity*" of certain Suits, and, on the other hand, assert "RCBO alleges Excess Insurance Co. is obligated to provide RCBO with *indemnity*". Excess denies any duty to defend under the LMI policies and also asserts the Suits for which RCBO seeks coverage have been stayed by the bankruptcy filing or, if released from the stay, are being defended by other insurers. Excess also denies any obligation to indemnify since there has been no settlement or judgment in a Suit that potentially implicates the LMI policies. Excess is not required to respond to any legal conclusions in Paragraph 281. Excess denies the remaining allegation in Paragraph 281.

282. Excess denies that Paragraph 282 fully, completely, and accurately describes the terms of the LMI policies, which as written documents, speak for themselves. Excess is not required to respond to the legal conclusions in Paragraph 282. Excess denies any remaining allegations in Paragraph 282.

283. Excess denies the allegations in Paragraph 283.

284. Excess admits that RCBO provided LMI with some Proofs of Claim and some other information relating to certain sexual abuse claims. Excess denies the remaining allegations in Paragraph 284.

285. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 285. Excess denies any remaining allegations in Paragraph 285.

286. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 286. Excess denies any remaining allegations in Paragraph 286.

287. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 287. Excess denies any remaining allegations in Paragraph 287.

288. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 288. Excess denies any remaining allegations in Paragraph 288.

289. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. Excess also admits the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 289. Excess denies any remaining allegations in Paragraph 289.

290. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. Excess also admits the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 290. Excess denies any remaining allegations in Paragraph 290.

291. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies and the underlying policies, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 291. Excess denies any remaining allegations in Paragraph 291.

292. Excess admits some purported "Covered Claims" allege abuse during the periods of the LMI policies. Excess denies that there is a purported "Covered Claim" with a settlement or verdict that exhausted the limits of the underlying policies. Excess is not required to respond to speculation and legal conclusions in Paragraph 292. Excess denies the remaining allegations in Paragraph 292.

293. Excess admits the UCC sent a letter to counsel for LMI on or around July 3, 2024. Excess denies that Paragraph 293 fully, completely, and accurately describes the contents of that letter, which as a written document, speaks for itself. Excess lacks knowledge or sufficient information about the underlying policies and the verdicts and settlements referenced in Paragraph 293, to form a belief about the truth of any remaining allegations and, therefore, denies them. Excess is not required to respond to speculation and legal conclusions in Paragraph 293. Excess denies any remaining allegations in Paragraph 293.

294. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies, and the Proofs of Claim tendered, as written documents, speak for themselves. Excess lacks knowledge or sufficient information about the underlying claims to form a basis to evaluate claimant credibility, RCBO's potential liability, and potential damages since, for most tendered claims, only the complaints, Proof of Claim forms and perhaps some limited and incomplete perpetrator files have been provided. Excess also lacks knowledge or sufficient information to determine whether RCBO had prior notice of certain alleged perpetrator's propensities to abuse minors, when RCBO first became aware of certain claims, and other information relevant to coverage. Excess denies any obligation to indemnify where there is no verdict or a reasonable settlement after sufficient information has been provided. Excess is not required to respond to speculation and legal conclusions in Paragraph 294. Excess denies any remaining allegations in Paragraph 294.

295. Excess admits that RCBO sent counsel for LMI a letter on or around May 30, 2024. Excess denies that Paragraph 295 fully, completely, and accurately describes the content of that letter, which as a written document, speaks for itself. Excess denies any remaining allegations in Paragraph 295.

296. Excess admits that counsel for LMI responded to RCBO's May 30, 2024 letter. Excess denies that Paragraph 296 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. Excess denies any remaining allegations in Paragraph 296.

297. Excess admits that counsel for LMI responded to the UCC's July 3, 2024 letter.

Excess denies that Paragraph 297 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. Excess denies any remaining allegations in Paragraph 297.

298. Excess is not required to respond to legal conclusions in Paragraph 298. Excess denies any remaining allegations in Paragraph 298.

299. Excess is not required to respond to legal conclusions in Paragraph 299. Excess denies any remaining allegations in Paragraph 299.

300. Excess is not required to respond to legal conclusions in Paragraph 300. Excess denies that RCBO is entitled to the declaratory relief requested in Paragraph 300.

**THIRTEENTH CAUSE OF ACTION**

**(Declaratory Relief Against River Thames – Excess)**

301. River Thames incorporates by reference and repeats the answers to Paragraphs 1 through 300 as though set forth fully herein.

302. River Thames admits 28 U.S.C. §2201 requires an actual controversy and that the statute speaks for itself. River Thames is not required to respond to legal conclusions in Paragraph 302.

303. River Thames is unable to answer the discordant allegations in Paragraph 303 that, on the one hand, assert "an actual and justiciable controversary exists between RCBO and River Thames with respect to whether River Thames is obligated to provide RCBO with *defense and indemnity*" of certain Suits, and, on the other hand, assert "RCBO alleges River Thames is obligated to provide RCBO with *indemnity*". River Thames denies any duty to defend under the LMI policies and also asserts the Suits for which RCBO seeks coverage have been stayed by the bankruptcy filing or, if released from the stay, are being defended by other insurers. River Thames also denies any obligation to indemnify since there has been no settlement or judgment in a Suit that potentially implicates the LMI policies. River Thames is not required to respond to any legal conclusions in Paragraph 303. River Thames denies the remaining allegation in Paragraph 303.

304. River Thames denies that Paragraph 304 fully, completely, and accurately describes the terms of the LMI policies, which as written documents, speak for themselves. River Thames is

not required to respond to the legal conclusions in Paragraph 304. River Thames denies any remaining allegations in Paragraph 304.

305. River Thames denies the allegations in Paragraph 305.

306. River Thames admits that RCBO provided LMI with some Proofs of Claim and some other information relating to certain sexual abuse claims. River Thames denies the remaining allegations in Paragraph 306.

307. River Thames admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. River Thames is not required to respond to legal conclusions in Paragraph 307. River Thames denies any remaining allegations in Paragraph 307.

308. River Thames admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. River Thames is not required to respond to legal conclusions in Paragraph 308. River Thames denies any remaining allegations in Paragraph 308.

309. River Thames admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. River Thames is not required to respond to legal conclusions in Paragraph 309. River Thames denies any remaining allegations in Paragraph 309.

310. River Thames admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. River Thames is not required to respond to legal conclusions in Paragraph 310. River Thames denies any remaining allegations in Paragraph 310.

311. River Thames admits it provided coverage position letters in response to claim tenders received from RCBO. River Thames also admits the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. River Thames is not required to respond to legal conclusions in Paragraph 311. River Thames denies any remaining allegations in Paragraph 311.

312. River Thames admits it provided coverage position letters in response to claim

tenders received from RCBO. River Thames also admits the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. River Thames is not required to respond to legal conclusions in Paragraph 312. River Thames denies any remaining allegations in Paragraph 312.

313. River Thames admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies and the underlying policies, as written documents, speak for themselves. River Thames is not required to respond to legal conclusions in Paragraph 313. River Thames denies any remaining allegations in Paragraph 313.

314. River Thames admits some purported "Covered Claims" allege abuse during the periods of the LMI policies. River Thames denies that there is a purported "Covered Claim" with a settlement or verdict that exhausted the limits of the underlying policies. River Thames is not required to respond to speculation and legal conclusions in Paragraph 314. River Thames denies the remaining allegations in Paragraph 314.

315. River Thames admits the UCC sent a letter to counsel for LMI on or around July 3, 2024. River Thames denies that Paragraph 315 fully, completely, and accurately describes the contents of that letter, which as a written document, speaks for itself. River Thames lacks knowledge or sufficient information about the underlying policies and the verdicts and settlements referenced in Paragraph 315, to form a belief about the truth of any remaining allegations and, therefore, denies them. River Thames is not required to respond to speculation and legal conclusions in Paragraph 315. River Thames denies any remaining allegations in Paragraph 315.

316. River Thames admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies, and the Proofs of Claim tendered, as written documents, speak for themselves. River Thames lacks knowledge or sufficient information about the underlying claims to form a basis to evaluate claimant credibility, RCBO's potential liability, and potential damages since, for most tendered claims, only the complaints, Proof of Claim forms and perhaps some limited and incomplete perpetrator files have been provided. River Thames also lacks knowledge or sufficient information to determine whether RCBO had prior notice of certain alleged perpetrator's propensities to abuse minors, when RCBO first became aware of

certain claims, and other information relevant to coverage. River Thames denies any obligation to indemnify where there is no verdict or a reasonable settlement after sufficient information has been provided. River Thames is not required to respond to speculation and legal conclusions in Paragraph 316. River Thames denies any remaining allegations in Paragraph 316.

317. River Thames admits that RCBO sent counsel for LMI a letter on or around May 30, 2024. River Thames denies that Paragraph 317 fully, completely, and accurately describes the content of that letter, which as a written document, speaks for itself. River Thames denies any remaining allegations in Paragraph 317.

318. River Thames admits that counsel for LMI responded to RCBO's May 30, 2024 letter. River Thames denies that Paragraph 318 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. River Thames denies any remaining allegations in Paragraph 318.

319. River Thames admits that counsel for LMI responded to the UCC's July 3, 2024 letter. River Thames denies that Paragraph 319 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. River Thames denies any remaining allegations in Paragraph 319.

320. River Thames is not required to respond to legal conclusions in Paragraph 320. River Thames denies any remaining allegations in Paragraph 320.

321. River Thames is not required to respond to legal conclusions in Paragraph 321. River Thames denies any remaining allegations in Paragraph 321.

322. River Thames is not required to respond to legal conclusions in Paragraph 322. River Thames denies that RCBO is entitled to the declaratory relief requested in Paragraph 322.

## FOURTEENTH CAUSE OF ACTION

### (Declaratory Relief Against World Auxiliary – Excess)

323. World Auxiliary incorporates by reference and repeats the answers to Paragraphs 1 through 322 as though set forth fully herein.

324. World Auxiliary admits 28 U.S.C. §2201 requires an actual controversy and that the statute speaks for itself. World Auxiliary is not required to respond to legal conclusions in Paragraph

324.

325. World Auxiliary is unable to answer the discordant allegations in Paragraph 325 that, on the one hand, assert "an actual and justiciable controversary exists between RCBO and World Auxiliary with respect to whether World Auxiliary is obligated to provide RCBO with *defense and indemnity*" of certain Suits, and, on the other hand, assert "RCBO alleges World Auxiliary is obligated to provide RCBO with *indemnity*". World Auxiliary denies any duty to defend under the LMI policies and also asserts the Suits for which RCBO seeks coverage have been stayed by the bankruptcy filing or, if released from the stay, are being defended by other insurers. World Auxiliary also denies any obligation to indemnify since there has been no settlement or judgment in a Suit that potentially implicates the LMI policies. World Auxiliary is not required to respond to any legal conclusions in Paragraph 325. World Auxiliary denies the remaining allegation in Paragraph 325.

326. World Auxiliary denies that Paragraph 326 fully, completely, and accurately describes the terms of the LMI policies, which as written documents, speak for themselves. World Auxiliary is not required to respond to the legal conclusions in Paragraph 326. World Auxiliary denies any remaining allegations in Paragraph 326.

327. World Auxiliary denies the allegations in Paragraph 327.

328. World Auxiliary admits that RCBO provided LMI with some Proofs of Claim and some other information relating to certain sexual abuse claims. World Auxiliary denies the remaining allegations in Paragraph 328.

329. World Auxiliary admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. World Auxiliary is not required to respond to legal conclusions in Paragraph 329. World Auxiliary denies any remaining allegations in Paragraph 329.

330. World Auxiliary admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. World Auxiliary is not required to respond to legal conclusions in Paragraph 330. World Auxiliary denies any remaining allegations in Paragraph 330.

