**FOLEY & LARDNER LLP**
Eileen R. Ridley (CA Bar No. 151735)
Tel: (415) 438-6469; eridley@foley.com
Ann Marie Uetz (admitted *pro hac vice*)
Tel: (313) 234-7114; auetz@foley.com
Matthew D. Lee (admitted *pro hac vice*)
Tel: (608) 258-4203; mdlee@foley.com
Thomas F. Carlucci (CA Bar No. 135767)
Tel: (415) 984-9824; tcarlucci@foley.com
Jeffrey R. Blease (CA Bar. No. 134933)
Tel: (617) 226-3155; jblease@foley.com
555 California Street, Suite 1700
San Francisco, CA 94104-1520

*Counsel for the Debtor / Plaintiff and Debtor in Possession*

*Additional parties and counsel listed on signature pages*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND INSURANCE ADVERSARY PROCEEDING LITIGATION | Case No.: 3:24-cv-00709-JSC<br><br>Bankruptcy Case No. 23-40523 WJL<br><br>**JOINT STATUS UPDATE**<br><br>Judge: Hon. Jacqueline Scott Corley<br>Date: November 18, 2026<br>Time: 11:00 a.m.<br>Courtroom: 8, 19th Floor<br>Location: 450 Golden Gate Avenue, San Francisco, CA 94102 |

Plaintiff The Roman Catholic Bishop of Oakland ("RCBO"), the debtor and debtor in possession in the underlying Chapter 11 case, Defendants (sometimes referred to herein as the "Insurers," but including the California Insurance Guarantee Association ("CIGA")) (together with RCBO, the "Parties"), and Intervenor the Official Committee of Unsecured Creditors hereby submit this Joint Status Update to the Court in advance of the November 18, 2026 Case Management Conference to address "a schedule for

resolving the coverage dispute involving the Woodall matter and other disputes that are ripe for decision." (Dkt. #329 at 4.)

## I. *WOODALL* MEDIATION

On April 22, 2026, the jury in the *Woodall v. RCBO* case in Alameda County Superior Court awarded $16 million to plaintiff Woodall after RCBO stipulated to liability for negligent supervision of a former priest, Stephen Kiesle. The Superior Court then entered judgment for that amount. RCBO did not appeal from the judgment.

A mediation session took place on October 14, 2026 among certain insurers and RCBO to discuss funding of a possible settlement with Mr. Woodall. The *Woodall* case did not settle at or after that mediation.

**RCBO's Statement**: The applicable Insurers continue to reserve rights as to the *Woodall* claim, including the claimed right to seek reimbursement of defense costs for *Woodall* and any payment the Insurers make if the *Woodall* case settles. Accordingly, there may still be insurance coverage issues arising from the *Woodall* trial even if the Insurers fund a settlement of that case, including claims for reimbursement.

**Insurers' Statement**: The Insurers believe that, if a settlement is reached, then issues regarding insurance coverage for the *Woodall* judgment would be largely or entirely resolved. In that event, the list of issues set forth in Section III below may need to be modified.

If a settlement is not reached, the parties understand that Mr. Woodall might seek to intervene in this action for the purpose of collecting his judgment from one or more insurers as a judgment creditor under Cal. Ins. Code § 11580(b). If Mr. Woodall intervenes in this action, he might seek to modify the proposed case management schedule and list of issues to be decided set forth in Sections II and III below.

## II. PROPOSED CASE MANAGEMENT SCHEDULE

The Parties propose the following schedule for the issues identified in this Joint Status Update. To the extent other issues arise from pleadings filed on November 5, 2026, the Parties will meet and confer to determine whether such issues merit changes to the schedule and, if so, will seek the Court's permission

to modify the schedule accordingly.

**Deadline for RCBO to Answer or Otherwise Respond to Insurer Counterclaims:** December 31, 2026

**Deadline to Move to Amend Pleadings:** February 15, 2027[1]

**Deadline to Complete All Written and Oral Fact Discovery:** June 24, 2027

**Deadline to File Dispositive Motions:** August 5, 2027

**Deadline to Respond to Dispositive Motions:** September 16, 2027

**Deadline to Reply in Support of Dispositive Motions:** October 7, 2027

**Hearing on Dispositive Motions:** October/November 2027

**Deadline to Serve Expert Witness Disclosures:** November 11, 2027

**Deadline to Serve Rebuttal Expert Witness Disclosures:** December 9, 2027

**Expert Discovery Cutoff:** January 14, 2028

## III. ISSUES TO BE DECIDED

Pursuant to the Court's Order [Dkt. No. 329] as to CIGA's Motion to Strike [Dkt. No. 306], CIGA and RCBO met and conferred on September 24, 2026 and agreed to resolve the issues raised by that motion through a stipulation. On September 25, 2026, CIGA's counsel provided a proposed stipulation to RCBO. On October 15, 2026, RCBO requested one revision to the proposed stipulation that CIGA agreed to that same day and proposed adding a proposed order. On October 22, 2026, RCBO suggested that a proposed order was unnecessary. On October 30, 2026, CIGA agreed and requested RCBO's permission to sign and file the proposed stipulation without any order. RCBO is preparing a response to CIGA.

As for RCBO and the other Insurers, the Parties offer their respective positions below regarding issues they contend are ripe to be decided now. Some, but not all, of these issues set forth by the Insurers relate to the *Woodall* matter.

---

[1] To the extent there are additional judgments for underlying plaintiffs after February 15, 2027, the Parties will meet and confer regarding any amendment of the pleadings to address those judgments, and any Party may seek leave to amend for good cause based on such judgments.

**<u>RCBO's Statement of Issues Related to Coverage for *Woodall*</u>:**

Pursuant to the Court's ruling on the motions to dismiss [Dkt. No. 329] and its comments during the September 10, 2026 hearing on the same, the Court is principally focused on adjudicating coverage and bad faith as to the *Woodall* matter as well as other issues ripe for decision now. With that limitation, RCBO agrees with some of the topics on the Insurers' list of issues below insofar as they specifically focus on *Woodall*, but RCBO disagrees with the Insurers' position that all of their topics are currently relevant and require the Court's immediate attention. In addition, RCBO disagrees with the biased manner in which the Insurers frame their issues.