331. World Auxiliary admits it provided coverage position letters in response to claim

tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. World Auxiliary is not required to respond to legal conclusions in Paragraph 331. World Auxiliary denies any remaining allegations in Paragraph 331.

332. World Auxiliary admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. World Auxiliary is not required to respond to legal conclusions in Paragraph 332. World Auxiliary denies any remaining allegations in Paragraph 332.

333. World Auxiliary admits it provided coverage position letters in response to claim tenders received from RCBO. World Auxiliary also admits the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. World Auxiliary is not required to respond to legal conclusions in Paragraph 333. World Auxiliary denies any remaining allegations in Paragraph 333.

334. World Auxiliary admits it provided coverage position letters in response to claim tenders received from RCBO. World Auxiliary also admits the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. World Auxiliary is not required to respond to legal conclusions in Paragraph 334. World Auxiliary denies any remaining allegations in Paragraph 334.

335. World Auxiliary admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies and the underlying policies, as written documents, speak for themselves. World Auxiliary is not required to respond to legal conclusions in Paragraph 335. World Auxiliary denies any remaining allegations in Paragraph 335.

336. World Auxiliary admits some purported "Covered Claims" allege abuse during the periods of the LMI policies. World Auxiliary denies that there is a purported "Covered Claim" with a settlement or verdict that exhausted the limits of the underlying policies. World Auxiliary is not required to respond to speculation and legal conclusions in Paragraph 336. World Auxiliary denies the remaining allegations in Paragraph 336.

337. World Auxiliary admits the UCC sent a letter to counsel for LMI on or around July 3, 2024. World Auxiliary denies that Paragraph 337 fully, completely, and accurately describes the

contents of that letter, which as a written document, speaks for itself. World Auxiliary lacks knowledge or sufficient information about the underlying policies and the verdicts and settlements referenced in Paragraph 337, to form a belief about the truth of any remaining allegations and, therefore, denies them. World Auxiliary is not required to respond to speculation and legal conclusions in Paragraph 337. World Auxiliary denies any remaining allegations in Paragraph 337.

338. World Auxiliary admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies, and the Proofs of Claim tendered, as written documents, speak for themselves. World Auxiliary lacks knowledge or sufficient information about the underlying claims to form a basis to evaluate claimant credibility, RCBO's potential liability, and potential damages since, for most tendered claims, only the complaints, Proof of Claim forms and perhaps some limited and incomplete perpetrator files have been provided. World Auxiliary also lacks knowledge or sufficient information to determine whether RCBO had prior notice of certain alleged perpetrator's propensities to abuse minors, when RCBO first became aware of certain claims, and other information relevant to coverage. World Auxiliary denies any obligation to indemnify where there is no verdict or a reasonable settlement after sufficient information has been provided. World Auxiliary is not required to respond to speculation and legal conclusions in Paragraph 338. World Auxiliary denies any remaining allegations in Paragraph 338.

339. World Auxiliary admits that RCBO sent counsel for LMI a letter on or around May 30, 2024. World Auxiliary denies that Paragraph 339 fully, completely, and accurately describes the content of that letter, which as a written document, speaks for itself. World Auxiliary denies any remaining allegations in Paragraph 339.

340. World Auxiliary admits that counsel for LMI responded to RCBO's May 30, 2024 letter. World Auxiliary denies that Paragraph 340 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. World Auxiliary denies any remaining allegations in Paragraph 340.

341. World Auxiliary admits that counsel for LMI responded to the UCC's July 3, 2024 letter. World Auxiliary denies that Paragraph 341 fully, completely, and accurately describes the

contents of that response, which as a written document, speaks for itself. World Auxiliary denies any remaining allegations in Paragraph 341.

342. World Auxiliary is not required to respond to legal conclusions in Paragraph 342. World Auxiliary denies any remaining allegations in Paragraph 342.

343. World Auxiliary is not required to respond to legal conclusions in Paragraph 343. World Auxiliary denies any remaining allegations in Paragraph 343.

344. World Auxiliary is not required to respond to legal conclusions in Paragraph 344. World Auxiliary denies that RCBO is entitled to the declaratory relief requested in Paragraph 344.

## FIFTEENTH CAUSE OF ACTION

**(Declaratory Relief Against Dominion – Excess)**

345. Dominion incorporates by reference and repeats the answers to Paragraphs 1 through 344 as though set forth fully herein.

346. Dominion admits 28 U.S.C. §2201 requires an actual controversy and that the statute speaks for itself. Dominion is not required to respond to legal conclusions in Paragraph 346.

347. Dominion is unable to answer the discordant allegations in Paragraph 347 that, on the one hand, assert "an actual and justiciable controversary exists between RCBO and Dominion with respect to whether Dominion is obligated to provide RCBO with *defense and indemnity*" of certain Suits, and, on the other hand, assert "RCBO alleges Dominion is obligated to provide RCBO with *indemnity*". Dominion denies any duty to defend under the LMI policies and also asserts the Suits for which RCBO seeks coverage have been stayed by the bankruptcy filing or, if released from the stay, are being defended by other insurers. Dominion also denies any obligation to indemnify since there has been no settlement or judgment in a Suit that potentially implicates the LMI policies. Dominion is not required to respond to any legal conclusions in Paragraph 347. Dominion denies the remaining allegation in Paragraph 347.

348. Dominion denies that Paragraph 348 fully, completely, and accurately describes the terms of the LMI policies, which as written documents, speak for themselves. Dominion is not required to respond to the legal conclusions in Paragraph 348. Dominion denies any remaining allegations in Paragraph 348.

349. Dominion denies the allegations in Paragraph 349.

350. Dominion admits that RCBO provided LMI with some Proofs of Claim and some other information relating to certain sexual abuse claims. Dominion denies the remaining allegations in Paragraph 350.

351. Dominion admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Dominion is not required to respond to legal conclusions in Paragraph 351. Dominion denies any remaining allegations in Paragraph 351.

352. Dominion admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Dominion is not required to respond to legal conclusions in Paragraph 352. Dominion denies any remaining allegations in Paragraph 352.

353. Dominion admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Dominion is not required to respond to legal conclusions in Paragraph 353. Dominion denies any remaining allegations in Paragraph 353.

354. Dominion admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Dominion is not required to respond to legal conclusions in Paragraph 354. Dominion denies any remaining allegations in Paragraph 354.

355. Dominion admits it provided coverage position letters in response to claim tenders received from RCBO. Dominion also admits the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. Dominion is not required to respond to legal conclusions in Paragraph 355. Dominion denies any remaining allegations in Paragraph 355.

356. Dominion admits it provided coverage position letters in response to claim tenders received from RCBO. Dominion also admits the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written

documents, speak for themselves. Dominion is not required to respond to legal conclusions in Paragraph 356. Dominion denies any remaining allegations in Paragraph 356.

357. Dominion admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies and the underlying policies, as written documents, speak for themselves. Dominion is not required to respond to legal conclusions in Paragraph 357. Dominion denies any remaining allegations in Paragraph 357.

358. Dominion admits some purported "Covered Claims" allege abuse during the periods of the LMI policies. Dominion denies that there is a purported "Covered Claim" with a settlement or verdict that exhausted the limits of the underlying policies. Dominion is not required to respond to speculation and legal conclusions in Paragraph 358. Dominion denies the remaining allegations in Paragraph 358.

359. Dominion admits the UCC sent a letter to counsel for LMI on or around July 3, 2024. Dominion denies that Paragraph 359 fully, completely, and accurately describes the contents of that letter, which as a written document, speaks for itself. Dominion lacks knowledge or sufficient information about the underlying policies and the verdicts and settlements referenced in Paragraph 359, to form a belief about the truth of any remaining allegations and, therefore, denies them. Dominion is not required to respond to speculation and legal conclusions in Paragraph 359. Dominion denies any remaining allegations in Paragraph 359.

360. Dominion admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies, and the Proofs of Claim tendered, as written documents, speak for themselves. Dominion lacks knowledge or sufficient information about the underlying claims to form a basis to evaluate claimant credibility, RCBO's potential liability, and potential damages since, for most tendered claims, only the complaints, Proof of Claim forms and perhaps some limited and incomplete perpetrator files have been provided. Dominion also lacks knowledge or sufficient information to determine whether RCBO had prior notice of certain alleged perpetrator's propensities to abuse minors, when RCBO first became aware of certain claims, and other information relevant to coverage. Dominion denies any obligation to indemnify where there is no verdict or a reasonable settlement after sufficient information has been provided.

Dominion is not required to respond to speculation and legal conclusions in Paragraph 360. Dominion denies any remaining allegations in Paragraph 360.

361. Dominion admits that RCBO sent counsel for LMI a letter on or around May 30, 2024. Dominion denies that Paragraph 361 fully, completely, and accurately describes the content of that letter, which as a written document, speaks for itself. Dominion denies any remaining allegations in Paragraph 361.

362. Dominion admits that counsel for LMI responded to RCBO's May 30, 2024 letter. Dominion denies that Paragraph 362 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. Dominion denies any remaining allegations in Paragraph 362.

363. Dominion admits that counsel for LMI responded to the UCC's July 3, 2024 letter. Dominion denies that Paragraph 363 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. Dominion denies any remaining allegations in Paragraph 363.

364. Dominion is not required to respond to legal conclusions in Paragraph 364. Dominion denies any remaining allegations in Paragraph 364.

365. Dominion is not required to respond to legal conclusions in Paragraph 365. Dominion denies any remaining allegations in Paragraph 365.

366. Dominion is not required to respond to legal conclusions in Paragraph 366. Dominion denies that RCBO is entitled to the declaratory relief requested in Paragraph 366.

## SIXTEENTH CAUSE OF ACTION

**(Declaratory Relief Against English & American – Excess)**

367–388. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

## SEVENTEENTH CAUSE OF ACTION

**(Declaratory Relief Against Westport – Umbrella)**

389–411. This cause of action is directed to other Defendants and LMI do not need to answer.

To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**EIGHTEENTH CAUSE OF ACTION**

**(Declaratory Relief Against Travelers – Umbrella)**

412–433. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**NINETEENTH CAUSE OF ACTION**

**(Declaratory Relief Against Pacific Employers – Umbrella)**

434–457. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**TWENTIETH CAUSE OF ACTION**

**(Declaratory Relief Against Lloyd's – Umbrella)**

458. Underwriters incorporate by reference and repeat the answers to Paragraphs 1 through 457 as though set forth fully herein.

459. Underwriters admit 28 U.S.C. §2201 requires an actual controversy and that the statute speaks for itself. Underwriters are not required to respond to legal conclusions in Paragraph 459.

460. Underwriters are unable to answer the discordant allegations in Paragraph 460 that, on the one hand, assert "an actual and justiciable controversary exists between RCBO and Lloyd's Umbrella with respect to whether Lloyd's Umbrella is obligated to provide RCBO with *defense and indemnity*" of certain Suits, and, on the other hand, assert "RCBO alleges Lloyd's Umbrella is obligated to provide RCBO with *indemnity*". Underwriters deny any duty to defend under the LMI policies and also assert the Suits for which RCBO seeks coverage have been stayed by the bankruptcy filing or, if released from the stay, are being defended by other insurers. Underwriters also deny any obligation to indemnify since there has been no settlement or judgment in a Suit that potentially implicates the LMI policies. Underwriters are not required to respond to any legal

conclusions in Paragraph 460. Underwriters deny the remaining allegation in Paragraph 460.

461. Underwriters deny that Paragraph 461 fully, completely, and accurately describes the terms of the LMI policies, which as written documents, speak for themselves. Underwriters are not required to respond to the legal conclusions in Paragraph 461. Underwriters deny any remaining allegations in Paragraph 461.

462. Underwriters deny the allegations in Paragraph 462.

463. Underwriters admit that RCBO provided LMI with some Proofs of Claim and some other information relating to certain sexual abuse claims. Underwriters deny the remaining allegations in Paragraph 463.

464. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 464. Underwriters deny any remaining allegations in Paragraph 464.

465. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 465. Underwriters deny any remaining allegations in Paragraph 465.

466. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 466. Underwriters deny any remaining allegations in Paragraph 466.

467. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LM Policies, as written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 467. Underwriters deny any remaining allegations in Paragraph 467.

468. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. Underwriters also admit the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as

written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 468. Underwriters deny any remaining allegations in Paragraph 468.

469. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. Underwriters also admit the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 469. Underwriters deny any remaining allegations in Paragraph 469.

470. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies and the underlying policies, as written documents, speak for themselves. Underwriters are not required to respond to legal conclusions in Paragraph 470. Underwriters deny any remaining allegations in Paragraph 470.

471. Underwriters admit some purported “Covered Claims” allege abuse during the periods of the LMI policies. Underwriters deny that there is a purported “Covered Claim” with a settlement or verdict that exhausted the limits of the underlying policies. Underwriters are not required to respond to speculation and legal conclusions in Paragraph 471. Underwriters deny the remaining allegations in Paragraph 471.

472. Underwriters admit the UCC sent a letter to counsel for LMI on or around July 3, 2024. Underwriters deny that Paragraph 472 fully, completely, and accurately describes the contents of that letter, which as a written document, speaks for itself. Underwriters lack knowledge or sufficient information about the underlying policies and the verdicts and settlements referenced in Paragraph 472, to form a belief about the truth of any remaining allegations and, therefore, deny them. Underwriters are not required to respond to speculation and legal conclusions in Paragraph 472. Underwriters deny any remaining allegations in Paragraph 472.

473. Underwriters admit they provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies, and the Proofs of Claim tendered, as written documents, speak for themselves. Underwriters lack knowledge or sufficient information about the underlying claims to form a basis to evaluate claimant credibility, RCBO’s potential liability, and potential damages since, for most tendered claims, only the complaints, Proof

of Claim forms and perhaps some limited and incomplete perpetrator files have been provided. Underwriters also lack knowledge or sufficient information to determine whether RCBO had prior notice of certain alleged perpetrator's propensities to abuse minors, when RCBO first became aware of certain claims, and other information relevant to coverage. Underwriters deny any obligation to indemnify where there is no verdict or a reasonable settlement after sufficient information has been provided. Underwriters are not required to respond to speculation and legal conclusions in Paragraph 473. Underwriters deny any remaining allegations in Paragraph 473.

474. Underwriters admit that RCBO sent counsel for LMI a letter on or around May 30, 2024. Underwriters deny that Paragraph 474 fully, completely, and accurately describes the content of that letter, which as a written document, speaks for itself. Underwriters deny any remaining allegations in Paragraph 474.

475. Underwriters admit that counsel for LMI responded to RCBO's May 30, 2024 letter. Underwriters deny that Paragraph 475 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. Underwriters deny any remaining allegations in Paragraph 475.

476. Underwriters admit that counsel for LMI responded to the UCC's July 3, 2024 letter. Underwriters deny that Paragraph 476 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. Underwriters deny any remaining allegations in Paragraph 476.

477. Underwriters are not required to respond to legal conclusions in Paragraph 477. Underwriters deny any remaining allegations in Paragraph 477.

478. Underwriters are not required to respond to legal conclusions in Paragraph 478. Underwriters deny any remaining allegations in Paragraph 478.

479. Underwriters are not required to respond to legal conclusions in Paragraph 479. Underwriters deny any remaining allegations in Paragraph 479.

480. Underwriters are not required to respond to legal conclusions in Paragraph 480. Underwriters deny that RCBO is entitled to the declaratory relief requested in Paragraph 480.

## TWENTY-FIRST CAUSE OF ACTION

**(Declaratory Relief Against Anglo French – Umbrella)**

481. Anglo French incorporates by reference and repeats the answers to Paragraphs 1 through 480 as though set forth fully herein.

482. Anglo French admits 28 U.S.C. §2201 requires an actual controversy and that the statute speaks for itself. Anglo French is not required to respond to legal conclusions in Paragraph 482.

483. Anglo French is unable to answer the discordant allegations in Paragraph 483 that, on the one hand, assert "an actual and justiciable controversary exists between RCBO and Anglo French with respect to whether Anglo French Umbrella is obligated to provide RCBO with *defense and indemnity*" of certain Suits, and, on the other hand, assert "RCBO alleges Anglo French Umbrella is obligated to provide RCBO with *indemnity*". Anglo French denies any duty to defend under the LMI policies and also assert the Suits for which RCBO seeks coverage have been stayed by the bankruptcy filing or, if released from the stay, are being defended by other insurers. Anglo French also denies any obligation to indemnify since there has been no settlement or judgment in a Suit that potentially implicates the LMI policies. Anglo French is not required to respond to any legal conclusions in Paragraph 483. Anglo French denies the remaining allegation in Paragraph 483.

484. Anglo French denies that Paragraph 484 fully, completely, and accurately describes the terms of the LMI policies, which as written documents, speak for themselves. Anglo French is not required to respond to the legal conclusions in Paragraph 484. Anglo French denies any remaining allegations in Paragraph 484.

485. Anglo French denies the allegations in Paragraph 485.

486. Anglo French admits that RCBO provided LMI with some Proofs of Claim and some other information relating to certain sexual abuse claims. Anglo French denies the remaining allegations in Paragraph 486.

487. Anglo French admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Anglo French is not required to respond to legal conclusions in Paragraph 487. Anglo French denies any remaining allegations in Paragraph 487.

488. Anglo French admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Anglo French is not required to respond to legal conclusions in Paragraph 488. Anglo French denies any remaining allegations in Paragraph 488.

489. Anglo French admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Anglo French is not required to respond to legal conclusions in Paragraph 489. Anglo French denies any remaining allegations in Paragraph 489.

490. Anglo French admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LM Policies, as written documents, speak for themselves. Anglo French is not required to respond to legal conclusions in Paragraph 490. Anglo French denies any remaining allegations in Paragraph 490.

491. Anglo French admits it provided coverage position letters in response to claim tenders received from RCBO. Anglo French also admits the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. Anglo French is not required to respond to legal conclusions in Paragraph 491. Anglo French denies any remaining allegations in Paragraph 491.

492. Anglo French admits it provided coverage position letters in response to claim tenders received from RCBO. Anglo French also admits the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. Anglo French is not required to respond to legal conclusions in Paragraph 492. Anglo French denies any remaining allegations in Paragraph 492.

493. Anglo French admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies and the underlying policies, as written documents, speak for themselves. Anglo French is not required to respond to legal conclusions in Paragraph 493. Anglo French denies any remaining allegations in Paragraph 493.

494. Anglo French admits some purported "Covered Claims" allege abuse during the periods of the LMI policies. Anglo French denies that there is a purported "Covered Claim" with a

settlement or verdict that exhausted the limits of the underlying policies. Anglo French is not required to respond to speculation and legal conclusions in Paragraph 494. Anglo French denies the remaining allegations in Paragraph 494.

495. Anglo French admits the UCC sent a letter to counsel for LMI on or around July 3, 2024. Anglo French denies that Paragraph 495 fully, completely, and accurately describes the contents of that letter, which as a written document, speaks for itself. Anglo French lacks knowledge or sufficient information about the underlying policies and the verdicts and settlements referenced in Paragraph 495, to form a belief about the truth of any remaining allegations and, therefore, denies them. Anglo French is not required to respond to speculation and legal conclusions in Paragraph 495. Anglo French denies any remaining allegations in Paragraph 495.

496. Anglo French admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies, and the Proofs of Claim tendered, as written documents, speak for themselves. Anglo French lacks knowledge or sufficient information about the underlying claims to form a basis to evaluate claimant credibility, RCBO's potential liability, and potential damages since, for most tendered claims, only the complaints, Proof of Claim forms and perhaps some limited and incomplete perpetrator files have been provided. Anglo French also lacks knowledge or sufficient information to determine whether RCBO had prior notice of certain alleged perpetrator's propensities to abuse minors, when RCBO first became aware of certain claims, and other information relevant to coverage. Anglo French denies any obligation to indemnify where there is no verdict or a reasonable settlement after sufficient information has been provided. Anglo French is not required to respond to speculation and legal conclusions in Paragraph 496. Anglo French denies any remaining allegations in Paragraph 496.

497. Anglo French admits that RCBO sent counsel for LMI a letter on or around May 30, 2024. Anglo French denies that Paragraph 497 fully, completely, and accurately describes the content of that letter, which as a written document, speaks for itself. Anglo French denies any remaining allegations in Paragraph 497.

498. Anglo French admits that counsel for LMI responded to RCBO's May 30, 2024 letter. Anglo French denies that Paragraph 498 fully, completely, and accurately describes the

contents of that response, which as a written document, speaks for itself. Anglo French denies any remaining allegations in Paragraph 498.

499. Anglo French admits that counsel for LMI responded to the UCC's July 3, 2024 letter. Anglo French denies that Paragraph 499 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. Anglo French denies any remaining allegations in Paragraph 499.

500. Anglo French is not required to respond to legal conclusions in Paragraph 500. Anglo French denies any remaining allegations in Paragraph 500.

501. Anglo French is not required to respond to legal conclusions in Paragraph 501. Anglo French denies any remaining allegations in Paragraph 501.

502. Anglo French is not required to respond to legal conclusions in Paragraph 502. Anglo French denies any remaining allegations in Paragraph 502.

503. Anglo French is not required to respond to legal conclusions in Paragraph 503. Anglo French denies that RCBO is entitled to the declaratory relief requested in Paragraph 503.

## TWENTY-SECOND CAUSE OF ACTION

**(Declaratory Relief Against Excess Insurance Co. –Umbrella)**

504. Excess incorporates by reference and repeats the answers to Paragraphs 1 through 503 as though set forth fully herein.

505. Excess admits 28 U.S.C. §2201 requires an actual controversy and that the statute speaks for itself. Excess is not required to respond to legal conclusions in Paragraph 505.

506. Excess is unable to answer the discordant allegations in Paragraph 506 that, on the one hand, assert "an actual and justiciable controversary exists between RCBO and Excess Insurance Co. Umbrella with respect to whether Excess Insurance Co. Umbrella is obligated to provide RCBO with *defense and indemnity*" of certain Suits, and, on the other hand, assert "RCBO alleges Excess Insurance Co. Umbrella is obligated to provide RCBO with *indemnity*". Excess denies any duty to defend under the LMI policies and also assert the Suits for which RCBO seeks coverage have been stayed by the bankruptcy filing or, if released from the stay, are being defended by other insurers. Excess also denies any obligation to indemnify since there has been no settlement

or judgment in a Suit that potentially implicates the LMI policies. Excess is not required to respond to any legal conclusions in Paragraph 506. Excess denies the remaining allegation in Paragraph 506.

507. Excess denies that Paragraph 507 fully, completely, and accurately describes the terms of the LMI policies, which as written documents, speak for themselves. Excess is not required to respond to the legal conclusions in Paragraph 507. Excess denies any remaining allegations in Paragraph 507.

508. Excess denies the allegations in Paragraph 508.

509. Excess admits that RCBO provided LMI with some Proofs of Claim and some other information relating to certain sexual abuse claims. Excess denies the remaining allegations in Paragraph 509.

510. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 510. Excess denies any remaining allegations in Paragraph 510.

511. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 511. Excess denies any remaining allegations in Paragraph 511.

512. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LMI policies, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 512. Excess denies any remaining allegations in Paragraph 512.

513. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters and LM Policies, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 513. Excess denies any remaining allegations in Paragraph 513.

514. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. Excess also admits the legal theories asserted in some of the Claims include

negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 514. Excess denies any remaining allegations in Paragraph 514.

515. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. Excess also admits the legal theories asserted in some of the Claims include negligence. The coverage letters, the LMI policies, and the Proofs of Claim, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 515. Excess denies any remaining allegations in Paragraph 515.

516. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies and the underlying policies, as written documents, speak for themselves. Excess is not required to respond to legal conclusions in Paragraph 516. Excess denies any remaining allegations in Paragraph 516.

517. Excess admits some purported “Covered Claims” allege abuse during the periods of the LMI policies. Excess denies that there is a purported “Covered Claim” with a settlement or verdict that exhausted the limits of the underlying policies. Excess is not required to respond to speculation and legal conclusions in Paragraph 517. Excess denies the remaining allegations in Paragraph 517.

518. Excess admits the UCC sent a letter to counsel for LMI on or around July 3, 2024. Excess denies that Paragraph 518 fully, completely, and accurately describes the contents of that letter, which as a written document, speaks for itself. Excess lacks knowledge or sufficient information about the underlying policies and the verdicts and settlements referenced in Paragraph 518, to form a belief about the truth of any remaining allegations and, therefore, denies them. Excess is not required to respond to speculation and legal conclusions in Paragraph 518. Excess denies any remaining allegations in Paragraph 518.

519. Excess admits it provided coverage position letters in response to claim tenders received from RCBO. The coverage letters, the LMI policies, and the Proofs of Claim tendered, as written documents, speak for themselves. Excess lacks knowledge or sufficient information about the underlying claims to form a basis to evaluate claimant credibility, RCBO’s potential liability,

and potential damages since, for most tendered claims, only the complaints, Proof of Claim forms and perhaps some limited and incomplete perpetrator files have been provided. Excess also lacks knowledge or sufficient information to determine whether RCBO had prior notice of certain alleged perpetrator's propensities to abuse minors, when RCBO first became aware of certain claims, and other information relevant to coverage. Excess denies any obligation to indemnify where there is no verdict or a reasonable settlement after sufficient information has been provided. Excess is not required to respond to speculation and legal conclusions in Paragraph 519. Excess denies any remaining allegations in Paragraph 519.

520. Excess admits that RCBO sent counsel for LMI a letter on or around May 30, 2024. Excess denies that Paragraph 520 fully, completely, and accurately describes the content of that letter, which as a written document, speaks for itself. Excess denies any remaining allegations in Paragraph 520.

521. Excess admits that counsel for LMI responded to RCBO's May 30, 2024 letter. Excess denies that Paragraph 521 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. Excess denies any remaining allegations in Paragraph 521.

522. Excess admits that counsel for LMI responded to the UCC's July 3, 2024 letter. Excess denies that Paragraph 522 fully, completely, and accurately describes the contents of that response, which as a written document, speaks for itself. Excess denies any remaining allegations in Paragraph 522.

523. Excess is not required to respond to legal conclusions in Paragraph 523. Excess denies any remaining allegations in Paragraph 523.

524. Excess is not required to respond to legal conclusions in Paragraph 524. Excess denies any remaining allegations in Paragraph 524.

525. Excess is not required to respond to legal conclusions in Paragraph 525. Excess denies any remaining allegations in Paragraph 525.

526. Excess is not required to respond to legal conclusions in Paragraph 526. Excess denies that RCBO is entitled to the declaratory relief requested in Paragraph 526.

**TWENTY-THIRD CAUSE OF ACTION**

**(Declaratory Relief Against English & American – Umbrella)**

527–549. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**TWENTY-FOURTH CAUSE OF ACTION**

**(Declaratory Relief Against Orion – Umbrella)**

550–572. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**TWENTY-FIFTH CAUSE OF ACTION**

**(Declaratory Relief Against London & Overseas – Umbrella)**

573–595. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**TWENTY-SIXTH CAUSE OF ACTION**

**(Breach of Statutory Duty Against CIGA)**

596–606. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**TWENTY-SEVENTH CAUSE OF ACTION**

**(Declaratory Relief Against American Home Assurance Co.)**

607–630. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**TWENTY-EIGHTH CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Insurer Defendants)**

631–640. LMI state that the causes of action for breach of the implied covenant of good faith and fair dealing against them were dismissed by the Court pursuant to its Order dated September 17, 2026 [Dkt. No. 329]. Accordingly, LMI are not required to respond to allegations in Paragraphs 631 to 640 that are directed to them. To the extent there are allegations in Paragraphs 631 to 640 that are directed to others, LMI lack knowledge or information sufficient to form a belief about the truth of those allegations and, therefore, deny them.

**TWENTY-NINTH CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Chubb)**

641–648. This cause of action is directed to other Defendants and LMI do not need to answer. To the extent an answer is required, LMI lack knowledge or information sufficient to form a belief about the truth of the allegations in these Paragraphs and, therefore, deny them.

**PRAYER FOR RELIEF**

LMI are not required to respond to the Prayer for Relief. If and to the extent the Prayer for Relief requires a response, LMI deny that RCBO is entitled to the declarations, defense, indemnity, judgments, compensatory and consequential damages, interest, costs, expenses, fees, and other relief that it is seeking from or against them. LMI pray that this Court instead grant judgment in their favor and against RCBO and grant other relief to LMI as the Court deems just and proper.

**JURY DEMAND**

LMI are not required to respond to RCBO's Request for a Jury Demand. To the extent a response is required, LMI deny the allegation.

**DENIAL ABSENT EXPRESS ADMISSION**

LMI deny each and every allegation in the RCBO Sixth Amended Complaint that they have not heretofore answered, addressed, or controverted.

**AFFIRMATIVE DEFENSES**

FURTHER ANSWERING the Sixth Amended Complaint, and without admitting any allegation that LMI previously denied, and without accepting or assuming any burden of proof that is properly the burden of proof of RCBO, and without waiving their right to assert other defenses as

additional information and discovery become available, LMI assert the following Affirmative Defenses:

**<u>First Affirmative Defense</u>**

**(Failure to State a Claim)**

RCBO fails to state a claim upon which relief can be granted.

**<u>Second Affirmative Defense</u>**

**(Failure to Prove Existence and Terms of All Policies)**

RCBO's claims are barred to the extent that it does not satisfy its burden of proving the existence of an insurance policy, all material terms of an insurance policy, and that LMI owe and/or breached a duty to pay insurance benefits under the material terms of an insurance policy.

**<u>Third Affirmative Defense</u>**

**(The Obligations of LMI Are Several, Not Joint)**

LMI subscribed, severally and not jointly, to Slip Nos. CU 1001 and K 66034 issued to the Roman Catholic Archbishop of San Francisco, and Nos. K 78138 and CU 3061 issued to the Roman Catholic Bishop of Oakland (collectively "LMI Policies"). The table below shows the policy periods, policy limits, and the subscribed shares of the limits of each LMI based on the information currently available to LMI (*italics show insurers that are insolvent or in liquidation*):

| Policy/Slip Nos. | Policy Period | Limits |
|---|---|---|
| **LM 26336 / CU 1001**<br>Underwriters 72%<br>Excess 5%<br>World Auxiliary 4%<br>River Thames 3%<br>Dominion 7.8%<br>Dominion 5.2%<br>*English & American 3%* | March 12, 1962 (*unconfirmed*) to October 25, 1963 | **First Excess Umbrella Policy** with limits of $1M excess $500K any one person / any one occurrence underlying insurance |
| **LM 26337 / K 66034**<br>Underwriters 74%<br>Anglo French 1.5%<br>Excess 1%<br>*London & Overseas 5%*<br>*English & American 3.5%*<br>*Orion 10%*<br>*Orion 5%* | March 12, 1962 to October 25, 1963 | **Second Excess Umbrella Policy** with limits of $1M excess of $1M first excess umbrella policy layer and $500K underlying insurance |

| | | |
|---|---|---|
| **LM 29079 / K 78138**<br>Underwriters 63.63%<br>Dominion 13.64%<br>Fidelidade 13.64%<br>Excess 9.09% | October 25, 1963 to November 25, 1966 | **First Excess Umbrella Policy** with limits of $1M excess $500K any one person / any one occurrence underlying insurance |
| **LM 29080 / CU 3061**<br>Underwriters 70.77%<br>Anglo French 2.83%<br>Excess 1.89%<br>*English & American 4.71%*<br>*London & Overseas 4.71%*<br>*Orion 7.07%*<br>*Orion 5.66%*<br>*Orion 2.36%* | October 25, 1963 to November 25, 1966 | **Second Excess Umbrella Policy** with limits of $1M excess of $1M first excess umbrella policy layer and $500K underlying insurance |

Policy Nos. LM 26336/CU 1001 and LM 26337/K 66034 were issued to "The Roman Catholic Archbishop of San Francisco, a Corporation Sole, et al." There is an endorsement to Second Excess Umbrella Policy Nos. LM 26337/K 66034 that amends the Named Assured, effective March 12, 1962, to include "The Roman Catholic Bishop of Oakland…." LMI have not located a similar endorsement with respect to First Excess Umbrella Policy No. LM 26336/CU 1001.

The obligations of the Lloyd's Underwriters and the London Market Companies are several only, up to the amount of the risk specified in the LMI Policies, and not joint. Therefore, in the event there is covered Ultimate Net Loss under the LMI Policies, and there are subscribed shares by insurers that are insolvent or in liquidation, then the amount subject to indemnity from LMI will be less than the limits as they are only responsible for their subscribed share of the limits.

**Fourth Affirmative Defense**

**(Coverage Only for Liability on Account of Personal Injury Arising Out of an Occurrence)**

The Insuring Agreement in the LMI Policies agrees, in pertinent part, to indemnify the Assured for sums paid by reason of liability imposed by law for damages on account of Personal Injuries arising out of an Occurrence. LMI have no obligation to indemnify if the Assured seeking coverage is not legally liable for damages, if there is no Personal Injury, or there is no Occurrence.

**Fifth Affirmative Defense**

**(Coverage Subject to Policy Limits)**

To the extent coverage exists, the First Excess Umbrella Policies provide ultimate net loss limits of subscribed shares of $1,000,000 each occurrence excess of the $500,000 any one person/ any one occurrence underlying insurance limits. Further, the Second Excess Umbrella Policies provide ultimate net loss limits of subscribed shares of $1,000,000 each occurrence excess of the $1,000,000 each occurrence limits provided by the First Excess Umbrella Policies and excess of the $500,000 any one person/ any one occurrence underlying insurance limits.

**<u>Sixth Affirmative Defense</u>**

**(No Coverage Until Underlying Limits Have Been Paid)**

The LMI Policies include a "Loss Payable" Condition that provides:

> Liability under this policy with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence….

Therefore, the LMI Policies attach, if at all, only after any applicable underlying limits have been paid.

**<u>Seventh Affirmative Defense</u>**

**(No Obligation to Defend or Settle)**

LMI have no duty to defend or settle, only to indemnify. In this regard the LMI Policies include an "Assistance and Co-operation" Condition that provides "Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured…."

**<u>Eighth Affirmative Defense</u>**

**(No Obligation to Indemnify Until After Liability is Fixed and Coverage is Determined)**

LMI have no obligation to indemnify until after liability is fixed and there is a determination that the claim is covered. In this regard, the LMI Policies have the following "Loss Payable" Condition:

> Liability under this policy with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence. The Assured shall make a

definite claim for any loss for which the Underwriters may be liable under the policy within twelve (12) months after the Assured shall have paid an amount of ultimate net loss in excess of the amount borne by the Assured or after the Assured's liability shall have been fixed and rendered certain either by final judgment against the Assured after actual trial or by written agreement of the Assured, the claimant, and Underwriters.

Further, the LMI Policies agree to indemnify the Assured for "Ultimate Net Loss" on account of damages on account of Personal Injuries arising from an Occurrence, and the term "Ultimate Net Loss" is defined as:

> the total sum which the Assured, or any company as his insurer, or both, become obligated to pay by reason of personal injury…*either through adjudication or compromise,* and shall also include . . . expenses for doctors, lawyers . . . and for litigation, settlement, adjustment and investigation of claims and suits *which are paid as a consequence for any occurrence covered hereunder*" (emphasis added).