RCBO recommends that the Court address coverage for *Woodall* in the sequence set forth below. Doing so avoids adjudicating coverage issues that may be mooted by resolution of other issues that can be decided first, and reduces the risk of the Court issuing factual findings that may have a prejudicial or collateral estoppel effect in other cases pending against RCBO. To the extent the Insurers intend to imply in their section below that RCBO somehow waived during the September 10, 2026 hearing the right to proceed with caution on the adjudication of coverage issues pertaining to the *Woodall* case that could impact other abuse cases, RCBO strongly disagrees. The record does not support any such waiver, as evidenced without limitation by the Court's instruction to the Parties during that hearing to meet and confer and present to the Court a plan for adjudicating coverage issues pertaining to *Woodall*, which at the time of the hearing the Parties had not yet done. RCBO's proposal, as set forth here, permits coverage adjudication to go forward efficiently while minimizing the risk of prejudice to RCBO in the other abuse cases and/or in the bankruptcy case.

Finally, RCBO objects to the Insurers' sections to the extent they attempt to brief coverage issues within this Report, which is not appropriate. RCBO requests the opportunity to brief in full and on an appropriate briefing schedule any and all contested coverage issues, including but not limited to the parameters of permissible coverage discovery and the sequence in which coverage litigation should proceed.[2]

---

[2] Indeed, after the parties had exchanged drafts of their initial position statements, and on the morning of the day this Joint Status Update was due, the Insurers sent RCBO a revised draft that added *over six more pages* to the Insurers' statements, largely consisting of legal argument. RCBO objects to the

(1) **Identify the insurers and scope of coverage for the *Woodall* judgment.** To resolve the claim for insurance coverage for the *Woodall* judgment most efficiently, the Court should first determine the year or years of coverage in the RCBO liability insurance program that respond to the *Woodall* claim. In other words, the Court should determine the "trigger of coverage." *See Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 655 n.2 (1995). Under longstanding California law, comprehensive general liability ("CGL") policies like those in the RCBO insurance program are triggered by bodily injury or property damage occurring during the policy period. *State of Cal. v. Continental Ins. Co.*, 55 Cal. 4th 186, 196-97 (2012). If injury occurs during more than one policy period, then each policy in which injury occurs will respond; and if the injury is continuous or progressive, then consecutive policies will be triggered. *Id.* Once the Court determines which year or years are triggered, the Insurers that only issued CGL policies to RCBO in years that *Woodall* does not trigger would then be able to stand down and would not need to participate in the proceedings related to coverage for *Woodall*.

Related to trigger is the scope of coverage. That is, the amount of coverage that each triggered insurance policy provides. The California Supreme Court has addressed the two aspects of that issue. As an initial matter, if any bodily injury (or property damage) occurs during a policy period, that policy must pay "all sums," that is, up to its full policy limits, to satisfy any judgment against or settlement with the insured; the rule in other states whereby each triggered policy only pays a pro rata portion of a judgment or settlement does not apply in California. *Id.* at 199-200.

In addition, once the Court determines which years of coverage are triggered, the insured may select any triggered year or years of coverage to pay the judgment or settlement. *Montrose Chem. Corp. of Cal. v. Superior Court*, 9 Cal. 5th 215, 225-26 (2020) (the insured may select any primary policy or policies to pay a claim and is not required to exhaust all triggered primary coverage before accessing an excess policy); *Truck Ins. Exch. v. Kaiser Cement Gypsum Corp.*, 16 Cal. 5th 67, 98-99 (2024) (once the selected primary coverage is exhausted, the insured may access the excess policy or policies above that coverage even if primary coverage in other triggered years is not exhausted). Thus, once the Court

---

Insurers' attempt to convert a simple Joint Status Report requested by the Court into full-blown merits briefing on multiple legal issues.

determines the trigger of coverage and applies it to the *Woodall* claim, RCBO would then select a year or years of primary and excess coverage to respond. If, for example, the triggered years include years in which no policies are missing and no dispute exists about the insurance policy texts, then the Court does not need to address the Insurers' first issue below, concerning the proof of the terms of missing insurance policies. This second step therefore furthers efficiency because only the Insurers that remain at risk for the *Woodall* judgment would be participating in the proceedings concerning coverage for that case.

(2) **Terms and conditions of policies covering the *Woodall* judgment.** If, after the universe of CGL policies in RCBO's program is so limited, the relevant policy year or years nonetheless include missing policies, it would be appropriate to address the terms and conditions of those policies, although the California Supreme Court has held that the standard for proving missing insurance policies is quite lenient. *See Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059, 1071-72 (2002).

(3) **Legal issues ripe for summary judgment.** RCBO agrees with the Insurers that most of the remaining issues in the Insurers' list are appropriate for summary judgment. To take three of several examples in light of the fact that the only claim against RCBO in *Woodall* was for negligent supervision:

(a) The Insurers ask this Court to address whether the plaintiff's alleged injuries in the *Woodall* action were "accidental," whereas the California Supreme Court held as a matter of law that an employer's negligent supervision of an employee is an "accident" for purposes of liability insurance coverage. *See Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, 5 Cal. 5th 216, 220 (2018). The "accident" issue that the Insurers list below therefore should be easily resolved on summary judgment.

(b) The California Supreme Court likewise held that the statutory exclusion for "wilful" misconduct in California Insurance Code section 533, and the contractual exclusion for bodily injury that is expected or intended from the standpoint of the insured, do not apply when an employer is liable for negligent supervision of an employee who engaged in willful misconduct. *See Lisa M. v. Henry Mayo Newhall Mem. Hospital,* 12 Cal. 4th 291, 304-05 & n.9 (1995) ("neither Insurance Code section 533 nor related policy exclusions for intentionally caused injury or damage preclude a California insurer from indemnifying an employer held vicariously liable for an

employee's willful acts"); *Ledesma*, 5 Cal. 5th at 222-23 (same; negligent supervision). Based on the *Woodall* verdict, which was limited to negligent supervision, this issue likewise is appropriate for summary judgment.