This provides two preconditions to payment: 1) the matter is resolved through compromise or adjudication; and, 2) the sum is paid as a consequence for an occurrence covered by the LMI Policies.

**<u>Ninth Affirmative Defense</u>**

**(No Coverage for an Entity or Person that is not an Assured)**

There is no coverage for any entity or person that does not qualify as an Assured under the LMI Policies. Further, in the event there is a claim against more than one Assured, the LMI Policies provide that "[t]he inclusion or addition hereunder of more than one Assured shall not operate to increase Underwriters' limit of liability."

**<u>Tenth Affirmative Defense</u>**

**(Indemnity Only for Liability Imposed Upon the Assured by Law)**

LMI are only obligated "to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law."

LMI require RCBO to assert legal defenses to the claims. This includes undertaking

investigation, discovery and analysis of liability and potential damages before agreeing to damage amounts and requiring (or pursuing) non-Assured co-defendants to assume (or be assigned) their share of liability and damages. LMI have no indemnity obligation if there is no legal liability or for voluntary or pastoral payments.

**Eleventh Affirmative Defense**

**(No Coverage Based on Late Notice)**

The LMI Policies have a Notice of Occurrence Condition which provides, "[w]henever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 3 of the Declarations[1] as soon as practicable."

RCBO did not notify LMI of the sexual abuse claims until after filing this coverage lawsuit in June 2023, which was after the close of the CVA window on December 31, 2022 and after the bankruptcy filing when it was acknowledged that 332 CVA lawsuits had been filed. This violates the Notice of Occurrence Condition.

**Twelfth Affirmative Defense**

**(No Coverage Based on Failure to Cooperate)**

LMI do not have information about when some of the claims were first brought to the attention of RCBO or if there has been any investigation or analysis of legal liability and potential damages. Instead, for most of the sexual abuse claims, only the complaints, Proof of Claim forms, and perhaps some limited and incomplete perpetrator files, have been provided. Upon information and belief, several of the Abuse Claimants have pursued and recovered damages from Non-Assured co-defendants such as religious orders, educational institutions, and other dioceses, but information about the Claimants and the alleged perpetrators' relationships and any payments received, or settlements made, has not been provided to LMI. Moreover, LMI have made requests for information which have been ignored.

[1] Item 3 states "Notice of Occurrence…to: Rathbone, King & Seeley…."

The LMI Policies have an "Assistance and Co-operation" Condition that provides:

The Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve Underwriters, in which event the Assured and Underwriters shall co-operate in all things in the defense of such claim, suit or proceeding.

RCBO breached this Condition.

**Thirteenth Affirmative Defense**

**(Trigger of Coverage and Number of Occurrences)**

The Insuring Agreement in the LMI Policies provides:

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability (a) imposed upon the Assured by law, or (b) assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such, for damages, direct or consequential and expenses, all as more fully defined by the term "ultimate net loss" on account of: (i) Personal Injuries, including death at any time resulting therefrom…caused by or arising out of each occurrence happening anywhere in the world.

The term "Occurrence" is defined as:

[A]n accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

Therefore, there must be sexual abuse that results in personal injury during the policy period to potentially trigger coverage and, further, any covered Ultimate Net Loss should be allocated to all triggered policy periods when abuse occurred, including periods that pre and postdate the LMI coverage periods.

**Fourteenth Affirmative Defense**

**(No Coverage if RCBO was Aware of an Alleged Perpetrator's Propensities Prior to or During the Alleged Abuse)**

The Insuring Agreement in the LMI Policies only provides coverage for "personal injuries" that "arise[ ] out of an occurrence."

The term "Occurrence" is defined in the LMI Policies as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury … during the policy period."

There is no coverage if a claimant alleges, or a determination is made, that RCBO (or any other Assured), was aware of the alleged perpetrator's deviant propensities or history of molesting children prior to or during the alleged abuse.

**Fifteenth Affirmative Defense**

**(No Coverage for Volitional Acts)**

Upon information and belief, some claimants allege fraud, misrepresentation, intentional conduct, or other volitional acts.

The LMI Policies require an "Occurrence", which requires and "accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period." Additionally, "[a]ll such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence." Damages from the alleged volitional acts would not arise from an "Occurrence" and may not give rise to "Personal Injury." Additionally, any Ultimate Net Loss incurred in connection with allegations of fraud and intentional conduct would not constitute a fortuitous loss and/or would be barred from coverage because coverage is prohibited by public policy.

**<u>Sixteenth Affirmative Defense</u>**

**(LMI Only Indemnify for Ultimate Net Loss)**

The LMI Policies indemnify for "Ultimate Net Loss," which is defined as:

> [T]otal sum which the Assured, or any company as his insurer, or both, become obligated to pay by reason of personal injury, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical, and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Assured's or any underlying insurer's permanent employees.

The LMI Policies do not cover sums that do not satisfy the definition of "Ultimate Net Loss."

**<u>Seventeenth Affirmative Defense</u>**

**(Misrepresentation in Purchase of Policies)**

Upon information and belief, prior to purchasing the LMI Policies, RCBO was aware that certain of its priests had engaged in sexual misconduct that could result in claims against it. There can be no coverage under the LMI Policies to the extent RCBO did not inform LMI, or misrepresented these facts, before purchasing the LMI Policies.

**<u>Eighteenth Affirmative Defense</u>**

**(Assault and Battery Exclusion)**

The LMI Policies contain the following Exclusion:

> This policy shall not apply…to liability of any Assured hereunder for assault and battery committed by or at the direction of such Assured except liability for Personal Injury or Death resulting from any act alleged to be assault and battery committed for the purpose of preventing or eliminating danger in the operation of aircraft, or for the purpose of preventing personal injury or property damage….

Coverage for certain of the claims against RCBO may be excluded in whole or in part by

reason of the above Exclusion.

**Nineteenth Affirmative Defense**

**(No Coverage for Punitive Damages)**

Punitive damages are excluded from coverage under the definition of "occurrence," and under California law and public policy and, therefore, any portion of any settlement or verdict covering the RCBO's exposure to punitive damages is not covered.

**Twentieth Affirmative Defense**

**(California Code Section 533)**

California Code Section 533 provides that "[a]n insurer is not liable for a loss caused by the willful act of the insured". There is no coverage if a claimant alleges loss caused by a willful act of RCBO.

**Twenty-First Affirmative Defense**

**(Other Insurance)**

The LMI Policies have the following Other Insurance Condition:

> If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall. be construed to make this policy subject to the terms, conditions and limitations of other insurance.

Coverage for the underlying actions and underlying claims against RCBO may be barred in whole or in part by reason of the "Other Insurance" Condition in the LMI Policies.

**Twenty-Second Affirmative Defense**

**(Prior Insurance and Non Cumulation of Liability)**

The LMI Policies have a Prior Insurance and Non Cumulation of Liability Condition:

> It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof

> the limit of liability…shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance….

Coverage for the underlying actions and underlying claims against RCBO may be limited or reduced because of this Prior Insurance and Non Cumulation of Liability Condition.

**<u>Twenty-Third Affirmative Defense</u>**

**(Maintenance of Underlying Insurance)**

The LMI Policies have a Maintenance of Underlying Insurances Condition:

> It is a condition of this policy that the policy or policies referred to in the attached "Schedule of Underlying Insurances" shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits contained therein solely by payment of clams in respect of accidents and/or occurrences occurring during the period of this policy. Failure of the Assured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Underwriters shall only be liable to the same extent as they would have been had the Assured complied with the said condition.

Coverage for the underlying actions and underlying claims against RCBO may be limited or reduced because of this Maintenance of Underlying Insurance Condition.

**<u>Twenty-Fourth Affirmative Defense</u>**

**(Lack of Justiciability)**

The insurance coverage claims against LMI may be barred in whole or in part by reason of lack of justiciability.

**<u>Twenty-Fifth Affirmative Defense</u>**

**(Ripeness)**

The LMI Policies are excess indemnity policies with no duty to defend.

Most, if not all, of the actions and claims for which RCBO seeks coverage from LMI have been stayed and remain unresolved. Therefore this Sixth Amended Complaint fails, in whole or in part, because this matter is not ripe for adjudication at this time – thus not satisfying the requirement

for adjudication of "actual" cases and controversies under Article III Section 2 of the United States Constitution.

**<u>Twenty-Sixth Affirmative Defense</u>**

**(Accord and Satisfaction, Payment of Release)**

Coverage for the underlying actions and underlying claims against RCBO may be barred in whole or in part by reason of accord and satisfaction, payment or release.

**<u>Twenty-Seventh Affirmative Defense</u>**

**(Failure to Include Necessary and Indispensable Parties)**

The insurance coverage claims against LMI may be barred, in whole or in part, to the extent that RCBO failed to include in its lawsuit all necessary and indispensable parties.

**<u>Twenty-Eighth Affirmative Defense</u>**

**(Res Judicata, Collateral Estoppel, Issue Preclusion, or Claim Preclusion)**

The insurance coverage claims against LMI may be barred in whole or in part by reason of res judicata, collateral estoppel, issue preclusion, or claim preclusion.

**<u>Twenty-Ninth Affirmative Defense</u>**

**(Waiver, Estoppel and Laches)**

The insurance coverage claims against LMI may be barred by the doctrines of waiver, estoppel and laches.

**<u>Thirtieth Affirmative Defense</u>**

**(Other Terms, Exclusions, Conditions and Limitations in the LMI Policies)**

The Sixth Amended Complaint fails, in whole or in part, by the terms, exclusions, conditions, definitions, declarations, endorsements and/or limitations contained in the LMI Policies. The terms, exclusions, conditions, definitions, declarations, endorsements and/or limitations are incorporated herein by reference.

**<u>Thirty-First Affirmative Defense</u>**

**(Amended Confidential Settlement and Mutual Release)**

RCBO was previously named in certain lawsuits alleging acts of sexual abuse or other misconduct of a sexual nature committed by priests or other alleged employees, officers, volunteers,

or representatives of the Diocese. In November 2005, RCBO entered into an Amended Confidential Settlement and Mutual Release with its insurers, including LMI. RCBO, in exchange for financial contribution from its insurers, released all claims against its insurers for Abuse Claims as defined by the Amended Confidential Settlement and Mutual Release.

The insurance coverage claims in the Amended Complaint may be barred pursuant to the Amended Confidential Settlement and Mutual Release.

**Thirty-Second Affirmative Defense**

**(Right to Add Additional Affirmative Defenses)**

LMI reserve the right to raise additional affirmative defenses which cannot be set forth at this time due to the general nature of RCBO's claims and the failure of RCBO to specify the insurance policies under which it is purportedly claiming.

WHEREFORE, LMI respectfully request that this Court deny the relief requested in the Complaint, enter judgment in favor of all LMI, and grant such other and further relief that the Court deems just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, and Fed. R. Bankr. P. 9015, LMI hereby demand a trial by jury on all issues so triable in connection with any claim asserted in the Sixth Amended Complaint and/or in the Affirmative Defenses.