(c) The Insurers contend that RCBO needed the Insurers' consent to admit liability for negligent supervision in the *Woodall* trial and limit the disputed issues at trial to damages. The Insurers are mistaken. Because the Insurers reserved the right to deny coverage on factual grounds that entitled RCBO to appoint independent defense counsel pursuant to California Civil Code § 2860, the Insurers forfeited the right to control (or second guess) RCBO's defense of the *Woodall* case. *See Long v. Century Indem. Co.*, 163 Cal. App. 4th 1460, 1469-70 (2008). This defense likewise is appropriate for summary judgment.

RCBO submits these are the discrete issues of law ripe and appropriate for adjudication. Contrary to the Insurers' proposed approach, the Insurers are not entitled to conduct a full-scale retrial of the *Woodall* case. The issues appropriate for determination in this proceeding are coverage issues based on the record already developed through the *Woodall* case.

For these reasons, RCBO proposes the Court address the issues in phases as set forth below. As noted, this approach also has the benefit of allowing the Court to avoid issuing rulings on factual issues that may affect other currently pending abuse cases against RCBO and which, therefore, could have a prejudicial or collateral estoppel effect in those cases. *See Montrose Chem. Corp. of Cal. v. Superior Court*, 6 Cal. 4th 287, 301-02 (1993) (lower courts should conduct insurance coverage cases in a manner that avoids prejudice to the insured's defense of the underlying litigation); *Riddell, Inc. v. Superior Court*, 14 Cal. App. 5th 755 (2017) (court should not allow insurers to conduct discovery of facts that would assist the plaintiffs in pursuing claims against the insured).

**Phase 1:** Determine which insurance policies are triggered by *Woodall* and ascertain which triggered insurance policies RCBO wishes to respond to that claim. Prove the terms of the selected insurance policies.

**Phase 2:** Address the Insurers' coverage defenses that the Court can reject as a matter of law, as well as any coverage issues that do not carry the risk of prejudicial effect on other cases (or that

could moot other coverage issues), such as whether any abuse claims were released in the Clergy III settlement.

**Phase 3**: Address any remaining coverage issues in relation to *Woodall*, including the Insurers' failure to make a good faith effort to settle *Woodall* in advance of trial.

**Insurers' Statement Regarding Issues Related to Coverage**:

The coverage issues should proceed together, on the schedule the Parties have agreed to, without the phasing RCBO proposes. RCBO's proposal rests on faulty legal premises and would delay resolution of this action. *First*, the case should not be phased. All coverage issues should proceed in parallel under the schedule to which the Parties have agreed, and any Party that believes a particular issue is ripe for early resolution may present it by motion. *Second*, trigger of coverage is not the settled question RCBO portrays. No court applying California law has applied a "continuous" injury trigger to sexual-abuse claims, and RCBO's trigger theory provides no basis to delay discovery or adjudication of the Insurers' other defenses while RCBO litigates it. *Third*, the existence and terms of missing and disputed policies present a discrete, threshold issue that should be addressed now. *Fourth*, RCBO's contention that the Insurers' "accident," expected-or-intended, and cooperation defenses can be rejected as a matter of law rests on a record that does not exist. RCBO stipulated to liability in *Woodall*; no liability findings were made; and those defenses turn on facts, including RCBO's knowledge of abuse by Kiesle and other priests, that the Insurers are entitled to develop in discovery. Further, to the extent that RCBO now claims that phasing will avoid factual rulings that may affect underlying cases and could have a prejudicial or collateral estoppel effect, that claim is directly contrary to its representation at the September 10, 2026 hearing that RCBO intended to press forward without regard to such concerns:

> **MR. POTENTE:** To be clear, so the Court's request is to have…an expected or intended trial on Woodall now?
>
> **THE COURT:** On coverage.
>
> **MR. POTENTE:** On coverage. I…suspect that the Diocese will object to that, but I would be very curious to hear the Diocese's response to that proposal.
>
> **MR. PLEVIN:** Because that's what the Archdiocese of San Francisco did in the cases before Judge Lin, because that's what has an impact on other cases.

**MS. HASKETT:** Your Honor, we would like to move forward with everything.

(9-10-2026 Tr. at 35:1-24.) Further, those concerns could be adequately addressed through a protective order.

The Insurers respond below in more detail to RCBO's specific points in the order RCBO presents them, and then set forth the coverage issues the Court will need to resolve.[3]

(1) **Trigger and scope of coverage.** RCBO argues that sexual abuse is a "continuous or progressive" injury that triggers consecutive policy periods. California law does not support that assumption. Each California authority RCBO cites—*Montrose Chem. Corp. v. Admiral Ins.* 10 Cal. 4th 645, 649 (1995); *State of Cal. v. Continental Ins. Co.*, 55 Cal. 4th 186, 195-96 (2012); *Montrose Chem. Corp. of Cal. v. Superior Court*, 9 Cal. 5th 215, 222-23 (2020); and *Truck Ins. Exch. v. Kaiser Cement & Gypsum Corp.*, 16 Cal. 5th 67, 77-78 (2024)—involved environmental or toxic tort claims. None applied a continuous trigger to sexual abuse, and no decision applying California law has done so. RCBO itself has conceded that the continuous injury trigger "typically applies to environmental, construction defect, or toxic tort claims." (*See* Dkt. No. 316 at 4 (quoting RCBO's Opp. to Insurers' Mot. to Dismiss at 7 n.4).)[4] Courts have also declined to apply a continuous trigger to abuse claims, distinguishing emotional distress following abuse from cases in which the continuous injury trigger for progression bodily injury or property damage has been applied, typically due to undiscovered, progressively worsening conditions

[3] RCBO asserts that the Insurers frame their issues in a "biased manner," but it does not identify any issue that is mischaracterized. It is RCBO's statement that presents contested positions as settled, including by proposing a phase of the case devoted to "the Insurers' coverage defenses that the Court can reject as a matter of law," and that the Insurers purportedly "fail[ed] to make a good faith effort to settle *Woodall* in advance of trial." Further, RCBO's initial draft of its sections cited numerous cases including *Montrose*, *Truck*, *Dart*, and *Ledesma*—these were not responses to any legal argument by the Insurers. That said, Insurers agree that this Joint Status Report is not a substitute for full briefing of legal issues, and Insurers agree that both RCBO and Insurers should have the same rights to file full briefs on contested legal issues briefed in the future.