**LONDON MARKET INSURERS' COUNTERCLAIM FOR DECLARATORY RELIEF**

NOW COME the Defendants and Counter-Claimants, Certain Underwriters at Lloyd's, London, subscribing severally and not jointly to Slip Nos. CU 1001 and K 66034 issued to the Roman Catholic Archbishop of San Francisco, and Nos. K 78138 and CU 3061 issued to the Roman Catholic Bishop of Oakland; Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Co. Ltd.); the Ocean Marine Insurance Company Limited (as Part VII transferee of the World Auxiliary Insurance Corporation Limited); River Thames Insurance Company Limited; Dominion Insurance Company Limited; Companhia De Seguros Fidelidade SA f/k/a Fidelidade Insurance Company of Lisbon; and R&Q Gamma Company Limited (as Part VII transferee of Anglo French Ltd.) (collectively "London Market Insurers" or "LMI"), having

subscribed severally and not jointly, as their interests may appear with respect to one or more insurance policies, for their Counterclaim for Declaratory Judgment and Relief to the Sixth Amended Complaint at Dkt. No. 279, filed by the Plaintiff and Counter-Defendant, The Roman Catholic Bishop of Oakland ("RCBO"), state as follows:

**Parties, Jurisdiction, and Venue**

1. Upon information and belief, RCBO is a California corporation sole with its principal place of business in Oakland, California.

2. Defendant and Counter-Claimant Certain Underwriters at Lloyd's, London ("Underwriters"), doing business in the Lloyd's market in the United Kingdom, subscribed, severally and not jointly, as their respective interests may appear, to Slip Nos. CU 1001 and K 66034 issued to the Roman Catholic Archbishop of San Francisco, and Nos. K 78138 and CU 3061 issued to RCBO, as those Slips were presented to them by the agent(s)/broker(s) for the Archbishop of San Francisco and for RCBO.

3. Defendant and Counter-Claimant Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Co. Ltd.) ("Excess") is a United Kingdom corporation with its principal place of business in the United Kingdom.

4. Defendant and Counter-Claimant the Ocean Marine Insurance Company Limited (as Part VII transferee of the World Auxiliary Insurance Corporation Limited) ("World Auxiliary") is a United Kingdom corporation with its principal place of business in the United Kingdom.

5. Defendant and Counter-Claimant River Thames Insurance Company Limited ("River Thames") is a United Kingdom corporation with its principal place of business in the United Kingdom.

6. Defendant and Counter-Claimant Dominion Insurance Company Limited ("Dominion") is a United Kingdom corporation with its principal place of business in the United Kingdom.

7. Defendant and Counter-Claimant Companhia De Seguros Fidelidade SA f/k/a Fidelidade Insurance Company of Lisbon ("Fidelidade") is a Portuguese corporation with its principal place of business in Portugal.

8. Defendant and Counter-Claimant R&Q Gamma Company Limited (as Part VII transferee of Anglo French Ltd.) ("Angelo French") is a United Kingdom corporation with its principal place of business in the United Kingdom.

9. This Court has personal jurisdiction over RCBO. This is because RCBO voluntarily initiated this coverage action in the United States Bankruptcy Court for the Northern District of California, and the United States District Court for the Northern District of California entered an Order Withdrawing the Reference. *See* First Amended Complaint, No. 23-04028-WJL (Bankr. N.D. Cal. June 26, 2023), Dkt. No. 2; Order Withdrawing Reference, Dkt. No. 29. RCBO therefore submitted itself to the personal jurisdiction of this Court for all purposes related to or arising out of this action, including this Counterclaim.

10. This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1334(b) because it is related to RCBO's Chapter 11 case. This Court also has supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367(a) because it arises from the same transactions and occurrences that are the subject of RCBO's Sixth Amended Complaint.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district.

**The Abuse Claims and the RCBO Bankruptcy**

12. Upon information and belief, RCBO, along with certain of its affiliated parishes, schools and other institutions (the affiliated parishes, schools and other institutions are hereafter the "Related Entities"), were named in lawsuits alleging injury from sexual abuse.

13. In March 2023, RCBO filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of California, Oakland Division, Case No. 23-40523 ("Bankruptcy Proceeding").

14. In the Bankruptcy Proceeding, proofs of claim were filed against RCBO alleging injury from sexual abuse ("Abuse Claims").

15. In the Bankruptcy Proceeding, RCBO filed a Third Amended Plan of Reorganization and Disclosure Statement in March 2025. *See* Third Am. Plan and Disclosure Statement, No. 23-40523-WJL (Bankr. N.D. Cal. March 17, 2025), Dkt. Nos. 1830 and 1831. After these filings,

RCBO, the Official Committee of Unsecured Creditors ("Committee"), LMI, and other of RCBO's insurers, sought to negotiate settlements and a term sheet and updated term sheet were filed with the Bankruptcy Court on December 11, 2025 and December 17, 2025. *See id.* at Dkt. No. 2504 and Dkt. No. 2521. The parties were not able to reach a consensual resolution.

16. In or around March 2026, RCBO filed a Fourth Amended Plan and Disclosure Statement. *See* Fourth Am. Plan and Disclosure Statement, No. 23-40523-WJL (Bankr. N.D. Cal. March 29, 2026), Dkt. No. 2759. After Plan Objections and a Confirmation Hearing in June 2026, the Bankruptcy Court issued its Memorandum Decision on the Fourth Amended Plan. *See* Amended Memorandum Decision on Fourth Amended Plan, *id.* at Dkt No. 3567. The Bankruptcy Court Judge indicated that he would address the Insurers' objections to confirmation of the Plan and related issues separately. *Id* at 2–3.

**The LMI Policies**

17. LMI subscribed to First Excess Umbrella Policy No. LM 26336/CU 1001 issued to "The Roman Catholic Archbishop of San Francisco, a Corporation Sole" ("RCASF") for the period from November 1, 1960 until October 25, 1963 ("First Excess Umbrella Policy 1962/63"). No policy documents have been located to prove that this Policy was amended to include RCBO as an assured when it was created as a new diocese from the RCASF in or around 1962. The First Excess Umbrella Policy 1962/63 provided occurrence limits of $1M excess of underlying insurance with limits of $500K any one person/any one occurrence.

18. LMI subscribed to Second Excess Umbrella Policy LM 26337/K 66034 issued to RCASF for the period from November 1, 1960 until October 25, 1963 ("Second Excess Umbrella Policy 1962/63"). The Named Assured of this Policy was amended effective March 12, 1962 to include "The Roman Catholic Bishop of Oakland, a Corporation Sole, The Roman Catholic Bishop of Stockton, a Corporation Sole, and the Roman Catholic Bishop of Santa Rosa, a Corporation Sole." The Second Excess Umbrella Policy 1962/63 provided occurrence limits of $1M excess of the $1M provided by the First Excess Umbrella Policy and excess of the underlying insurance limits.

19. LMI subscribed to First Excess Umbrella Policy No. LM 29079/K 78138 issued to "The Roman Catholic Bishop of Oakland, a Corporation Sole, et. al." for the periods from October

25, 1963 to October 25, 1966 ("First Excess Umbrella Policy 1963/66"). The First Excess Umbrella Policy 1963/66 provided occurrence limits of $1M excess of underlying insurance with limits of $500K any one person/any one occurrence.

20. LMI subscribed to Second Excess Umbrella Policy LM 29080/CU 3061 issued to "The Roman Catholic Bishop of Oakland, a Corporation Sole, et. al.", for the periods from October 25, 1963 until October 25, 1966 ("Second Excess Umbrella Policy 1963/66"). The Second Excess Umbrella Policy 1963/66 provided occurrence limits of $1M excess of the $1M provided by the First Excess Umbrella Policy and excess of the underlying insurance limits.

21. The following table shows the Policy/Slip Nos., policy periods, limits, and subscribed shares of each LMI based on the information currently available to LMI (*italics show insurers that are insolvent or in liquidation*):

| Policy/Slip Nos. | Policy Period | Limits |
|---|---|---|
| **LM 26336 / CU 1001**<br>Underwriters 72%<br>Excess 5%<br>World Auxiliary 4%<br>River Thames 3%<br>Dominion 7.8%<br>Dominion 5.2%<br>*English & American 3%* | March 12, 1962 (*unconfirmed*) to October 25, 1963 | **First Excess Umbrella Policy** with limits of $1M excess $500K any one person / any one occurrence underlying insurance |
| **LM 26337 / K 66034**<br>Underwriters 74%<br>Anglo French 1.5%<br>Excess 1%<br>*London & Overseas 5%*<br>*English & American 3.5%*<br>*Orion 10%*<br>*Orion 5%* | March 12, 1962 to October 25, 1963 | **Second Excess Umbrella Policy** with limits of $1M excess of $1M first excess umbrella policy layer and $500K underlying insurance |
| **LM 29079 / K 78138**<br>Underwriters 63.63%<br>Dominion 13.64%<br>Fidelidade 13.64%<br>Excess 9.09% | October 25, 1963 to November 25, 1966 | **First Excess Umbrella Policy** with limits of $1M excess $500K any one person / any one occurrence underlying insurance |
| **LM 29080 / CU 3061**<br>Underwriters 70.77%<br>Anglo French 2.83%<br>Excess 1.89%<br>*English & American 4.71%*<br>*London & Overseas 4.71%*<br>*Orion 7.07%*<br>*Orion 5.66%*<br>*Orion 2.36%* | October 25, 1963 to November 25, 1966 | **Second Excess Umbrella Policy** with limits of $1M excess of $1M first excess umbrella policy layer and $500K underlying insurance |

22. The LMI Policies contain the following Coverage Insuring Agreement:

> Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability
>
> (a) imposed upon the Assured by law, or
>
> (b) assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,
>
> for damages, direct or consequential and expenses, all as more fully defined by the term "ultimate net loss" on account of:
>
> (i) Personal Injuries, including death at any time resulting therefrom,
>
> (ii) Property Damage,
>
> (iii)Advertising liability,
>
> caused by or arising out of each occurrence happening anywhere in the world.

23. The Second Excess Umbrella Policies include similar Insuring Agreements, with the following language added to the final phrase in the Insuring Agreements in the First Excess Umbrella Policies: "and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies . . . ."

24. The First Excess Umbrella Policies contain the following Limit of Liability provision:

> Underwriters hereon shall only be liable for the ultimate net loss the excess of either (a) the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances. . .
>
> and then only up to a further sum [of $1,000,000] as stated in Item 2 (a) of the Declarations in respect of each occurrence . . . .
>
> The inclusion or addition hereunder of more than one Assured shall not operate to increase Underwriters' limit of liability.

25. Upon information and belief, the First Excess Umbrella Policies have a Schedule of

Underlying Insurance showing "General Liability (Personal Injury) [limits of] $500,000 any one person/$500,000 any one occurrence".

26. Upon information and belief, the First Excess Umbrella Policies have the following Limit of Liability-Underlying Limits provision:

> It is expressly agreed that liability shall attach to the Underwriters only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:
>
> $ (as stated in Item 3 of the Declarations) 1,000,000 ultimate net loss in respect of each occurrence . . .
>
> and the Underwriters shall then be liable to pay only the excess thereof up to a further
>
> $ (as stated in Item 5 of the Declarations) 1,000,000 ultimate net loss in respect of each occurrence . . .

27. Upon information and belief, the First Excess Umbrella Policies have the following Definitions:

> 1. ASSURED —
>
> The unqualified word "Assured", whenever used in this policy, includes not only the Named Assured but also: —
>
> (a) any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such . . . .
>
> (b) any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only in respect of operations by or on behalf of the Named Assured or of facilities of the Named Assured or used by them;
>
> * * *
>
> 2. PERSONAL INJURIES —
>
> The term "Personal Injuries" wherever used herein means bodily injury, mental injury, mental anguish, shock, sickness, disease, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination,

humiliation; also libel, slander or defamation of character or invasion of rights of privacy, except that which arises out of Advertising activities.

* * *

5. OCCURRENCE —

The term "Occurrence" wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

6. ULTIMATE NET LOSS —

The term "Ultimate Net Loss" shall mean the total sum which the Assured, or any company as his insurer, or both, become obligated to pay by reason of personal injury, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical, and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Assured's or any underlying insurer's permanent employees.

The Underwriters shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance.