[4] The non-binding, out-of-state clergy-abuse decisions on which RCBO previously relied are also inapposite. Each decision limited any trigger to the actual period of abuse. *See Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1390 & n.5 (8th Cir. 1996); *Soc'y of Roman Cath. Church v. Interstate Fire & Cas. Co.*, 26 F.3d 1359, 1365-66 (5th Cir. 1994); *In re Diocese of Duluth*, 565 B.R. 914, 925 (Bankr. D. Minn. 2017). *Roman Cath. Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 21 N.Y.3d 139, 151-52 (2013), is inapposite because it addressed the number-of-occurrences issue, not trigger, and is admittedly at odds with California law as stated in *State Farm Fire & Cas. Co. v. Elizabeth N.*, 9 Cal. App. 4th 1232, 1236-38 (1992).

such as dry rot, leaching chemicals, and water damage, or disease resulting from asbestos inhalation, and observing that the contrary approach "would functionally require that 'any policy purchased at any time after an act of sexual abuse provides full coverage for the life of the victim.'" *C.C. v. U.S. Fidelity & Guar. Co.*, 2026 WL 183583, at *12-14 (W.D. Wash. 2026) (quoting *Bishop of Charleston v. Century Indem. Co.*, 225 F. Supp. 3d 554, 566 (D.S.C. 2016)); *see Philadelphia Indem. Ins. Co. v. Eubanks*, 378 Ga. App. 837, 847 n.20 (2026).

RCBO's "all sums" and selection arguments add nothing to its trigger theory. Under the authorities RCBO cites, an insured may select among triggered policies only after it establishes that injury actually occurred during each such policy period. RCBO has not identified any policy language supporting a continuous trigger, and there is no evidence in the Woodall trial record or the pretrial discovery in that case establishing when Mr. Woodall's alleged abuse began or ended, much less any continuing bodily injury in later policy periods. The dates of abuse are therefore a factual question on which the Insurers are entitled to discovery. *See Howard v. American National Fire Ins. Co.*, 187 Cal. App. 4th 498, 513-15 (2010) (permitting discovery and subsequent litigation of the dates of abuse because "the exact dates of molestation were not adjudicated in the underlying litigation"). In any event, the trigger question need not delay the rest of the case. If RCBO believes the Court should adopt a continuous trigger for sexual-abuse claims, it may present that issue by motion under the schedule while discovery and the remaining coverage issues proceed in parallel.

(3) **Missing and disputed policies.** RCBO proposes to address the terms of missing policies only if they fall within the policy years RCBO ultimately selects. The existence and terms of the policies at issue, however, present a discrete, threshold issue that can be resolved now and that is foundational to every other issue in this action, including any later trigger, selection, exhaustion, and drop-down disputes, regardless of whether a particular missing policy is ultimately implicated by *Woodall*. Deferring policy existence would only ensure that it is litigated piecemeal as each new judgment or settlement arises.

(4) **"Accident," expected-or-intended, and section 533.** RCBO overstates the authorities it cites. *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, 5 Cal. 5th 216, 220 (2018)—which concerned an insurer's duty to defend—held that an employer's negligent hiring, retention, or supervision

can constitute an "occurrence" even though the employee's conduct was intentional; it did not hold that such claims are always accidental, and it did not decide whether coverage is available when the employer itself knew of the employee's prior abuse. *Lisa M. v. Henry Mayo Newhall Mem. Hospital*, 12 Cal. 4th 291, 294-95 & n.9 (1995), held that the hospital was not vicariously liable under respondeat superior; its observation about insurability addressed vicarious liability, not an employer's own knowledge. The Insurers' defenses here rest on RCBO's own prior knowledge of abuse by Kiesle and others and its practice of concealing that abuse and transferring offending priests. Those fact-intensive issues cannot be resolved on the stipulated *Woodall* record, because the Insurers are bound only by findings actually and necessarily adjudicated, and no liability findings were made. *Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co.*, 51 Cal. 2d 558, 561-62 (1959).

(5) **RCBO's stipulation to liability.** The Insurers dispute that RCBO was entitled to stipulate to liability and waive apportionment without their consent. Under the Bankruptcy Court's July 2025 lift-stay order, the automatic stay continues to bar enforcement of any judgment in the lift-stay actions against RCBO, while permitting proceedings against RCBO's insurers under California Insurance Code section 11580(b)(2). RCBO therefore had no pecuniary interest in the outcome, and no conflict existed under California Civil Code section 2860. *Long v. Century Indem. Co.*, 163 Cal. App. 4th 1460 (2008), is inapposite. It does not address or permit an insured with no financial stake in the outcome to concede liability at its insurers' expense. The Insurers address this issue further in Section V below.