28. Upon information and belief, the First Excess Umbrella Policies have the following Exclusion:

Except insofar as coverage is available to the Assured in the underlying insurance as set out in the attached Schedule, this policy shall not apply: —

(e) to liability of any Assured hereunder for assault and battery committed by or at the direction of such Assured except liability for Personal Injury or Death resulting from any act alleged to be assault and battery committed for the purpose of preventing or eliminating danger in the operation of aircraft, or for the purpose of preventing personal injury or property damage;…

29. Upon information and belief, the First Excess Umbrella Policies have several Conditions, including the following:

C. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY —

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in item 2 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

Subject to the foregoing paragraph and to all the other terms and conditions of this policy in the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this policy Underwriters will continue to protect the Assured for liability in respect of such personal injury or property damage without payment of additional premium.

* * *

G. NOTICE OF OCCURRENCE —

Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 3 of the Declarations as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to claim hereunder, shall not prejudice such claims.

H. ASSISTANCE AND CO-OPERATION —

The Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve Underwriters, in which event the Assured and Underwriters shall co-operate in all things in the defense of such claim, suit or proceeding.

* * *

J. LOSS PAYABLE —

Liability under this policy with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence. The Assured shall make a definite claim for any loss for which the Underwriters may be liable under the policy within twelve (12) months after the Assured shall have paid an amount of ultimate net loss in excess of the amount borne by the Assured or after the Assured's liability shall have been fixed and rendered certain either by final judgment against the Assured after actual trial or by written agreement of the Assured, the claimant, and Underwriters. If any subsequent payments shall be made by the Assured on account of the same occurrence, additional claims shall be made similarly from time to time. Such losses shall be due and payable within thirty (30) days after they are respectively claimed and proven in conformity with this policy.

* * *

L. OTHER INSURANCE —

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing

herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

* * *

T. MAINTENANCE OF UNDERLYING INSURANCE —

It is a condition of this policy that the policy or policies referred to in the attached "Schedule of Underlying Insurances" shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits contained therein solely by payment of clams in respect of accidents and/or occurrences occurring during the period of this policy. Failure of the Assured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Underwriters shall only be liable to the same extent as they would have been had the Assured complied with the said condition.

30. The Second Excess Umbrella Policies contain the following Conditions:

2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE —

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof except for any reduction of the aggregate limits contained therein . . .

* * *

4. NOTICE OF OCCURRENCE —

Whenever the Assured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 7 of the Declarations as soon as practicable, provided,

however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

5. OTHER INSURANCE —

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.

**RCBO's Tender of Abuse Claims and LMI Coverage Reservations**

31. In or around 2003, the State of California enacted Child Victims Act ("CVA") legislation that opened a one-year window permitting victims of childhood sexual abuse, whose claims were otherwise barred by statutes of limitation, to file lawsuits against employers and supervisors of the alleged perpetrators. RCBO and its insurers, including LMI, settled 52 claims brought against RCBO and Related Entities under this earlier CVA legislation. RCBO and the settling insurers executed an Amended Confidential Settlement Agreement and Mutual Release in or around November 2005 ("2005 Agreement"). The 2005 Agreement released all claims and liabilities which arise from abuse claims, as defined in the 2005 Agreement. As part of the 2005 Agreement, RCBO represented and warranted that "it has given notice of, and has forwarded all claims and/or suit papers, to the Settling Insurers, of any Occurrence that it reasonably concluded was likely to involve the Settling Policies . . . ."

32. In 2019, the California legislature enacted further CVA legislation. This provided, in part, a three-year window, which opened on January 1, 2020, for claimants to pursue previously time-barred childhood sexual abuse claims.

33. RCBO filed for Chapter 11 Bankruptcy protection in May 2023. Chapter 11 Voluntary Petition for Non-Individual, No. 23-40523-WJL (Bankr. N.D. Cal. May 8, 2023), Dkt. No. 1. RCBO's First Day Filings stated 332 CVA lawsuits had been filed against it. Declaration of Charles Moore, No. 23-40523-WJL (Bankr. N.D. Cal. May 8, 2023), Dkt. No. 19. There was a September 11, 2023 bar date for the CVA claims in the bankruptcy. Order Establishing Deadlines

for Filing POC and Approving Form and Manner of Notice Thereof, No. 23-40523-WJL (Bankr. N.D. Cal. July 25, 2023), Dkt. No. 293.

34. RCBO filed this adversary action against its insurers in June 2023. *See* First Amended Complaint, No. 23-04028-WJL (Bankr. N.D. Cal. June 26, 2023), Dkt. No. 2. This court later entered an order withdrawing the reference. *See* Order Withdrawing Reference, Dkt. No. 29

35. RCBO did not tender any CVA claims filed as a result of the 2019 legislation to LMI until after it filed for bankruptcy protection and after it filed its adversary proceeding against its insurers.

36. After some LMI learned about the adversary proceeding, they asked RCBO for a list of claims it believed had been tendered to LMI. RCBO eventually provided LMI with copies of the Abuse Claim Proof of Claim forms.

37. After RCBO provided LMI with the Abuse Claim Proof of Claim forms, LMI responded with letters that set forth their coverage position. The letters advised that, while there was incomplete policy information, the LMI Policies appeared to provide indemnity coverage excess of underlying insurance for the periods from March 12, 1962 to October 25, 1966. LMI declined coverage for Abuse Claims where the alleged abuse was outside the periods from March 12, 1962 to October 25, 1966, and reserved rights for Abuse Claims where some or all of the alleged abuse was potentially during the periods from March 12, 1962 to October 25, 1966. LMI also asserted coverage defenses based on the terms of the LMI Policies, the terms of the underlying policies, the law, public policy and any violation of contractual rights. The reservation of rights advised, among other things:

a. That the obligations of each LMI are several only, up to the amount of risk specified in the policies, and not joint;
b. That the LMI Policies are excess indemnity policies;
c. That the First Excess Umbrella Policies provide indemnity limits of $1,000,000 each occurrence excess of the $500,000 any one person/ any one occurrence limits covered by underlying insurance;
d. That the Second Excess Umbrella Policies provide indemnity limits of $1,00,000 each

occurrence only after the First Excess Umbrella Insurers (and the underlying insurance) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability;

e. That the Policies agree to indemnify for Ultimate Net Loss on account of Personal Injuries caused by or arising out of each "Occurrence", which is defined in as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury…during the policy period [and] all such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence";

f. That LMI reserved all rights based upon the number and timing of occurrences and asserted the position that (i) any covered ultimate net loss from sexual abuse claims that take place over more than one policy period must be allocated pro-rata across all periods in which the alleged abuse takes place, including periods that pre- and post-date the LMI periods, and (ii) any per occurrence deductibles, self-insured retentions, and underlying insurance limits must be satisfied for each Claimant's claim of abuse against each perpetrator and in each policy period where sexual abuse took place;

g. That LMI reserved rights based on the "Occurrence" definition requiring "an accident or a happening or event which unexpectedly and unintentionally results in personal injury", so that in the event an Assured was aware of sexual misbehavior of the alleged perpetrator prior to or during the alleged abuse of a claimant, such misconduct would not be "unexpected and unintended";

h. That LMI reserved rights to decline coverage for allegations of fraud, cover-up, misrepresentation, intentional misconduct, or other volitional acts, as any damages from such would not arise from an occurrence, and also may not constitute Personal Injuries;

i. That LMI reserved rights based on the definition of an "Assured";

j. That there would be no coverage for the alleged perpetrators because any sexual misconduct by them would not be acts in their capacity as a religious or an employee of RCBO and not in respect of operations by or on behalf of RCBO;

k. That LMI reserved rights based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured;

l. That LMI reserved rights with respect to the Conditions pertaining to Notice;

m. That LMI reserved rights to the extent a claim was previously tendered, was subject to prior investigations, payments, settlements, or releases (including the 2005 Agreement);

n. That LMI reserved rights with respect to the Conditions pertaining to Assistance and Cooperation, which include the right and opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve them;

o. That LMI reserved rights with respect to the Loss Payable and Maintenance of Underlying Insurance Conditions in the Policies;

p. That LMI reserved rights with respect to the Policies' Other Insurance Condition;

q. That LMI reserved rights with respect to any award of damages, including punitive or multiplied damages, based on intentional conduct due to lack of a fortuity, public policy prohibitions, and California Insurance Code § 533, which provides that "an insurer is not liable for a loss caused by the willful act of the insured."

r. That LMI reserved rights based on other Definitions, Exclusions and Conditions in the Policies and underlying policies, including the Definition of Ultimate Net Loss, the Conditions for Prior Insurance and Non-Cumulation of Liability, Notice of Occurrence, Maintenance of Underlying Insurance and Maintenance of Underlying Umbrella Insurance, Assistance and Cooperation, Appeals, Loss Payable, Other Insurance, and Assignment; and,

s. That LMI reserved rights based on the fact the Excess Umbrella Polices were contracts and that any purported assignment, Plan, Trust Distribution Procedures and other cannot alter insurance contractual rights, and that the rights of LMI under the terms of their policies and applicable law are preserved, including the right to contest coverage for any claims, causes of action or awards.

38. When RCBO filed its voluntary Chapter 11 petition in 2023, it automatically stayed the Abuse Claims pending against it in state court. On June 25, 2025, the Committee moved for relief from the automatic stay as to six state court cases against RCBO and its Related Entities. *See* Renewed Motion of the Official Committee of Unsecured Creditors to Lift the Automatic Stay to Permit Certain Plaintiffs' Personal Injury Claims to Proceed in State Court, No. 23-40523-WJL (Bankr. N.D. Cal. June 25, 2025), Dkt. No. 2093. The bankruptcy court granted the motion. *See id.* at Dkt. No. 2168. LMI and RCBO's other insurers objected to the stay relief and appealed the bankruptcy court's order. *See, e.g.*, Notice of Appeal, No. 25-cv-06836-JSC (N.D. Cal. August 13, 2025), Dkt. No. 1. The Insurers asserted, among other things, that the bankruptcy court unlawfully delegated to the state court the choice of which six state court cases to release from the stay, that there was no cause to lift the stay, and the order granting relief from the automatic stay violated 11 U.S.C. § 1123(a)(4), and the District Court affirmed the bankruptcy court's order. *See* Order re: Appeal of Relief from Automatic Stay, No. 23-40523-WJL (Bankr. N.D. Cal. April 8, 2026), Dkt. No. 2808. In any event, only one case has proceeded to trial against RCBO in the state court under the 2019 CVA, the Woodall case, and RCBO acknowledged in the Sixth Amended Complaint that the abuse in the Woodall case was after the LMI policy periods. *See* Sixth Amended Complaint, Dkt. No. 279.

39. Plaintiff and Counter-Defendant RCBO filed this lawsuit against LMI and other insurers and is seeking a Declaratory Judgment.[2]

**COUNT 1: CLAIM FOR DECLARATORY JUDGMENT**

40. LMI incorporate by reference each and every allegation set forth in paragraphs 1 through 38 as if set forth in full herein.

40. RCBO seeks insurance coverage from LMI for the liability of it (and presumably its Related Entities) for Abuse Claims.

[2] The causes of action in the Sixth Amended Complaint for breach of the implied covenant of good faith and fair dealing against LMI were dismissed by the Court pursuant to its Order dated September 17, 2026 [Dkt. No. 329].

41. LMI subscribed to First Excess Umbrella Policy 1962/63 issued to RCASF for the period from November 1, 1960 to October 25, 1963. No policy documents have been located to prove that this Policy was amended to include RCBO as an assured when it was created as a new diocese from the RCASF in or around 1962. This Policy provided limits of $1M each occurrence excess of underlying insurance with limits of $500K any one person/any one occurrence.

42. LMI subscribed to Second Excess Umbrella Policy 1962/63 issued to RCASF for the period from November 1, 1960 to October 25, 1963; the Named Assured of this Policy was amended effective March 12, 1962 to include RCBO. This Policy provided limits of $1M each occurrence excess of the $1M provided by First Excess Umbrella Policy 1962/63 and excess of the underlying insurance.