**Insurers' List of Coverage Issues to Be Resolved**:

1) The existence and terms of all missing or disputed policies at issue in this action;
2) Which policy periods are triggered by the injuries that form the basis of the *Woodall* judgment, including when the alleged abuse of Mr. Woodall began and ended, as to which there is no evidence in the *Woodall* trial record or pretrial discovery;
3) Whether any excess carriers involved in the *Woodall* matter are obligated to drop down over insolvent primaries;
4) Limits and exhaustion issues for purposes of triggering excess policies involved in the *Woodall* matter;

5) Scope of the 2005 settlement agreement and whether RCBO's right to seek coverage for Mr. Woodall's claim was released by the 2005 settlement between RCBO and its insurers;[5]

6) Whether the harms suffered by Mr. Woodall were "expected or intended," or no "accident" or "occurrence," based on RCBO's previous knowledge of abuse by the specific perpetrator in *Woodall* (former Fr. Kiesle), similar abuse by other priests, and RCBO's practice of covering up known abuse and allowing it to continue, including by transferring priests from one parish to another rather than reporting them to law enforcement and/or laicizing them;

7) Whether RCBO breached the cooperation and no-voluntary payments conditions of the policies by, for example, RCBO's stipulation to liability in *Woodall* and waiver of its right of apportionment, both without the Insurers' consent, and RCBO's refusal to permit the Insurers to control the defense;

8) Whether all of the claims involving abuse by former Fr. Kiesle constitute a single occurrence (*see Los Angeles Unified School District v. Lexington Ins. Co*., 2026 WL 1506573 (Cal. App. May 29, 2026) (unpublished));

9) Whether the per-occurrence and aggregate limits of Continental's policy RDU 146 74 50 (the "RDU Policy") were $1 million or $5 million during the period October 26, 1975 to October 26, 1977 and, if the RDU Policy's limits were $1 million, whether Travelers' policy 05 XN 33 WCA attaches upon exhaustion of the RDU Policy's limits or, instead, only upon exhaustion of $5 million above Travelers' policy 05 AL 802025; and

10) Whether any Insurers that pay all or part of the *Woodall* judgment are entitled to reimbursement from RCBO pursuant to *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489 (2001).

It is anticipated that some of the above issues can be decided by dispositive motion practice following additional discovery where necessary.

[5] On November 15, 2005, RCBO and its insurers entered into a confidential settlement agreement and addendum, true and correct copies of which are filed under seal at Dkt. Nos. 141 and 142.

## IV. DISCOVERY IN THIS COVERAGE ACTION

**<u>RCBO's Statement</u>:**

Assuming *arguendo* that the Insurers are entitled to conduct discovery in connection with the expected/intended exclusion and California Insurance Code section 533, even though Woodall only sued RCBO for negligent supervision and RCBO stipulated to its liability on that count, any discovery related to coverage of the *Woodall* case must be limited to facts relevant to RCBO's ***subjective*** knowledge and expectations regarding the specific abuse alleged in that case. *See, e.g., State of Cal. v. Allstate Ins. Co.*, 45 Cal. 4th 1008, 1024 (2009) ("the test for 'expected' damage is whether the insured knew or believed its conduct was substantially certain or highly likely to result in that kind of damage") (citation omitted); *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 17 (1995) (same). Any discovery beyond such facts would carry a significant risk of prejudice to RCBO in the other abuse cases currently pending (*see Montrose*, 6 Cal. 4th at 300-01), and, in any event, is not relevant to an "expected or intended" defense to coverage for the *Woodall* judgment, which concerned only negligent supervision. RCBO agrees with the Insurers that further briefing may be warranted to establish the scope of appropriate discovery related to coverage of the *Woodall* judgment if the Court does not grant summary judgment under the California Supreme Court precedent cited above.

With respect to the list of discovery items the Insurers list below, as noted, RCBO believes some items go beyond the scope of permissible discovery relating to *Woodall*-specific issues. For example, the Insurers say that they will seek to depose Bishop Barber, but do not describe the topics of such a deposition nor whether he would be testifying in his personal capacity or as a corporate representative of RCBO. A deposition of Bishop Barber—who was appointed as Bishop in 2013, decades after the facts giving rise to the underlying actions took place—cannot provide evidence relevant to the Insurers' "expected or intended" defense, which turns on the subjective viewpoint of RCBO and its personnel during the 1970s. Further, the Insurers' description of the "Clergy III"-related discovery appears to encompass all documents and information about all the underlying Clergy III cases, whereas the Court limited immediate proceedings to *Woodall* alone. For the purposes of litigating the scope of the Clergy III insurance settlement agreement, only documents relating to the negotiations of that specific settlement agreement

and its effect, if any, on *Woodall* could conceivably be relevant. Discovery from RCBO's brokers related to notice of abuse claims and discovery into "sub secreto" files pertaining to claimed abuse other than that alleged in the *Woodall* case is not relevant to coverage for the *Woodall* judgment. A fishing expedition into dozens of unrelated past abuse claims is not relevant to *Woodall* and carries a serious risk of prejudice to RCBO.

As such, in addition to its general objections to scope as set forth herein (and potentially further in briefing on this issue should it be helpful to the Court), RCBO reserves the right to object to any specific discovery requested by the Insurers as such requests are propounded.

Finally, RCBO intends to seek, without limitation, the following discovery:

- Written and deposition discovery from insurer representatives regarding efforts to search for and produce policy documents;
- Subpoena to insurance broker Willis Towers Watson for documents and/or depositions related to placement of CNA's insurance policies covering the *Woodall* judgment;
- Written and deposition discovery from insurer representatives concerning the Insurers' failure and refusal to make a reasonable offer within the Insurers' collective policy limits to settle *Woodall* despite counsel's strong recommendation to the Insurers to make such an offer.

**<u>Insurers' Statement</u>:**

The Court has only allowed written discovery up to this point. It has not allowed any depositions. The Insurers have propounded written discovery on RCBO and some third parties and may be required to move to compel further responses. The Insurers will seek oral and further written discovery from RCBO and oral discovery and further written discovery from third parties regarding the issues noted in Section III above.