43. LMI subscribed to First Excess Umbrella Policy 1963/66 issued to RCBO for the periods from October 25, 1963 to October 25, 1966 with limits of $1M each occurrence excess of underlying insurance with limits of $500K any one person/any one occurrence.

44. LMI subscribed to Second Excess Umbrella Policy 1963/66 issued to RCBO for the periods from October 25, 1963 to October 25, 1966 with limits of $1M each occurrence excess of the $1M provided by First Excess Umbrella Policy 1963/66 and excess of the underlying insurance.

45. The obligations of each LMI are several only, up to the amount of the risk specified in the Policies, and not joint.

46. LMI have no duty to defend or settle, only to indemnify. In this regard the “Assistance and Co-operation” Condition provides that “Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured….”

47. The LMI Policies provide indemnity coverage to the Assured for sums paid by reason of liability imposed by law for damages on account of Personal Injuries arising out of Occurrence. LMI have no obligation to indemnify if the Assured seeking coverage is not legally liable for damages, if there is no Personal Injury, or there is no Occurrence.

48. The LMI Policies attach, if at all, only after any applicable underlying limits have been paid based on the Limits of Liability, the Loss Payable Condition and the maintenance of Underlying Insurance Condition.

49. LMI have no obligation to indemnify until after liability is fixed and there is a determination that the claim is covered. In this regard, the "Loss Payable" Condition provides, in relevant part, that:

> Liability under this policy with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence. The Assured shall make a definite claim for any loss for which the Underwriters may be liable under the policy within twelve (12) months after the Assured shall have paid an amount of ultimate net loss in excess of the amount borne by the Assured or after the Assured's liability shall have been fixed and rendered certain either by final judgment against the Assured after actual trial or by written agreement of the Assured, the claimant, and Underwriters.

Further, the LMI Policies agree to indemnify the Assured for Ultimate Net Loss on account of Personal Injuries arising from an Occurrence, and the term "Ultimate Net Loss" is defined as:

> the total sum which the Assured . . . become obligated to pay by reason of personal injury…*either through adjudication or compromise*, and shall also include . . . expenses for doctors, lawyers . . . and for litigation, settlement, adjustment and investigation of claims and suits *which are paid as a consequence for any occurrence covered hereunder*" (emphasis added).

This provides two preconditions to payment: 1) the matter is resolved through compromise or adjudication; and 2) the sum is paid as a consequence for an occurrence covered by the LMI Policies.

50. There is no coverage for any entity or person that does not qualify as an Assured under the LMI Policies. Further, in the event there is a claim against more than one Assured, the

LMI Policies provide that "[t]he inclusion or addition hereunder of more than one Assured shall not operate to increase Underwriters' limit of liability."

51. LMI are only obligated "to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law." RCBO is required to investigate the Abuse Claims, seek discovery, and analyze liability and potential damages before agreeing to damage amounts. RCBO is also required to pursue, or at least not assume responsibility for, the liability of non-Assured co-defendants or other culpable parties. LMI have no indemnity obligation if there is no legal liability or for voluntary or pastoral payments.

52. The LMI Policies have a Notice of Occurrence Condition which provides, "[w]henever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 3 of the Declarations [to Rathbone, King & Seeley] as soon as practicable." RCBO did not notify LMI of the Abuse Claims until after filing this coverage lawsuit in June 2023, which was after the close of the CVA window on December 31, 2022, and after the bankruptcy filing when it was acknowledged that 332 CVA lawsuits had been filed. This violates the Notice of Occurrence Condition.

53. The LMI Policies have an "Assistance and Co-operation" Condition that provides:

> The Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve Underwriters, in which event the Assured and Underwriters shall co-operate in all things in the defense of such claim, suit or proceeding.

LMI do not have information about when many of the Abuse Claims were first brought to the attention of RCBO or if there has been any investigation or analysis of legal liability and potential damages. Instead, for most of the Abuse Claims, only the complaints, Proof of Claim

forms, and perhaps some limited and incomplete perpetrator files, have been provided to LMI. Upon information and belief, several of the Abuse Claimants have pursued and recovered damages from Non-Assured co-defendants such as religious orders, educational institutions, and other dioceses, but information about the Claimants and the alleged perpetrators' relationships to RCBO, and any payments received, or settlements made have not been provided to LMI. Moreover, LMI have made requests for this and other information, and these requests have been ignored. RCBO breached the Assistance and Co-operation Condition.

54. The Insuring Agreement in the LMI Policies, which cover the periods between March 12, 1962 and October 25, 1966, provides:

> Underwriters hereby agree . . . to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability (a) imposed upon the Assured by law . . . for damages, direct or consequential and expenses, all as more fully defined by the term "ultimate net loss" on account of: (i) Personal Injuries, including death at any time resulting therefrom…caused by or arising out of each occurrence happening anywhere in the world.

The term "Occurrence" is defined as:

> [A]n accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

There is no coverage for an Abuse Claim unless the alleged abuse occurred between March 12, 1962 and October 25, 1966. Under the LMI Policies, there must be sexual abuse that results in personal injury during the policy period to potentially trigger coverage and, further, any covered Ultimate Net Loss should be allocated to all triggered policy periods when abuse occurred, including periods that pre and postdate the LMI coverage periods. Further, there is no coverage for any ultimate net loss that is allocable to an occurrence that pre-or post-dates the LMI periods effective

from March 12, 1962 to October 25, 1966. Also, all underlying coverage must be exhausted before the LMI Policies are implicated.

55. The Insuring Agreement in the LMI Policies only provides coverage for "personal injuries" that "arise[ ] out of an occurrence". The term "Occurrence" is defined in the LMI Policies as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury … during the policy period." There is no coverage if a claimant alleges, or a determination is made, that the Assured (or Insured), was aware of the alleged perpetrator's deviant propensities or history of abuse prior to or during the alleged abuse.

56. Upon information and belief, some claimants alleged fraud, misrepresentation, intentional conduct, or other volitional acts. The LMI Policies provide excess indemnity coverage for Personal Injuries arising out of an Occurrence. Any damages from alleged volitional acts would not arise from an "Occurrence." Also, damages from such conduct may not constitute "Personal Injuries." Additionally, any ultimate net loss incurred in connection with any allegations of fraud and intentional conduct would not constitute a fortuitous loss and/or would not be eligible for coverage because coverage is prohibited by law and/or public policy.

57. The LMI Policies indemnify for "Ultimate Net Loss," which is defined as:

> [T]otal sum which the Assured, or any company as his insurer, or both, become obligated to pay by reason of personal injury, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical, and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Assured's or any underlying insurer's permanent employees.

The LMI Policies do not cover sums that do not satisfy the definition of "Ultimate Net Loss."

58. RCBO was previously named in certain lawsuits alleging acts of sexual abuse or other misconduct of a sexual nature committed by priests or other alleged employees, officers, volunteers, or representatives of the Diocese. In 2005, RCBO entered into an Amended Confidential Settlement and Mutual Release with its insurers, including LMI. To the extent any Abuse Claims were released by the 2005 Agreement, there would be no coverage.

59. The Sixth Amended Complaint fails, in whole or in part, by the terms, exclusions, conditions, definitions, declarations, endorsements and/or limitations contained in the LMI Policies.

60. In the event RCBO assigns rights under or to the LMI Policies, or pursues a Bankruptcy Plan and the Trust Distribution Procedures ("TDPs") (including a Settlement Trust, review and award options, selection of Trustee and Neutral) that fail to preserve the contractual and legal rights of LMI, including constitutional rights to an adversarial process, any claims, awards or damages as a result of such actions by RCBO are not binding on LMI.

61. RCBO brought this coverage lawsuit against LMI seeking coverage for the Abuse Claims. An actual controversy of a justiciable nature presently exists between RCBO and LMI concerning the proper construction of the LMI Policies, and whether there is coverage for any ultimate net loss incurred for the Abuse Claims under the LMI Policies.

WHEREFORE, Defendants and Counter-Claimants Underwriters, Excess, World Auxiliary, River Thames, Dominion, Fidelidade, and Anglo French (collectively "LMI") request that this Court grant judgment in their favor, and against the Plaintiff and Counter-Defendant RCBO, and adjudge and declare as follows:

a. That the obligations of each LMI are several only, up to the amount of risk specified in the policies, and not joint;

b. That the LMI Policies are excess indemnity policies;

c. That the First Excess Umbrella Policies provide indemnity limits of $1,000,000 each occurrence excess of the $500,000 any one person/ any one occurrence limits covered by underlying insurance;

d. That the Second Excess Umbrella Policies provide indemnity limits of $1,000,000 each occurrence only after the First Excess Umbrella Insurers (and the underlying insurance)

have paid or have been held liable to pay the full amount of their respective ultimate net loss liability;

e. There is only coverage for entities and individuals who qualify as an Assured, or Insured, as defined in the LMI Policies;

f. To the extent LMI may be liable for an Abuse Claim, any liability would not attach until all of the underlying policies have fully and completely paid and exhausted their coverage;

g. LMI have no indemnity obligation if there is no legal liability or for voluntary payments;

h. There is no coverage for claims that do not allege or arise from Personal Injury as defined in the LMI Policies;

i. There is no coverage for claims that do not allege or arise from an Occurrence as defined in the LMI Policies;

j. The LMI Policies provide occurrence based-coverage, effective for the periods from March 12, 1962 to October 25, 1966, and there is no coverage for an Abuse Claim, or for loss from any portion of an Abuse Claim, that pre-or post-dates the LMI policy periods and all underlying coverage must be exhausted before the LMI Policies are implicated;

k. There is no coverage if a claimant alleges, or a determination is made, that the Assured (or Insured), was aware of the alleged perpetrator's deviant propensities or history of abuse prior to or during the alleged abuse;

l. There is no coverage for loss resulting from fraud, misrepresentation, intentional conduct, or other volitional acts;

m. The LMI Policies do not cover sums that do not satisfy the definition of "Ultimate Net Loss";

n. The LMI Policies do not cover the Abuse Claims based on the Exclusion for liability of any Assured for assault and battery committed by or at the direction of such Assured;

o. The LMI Policies do not cover the Abuse Claims because RCBO failed to timely notify LMI of the claims;

p. The LMI Policies do not cover claims, or any damages therefrom, to the extent the claim was previously tendered, was subject to prior investigations, payments, settlements, or releases (including the 2005 Agreement);

q. The LMI Policies do not cover the Abuse Claims, or any damages therefrom, as a result of RCBO's breach of the Policy Conditions pertaining to Assistance and Cooperation;

r. That any claims, damages or awards with respect to any assignment, Plan, Trust Distribution Procedures, or other action, that alter the rights of LMI under the terms of their policies and applicable law, or deny LMI their rights to an adversarial process, are not binding on LMI;

s. The terms, exclusions, conditions, definitions, declarations, endorsements and/or limitations contained in the LMI Policies must be complied with for coverage to attach; and

t. Granting any other relief the Court deems just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, LMI demand a trial by jury on all triable issues in connection with any claim asserted in the Sixth Amended Complaint, in the Affirmative Defenses, and/or the Counterclaim.

Dated: November 5, 2026

By: /s/ *Catalina J. Sugayan*

Catalina J. Sugayan
Clinton E. Cameron (*pro hac vice*)
Yongli Yang (*pro hac vice*)
**Clyde & Co US LLP**
30 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606
(312) 635-7000 (telephone)
Catalina.Sugayan@clydeco.us
Clinton.Cameron@clydeco.us
Yongli.Yang@clydeco.us

Russell W. Roten
Jeff D. Kahane
Timothy W. Evanston
**Skarzynski Marick & Black LLP**
333 S. Grand Avenue, Suite 3550
Los Angeles, California 90071

(213) 721-0650 (telephone)
rrotten@skarzynski.com
jkahane@skarzynski.com
tevanston@skarzynski.com

Counsel for London Market Insurers