Motion practice may be required to resolve discovery disputes. RCBO contends that the Insurers are limited to the record established in the *Woodall* case and, therefore, are not entitled to discovery regarding Mr. Woodall's claims or RCBO's claims for coverage of the *Woodall* judgment. However, California law holds that in an insurance coverage action following an underlying trial, the underlying judgment binds an insurer only as to the "material findings of fact essential to the judgment of liability"

and damages. The insurers are "not bound, however, as to issues not necessarily adjudicated in the prior action and can still present any defenses not inconsistent with the judgment against the insured." *Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co.,* 51 Cal.2d 558, 561-62 (1959); *see also J. C. Penney Cas. Ins. Co. v. M. K.*, 52 Cal.3d 1009, 1017-18 (1991) (holding in an abuse case that the insurer was not collaterally estopped from later litigating whether the insured's conduct was intentional and therefore not covered because the insurer had adequately reserved its rights and had not relinquished them); *Howard v. American National Fire Ins. Co.,* 187 Cal. App.4th 498, 513-15 (2010) (permitting discovery and subsequent litigation of the dates of abuse because "the exact dates of molestation were not adjudicated in the underlying litigation").

Discovery is particularly critical here. RCBO stipulated to liability in *Woodall*. The issue of RCBO's liability was never tried or adjudicated. The jury made no findings on liability. And the Insurers are not bound by anything in the trial record with respect to whether there was an "accident" or whether coverage is barred because Debtor expected or intended the harm.

Furthermore, the Insurers are entitled to discovery beyond Mr. Woodall's individual claim. The expected-or-intended and "occurrence" defenses turn on what RCBO knew and expected about the risk of abuse. That knowledge is shown by RCBO's handling of abuse allegations against Kiesle and other priests, its transfer of offending priests rather than reporting them, and its maintenance of *sub secreto* files. Evidence of that pattern, coordinated scheme, and institutional cover-up is directly relevant to whether RCBO expected or intended the harm to Mr. Woodall, and RCBO's expectations cannot be evaluated by examining only the portions of RCBO's files that mention Mr. Woodall. For the same reason, what RCBO's brokers knew about abuse claims and RCBO's *sub secreto* files is relevant. RCBO's generalized concern about prejudice in other cases can be addressed through the protective order rather than by foreclosing relevant discovery.

RCBO's proposal to limit the scope of discovery is also inconsistent with its own discovery plans, including RCBO's proposed subpoena to Willis Towers Watson regarding the placement of CNA's policies, which would be relevant only if RCBO selects CNA's policies to respond to *Woodall*, a selection RCBO can and should disclose now.

The Insurers will seek discovery relevant to coverage of the *Woodall* judgment, including, but not limited to, the following:

- Subpoenas to RCBO's insurance brokers Gallagher and Willis regarding proof of insurance, the alleged increase in the RDU policy's limits, the circumstances involving the cancellation of Westport's 1974-1975 policy and the issuance of Travelers' policy 05 XN 33 WCA, and notice of abuse and abuse claims and claims for damages to RCBO;
- Subpoena to and deposition of Rick Simons, plaintiffs' liaison counsel in the coordinated proceedings, for all documents from the 2005 Clergy III cases and all of his communications with RCBO about the *Woodall* matter and other cases released from the bankruptcy court's automatic stay, and testimony regarding the mandatory settlement conferences and related matters that are the foundation for RCBO's bad faith allegations relating to *Woodall*;
- Deposition of Bishop Barber, the RCBO bishop from 2013 to the present (as the head of the Diocese he almost certainly has relevant, non-privileged information about the *Woodall* claim, other abuse claims against RCBO (including the 61 Kiesle cases that Mr. Woodall's counsel demanded be resolved together), and RCBO's historical knowledge regarding Fr. Kiesle);
- Deposition of RCBO's 30(b)(6) records archivist and records custodian, as RCBO claims to have no responsive *sub secreto* files regarding RCBO's knowledge of abuse exist and has not produced any *sub secreto* files, even though canon law requires RCBO to maintain such files and there are references to them in certain documents the Insurers have;
- Deposition of perpetrator Fr. Kiesle, who is currently in jail for DUI manslaughter until 2029;
- Depositions of supervisory individuals identified in Kiesle's personnel file or otherwise identified;
- Subpoenas to, and depositions of, persons affiliated with the seminary where Kiesle trained regarding knowledge of Kiesle's activities before he abused Mr. Woodall;
- Depositions and document discovery of individuals identified by Mr. Woodall as having notice of his abuse and his claim against RCBO, including, but not limited to, Sister Flannery and Sister McPhee;

- Depositions of victims abused by Kiesle before Mr. Woodall was abused by Kiesle and whose abuse was disclosed to RCBO, which would show RCBO's knowledge of abuse by Kiesle and RCBO's handling, treatment, and expectations of abuse by Kiesle;
- Subpoena to, and depositions of, persons affiliated with a captive insurer founded by RCBO which denied coverage for claims based on abuse by Kiesle regarding the grounds for its denial of coverage and its knowledge, obtained from RCBO, of Kiesle's activities;
- Written and deposition discovery from RCBO representatives concerning the mandatory settlement conferences and related matters that are the foundation for RCBO's bad faith allegations relating to *Woodall*;
- Written and deposition discovery from RCBO representatives concerning RCBO's own efforts, or failure, to settle *Woodall* and other cases involving Kiesle as the perpetrator, including any recommendations by counsel regarding settlement; and
- Discovery as to RCBO's communications with plaintiff's counsel in the *Woodall* matter regarding RCBO's decision to stipulate to liability, to not seek apportionment of damages to the perpetrator, to not present its case in chief, and to not call any expert witnesses.

In addition, Continental intends to seek written discovery and depositions of RCBO, its brokers, Westport, Travelers, and possibly others relating to the alleged increase in the RDU policy's limits and the circumstances involving the cancellation of Westport's 1974-1975 policy and the issuance of Travelers' policy 05 XN 33 WCA.

## V. TRIALS OF UNDERLYING CLAIMS

**<u>RCBO's Statement</u>:**

RCBO agrees with the Insurers' statement below concerning the JCCP 5108 cases currently set for trial in which RCBO is named as a defendant. RCBO disputes that any Insurer has the right to control the defense of any underlying claim for multiple reasons, and particularly because the Insurers have all reserved rights as to tender of defense and coverage on the expected/intended exclusion and California Insurance Code section 533. Under California law, they cannot assume control of the defense of the underlying actions unless they withdraw those reservations of rights. *See Long*, 163 Cal. App. 4th at 1469-

71.

**<u>Insurers' Statement</u>:**

On May 27, 2026, Alameda County Superior Court Judge S. Raj Chatterjee, presiding over the underlying tort litigation in JCCP 5108, held a case management conference regarding the JCCP 5108 cases in which RCBO is named as a defendant.

The trial of the *Woodall* matter having been completed, Judge Chatterjee set five other JCCP 5108 cases for trial as follows:

1. *Jane Doe OK 1925 v. The Roman Catholic Bishop of Oakland*, Case No. 22CV023400. Trial commenced in this case on November 2, 2026, and a mistrial was granted on November 5, 2026. A new trial commenced on November 10, 2026.
2. *Sherry Waterworth v. The Roman Catholic Bishop of Oakland*, Case No. 22CV022633. Trial commences on December 7, 2026.
3. *Jane Doe OK 1134 v. The Roman Catholic Bishop of Oakland*, Case No. 22CV020135. Trial commences on January 19, 2027.
4. *Jennifer Doe Oak 461. v. The Roman Catholic Bishop of Oakland*, Case No. 22CV020348. Trial commences on February 16, 2027.
5. *John JP Doe v. The Roman Catholic Bishop of Oakland*, Case No. 23CV030984. Trial commences on March 15, 2027.

Some of the Insurers may seek to assume control of the defense of the above actions, including via motion practice in this case.

**RCBO's Statement regarding Control of State Cases**

RCBO objects to the Insurers' inclusion of what amounts to a brief on their purported right to control the defense of RCBO in the state court abuse cases. RCBO requests the opportunity to respond to the Insurers arguments set forth below—which RCBO received for the first time on November 10, 2026—the filing deadline for this Report—at the appropriate time and format. RCBO notes, however, that the Insurers' claims that RCBO "has no pecuniary interest in the outcome" of the lift stay cases regardless of how insurance coverage is adjudicated is false. The Bankruptcy Court's July 2025 lift stay order

maintained the automatic stay with respect to enforcement of any judgments obtained in the state court cases, but any such judgments would be enforceable against RCBO in the event the Bankruptcy Case is dismissed or if the automatic stay pertaining to those judgments were lifted. [*See* Bankruptcy Dkt. No. 2168]

**Insurers' Statement Regarding Control of State Cases**

The Insurers dispute RCBO's contention that they cannot control the defense of the remaining lift-stay actions. Section 2860 entitles an insured to independent counsel only where an actual, significant conflict exists—one that is "significant, not merely theoretical, actual, not merely potential." *Dynamic Concepts, Inc. v. Truck Ins. Exch.*, 61 Cal. App. 4th 999, 1006-07 (1998). No such conflict exists here. The Bankruptcy Court's July 2025 lift-stay order bars enforcement of any judgment in those actions against RCBO and channels collection exclusively to RCBO's insurers under California Insurance Code section 11580(b)(2). RCBO therefore has no pecuniary interest in the outcome, regardless of how the Insurers' coverage defenses are ultimately resolved, and the Insurers—which alone bear the financial exposure—share RCBO's interest in defeating or minimizing liability. RCBO itself told the JCCP court that its interest was limited to ensuring that coverage was available and keeping the defense cost-neutral to the estate, and that the defense of selected cases would be handled by carrier-appointed counsel rather than Foley & Lardner.

RCBO's reliance on *Long*, 163 Cal. App. 4th 1460, is misplaced. *Long* merely holds that "when the facts on which resolution of the reserved coverage dispute depends are at issue in the underlying action, independent counsel must be appointed because counsel selected and controlled by the insurer could determine the outcome of those issues in the third-party action," with the end result being the insured left paying for an uncovered judgment, which cannot be the case here because no judgment can be enforced against RCBO. Insurer-appointed counsel owe their primary duties to RCBO and have no incentive or ethical license to develop facts supporting a coverage defense. Certain Insurers have also agreed to pay for Foley & Lardner to monitor RCBO's defense. *See Dynamic Concepts*, 61 Cal. App. 4th at 1008-09; *Blanchard v. State Farm Fire & Casualty Co.*, 2 Cal. App. 4th 345, 350 (1991) ("Insurance counsel had no incentive to attach liability to appellant. Respondent recognized its liability for certain damages flowing

from appellant's liability; thus it was to the advantage of both appellant and respondent to minimize appellant's underlying liability."); *James 3 Corp. v. Truck Ins. Exch.*, 91 Cal. App. 4th 1093, 1103 n.3, *as modified* (Aug. 23, 2001) ("An insurer has the right to control the defense it provides its insured so long as there is not a conflict of interest … This right to control the defense necessarily encompasses the right to determine what measures are cost effective, bearing in mind liability and indemnity exposure."). RCBO's concerns about a possible future dismissal of the bankruptcy case or issue preclusion are contingent and speculative and cannot create an actual conflict. *See Simonyan v. Nationwide Ins. Co. of Am.*, 78 Cal. App. 5th 889, 898 (2022) (holding that anticipated circumstances not yet present in the underlying litigation do not state a claim for independent counsel). The consequences of RCBO's continued control are already evident from *Woodall*, where RCBO's counsel stipulated to liability, waived allocation of damages under Proposition 51, called no witnesses, and rejected the input of counsel associated by certain Insurers, resulting in a $16 million verdict.

## VI. BANKRUPTCY PROCEEDINGS

The Confirmation Hearing regarding RCBO's Fourth Amended Plan of Reorganization (Bankruptcy Dkt. #2654) commenced trial on June 15, 2026 and concluded on July 2, 2026. The parties filed post-trial briefs and presented closing arguments on September 16, 2026. On October 2, 2026, Judge Lafferty issued a 105-page memorandum decision declining to confirm the plan. *See* Bk. Dkt. No. 3548. Judge Lafferty stated that he will issue a second, separate memorandum decision, "as soon as practicable," that sets forth his rulings on certain of the Insurers' objections to confirmation of the plan.

//

//

DATED: November 10, 2026

**FOLEY & LARDNER LLP**

By: *\/s/ Eileen R. Ridley*

Eileen R. Ridley (CA Bar No. 151735)
Ann Marie Uetz (admitted *pro hac vice*)
Matthew D. Lee (admitted *pro hac vice*)
Thomas F. Carlucci (CA Bar No. 135767)
Jeffrey R. Blease (CA Bar. No. 134933)
Mason D. Roberts (admitted *pro hac vice*)

**COVINGTON & BURLING LLP**

David B. Goodwin (CA Bar No. 104469)
Christine S. Haskett (CA Bar No. 188053)
Sean M. Bender (admitted *pro hac vice*)
Harper A. Johnson (CA Bar No. 364768)
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: dgoodwin@cov.com
chaskett@cov.com
sbender@cov.com
hajohnson@cov.com

*Attorneys for Plaintiff The Roman Catholic Bishop of Oakland*

**PLEVIN & TURNER LLP**

By: *\/s/ Mark D. Plevin*

Mark D. Plevin (State Bar No. 146278)
Plevin & Turner LLP
580 California Street, Suite 1200
San Francisco, California 94104
Tel: 202-580-6640
mplevin@plevinturner.com

Miranda H. Turner (admitted *pro hac vice*)
Jordan A. Hess (admitted *pro hac vice*)
Plevin & Turner LLP
1701 Pennsylvania Ave., N.W., Suite 200
Washington, DC 20006
Tel: 202-580-6640
mturner@plevinturner.com
jhess@plevinturner.com

*Attorneys for Defendant Continental Casualty Company*

**BLACK, COMPEAN & HALL, L.L.P.**

By: *___/s/ Frederick Hall__________*
Frederick Hall (State Bar No. 130465)
275 E. Hillcrest Dr., Suite 160
Thousand Oaks, CA 91360
Tel: 818-883-9500
fhall@blackcompeanhall.com

*Attorneys for Defendant California Insurance Guarantee Association*

**CLYDE & CO US LLP**

By: */s/ Catalina J. Sugayan*_____
Catalina J. Sugayan
Clinton E. Cameron (*pro hac vice*)
Yongli Yang (*pro hac vice*)
30 S Wacker Drive, Suite 2600
Chicago, IL 60606
Tel: (312) 635-7000
Catalina.Sugayan@clydeco.us
Clinton.Cameron@clydeco.us
Yongli.Yang@clydeco.us

**SKARZYNSKI MARICK & BLACK LLP**

Jeff D. Kahane
Russell W. Roten
Timothy W. Evanston
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: 213-721-0650
jkahane@skarzynski.com
rroten@skarzynski.com
tevanston@skarzynski.com

*Attorneys for London Market Insurers*

**KENNEDYS CMK LLP**

By: */s/ Travis Wall*__________
Travis Wall
Jillian G. Dennehy (*pro hac vice forthcoming*)
455 Market Street, Suite 1900
San Francisco, California 94105
Tel: 415-323-4460 (telephone)
travis.wall@kennedyslaw.com
Jillian.dennehy@kennedyslaw.com

**PLEVIN & TURNER LLP**

George R. Calhoun (*pro hac vice forthcoming*)
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C. 20006
Tel: 202-580-6640 (telephone)
gcalhoun@plevinturner.com

*Attorneys for Defendant United States Fire Insurance Company*

**SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC**

By: */s/ Blaise S. Curet*
Blaise S. Curet
Melissa A. Dubbs
2001 Addison Street, Suite 110
Berkeley, CA 94704
Tel: 415-352-6200
bcuret@spcclaw.com
mdubbs@spcclaw.com

**RUGGERI PARKS WEINBERG LLP**

James P. Ruggeri (*pro hac vice* forthcoming)
Joshua D. Weinberg (*pro hac vice* forthcoming)
Michael S. Batson (*pro hac vice* forthcoming)
1875 K Street NW, Suite 800
Washington, DC 20006
Tel: (202) 984-1400
jruggeri@ruggerilaw.com
jweinberg@ruggerilaw.com
mbatson@ruggerilaw.com

**LAW OFFICE OF ROBIN CRAIG**

Robin D. Craig
6114 La Salle No. 517
Oakland, CA 94611
(510) 549-3310 (telephone)
rdc@rcraiglaw.com

*Attorneys for Defendant Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation*

**CLYDE & CO US LLP**

By: */s Jason J. Chorley*
Alexander E. Potente (S.B. #208240)
Jason J. Chorley (S.B. #263225)
150 California Street, 15th Floor
San Francisco, CA 94111
Tel: 415-365-9800
alex.potente@clydeco.us
jason.chorley@clydeco.us

**O'MELVENY & MYERS LLP**

Alexandra Wolter (S.B. #317951)
400 South Hope Street, 19th Floor
Los Angeles, California 90071
Tel: 213-430-6000
awolter@omm.com

Tancred V. Schiavoni (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, NY 10019
Tel: 212-326-2000
tschiavoni@omm.com

*Attorneys for Defendants Pacific Indemnity Company, Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, Pacific Employers Insurance Company, and Westchester Fire Insurance Company*

**DENTONS US LLP**

By: /s/ *Andrew D. Telles Wyatt*
Andrew D. Telles Wyatt (SBN 316740)
4675 MacArthur Court, Suite 1250
Newport Beach, CA 92660
Tel: 949-732-3700
andrew.wyatt@dentons.com

Lauren Macksoud (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Tel: 212-768-6800
lauren.macksoud@dentons.com

*Attorneys for Travelers Casualty and Surety Company f/k/a Aetna Casualty & Surety Company*